# REVOLVING LINE OF CREDIT AGREEMENT

This Revolving Line of Credit Agreement ("Agreement") is entered into as of the undersigned date by and between KRISJENN RANCH, LLC, a Texas Limited Liability Company ("DEBTOR"), and Larry Wright, a Texas Individual ("Lender"). DEBTOR and Lender may hereinafter be referred to – from time to time – as the Parties collectively or as the Party individually.

In consideration of the mutual covenants, agreements, representations contained herein, and such other good and valuable consideration, the receipt and sufficiency of which are hereby confessed and acknowledged, the Parties hereto agree as follows:

I. Revolving Credit.
   a. Credit and Source of Funds.
      i. From time to time, Lender may forward certain funds to DEBTOR to be used strictly in accordance with Exhibit A to this Agreement. This shall be the sole source of funds advanced by Lender under this Agreement unless otherwise approved by Lender in writing. In all material respects, this Agreement and its related documents shall control, including the limitations contained herein regarding the maximum amount that may be advanced under this Agreement.
      ii. The total amount owed to Lender from DEBTOR under this Agreement shall not exceed $75,000.00 at one time, and Lender may, in its sole discretion, reject one or more requests for an advance for any reason whatsoever.
      iii. DEBTOR shall execute ordinary care to repay funds borrowed under this Agreement pursuant to the Agreement.
      iv. Provided that Lender agrees, DEBTOR may borrow, repay, prepay, and/or re-borrow sums under this Agreement.
   b. Payment Terms
      i. DEBTOR shall pay Lender a minimum of 2% of the outstanding balance on the first day of each month.
      ii. If the case is converted to chapter 7 or otherwise liquidated, all outstanding funds shall be treated as an unsecured claim in DEBTOR'S bankruptcy case.
      iii. If the case is dismissed, all funds outstanding shall become due.
      iv. To the extent outstanding funds are not repaid prior to plan confirmation, DEBTOR shall have all outstanding funds treated in the same class as the general unsecured class in DEBTOR'S bankruptcy.
      v. Notwithstanding anything to the contrary all outstanding funds shall be due and payable 24 months from execution of this Agreement.
   c. Use of Borrowed Sums.
      i. DEBTOR must use sums borrowed under this Agreement solely in accordance with Exhibit A.
      ii. DEBTOR may not re-lend or otherwise distribute funds borrowed under this Agreement without the express written consent of Lender.
   d. Record Requests.

       i. Upon Lender's request for the same, DEBTOR agrees to provide Lender with copies of invoices, canceled checks, or other documentary evidence demonstrating DEBTOR's use of funds borrowed under this Agreement and compliance with Section I(c).

       ii. Upon Lender's request for the same, DEBTOR agrees to provide Lender with reports and copies of invoices or other business records pertaining to a proposed advance including but not limited to proposed usages and a cost benefit analysis.

  e. Conditions to Advances.
       i. Lender may advance funds under this Agreement subject to DEBTOR's satisfaction of the following conditions:
1. On the day that an advance is requested, but for the provision of notice or the passage of time thereafter, DEBTOR shall not have committed any act of default under or otherwise be in default of this Agreement;
2. On the day that an advance is requested, DEBTOR's representations and warranties in this Agreement shall remain true;
3. DEBTOR shall have provided Lender with any information or documents previously requested by or due to Lender; and
4. At Lender's sole discretion and opinion, no material adverse change shall have occurred in DEBTOR's business operations generally.

II. Termination and Remedies.
  a. Default.
       i. DEBTOR shall be in default of this Agreement if any of the following occurs and continues:
1. DEBTOR fails to pay any payment herein when due;
2. DEBTOR fails to perform any of its other, non-payment obligations under this Agreement within three (3) days after receiving notice of such failure;

  b. Remedies; Security.
       i. Upon DEBTOR's default under this Agreement:
1. Lender may terminate its commitment to advance funds under this Agreement;
2. Lender may pursue all other remedies available at law or in equity; and
3. Interest shall accrue on outstanding default balances at 6%.

III. Miscellaneous.
  a. Binding Effect.
       i. Except as otherwise provided in this Agreement, every covenant, term, and provision of the Agreement shall be binding upon and inure to the benefit of the Parties and their respective legal representatives, successors, transferees and assigns.
  b. Construction.

...

      i. Every covenant, term, and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against either Party.

  c. Entire Agreement.
      i. This Agreement constitutes and contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes any prior oral or written agreements.

  d. Further Actions.
      i. Each Party hereto agrees to perform all further acts and execute, acknowledge and deliver any documents that may be reasonably necessary, appropriate or desirable to carry out the provisions and intent of this Agreement.

  e. Legal Compliance.
      i. The Parties hereto agree to abide by all rules and regulations and other applicable laws in the course of performing the functions and obligations contained herein.

  f. Governing Law.
      i. The laws of the State of Texas shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties hereunder.

  g. Severability.
      i. If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith. In the event that the Parties cannot reach a mutually agreeable and enforceable replacement for such provision, then: 1) such provision shall be excluded from this Agreement; 2) the balance of the Agreement shall be interpreted as if such provision were so excluded; and 3) the balance of the Agreement shall be enforceable in accordance with its terms.

  h. Modifications and Waivers.
      i. No modifications or waivers of this agreement shall be valid unless such modification or waiver is in writing and signed by the Parties hereto.

  i. Execution in Counterpart.
      i. This Agreement may be executed in any number of counterparts, each of which shall be taken to be an original. Signatures upon documents returned or transmitted by facsimile shall be treated as originals.

***SIGNATURE PAGE TO THAT CERTAIN REVOLVING LINE OF CREDIT AGREEMENT BETWEEN KRISJENN RANCH, LLC AND LARRY WRIGHT***

**IN WITNESS WHEREOF**, the Parties have entered into the foregoing Revolving Line of Credit Agreement and have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below on this the _____ day of _____, 20_____.

| "DEBTOR" | DEBTOR'S address for Notice: |
| --- | --- |
| | Ronald J. Smeberg, Muller Smeberg, PLLC |
| _____ | _____ |
| *Signature* | *To the attention of:* |
| Larry Wright, Manager | 2010 West Kings Highway |
| | _____ |
| | *Street Address* |
| | San Antonio, Texas 78201 |
| | _____ |
| | *City, State/Province/Territory & Zip/Post Code* |

| "LENDER" | |
| --- | --- |
| | LENDER'S address for Notice: |
| _____ | _____ |
| *Signature (of Officer or Authorized Agent)* | *To the attention of:* |
| _____ | _____ |
| *Printed Name & Title* | *Street Address* |
| _____ | _____ |
| *Name of Entity* | *City, State & Zip Code* |