# A BANKRUPTCY LITIGATION FRAMEWORK FOR SERIES LLC ELIGIBILITY, PROPERTY OF THE ESTATE, AND SUBSTANTIVE CONSOLIDATION

## ABSTRACT

*The Series LLC is one of the more novel business entities available to entrepreneurs. Not only does it limit the liability of its members, but it also limits the liability between different business endeavors. Such multi-directional liability protection was previously only afforded to the creative business owner who formed a family of individual limited liability entities.*

*While the Series LLC sounds appealing in theory, there are several concerns. The first concern is whether the Series LLC is eligible for bankruptcy. The second concern stems from the fact that the limited liability protecting different business endeavors is untested in bankruptcy courts. A final concern is that the multi-directional limited liability of the Series LLC may frustrate the federal bankruptcy policy seeking to distribute assets to creditors promptly and equitably.*

*This Comment responds to these concerns by presenting a bankruptcy litigation framework that answers the question of bankruptcy eligibility and describes how parties in interest may skillfully evade some of the limited liability that entrepreneurs exploit with the Series LLC; thus, leveling the playing field and furthering federal bankruptcy policy.*

## INTRODUCTION

In America's infancy, states recognized the corporate instrument with a heightened level of suspicion and fear.[1] Much of this fear could be attributed to the corporation's perpetual life and its ability to absorb vast amounts of capital.[2] As such, states generally only granted individual corporate charters when they were necessary to achieve an otherwise unattainable community need.[3] But as states' desires for business expansion grew, general corporate laws emerged to satisfy the insatiable appetite for more corporate charters.[4] Even after the creation of general corporate laws, fears of the corporate structure remained

---

[1]   *See generally* Louis K. Liggett Co. v. Lee, 288 U.S. 517, 548–65 (1933) (Brandeis, J., dissenting).
[2]   *See generally id.*
[3]   *See generally id.*
[4]   *See generally id.*

prevalent and charters were severely limited.[5] For many years, general corporate laws restricted the amount of capital a corporation could raise, the amount of debt a corporation could undertake, and the scope of activities a corporation could perform.[6] At the turn of the twentieth century, however, lesser developed states began jockeying for new revenue by removing safeguards from their general corporate laws in an effort to invite persons from other states to incorporate.[7]

Jump ahead 100 years, and the consequences of state jockeying are clear: corporate restrictions have drastically diminished across America. Even industrialized states, such as New York, lost bargaining power since requiring a higher bar was futile when foreign incorporation was able to circumvent local restrictions.[8] Following the decay of corporate restrictions, states had to come up with new, creative mechanisms to attract business formation. The first, and most notable, innovation in business entity law was the creation of the Limited Liability Company ("LLC"), which combined limited liability, previously only afforded to corporations, and flow-through taxation, historically reserved for partnerships.[9]

Since the genesis of the LLC, one of the more recent developments has been the creation of the Series Limited Liability Company ("Series LLC" or "SLLC"). The Series LLC offers its members dynamic, multi-directional liability protection in a single, neat and tidy package. Members benefit from the administrative convenience of owning one company and the liability protections only achievable by owning a family of separate business entities, while minimizing tax obligations. With such increased protection afforded to business owners, one cannot help but wonder whether the states' interest in attracting business is on a collision course with federal bankruptcy policies.

Federal bankruptcy law has two overarching principles.[10] The first is to promote the prompt and equal distribution of assets among similarly situated creditors.[11] The second is to grant a fresh start to the honest but unfortunate

---

[5]   *See generally* Louis K. Liggett Co., 288 U.S. at 548–65 (Brandeis, J., dissenting).

[6]   *See generally id.*

[7]   *See generally id.*

[8]   *See id.* at 560–63.

[9]   *See generally* THOMAS A. HUMPHREYS, LIMITED LIABILITY COMPANIES AND LIMITED LIABILITY PARTNERSHIPS § 1.01 (2018).

[10]   ROBERT E. GINSBERG, ROBERT D. MARTIN & SUSAN V. KELLEY, GINSBERG & MARTIN ON BANKRUPTCY § 1.01[H] (5th ed. 2018).

[11]   *Id.*

debtor.[12] These overarching principles are commonly referred to as the "twin pillars" of bankruptcy law.[13]

The twin pillars of bankruptcy law, however, are not infallible. State law may have the capacity to frustrate the aims of the twin pillars when federal bankruptcy law does not displace state law.[14] This is the conundrum presented by the relatively new business entity: the Series LLC.

The Series LLC offers more liability protection in one business entity than any entity ever before created. Because the Series LLC is an adaptation of the limited liability company, its members benefit from both flow-through taxation and limited liability. Limited liability in this context refers to the managers' protection from business liability, which can be thought of as the "vertical limited liability shield."[15] But the Series LLC's protections do not stop there. It also provides "horizontal limited liability shields,"[16] which separate individual business ventures, called "protected series," from one another,[17] and consequently impede liability from flowing amongst the various ventures. The manager of a Series LLC may create as many protected series under its operating agreement as it sees fit, each with its own business purpose.[18] Thus, a Series LLC can stop liability from flowing both horizontally across the company and vertically to the members. Before the inception of the Series LLC, the only way to achieve such a complex limited liability scheme was to create multiple, individual corporations or LLCs. In essence, the Series LLC allows risk averse entrepreneurs to maximize protections and minimize administrative time and costs.

Despite the prospect of limiting liability even further, two primary uncertainties surrounding Series LLCs have frustrated entrepreneurs and business owners from embracing the Series LLC as a preferred business entity.[19] The first is the uncertainty of whether the state-promised limited liability afforded by a protected series will survive in a federal bankruptcy

---

[12]    GINSBERG, MARTIN & KELLEY, *supra* note 10.

[13]    *Id.*

[14]    *See generally* Butner v. United States, 440 U.S. 48, 55 (1979) (Federal courts in bankruptcy should follow state law if federal policy does not require a different result); Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").

[15]    *See* UNIF. PROTECTED SERIES ACT, Prefatory Note at 2–3, 2–12 (UNIF. LAW COMM'N 2017).

[16]    *Id.*

[17]    *Id.*

[18]    *See, e.g.*, DEL. CODE ANN. tit. 6, § 18-215(a) (2016).

[19]    MARK A. SARGENT & WALTER D. SCHWIDETZKY, LIMITED LIABILITY COMPANY HANDBOOK § 2:12, (September 2015).

case.[20] This uncertainty exists because states conceived the Series LLC and its protected series after the Bankruptcy Code (the "Code") was enacted,[21] consequently, commentators disagree over whether the Series LLC, the protected series or either may qualify as a debtor under the Code.[22] The second uncertainty is judiciary in nature: courts have yet to adjudicate whether the horizontal limited liability shields are robust enough to withstand an attack from creditors in a bankruptcy proceeding.

This Comment addresses bankruptcy concerns surrounding the Series LLCs by providing a bankruptcy litigation framework. While commentators have appropriately raised concerns and questions about the Series LLC,[23] none have offered answers. For three reasons, now is the ideal time to confront these bankruptcy concerns. First, Series LLC adoption is becoming sufficiently widespread for the question to be relevant—evidence suggests there are at least 1,500 protected series filed in Delaware and over 26,000 filed in Illinois.[24] Second, the adoption of the Uniform Limited Liability Company Protected Series Act in July 2017 ("ULLCPSA" or "UPSA")[25] offers the hope of a consistent Series LLC legal landscape that will make a uniform analytical framework more plausible. And finally, the Series LLC entity has been in existence long enough to increase the likelihood that bankruptcy courts will begin adjudicating the issues previously raised.

Before delving into the proposed bankruptcy framework, it is important to briefly mention that American litigation is fundamentally adversarial in nature.[26] As such, judges are generally reactive and will rarely intervene without request

---

[20]   *See* Kurz v. AMCP-1, LLC, 2016 Md. App. LEXIS 647, at *20–21 (Md. Ct. Spec. App. Feb. 10, 2016) (citing SARGENT & SCHWIDETZKY, *supra* note 19).

[21]   Limited Liability Companies—Domestic and Foreign Companies—Registration and Regulation, 1996 Del. Laws 360, H.B. 528 (1996); Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 (codified as amended at 11 U.S.C. (1994)).

[22]   *Compare* Amanda J. Bahena, *Series LLCs: The Asset Protection Dream Machines?*, 35 J. CORP. L. 799, 808 (2010) (A SLLC cannot be a debtor) *with* Shannon L. Dawson, *Series LLC and Bankruptcy: When the Series Finds Itself in Trouble, Will it Need its Parent to Bail it Out?*, 35 DEL. J. CORP. L. 515, 515–17 (2010) (A SLLC can be a debtor).

[23]   *See e.g.*, Carol R. Gofarth, *The Series LLC, and a Series of Difficult Questions*, 60 ARK. L. REV. 385, 401–03 (2007); Jennifer Avery, et. al., *Series LLCs: Nuts and Bolts, Benefits and Risks, and the Uncertainties That Remain*, 45 TEX. J. BUS. L. 9 (2012).

[24]   UNIF. PROTECTED SERIES ACT §§ 301–05 (UNIF. LAW COMM'N 2017).

[25]   Jay Adkisson, *Uniform Limited Liability Company Protected Series Act (ULLCPSA) Adopted by Uniform Law Commission*, FORBES (Oct. 7, 2017, 11:29 AM), https://www.forbes.com/sites/jayadkisson/2017/07/22/uniform-limited-liability-company-protected-series-act-ullcpsa-adopted-by-uniform-law-commission/#6faf71673253.

[26]   RICHARD D. FREER & WENDY COLLINS PERDUE, CIVIL PROCEDURE 10–11, 541–671 (7th ed. 2016).

by the parties.[27] Thus, a bankruptcy court will generally not decide sua sponte on whether the debtor is eligible or whether limited liability can be circumvented. Indeed, the responsibility is on the parties in interest to take action. The Federal Rules of Bankruptcy Procedure govern all procedural aspects of a bankruptcy case.[28] Litigation proceedings in a bankruptcy case can be divided into two categories: (i) contested matters; and (ii) adversary proceedings.[29] Contested matters are initiated by filing a motion, whereas adversary proceedings are initiated by filing a complaint.[30] The matter being disputed will generally dictate which type of proceeding is initiated. Because the Series LLC presents novel issues, this Comment adds value by not merely providing the substantive standards necessary to address the issues, but also by putting them in context of the most effective procedural posture.

The bankruptcy litigation framework introduced by this Comment identifies the procedural posture and the substantive standards for a party in interest to: (i) dispute either a Series LLC's or a protected series' eligibility; and (ii) evade horizontal limited liability shields by expanding the reach of property of the estate.

For a party in interest to dispute a Series LLC's or a protected series' bankruptcy eligibility, the party must move to dismiss in accordance with Federal Bankruptcy Rule 9014.[31] The moving party must predicate the dismissal under the substantive "for cause" standard.[32] Although the Code does not define "cause," section III.A of this Comment asserts that failing to satisfy the eligibility requirements under Code § 109 constitutes sufficient "cause" to dismiss a Series LLC or protected series bankruptcy case. On the one hand, a court will likely hold that a Series LLC categorically satisfies the Code's threshold eligibility requirement. On the other hand, however, an interested party may find success in moving to dismiss a protected series. This Comment asserts that the determinative question is whether the enabling statute explicitly recognizes the protected series as a separate juridical entity. In other words: Whether the statute allows for the protected series to be a lone party in a judicial dispute. As discussed later in this Comment, for a court to find that a protected

---

[27]   *Id.*

[28]   FED. R. BANKR. P. 1001.

[29]   *In re* Kempner, 152 B.R. 37, 40 (D. Del. 1993) (citing HARVEY M. LEBOWITZ, BANKRUPTCY DESKBOOK, 721 (2d ed. 1990)).

[30]   *Id.*

[31]   FED. R. BANKR. P. 1017(f).

[32]   *See* 11 U.S.C. § 707(a) (2018) (dismissal and conversion "for cause" in a chapter 7 case); *see* § 1112(b)(1) (dismissal and conversion "for cause" in a chapter 11 case).

series is a separate juridical entity, it must have the power to sue and be sued in addition to the other common powers the protected series are afforded.[33]

Section III.B of this Comment identifies two claims that a party in interest may file to circumvent limited liability. Both require the claimant to initiate adversary proceedings under Rule 7001 to dispute the ownership of assets held by a nondebtor protected series.[34] Under both adversary proceedings, the dispute concerns property of the estate. In turn, state law defines the extent of property interests. There are two legal theories that the claimant may assert to expand property of the estate beyond what is initially held by the debtor protected series. First, a claimant may seek property from a nondebtor protected series that fails to satisfy the enabling statute's formalities. This first attack is premised on the notion that a protected series benefits from limited liability only if it has satisfied the enabling statute's formalities. If any protected series fails to meet the statutory formalities, then its property is up for grabs. Second, a claimant may pursue additional property through veil piercing. Under this second analysis, a protected series' limited liability might be pierced to achieve equitable results—regardless of whether it satisfied statutory formalities.

Section III.C of this Comment identifies a contested matter under Rule 9014 where the party in interest may move for substantive consolidation. Here, the court will determine if federal interests warrant aggregating the assets and liabilities of the Series LLC and its protected series. Substantive consolidation is an equitable remedy, originating from federal common law, that courts use to create a single survivor entity from the aggregation of assets and liabilities of separate legal entities.[35] The application of substantive consolidation turns on the prevailing analysis in each jurisdiction. If substantive consolidation considerations are persuasive, then the court may dissolve any horizontal limited liability shields separating protected series from one another and the Series LLC itself.

## I.    BACKGROUND

The series limited liability company is ultimately a more capable form of the traditional limited liability company. To fully understand the added capabilities

---

[33]    *See* Alphonse v. Arch Bay Holding, LLC, 2013 U.S. Dist. LEXIS 822, at *7–18 (E.D. La. Jan. 3, 2013), *rev'd*, 548 Fed. App'x 979 (5th Cir. 2013), *remanded*, 2014 U.S. Dist. LEXIS 163963 (E.D. La. Nov. 24, 2014), *aff'd*, 618 F. App'x 765 (5th Cir. 2015); *see also* GxG Mgmt. LLC v. Young Bros. and Co., Inc., 2007 U.S. Dist. LEXIS 12337, at *17–21 (D. Me. Feb. 21, 2007).

[34]    *See* FED. R. BANKR. P. 7001(2) (to determine the validity, priority, or extent of an interest in property).

[35]    *In re* Owens Corning, 419 F.3d 195, 205 (3d Cir. 2005).

of the SLLC, one needs to first understand the LLC because its features and capabilities are also present in the SLLC.

## A. A Brief History of the Limited Liability Company

In the U.S., before 1977, a group of entrepreneurs basically had two options when forming a company: corporation or partnership.[36] A corporation is a separate entity that exists independently of the individuals composing it,[37] has distinct rights from those of its members, and protects its shareholders from its liabilities.[38] Importantly, because corporations exist independently, they are taxed individually.[39] In contrast, a partnership is a dependent entity that requires at least two or more partners and ceases to exist if any one partner withdrawals.[40] Because a partnership is a dependent business organization, it avoids any taxation against "itself"[41] and its liabilities flow through to each partner.[42]

Since 1977, limited liability companies have dramatically changed the landscape of business entities.[43] LLCs borrow characteristics from corporations and partnerships.[44] A business formed as an LLC affords its owners the benefits of flow through taxation, historically reserved for partnerships, and protects them from business liabilities, a benefit generally limited to corporate entities.[45] Effectively, the LLC provides a statutory solution that allows the business owners to have their cake and eat it too.

The initial adoption of the LLC as a viable business organization was slow, despite its statutory benefits, until the Internal Revenue Service ("IRS") took an affirmative position in 1988 on how it would tax LLCs.[46] In Revenue Ruling 88-76, the IRS made a binding decision to permit LLCs to qualify as partnerships

---

[36]   Wyoming was the first state to enact limited liability company legislation in 1977. SARGENT & WALTER SCHWIDETZKY, *supra* note 19, at § 1.2 (2017), This hypothetical choice assumes the members want to retain the right to actively participate in the management of the business. It is noted that limited partnerships have been around for a few hundred years. However, limited partners are restricted in their right to control certain business functions.

[37]   FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5 (2017).

[38]   *Id*. at § 14.

[39]   *Id*. at § 40.

[40]   J. WILLIAM CALLISON & MAUREEN A. SULLIVAN, PARTNERSHIP LAW & PRACTICE: GENERAL AND LIMITED PARTNERSHIPS §§ 2.3, 3.8 (2017).

[41]   *Id*. at § 3.8.

[42]   *Id*. at § 2.3.

[43]   *See* HUMPHREYS, *supra* note 9 ("Since its introduction . . . the LLC has become the entity of choice in the United States for non-publicly traded business and investment enterprises.").

[44]   *Id*.

[45]   *Id*.

[46]   SARGENT & SCHWIDETZKY, *supra* note 19, at § 1.2.

for tax purposes.[47] After this ruling, LLC statutes "spread like wildfire across the United States."[48] By 1996, some form of an LLC statute had been enacted in every state;[49] and by 2007, new domestic LLC formations were outpacing new domestic corporation formations at a factor of nearly 2:1.[50]

At the time of its creation, the LLC blurred the lines between corporation and partnership by combining flow through taxation[51] with a vertical limited liability shield that protects its owners from liabilities of the company.[52] In doing so, it provided its owners added benefits, but also opened the door to uncertainty. Only after the tax uncertainty was addressed did the LLC's popularity grow. Similarly, the SLLC also blurs the lines between corporation and partnership. The SLLC maintains the flow through taxation and vertical limited liability shield that the traditional LLC created, and adds horizontal limited liability shields to protect assets in one part of the company from liabilities in another.[53] This latest evolution in business entities provides a new means for business owners to mitigate risks, the results of which were previously only reached by having multiple companies in a parent-subsidiary relationship. But like LLCs before it, the new SLLCs pose unprecedented questions—particularly in bankruptcy since the IRS has already addressed that it would tax the SLLC the same as an LLC.[54] Because of the similarities between LLCs and SLLCs, section III.A explains how analyzing the way courts treated LLCs in bankruptcy offers valuable insight into how the courts will treat SLLCs in bankruptcy.

## B. Introducing the Series Limited Liability Company

In 1996 Delaware passed the first legislation for a series limited liability company.[55] The enabling statute provides that an LLC agreement may assign members, managers, interests, or assets into designated series.[56] In turn, each designated series may be allocated separate rights, powers, or duties from other series or the LLC generally. Importantly, the "debts, liabilities, obligations and

---

[47]  HUMPHREYS, *supra* note 9, at § 1.03.

[48]  *Id.*

[49]  *Id.*

[50]  Rodney D. Christman, *LLCs Are the New King of the Hill: An Empirical Study of the Number of New LLCs, Corporations and LPs Formed in the United States Between 2004–2007 and How LLCs Were Taxed for Years 2002–2006*, 15 FORDHAM J. OF CORP. & FIN. L. 459, 478 (2009).

[51]  HUMPHREYS, *supra* note 9.

[52]  *See* UNIF. PROTECTED SERIES ACT, Prefatory Note at 2-3 (UNIF. LAW COMM'N 2017).

[53]  *Id.*

[54]  Series LLCs and Cell Companies, 75 Fed. Reg. 55,699, 55,704 (proposed Sept. 14, 2010) (to be codified at 26 C.F.R. pt. 301).

[55]  6 DEL. CODE ANN. tit. 6, § 18-215 (2016).

[56]  § 18-215(a).

expenses incurred, contracted for or otherwise existing with respect to a particular series *shall be enforceable against the assets of such series only*, and not against the assets of the limited liability company generally or any other series thereof . . . ."[57]

Because the series is created under the LLC agreement,[58] its members retain the advantages of the traditional vertical limited liability shield.[59] The principal benefit of creating a series is that each series has separate assets and liabilities enforceable only against itself,[60] thus, risk from one business endeavor is quarantined from other business endeavors, effectively creating horizontal limited liability shields that limit the reach liability may have across a company.[61]

The legal fiction of the SLLC allows a business owner to segregate company risks with very little additional consideration. For example, consider how a taxi cab business with 10 cabs could be organized. As a SLLC, the business could create 10 protected series, each holding a cab and employing a driver. This organization would shield liabilities of one cab, e.g., damages stemming from a negligent accident, from flowing out to the rest of the company. Alternatively, to achieve the same horizontal limited liability without a SLLC organization, the business would need to be organized into 10 separate LLCs, each holding a cab and employing a driver. This business organization would safely achieve a similar result as the SLLC organization, but it is costlier because it requires 10 articles of organization, 10 operating agreements and 10 state filings. An entrepreneur might find these administrative tasks redundant, inefficient, and costly if she could achieve the same results with one article of organization, one operating agreement and one state filing. This is the case in Delaware, where the enabling statute only requires one articles of organization, one operating agreement, and one filing with the state to establish the SLLC—regardless of the number of protected series created under the operating agreement.[62]

Despite the potential savings in cost and administration, the growth in popularity of the SLLC has struggled to gain momentum. The second state to follow Delaware's lead and pass an enabling statute for SLLCs was Oklahoma,

---

[57]    § 18-215(b) (emphasis added).

[58]    *E.g.*, § 18-215(a).

[59]    HUMPHREYS, *supra* note 9, at § 2.02(5).

[60]    *E.g.*, § 18-215(b),

[61]    UNIF. PROTECTED SERIES ACT, Prefatory Note at 2 (UNIF. LAW COMM'N 2017).

[62]    § 18-215(b) ("Notice in a certificate of formation of the limitation on liabilities of a series . . . shall be sufficient for all purposes . . . whether or not the limited liability company has established any series . . . .").

and it did not do so until 2004.[63] As of 2017, over twenty years since being introduced, only fifteen jurisdictions have enacted some form of SLLC legislation.[64]

Apparently, the novel structure of the SLLC has proven to be a double-edged sword. Although there is great appeal in being able to create horizontal limited liability shields within a single business organization, many wonder if the shields are robust enough in practice.[65] The horizontal liability protections offered by SLLCs have not been tested in a bankruptcy court, and until they are, concerns will continue to revolve around which entity is eligible to be a debtor, and the robustness of the horizontal limited liability shields.

To further exacerbate these concerns, although all series are created from LLCs,[66] the enabling statues vary across jurisdictions. For example, the Illinois SLLC enabling statute differs from the Delaware SLLC enabling statute in at least three important ways. First, the Illinois statute requires each series to file a "certificate of designation" before the series can exist, whereas no such filing is required in Delaware.[67] Second, and as a consequence, Delaware does not maintain public records for each individual series, whereas Illinois does.[68] And finally, in Illinois a series may obtain a good standing certificate, whereas in Delaware a series cannot.[69] Of the fifteen jurisdictions to date with enacted

---

[63]   UNIF. PROTECTED SERIES ACT, Prefatory Note at 5.

[64]   Delaware, Oklahoma, Illinois, Nevada, Tennessee, Iowa, Puerto Rico, Texas, District of Columbia, Kansas, Missouri, Montana, Utah, Alabama, and Indiana. *Id.*

[65]   *E.g.*, Bruce H. White, *Utah Series LLC—The Risk of Use Continues to be Uncertain*, UTAH BAR JOURNAL, Sept.–Oct. 2016, at 28 ("The author could not recommend a Series LLC . . . too much risk and ambiguity surround the Series LLC . . . .").

[66]   ALA. CODE §§ 10A-5A-11.01 (2015); DEL. CODE ANN. tit. 6, § 18-215 (2016); D.C. CODE § 29-802-06 (2013); 805 ILL. COMP. STAT. ANN. 180/37-40 (2017); IND. CODE ANN. § 23-18.3 & 18.2 (2017); IOWA CODE ANN. §§ 489-1201 (2009); KAN. STAT. ANN. § 17-76, 143 (2017); MO. ANN. STAT. § 347.186 (2013); MONT. CODE ANN. § 35-8-304 (2013); NEV. REV. STAT. ANN. § 86.296 (2017); OKLA. STAT. ANN. tit. 18, § 2005 (2017); TENN. CODE ANN. § 48-249-309 (2012); TEX. BUS. ORGS. CODE § 101.601 (2017); UTAH CODE ANN. § 48-3a-1201 (2014); P.R. LAWS ANN. tit. 14, § 3967 (2011).

[67]   *Compare* 805 ILL. COMP. STAT. ANN. 180/37-40(b) and (d) ("Upon the filing of the certificate of designation with the Secretary of State setting forth the name of each series with limited liability, the series' existence shall being . . . ."), *with* 6 DEL. CODE ANN. tit. 6, § 18-215(b) ("Notice in a certificate of formation of the limitation on liabilities of a series . . . shall be sufficient for all purposes . . . whether or not the limited liability company has established any series . . . .").

[68]   *See* J.L. Griffith & A.R. Gonzales, *Series LLCs Part 1—Current Status, Multi-State Issues and Potential Uniform Liability Company Protected Series Act*, TAXES: THE TAX MAG., Oct. 2016, at 68 (Table 1. Select Series LLC Filing Information).

[69]   *Compare* 805 ILL. COMP. STAT. ANN. 180/37-40(e) ("A series of a limited liability company will be deemed to be in good standing as long as the limited liability is in good standing."), *with* DEL. CODE ANN. tit. 6, § 18-215(b) (No requirement for a certificate of designation, consequently no public record of the series, and therefore there is no way for the series to get a certificate of good standing).

SLLC legislation, nine of them do not require a certificate of designation to be filed.[70]

The Uniform Law Commission (the "ULC") adopted UPSA in July of 2017 with the hopes of providing consistency across state lines. After stylistic revisions, the ULC will present UPSA to each U.S. jurisdiction for passage. The ULC has done this before with the Uniform Partnership Act ("UPA") and the Revised Uniform Partnership Act ("RUPA"), both of which have received positive adoption from the states.

The ULC identified common characteristics of current SLLC legislation in its prefatory note accompanying the UPSA. The note states that a SLLC is comprised of "an identifiable set of assets segregated within a limited liability company . . . ."[71] The assets (i) "comprise a protected series, empowered to conduct activities in its own name and right;" (ii) "must be identified through recordkeeping that distinguishes them from assets of the [SLLC] and assets of any other protected series;" (iii) "are obligated solely to persons asserting claims pertaining to activities related to the [protected series];" and (iv) "are not available to persons asserting claims arising from the activities of the [SLLC] or any other protected series of the company."[72] Members of a SLLC may be associated with multiple protected series, and the associated members receive all distributions from the assets and activities of a protected series.[73] Finally, in the event the protected series does not have any associated members, the distributions go to the SLLC.[74]

The ULC also distinguished the use of "series" from "protected series," noting that while existing legislation was borrowing the word "series" from statutory trusts and investment companies, "series" has a different meaning with bonds and corporate stocks.[75] To avoid confusion the ULC uses "protected series" as a term of art in UPSA, which is used "to signal a different meaning and to call attention to the internal, horizontal shields which are the construct's defining characteristic."[76] For these reasons, this Comment will also use "protected series" as a term of art going forward.

---

[70]   Griffith & Gonzales, *supra* note 68.
[71]   UNIF. PROTECTED SERIES ACT, Prefatory Note at 2 (UNIF. LAW COMM'N 2017).
[72]   *Id.*
[73]   *Id.*
[74]   *Id.*
[75]   *Id.* at 4.
[76]   *Id.*

While UPSA has the potential to bring consistency across jurisdictions, if passed by state legislatures, it does not settle the uncertainty surrounding protected series. With the uncertainty surrounding SLLCs in bankruptcy, the SLLC as a viable business structure has received hesitant adoption. But the benefits of a SLLC are appealing, so just as the LLC's popularity among business owners soared after the IRS made a definitive decision on how it would treat LLCs, this author believes the SLLC's popularity will gain momentum once questions surrounding bankruptcy are answered.[77]

To fill a void in academia, and to provide a bankruptcy litigation framework for practitioners, this Comment identifies the procedural posture and the substantive standards for a party of interest to (i) dispute either a SLLC's or a protected series' eligibility for bankruptcy, and (ii) gain access to assets, protected by horizontal liability shields, by expanding the reach of property of the estate.

## II.  ANALYSIS

The remaining portion of this Comment presents a bankruptcy litigation framework that frames the substantive issues of eligibility and property of the estate within the appropriate procedural posture. As previously noted, commentators are divided as to whether a SLLC or its protected series are eligible for bankruptcy.[78] Section III.A of this Comment addresses these concerns by (i) analyzing SLLC eligibility; (ii) analyzing protected series eligibility; and (iii) identifying how an interested party may procedurally dispute eligibility.

Sections III.B and III.C of this Comment turn to the second question surrounding SLLCs: whether the state-created horizontal limited liability shields that separate protected series from one another will survive federal bankruptcy. In answering this question, this Comment identifies two methods that an interested party in a bankruptcy case may claim property that is within a different protected series: (i) initiate an adversary proceeding disputing the protected series' interest in property, of which there are two different substantive claims; or (ii) initiate a contested matter where the party in interest moves the court to

---

[77]     This premise is based on two notions. First, SLLCs are statutorily the same as LLCs. Second, the IRS has already taken a stance towards how it will tax protected series. *See* Series LLCs and Cell Companies, *supra* note 54. Because SLLCs are merely LLCs that have carved out separate protected series, the only remaining uncertainty is how bankruptcy courts will treat protected series.

[78]     *Compare* Bahena, *supra* note 22 (A SLLC cannot be a debtor), *with* Dawson, *supra* note 22 (A SLLC can be a debtor).

substantively consolidate. Section III.B describes procedural and substantive issues for the adversary proceedings and section III.C describes the procedural and substantive issues for the contested matter.

## A. Bankruptcy Eligibility

Under the Bankruptcy Code (the "Code"), a voluntary bankruptcy petition may only be filed by a debtor.[79] A debtor must be a "person" that "resides or has a domicile, a place of business, or property in the United States . . . ."[80] A "person" may be an individual, a partnership, or a corporation,[81] but this list is not exhaustive.[82] With just a few exceptions, virtually any "person" may be a debtor under chapter 7.[83] A "person" that qualifies as a debtor under chapter 7, qualifies as a debtor under chapter 11.[84] Thus, under the Code, a business may be considered a person, and furthermore, that person may file for bankruptcy under chapters 7 or 11.[85]

The question, then, is *what else* qualifies as a person under the Code. If the SLLC or a protected series qualifies as a person, then it can be a debtor in bankruptcy.

### 1. The Series Limited Liability Company

Not surprisingly, the Code is silent as to whether a SLLC is a person.[86] But the Code is also silent as to whether an LLC is a person.[87] How courts have treated LLCs in the bankruptcy context provides insight as to how they will treat a SLLC.

---

[79]   11 U.S.C. § 301 (2018).
[80]   § 109.
[81]   § 101(41).
[82]   *In re* ICLNDS Notes Acquisition, LLC, 259 B.R. 289, 292 (Bankr. N.D. Ohio 2001) (holding that a limited liability company is a person under the Code).
[83]   *See* § 109(b).
[84]   § 109(d).
[85]   *See* §§ 101(41), 109.
[86]   § 101(41).
[87]   *Id.*

### a. Eligibility

An LLC may file for bankruptcy relief under the Code.[88] In the case of *In re ICLNDS Notes Acquisition, LLC* (*ICLNDS*), a case of first impression, the court was presented with the question of whether an LLC was eligible to file for bankruptcy.[89] The court considered § 101 of the Code, which defines "person," in tandem with § 102, the rules of construction for the Code.[90] The court reasoned, "under the rules of construction . . . the use of the term 'includes' is not limiting."[91] The court further reasoned that both partnerships and corporations are eligible to be debtors and an LLC is a hybrid organization that borrows characteristics from both.[92] Therefore, because "including" is not limiting and the LLC is "similar enough" to corporations and partnerships, the court concluded that the LLC "comes within the definition of 'person' and is eligible for protection under the Code."[93]

In every jurisdiction with an enabling statute, the protected series is created within the original LLC structure,[94] with the term "SLLC" merely being used as informal nomenclature that an LLC has at least one protected series. Similarly, UPSA defines a SLLC as a "limited liability company that has at least one protected series,"[95] and proceeds by saying that the "SLLC" is merely a shorthand term.[96] It further explains that under the same articles of organization:

> a limited liability company might:
>
> - on Day 1, become a series limited liability company by establishing one or more protected series;

---

[88]    *In re* ICLNDS Notes Acquisition, LLC, 259 B.R. 289, 292 (Bankr. N.D. Ohio 2001) ("ICLNDS"); *accord In re* QDN, LLC 363 Fed. Appx. 873, 876 n.4 (3d Cir. 2010) (stating LLCs may file for bankruptcy and citing to ICLNDS with approval).

[89]    *In re* ICLNDS Notes Acquisition, LLC, 259 B.R. at 292.

[90]    *Id. Compare* 11 U.S.C. § 101(41) ("the term 'person' *includes* individual, partnership, and corporation, . . .") (emphasis added), *with* § 102(3) ("'includes' and 'including' are not limiting").

[91]    *In re* ICLNDS Notes Acquisition, LLC, 259 B.R. at 292.

[92]    *Id.* at 293.

[93]    *Id.*

[94]    ALA. CODE §§ 10A-5A-11.01 (2015); DEL. CODE ANN. tit. 6, § 18-215 (2016); D.C. CODE § 29-802-06 (2013); 805 ILL. COMP. STAT. ANN. 180/37-40 (2017); IND. CODE ANN. § 23-18.3 & 18.2 (2017); IOWA CODE ANN. §§ 489-1201 (2009); KAN. STAT. ANN. § 17-76, 143 (2017); MO. ANN. STAT. § 347.186 (2013); MONT. CODE ANN. § 35-8-304 (2013); NEV. REV. STAT. ANN. § 86.296 (2017); OKLA. STAT. ANN. tit. 18, § 2005 (2017); TENN. CODE ANN. § 48-249-309 (2012); TEX. BUS. ORGS. CODE § 101.601 (2017); UTAH CODE ANN. § 48-3a-1201 (2014); P.R. LAWS ANN. tit. 14, § 3967 (2011).

[95]    UNIF. PROTECTED SERIES ACT, at § 102(12) cmt. (UNIF. LAW COMM'N 2017).

[96]    *Id.*

- on Day 2, cease to be a series limited liability company, having dissolved, wound up, and terminated all its protected series; and

- on Day 3, become a new series limited liability company by establishing one or more protected series.[97]

In sum, the UPSA and every enabling statute recognize that the SLLC is merely a convenient term to indicate that an LLC has created one or more protected series. Thus, the SLLC is statutorily equivalent as an LLC. In light of the generally accepted principle that the LLC business structure is eligible for bankruptcy, it is likely that the SLLC is also eligible to be a debtor in bankruptcy.

### b. *Filing Requirements*

Because the SLLC is an LLC, the bankruptcy filing requirements will likely be the same. Thus, using LLCs in bankruptcy as precedent, the SLLC can become a debtor under several filing circumstances.

While the general rule would hold that a member of the SLLC can file for bankruptcy on behalf of the SLLC,[98] the operating agreement may have provisions that limit the authority of members to file for bankruptcy.[99] Courts, however, are split on the issue of whether these limiting provisions are enforceable.

For example, in *DB Capital Holdings LLC* (*DB Capital Holdings*), the court considered whether an LLC's operating agreement that expressly prohibited the entity from filing for bankruptcy was enforceable.[100] Even though the court noted that the limiting provision was introduced as an amendment to appease the debtor LLC's main secured creditor,[101] it ultimately enforced the limiting provision.[102] To reach its holding, the court recognized the well-established precedent that a debtor cannot contract with a creditor to waive its right to bankruptcy relief,[103] but distinguished the operating agreement between the

---

[97]    UNIF. PROTECTED SERIES ACT § 102(12).
[98]    *See* LIMITED LIABILITY COMPANIES AND LIMITED LIABILITY PARTNERSHIPS § 4.02(1) (2017) (authority can be found in the statutory language or through agency theory).
[99]    *See In re* DB Capital Holdings LLC, 2010 Bankr. LEXIS 6567, at *4–9 (B.A.P. 10th Cir. Dec. 6, 2010).
[100]   *Id*. at *6–9.
[101]   *Id*. at *3.
[102]   *Id*. at *3-9.
[103]   *Id*. at *6.

members of the LLC from the "[LLC]'s agreement with third parties to waive the benefits of bankruptcy."[104]

Other courts disagree, holding that operating agreements cannot limit the member's ability to file for bankruptcy on behalf of the LLC.[105] In *In re Intervention Energy Holdings, LLC* (*Intervention Energy Holdings*), the court considered a limiting provision in the operating agreement that was very similar to the provision in *DB Capital Holdings*.[106] In *Intervention Energy Holdings*, however, the court reached the opposite conclusion and held the limiting provision in the operating agreement was void as against public policy.[107] It reasoned that the consent requirement was intended to provide an equity holder the "ultimate authority to eviscerate the right of that entity to seek federal bankruptcy relief"[108] and explicitly disagreed with the holding in *DB Capital Holdings*.[109]

Even if there is an enforceable limiting provision in the operating agreement, unsecured creditors may file an involuntary bankruptcy petition under § 303 of the Code.[110] In relevant part, involuntary bankruptcy cases require that the petition be filed against a "person" that may be a "debtor" under chapter 7 or 11.[111] As discussed above, LLCs qualify as a person and a debtor under chapter 7 and 11.[112] Therefore, it's likely that creditors may file an involuntary bankruptcy petition on behalf of the SLLC.

In conclusion, because the SLLC is an LLC, many of the rules and court decisions affecting LLCs should directly apply. Thus, members of the SLLC

---

[104]    *Id.*

[105]    *See In re* Intervention Energy Holdings, LLC, 553 B.R. 258, 264 (Bankr. D. Del. 2016).

[106]    *Compare In re* Intervention Energy Holdings, LLC, 553 B.R. at 262 (complete bar on members' ability to file bankruptcy on behalf of LLC was created to appease secured creditor), *with In re* DB Capital Holdings LLC, 2010 Bankr. LEXIS 6567, at *2 (the requirement for all members to consent before filing for bankruptcy constructively gave secured creditor ultimate authority to bar a bankruptcy filing).

[107]    *In re* Intervention Energy Holdings, LLC, 553 B.R. at 265–66.

[108]    *Id.* at 265. *But see In re* Squire Court Partners Limited Partnership, 574 B.R. 701, 704 (E.D. Ark. 2017), *appeal filed*, National Community Renaissance v. Centerline Credit Enhanced PRN, 2018 WL 654419 (8th Cir. Jan. 5, 2018). Held the partners had the authority delegated to them in the partnership agreement. *Id.* at *4–5. In its decision, the court distinguished the reasoning in *In re* Intervention Energy Holdings, LLC, stating "[i]t is one thing for the courts to overrule a creditor that seeks to block a debtor from filing bankruptcy; it is quite another for the courts to overrule the owners of the entity." Id. at *5.

[109]    *In re* Intervention Energy Holdings, LLC, 553 B.R. at 265 n.25.

[110]    11 U.S.C. § 303 (involuntary petition may be filed against any "person" that may be a debtor under the chapter); *see* Aspen HH Ventures, LLC v. Snowmass, Inc. (*In re* DB Capital Holdings, LLC), 2011 U.S. Dist. LEXIS 82877 (D. Colo. July 28, 2011) (court dismissed a motion by LLC members to dismiss an involuntary bankruptcy petition filed by creditors).

[111]    11 U.S.C. § 303(a).

[112]    *See* discussion *infra* section III(A)(1)(a).

2019] BANKRUPTCY LITIGATION FRAMEWORK should be able to file for bankruptcy on behalf of the SLLC, and creditors of the SLLC should be able to file for bankruptcy on behalf of the SLLC. However, the enforceability of provisions that limit a member's authority to file for bankruptcy on behalf of the SLLC would likely be jurisdiction specific.

### 2. *The Protected Series*

While protected series raise new concerns because they are a different from LLCs, partnerships, and corporations, this Comment proposes that the analysis in *ICLNDS*—which turns on whether the entity is a person—can also be used to determine whether a protected series is a person, and consequently debtor eligibility.

### a. *Eligibility*

Under the rules of construction, the Code gives explicit instruction that the words "includes" and "including" are not limiting.[113] The court's analysis in *ICLNDS* began with the rationale that the term "person" is flexible and may consist of other entities besides corporations, partnerships, and individuals.[114] This application of law is a well settled statutory interpretation of an unambiguous provision,[115] and is directly transferrable to the subject of protected series. Because the rules of construction dictate that "person" is an inclusive term, the protected series may be eligible for bankruptcy relief if it qualifies as a person.

The second element of the analysis in the *ICLNDS* opinion is whether the entity is "similar enough" to the explicitly listed entities under the defined term of "person."[116] The court looked for overlapping characteristics between an LLC and a corporation, and between an LLC and a partnership.[117] Notably, the court described the LLC as a hybrid between the two, saying the LLC:

> has attributes of both a corporation and a partnership but is not
> formally characterized as either one. Generally, an LLC offers all of
> its members, including any member-manager, limited liability as if

---

[113]   11 U.S.C. § 102(3).

[114]   *See In re* ICLNDS Notes Acquisition, LLC, 259 B.R. 289, 293 (Bankr. N.D. Ohio 2001).

[115]   The court in *ICLNDS* decided this issue as an issue of first impression. Since its decision, at the time this Comment was published, no other court has concluded anything to the contrary. *But see In re* Goerg, 844 F.2d 1562, 1566 (11th Cir. 1988) (concluding the presumption that the definition is not limiting may be overcome by words of limitation in other Code provisions and legislative history).

[116]   *In re* ICLNDS Notes Acquisition, LLC, 259 B.R. at 293.

[117]   *Id.*

they were shareholders of a corporation but treats the entity and its members as a partnership for tax purposes.[118]

Because of the overlapping characteristics, the court concluded that the LLC was "similar enough" to partnerships and corporations (both of which qualify as persons) and that the LLC should also qualify as a person.[119]

It could further be argued that the court's "similar enough" conclusion was attempting to satisfy the canon of ejusdem generis. Reading the definition of "person" in light of the rules of construction, causes the reader to understand the definition as open ended, which is similar to a general descriptor following a list of specific descriptors. Therefore, the court sought to relate the LLC back to the specific descriptors of partnership and corporation, as the canon of ejusdem generis would have dictated in a more direct application.

In the context of protected series, the answer to the question of whether they are "similar enough," depends on the statutory language of the SLLC legislation and the rights accorded to the protected series. Currently, every enabling statute accords protected series separate rights, powers or duties to incur debts and obligations, and contract with other parties.[120] Similarly, corporations may hold property, incur debt, and contract with third parties.[121] The protected series is also like the partnership because its existence is dependent on the existence of the SLLC,[122] just like a partnership's existence is dependent on the existence of its partners.[123] Because each enabling statute provides the protected series with similar attributes of corporations, partnerships, and LLCs, courts may presume that a protected series qualifies as a person under the Code.

Not all enabling statutes, however, are created equally. In some jurisdictions, the court should not recognize the protected series as a separate legal entity, despite the common powers it shares with corporations and partnerships.

---

[118]    *Id.* at 292–93 (quoting Broyhill v. DeLuca (*In re* DeLuca), 194 B.R. 65, 71 (Bankr. E.D. Va. 1996)).
[119]    *Id.* at 293.
[120]    ALA. CODE §§ 10A-5A-11.01–.16 (2015); DEL. CODE ANN. tit. 6, § 18-215 (2016); D.C. CODE § 29-802-06 (2013); 805 ILL. COMP. STAT. ANN. 180/37-40 (2017); IND. CODE ANN. § 23-18.1 (2017); IOWA CODE ANN. §§ 489-1201–1206 (2009); KAN. STAT. ANN. § 17-76, 143 (2017); MO. ANN. STAT. § 347.186 (2013); MONT. CODE ANN. § 35-8-107 (2013); NEV. REV. STAT. ANN. § 86.296 (2017); OKLA. STAT. ANN. tit. 18, § 2005 (2017); TENN. CODE ANN. § 48-249-309 (2012); TEX. BUS. ORGS. CODE § 101.601–622 (2017); UTAH CODE ANN. § 48-3a-1201 (2014); P.R. LAWS ANN. tit. 14, § 3967 (2011).
[121]    FLETCHER, *supra* note 37.
[122]    *See e.g.*, 805 ILL. COMP. STAT. ANN. 180/37–40 ("An [LLC] operating agreement may establish or provide for the establishment of designated series . . . .").
[123]    CALLISON & SULLIVAN, *supra* note 40, at § 2.3.

A statute's mere recognition that a protected series has separate "rights, powers or duties" from the LLC does not necessitate that the protected series can be the lone party in a litigation dispute.[124] In *GxG Management LLC v. Young Bros. and Co., Inc.* (*GxG Mgmt.*), a case of first impression, the court was faced with a motion by a Delaware SLLC plaintiff to amend the complaint to add its protected series to the suit.[125] The court in *GxG Mgmt.* first considered whether a protected series could be a party to the litigation dispute.[126] The court raised the concern that the statute did not "indicate what capacity a [protected] series of an LLC has, *if any*, to pursue litigation on its own behalf," or whether a protected series could "be regarded as an entity distinct from the LLC from which it is carved."[127] Although the *GxG Mgmt.* court raised serious questions that could substantially impact the benefits of protected series, it ultimately punted on the issue and found other grounds to deny the motion.[128]

Six months later the 2006 amendments to the Delaware Limited Liability Company Act became effective and they explicitly gave protected series the power and capacity to "sue and be sued."[129]

The 2006 amendments to the Delaware Limited Liability Company Act proved to be a judicially robust improvement and they received a favorable ruling in 2013.[130] In *Alphonse v. Arch Bay Holding, LLC* (*Alphonse*), the court was presented with a complaint against a Delaware SLLC.[131] The *Alphonse* court considered the issues of the complaint and determined that some of the issues concerned the defendant's protected series, not the SLLC itself.[132] It further considered the statutory language of the Delaware SLLC, and noted that a "[protected] series has the power and capacity to, in its own name, contract, hold title to assets (including real, personal, and intangible property), grant liens and security interests, and *sue and be sued*."[133] With these attributes noted, including the power to "sue and be sued" in the protected series' own name, the *Alphonse*

---

[124]   *See* GxG Mgmt., LLC v. Young Bros. and Co., Inc., 2007 U.S. Dist. LEXIS 12337, at *17 (D. Me. Feb. 21, 2007).
[125]   *Id*. at *17.
[126]   *Id*.
[127]   *Id*. (emphasis added).
[128]   GxG Mgmt., LLC v. Young Bros. and Co., Inc., 2007 U.S. Dist. LEXIS 12337, at *17–21.
[129]   76 Del. Laws 2007, ch. 105 §§ 25, eff. Aug. 1, 2007.
[130]   *See* Alphonse v. Arch Bay Holding, LLC, 2013 U.S. Dist. LEXIS 822, at *13 (E.D. La. Jan. 3, 2013), *rev'd*, 548 Fed. App'x 979 (5th Cir. 2013), *remanded*, 2014 U.S. Dist. LEXIS 163963 (E.D. La. Nov. 24, 2014), *aff'd*, 618 F. App'x 765 (5th Cir. 2015).
[131]   Alphonse v. Arch Bay Holding, LLC, 2013 U.S. Dist. LEXIS 822, at *11.
[132]   *Id*. at *13–16.
[133]   *Id*. (emphasis added).

court considered the protected series to be a "separate juridical entity," and therefore, the claims were "incorrectly addressed" and the court struck them.[134]

Considering the questions raised by the *GxG Mgmt.* court, the subsequent amendments to the Delaware Limited Liability Company Act, and the holding in the *Alphonse* case, this Comment asserts that if a party cannot be a lone party in a litigation dispute, then it cannot be a lone debtor in bankruptcy court. There is an important policy to support this Comment's position: The Federal Government's interest in avoiding vertical disuniformity between federal and state tribunals. If state law does not recognize a protected series as a separate juridical entity, then the protected series cannot be a party in any state litigation. If federal courts, however, were to disregard the state's position and allow a protected series to seek relief in a bankruptcy court, or any federal court for that matter, then the protected series would benefit from rights that it would not otherwise receive in state court. The result is vertical disuniformity between state and federal courts.

Thus, this Comment asserts that a protected series must have the power to sue and be sued, in addition to the other common powers the protected series is afforded, to be a separate juridical entity and eligible for bankruptcy.[135]

Some jurisdictions—despite having been put on constructive notice by the decisions in *GxG Mgmt.* and *Alphonse*—have not been as proactive as Delaware and do not explicitly grant protected series the power and capacity to "sue and be sued."[136] Such a continued omission weighs in favor of a conclusion that the jurisdiction does not intend for the protected series to be considered a separate juridical entity.

To conclude, if the jurisdiction does not recognize the protected series as a separate juridical entity, then the protected series should not qualify as a person. In the *ICLNDS* decision, the court's consideration of whether the LLC was "similar enough" to partnerships and corporations was premised on the foundational fact that all three were separate juridical entities;[137] each having standing to sue and be sued under the Federal Rules of Civil Procedure.[138] But how can a protected series be "similar enough" to corporations, partnerships, and LLCs if it cannot sue and be sued? This Comment asserts that the ability to

---

[134]    *Id.*

[135]    *See id.*; *see also* GxG Mgmt., LLC v. Young Bros. & Co., Inc., 2007 U.S. Dist. LEXIS, at *17–21 (D. Me. Feb. 21, 2007).

[136]    *E.g.*, ALA. CODE §§ 10A-5A-11.01–.16 (2015).

[137]    *See In re* ICLNDS Notes Acquisition, LLC, 259 B.R. 289, 293 (Bankr. N.D. Ohio 2001).

[138]    FED. R. CIV. P. 17(b).

sue or be sued is the unspoken underpinning of the "similar enough" analysis. Removing the ability to sue and be sued causes the "similar enough" analysis to crumble. A protected series that is not recognized as a separate juridical entity is not "similar enough" to partnerships and corporations. Therefore, the protected series cannot qualify as a person, and cannot be a debtor.

### b. Filing Requirements

If the protected series qualifies as a person, then the question of who may file for bankruptcy on behalf of the protected series should be answered by looking to the enabling statute, the operating agreement, agency law, and the Code.

All enabling statutes have provisions that the protected series shall have designated members or managers from the SLLC as a whole.[139] Managers of the protected series can likely file for bankruptcy on the protected series' behalf by the authority granted under the jurisdiction's limited liability company act or agency common law.[140] In most cases, however, the SLLC will have an operating agreement that supplants the default legislation.[141]

As previously established, the operating agreement may limit a manager's authority to file for bankruptcy on behalf of the LLC,[142] which likely also applies to managers of SLLCs. Turning to protected series, any limiting provision that is enforceable on the managers of the SLLC will likely be enforceable on those same managers that have a role in the management of the protected series, since the protected series is created from the same operating agreement.[143] Thus, a manager of a protected series can likely file for bankruptcy on behalf of the protected series, so long as the manager's rights in this regard have not been limited.

---

[139]   ALA. CODE §§ 10A-5A-11.01–.16 (2015); DEL. CODE ANN. tit. 6, § 18-215 (2016); D.C. CODE § 29-802-06 (2013); 805 ILL. COMP. STAT. ANN. 180/37-40 (2017); IND. CODE ANN. § 23-18.1 (2017); IOWA CODE ANN. §§ 489-1201–1206 (2009); KAN. STAT. ANN. § 17-76, 143 (2017); MO. ANN. STAT. § 347.186 (2013); MONT. CODE ANN. § 35-8-107 (2013); NEV. REV. STAT. ANN. § 86.296 (2017); OKLA. STAT. ANN. tit. 18, § 2005 (2017); TENN. CODE ANN. § 48-249-309 (2012); TEX. BUS. ORGS. CODE § 101.601-622 (2017); UTAH CODE ANN. § 48-3a-1201 (2014); P.R. LAWS ANN. tit. 14, § 3967 (2011).

[139]   FLETCHER, *supra* note 37.

[140]   *See* discussion *infra* section III(A)(1)(b).

[141]   *See* LIMITED LIABILITY COMPANIES AND LIMITED LIABILITY PARTNERSHIPS § 3.01 (2017).

[142]   *See In re* DB Capital Holdings, LLC, 2010 Bankr. LEXIS 6567 (B.A.P. 10th Cir. Dec. 6, 2010). *But see In re* Intervention Energy Holdings, LLC, 553 B.R. 258, 265–66 (Bankr. D. Del. 2016).

[143]   *See* GxG Mgmt., LLC v. Young Bros. & Co., Inc., 2007 U.S. Dist. LEXIS 12337, at *17 (D. Me. Feb. 21, 2007); *e.g.*, DEL. CODE ANN. tit. 6, § 18-215.

Recall, any creditor can file an involuntary petition so long as the petition is filed against a "person" that may be a "debtor" under chapter 7 or 11.[144] Thus, creditors may also file for bankruptcy on the protected series' behalf if it is a separate juridical entity. The remaining question, then, is whether a SLLC itself can file a bankruptcy petition on behalf of the protected series. This answer must be "no" because a SLLC is an LLC, and an LLC cannot file for bankruptcy on its own—any action the LLC takes must be through its members or managers.[145]

In sum, if the protected series qualifies as a debtor, then the answer to who may file for bankruptcy on behalf of the protected series will be found in the SLLC operating agreement. It's likely, however, that the protected series' managers, its creditors, or the managers of the SLLC may file for bankruptcy on behalf of the protected series.

### 3. Disputing Eligibility: A Contested Matter

A party disputing a debtor's eligibility is ultimately seeking to get the bankruptcy case dismissed, as such, Rule 9014 governs the proceeding.[146] Rule 9014 defines the procedure to initiate a contested matter and states that relief shall be sought by motion.[147] Therefore, a party who wishes to dispute a debtor's eligibility must initiate a contested matter by filing a motion to dismiss.

The substantive standard to dismiss a chapter 7 case arises under Code § 707.[148] Section 707 identifies two grounds for dismissal: (a) for cause and (b) for abuse or bad faith.[149] Generally, § 707(b) is used to convert a case from chapter 7 to chapter 13 if the debtor has the means to pay back its debts with future income.[150] As such, the more relevant provision is § 707(a), which provides that a chapter 7 case may be dismissed for cause.[151] Importantly, dismissal for cause is discretionary,[152] and is limited by the "sound discretion of the court."[153] The Code does not define "cause" but historically courts have

---

[144]   11 U.S.C. § 303(a).
[145]   LLCs are not separate legal entities like corporations, instead action taken by an LLC is through its members and managers. Limited Liability Companies and Limited Liability Partnerships § 4.02 (2017).
[146]   *See* Fed. R. Bankr. P. 1017(f)(1).
[147]   *Id.* at 9014.
[148]   11 U.S.C. § 707.
[149]   *See id.* (subsection (a) is for cause; subsection (b) outlines what is abusive or filed in bad faith).
[150]   *See* § 707(b)(2).
[151]   § 707(a).
[152]   *See* § 707(a) ("court may dismiss").
[153]   *In re* Nichols, 362 B.R. 88, 93 (Bankr. S.D.N.Y. 2009).

found cause to dismiss a chapter 7 case if the debtor did not satisfy the eligibility requirements of § 109.[154]

Turning to chapter 11, the substantive standard to dismiss a case arises under § 1112(b)(1), which also allows a party to request the court to dismiss on the basis of cause.[155] Like chapter 7, the failure of an entity to satisfy the eligibility requirements of § 109 may rise to the level of cause to dismiss the bankruptcy case.[156]

Although courts have historically deemed ineligibility under § 109 as sufficient cause to dismiss a bankruptcy case, a bankruptcy court recently—in deciding *In re Pratola*—exercised its discretion not to dismiss or convert a chapter 13 case when the debtor failed to meet the eligibility requirements of § 109 because of debt limits.[157] The court's decision not to dismiss or convert is an example of what Professors Pardo and Watts have identified as "residual policymaking authority."[158] The court's decision was premised on two findings: (1) dismissal would not "advance the Congressional intent" of the Code; and (2) dismissal would disserve both the creditors and the estate.[159]

Nevertheless, the *In re Pratola* decision can be reconciled with this framework's reliance on the general principle that ineligibility is sufficient to dismiss. First, the court in *In re Pratola* was deciding a chapter 13 case,[160] which would not apply to a protected series in bankruptcy. Second, the court in *In re Pratola* found that dismissal in the instant case would not advance the intent of the Code's debt limits.[161] In contrast, dismissal of an ineligible protected series would enhance the objective of the Code's limiting definition of a person because the dismissal would remain consistent with the definition's limitation to state-defined entities—in other words, the Code's bar would be consistent with

---

154    *In re* Cannon, 376 B.R. 847, 849 (Bankr. M.D. Tenn. 2006) ("[I]neligibility to be a debtor is cause to dismiss a bankruptcy case under all three Chapters."). *Accord In re* Seaman, 340 B.R. 698, 700 (Bankr. E.D.N.Y. 2006) (dismissal of chapter 7 case because the individual did not satisfy the eligibility requirements of § 109(h)); *In re* Foldesi Family Land Trust #3, 2003 Bankr. LEXIS 2247, *24–27 (Bankr. D. Idaho Feb. 28, 2003) (dismissal of chapter 7 case because the entity did not satisfy the eligibility requirements of § 109(b)).

155    11 U.S.C. § 1112(b)(1).

156    *In re* Bankwest Boulder Indus. Bank, 82 B.R. 559, 561–63 (Bankr. D. Colo. 1988) ("Cause also includes, naturally, the failure of [the entity] to qualify as a debtor under Section 109(b) and (d) of the Bankruptcy Code."). *Accord In re* Head, 223 B.R. 648, 651–52 (Bankr. W.D.N.Y. 1998) (dismissal of chapter 11 case was appropriate because the entity did not satisfy § 109(a) eligibility requirements).

157    *In re* Pratola, 578 B.R. 414, 422 (Bankr. N.D. Ill. 2017).

158    *See generally* Rafael I. Pardo & Kathryn A. Watts, *The Structural Exceptionalism of Bankruptcy Administration*, 60 UCLA L. REV. 384, 404 (2012).

159    *See In re* Pratola, 578 B.R. 414, 422 (Bankr. N.D. Ill. 2017).

160    *In re* Pratola, 578 B.R. 414.

161    *Id.*

the fact that the state does not define the protected series as a separate juridical entity. Finally, the court in *In re Pratola* found that keeping the case in chapter 13 would further the best interests of both the estate and creditors, opining that the "alternatives of dismissal . . . are not favorable to any party in interest."[162] Although relegating the case to state law proceedings may not be in the best interest of all creditors, a court deciding protected series eligibility on first impression should refrain from expanding federal bankruptcy jurisdiction without explicit approval from legislatures. Doing otherwise would result in vertical disuniformity between state and federal courts.

In conclusion, if a protected series does not have the power to sue and be sued, it is not a separate juridical entity. Therefore, it is not eligible for bankruptcy. A party in interest should dispute eligibility by initiating a contested matter, which is done by filing a motion to dismiss. The substantive standard for dismissal will either be Code §§ 707(a) or 1112(b)(1). Under either of these substantive standards, the interested party should assert that ineligibility under § 109 is sufficient cause to dismiss the bankruptcy case.

## B. *Expanding Property of the Estate: An Adversary Proceeding*

Even if a court finds a protected series to be eligible for bankruptcy, a party in interest to the debtor protected series' bankruptcy may want to seek assets from a different protected series (or the SLLC itself) to satisfy the debtor protected series' obligations. This attack may be predicated on two substantive grounds.

First, the quid pro quo of limited liability afforded to protected series is adherence to statutory formalities. Thus, unless the statutory requirements are met, the SLLC enabling statute does not grant limited liability to protected series. Statutory requirements include notice to creditors of limited liability, the proper maintenance of records, and a separate accounting of assets. If one or more of the statutory requirements are not satisfied, then the protected series' assets are not protected.

Second, state common law veil piercing doctrines may be extended to show that a nondebtor protected series is an "alter ego" of a debtor protected series. Generally, the common law veil piercing doctrine provides a creditor of a corporation a means to hold a corporation's shareholders liable if the creditor can show that the corporation was merely an alter ego of the shareholders. In

---

[162] *Id.*

2019]

extending this doctrine, an interested party in a debtor protected series' bankruptcy case would adopt an analogous argument to assert that a nondebtor protected series is the alter ego of the debtor protected series.

A court will generally not review the merits of any of the aforementioned substantive grounds on its own accord. Therefore, a party in interest must properly present these issues to the court. A party disputing the underlying facts as to whether statutory requirements were satisfied or whether an alter ego exists, is doing so to ascertain the legal extent of the parties' interests in property, with the goal of increasing property of the estate.

A dispute over the extent of a party's interest in property must be adjudicated within an adversary proceeding.[163] Furthermore, only by filing an adversary proceeding may an interested party obtain a declaratory judgment regarding its alleged interest in certain property.[164] As such, claims that a nondebtor protected series failed to earn its statutory benefits, or that it is an alter ego of the debtor protected series, are adversary proceedings because they are disputing the extent of an interest in property,[165] and an interested party must file a complaint to commence the action.[166] The question of which interested party may file the complaint (i.e., which party has standing), however, must be answered first.

### 1. Standing

Code § 541(a)(1) defines property of the estate in a bankruptcy case to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[167] Read literally, this provision includes all the debtor's assets, but it also means that all "causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filling of a bankruptcy petition."[168] Therefore, because the trustee is the sole representative of the bankruptcy estate, the only party with standing to prosecute a cause of action belonging to the estate is the trustee.[169] The trustee's power is limited, however, to the claims belonging to the debtor, and therefore, the trustee "has no standing generally to sue third parties on behalf of

---

[163]   FED. R. BANKR. P. 7001(2); 6 COLLIER ON BANKRUPTCY ¶ 7001.03 (Richard Levin & Henry J. Sommer eds., 16th ed.).
[164]   *In re* DBSI, Inc., 432 B.R. 126 (Bankr. D. Del. 2010).
[165]   FED. R. BANKR. P. 7001(2).
[166]   *Id.* at 7003.
[167]   11 U.S.C. § 541(a)(1).
[168]   Kane v. Nat'l Union Fire Ins. Co., 535 F.3d 380, 385 (5th Cir. 2008).
[169]   *Id.*

the estate's creditors."[170] But "[w]hen the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim."[171] Consequently, a creditor does not have standing if the trustee does.

Thus, whether a party has standing to bring an action that affects property of the estate, turns on which claims belong to the trustee and which claims belong to the creditor—which, in turn, is determined by state law.[172]

An adversary proceeding, where the claimant asserts that a nondebtor protected series failed to satisfy its enabling statute requirements, does not result in a particularized injury to the debtor protected series. Furthermore, the claim could theoretically be asserted by either the trustee or the creditors. In situations like this, the Second Circuit has stated, "[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."[173] Thus, an adversary proceeding concerning whether statutory requirements were satisfied should be brought by the trustee, on behalf of the creditors.

In alter ego adversary proceedings, if the debtor corporation could have brought a veil piercing action before filing for bankruptcy, then the trustee can while in bankruptcy. States are split as to whether corporations may bring an alter ego claim against its own shareholders.[174] Because parent corporations are shareholders of their subsidiary corporations, this inquiry is determinative as to which party has standing to bring the alter ego claim. Furthermore, because the SLLC-protected-series relationship is analogous to the parent-subsidiary corporation relationship, state decisions on when a debtor corporation may initiate an alter ego claim against its shareholders is determinative on when a debtor protected series may initiate an alter ego claim against the SLLC or a sister protected series. If the state recognizes an alter ego claim by the debtor corporation, then the trustee has standing and not the creditors. Alternatively, if

---

[170]    Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1250 (9th Cir. 2010) (quoting Smith v. Arthur Andersen Ltd. Liab. P'ship, 421 F.3d 989, 1002 (9th Cir. 2005)).

[171]    *Id.* at 1250 (citing Estate of Spirtos v. One San Bernardino Cty. Superior Court Case, 443 F.3d 1172 (9th Cir. 2006)).

[172]    *Id.* (citing Butner v. United States, 440 U.S. 48, 54–55 (1979)).

[173]    St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989).

[174]    *Compare* Ahcom, Ltd., 623 F.3d at 1250 (California state law does not support an alter ego claim by a corporation against its shareholders, therefore trustee cannot bring action), *with* Kalb, Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, (2d Cir. 1993) (under Texas law the bankruptcy trustee has exclusive standing to bring an alter ego claim). *See generally* Raytheon Co. v. Boccard USA Corp., 369 S.W.3d 626, 630–38 (Tex. App. 2012) (opinion surveys the various splits among the states).

the state does not recognize an alter ego claim by the debtor corporation, then the creditors have standing and not the trustee. The standing inquiry for alter ego cases is jurisdiction and fact specific, and is ultimately outside the scope of this Comment, but users of this bankruptcy litigation framework should be aware of this initial hurdle.

### 2. *Claiming a Protected Series Failed to Satisfy the Statutory Requirements*

Because protected series are creations of state law,[175] whether the protected series satisfied its enabling statute's requirements is a question of state law. When federal law is not on point, interests defined by state law should be analyzed under the law of that state.[176] Because protected series are legal manifestations of nonfederal statutes, bankruptcy courts must first look to the laws of the specific jurisdiction to determine whether the requirements for the creation and maintenance of protected series have been satisfied.

If the statutory requirements are not met, then the statutory privilege of the horizontal liability shields were not earned. Statutes vary across jurisdictions, but the following three elements are common and should serve as a basis for evaluating this factor of the framework: (i) whether there was adequate notice of the protected series' limited liability; (ii) whether the protected series kept and maintained its records; and (iii) whether the protected series accounted for its assets and liabilities separately.

### a. *Was there Adequate Notice of the Protected Series' Limited Liability?*

In the current landscape, every SLLC statute requires "notice" that a protected series could exist. Generally, there are two ways a SLLC can provide notice.

First, in jurisdictions like Delaware, "notice" is deemed to have been given if "notice of the limitation on liabilities of a [protected] series . . . is set forth in the certificate of formation of the limited liability company[.]"[177] Such notice is "sufficient for all purposes of this subsection *whether or not* the limited liability company has established any [protected] series . . . and there shall be no requirement that any specific [protected] series of the limited liability company

---

[175]  *See e.g.*, DEL. CODE ANN. tit. 6, § 18-215(a).
[176]  Butner v. United States, 440 U.S. 48, 55 (1979).
[177]  DEL. CODE ANN. tit. 6, § 18-215(b).

be referenced in such notice."[178] Thus, notice of a protected series' limited liability can be given before the existence of the protected series itself.

In the alternative, jurisdictions like Illinois require the SLLC to (i) provide "notice of the limitation on liabilities of a [protected] series" in its articles of organization; and (ii) file a certificate of designation "for each [protected] series which is to have limited liability[.]"[179] In these jurisdictions, failure to meet either requirement prohibits satisfactory notice.[180]

The ULC, in writing UPSA, created a hybrid approach that effectively mimics the Illinois notice requirement.[181] This is achieved in two ways. First, a SLLC's existence is automatically tied to the existence of a protected series.[182] As explained by the drafters, an LLC becomes a SLLC when it establishes a protected series, but once all the protected series are dissolved, wound up, and terminated, then the SLLC automatically reverts to an LLC[183] Thus, the first form of limited liability notice, is constructively provided in the articles of organization of the LLC. Second, the protected series does not exist until the LLC files with the Secretary of State a protected series designation and the Secretary of State deems it effective.[184] The effective protected series filing in tandem with the state's definition of the powers and limited liability of the protected series provides the second form of constructive notice.[185] Thus, like the jurisdictions that follow Illinois precedence, UPSA does not grant a protected series its powers of limited liability until the LLC files a protected series designation—where notice is constructively provided in the protected series designation and the LLC articles of organization.

In light of the Illinois and UPSA approach to notice, it seems the Delaware approach at providing notice is inadequate for at least three reasons. First, Delaware does not require a separate public filing for a protected series.[186] Second, the name of the protected series does not need to include the name of the SLLC.[187] Third, without such requirements, Delaware has no public record

---

[178]   *Id.* (emphasis added).
[179]   805 ILL. COMP. STAT. ANN. 180/37–40(b) (2017).
[180]   *Id.* ("The fact that the articles of organization contain the foregoing notice of the limitation on liabilities of a series and a certificate of designation for a series is on file in the Office of the Secretary of State shall constitute notice of such limitation on liabilities of a [protected] series.").
[181]   *See* UNIF. PROTECTED SERIES ACT § 102(12) & § 201(b) (UNIF. LAW COMM'N 2017).
[182]   UNIF. PROTECTED SERIES ACT, at § 102(12) cmt.
[183]   *Id.*
[184]   UNIF. PROTECTED SERIES ACT § 201(b)–(c).
[185]   *See* UNIF. PROTECTED SERIES ACT § 104, § 201(b)–(c).
[186]   DEL. CODE ANN. tit. 6, § 18-215(b) (2016).
[187]   *See* § 18-215.

of the existence of the protected series. Consequently, the creditor does not have a reliable or efficient way to search the public record to find any "constructive" notification.

An interested party could dispute notice on two grounds. First, if the protected series failed to meet the statutory notice requirements of the applicable jurisdiction. Second, the claimant might be tempted to invoke an equitable argument that the notice requirement in jurisdictions like Delaware is inadequate to creditors.

### b. Did the Protected Series Keep and Maintain Proper Records?

Every protected series is required by statute to maintain some form of proper maintenance of "books and records" relating to itself.[188] The language in most jurisdictions' enabling statute is either (i) "separate and distinct" records for each protected series and the SLLC,[189] or (ii) "records maintained" for each protected series.[190] Effectively, these requirements are the same.

Without the prerequisite condition of separate "records maintained," no limitation on liabilities is recognized.[191] The bookkeeping requirement imposed on protected series appears to be borrowing from corporate formalities.[192] This may be a difficult hurdle for SLLC managers if they are more accustom to the relaxed formalities of an LLC.[193] It makes sense, however, that since protected series offer limited liability between various business ventures they would require increased bookkeeping to ensure separateness.

Even if the protected series created separate books at some point in time, failure to maintain them consistently may be grounds for piercing the horizontal liability shield. This assertion stems from the contract common law requirement of consideration. For a contract to be enforceable, there must be consideration: a bargained-for exchange.[194] By way of public policy, this contract principle is transferable to the context of a protected series in bankruptcy. Enabling statutes offer protected series a limited liability shield *in exchange for* its compliance

---

[188] Griffith & Gonzales, *supra* note 68, at 71.

[189] *E.g.*, 805 ILL. COMP. STAT. ANN. 180/37-40(b) (2017); *see also* Griffith & Gonzales, *supra* note 68, at 71.

[190] *E.g.*, DEL. CODE ANN. tit. 6, § 18-215(b); *see also* Griffith & Gonzales, *supra* note 68, at 71.

[191] *E.g.*, § 18-215(b).

[192] *Cf.* DeWitt Truck Brokers v. W. Ray Flemming Fruit Co., 540 F.2d 681, 686–87 (4th Cir. 1976) (adherence to corporate formalities used as a factor when disregarding corporate limited liability).

[193] *Compare* Limited Liability Act, DEL. CODE. ANN. tit. 6 §§ 18-101 to 1109 (2016) *with* General Corporation Law, DEL. CODE ANN. tit. 8 (2016).

[194] 2-5 CORBIN ON CONTRACTS § 5.1 (2017).

with statutory requirements—such as separate bookkeeping.[195] Without the "exchange" of separate bookkeeping, the protected series should not receive the limited liability benefit offered by the SLLC enabling statute. Thus, a protected series' failure to keep and maintain separate books provides justification for courts to grant creditors relief by providing them access to assets of another protected series.

### c.  Did the Protected Series Account for its Assets and Liabilities Separately?

Enabling statutes also require each protected series to account for its assets separately.[196] A separate accounting of each protected series' assets necessitates a bar against the commingling of assets between protected series. Thus, a commingling of assets between protected series results in a failure to meet this statutory requirement and, consequently, a failure to benefit from horizontal liability shields.[197]

The following two cases provide insight into what actions constitute a commingling of assets. Although the cases are in the context of subsidiary corporations, their application is appropriate because protected series are similar to subsidiary corporations in three important ways. First, as subsidiary corporations are separate entities, protected series are considered separate entities for asset and liability purposes.[198] Second, subsidiary corporations and protected series provide a vertical limited liability shield that protects the parent corporation and SLLC, respectively.[199] Third, the horizontal limited liability shields that separate assets and liabilities of one protected series from another are effectively similar to the fact that assets and liabilities of one subsidiary corporation are different from those of another subsidiary corporation.[200]

The opinion from *In re Vecco Constr. Indus., Inc.* provides a positive example of what constitutes the "commingling of assets and business functions."[201] In this case, the court found that the assets of the parent corporation and its four subsidiary corporations were helplessly commingled because (i) "no effort [was] undertaken to apportion the assets"; (ii) segregating

---

[195]  *See e.g.*, DEL. CODE ANN. tit. 6, § 18-215(b) (emphasis added).

[196]  *E.g.*, *id.*

[197]  *See e.g.*, *id.*

[198]  *See e.g.*, § 18-215(a) ("series may have separate rights, powers or duties with respect to specified property or obligations . . . .").

[199]  *See* UNIF. PROTECTED SERIES ACT, Prefatory Note at 7 (UNIF. LAW COMM'N 2017).

[200]  *See id.* at 8.

[201]  *In re* Vecco Constr. Indus. Inc., 4 B.R. 407, 410 (Bankr. E.D. Va. 1980).

the "assets and liabilities of the individual subsidiaries would be next to impossible"; and (iii) an attempt in allocating the assets and liabilities would be "based on arbitrary assumptions and calculated judgment not subject to accurate analysis and precise accounting."[202]

Forming the other guidepost, the court in *In re Matter of Gulfco Investment Co.* provides an example of what does not constitute the commingling of assets.[203] The court acknowledged the presence of "overwhelming accounting difficulties,"[204] but continued by saying "[a]lthough the intercompany transactions were complex, the record does not indicate that the assets of the entities where hopelessly commingled."[205] Even though the intercompany transactions were not "documented in order to allow evaluation of the financial condition of each corporation," this fact alone was not enough to find a commingling of assets.[206] What most notably demonstrates the presence of complex transactions, rather than a commingling of assets, is the fact that the intercompany transactions were not benefiting the subsidiary corporations or providing financing to others "on arm's length terms."[207]

Based on these two cases, the court must distinguish between the complex accounting of assets and the complete lack of apportionment.[208] As the court in *In re Vecco Constr. Indus., Inc.* stated, "[t]he extent to which assets . . . are found to be hopelessly commingled must necessarily be decided on a case-by-case basis."[209] Consequently, a fact-finding journey will be required. But there are a few helpful take-aways: (i) if the protected series did not make an effort to apportion and segregate assets, then it has failed to meet the statutory requirement to account for its assets separately;[210] (ii) if a protected series' records were haphazardly kept, but there was no undue benefit gained by a protected series, then the assets were likely not commingled and therefore the statutory requirement was satisfied;[211] (iii) if a protected series' records were haphazardly kept in conjunction with undue benefit to a protected series' then it

---

[202]  *Id.*

[203]  *In re* Matter of Gulfco Inv. Co., 593 F.2d 921, 928–29 (10th Cir. 1979).

[204]  *Id.* at 928.

[205]  *Id.* at 929.

[206]  *Id.* at 923–24, 929.

[207]  *Id.* at 929.

[208]  *Compare In re* Matter of Gulfco Inv. Co., 593 F.2d at 929, *with In re* Vecco Constr. Indus. Inc., 4 B.R. 407, 410 (Bankr. E.D. Va. 1980).

[209]  *In re* Vecco Constr. Indus. Inc., 4 B.R. at 410.

[210]  *See id.*

[211]  *See In re* Matter of Gulfco Inv. Co., 593 F.2d at 929.

is likely that the statutory requirement is not satisfied;[212] and (iv) the presence of complex accounting memorializing inter-SLLC transactions between protected series may still satisfy the statutory burden.[213] Thus, when the protected series fails to account for its assets separately, or actively or haphazardly commingles assets between protected series, then the court may be justified in disregarding the horizontal limited liability shield.

### 3. *Claiming a Protected Series is an Alter Ego*

As an initial matter, limited liability is generally a term used to signal that a shareholder is protected from the liabilities incurred by the corporation. States are the sole creators of limited liability for business entities.[214] Because they are the creators, they have the inherent power to "restrict, condition, or even disregard limited liability afforded to the interest holders."[215] In some situations, equitable considerations may justify disregarding limited liability.[216] Thus, veil piercing doctrines are an equitable remedy and their application is governed by the law of the jurisdiction in which the entity is formed.[217]

The guiding concept behind piercing the corporate veil is the need to "apply the preexisting and overarching principle that liability is imposed to reach an equitable result."[218] Generally, courts pierce in an effort to accomplish any one of three equitable goals: (1) bringing corporate actors' behavior into conformity with a statutory scheme; (2) avoiding constructive fraud or misrepresentation by shareholders trying to obtain credit; and (3) promoting the bankruptcy principle of eliminating favoritism among claimants to the cash flows of a firm.[219]

Traditionally, veil piercing is to be exercised "reluctantly" and "cautiously."[220] The party asserting an alter ego claim bears the burden of production.[221] For a court to order veil piercing, the court must find that: (i) the corporation is owned by one or a few individuals; (ii) more than one of the instrumentality factors are present; and (iii) there is an element of injustice or

---

[212]   *See id.*
[213]   *See id.*
[214]   *See* Nicholas G. Karambelas, 1 LTD. LIAB. CO.: L., PRAC. & FORMS § 2.3 (2017).
[215]   *Id.*
[216]   *Id.*
[217]   *Id.*
[218]   Litchfield Asset Mgmt. Corp. v. Howell, 799 A.2d 298, 312 (Conn. App. 2002) (quoting LiButti v. U.S., 107 F.3d 110, 119 (2nd Cir. 1997)).
[219]   ROBERT W. HAMILTON, JONATHAN R. MACEY & DOUGLAS K. MOLL, THE LAW OF BUSINESS ORGANIZATIONS, 224 (12th ed. 2014).
[220]   DeWitt Truck Brokers v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976).
[221]   *Id.*

fundamental unfairness.[222] A significantly dispositive instrumentality factor is whether the closely-held corporation was "grossly undercapitalized for the purposes of the corporate undertaking."[223] Other factors include:

> failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of fund of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.[224]

To conclude that a corporation is an alter ego, the court must find that more than one of the instrumentality factors are present, that the corporation is closely-held, and that there is an element of injustice or fundamental unfairness.[225] Importantly, although proof of fraud may be sufficient to pierce the corporate veil, it is not a necessary finding.[226]

   Even though the veil piercing doctrine originated in the context of corporations, the theories on which it is premised are directly applicable to other limited liability entities. Many courts have noted that because LLCs reap the same limited liability benefits of a corporation, they should be subject to the same treatment as corporations and therefore be subject to the doctrine of piercing the corporate veil.[227] In light of this, one treatise has opined, "[t]he term 'disregard the limited liability protection' is a broader and more accurate term because it can be used to apply to any limited liability entity."[228]

   As previously established in section III.A of this Comment, the SLLC is still an LLC. Since jurisdictions have applied the veil piercing doctrines to LLCs, it follows that SLLCs are also susceptible to veil piercing doctrines. It is important to note, however, that piercing the limited liability of LLCs holds the members accountable. But, under this litigation framework, a creditor initiating an adversary proceeding, under an alter ego theory, is not attempting to hold the protected series' managers accountable for the outstanding debt; rather the creditor is attempting to hold a nondebtor protected series under the same SLLC

---

222   *See e.g.*, *id*. at 685–87.

223   *Id*. at 685.

224   *Id*. at 686–87 (internal citations omitted).

225   *See* DeWitt Truck Brokers 540 F.2d at 686–87.

226   *See id*. at 684.

227   *See* Westmeyer v. Flynn, 889 N.E.2d 671, 677 (Ill. App. Ct. 2008) (applying Delaware law); Martin v. Freeman, 272 P.3d 1182, 1184–85 (Colo. App. 2012).

228   Karambelas, *supra* note 214 (quoting David Barber, *Piercing the Corporate Veil*, 17 WILLAMETTE L. REV. 371 (1981)).

accountable. In essence, the creditor is asserting that a nondebtor protected series is an alter ego of the debtor protected series. Although this type of veil piercing is different from how veil piercing has been used previously against LLCs, it is analogous to situations where courts have pierced limited liability shields to hold one corporation liable for another—most often in the context of a parent-subsidiary relationship.[229] Because protected series offer benefits analogous to a family of corporations, it follows that this type of veil piercing should be extended to protected series within a SLLC.

## C. Substantive Consolidation: A Contested Matter

Finally, the federal common law doctrine of substantive consolidation may provide justification for a court to disregard the limited liability separating protected series. Without explicit statutory authorization, bankruptcy courts have, in the past, consolidated separate legal entities "to reach assets for the satisfaction of debts of a related [entity]."[230] This procedure is known as "substantive consolidation."[231]

Bankruptcy courts assert that their power to substantively consolidate stems from the equitable powers granted to them under Code § 105.[232] Accordingly, it is a contested matter and an interested party must file a motion to initiate the court proceeding.[233] A party moving for substantive consolidation must provide adequate notice to the affected parties.[234]

Substantive consolidation is used as a tool to aggregate the claims against separate debtors and attach them to the consolidated, sole, survivor.[235] This procedure, however, can have a significant prejudicial effect on unsecured creditors as it "almost invariably redistributes wealth among the creditors of the

---

[229]  *See generally*, United States v. Bestfoods, 524 U.S. 51 (1998).

[230]  *In re* Cont'l Vending Mach. Corp., 517 F.2d 997, 1000 (2d Cir. 1975); *see generally* 2 COLLIER ON BANKRUPTCY ¶ 105.09 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[231]  COLLIER ON BANKRUPTCY, *supra* note 230.

[232]  *E.g.*, *In re* Owens Corning, 419 F.3d 195 (3d Cir. 2005).

[233]  *See* FED. BANKR. R. P. 9014.

[234]  *See e.g.*, *In re* Auto-Train Corp., Inc., 810 F.2d 270, 278–79 (D.C. Cir. 1987) (deciding that required notice for hearing on consolidation of assets and liabilities of separate estates into one bankruptcy estate has two elements: notice must be given in such a matter that it is reasonably likely to reach intended audience, and content of notice must reasonably inform recipient of nature of upcoming proceeding).

[235]  COLLIER ON BANKRUPTCY, *supra* note 230.

various entities."[236] Therefore, the court should exercise substantive consolidation sparingly.[237]

Federal courts sitting in equity have significantly more flexibility in exercising their powers, but their equitable powers are limited by state law.[238] Since substantive consolidation has its genesis in federal common law, and not explicitly in federal statutory law, it should be applied only if it does not conflict with state law or if federal policy requires it.[239] Thus, an emerging view of substantive consolidation limits its application to cases where (i) "state law might find alter ego or instrumentality liability under nonbankruptcy law;" or (ii) federal interests show that "a melding of assets and liabilities benefits every creditor and not just a few."[240] As such, even if an interested party fails in its alter ego adversary proceeding, it may still prevail under a substantive consolidation contested matter.

While substantive consolidation is commonly applied to two debtor entities, it may also be used to consolidate a debtor entity with one or more solvent entities in limited circumstances.[241] The trend toward using substantive consolidation against a nondebtor entity "has its genesis in the increased judicial recognition of the widespread use of interrelated corporate structures by subsidiary corporations operating under a parent entity's corporate umbrella for tax and business purposes."[242] "Without the check of substantive consolidation, debtors could insulate money through transfers among inter-company shell corporations with impunity."[243] This growing trend is particularly useful if a creditor moves to consolidate the debtor protected series with a solvent protected series because it will ultimately result in an increase in assets to the property of the estate and a higher payout to creditors. Thus, this trend effectively gives a

---

[236]   *See* Eastgroup Properties v. S. Motel Assoc., Ltd., 935 F.2d 245, 248 (11th Cir. 1991) (quoting Drabkin v. Midland-Ross Corp. (*In re* Auto-train Corp.), 810 F.2d 270, 276 (D.C. Cir. 1987)).

[237]   *In re* Cont'l Vending Mach. Corp., 517 F.2d 997, 1001 (2d Cir. 1975).

[238]   *See* Thomas E. Plank, *The Erie Doctrine and Bankruptcy*, 79 NOTRE DAME L. REV. 633, 668 (2004) ("Under the Code, bankruptcy courts are not Article III courts and do not have the full equity powers of Article III courts.").

[239]   *See* Butner v. United States, 440 U.S. 48, 55 (1979) (holding that federal courts in bankruptcy should follow state law if federal policy does not require a different result); Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").

[240]   COLLIER ON BANKRUPTCY, *supra* note 230 (summarizing the holding in *In re* Owens Corning, 419 F.3d 195 (3d Cir. 2005)).

[241]   *In re* Logistics Information Systems, Inc., 432 B.R. 1, 10–11 (D. Mass. 2010).

[242]   *Id.* (quoting Eastgroup Properties v. S. Motel Assoc., Ltd., 935 F.2d 245, 249 (11th Cir. 1991)).

[243]   *Id.* (quoting *In re* Bonham, 229 F.3d 750, 764 (9th Cir. 2000)).

creditor an avenue to increase the property of the estate, even if it did not have standing to initiate an adversary proceeding.

Whether a movant succeeds in obtaining an order for substantive consolidation may "be determined by geography as much as logic," since jurisdictions are split on when substantive consolidation is appropriate.[244] This Comment will briefly introduce the three most common standards for determining whether substantive consolidation should be invoked, but it is beyond the scope of this Comment to assert which standard is appropriate. For the curious, there is plenty of opinionated academic literature covering the judicial landscape of substantive consolidation.[245]

The first standard is an emerging view held by the court of appeals for the Third Circuit in *In re Owens Corning* (*Owens Corning*) that diverges from precedent and limits the application of substantive consolidation.[246] The court in *Owens Corning* held that substantive consolidation should be used "sparingly."[247] It further held that, absent consent, substantive consolidation may only be used if it is proved that either: (i) in "prepetition [debtor entities] disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity";[248] or (ii) in "postpetition [the debtor entities'] assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors."[249]

The remaining two standards for substantive consolidation were competing standards that developed before the *Owens Corning* decision, and are referred to as the "elements test" and the "balancing test."[250]

Under the elements test, the court goes on a fact-finding mission to determine whether the presence of certain elements justify substantive consolidation.[251] Two sets of elements have emerged. The first set of elements

---

[244]     COLLIER ON BANKRUPTCY, *supra* note 230.

[245]     *E.g.*, J. Maxwell Tucker, *Substantive Consolidation: The Cacophony Continues*, 18 AM. BANKR. INST. L. REV. 89 (2010).

[246]     COLLIER ON BANKRUPTCY, *supra* note 230.

[247]     *In re* Owens Corning, 419 F.3d 195, 208–09 (3d Cir. 2005).

[248]     *Id.* at 211. The rationale is "meant to protect in bankruptcy the prepetition expectations of those creditors." *Id.* at 195, n.19 (citing Mary Elisabeth Kors, *Altered Egos: Deciphering Substantive Consolidation*, 59 U. PITT. L. REV. 381, 419 (1998)).

[249]     *Id.* at 211. The rationale is one of practicality "when the entities' assets and liabilities have been 'hopelessly commingled.'" *Id.* at 195, n.20 (quoting *In re* Gulfco Inv. Corp., 593 F.2d 921, 929 (10th Cir. 1979)) (but stipulating that the position of all creditors should be improved by the consolidation) (citing Kors, *supra* note 248 at 417).

[250]     COLLIER ON BANKRUPTCY, *supra* note 230.

[251]     COLLIER ON BANKRUPTCY, *supra* note 230.

is analogous to the elements that are considered when the court entertains corporate veil piercing.[252] Whereas, the second set of elements include:

> First, the degree of difficulty in segregating and ascertaining individual assets and liability. Second, the presence of absence of consolidated financial statements. Third, the profitability of consolidation at a single physical location. Fourth, the commingling of assets and business functions. Fifth, the unity of interests and ownership between the various corporate entities. Sixth, the existence of parent and intercorporate guarantees on loans. Seventh, the transfer of assets without formal observance of corporate formalities.[253]

Under either set of the elements test, however, "no single element or group of elements is determinative in the court's inquiry."[254] Rather, the presence of the elements is merely a "predicate to substantive consolidation."[255]

The determinative question, under the balancing test, is whether "the possibility of economic prejudice which would result from continued separateness outweigh[s] the minimal prejudice that consolidation would cause."[256] But even under the balancing test, the list of elements are not irrelevant, rather they are "examples of information that may be useful to courts" charged with deciding whether "consolidation is necessary to avoid some harm or to realize some benefit."[257]

Historically, substantive consolidation has generally occurred between a debtor corporation and another debtor corporation that is a either a majority shareholder or a sister corporation of the debtor.[258] The substantive consolidation doctrine has been extended to debtor partnerships and, because of

---

[252]   *See e.g.*, *In re* Tureaud, 45 B.R. 658, 662 (Bankr. N.D. Okla. 1985) (citing Fish v. East, 114 F.2d 177 (10th Cir. 1940); *In re* Gulfco Inv. Corp., 593 F.2d 921 (10th Cir. 1979)). Such factors include:

Parent corporations owns all or a majority of the capital stock subsidiary; parent corporation and subsidiary have common directors and officers; parent corporation finances subsidiary; parent corporation is responsible for the incorporation of the subsidiary; subsidiary has grossly inadequate capital; parent corporation pays salaries or expenses or losses of subsidiary; subsidiary has substantially no business except with parent corporation or not assets except those conveyed to it by the parent corporation; parent refers to subsidiary as such or as a department or division; directors or executives of subsidiary do not act in the interests of the subsidiary, but take directions from the parent; and the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*E.g.*, *In re* Tureaud, 45 B.R. at 662.

[253]   *In re* Vecco Constr. Indus., Inc. 4 B.R. 407, 410 (Bankr. E.D. Va. 1980).

[254]   COLLIER ON BANKRUPTCY, *supra* note 230.

[255]   *Id.*

[256]   *In re* Snider Bros., 18 B.R. 230, 234 (Bankr. D. Mass. 1982).

[257]   Eastgroup Properties v. S. Motel Assocs., Ltd., 935 F.2d 245, 250 (11th Cir. 1991).

[258]   *See* COLLIER ON BANKRUPTCY, *supra* note 230.

their limited liability, it is not surprising that courts have applied the doctrine to LLCs as well.[259] Furthermore, it is likely that courts would be willing to extend substantive consolidation to SLLCs and protected series since the SLLC and the protected series are similar to partnerships and corporations.

The application of substantive consolidation has traditionally been limited to "separate legal entities."[260] The fact that a protected series may not be a separate juridical entity—i.e., lacks the power to sue and be sued—does not necessitate that it is not a separate legal entity. Statutes are clear that the protected series (i) may undertake activities in their own name; (ii) may keep separate books; (iii) may have separate assets and liabilities; and (iv) are only answerable to their stakeholders.[261] The ULC refers to protected series as a "quasi-distinct legal person,"[262] but considering their statutory powers, and the fact that the IRS will likely recognize them as separate taxable entities,[263] it seems protected series may be considered separate for substantive consolidation considerations. Thus, this Comment proposes that substantive consolidation can appropriately be considered regardless of whether the debtor is a protected series or a SLLC, even if the protected series under the SLLC is not considered a "separate juridical entity."

CONCLUSION

Series limited liability companies push the conceptual limits of typical business entities by providing their members with unparalleled liability protection in a single business organization. While the SLLC is related to the traditional LLC and shares the benefits of flow through taxation, the SLLC's statutory ability to silo assets and liabilities into protected series parallels the protections created in a multi-level, parent-subsidiary, corporate structure. The popularity of the SLLC has dramatically increased from its humble beginning in 1996, but its growth is encumbered by the uncertainty surrounding its bankruptcy eligibility and the horizontal limited liability shields created by SLLC statutes.

---

[259]   *See e.g.*, FDIC v. Colonial Realty Co., 966 F.2d 57, 60–61 (2d Cir. 1992) (substantive consolidation between partnership and two debtor individual partners was upheld by court); *In re* Lodge at Big Sky, LLC, 454 B.R. 138, 143 (Bankr. D. Mont. 2011) (substantive consolidation of two LLCs).

[260]   *See In re* Owens Corning, 419 F.3d 195, 205 (3d Cir. 2005) (quoting Genesis Health Ventures, Inc. v. Stapleton (*In re* Genesis Health Ventures, Inc.), 402 F.3d 416, 423 (3d Cir. 2005)).

[261]   *See* UNIF. PROTECTED SERIES ACT, Prefatory Note at 2 (UNIF. LAW COMM'N 2017).

[262]   *See id.* at 3.

[263]   Proposed Regulation 26 C.F.R. § 301.7701-1(a)(5).

The unparalleled limited liability afforded to SLLC's members raises new questions of how far a state may go in sheltering a debtor's liability to creditors. This Comment responds by offering a bankruptcy litigation framework. The framework provides practitioners with the procedural posture and substantive grounds to dispute eligibility and circumvent horizontal limited liability. With these tools, creditors can further their relief and effectuate the federal bankruptcy interest in promptly distributing assets among similarly situated creditors, thus, restoring the equilibrium between federal and state interests.

Bankruptcy eligibility is a contested matter, as such, interested parties may dispute a protected series' eligibility by filing a motion. This Comment asserts that courts will likely find that the Series LLC is eligible for federal bankruptcy relief. The eligibility of protected series, on the other hand, may depend on the applicable enabling statute.

The horizontal liability shields may be avoided in two ways. First, the interested party may seek to increase the property of the estate by swallowing assets on a sister protected series. Second, the interested party may move for substantive consolidation.

Disputes over valid interests in property, and consequently over property of the estate, are governed by adversary proceedings, which are initiated by filing a complaint. The claimant may dispute property interests on two substantive grounds. The first is that the nondebtor protected series in question failed to earn limited liability as a quid pro quo for statutory adherence. The second is that the nondebtor protected series is an alter ego of the debtor protected series.

Substantive consolidation is grounded in the court's equitable power and requires a party to make a motion. Therefore, it is treated as a contested matter. Substantive consolidation is generally limited between two debtor entities, but courts have, in limited circumstances, cautiously extended substantive consolidation to situations where a nondebtor is consolidated with a debtor entity. Such an application may benefit a creditor of a protected series because it would ultimately increase the property of the estate.

In conclusion, even though the Series LLC frustrates a creditor's ability to satisfy its claims in bankruptcy, there are still avenues of attack. Using this bankruptcy litigation framework can provide parties in interest with multiple avenues to reach relief.

THOMAS J. MCELHINNEY[*]

[*]   Notes and Comments Advisory Committee Editor, *Emory Bankruptcy Developments Journal*; J.D. Candidate, Emory University School of Law (2019); B.S., *magna cum laude*, Florida State University (2011). Recipient of the 2018 Keith J. Shapiro Award for Excellence in Corporate Bankruptcy Writing. My sincerest gratitude goes to Rafael I. Pardo, Robert T. Thompson Professor of Law at Emory University, for his invaluable suggestions, advice and mentorship. To my dearest wife, Kirsten, and our family, I am thankful for your endless love and unwavering support.