4300232102649



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
# FARM AND RANCH CONTRACT

11-10-2020



**1. PARTIES:** The parties to this contract are __KrisJenn Ranch, LLC__ (Seller) and __A&S Ranch, LTD__ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the Property (Property).

A. LAND:  The land situated in the County of __Uvalde__, Texas, described as follows: __980 Ac.+/- in Uvalde County Texas__

or as described on attached exhibit, also known as __980 Ac. Uvalde County Texas, EXHIBIT B__ (address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.

B. IMPROVEMENTS:

(1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.

(2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above-described real property.

C. ACCESSORIES:

(1) FARM and RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☑ portable buildings ☑ hunting blinds ☐ game feeders ☑ livestock feeders and troughs ☑ irrigation equipment ☐ fuel tanks ☑ submersible pumps ☑ pressure tanks ☐ corrals ☐ gates ☐ chutes ☑ other: __See Para 11__

(2) RESIDENTIAL ACCESSORIES:  The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for:  (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.  "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. CROPS:  Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

E. EXCLUSIONS:  The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession: __NA__

F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing ................... $_____7,450,000.00__

B. Sum of all financing described in the attached: ☐  Third Party Financing Addendum, ☐  Loan Assumption Addendum, ☐  Seller Financing Addendum .. $_____

C. Sales Price (Sum of A and B) .......................................... $_____7,450,000.00__

D. The Sales Price ☐ will ☑ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $_____ per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within _____ days after the terminating party receives the survey.  If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☐ 3A ☐ 3B ☐ proportionately to 3A and 3B.

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)

☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.

☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.

Initialed for identification by Buyer _____ and Seller _____     TREC NO. 25-13

Contract Concerning _____ 980 Ac.+/- in Uvalde County Texas _____ Page 2 of 11 ___ 11-10-2020
(Address of Property)

☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.

☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

## 5. EARNEST MONEY AND TERMINATION OPTION:

A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to Chicago Title _____, as escrow agent, at _____ 116 N East St, Uvalde, TX 78801 _____ (address): $_____50,000.00 as earnest money and $_____NA as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

   (1) Buyer shall deliver additional earnest money of $_____ to escrow agent within _____ days after the Effective Date of this contract.

   (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

   (3) The amount(s) escrow agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

   (4) Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases escrow agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ___NA___ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and escrow agent shall release any Option Fee remaining with escrow agent to Seller; and (ii) any earnest money will be refunded to Buyer.

C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.

E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

## 6. TITLE POLICY AND SURVEY:

A. TITLE POLICY: Seller shall furnish to Buyer at ☐ Seller's ☑ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____Chicago Title_____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

   (1) The standard printed exception for standby fees, taxes and assessments.
   (2) Liens created as part of the financing described in Paragraph 3.
   (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
   (4) The standard printed exception as to marital rights.
   (5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
   (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
   ☑ (i) will not be amended or deleted from the title policy; or
   ☐ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☐ Seller.
   (7) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer _____ and Seller _____ _____ ___ TREC NO. 25-13

Contract Concerning _____ 980 Ac.+/- in Uvalde County Texas _____ Page 3 of 11   11-10-2020
(Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):

☐ (1) Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** The existing survey ☐ will ☐ will not be recertified to a date subsequent to the Effective Date of this contract at the expense of ☐ Buyer ☐ Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of ☐ Buyer ☐ Seller no later than 3 days prior to Closing Date.

☑ (2) Within ___14___ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

☐ (4) No survey is required.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (7) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity:_____
_____
_____

Buyer must object the earlier of (i) the Closing Date or (ii) ___3___ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections.  If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections.  If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. EXCEPTION DOCUMENTS:  Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

F. SURFACE LEASES: Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: NA_____
_____.

G. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) TIDE WATERS:  If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.  An addendum containing the notice promulgated by TREC or required by the parties must be used.

(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in

Initialed for identification by Buyer____ _____ and Seller____ _____      TREC NO. 25-13

Contract Concerning _____ 980 Ac.+/- in Uvalde County Texas _____ Page 4 of 11    11-10-2020
(Address of Property)

the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☑ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**
A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .
**NOTICE**: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.
B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☐ (1) Buyer has received the Notice
☑ (2) Buyer has not received the Notice. Within _____5_____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☐ (3) The Texas Property Code does not require this Seller to furnish the Notice.
C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.
D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☑ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

Initialed for identification by Buyer _____ and Seller _____     TREC NO. 25-13

Contract Concerning _____ 980 Ac.+/- in Uvalde County Texas _____ Page 5 of 11    11-10-2020
(Address of Property)

E. COMPLETION OF REPAIRS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. SELLER'S DISCLOSURES:   Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the Property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards that materially and adversely affect the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ _____ -0-.  Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS:  The Property is subject to the government programs listed below or on the attached exhibit: N/A _____
_____
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

## 8. BROKERS AND SALES AGENTS:
A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale.  Disclose if applicable:_____
_____.
B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

## 9. CLOSING:
A. The closing of the sale will be on or before _____ August 20th _____, 20 21 _____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

## 10. POSSESSION:
A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

Initialed for identification by Buyer_____ and Seller_____  TREC NO. 25-13

Contract Concerning _____980 Ac.+/- in Uvalde County Texas_____ Page 6 of 11    11-10-2020
(Address of Property)

B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

1.) Buyer and Seller agree that each party is to pay 1/2 of the title policy.  2.) Buyer and Seller agree that each party is to pay 1/2 of the survey expense. 3.) Seller to leave all owned blinds and feeders, most all furniture in all houses, John Deere tractors and attachments, Kabota tractor and attachments, both high rack hunting vehicles in barn, two bass boats, Caterpillar backhoe, shipping container, all cattle believed to be 11 cows and calves, Angus and Hereford Bulls, 2 Longhorns, 2 donkeys and 2 Buffalo. Excluded is 1 small red calf which belongs to Corry Molloy.

4.) See "Addendum" attached for additional provisions. The 980 acres contracted for herein is described on Exhibit B, less and except 8.00 acres & easement granted in SWD, OPR Doc No. 2020005176, Uvalde County

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
(1) Expenses payable by Seller (Seller's Expenses):
(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
(b) Seller shall also pay an amount not to exceed $ _____-0- to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
(2) Expenses payable by Buyer (Buyer's Expenses) Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.
B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

Initialed for identification by Buyer _____ and Seller _____       TREC NO. 25-13

Contract Concerning _____ 980 Ac.+/- in Uvalde County Texas _____ Page 7 of 11    11-10-2020
(Address of Property)

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

Initialed for identification by Buyer _____ and Seller _____    TREC NO. 25-13

| Contract Concerning | 980 Ac.+/- in Uvalde County Texas | Page 8 of 11 | 11-10-2020 |
|---|---|---|---|
| | (Address of Property) | | |

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

To Buyer at:  KrisJenn Ranch, LLC

410 Spyglass, McQueeney, TX 78123

Phone:  ( 210 ) 288-2806

E-mail/Fax:  larrymwright54@gmail.com

E-mail/Fax:

To Seller at:  Allyn Archer

14,002 N. U.S. Hwy. 83, Uvalde TX 78801

Phone:  ( 210 ) 213-2792

E-mail/Fax:  aarcher1029@gmail.com

E-mail/Fax:

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☐ Third Party Financing Addendum

☐ Seller Financing Addendum

☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☑ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Addendum Regarding Residential Leases

☐ Addendum Regarding Fixture Leases

☑ Other (list):  Exhibit "A", Addendum

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is:  Matt Dodson

Phone:  ( 830 ) 988-2885

Fax:  (    )

E-mail:  matt@dodsoneverett.com

Seller's
Attorney is:  Matt Dodson

Phone:  ( 830 ) 988-2885

Fax:  (    )

E-mail:  matt@dodsoneverett.com

Initialed for identification by Buyer _____ and Seller _____          TREC NO. 25-13

Contract Concerning _____ 980 Ac.+/- in Uvalde County Texas _____ Page 9 of 11     11-10-2020
(Address of Property)

EXECUTED the _19TH_ day of _July_____, 20_21_ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer _____     Seller _____

Buyer _____     Seller _____



The form of this contract has been approved by the Texas Real Estate Commission.  TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-13. This form replaces TREC NO. 25-12.

TREC NO. 25-13

Contract Concerning _____980 Ac.+/- in Uvalde County Texas_____ Page 10 of 11    11-10-2020
(Address of Property)

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:                                        Listing Broker:

By: _____        By: _____

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| Other Broker | License No. | Listing or Principal Broker | License No. |
|---|---|---|---|

| Associate's Name | License No. | Listing Associate's Name | License No. |
|---|---|---|---|

| Team Name | | Team Name | |
|---|---|---|---|

| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
|---|---|---|---|

| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
|---|---|---|---|

| Other Broker's Office Address | Phone | Listing Broker's Office Address | Phone |
|---|---|---|---|

| City | State | Zip | City | State | Zip |
|---|---|---|---|---|---|

represents  ☐ Buyer only as Buyer's agent
            ☐ Seller as Listing Broker's subagent

| Selling Associate | License No. |
|---|---|

Team Name

| Selling Associate's Email Address | Phone |
|---|---|

| Licensed Supervisor of Selling Associate | License No. |
|---|---|

Selling Associate's Office Address

| City | State | Zip |
|---|---|---|

represents  ☐ Seller only
            ☐ Buyer only
            ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☐Seller ☐ Buyer will pay Listing/Principal Broker ☐a cash fee of $_____ or ☐ _____% of the total Sales Price; and (b) ☐Seller ☐ Buyer will pay Other Broker ☐a cash fee of $_____ or ☐ _____% of the total Sales Price.  Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

**Brokers' fees are negotiable.  Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.**

_____        _____
Seller                                           Buyer

_____        _____
Seller                                           Buyer

Do not sign if there is a separate written agreement for payment of Brokers' fees.

TREC NO. 25-13

Contract Concerning _____ 980 Ac.+/- in Uvalde County Texas _____ Page 11 of 11    11-10-2020
(Address of Property)

---

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____                              _____
Escrow Agent                                                          Date

## EARNEST MONEY RECEIPT

Receipt of $50,000⁰⁰ _____ Earnest Money in the form of _DC# 8376_____
is acknowledged.

_Chicago Title_    _Julie City_    _wm.dubose@cti.com_  _7/29/2016_
Escrow Agent              Received by      Email Address              Date/Time  4:39

_116 N East St_                                    _830  333 7050_
Address                                                             Phone

_Uvalde_          _Tx_      _78801_          _830  278  3736_
City              State          Zip                Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

_Chicago Title_    _Julie City_    _wm.dubose@cti.com_  _7/29/2021_
Escrow Agent              Received by      Email Address              Date

_116 N East St_                                    _830  333 7050_
Address                                                             Phone

_Uvalde_          _Tx_      _78801_          _830  278  3736_
City              State          Zip                Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $_____ additional Earnest Money in the form of _____
is acknowledged.

_____    _____    _____    _____
Escrow Agent                        Received by      Email Address      Date/Time

_____                              _____
Address                                                             Phone

_____    _____    _____    _____
City                              State          Zip                Fax

TREC NO. 25-13

960 Acres

## Addendum

1. Seller shall convey to Buyer All one hundred-percent (100%) right, title, and interest in and to all surface located materials or surface-mined minerals in, on or under the Land, including, but not limited to clay, limestone, building stone, all other stone, coal, water, sand, gravel, caliche, surface shale, near-surface lignite, iron and all metallic and nonmetallic mineral ores and substances together with all rights of Egress and Ingress.

2. Seller shall convey to Buyer All one hundred-percent (100%) rights of any nature to the water, in , on, under and that may be produced from the Land (the "Water"), including, without limitation, (a) the water of every stream, river, spring, lake, storm water, flood water, and rain water of every stream, river, spring, canyon, ravine, depression and watershed in or on the Land (the "Surface Water"), together with all rights to impound, divert or use the Surface Water, and (b) the water percolating beneath the surface of the Land in any subsurface water-bearing reservoir beneath the Land (the "Groundwater"), together with all rights to capture, withdraw, or use the Groundwater, and further together without limitation, all permits, certificates of adjudication, certified filings, or applications for permits associated with, related to, or authorizing the use of the Water in, on, or under the Land, together with all claims or rights to apply for and obtain permits, certificates or authorization to appropriate and use the Water, including, without limitations, claims or rights based on historical use of Water on or from the Land.  The interests conveyed in this paragraph include all Water related facilities and improvements in, on, or under the Land, including without limitation, all wells, pumps, motors, meters, tanks, pipes, irrigation equipment, and Water storage and distribution facilities together with all rights of Egress and Ingress.

3. Seller shall convey to Buyer All owned oil, gas and other minerals in, on, under and that may be produced from the Land together with all executive and leasing rights in and to the oil, gas and other mineral estate including all rights of Egress and Ingress.

4. Seller shall convey to Buyer 100% Wind Rights and 100% Solar Rights.

5. Buyer and Seller may elect to conduct a 1031 Tax Free Exchange at no liability to the other Party.  Each party agrees to cooperate in any such exchange.

6. On the date of the Receipted Contract, Seller and its agents shall cease all hunting and removal of wildlife species.

7. All surface leases, if any, shall terminate prior to Closing.

8. Buyer shall be allowed access to the Property to conduct Due Diligence prior to Closing.

EXHIBIT "B"

# D. G. Smyth & Company, Inc.

*"A Statewide Professional Land Surveying Service Company"*

**1022 Garner Field Road, Suite D**

**Uvalde, Texas 78801**

**Office Tel. (830) 591-0858**                         **Fax (830) 591-0863**

## FIELD NOTES FOR A BOUNDARY SURVEY
## COMPLETED JUNE 13, 2014
## 122.65 ACRES

Being a boundary survey of 122.65 grid acres of land lying in Uvalde County, Texas, being out of and a part of Abner Eckolds Survey 689, Abstract No. 165 and being all of that same certain tract called 121.42 acres as described in conveyance documents to Bonnie Bell Corder Northcutt and recorded in Volume 301, Pages 912-915 of the Deed Records of Uvalde County, Texas, and being more particularly described by metes and bounds as follows; (The courses, distances, areas and any coordinates cited herein or shown on the corresponding survey plat conform to the Texas Coordinate System, North American Datum 1983, Texas South Central Zone and were derived from an OPUS provided solution of GPS observations made from a steel stake set on December 21, 2012 with coordinates of N= 13604971.87'& E= 1771627.86' and bearing S 02° 59' 54" E at a distance of 3243.26 feet from the following point of beginning. (All corners called for as being set are marked on the ground with ½" diameter steel stakes with identification markers stamped "SMYTH/2046" attached unless otherwise noted or shown.):

**BEGINNING** at a 1 1'2 inch diameter metal pipe stake found marking the northwest corner of that same certain 436.54 acres tract as described in conveyance documents to LFC Legacy, Ltd. and recorded in Document No. 2012004437 of the Official Public Records of Uvalde County, Texas, being an exterior corner of that same certain 842.63 acres tract described in conveyance documents to KrisJenn Ranch, L.L.C. and recorded in Document No. 2014000193 of the Official Public Records of Uvalde County, Texas, on a south boundary line of the herein described tract located at N= 13608210.62' & E= 1771797.50', and on the most easterly northeast corner of that same certain thirty (30) foot road easement granted to Boysville, Inc. and recorded in Volume 305, Page 491 of the Deed Records of Uvalde County, Texas, and from said point of beginning a 3 inch pipe 3-way fence corner post bears S 41° 39' 46" E at 1.14 feet,

**THENCE:** N 89° 16' 44" W, generally with the fenced boundary along a southern boundary of the herein described tract, a north line of that same certain 842.63 acres tract in conveyance documents to KrisJenn Ranch, L.L.C. and recorded in Document No. 2014000193 of the Official Public Records of Uvalde County, Texas, and along the most easterly north line of that same certain thirty (30) foot road easement granted to Boysville, Inc. and recorded in Volume 305, Page 491 of the Deed Records of Uvalde County, Texas, for a distance of 667.40 feet to ½ inch diameter steel stake found in concrete on the southwest side of a 2 inch diameter pipe fence corner post for the southwest corner of the herein described tract, a re-entrant corner of said 842.63 acres tract and a re-entrant corner of said thirty (30) foot road easement;

**THENCE:** N 00° 10' 48" W, generally with the fenced boundary along a west boundary of the herein described tract, an east line of said 842.63 acres tract, and an east line of said thirty (30) foot easement, crossing the center line of a thirty (30) foot road easement granted to Smith M. Hill et al and recorded in Volume 402, Page 853 of the Official Public Records of Uvalde County, Texas, and continuing along the same course now for a total distance of 1219.97 feet to a ½ inch steel stake found on the north side of a 2 inch diameter fence corner post for the most westerly northwest corner of the herein described tract, a re-entrant corner of said 842.63 acres tract and an exterior of said road easement to Boysville;

Page 1 of 3

THENCE: S 89° 23 35" E, generally with the fenced boundary of the herein described tract and with a common line of said 842 63 acres tract for a distance of 1944.12 feet to a ½ inch diameter steel stake found for a re-entrant corner of the herein described tract and an exterior corner of said 842.63 acres tract;

THENCE: N 07° 30' 39" W, generally with the fenced boundary of the herein described tract and an east line of said 842.63 acres tract for a distance of 1282.79 feet to a ½ inch steel stake set (replaced 40d nail found at same location) by abandoned fence angle post for an angle point of the herein described tract and said 842.63 acres tract:

THENCE: N 17° 33' 08" W, along a common line between the herein described tract and said 842.63 acres tract, at 552.48 feet passing thru a 1 ½ inch diameter metal pipe stake found on the southeast bank of the Frio River and continuing along the same course now for a total distance of 560.15 feet to a point located at S.P.C N- 13611224.32' & E= 1772733.73' on the gradient boundary along the right or southeast bank of the Frio River;

THENCE: Progressing partly northeasterly, partly southeasterly and partly southwesterly along and with the right gradient boundary of said Frio River for the following twenty four (24) calls which approximate the sinuosity of said Frio River as of the day surveyed:

1. N 33° 47' 00" E for a distance of 75 53 feet to an angle point.
2. N 49° 00' 05" E for a distance of 135.06 feet to an angle point.
3. N 58° 41' 28" E for a distance of 120.33 feet to an angle point.
4. N 65° 38' 36" E for a distance of 203.04 feet to an angle point.
5. S 67° 32' 33" E for a distance of 72 01 feet to an angle point.
6. S 24° 17' 27" E for a distance of 99 04 feet to an angle point.
7. S 40° 02' 32" E for a distance of 307.73 feet to an angle point.
8. S 57° 38' 14" E for a distance of 131.00 feet to an angle point.
9. S 39° 43' 16" E for a distance of 115.45 feet to an angle point.
10. S 03° 12' 22" W for a distance of 213.36 feet to an angle point.
11. S 03° 42' 58" W for a distance of 144.24 feet to an angle point.
12. S 11° 49' 59" W for a distance of 168.72 feet to an angle point.
13. S 26° 40' 49" E for a distance of 284.31 feet to an angle point.
14. S 40° 03' 14" E for a distance of 140.16 feet to an angle point
15. S 29° 57' 22" E for a distance of 405.23 feet to an angle point.
16. S 25° 05' 44" E for a distance of 145.40 feet to an angle point.
17. S 22° 21' 43" E for a distance of 150.27 feet to an angle point.
18. S 18° 27' 21" E for a distance of 88.98 feet to an angle point.
19. S 10° 59' 54" E for a distance of 156.64 feet to an angle point.
20. S 17° 21' 29" E for a distance of 213.29 feet to an angle point.
21. S 07° 46' 38" W for a distance of 148.37 feet to an angle point.
22. S 00° 40' 44" E for a distance of 272.49 feet to an angle point.
23. S 07° 49' 41" W for a distance of 172.63 feet to an angle point.
24. S 15° 01' 05" E for a distance of 199.87 feet to the southeast corner of the herein described tract located at N=13608180.20' & E=1774251.58' and the northeast corner of that same certain 436.54 acres tract as described in conveyance documents to LEC Legacy, Ltd and recorded in Document No. 2012004437 of the Official Public Records of Uvalde County, Texas:

**THENCE:** N 89° 17' 23" W, departing from said river and generally with the fence along the south boundary of the herein described tract and the north line of said 436.54 acres tract, at 75.26 feet passing thru a 1 ½ inch diameter metal pipe stake found on the west high bank of the Frio River, and continuing along the same course now for a total distance of 2454.27 feet to the **Place of Beginning** and containing 122.65 acres of land within the herein described boundary as determined by an actual survey made on the ground by D. G. Smyth & Co. and completed June 13, 2014

THE STATE OF TEXAS
COUNTY OF UVALDE

It is hereby certified that the foregoing field note description and attached plat were prepared from an actual on the ground survey made by personnel working under my direct supervision and that same are true and correct according to same said survey.

D G Smyth

D. G. Smyth-Registered Professional Land Surveyor
Licensed State Land Surveyor-No. 2046
PROJECT NO. 14-8188

Page 3 of 3

# D. G. Smyth & Company, Inc.

"A Statewide Professional Land Surveying Service Company"
**1022 Garner Field Road, Suite D**
**Uvalde, Texas 78801**

**Office Tel. (830) 591-0858**                    **Fax (830) 591-0863**

## FIELD NOTES FOR A BOUNDARY SURVEY
## COMPLETED JANUARY 7, 2013
## TRACT I–842.63 ACRES

Being a boundary survey of 842.63 grid acres of land lying in Uvalde County, Texas, being out of and a part of Abner Echolds Survey689, Abstract No. 165 and being a part of that same certain tract called 836.940 acres designated as Tract I described in conveyance documents to PKC CROSSFIRE RANCH, L.L.C. and recorded in Document No. 2006001087 of the Official Public Records of Uvalde County, Texas, and being more particularly described by metes and bounds as follows: (The courses, distances, areas and any coordinates cited herein or shown on the corresponding survey plat conform to the Texas Coordinate System, North American Datum 1983, Texas South Central Zone and were derived from an OPUS provided solution of GPS observations made from a steel stake set on December 21, 2012 with coordinates of N= 13604971.87' & E= 1771627.86' and bearing N 79° 09' 09" E at a distance of 144.70 feet from the following point of beginning. (All corners called for as being set are marked on the ground with ½" diameter steel stakes with identification markers stamped "SMYTH/2046" attached unless otherwise noted or shown.):

**BEGINNING** at a sucker rod found marking the southeast corner of the herein described tract located at N= 13604944.64' & E= 1771485.74', on the south line of that same certain thirty (30) foot road easement granted to Southwest Livestock Exchange, Inc. and recorded in Volume 226, Page 850 of the Deed Records of Uvalde County, Texas, and on the ostensible common line between Abner Eckolds Survey 689, Abstract No.165 and B.S. & F. Survey 147, Abstract No. 77 and on the north boundary of that same certain 4472.8249 acres described in conveyance documents to Elizabeth Ann Kincaid Riley and recorded in Volume 313, Page 610-638 of the Deed Records of Uvalde County, Texas, and the southwest corner of that same certain 436.54 acre tract described in conveyance documents to Corn Processors, Inc. and recorded in Volume 339, Page 517-521 of the Deed Records of Uvalde County, Texas;

**THENCE:** N 89° 45' 30" W, generally with the fenced boundary along the south line of the herein described tract and the north line of said 4472.8249 acre tract and along the south line of aforesaid thirty (30) foot road easement and along the ostensible common line between said Survey 689 and Survey 77,passing the northwest corner of said Survey 77 and the northeast corner of V.L. James & John J. Stevens Survey 148, Abstract No. 1257, and continuing along the same course now with the common line between said Survey 689 and Survey 148, and continuing now along the same course for a distance of 5551.49 feet to a ½ inch steel stake found against the northwest side of a 4-way 12 inch diameter fence corner post for the southeast corner of the herein described tract, the northwest corner of said 4472.8249 acre tract, the northeast corner of that same certain 986.967 acres tract described in conveyance documents to Frank G. Krivan and recorded in Volume 181, Page 662-670 of the Deed Records of Uvalde County, Texas, and the southeast corner of that same certain 1357 acre tract described in conveyance documents to Southwest Livestock Exchange and recorded in Volume 178, Page 216-218 of the Deed Records of Uvalde County, Texas;

**THENCE:** N 06° 21' 18" W, generally with the fenced boundary along the west line of the herein described tract and a east line of said 1357 acres tract and along the west line of a thirty (30) foot road easement granted to William Vann McElroy et ux and recorded in Volume 439, Page 576 of the Official Public Records of Uvalde County, Texas, for a distance of 3347.40 feet to a 1 ½ inch diameter metal pipe stake found for a re-entrant corner of the herein described tract;

**THENCE:** S 85° 01' 12" W, departing from occupied fence for a distance of 14.23 feet to a ½ inch steel stake set for a exterior corner of the herein described tract and a re-entrant corner of said 1357 acre tract;

**THENCE:** N 00° 20' 22" W, with the west boundary of the herein described tract, the east boundary of said 1357 acre tract and a west line of aforesaid thirty (30) foot road easement, at 36.65 feet passing a 3 ½ inch metal pipe fence angle post and continuing along the same course now generally with the fence for a total distance of 2210.73 feet to a 3-way 6 inch diameter metal fence corner post found for the most westerly northwest corner of the herein tract and a re-entrant corner of the said 1357 acre tract;

**THENCE:** S 88° 38' 38" E, generally with the fenced boundary along a north line of the herein described tract and a northeasterly south line of said 1357 acre tract and the north line of a thirty (30) foot road easement granted to Smith M. Hill, Jr., et al and recorded in Volume 402, Page 853 of the Official Public Records of Uvalde County, Texas, for a distance of 1082.57 feet to a ½ inch steel stake set in fence line for a corner of the herein described tract;

**THENCE:** Progressing northeasterly between the common boundary of the herein described tract and said 1357 acre tract for the following six (6) calls:

1. N 83° 35' 35" E for a distance of 66.32 feet to a ½ inch steel stake set for a corner.
2. N 69° 41' 18" E for a distance of 89.74 feet to a ½ inch steel stake set for a corner.
3. N 45° 03' 18" E for a distance of 133.18 feet to a ½ inch steel stake set for a corner.
4. N 38° 43' 37" E for a distance of 146.53 feet to a ½ inch steel stake set for a corner and from which point a 3 inch metal pipe fence angle post bears S 46° 00' 53" E at a distance of 6.87 feet.
5. N 59° 53' 58" E for a distance of 211.44 feet to a ½ inch steel stake set for a corner.
6. N 56° 02' 34" E for a distance of 300.50 feet to a ½ inch steel stake set for a corner and from which point a 3 inch metal pipe fence corner post bears N 86° 21' 06" E at a distance of 5.75 feet.

**THENCE:** N 49° 15' 54" W, between the common boundary of the herein described tract and said 1357 acre tract, at 119.99 feet passing a ½ inch steel stake found and continuing along the same course now for a total distance of 126.73 feet to a point located at S.P.C. N= 13611082.25' & E= 1767290.92' on the gradient boundary along the right or southeast bank of the Frio River;

**THENCE:** Progressing partly northeasterly and partly southeasterly along and with the right gradient boundary of said Frio River for the following fifty three (53) calls which approximate the sinuosity of said Frio River as of the day surveyed:

1. N 23° 53' 01" E for a distance of 65.78 feet to an angle point.
2. N 50° 00' 26" E for a distance of 97.16 feet to an angle point.
3. N 62° 08' 25" E for a distance of 178.71 feet to an angle point.
4. N 15° 49' 16" E for a distance of 64.68 feet to an angle point.
5. N 28° 31' 38" E for a distance of 73.72 feet to an angle point.
6. N 34° 21' 04" E for a distance of 277.37 feet to an angle point.
7. N 38° 54' 41" E for a distance of 90.33 feet to an angle point.
8. N 53° 37' 28" E for a distance of 69.90 feet to an angle point.

9.  S 80° 29' 17" E for a distance of 77.78 feet to an angle point.
10. S 56° 10' 38" E for a distance of 167.16 feet to an angle point.
11. S 78° 00' 52" E for a distance of 114.71 feet to an angle point.
12. S 71° 14' 05" E for a distance of 309.34 feet to an angle point.
13. S 78° 35' 19" E for a distance of 155.50 feet to an angle point.
14. S 34° 51' 41" E for a distance of 146.33 feet to an angle point.
15. S 00° 10' 47" W for a distance of 168.61 feet to an angle point.
16. S 06° 19' 56" W for a distance of 118.06 feet to an angle point.
17. S 03° 04' 49" W for a distance of 117.72 feet to an angle point.
18. S 02° 29' 52" E for a distance of 235.45 feet to an angle point.
19. S 09° 42' 54" E for a distance of 235.28 feet to an angle point.
20. S 40° 06' 13" E for a distance of 110.69 feet to an angle point.
21. N 40° 30' 07" E for a distance of 135.77 feet to an angle point.
22. S 86° 28' 49" E for a distance of 30.23 feet to an angle point.
23. N 53° 07' 28" E for a distance of 84.28 feet to an angle point.
24. N 66° 34' 09" E for a distance of 203.36 feet to an angle point.
25. N 39° 29' 47" E for a distance of 115.41 feet to an angle point.
26. N 65° 21' 50" E for a distance of 95.62 feet to an angle point.
27. N 73° 25' 38" E for a distance of 146.54 feet to an angle point.
28. N 76° 57' 01" E for a distance of 108.03 feet to an angle point.
29. N 89° 11' 52" E for a distance of 210.73 feet to an angle point.
30. N 66° 50' 54" E for a distance of 163.80 feet to an angle point.
31. N 78° 10' 27" E for a distance of 149.50 feet to an angle point.
32. N 54° 20' 29" E for a distance of 50.46 feet to an angle point.
33. N 07° 40' 35" W for a distance of 152.19 feet to an angle point.
34. N 34° 29' 12" E for a distance of 154.31 feet to an angle point.
35. N 44° 26' 50" E for a distance of 341.86 feet to an angle point.
36. N 69° 45' 14" E for a distance of 94.04 feet to an angle point.
37. S 18° 27' 28" E for a distance of 106.16 feet to an angle point.
38. S 52° 50' 32" E for a distance of 216.50 feet to an angle point.
39. S 35° 56' 18" E for a distance of 234.52 feet to an angle point.
40. S 25° 47' 44" E for a distance of 201.58 feet to an angle point.
41. S 39° 06' 05" E for a distance of 263.19 feet to an angle point.
42. S 01° 08' 41" E for a distance of 161.53 feet to an angle point.
43. S 20° 15' 21" E for a distance of 77.17 feet to an angle point.
44. N 83° 28' 52" E for a distance of 175.06 feet to an angle point.
45. S 65° 46' 51" E for a distance of 202.41 feet to an angle point.
46. N 81° 20' 26" E for a distance of 145.25 feet to an angle point.
47. N 86° 28' 49" E for a distance of 169.08 feet to an angle point.
48. N 80° 00' 19" E for a distance of 299.67 feet to an angle point.
49. N 46° 52' 11" E for a distance of 178.31 feet to an angle point.
50. N 41° 42' 13" E for a distance of 416.44 feet to an angle point.
51. N 35° 12' 40" W for a distance of 71.17 feet to an angle point.
52. N 28° 55' 07" E for a distance of 145.58 feet to an angle point.
53. N 24° 23' 37" E for a distance of 200.39 feet to the northeast corner of the herein described tract located at N=13611224.32' & E=1772733.73'.

**THENCE:** S 17° 33' 08" E, departing from river and along the most northerly east boundary of the herein described tract and the most northerly west line of that same certain 121.42 acres tract described in conveyance documents to Kathryn Ann Corder et al. and recorded in Volume 402, Page 853-879 (Document No. 9802901) of the Official Public Records of Uvalde County, Texas, at 7.67 feet found a 1 ½ inch diameter metal pipe stake and continuing for a total distance of 560.15 feet to a ½ inch steel stake set (replaced 40d nail found at same location) by abandoned fence angle post for a exterior corner of the herein described tract and a re-entrant corner of said 121.42 acre tract;

**THENCE:** S 07° 30' 39" E, along a west line of said 121.42 acre tract and a east line of the herein described tract for a distance of 1282.79 feet to a ½ inch steel stake found in old post hole for a northeasterly exterior corner of the herein described tract and a re-entrant corner of said 121.42 acre tract;

**THENCE:** N 89° 23 35" W, generally with the fenced boundary of the herein described tract and with a common line of said 121.42 acre tract for a distance of 1944.12 feet to a ½ inch steel stake found for a re-entrant corner of the herein described tract and the most westerly northeast exterior corner of said 121.42 acre tract;

**THENCE:** S 00° 10' 48" E, generally with the fenced boundary along an east line of the herein described tract, the west line of said 121.42 acres tract, and a east line of thirty (30) foot easement granted to Boysville, Inc. and recorded in Volume 305, Page 491 of the Deed Records of Uvalde County, Texas, and a east line of thirty (30) foot easement granted to Harry C. Chandler and J. W. Chandler Construction Co., Inc. and recorded in Volume 226, Page 904 of the Deed Records of Uvalde County, Texas, for a distance of 1219.97 feet to a ½ inch steel stake found set in concrete for a re-entrant corner of the herein described tract and the southeast corner of said 121.42 acre tract;

**THENCE:** S 89° 16' 44" E, generally with the fenced boundary along the eastern boundary of the herein described tract, the south line of said 121.42 acre tract, and a north line of aforesaid thirty (30) foot easements, for a distance of 667.40 feet to a 1 ½ inch diameter metal pipe stake found for a exterior corner of the herein described tract, on the south line of said 121.42 acre tract and the northwest corner of aforesaid 436.54 acre tract described in conveyance documents to Corn Processors, Inc. and recorded in Volume 339, Page 517-521 of the Deed Records of Uvalde County, Texas;

**THENCE:** S 05° 27' 09" W, generally with the fenced boundary along an east line of the herein described tract, and the west line of said 436.54 acre tract for a distance of 3280.90 feet to the **Place of Beginning** and containing 842.63 acres of land within the herein described boundary as determined by an actual survey made on the ground by D. G. Smyth & Co. and completed January 7, 2013.

THE STATE OF TEXAS:
COUNTY OF UVALDE:

It is hereby certified that the foregoing field note description and attached plat were prepared from an actual on the ground survey made by personnel working under my direct supervision and that same are true and correct according to same said survey.

D. G. Smyth-Registered Professional Land Surveyor/
Licensed State Land Surveyor-No. 2046
**PROJECT NO.12-4703 Tr. 1**

# D. G. Smyth & Company, Inc.

"A Statewide Professional Land Surveying Service Company"
**1022 Garner Field Road, Suite D**
**Uvalde, Texas 78801**

**Office Tel. (830) 591-0858**                    **Fax (830) 591-0863**

## FIELD NOTES FOR A BOUNDARY SURVEY
## COMPLETED JANUARY 7, 2013
## TRACT II–22.80 ACRES

Being a boundary survey of 22.80 grid acres of land lying in Uvalde County, Texas, being out of and a part of Abner Echolds Survey687, Abstract No. 164 and being that same certain tract called 21.034 acres designated as Tract II as described in conveyance documents to PKC CROSSFIRE RANCH, L.L.C. and recorded in Document No. 2006001087 of the Official Public Records of Uvalde County, Texas, and being more particularly described by metes and bounds as follows: (The courses, distances, areas and any coordinates cited herein or shown on the corresponding survey plat conform to the Texas Coordinate System, North American Datum 1983, Texas South Central Zone and were derived from an OPUS provided solution of GPS observations made from a steel stake set on December 21, 2012 located at S.P.C. N= 13604971.87'& E= 1771627.86' and bearing S08° 47' 26" W at a distance of 6319.91 feet from the following point of beginning. (All corners called for as being set are marked on the ground with ½" diameter steel stakes with identification markers stamped "SMYTH/2046" attached unless otherwise noted or shown.):

**BEGINNING** at a 1 ½ inch diameter metal pipe stake found on the left or northwest high flood bank of the Frio River marking a point on the north boundary line of the herein described tract located at S.P.C.N= 13611217.55'& E= 1772593.67', and on the south boundary line of that same certain 966.45 acre tract described in conveyance documents to Rankin Kennedy Peters et al. and recorded in Volume 365, Page 527-528 of the Deed Records of Uvalde County, Texas;

**THENCE:** S 89° 39' 48" E, along the common boundary of the herein described tract and said 966.45 acre tract for a distance of 77.63 feet to a point located at S.P.C. N= 13611217.09'& E= 1772671.30 on the gradient boundary along the left or northwest bank of the Frio River;

**THENCE:** Progressing partly southwesterly and partly northwesterly along and with the left gradient boundary of said Frio River for the following twenty seven (27) calls which approximates the sinuosity of said Frio River as of the day surveyed:

1. S 26° 45' 56" W for a distance of 72.77 feet to an angle point.
2. S 31° 00' 46" W for a distance of 158.85 feet to an angle point.
3. S 04° 28' 53" W for a distance of 125.97 feet to an angle point.
4. S 42° 45' 22" W for a distance of 60.01 feet to an angle point.
5. S 50° 55' 03" W for a distance of 131.51 feet to an angle point.
6. S 46° 50' 13" W for a distance of 135.56 feet to an angle point.
7. S 38° 07' 44" W for a distance of 159.11 feet to an angle point.
8. S 37° 48' 43" W for a distance of 64.90 feet to an angle point.
9. S 74° 59' 44" W for a distance of 106.40 feet to an angle point.

10. S 81° 58' 21" W for a distance of 152.78 feet to an angle point.
11. N 89° 55' 02" W for a distance of 94.07 feet to an angle point.
12. W 86° 39' 12" W for a distance of 133.08 feet to an angle point.
13. S 58° 51' 33" W for a distance of 66.64 feet to an angle point.
14. N 81° 35' 49" W for a distance of 115.31 feet to an angle point.
15. N 57° 53' 19" W for a distance of 80.86 feet to an angle point.
16. N 88° 14' 57" W for a distance of 98.11 feet to an angle point.
17. S 67° 18' 20" W for a distance of 45.99 feet to an angle point.
18. N 30° 45' 20" W for a distance of 81.18 feet to an angle point.
19. N 06° 02' 41" E for a distance of 154.33 feet to an angle point.
20. N 66° 46' 53" E for a distance of 66.10 feet to an angle point.
21. N 33° 58' 31" W for a distance of 53.38 feet to an angle point.
22. N 66° 05' 20" W for a distance of 99.31 feet to an angle point.
23. N 31° 05' 29" W for a distance of 130.30 feet to an angle point.
24. N 49° 51' 34" W for a distance of 115.17 feet to an angle point.
25. N 37° 14' 55" W for a distance of 81.95 feet to an angle point.
26. N 20° 13' 25" W for a distance of 125.22 feet to an angle point.
27. N 43° 19' 04" W for a distance of 105.51 feet to an angle point.

**THENCE:** S 89° 39' 48" E, departing from said river boundary and along the common boundary line between the herein described tract and said 966.45 acre tract, at 124.55 feet passing a 12 inch diameter gate post located at S.P.C. N= 13611226.77' & E= 1771024.85' and continuing along the same course now generally with the fenced boundary between the herein described tract and said 966.45 acre tract, for a total distance of 1693.40 feet to the **Place of Beginning** and containing 22.80 acres of land within the herein described boundary as determined by an actual survey made on the ground by D. G. Smyth & Co. and completed January 7, 2012.

THE STATE OF TEXAS:
COUNTY OF UVALDE:

It is hereby certified that the foregoing field note description and attached plat were prepared from an actual on the ground survey made by personnel working under my direct supervision and that same are true and correct according to same said survey.

D. G. Smyth-Registered Professional Land Surveyor/
Licensed State Land Surveyor-No. 2046
**PROJECT NO.12-4703 Tr. II**

4300233107649

**DOUBLE A RANCH**
14002 N. US HWY. 83
UVALDE, TX 78801
PH. 830-591-9367

8376

30-9/1140
21

07-29-21 Date

Pay to the
Order of _CHICAGO TITLE_ $ 50,000

_Fifty Thousand 00/100_ Dollars

Frost
www.frostbank.com

For _Earnest Money_

⑆114000093⑆ 8376

MP

09-01-2019



APPROVED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

## SELLER'S DISCLOSURE NOTICE



EQUAL HOUSING
OPPORTUNITY

CONCERNING THE PROPERTY AT ___Kristenn Ranch 980acres Walde County, Tx.___
(Street Address and City)

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE PURCHASER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER OR SELLER'S AGENTS.

Seller ☑ is ☐ is not occupying the Property. If unoccupied, how long since Seller has occupied the Property? ___n/a___

1. The Property has the items checked below [Write Yes (Y), No (N), or Unknown (U)]:

| | | |
|---|---|---|
| Y Range | Y Oven | Y Microwave |
| Y Dishwasher | N Trash Compactor | Y Disposal |
| Y Washer/Dryer Hookups | N Window Screens | Y Rain Gutters |
| N Security System | N Fire Detection Equipment | N Intercom System |
| | Y Smoke Detector | |
| | N Smoke Detector-Hearing Impaired | |
| | N Carbon Monoxide Alarm | |
| | N Emergency Escape Ladder(s) | |
| N TV Antenna | Y Cable TV Wiring | Satellite Dish |
| Y Ceiling Fan(s) | Attic Fan(s) | Exhaust Fan(s) |
| Y Central A/C | Y Central Heating | N Wall/Window Air Conditioning |
| Y Plumbing System | Y Septic System | N Public Sewer System |
| Y Patio/Decking | Y Outdoor Grill | Y Fences |
| N Pool | N Sauna | Spa | ✓ Hot Tub |
| N Pool Equipment | N Pool Heater | Yes ✓ Automatic Lawn Sprinkler System |
| Fireplace(s) & Chimney (Wood burning) Y | | Fireplace(s) & Chimney (Mock) |
| N Natural Gas Lines | | Gas Fixtures |
| N Liquid Propane Gas | LP Community (Captive) | LP on Property |
| Garage: N Attached | ☑ Not Attached | Carport |
| Garage Door Opener(s): | ✓ Electronic | Control(s) |
| Water Heater: Yes | Gas | ✓ Electric |
| Water Supply: ___City | ✓ Well ___MUD | Co-op |
| Roof Type: Metal | Age: 7 (approx.) | |

Are you (Seller) aware of any of the above items that are not in working condition, that have known defects, or that are in need of repair? ☐ Yes ☑ No ☐ Unknown. If yes, then describe. (Attach additional sheets if necessary): _____

_____

_____

_____

TREC No. OP-H

09-01-2019

Seller's Disclosure Notice Concerning the Property at _Uvalde County - 980 ac._ Page 2
(Street Address and City)

2. Does the property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766, Health and Safety Code?* ☐ Yes ☐ No ☒ Unknown. If the answer to this question is no or unknown, explain (Attach additional sheets if necessary): _____

_Smoke detectors are in Most rooms_

_____

_____

* Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown or contact your local building official for more information. A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing impaired and specifies the locations for the installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.

3. Are you (Seller) aware of any known defects/malfunctions in any of the following? Write Yes (Y) if you are aware, write No (N) if you are not aware.

| | | |
|---|---|---|
| N Interior Walls | N Ceilings | N Floors |
| N Exterior Walls | N Doors | N Windows |
| N Roof | N Foundation/Slab(s) | N Sidewalks |
| N Walls/Fences | N Driveways | Intercom System N/A |
| N Plumbing/Sewers/Septics | N Electrical Systems | N Lighting Fixtures |

_____ Other Structural Components (Describe): _____

_____

_____

If the answer to any of the above is yes, explain. (Attach additional sheets if necessary): _____

_____

_____

4. Are you (Seller) aware of any of the following conditions? Write Yes (Y) if you are aware, write No (N) if you are not aware.

| | |
|---|---|
| N Active Termites (includes wood destroying insects) | N Previous Structural or Roof Repair |
| N Termite or Wood Rot Damage Needing Repair | N Hazardous or Toxic Waste |
| N Previous Termite Damage | N Asbestos Components |
| N Previous Termite Treatment | N Urea-formaldehyde Insulation |
| N Improper Drainage | N Radon Gas |
| N Water Damage Not Due to a Flood Event | N Lead Based Paint |
| N Landfill, Settling, Soil Movement, Fault Lines | N Aluminum Wiring |
| N Single Blockable Main Drain in Pool/Hot Tub/Spa* | N Previous Fires |
| | N Unplatted Easements |
| | N Subsurface Structure or Pits |
| | N Previous Use of Premises for Manufacture of Methamphetamine |

If the answer to any of the above is yes, explain. (Attach additional sheets if necessary): _____

_____

_____

* A single blockable main drain may cause a suction entrapment hazard for an individual.

Seller's Disclosure Notice Concerning the Property at _Uvalde County - 980 ac._  Page 3                    09-01-2019
(Street Address and City)

5. Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair? ☐ Yes (if you are aware)
   ☒ No (if you are not aware). If yes, explain (attach additional sheets if necessary). _____

   _____
   _____

6. Are you (Seller) aware of any of the following conditions?* Write Yes (Y) if you are aware, write No (N) if you are not aware.

   _N_  Present flood insurance coverage

   _N_  Previous flooding due to a failure or breach of a reservoir or a controlled or emergency release of water from a reservoir

   _N_  Previous water penetration into a structure on the property due to a natural flood event

   Write Yes (Y) if you are aware, and check wholly or partly as applicable, write No (N) if you are not aware.

   _N_  Located ○ wholly ○ partly in a 100-year floodplain (Special Flood Hazard Area-Zone A, V, A99, AE, AO, AH, VE, or AR)

   _Y_  Located ○ wholly ● partly in a 500-year floodplain (Moderate Flood Hazard Area-Zone X (shaded))    _Not Sure_

   _Y_  Located ○ wholly ● partly in a floodway    _Along River Bottoms_

   _Y_  Located ○ wholly ● partly in a flood pool    "       "       "

   _N_  Located ○ wholly ○ partly in a reservoir

   If the answer to any of the above is yes, explain (attach additional sheets if necessary): _Probably along_
   _All River and River Bottoms of Frio River_
   _that Runs along and Thru property._

   *For purposes of this notice:
   "100-year floodplain" means any area of land that:
        (A) is identified on the flood insurance rate map as a special flood hazard area, which is designated as
   Zone A, V, A99, AE, AO, AH, VE, or AR on the map;
        (B) has a one percent annual chance of flooding, which is considered to be a high risk of flooding; and
        (C) may include a regulatory floodway, flood pool, or reservoir.
   "500-year floodplain" means any area of land that:
        (A) is identified on the flood insurance rate map as a moderate flood hazard area, which is designated
   on the map as Zone X (shaded); and
        (B) has a two-tenths of one percent annual chance of flooding, which is considered to be a moderate
   risk of flooding.
        "Flood pool" means the area adjacent to a reservoir that lies above the normal maximum operating level of the
   reservoir and that is subject to controlled inundation under the management of the United States Army Corps of
   Engineers.
        "Flood insurance rate map" means the most recent flood hazard map published by the Federal Emergency
   Management Agency under the National Flood Insurance Act of 1968 (42 U.S.C. Section 4001 et seq.).
        "Floodway" means an area that is identified on the flood insurance rate map as a regulatory floodway, which
   includes the channel of a river or other watercourse and the adjacent land areas that must be reserved for the discharge
   of a base flood, also referred to as a 100-year flood, without cumulatively increasing the water surface elevation of more
   than a designated height.
        "Reservoir" means a water impoundment project operated by the United States Army Corps of Engineers that is
   intended to retain water or delay the runoff of water in a designated surface area of land.

7. Have you (Seller) ever filed a claim for flood damage to the property with any insurance provider, including the National
   Flood Insurance Program (NFIP)?* ☐ Yes ☒ No. If yes, explain (attach additional sheets as necessary): _____

   _____

        *Homes in high risk flood zones with mortgages from federally regulated or insured lenders are required to have
   flood insurance. Even when not required, the Federal Emergency Management Agency (FEMA) encourages homeowners in
   high risk, moderate risk, and low risk flood zones to purchase flood insurance that covers the structure(s) and the personal
   property within the structure(s).

8. Have you (Seller) ever received assistance from FEMA or the U.S. Small Business Administration (SBA) for flood damage to the
   property? ☐ Yes ☒ No. If yes, explain (attach additional sheets as necessary): _____

   _____

TREC No. OP-H

09-01-2019

Seller's Disclosure Notice Concerning the Property at _Uvalde County- 980 ac._  Page 4
(Street Address and City)

9. Are you (Seller) aware of any of the following? Write Yes (Y) if you are aware, write No (N) if you are not aware.

_N_   Room additions, structural modifications, or other alterations or repairs made without necessary permits or not in compliance with building codes in effect at that time.

_N_   Homeowners' Association or maintenance fees or assessments.

_N_   Any "common area" (facilities such as pools, tennis courts, walkways, or other areas) co-owned in undivided interest with others.

_N_   Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property.

_N_   Any lawsuits directly or indirectly affecting the Property.

_N_   Any condition on the Property which materially affects the physical health or safety of an individual.

_N_   Any rainwater harvesting system located on the property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source.

_N_   Any portion of the property that is located in a groundwater conservation district or a subsidence district.
   _EDWARDS IS JUST WEST AND N. OF PROPERTY I believe._

If the answer to any of the above is yes, explain. (Attach additional sheets if necessary): _____

_____

_____

10. If the property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit maybe required for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

11. This property may be located near a military installation and may be affected by high noise or air installation compatible use zones or other operations. Information relating to high noise and compatible use zones is available in the most recent Air Installation Compatible Use Zone Study or Joint Land Use Study prepared for a military installation and may be accessed on the Internet website of the military installation and of the county and any municipality in which the military installation is located.

_____   6·3·21        _____   6·3·21
Signature of Seller          Date            Signature of Seller          Date

The undersigned purchaser hereby acknowledges receipt of the foregoing notice.

_____   _____        _____   _____
Signature of Purchaser        Date            Signature of Purchaser        Date



This form was prepared by the Texas Real Estate Commission in accordance with Texas Property Code § 5.008(b) and is to be used in conjunction with a contract for the sale of real property entered into on or after September 1, 2019. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC NO. OP-H