**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC, et al** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**ORDER ON DEBTORS' MOTION TO APPROVE SALE OF REAL ESTATE ASSET**
**FREE AND CLEAR OF ALL INTERESTS PURSUANT TO 11 U.S.C. § 363(b) and (f)**

On Consideration of Debtors' Motion to Approve Sale of Real Estate Asset Free and Clear

of All Interests Pursuant to 11 U.S.C. **§ 363(b) and (f)** (the "Sale Motion") filed by Debtor in the

above-captioned bankruptcy, concerning certain real property briefly described as follows:

   980 Ac. +/- in Uvalde County Texas (the "Real Property") and more further
Described as Exhibit "A" attached.

the Court finds that the relief requested in the Sale Motion is in the best interest of the Debtors' estate, their creditors and other parties in interest; and the Debtors have provided appropriate and sufficient notice under the circumstances, and that no other or further notice is required; and the Court has reviewed the Sale Motion and has heard the evidence in support of the relief requested therein at a hearing before the Court (the "Sale Hearing").

The Court considered any objections to the Sale Motion, each of which are overruled, resolved, or withdrawn; and including the announcements and agreements stated on the record at the hearing, the Court has determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein. Therefore, after due deliberation and sufficient cause appearing:

THE COURT HEREBY FINDS THAT:

1.   Jurisdiction and Venue. This Court has jurisdiction over this bankruptcy case and the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 105(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this district pursuant to 28 U.S.C. §§ 148 and 1409(a).

2.   Statutory Predicates. The statutory predicates for the relief sought in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 9007 and 9014, and the applicable Local Rules for the United States Bankruptcy Court for the Western District of Texas (the "Local Rules").

3.   Final Order. This order approving the Sale Motion (the "Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and to any extent necessary under Bankruptcy Rules 9014, Rule 54(b) of the Federal

Rules of Civil Procedure, made applicable by Bankruptcy Rule 7054, and any other applicable rule or law, the Court expressly finds that there is no just reason for the delay in the implementation of this Order, waives any stay, and expressly directs entry of the order as set forth herein. This Order shall be effective and enforceable immediately upon entry.

4. Notice. As evidenced by the certificates of service filed with this Court, based upon the record of the case and representations of counsel at the Sale Hearing: (i) in accordance with inter alia, Bankruptcy Rule 2002, due proper, timely, adequate and sufficient notice of the Sale Motion has been provided; (ii) no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of this bankruptcy case; and (iv) no other or further notice of the Sale Motion or the Sale Hearing is or shall be required. The disclosures made by the Debtors concerning the Sale Motion and the Sale Hearing were reasonable, adequate and complete.

5. Opportunity to Object. A reasonable opportunity to object and to be heard with respect to the proposed the Sale Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following: (i) all potential purchasers previously identified by the Debtors and any additional parties who have expressed an interest in potentially acquiring the Real Property, including those parties that have submitted formal expressions of interest; (ii) all other potentially interested parties identified by the Debtors in their business judgment as a potential purchaser of the Real Property; (iii) the Office of the United States Trustee; (iv) all applicable federal, state and local regulatory or taxing authorities; and (v) the Debtors and all parties on the most current service list.

6. Arm's-Length Sale. The Earnest Money Contract was negotiated, proposed and entered into by the Debtors on behalf of the Debtors' estate and A&S Ranch, Ltd. ("A&S ") for

the purchase price of Seven Million and Four-Hundred Fifty Thousand and no/100 Dollars ($7,450,000.00), without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtors nor A&S nor any of their respective representatives, have engaged in any conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code. Specifically, neither A&S nor any of its representatives have acted in a collusive manner with any person. The terms and conditions of the Sale and the transaction contemplated thereby (including without limitation the consideration provided in respect thereof) are fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

7.      Good Faith Purchaser. A&S is purchasing the Real Property in good faith and is a good faith purchaser of the Real Property within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded by that provision. A&S and its representatives have proceeded in good faith and without collusion in all respects in connection with the Sale Motion and Sale Hearing.

8.      Sale in the Best Interests of the Debtors, the Debtors' Estates and Creditors. Good and sufficient reasons for approval of the Sale have been articulated, and the relief requested in the Sale Motion and granted herein is in the best interest of the Debtors, the Debtors' estate, their creditors and other parties in interest.

9.      Business Justification. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale outside of the ordinary course of business under section 363(f) of the Bankruptcy Code in that, among other things, the immediate approval by this Court of the sale to A&S is necessary and appropriate to maximize the value of the Debtors' estate. Given all the circumstances of this bankruptcy case and the adequacy and fair value of the purchase price, the proposed sale

4

constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

10.    <u>Free and Clear</u>.  Krisjenn Ranch, LLC Series Uvalde Ranch is the sole and lawful owner of the Real Property.  The conveyance of the Real Property will be a legal, valid, and effective transfer of the Real Property and vests or will vest A & S Ranch, Ltd. with all right, title, and interest of the Debtor to the Real Property free and clear of all interests to the fullest extent permitted under 11 U.S.C. §363(f) including without limitation all liens (as defined in section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code and including without limitation successor liability claims), or other interests, of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, accruing, arising or relating thereto, (collectively, the "<u>Interests</u>"[1]), at any time prior to the date of the Closing Date.

11.    <u>Satisfaction of 363(f) Standards</u>. The Debtors may sell and transfer, and A&S may purchase, the Real Property free and clear of any interests of any kind or nature  whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  The proposed sale of the Real Property will be free and clear of all liens, claims, Interests, and encumbrances including any liabilities that arose prior to

---

[1] The term "<u>Interests</u>" as used in this Order includes, without limitations:  all encumbrances; obligations; debts; liabilities; demands; guaranties; options; rights; restrictions; contractual commitments, including but not limited to, any license obligations; rights of first refusal or interests; any of the foregoing that purport to give to any party any defense, a defense or right of setoff, or recoupment against or a right or option to effect any forfeiture, modification or termination of the Debtor's interests in the Real Property, or any similar rights; any of the foregoing arising under any mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature.

the closing date, with all such liens, claims, Interests, encumbrances and liabilities to transfer and attach to the sale proceeds with the same validity, priority, force and effect (if any) that such liens, claims, interests, encumbrances and liabilities had on the Real Property immediately prior to the closing date.

12.     Ad valorem tax, Quarterly Fees, and Interim Distribution of Proceeds. The ad valorem tax lien pertaining to the Real Property shall attach to the sales proceeds and the Debtors (or the closing agent on his behalf) is authorized and directed to pay all ad valorem tax debt owed incident to the Real Property immediately upon closing and prior to any disbursement of proceeds to any other person or entity. Next the following is authorized to be paid from the closing proceeds:

a.  Closing costs:

b.  Realtor commission of $50,000 to Griffin Kott;

c.  $6.43 million to McLeod Oil which shall first be applied to principal and then to interest on the McLeod Oil lien.

13.     All remaining sales proceeds shall be held in escrow with the title company until further order of the Court.

14.     Failure to Close.  In the event that the sale to A&S  does not close pursuant to the sale contract, Debtors may take any action permitted by the sale contract and Texas law including but not limited to terminate the contract and retain all earnest money, enforce specific performance, or extend the closing date, except Debtors may not enter into any modification, amendment, or supplement that has a material adverse effect on the Debtors' estates in the business judgment of the Debtors.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.  Sale Motion is Granted. The Sale motion and the relief requested therein is GRANTED and APPROVED, as set forth herein and on the record of the Sale Hearing, which is incorporated herein in its entirety, and the sale as contemplated thereby is granted and approved. All findings of fact and conclusions of law of this Court stated on the record as part of the Court's ruling at the Sale Hearing are incorporated herein by reference and made a part hereof. The Debtors are authorized and directed to sell the Real Property to A&S for $7,450,000.00

2.  Objections Overruled. Any objections to the entry of this Order or the relief granted herein or requested in the Sale Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3.  Free and Clear. Except as expressly provided for in this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, as of the Closing Date, the Debtor shall transfer, and A & S shall take title to and possession of, the Real Property free and clear of all Interests, with all such Interests attaching to the proceed of sale, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Real Property. Liens in favor of the ad valorem taxing authorities for amounts attributable to the year in which the sale occurs shall remain against the Real Property.

4.  Valid Transfer. As of the Closing Date, the transaction shall effect a legal, valid, enforceable and effective sale and transfer of the Real Property to A&S and shall vest A&S with valid legal title to such Real Property free and clear of any Interests of any kind whatsoever. The Real Property is transferred to A&S "as is, where is" with all faults.

5.  Direction to Release Interests. On the Closing Date, each of the Debtors' creditors or Interest holders is authorized and directed to execute such documents and take all other actions

7

as may be reasonably necessary to release its Interests in the Real Property, if any, as such Interests may have been recorded or may otherwise exist.

6.  Good Faith.  The transactions contemplated are undertaken by A&S and its affiliates, agents and representatives, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale with A&S, unless such authorization is duly stayed pending such appeal prior to the closing.  A&S, which shall include its affiliates, agents and representative, is a good faith purchaser of the Real Property, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

7.  Retention of Jurisdiction. The Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, including, but not limited to, retaining jurisdiction to:  (a) interpret, implement and enforce the provisions of this Order and any related order; and (b) protect A & S  against any Interests in the Real Property of any kind or nature whatsoever that attached to the proceeds of the sale.

8.  Surrender of Possession.  Debtors shall surrender possession of the Real Property to A&S on the Closing Date.

9.  Application of Sale Proceeds.

   a.  Ad valorem tax lien pertaining to the Real Property shall attach to the sales proceeds and the Debtors (or the closing agent acting on behalf of the Debtors) shall pay all ad valorem tax debt owed incident to the Real Property immediately

upon closing and prior to any disbursement of proceeds to any other person or entity.

b. The Sales Proceeds shall then be applied to any costs of sale including but not limited to title fees, recording fees and any other fees customarily associated with the sale of real property in Texas;

c. The Sales Proceeds shall then be applied to the $50,000 realtor commission of Griffin Kott;

d. Next, $6,430,000 shall be paid to McLeod Oil and the proceeds shall be first applied to principal and then interest on the McLeod Oil lien.

e. The remaining funds shall remain in escrow with the title company until further order of the Court.

f. Any and all valid and perfected Interests in the Real Property shall attach to any remaining proceeds in the order of priority, and with the same validity, force and effect (if any) that such liens, claims, Interests, encumbrances and liabilities had on the Real Property immediately prior to the Closing Date. The Debtors (or the closing agent acting on behalf of the Debtors) is authorized and directed to immediately disburse such proceeds as stated herein.

10.  <u>Current Year Ad Valorem Tax</u>.  Notwithstanding any provision herein to the contrary, the ad valorem taxes for year 2021 pertaining to the Real Property shall be prorated in accordance with the Earnest Money Contract and shall become the responsibility of A&S and the 2021 ad valorem tax lien shall be retained against the Real Property until such taxes are paid in full.

11. <u>Non-Material Modifications</u>. The Earnest Money Contract and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or the Debtors' estates in the business judgment of the Debtors.

12. <u>Subsequent Plan Provisions</u>. Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in this bankruptcy case or any successor case (including, without limitation, any order authorizing the sale of Real Property pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after the conversion of the bankruptcy case to a case under chapter 7 of the Bankruptcy Code), or in any chapter 11 plan confirmed in the bankruptcy case or any other confirming any such plan, shall alter, conflict with, or derogate from, the provisions of this Order, which provisions shall survive and remain in full force and effect. The Debtors are further authorized and directed to perform such tasks and execute, acknowledge and deliver such instruments or documents as may be necessary to evidence and/or consummate the sale of the Real Property pursuant to this Order.

13. <u>No Stay of Order</u>. **Notwithstanding the provisions of the Bankruptcy Rule 6004 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry. Time is of the essence in closing the transaction referenced herein, and the Debtors and Purchaser intend to close the Sale as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.**

14.     <u>Order Controls</u>.  To the extent that this Order is inconsistent with any prior order

or pleading with respect to the Sale Motion in this bankruptcy case, the terms of this Order

shall govern.

15.     The Court herein incorporates all rulings made on the record as part of this Order.

###

Respectfully submitted,

SMEBERG LAW FIRM, PLLC
      By:   /s/ *Ronald J. Smeberg*                  .
      RONALD J. SMEBERG
      State Bar No. 24033967
      SMEBERG LAW FIRM, PLLC
      4 Imperial Oaks
      San Antonio, TX 78248
      210-695-6684 (Tel)
      210-598-7357 (Fax)
      ron@smeberg.com
      ATTORNEY FOR DEBTORS

EXHIBIT "B"

# D. G. Smyth & Company, Inc.

*"A Statewide Professional Land Surveying Service Company"*
**1022 Garner Field Road, Suite D**
**Uvalde, Texas 78801**

**Office Tel. (830) 591-0858**                      **Fax (830) 591-0863**

## FIELD NOTES FOR A BOUNDARY SURVEY
## COMPLETED JUNE 13, 2014
## 122.65 ACRES

Being a boundary survey of 122.65 grid acres of land lying in Uvalde County, Texas, being out of and a part of Abner Eckolds Survey 689, Abstract No. 165 and being all of that same certain tract called 121.42 acres as described in conveyance documents to Bonnie Bell Corder Northcutt and recorded in Volume 301, Pages 912-915 of the Deed Records of Uvalde County, Texas, and being more particularly described by metes and bounds as follows: (The courses, distances, areas and any coordinates cited herein or shown on the corresponding survey plat conform to the Texas Coordinate System, North American Datum 1983, Texas South Central Zone and were derived from an OPUS provided solution of GPS observations made from a steel stake set on December 21, 2012 with coordinates of N= 13604971.87' & E= 1771627.86' and bearing S 02° 59' 54" E at a distance of 3243.26 feet from the following point of beginning. (All corners called for as being set are marked on the ground with ½" diameter steel stakes with identification markers stamped "SMYTH 2046" attached unless otherwise noted or shown.):

**BEGINNING** at a 1 1'2 inch diameter metal pipe stake found marking the northwest corner of that same certain 436.54 acres tract as described in conveyance documents to LEC Legacy, Ltd. and recorded in Document No. 2012004437 of the Official Public Records of Uvalde County, Texas, being an exterior corner of that same certain 842.63 acres tract described in conveyance documents to KrisJenn Ranch, L.L.C. and recorded in Document No. 2014000193 of the Official Public Records of Uvalde County, Texas, on a south boundary line of the herein described tract located at N= 13608210.62' & E= 1771797.50', and on the most easterly northeast corner of that same certain thirty (30) foot road easement granted to Boysville, Inc. and recorded in Volume 305, Page 491 of the Deed Records of Uvalde County, Texas, and from said point of beginning a 3 inch pipe 3-way fence corner post bears S 41° 39' 46" E at 1.14 feet,

**THENCE:** N 89° 16' 44" W, generally with the fenced boundary along a southern boundary of the herein described tract, a north line of that same certain 842.63 acres tract in conveyance documents to KrisJenn Ranch, L.L.C. and recorded in Document No. 2014000193 of the Official Public Records of Uvalde County, Texas, and along the most easterly north line of that same certain thirty (30) foot road easement granted to Boysville, Inc. and recorded in Volume 305, Page 491 of the Deed Records of Uvalde County, Texas, for a distance of 667.40 feet to ½ inch diameter steel stake found in concrete on the southwest side of a 2 inch diameter pipe fence corner post for the southwest corner of the herein described tract, a re-entrant corner of said 842.63 acres tract and a re-entrant corner of said thirty (30) foot road easement:

**THENCE:** N 00° 10' 48" W, generally with the fenced boundary along a west boundary of the herein described tract, an east line of said 842.63 acres tract, and an east line of said thirty (30) foot easement, crossing the center line of a thirty (30) foot road easement granted to Smith M. Hill et al and recorded in Volume 402, Page 853 of the Official Public Records of Uvalde County, Texas, and continuing along the same course now for a total distance of 1219.97 feet to a ½ inch steel stake found on the north side of a 2 inch diameter fence corner post for the most westerly northwest corner of the herein described tract, a re-entrant corner of said 842.63 acres tract and an exterior of said road easement to Boysville;

Page 1 of 3

THENCE: S 89° 23 35" E, generally with the fenced boundary of the herein described tract and with a common line of said 842 63 acres tract for a distance of 1944.12 feet to a ½ inch diameter steel stake found for a re-entrant corner of the herein described tract and an exterior corner of said 842.63 acres tract;

THENCE: N 07° 30' 39" W, generally with the fenced boundary of the herein described tract and an east line of said 842.63 acres tract for a distance of 1282.79 feet to a ½ inch steel stake set (replaced 40d nail found at same location) by abandoned fence angle post for an angle point of the herein described tract and said 842.63 acres tract:

THENCE: N 17° 33' 08" W, along a common line between the herein described tract and said 842.63 acres tract, at 552.48 feet passing thru a 1 ¼ inch diameter metal pipe stake found on the southeast bank of the Frio River and continuing along the same course now for a total distance of 560.15 feet to a point located at S.P C N- 13611224.32' & E= 1772733.73' on the gradient boundary along the right or southeast bank of the Frio River;

THENCE: Progressing partly northeasterly, partly southeasterly and partly southwesterly along and with the right gradient boundary of said Frio River for the following twenty four (24) calls which approximate the sinuosity of said Frio River as of the day surveyed:

1.  N 33° 47' 00" E for a distance of 75 53 feet to an angle point.
2.  N 49° 00' 05" E for a distance of 135.06 feet to an angle point.
3.  N 58° 41' 28" E for a distance of 120.33 feet to an angle point.
4.  N 65° 38' 36" E for a distance of 203.04 feet to an angle point.
5.  S 67° 32' 33" E for a distance of 72 01 feet to an angle point.
6.  S 24° 17' 27" E for a distance of 99 04 feet to an angle point.
7   S 40° 02' 32" E for a distance of 307.73 feet to an angle point.
8.  S 57° 38' 14" E for a distance of 131.00 feet to an angle point.
9.  S 39° 43' 16" E for a distance of 115.45 feet to an angle point.
10. S 03° 12' 22" W for a distance of 213.36 feet to an angle point.
11. S 03° 42' 58" W for a distance of 144.24 feet to an angle point.
12  S 11° 49' 59" W for a distance of 168.72 feet to an angle point.
13  S 26° 40' 49" E for a distance of 284.31 feet to an angle point.
14. S 40° 03' 14" E for a distance of 140.16 feet to an angle point
15. S 29° 57' 22" E for a distance of 405.23 feet to an angle point.
16  S 25° 05' 44" E for a distance of 145.40 feet to an angle point.
17. S 22° 21' 43" E for a distance of 150.27 feet to an angle point.
18. S 18° 27' 21" E for a distance of 88.98 feet to an angle point.
19. S 10° 59' 54" E for a distance of 156.64 feet to an angle point.
20  S 17° 21' 29" E for a distance of 213.29 feet to an angle point.
21  S 07° 46' 38" W for a distance of 148.37 feet to an angle point.
22. S 00° 40' 44" E for a distance of 272.49 feet to an angle point.
23  S 07° 49' 41" W for a distance of 172.63 feet to an angle point.
24  S 15° 01' 05" E for a distance of 199.87 feet to the southeast corner of the herein described tract located at N=13608180.20' & E=1774251.58' and the northeast corner of that same certain 436.54 acres tract as described in conveyance documents to LEC Legacy, Ltd and recorded in Document No. 2012004437 of the Official Public Records of Uvalde County, Texas;

THENCE: N 89° 17' 23" W, departing from said river and generally with the fence along the south boundary of the herein described tract and the north line of said 436.54 acres tract, at 75.26 feet passing thru a 1 ½ inch diameter metal pipe stake found on the west high bank of the Frio River, and continuing along the same course now for a total distance of 2454.27 feet to the **Place of Beginning** and containing 122.65 acres of land within the herein described boundary as determined by an actual survey made on the ground by D. G. Smyth & Co. and completed June 13, 2014

THE STATE OF TEXAS
COUNTY OF UVALDE

It is hereby certified that the foregoing field note description and attached plat were prepared from an actual on the ground survey made by personnel working under my direct supervision and that same are true and correct according to same said survey.

D G Smyth-Registered Professional Land Surveyor
Licensed State Land Surveyor-No 2046
PROJECT NO 14-5158

# D. G. Smyth & Company, Inc.

"A Statewide Professional Land Surveying Service Company"
**1022 Garner Field Road, Suite D**
**Uvalde, Texas 78801**
Office Tel. (830) 591-0858                     Fax (830) 591-0863

## FIELD NOTES FOR A BOUNDARY SURVEY
## COMPLETED JANUARY 7, 2013
## TRACT I–842.63 ACRES

Being a boundary survey of 842.63 grid acres of land lying in Uvalde County, Texas, being out of and a part of Abner Echolds Survey689, Abstract No. 165 and being a part of that same certain tract called 836.940 acres designated as Tract I described in conveyance documents to PKC CROSSFIRE RANCH, L.L.C. and recorded in Document No. 2006001087 of the Official Public Records of Uvalde County, Texas, and being more particularly described by metes and bounds as follows: (The courses, distances, areas and any coordinates cited herein or shown on the corresponding survey plat conform to the Texas Coordinate System, North American Datum 1983, Texas South Central Zone and were derived from an OPUS provided solution of GPS observations made from a steel stake set on December 21, 2012 with coordinates of N= 13604971.87' & E= 1771627.86' and bearing N 79° 09' 09" E at a distance of 144.70 feet from the following point of beginning. (All corners called for as being set are marked on the ground with ½" diameter steel stakes with identification markers stamped "SMYTH/2046" attached unless otherwise noted or shown.):

**BEGINNING** at a sucker rod found marking the southeast corner of the herein described tract located at N= 13604944.64' & E= 1771485.74', on the south line of that same certain thirty (30) foot road easement granted to Southwest Livestock Exchange, Inc. and recorded in Volume 226, Page 850 of the Deed Records of Uvalde County, Texas, and on the ostensible common line between Abner Eckolds Survey 689, Abstract No.165 and B.S. & F. Survey 147, Abstract No. 77 and on the north boundary of that same certain 4472.8249 acres described in conveyance documents to Elizabeth Ann Kincaid Riley and recorded in Volume 313, Page 610-638 of the Deed Records of Uvalde County, Texas, and the southwest corner of that same certain 436.54 acre tract described in conveyance documents to Corn Processors, Inc. and recorded in Volume 339, Page 517-521 of the Deed Records of Uvalde County, Texas;

**THENCE:** N 89° 45' 30" W, generally with the fenced boundary along the south line of the herein described tract and the north line of said 4472.8249 acre tract and along the south line of aforesaid thirty (30) foot road easement and along the ostensible common line between said Survey 689 and Survey 77,passing the northwest corner of said Survey 77 and the northeast corner of V.L. James & John J. Stevens Survey 148, Abstract No. 1257, and continuing along the same course now with the common line between said Survey 689 and Survey 148, and continuing now along the same course for a distance of 5551.49 feet to a ½ inch steel stake found against the northwest side of a 4-way 12 inch diameter fence corner post for the southeast corner of the herein described tract, the northwest corner of said 4472.8249 acre tract, the northeast corner of that same certain 986.967 acres tract described in conveyance documents to Frank G. Krivan and recorded in Volume 181, Page 662-670 of the Deed Records of Uvalde County, Texas, and the southeast corner of that same certain 1357 acre tract described in conveyance documents to Southwest Livestock Exchange and recorded in Volume 178, Page 216-218 of the Deed Records of Uvalde County, Texas;

**THENCE:** N 06° 21' 18" W, generally with the fenced boundary along the west line of the herein described tract and a east line of said 1357 acres tract and along the west line of a thirty (30) foot road easement granted to William Vann McElroy et ux and recorded in Volume 439, Page 576 of the Official Public Records of Uvalde County, Texas, for a distance of 3347.40 feet to a 1 ½ inch diameter metal pipe stake found for a re-entrant corner of the herein described tract;

**THENCE:** S 85° 01' 12" W, departing from occupied fence for a distance of 14.23 feet to a ½ inch steel stake set for a exterior corner of the herein described tract and a re-entrant corner of said 1357 acre tract;

**THENCE:** N 00° 20' 22" W, with the west boundary of the herein described tract, the east boundary of said 1357 acre tract and a west line of aforesaid thirty (30) foot road easement, at 36.65 feet passing a 3 ½ inch metal pipe fence angle post and continuing along the same course now generally with the fence for a total distance of 2210.73 feet to a 3-way 6 inch diameter metal fence corner post found for the most westerly northwest corner of the herein tract and a re-entrant corner of the said 1357 acre tract;

**THENCE:** S 88° 38' 38" E, generally with the fenced boundary along a north line of the herein described tract and a northeasterly south line of said 1357 acre tract and the north line of a thirty (30) foot road easement granted to Smith M. Hill, Jr., et al and recorded in Volume 402, Page 853 of the Official Public Records of Uvalde County, Texas, for a distance of 1082.57 feet to a ½ inch steel stake set in fence line for a corner of the herein described tract;

**THENCE:** Progressing northeasterly between the common boundary of the herein described tract and said 1357 acre tract for the following six (6) calls:

1. N 83° 35' 35" E for a distance of 66.32 feet to a ½ inch steel stake set for a corner.
2. N 69° 41' 18" E for a distance of 89.74 feet to a ½ inch steel stake set for a corner.
3. N 45° 03' 18" E for a distance of 133.18 feet to a ½ inch steel stake set for a corner.
4. N 38° 43' 37" E for a distance of 146.53 feet to a ½ inch steel stake set for a corner and from which point a 3 inch metal pipe fence angle post bears S 46° 00' 53" E at a distance of 6.87 feet.
5. N 59° 53' 58" E for a distance of 211.44 feet to a ½ inch steel stake set for a corner.
6. N 56° 02' 34" E for a distance of 300.50 feet to a ½ inch steel stake set for a corner and from which point a 3 inch metal pipe fence corner post bears N 86° 21' 06" E at a distance of 5.75 feet.

**THENCE:** N 49° 15' 54" W, between the common boundary of the herein described tract and said 1357 acre tract, at 119.99 feet passing a ½ inch steel stake found and continuing along the same course now for a total distance of 126.73 feet to a point located at S.P.C. N= 13611082.25' & E= 1767290.92' on the gradient boundary along the right or southeast bank of the Frio River;

**THENCE:** Progressing partly northeasterly and partly southeasterly along and with the right gradient boundary of said Frio River for the following fifty three (53) calls which approximate the sinuosity of said Frio River as of the day surveyed:

1. N 23° 53' 01" E for a distance of 65.78 feet to an angle point.
2. N 50° 00' 26" E for a distance of 97.16 feet to an angle point.
3. N 62° 08' 25" E for a distance of 178.71 feet to an angle point.
4. N 15° 49' 16" E for a distance of 64.68 feet to an angle point.
5. N 28° 31' 38" E for a distance of 73.72 feet to an angle point.
6. N 34° 21' 04" E for a distance of 277.37 feet to an angle point.
7. N 38° 54' 41" E for a distance of 90.33 feet to an angle point.
8. N 53° 37' 28" E for a distance of 69.90 feet to an angle point.

9. S 80° 29' 17" E for a distance of 77.78 feet to an angle point.
10. S 56° 10' 38" E for a distance of 167.16 feet to an angle point.
11. S 78° 00' 52" E for a distance of 114.71 feet to an angle point.
12. S 71° 14' 05" E for a distance of 309.34 feet to an angle point.
13. S 78° 35' 19" E for a distance of 155.50 feet to an angle point.
14. S 34° 51' 41" E for a distance of 146.33 feet to an angle point.
15. S 00° 10' 47" W for a distance of 168.61 feet to an angle point.
16. S 06° 19' 56" W for a distance of 118.06 feet to an angle point.
17. S 03° 04' 49" W for a distance of 117.72 feet to an angle point.
18. S 02° 29' 52" E for a distance of 235.45 feet to an angle point.
19. S 09° 42' 54" E for a distance of 235.28 feet to an angle point.
20. S 40° 06' 13" E for a distance of 110.69 feet to an angle point.
21. N 40° 30' 07" E for a distance of 135.77 feet to an angle point.
22. S 86° 28' 49" E for a distance of 30.23 feet to an angle point.
23. N 53° 07' 28" E for a distance of 84.28 feet to an angle point.
24. N 66° 34' 09" E for a distance of 203.36 feet to an angle point.
25. N 39° 29' 47" E for a distance of 115.41 feet to an angle point.
26. N 65° 21' 50" E for a distance of 95.62 feet to an angle point.
27. N 73° 25' 38" E for a distance of 146.54 feet to an angle point.
28. N 76° 57' 01" E for a distance of 108.03 feet to an angle point.
29. N 89° 11' 52" E for a distance of 210.73 feet to an angle point.
30. N 66° 50' 54" E for a distance of 163.80 feet to an angle point.
31. N 78° 10' 27" E for a distance of 149.50 feet to an angle point.
32. N 54° 20' 29" E for a distance of 50.46 feet to an angle point.
33. N 07° 40' 35" W for a distance of 152.19 feet to an angle point.
34. N 34° 29' 12" E for a distance of 154.31 feet to an angle point.
35. N 44° 26' 50" E for a distance of 341.86 feet to an angle point.
36. N 69° 45' 14" E for a distance of 94.04 feet to an angle point.
37. S 18° 27' 28" E for a distance of 106.16 feet to an angle point.
38. S 52° 50' 32" E for a distance of 216.50 feet to an angle point.
39. S 35° 56' 18" E for a distance of 234.52 feet to an angle point.
40. S 25° 47' 44" E for a distance of 201.58 feet to an angle point.
41. S 39° 06' 05" E for a distance of 263.19 feet to an angle point.
42. S 01° 08' 41" E for a distance of 161.53 feet to an angle point.
43. S 20° 15' 21" E for a distance of 77.17 feet to an angle point.
44. N 83° 28' 52" E for a distance of 175.06 feet to an angle point.
45. S 65° 46' 51" E for a distance of 202.41 feet to an angle point.
46. N 81° 20' 26" E for a distance of 145.25 feet to an angle point.
47. N 86° 28' 49" E for a distance of 169.08 feet to an angle point.
48. N 80° 00' 19" E for a distance of 299.67 feet to an angle point.
49. N 46° 52' 11" E for a distance of 178.31 feet to an angle point.
50. N 41° 42' 13" E for a distance of 416.44 feet to an angle point.
51. N 35° 12' 40" W for a distance of 71.17 feet to an angle point.
52. N 28° 55' 07" E for a distance of 145.58 feet to an angle point.
53. N 24° 23' 37" E for a distance of 200.39 feet to the northeast corner of the herein described tract located at N=13611224.32' & E=1772733.73'.

**THENCE:** S 17° 33' 08" E, departing from river and along the most northerly east boundary of the herein described tract and the most northerly west line of that same certain 121.42 acres tract described in conveyance documents to Kathryn Ann Corder et al. and recorded in Volume 402, Page 853-879 (Document No. 9802901) of the Official Public Records of Uvalde County, Texas, at 7.67 feet found a 1 ½ inch diameter metal pipe stake and continuing for a total distance of 560.15 feet to a ½ inch steel stake set (replaced 40d nail found at same location) by abandoned fence angle post for a exterior corner of the herein described tract and a re-entrant corner of said 121.42 acre tract;

**THENCE:** S 07° 30' 39" E, along a west line of said 121.42 acre tract and a east line of the herein described tract for a distance of 1282.79 feet to a ½ inch steel stake found in old post hole for a northeasterly exterior corner of the herein described tract and a re-entrant corner of said 121.42 acre tract;

**THENCE:** N 89° 23 35" W, generally with the fenced boundary of the herein described tract and with a common line of said 121.42 acre tract for a distance of 1944.12 feet to a ½ inch steel stake found for a re-entrant corner of the herein described tract and the most westerly northeast exterior corner of said 121.42 acre tract;

**THENCE:** S 00° 10' 48" E, generally with the fenced boundary along an east line of the herein described tract, the west line of said 121.42 acres tract, and a east line of thirty (30) foot easement granted to Boysville, Inc. and recorded in Volume 305, Page 491 of the Deed Records of Uvalde County, Texas, and a east line of thirty (30) foot easement granted to Harry C. Chandler and J. W. Chandler Construction Co., Inc. and recorded in Volume 226, Page 904 of the Deed Records of Uvalde County, Texas, for a distance of 1219.97 feet to a ½ inch steel stake found set in concrete for a re-entrant corner of the herein described tract and the southeast corner of said 121.42 acre tract;

**THENCE:** S 89° 16' 44" E, generally with the fenced boundary along the eastern boundary of the herein described tract, the south line of said 121.42 acre tract, and a north line of aforesaid thirty (30) foot easements, for a distance of 667.40 feet to a 1 ½ inch diameter metal pipe stake found for a exterior corner of the herein described tract, on the south line of said 121.42 acre tract and the northwest corner of aforesaid 436.54 acre tract described in conveyance documents to Corn Processors, Inc. and recorded in Volume 339, Page 517-521 of the Deed Records of Uvalde County, Texas;

**THENCE:** S 05° 27' 09" W, generally with the fenced boundary along an east line of the herein described tract, and the west line of said 436.54 acre tract for a distance of 3280.90 feet to the **Place of Beginning** and containing 842.63 acres of land within the herein described boundary as determined by an actual survey made on the ground by D. G. Smyth & Co. and completed January 7, 2013.

THE STATE OF TEXAS:
COUNTY OF UVALDE:

It is hereby certified that the foregoing field note description and attached plat were prepared from an actual on the ground survey made by personnel working under my direct supervision and that same are true and correct according to same said survey.

_____

D. G. Smyth-Registered Professional Land Surveyor/
Licensed State Land Surveyor-No. 2046
PROJECT NO.12-4703 Tr. I

# D. G. Smyth & Company, Inc.

*"A Statewide Professional Land Surveying Service Company"*
## 1022 Garner Field Road, Suite D
### Uvalde, Texas 78801

**Office Tel. (830) 591-0858**                    **Fax (830) 591-0863**

## FIELD NOTES FOR A BOUNDARY SURVEY
## COMPLETED JANUARY 7, 2013
## TRACT II–22.80 ACRES

Being a boundary survey of 22.80 grid acres of land lying in Uvalde County, Texas, being out of and a part of Abner Echolds Survey687, Abstract No. 164 and being that same certain tract called 21.034 acres designated as Tract II as described in conveyance documents to PKC CROSSFIRE RANCH, L.L.C. and recorded in Document No. 2006001087 of the Official Public Records of Uvalde County, Texas, and being more particularly described by metes and bounds as follows: (The courses, distances, areas and any coordinates cited herein or shown on the corresponding survey plat conform to the Texas Coordinate System, North American Datum 1983, Texas South Central Zone and were derived from an OPUS provided solution of GPS observations made from a steel stake set on December 21, 2012 located at S.P.C. N= 13604971.87' & E= 1771627.86' and bearing S08° 47' 26" W at a distance of 6319.91 feet from the following point of beginning. (All corners called for as being set are marked on the ground with ½" diameter steel stakes with identification markers stamped "SMYTH/2046" attached unless otherwise noted or shown.):

**BEGINNING** at a 1 ½ inch diameter metal pipe stake found on the left or northwest high flood bank of the Frio River marking a point on the north boundary line of the herein described tract located at S.P.C.N= 13611217.55' & E= 1772593.67', and on the south boundary line of that same certain 966.45 acre tract described in conveyance documents to Rankin Kennedy Peters et al. and recorded in Volume 365, Page 527-528 of the Deed Records of Uvalde County, Texas;

**THENCE:** S 89° 39' 48" E, along the common boundary of the herein described tract and said 966.45 acre tract for a distance of 77.63 feet to a point located at S.P.C. N= 13611217.09' & E= 1772671.30 on the gradient boundary along the left or northwest bank of the Frio River;

**THENCE:** Progressing partly southwesterly and partly northwesterly along and with the left gradient boundary of said Frio River for the following twenty seven (27) calls which approximates the sinuosity of said Frio River as of the day surveyed:
1.  S 26° 45' 56" W for a distance of 72.77 feet to an angle point.
2.  S 31° 00' 46" W for a distance of 158.85 feet to an angle point.
3.  S 04° 28' 53" W for a distance of 125.97 feet to an angle point.
4.  S 42° 45' 22" W for a distance of 60.01 feet to an angle point.
5.  S 50° 55' 03" W for a distance of 131.51 feet to an angle point.
6.  S 46° 50' 13" W for a distance of 135.56 feet to an angle point.
7.  S 38° 07' 44" W for a distance of 159.11 feet to an angle point.
8.  S 37° 48' 43" W for a distance of 64.90 feet to an angle point.
9.  S 74° 59' 44" W for a distance of 106.40 feet to an angle point.

10. S 81° 58' 21" W for a distance of 152.78 feet to an angle point.
11. N 89° 55' 02" W for a distance of 94.07 feet to an angle point.
12. S 86° 39' 12" W for a distance of 133.08 feet to an angle point.
13. S 58° 51' 33" W for a distance of 66.64 feet to an angle point.
14. N 81° 35' 49" W for a distance of 115.31 feet to an angle point.
15. N 57° 53' 19" W for a distance of 80.86 feet to an angle point.
16. N 88° 14' 57" W for a distance of 98.11 feet to an angle point.
17. S 67° 18' 20" W for a distance of 45.99 feet to an angle point.
18. N 30° 45' 20" W for a distance of 81.18 feet to an angle point.
19. N 06° 02' 41" E for a distance of 154.33 feet to an angle point.
20. N 66° 46' 53" E for a distance of 66.10 feet to an angle point.
21. N 33° 58' 31" W for a distance of 53.38 feet to an angle point.
22. N 66° 05' 20" W for a distance of 99.31 feet to an angle point.
23. N 31° 05' 29" W for a distance of 130.30 feet to an angle point.
24. N 49° 51' 34" W for a distance of 115.17 feet to an angle point.
25. N 37° 14' 55" W for a distance of 81.95 feet to an angle point.
26. N 20° 13' 25" W for a distance of 125.22 feet to an angle point.
27. N 43° 19' 04" W for a distance of 105.51 feet to an angle point.

**THENCE:** S 89° 39' 48" E, departing from said river boundary and along the common boundary line between the herein described tract and said 966.45 acre tract, at 124.55 feet passing a 12 inch diameter gate post located at S.P.C. N= 13611226.77' & E= 1771024.85' and continuing along the same course now generally with the fenced boundary between the herein described tract and said 966.45 acre tract, for a total distance of 1693.40 feet to the **Place of Beginning** and containing 22.80 acres of land within the herein described boundary as determined by an actual survey made on the ground by D. G. Smyth & Co. and completed January 7, 2012.

THE STATE OF TEXAS:
COUNTY OF UVALDE:

It is hereby certified that the foregoing field note description and attached plat were prepared from an actual on the ground survey made by personnel working under my direct supervision and that same are true and correct according to same said survey.

D. G. Smyth-Registered Professional Land Surveyor/
Licensed State Land Surveyor-No. 2046
**PROJECT NO.12-4703 Tr. II**