**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

## DEBTORS' SECOND AMENDED JOINT DISCLOSURE STATEMENT TO SECOND AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION

## INTRODUCTION

KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") file this Debtors' Second Amended Joint Disclosure Statement to their Second Amended Substantively Consolidated Plan of Reorganization.

On April 27, 2020 (the "Petition Date"), Debtors filed a voluntary Petition under Chapter 11 of the U.S. Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate as Debtors in Possession pursuant to the provisions of sections 1107 and 1108 of the Bankruptcy Code.

This Second Amended Disclosure Statement to Substantively Consolidated Plan of Reorganization (hereinafter "Disclosure Statement") has been prepared by the Debtors pursuant to Section 1125 of the Bankruptcy Code, which requires that creditors receive a written disclosure statement containing sufficient information about the Debtors to enable creditors to make an informed and intelligent decision regarding the Debtors' Substantively Consolidated Plan of Reorganization (hereinafter "*Plan*" or "*Plans*"). Prior to the solicitation of your vote on the Plan, and as required by the Bankruptcy Code, the Bankruptcy Court has approved this Disclosure Statement as containing adequate information about the Debtors.

In addition to this Disclosure Statement and accompanying Plan, you will also receive an order of the Court setting the hearing on the confirmation of the Plan and establishing deadlines for casting your vote or filing objections to confirmation. Mailing instructions are included in your Ballot. YOUR VOTE IS IMPORTANT. In order for each Plan to be accepted, at least two-thirds (2/3s) in amount and one-half (1/2) in number of the voting creditors in each class must affirmatively vote for each respective Plan. Even if all classes of claims accept the Plan of a particular Debtor, the Bankruptcy Court may refuse to confirm the Plan for that Debtor. Among other things, Section 1129 requires that the Plan be in the best interests of the creditors and other parties in interest, and generally requires that the holders of the claims not receive less than would otherwise be realized if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In appropriate circumstances, the Bankruptcy Court may confirm a Plan even though less than all of the classes of claims accept the Plan. The circumstances warranting confirmation notwithstanding the vote of a dissenting class or classes of creditors are set forth in Section 1129(b) of the Bankruptcy Code. Except as otherwise provided in the Plan, the Order of Confirmation, or Section 1141(d), confirmation of the Plan will discharge the Debtor from all of its debts. Confirmation makes the Plan binding on the Debtor and all of its creditors, regardless of whether or not they have accepted the Plan.

The Plan proposes to substantially consolidate the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC as further discussed below. The plan shall serve as a motion for the substantive consolidation.

The Debtors

1. General

KrisJenn Ranch, LLC is a Texas limited liability company with two series. The first series is KrisJenn Ranch, LLC Series Uvalde Ranch ("Series Uvalde) and the second is KrisJenn Ranch, LLC Series Pipeline Row ("Series Pipeline"). Series Pipeline owns a pipeline and right of way (respectively, the "Pipeline" and "ROW" and collectively the "Express Pipeline"). Additionally, Series Uvalde owns the KrisJenn Ranch (the "Ranch") located at 6048 CR 365, Uvalde, Texas 78801. The Express Pipeline and the Ranch were each encumbered by a $5.9 million loan from Mcleod Oil ("Mcleod") related to an investment in a pipeline and its right of way.

Mcleod claims the Debtors defaulted on the loan in February 2020. Debtors filed a voluntary Petition under Chapter 11 of the U.S. Bankruptcy Code on April 27, 2020.

The ownership and rights in the Express Pipeline were hotly disputed, causing the Debtors to file Adversary Case Number 20-05027 to determine the rights in the Express Pipeline immediately after filing the bankruptcy case. DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch") countersued Debtors in the adversary seeking monetary damages related to the Express Pipeline and a declaration of their rights in the Express Pipeline. DMA also sought a declaration that it had a 50% interest in a promissory note owned by KrisJenn Ranch, LLC (the "Bigfoot Note"). Daniel Moore joined the case as a third-party plaintiff seeking breach of fiduciary duty damages against Larry Wright who was added as a third-party defendant. Subsequent to the adversary filing, DMA and Borders filed an Amended Motion to Sever or Dismiss on April 29, 2020, seeking to split the joint filing into three separate bankruptcy filings. The motion to sever was granted on June 5, 2020—splitting the joint bankruptcy filing into the three separate cases.

After a several-day bench trial, the Court made numerous findings related to the claims. In its final judgment, the Court awarded Debtors declaratory relief regarding the net-profit interests and classifying Longbranch, and DMA's Assignment Agreements in the Express Pipeline as

personal covenants. The Court rendered Moore would take nothing regarding his breach of fiduciary duty claim against Wright. The court granted DMA a declaratory judgment in an ownership interest in 50% of the Bigfoot Note payments, as well as $175,143.60 from the court registry plus attorney's fees if DMA tendered the proper requests. Subsequently the Court awarded $100,000 in attorney fees to DMA. The Court's ruling on these issues are under appeal. There is enough funds in the Court's registry to pay all but approximately $50,000 of the amount owed to DMA.

On or about September 9, 2021, KrisJenn Ranch, LLC Series Uvalde Ranch sold the ranch and all cattle and FF&E in the sale for $7.45 million. After costs of sale, property taxes, and paying Mcleod Oil $6.43 million, the funds remaining in the estate were $893,938. Of this amount, Mcleod Oil contends it is entitled to approximately $500,000. Debtors contend Mcleod Oil is owed at most $100,000.

Debtors' remaining assets are as follows:

Krisjenn Ranch, LLC

    1) Thunder Rock Holdings - $699,000

Krisjenn Ranch, LLC Series Uvalde Ranch

    1) $893,938

Krisjenn Ranch, LLC Series Pipeline ROW

    1) Pipeline ROW $6,000,000

<u>The Plan Proponents</u>

The Debtors are the Plan Proponents in this case.

<u>The Disclosure Statement</u>

Pursuant to Section 1125(b) of the Bankruptcy Code (Title 11 of the United States Code, hereinafter referenced as 11 U.S.C. section number), a precondition to solicitation of acceptances and rejections of a Plan of Reorganization from holders of claims or interests in the bankruptcy estate is that the holders be furnished with a copy of the Plan or a summary of the Plan and a written Disclosure Statement which contains "adequate information".

"Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records, that would enable a

> hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed Plan.

11 U.S.C. 1125(a)(1).

Whether or not a disclosure statement contains adequate information is determined by the Court upon notice and hearing. 11 U.S.C. § 1125(b). All parties in interest may participate in this determination. After the disclosure statement is approved by the Court, a hearing will be set on confirmation of the Plan and a Plan package which includes copies of the Order Approving Disclosure Statement, Plan, this Disclosure Statement and Ballot will be sent to the parties entitled to vote on the Plan.

<u>Chapter 11</u>

Chapter 11 is a portion of the Bankruptcy Code which provides a business with protection from their creditors while it seeks to reorganize their business affairs, including the repayment of their debts. The terms of the proposed reorganization are embodied in a Plan of Reorganization. While the Bankruptcy Code gives the Debtors many aids in the reorganization of their financial affairs, these aids are balanced with rights and protections afforded to creditors. Confirmation of a Plan of Reorganization is the objective of the Debtors in a Chapter 11 Reorganization Case. Performance of the confirmed Plan is the objective of the Debtors. The Plan is the terms by which the claims against and interests of the Debtors are satisfied.

<u>The Process of Confirmation</u>

1. Hearing on Confirmation. Confirmation of a Plan is simply approval by the Court. This approval is sought by the Plan proponent at the hearing on confirmation. In order to obtain approval of the Court, the Plan proponent must show that the Plan meets all requirements for confirmation.

2. Requirements for Confirmation. The requirements for confirmation are listed in 11 U.S.C. § 1129(a). These requirements are part of the balancing of rights and aids between the Debtors and its creditors. Certain of the requirements for confirmation necessitate the solicitation of ballots from the holders of claims against and interests in the Debtors indicating either their acceptance or rejection of the Plan. Section 1129(a) does not require that each and every holder of a claim against or interest in the Debtors vote to accept the Plan in order for it to be confirmed by the Court. First, only those holding claims or interests which are in classes which are impaired are entitled to vote. Impairment is defined in 11 U.S.C. § 1124.

Impairment basically means an alteration of the legal, equitable or contractual rights of the holder of the claim or interest. The Plan proponents must assert in the Disclosure Statement whether or not each class is deemed by them to be impaired. The proponents' conclusion may be disputed by a creditor and the dispute resolved by the Court. If a

Plan impairs or changes the rights of any creditor, it must be accepted by at least one Class of impaired claims. Second, only those ballots that are properly completed and timely delivered are counted. Third, of those voting in each class, only a majority of the claims in number and at least two-thirds (2/3) in amount are needed for the acceptance of the Plan by that class.

Even if all Classes of claims and interests accept the Plan, its confirmation may be denied by the Bankruptcy Court for the failure to meet some other requirement of Section 1129 of the Bankruptcy Code. Among those requirements is one that the Plan is in the best interest of claim holders and interest holders. That generally requires that the value to be distributed to claimholders and interest holders may not be less than such parties would receive if the Debtors were liquidating under Chapter 7 of the Code.

3. Cramdown: The Court may confirm a Plan even though a class of claims or interest holders rejects the Plan. Confirmation of a Plan over the rejection by one or more classes of claims or interests is generally referred to as "cram down." In order for the Plan to be confirmed in spite of the rejection by a class of claims or interests, the proponent of the Plan must show that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

Section 1129(b)(2) provides that the following standards are among the issues to be considered in determining whether the Plan is "fair and equitable" with respect to a particular class:

Secured Claims. The Plan is fair and equitable with respect to each class of secured claims if it provides that either:

1. The holders are to retain their lien, whether the collateral is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of their secured claim, and are to receive deferred cash payments totaling not less than the allowed amount of their claims and having a present value of not less than the value of the collateral or, in the alternative, secured creditors must receive their collateral in satisfaction of new secured claims.

2. The collateral is to be sold in a sale permitting the holder to "bid in" free and clear of holder's lien, with such lien to attach to the proceeds of such sale, and the treatment of the lien on such proceeds under either clause (1) or (3) hereof; or

3. The holders are to receive the "indubitable equivalent" of their claims.

Unsecured Claims. The fair and equitable requirement in the context of a class of unsecured claims requires that either:

1. The holders are to receive property with a present value equal to the allowed amount of their claims; or

2. No holders in a class junior to the rejecting class are to receive any property.

## I. **REPRESENTATIONS**

The statements contained in this Disclosure Statement are made as of the date of this Disclosure Statement unless another time is specified. Except as stated herein, no other representations concerning the Debtors, its business operations, the value of its property, or the value of any benefits offered to you in the Plan are authorized. ANY REPRESENTATIONS OR INDUCEMENTS WHICH ARE CONTRARY TO THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, and such representations or inducements and their origin should be immediately reported to Ronald J. Smeberg, The Smeberg Law Firm Counsel for the Debtors, 4 Imperial Oaks, San Antonio, Texas 78248; Telephone: (210) 695-6684.

THE DEBTORS AND THEIR COUNSEL HAVE MADE EVERY EFFORT TO ENSURE THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS ACCURATE. WE CANNOT, HOWEVER, WARRANT THAT ALL OF THE DATA IS COMPLETELY ACCURATE, THOUGH WE FEEL IT IS MATERIALLY ACCURATE TO OUR BEST KNOWLEDGE, INFORMATION AND BELIEF. THE INFORMATION IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO AN INDEPENDENT AUDIT, AND FINANCIAL INFORMATION HAS BEEN BASED UPON OUR INTERNAL RECORDS. IF ANY STATEMENTS OF FINANCIAL MATTERS WERE MADE BY THIRD-PARTY ACCOUNTING PROFESSIONALS ACCOMPANY THIS DISCLOSURE STATEMENT, THEY WILL CONTAIN A DISCLAIMER REQUIRED OF UNAUDITED FINANCIAL INFORMATION. FURTHER, YOU SHOULD NOT CONSTRUE THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT AS AN ENDORSEMENT OF THE PLAN OR A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION PRESENTED HEREIN.

The Debtors have expended considerable time in devising a Plan which they believe to be financially feasible and fair to their creditors. Consequently, the Debtors urge you to vote for acceptance of the Plan.

## II. **INFORMATION CONCERNING THE DEBTORS**

A. Results of Operations as Debtors in Possession

The Debtors have continued to successfully operate their business and pay their post-petition plan obligations.

B. Estimated Future Income and Expenses

The Debtors have attached, as Exhibit "B", a proforma they have prepared that shows projections for the sale of assets and repayment of 100% of their debts to creditors.

The Debtors' pro-forma financial statement attached as Exhibit "B" accurately and fairly project the Debtors' future income and expenses.

C.    <u>Future Management of the Debtor</u>

The Debtors will continue to manage their financial affairs as they did prior to the bankruptcy filing as a part of their respective Plans of Reorganization.   The Debtors will be able to make lump sum or monthly plan payments with money generated by operations and the sale of the Ranch and/or Pipeline.

D.    <u>Summary of the Plan</u>

The remaining Ranch proceeds shall be used to pay the Mcleod debt, all unsecured debt and the administrative expenses of the bankruptcy.

## III.    ANALYSIS AND VALUATION OF PROPERTY

A.    <u>Real and Personal Property</u>

The Debtors have attached Exhibits "C1 – C3" which are each respective Debtor's Schedule A/B – Real and Personal Property filed by the Debtors with the Court.

B.    <u>Liquidation Analysis</u>

Debtors' value is in their ability sell assts and to operate and generate cash flow.    A liquidation analysis is attached as Exhibit A hereto.

## IV.    SUMMARY OF PLAN OF REORGANIZATION

A.  <u>Substantive Consolidation</u>

(a)  <u>Generally</u>

The Plan proposes to substantially consolidate the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC.   The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC.   As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of each of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors.   The substantive consolidation contemplated by this section shall not affect

7

or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect. Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC. KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

(b) Justification

(i)      *Facts Justifying Substantive Consolidation*

KrisJenn Ranch, LLC and its series have never operated as separate entities. By way of example, they have never filed separate tax returns. Additionally, KrisJenn Ranch, LLC is the only entity known to the world save for its primary secured lender Mcleod Oil. In regard to the Ranch that was "owned" by KrisJenn Ranch, LLC series Uvalde Ranch, none of the vendors who supplied the ranch had ever even heard of the series and always thought they were doing business with KrisJenn Ranch, LLC. LongBranch Energy, LP, which initiated suit against KrisJenn Ranch, LLC regarding the pipeline, only sued the KrisJenn Ranch, LLC because it did not know about either series. When DMA Properties, Inc., which was owned by. Frank Daniel Moore, entered the pipeline fray, it sued Larry Wright, KrisJenn Ranch, LLC, and KrisJenn Ranch, LLC series Uvalde Ranch. DMA sued everyone but the "owner" of the pipeline, KrisJenn Ranch, LLC Pipeline Row. In forming the series, all the funds to form, operate, and maintain the series came from KrisJenn Ranch, LLC. The only name ever listed on the sole bank account was KrisJenn Ranch, LLC. Simply put, KrisJenn and its series never functioned as separate entities. Further, Larry Wright, KrisJenn's manager, never intended for them to function as separate entities. Most importantly, the vast majority of Debt in this case, the Mcleod Debt, is borne by all three entities.

(ii)      *Legal Argument Justifying Substantive Consolidation*

Substantive Consolidation is appropriate in this case because: (1) KrisJenn's creditors dealt with the separate legal entities as a single economic unit and did not rely on their separate identity; and (2) the affairs of KrisJenn are so entangled with its series that consolidation will benefit all creditors.

Further, substantive consolidation is appropriate because: (1) there is some difficulty in segregating and ascertaining individual assets and liabilities of the KrisJenn Parties; (2) any financial statements KrisJenn and its series are consolidated; (3) there was commingling of assets and business functions between KrisJenn and its series; (4) there is unity of interests and ownership between the various corporate entities; (5) parent and inter-series guarantees on loans between KrisJenn and its series exists; and (6) KrisJenn and its series have transferred assets without formal observance of corporate formalities.

In addition— should the Court find KrisJenn and its series are separate entities that cannot file jointly—KrisJenn can show that there is identity between the entities to be consolidated, and the consolidation is necessary in order to prevent harm or prejudice, or to effect a benefit generally.

Therefore, substantive consolidation is appropriate under both the Traditional Test and the Balancing Test laid out by this Court in *In re Introgen Therapeutics, Inc.*, 429 B.R. 570 (Bankr. W.D. Tex. 2010).

(c)  Order Granting Substantive Consolidation

**The Plan shall serve as a motion seeking entry of an order substantively consolidating the Cases, as described and to the extent set forth herein.  Unless an objection to such substantive consolidation is made in writing by any creditor affected by the Plan as herein provided on or before five (5) days prior to the Voting Deadline, or such other date as may be fixed by the Court, an order approving the substantive consolidation described herein (which may be in the Confirmation Order) may be entered by the Court.  However, an order shall only be entered if the Bankruptcy Court enters the Confirmation Order.  In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.**

B.  Administrative Expenses

Administrative Expenses:  Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment.  These claims do not include other administration priority claims allowed under 11 U.S.C. § 503.  Those will be paid in the ordinary course as priority claims under 11 U.S.C. §

507(a) but to the extent they may not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $30,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $228,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

All claims for administrative expenses shall be filed with the Court within 60 days of the Effective Date.

C. Classification and Treatment of Governmental Claims

1. Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service: The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims. If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

2. Secured Taxing Authority Claims:

a. Uvalde County Tax Office. The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805. However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch. The claim shall be paid in full upon sale of the Ranch. If the Ranch has not been sold as of the Effective Date, then the claim shall be paid in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date. The Debtors may prepay this claim in full in the Debtors' business judgment. The

10

equity holders reserve the right to pay this claim as a contribution of capital to the Debtors.

b.   Guadalupe County filed a claim for $18,233.90 in case number 20-50805. The claim is in regard to Larry Wright's personal residence and does not relate to any property of the estate.   The claim is disallowed and to the extent Guadalupe County does not withdraw the claim, Debtor will file an objection to the claim.

c.   Nacogdoches County filed a claim for $354.60 in case number 20-51083. This claim shall be paid in full on the Effective Date.   Nacogdoches County shall retain all its liens until paid.

d.   Angelina County filed a claim for $2,198.21 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row.   The claim shall be paid in full upon sale of the Ranch.   If the Ranch has not been sold as of the Effective Date, then the claim shall be paid in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date.   The Debtors may prepay this claim in full in the Debtors' business judgment.   The equity holders reserve the right to pay this claim as a contribution of capital to the Debtors.

e.   Shelby County filed a claim for $496.67 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row.   The claim shall be paid in full at on the Effective Date.   Shelby County shall retain all its liens until paid.

f.   Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date.   Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full.   Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtor. Each separate payment which will be applied pro rata to the various tax accounts indicated above.   In the event a Debtor sells, conveys or transfers any property which is collateral of a property tax claim or post confirmation tax debt, the Debtor shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. A Debtor may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time.   The Debtor shall have thirty (30) days from the Effective Date to object to the any

property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan.  The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full.  Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtor's counsel advising of that default, and providing the Debtor with a period of fifteen (15) days to cure the default.  In the event the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Debtor are still paying any pre-petition debt, shall be considered an event of default.  A Debtor shall be entitled to no more than three (3) Notices of Default.  In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

D.  McLeod Class 1 Claim in all Three Debtor Cases

1.  Class 1 Claims

Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases.  Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103.  The allowed claim shall be paid as follows:

The Class One Claims are disputed.  To the extent the Claims demand payment of principal, interest, attorney fees, late fees and any other costs or fees in excess of the loan documents or law, the Debtors dispute the claim.

To the extent the Court allows the Class 1 Claims, the Claims will be paid in full within 60 days of the Court entering an unappealable order determining the amount of the claims including all sums owed pre and post-petition.  To the extent Debtors, in their sole business judgment determine a certain amount is owed to Mcleod Oil that is less than the amount subject to an appeal,

Debtors may pay the lessor amount while the appeal is pending without Debtors or the Mcleod's waiving any rights in the appeal.

Unless otherwise provided herein or by the Court, upon receiving payment of the allowed Class 1 claim, Mcleod shall release its liens against all Debtors' property and the property of any guarantor.

Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein. Mcleod shall be paid post confirmation interest on its allowed and unsatisfied claim at 4.5%.

If the remaining sales proceeds from the Uvalde ranch are insufficient to pay the allowed Mcleod claim, then the remaining claim shall be paid along with the Class 5 general unsecured claims.

     i. Mcleod will vote on the plan.

E. <u>DMA and Frank Daniel Moore Claims</u>

   1. <u>Class 2 Claims</u>:

     i. Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA"). Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

    ii. DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027. The Court awarded damages and attorney's fees which are currently subject to an appeal. After an unappealable order is entered establishing these amounts, DMA shall first be paid from the funds currently held in the state court registry. To the extent there are not sufficient funds to pay the claim from the state court registry, the remaining claim shall be paid as a general unsecured claim in Class 5. DMA and Frank Daniel Moore are unimpaired and will not vote on the plans.

F. <u>Other Claims</u>

   1. <u>Class 3 Claims</u>:

     i. Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"). Claim 7 in 20-50805.

    ii. DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline and other miscellaneous relief, these claims were all denied through the trial. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027. To

the extent Longbranch or DMA have filed or claimed liens encumbering any of Debtors' property, those liens are void and Debtors may file a copy of the confirmed Plan and Confirmation order with any state or local government evidencing the liens have been voided.

 iii. Class 3 is unimpaired and does not vote on the plans.

2. <u>Class 4 Claims</u>:

  i. Class 4 are the claims of Longbranch Energy, LP ("Longbranch"). Claim 4 in 20-51083 and Claim 8 in 20-51084.

  ii. Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline and other miscellaneous relief. These claims were all denied through the trial. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027.

  iii. To the extent Longbranch has filed or claimed liens encumbering any of Debtors' property, those liens are void and Debtors may file a copy of the confirmed Plan and Confirmation order with any state or local government evidencing the liens have been voided.

  iv. Class 4 is unimpaired and does not vote on the plans.

3. <u>Class 5 Claims</u>:

  i. Class 5 is the impaired general unsecured creditor claims. This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945 (filed as Claim 6 in 20-51084) and may include Class 1 or Class 2 creditors as described above.

  ii. The Class 5 claims shall be paid up to their allowed claim, pro rata, from the remaining proceeds of the Uvalde Ranch sale after the Class 1 claim and allowed administrative claims have been paid in full within 120 days of the Court entering an unappealable order determining the amount of the Class 1 allowed claims. 4 If there are not sufficient funds from the Uvalde Ranch sale to pay all general unsecured creditors in full, the Class 5 claims shall be paid within 12 months of the Court entering an unappealable order determining the amount of the Class 1 allowed claims. Cedillo shall vote on the plan as the only established Class 5 Creditor.

4. <u>Class 6 Claims</u>:

  i. Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less. These claims were all scheduled in Case 20-50805,

but none of the creditors filed claims in any of the Debtors' cases.  The claimants are as follows:

1. <u>C & W Fuels  -  $1.00</u>

2. <u>Granstaff Gaedke & Edgmon PC  -  $1.00</u>

3. <u>Hopper's Soft Water Service  -  $100.00</u>

4. <u>Medina Electric  -  $1.00</u>

5. <u>Texas Farm Store  -  $1.00</u>

6. <u>Uvalco Supply  -  $1.00</u>

   ii. The Class 6 claims shall be paid in full on the Effective Date.  They are unimpaired and shall not vote on the plan

5. <u>Class 7 Claims</u>:

   i. Class 7 claim is the general unsecured claim of insider Larry Wright.  This claim was scheduled in Case 20-50805 in the amount of $648,209.  Additionally, Larry Wright loaned $129,446 to the Company.

   ii. The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims.  The claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date.  The claim is deemed unimpaired and shall not vote on the plan

6. <u>Class 8 Claims</u>:

   i. Class 8 claims are the claims of Debtors' equity holders.  The equity holders shall retain their membership/ownership interest in each respective debtor as that membership/ownership existed prior to the bankruptcy filing.

G.   <u>Payment of Administrative Claims</u>

All allowed administrative claims will be paid in full on or after the Plan's Effective Date in accordance with the provisions of 11 U.S.C. '1129(a)(9)(A), as agreed to between a particular administrative claimholder and the Debtors.  The Debtors anticipate paying administrative claims from the sale of the Ranch.

H.    Feasibility of the Plan

Debtors anticipate the Ranch will sell for a minimum of $7.5 million.  Even if the Court agreed with Mcleod that it was entitled to 10.5% interest, a sale price of $7.5 million would be sufficient to pay all pre and post-petition debts of the estate.

I.    Claims Allowance Procedure

Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.  **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for herein in regard to particular creditors.**

Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

Settlement of Disputed Claims.  The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment.  Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed herein.  The Debtors reserve the right to have the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

J.    Retention of Jurisdiction

The Court will retain jurisdiction as set out in the Plan.

K.    Interests Retained by the Debtor

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors.  Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person

or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

## V.     ALTERNATIVES TO THE DEBTORS' PLANS

The alternative to the Debtors' proposed operating plan of reorganization is dismissal of the bankruptcy.  The Debtors' have sufficient assets to pay all their debts through a sale of the Ranch, execution of the Mcleod option or a combination thereof.

## VI.     RISK TO CREDITORS UNDER THE DEBTORS' PLAN

The principal risk that creditors will incur under the Debtors' Plan is that the Mcleod Debt is determined to be greater than the remaining Uvalde Ranch Proceeds.  In the even this were to occur, Debtors have sufficient other assets to cover any shortfall.

## VII.     TAX CONSEQUENCES

Debtors are on a cash basis accounting system.  Debtors direct all parties in interest to consult their own tax advisors regarding their own tax consequences.

a.   Litigation

Debtors filed Adversary No. 20-05027 on May 1, 2020, to litigate the issues surrounding the Pipeline ownership.  Debtors received a final judgment in their adversary action on March 24, 2021, as previously described.

## VIII.  RELATIONSHIP OF DEBTOR WITH AFFILIATES

Larry Wright is the controlling member for all three Debtors and will continue to manage and control the Debtors post confirmation.

## IX.     PREFERENTIAL OR VOIDABLE TRANSFERS

None.

## X.     SUMMARY OF SIGNIFICANT ORDERS ENTERED

Many orders were entered in these cases.  A list of the "significant" orders entered include the following; however, parties should consult the court's docket for to review all orders entered:

1) Order to Jointly Administer the Cases under Case 20-50805.
2) Order severing cases entered on June 5, 2020.
3) Final Order in Adversary Action No. 20-05027.

# XI. <u>MISCELLANEOUS DISCLOSURES</u>

A. <u>Modification of the Plan</u>

The Debtors may propose amendments or modifications to their Plan at any time prior to the date of the entry of the Order Confirming Plan, with leave of the Court, and upon proper notice to parties in interest. After the date of the Order Confirming Plan, Debtors may, with approval of the Court so long as it does not materially or adversely affect the interests of creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Order Confirming Plan in such manner as may be necessary to carry out the purpose and effect of this Plan.

B. <u>Effect of Confirmation of the Plan</u>

<u>Legally Binding Effect</u>.  The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan.  On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors.  **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A.      No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B.      A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein.  Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default.  Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

<u>Injunction</u>.  The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors

and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

Limited Protection of Certain Parties in Interest   Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

Continuation of Anti-Discrimination Provisions of Bankruptcy Code   A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors have been or are associated or

affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

C.      Executory Contracts

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or herein.  Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.  **Interested parties should consult the plan of reorganization for each debtor to determine whether a lease or executory contract is rejected or assumed.  If a lease or contract is rejected, the affected party shall file all claims for rejection damages or an amendment to a previously filed claim no later than the 30th day following the effective date of the plan; otherwise, the claim shall be barred.**

D.      Default

Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court.  The Debtors shall be entitled to three (3) notices of default for each calendar year.  On the fourth (4th) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

## XII.   CONCLUSION

The Debtors submit this Disclosure Statement.  The information contained herein has been compiled in good faith and in accordance with the provisions of 11 UCC §§ 101, *et. seq.*  This Disclosure Statement is presented for consideration by creditors and other parties in interest and as the sole source of information furnished by the Debtors, or to be furnished by the Debtors, in solicitation of acceptance of Debtors' Plan of Reorganization.

The Debtors recommend that the Plan of Reorganization be approved.  An operating plan is in the best interest of all creditors, Debtors, and parties-in-interest; therefore, all Creditors and Interest Holders are urged to vote to accept the Plan.

# XIII.   ARTICLE

## ATTACHMENTS AND EXHIBITS

| | |
|---|---|
| Exhibit "A" | Liquidation Analysis |
| Exhibit "B" | Proforma |
| Exhibit "C" | Proposed Plan of Reorganization |
| Exhibit "D" | Last filed Monthly Operating Reports |

DATED: September 28, 2021.

BY: /s/ *Larry Wright*
Name: Larry Wright, Manager

THE SMEBERG LAW FIRM, PLLC

BY:/s/ Ronald J. Smeberg
Ronald J. Smeberg
SBN: 24033967
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

Exhibit A. Liquidation Analysis

| | |
|---|---|
| Remaining Cash From Ranch Sale | $893,938 |
| Ranch Cash and Securities (Thunder Rock Holdings) (70%) | $489,300 |
| ROW1 (liquidation value) | $4,000,000 |
| **Total Assets** | **$5,382,698** |

| | |
|---|---|
| Secured Tax Debt | $9000 |
| Admin Claims | $228,000 |
| Mcleod Debt | $100,000[2] |
| Unsecured Debt | $53303 |
| Insider Debt | $677,000 |
| **Total Debt** | **$1,067,303** |

| | |
|---|---|
| **Chapter 7 Expenses on Conversion** | $180,000 |
| Net Value After Debt and Liquidation Expenses | $4,135,395 |

---

1 The actual value of the ROW could be substantially higher now that the DMA and Longbranch issues have been resolved but are still pending appeal.

2 Mcleod disputes this amount and believes its worth closer to $550,000.

3 The net Debt to DMA if the Bigfoot appeal fails is approximately $50,000.

|  | **Exhibit B** |  |  |
| --- | --- | --- | --- |
| **Post Ranch Sale** | Debtor Perspective | Mcleod Perspective |  |
|  | **Debit** | **Debit** | **Credit** |
| Net Sale of Krisjenn Ranch (Includes $6.43 Million Payment to Mcleod) Bankruptcy Costs |  |  | $893,938 |
| Est. Amount Owed Mcleod | $100,000 | $550,000 |  |
| Admi Claims | $228,000 | $228,000 |  |
| County Taxes | $9,800 | $9,800 |  |
| Non Insider Unsecured Claims | $53,050 | $53,050 |  |
| Total | $390,850 | $840,850 | $893,938 |
|  | Debtor Perspective | McCleod Perspective |  |
| Net to Estate After 100% of Non insider Debt Paid | **$503,088** | **$53,088** |  |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| KRISJENN RANCH, LLC | § | CASE NO. 20-50805-rbk |
| | § | |
| | § | |
| DEBTOR | § | (Jointly Administered) |

## KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S SECOND AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION

## ARTICLE I
## SUMMARY AND SUBSTANTIVE CONSOLIDATION

### 1.01 Summary

This Second Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to substantively consolidate all three Debtors into KrisJenn Ranch, LLC to pay creditors of KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") from the sale of real property and/or pipeline rights**.**

This Plan differs from the First Amended Plan in that it accounts for Debtor KrisJenn Ranch, LLC Series Uvalde Ranch having sold its Uvalde Ranch and substantially paid down the debt to McCleod Oil. The plan provides for all creditors of the bankruptcy estate to be paid 100% of their Allowed claims after the Court determines the amount of fees and interest that are still owed to McCleod Oil.

This Plan provides for paying real estate taxes, administrative claims, one secured class for the Mcleod Oil debt, and 100% of the unsecured debt.

All creditors and equity security holders should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Generally, the plan provides as follows.

Debtors shall pay their secured creditor, Mcleod Oil, from the sales proceeds of the Uvalde Ranch after an unappealable order is entered stating the amount owed McCleod.

Except as otherwise stated, Debtors shall pay select governmental claims in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the

1

effective date within 60 months of the bankruptcy filing date. The Debtors may prepay these claims in full in the Debtors' business judgment. Debtors shall pay remaining governmental claims upon confirmation.

DMA and Frank Daniel Moore debts related to the "Bigfoot Note" will be paid from the Court registry and/or from the Bigfoot Note payee in accordance with any further orders of the Bankruptcy court. To the extent there are not sufficient funds to pay the entire Bigfoot Note and court ordered attorney fees, the remaining fees shall be treated as general unsecured debts.

Debtors shall pay general unsecured claims 100% at the federal judgment rate of interest in effect on the confirmation date within 120 days after a final unappealable order is entered determining the amount of the Mcleod claim unless there are insufficient funds from the sale in which case the unsecured creditors shall be paid within 12 months.

The remaining DMA, Frank Daniel Moore, and Longbranch Energy claims are all disallowed pursuant to the adversary case order in 20-05027.

Equity holders shall all retain their interests as they existed prior to the bankruptcy case filing.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

1.02 Substantive Consolidation.

The Plan proposes to substantially consolidate the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC. The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC. As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of each of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect.  Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC.  KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01.  Class 1. | Secured Claim of McLeod Oil, LLC | Y | Yes |
| 2.02.  Class 2. | Claims Of DMA and Frank Daniel Moore | N | No |
| 2.03.  Class 3. | DMA and Longbranch Energy, LP Joint Claims | N | No |
| 2.04. Class 4. | Longbranch Energy, LP Claims | N | No |
| 2.07. Class 5. | General Unsecured Claims | Y | Yes |
| 2.09. Class 6. | General Unsecured Administrative Convenience Claims | N | No |
| 2.10. Class 7. | General Unsecured Larry Wright Insider Claim | N | No |
| 2.11. Class 8. | Equity Holders | N | No |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## AND PRIORITY TAX CLAIMS

3

3.01.   Professional Fees.

Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment.  These claims do not include other administration priority claims allowed under 11 U.S.C. § 503.  Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may not be paid in the ordinary course of business they are listed here.  The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $30,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $228,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount.  It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case.  A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case.  Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment.  These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees.  The anticipated administrative expenses of the Debtors are moderate for a case of this size.

3.02.   Government Claims.

3.02.1.   Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service:  The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims.   If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

3.02.2.   Secured Taxing Authority Claims.

a.  Uvalde County Tax Office.  The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805.  However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch.  The claim shall be paid in full upon sale of the Ranch.  If the Ranch has not been sold as of the Effective Date, then the claim shall be paid in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date.  The

4

Debtors may prepay this claim in full in the Debtors' business judgment. The equity holders reserve the right to pay this claim as a contribution of capital to the Debtors.

b. Guadalupe County filed a claim for $18,233.90 in case number 20-50805. The claim is in regard to Larry Wright's personal residence and does not relate to any property of the estate. The claim is disallowed and to the extent Guadalupe County does not withdraw the claim, Debtors will file an objection to the claim.

c. Nacogdoches County filed a claim for $354.60 in case number 20-51083. The claim shall be paid in full at confirmation. Nacogdoches County shall retain all its liens until paid. This claim shall be paid in full on the Effective Date.

d. Angelina County filed a claim for $2,198.21 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. The claim shall be paid in full upon sale of the Ranch. If the Ranch has not been sold as of the Effective Date, then the claim shall be paid in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date. The Debtors may prepay this claim in full in the Debtors' business judgment. The equity holders reserve the right to pay this claim as a contribution of capital to the Debtors.

e. Shelby County filed a claim for $496.67 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. The claim shall be paid in full on the Effective Date. Shelby County shall retain all its liens until paid.

f. Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtors. Each separate payment which will be applied pro rata to the various tax accounts indicated above. In the event Debtors sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtors shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. Debtors may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time. The Debtors shall have thirty (30) days from the Effective Date to object to the any

5

property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan. The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtors' counsel advising of that default, and providing the Debtors with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Debtors are still paying any pre-petition debt, shall be considered an event of default. A Debtors shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

**Class 1 Claims**:

Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases. Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103. The allowed claim shall be paid as follows:

The Class One Claims are disputed. To the extent the Claims demand payment of principal, interest, attorney fees, late fees and any other costs or fees in excess of the loan documents or law, the Debtors dispute the claim.

To the extent the Court allows the Class 1 Claims, the Claims will be paid in full within 60 days of the Court entering an unappealable order determining the amount of the claims including all sums owed pre and post-petition. To the extent Debtors, in their sole business judgment determine a certain amount is owed to Mcleod Oil that is less than the amount subject to an appeal,

6

Debtors may pay the lessor amount while the appeal is pending without Debtors or the Mcleod's waiving any rights in the appeal.

Unless otherwise provided herein or by the Court, upon receiving payment of the allowed Class 1 claim, Mcleod shall release its liens against all Debtors' property and the property of any guarantor.

Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein.  Mcleod shall be paid post confirmation interest on its allowed and unsatisfied claim at 4.5%.

If the remaining sales proceeds from the Uvalde ranch are insufficient to pay the allowed Mcleod claim, then the remaining claim shall be paid along with the Class 5 general unsecured claims.

Mcleod will vote on the plan.

**Class 2 Claims:**

Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA").  Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027. The Court awarded damages and attorney's fees which are currently subject to an appeal.  After an unappealable order is entered establishing these amounts, DMA shall first be paid from the funds currently held in the state court registry.  To the extent there are not sufficient funds to pay the claim from the state court registry, the remaining claim shall be paid as a general unsecured claim in Class 5.  DMA and Frank Daniel Moore are unimpaired and will not vote on the plans.

**Class 3 Claims:**

Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch").  Claim 7 in 20-50805.

DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline and other miscellaneous relief, these claims were all denied through the trial.  As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027.  To the extent Longbranch or DMA have filed or claimed liens encumbering any of Debtors' property, those liens are void and Debtors may file a copy of the

confirmed Plan and Confirmation order with any state or local government evidencing the liens have been voided.

Class 3 is unimpaired and does not vote on the plans.

**Class 4 Claims:**

Class 4 are the claims of Longbranch Energy, LP ("Longbranch").  Claim 4 in 20-51083 and Claim 8 in 20-51084.

Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline and other miscellaneous relief.  These claims were all denied through the trial.  As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027.

To the extent Longbranch has filed or claimed liens encumbering any of Debtors' property, those liens are void and Debtors may file a copy of the confirmed Plan and Confirmation order with any state or local government evidencing the liens have been voided.

Class 4 is unimpaired and does not vote on the plans.

**Class 5 Claims:**

Class 5 is the impaired general unsecured creditor claims.   This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945 (filed as Claim 6 in 20-51084) and may include Class 1 or Class 2 creditors as described above.

The Class 5 claims shall be paid up to their allowed claim, pro rata, from the remaining proceeds of the Uvalde Ranch sale after the Class 1 claim and allowed administrative claims have been paid in full within 120 days of the Court entering an unappealable order determining the amount of the Class 1 allowed claims.  If there are not sufficient funds from the Uvalde Ranch sale to pay all general unsecured creditors in full, the Class 5 claims shall be paid within 12 months of the Court entering an unappealable order determining the amount of the Class 1 allowed claims.  Cedillo shall vote on the plan as the only established Class 5 Creditor.

**Class 6 Claims:**

Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less.  These claims were all scheduled in Case 20-50805, but none of the creditors filed claims in any of the Debtors' cases.   The claimants are as follows:

1. C & W Fuels  -  $1.00

2. Granstaff Gaedke & Edgmon PC   -  $1.00

3. Hopper's Soft Water Service  -  $100.00

4. Medina Electric  -  $1.00

5. Texas Farm Store  -  $1.00

6. Uvalco Supply  -  $1.00

The Class 6 claims shall be paid in full on the Effective Date.  They are unimpaired and shall not vote on the plan.

**Class 7 Claims:**

Class 7 claim is the general unsecured claim of insider Larry Wright.  This claim was scheduled in Case 20-50805 in the amount of $648,209.  Additionally, Larry Wright loaned $129,446 to the Company

The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims.  The claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date.  The claim is deemed unimpaired and shall not vote on the plan.

**Class 8 Claims:**

Class 8 claims are the claims of Debtors' equity holders.  The equity holders shall retain their membership/ownership interest in each respective Debtors as that membership/ownership existed prior to the bankruptcy filing.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

9

**Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for in the Disclosure Statement or herein.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order or otherwise provided herein.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment. Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed in the disclosure statement. The Debtors reserve the right to have the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

Retention of Jurisdiction.

The Court will retain jurisdiction as set out in the Plan.

Interests Retained by the Debtors.

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors. Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

**ARTICLE VI**

10

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or as indicated below. Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.

Unless the time to file a claim for rejections damages is specifically limited herein or by other court order, rejections damages must be filed no later than 30 days after the effective date of the plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Continued Corporate Existence.    The Debtors shall continue to exist after the Effective Date as their respective Texas entities, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02    Advance Payment of Claims.    Provided Debtors stay current on all payments to creditors pursuant to the Plan, Debtors may make advance payments on claims in Debtors' business judgment discretion.

7.03    Release of the Pipeline Right of Way (ROW).    At the Request of the Reorganized Debtors, any time after Confirmation, and after notice and hearing, if the Court determines there are sufficient funds to pay any reasonably potential allowed Class 1 Claim, the Court may order any Class 1 lien released from the ROW provided such funds are deposited into the registry of the Court or the Reorganized Debtor files a super cedes bond in an amount necessary to satisfy any reasonably potential allowed Class 1 Claim.

7.04    Payments due under the plan shall come from the remaining Uvalde Ranch proceeds, then monetization of the Pipeline ROW, then sale of the Thunder Rock Holdings.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1    Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of

11

such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtors' estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtors under title 28 of the United States Code

8.01.2    Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan.  An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3    Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4    Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as it existed on the Filing Date

8.01.5    Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtors' Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6    Bankruptcy Estate or Estates shall mean all of the assets owned by the Debtors and their respective estates.

8.01.7    Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8    Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or before the Filing Date, whether or not such right to payment or

right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9  Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10  Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

8.01.11  Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12  Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13  Creditor shall mean any entity holding a Claim.

8.01.14  Debtors shall mean **KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row**

8.01.15  Disbursing Agent shall mean KrisJenn Ranch, LLC.

8.01.16  Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

8.01.17  Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.18  Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.19  Effective Date shall mean the later of 30 days after entry of a Final Order confirming Debtors' plan of reorganization.

Exhibit C - 14 of 18

8.01.20  Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.21  Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

8.01.22  Filing Date shall mean the date Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.23  Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.24  General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.25  Holder shall mean the owner or Holder of any Claim or Interest.

8.01.26  Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.27  Insider has the definition ascribed to it under the Bankruptcy Code.

8.01.28  Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.29  Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit. The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit. Compromises of Avoidance Actions may include cash or benefits to the Debtors or Reorganized Debtors and are not Net Proceeds.

8.01.30  Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.31  Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.32  Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.33  Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.34  Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.35  Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtors has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37  Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38  Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.01.39  Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.01.40  Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### ARTICLE IX
### DISCHARGE AND EFFECT OF CONFIRMATION

9.01 Legally Binding Effect.   The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including

15

claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors.  **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A.     No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B.     <u>Affiliate Injunction</u>.  A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein.  Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default.  Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

9.02 Injunction.  The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

9.03 Limited Protection of Certain Parties in Interest  Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents,

representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

9.04 Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

**ARTICLE X**
**OTHER PROVISIONS**

**DEFAULT**

10.01. Default. Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to three (3) notices of default for each calendar year. On the fourth (4th) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without

Exhibit C - 18 of 18

further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

    10.02. Vesting of Estate Property and Effect of Default.  On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in KrisJenn Ranch, LLC, Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor comply with the terms of the Plan, including the making of all payments to creditors provided for in such Plan.  If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in KrisJenn Ranch, LLC and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

                        Respectfully submitted,

                        BY: /s/ *Larry Wright* _____
Name: Larry Wright, Manager, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC Series Uvalde Ranch, KrisJenn Ranch, LLC Series Pipeline Row.

                        THE SMEBERG LAW FIRM, PLLC

                        BY:/s/ *Ronald J. Smeberg*_____
Ronald J. Smeberg
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

**Exhibit D - 1 of 17**

20-50805-rbk Doc#132 Filed 07/22/21 Entered 07/22/21 09:28:03 Main Document Pg 1 of 17

**MOR-1**

**UNITED STATES BANKRUPTCY COURT**

CASE NAME: KrisJenn Ranch, LLC
CASE NUMBER: 20-50805-RBK
PROPOSED PLAN DATE:

PETITION DATE:
DISTRICT OF TX: Western
DIVISION: San Antonio

## MONTHLY OPERATING REPORT SUMMARY FOR MONTH     June     2021

| MONTH | 1/1-1/31/2021 | 2/1-2/28/2021 | 3/1-3/31/2021 | 4/1-4/30/2021 | 5/1-5/31/2021 | 6/1-6/30/2021 |
|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 0.00 | 0.00 | 5,933.38 | 2,000.00 | 50,000.00 | 0.00 |
| INCOME BEFORE INT, DEPREC./TAX (MOR-6) | -32,339.21 | -3,934.30 | 1,235.29 | -616.77 | 1,659.65 | -2,217.91 |
| NET INCOME (LOSS) (MOR-6) | -32,339.21 | -3,934.30 | 1,235.29 | -616.77 | 1,659.65 | -2,217.91 |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 30,000.00 | 0.00 | 2,464.00 | 0.00 | 44,200.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-7) | 32,339.21 | 3,934.30 | 4,698.09 | 2,616.77 | 48,340.35 | 2,217.91 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

**REQUIRED INSURANCE MAINTAINED**
**AS OF SIGNATURE DATE**

| | | EXP. DATE |
|---|---|---|
| CASUALTY | YES ( ) NO ( ) | - - |
| LIABILITY | YES ( ) NO ( ) | - - |
| VEHICLE | YES ( ) NO ( ) | - - |
| WORKER'S | YES ( ) NO ( ) | - - |
| OTHER | YES ( ) NO ( ) | - - |

Are all accounts receivable being collected within terms? Yes No
Are all post-petition liabilities, including taxes, being paid? Yes No
Have any pre-petition liabilities been paid? Yes No
If so, describe
Are all funds received being deposited into DIP bank accounts? Yes No
Were any assets disposed of outside the normal course of business? Yes No
If so, describe
Are all U.S. Trustee Quarterly Fee Payments current? Yes No
What is the status of your Plan of Reorganization?

ATTORNEY NAME: Ronald Smeberg
FIRM NAME:
ADDRESS:
CITY, STATE, ZIP:
TELEPHONE FAX:

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED: _____ TITLE: Mgr
(ORIGINAL SIGNATURE)

(PRINT NAME OF SIGNATORY)     DATE     Revised 07/01/98

**MOR-1**

**Exhibit D - 2 of 17**

**CASE NAME:** KrisJenn Ranch, LLC

**CASE NUMBER:** 20-50805-RBK

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* | MONTH 1/1-1/31/2021 | MONTH 2/1-2/28/2021 | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 |
|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS** | | | | | | | |
| Cash | | 6,042.33 | 2,108.03 | 3,343.32 | 2,726.55 | 4,386.20 | 2,168.29 |
| Accounts Receivable, Net | | | | | | | |
| Inventory: Lower of Cost or Market | | | | | | | |
| Prepaid Expenses | | | | | | | |
| Investments | | 477,490.11 | 477,490.11 | 477,490.11 | 477,490.11 | 477,490.11 | 477,490.11 |
| Other | | | | | | | |
| TOTAL CURRENT ASSETS | 0.00 | 483,532.44 | 479,598.14 | 480,833.43 | 480,216.66 | 481,876.31 | 479,658.40 |
| PROPERTY, PLANT & EQUIP. @ COST | | | | | | | |
| Less Accumulated Depreciation | | | | | | | |
| NET BOOK VALUE OF PP & E | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| OTHER ASSETS | | | | | | | |
| 1. Tax Deposits | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | |
| 3. Electric Deposit | | | | | | | |
| 4. | | | | | | | |
| TOTAL ASSETS | $0.00 | $483,532.44 | $479,598.14 | $480,833.43 | $480,216.66 | $481,876.31 | $479,658.40 |

\* Per Schedules and Statement of Affairs

**MOR-2**                    *Revised 07/01/98*

**Exhibit D - 3 of 17**

CASE NAME:  KrisJenn Ranch, LLC
CASE NUMBER: 20-50805-RBK

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* | MONTH 1/1-1/31/2021 | MONTH 2/1-2/28/2021 | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 |
|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | | | |
| PRE-PETITION LIABILITIES | | | | | | | |
| Notes Payable - Secured | | 5,900,000.00 | 5,900,000.00 | 5,900,000.00 | 5,900,000.00 | 5,900,000.00 | 5,900,000.00 |
| Priority Debt | | | | | | | |
| Federal Income Tax | | | | | | | |
| FICA/Withholding | | | | | | | |
| Unsecured Debt | | 73,330.95 | 73,330.95 | 73,330.95 | 73,330.95 | 73,330.95 | 73,330.95 |
| Other | | 183,174.52 | 183,174.52 | 183,174.52 | 183,174.52 | 183,174.52 | 183,174.52 |
| TOTAL PRE-PETITION LIABILITIES | 0.00 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 |
| **TOTAL LIABILITIES** | 0.00 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | | |
| PREFERRED STOCK | | | | | | | |
| COMMON STOCK | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 |
| RETAINED EARNINGS: Filing Date | | | | | | | |
| RETAINED EARNINGS: Post Filing Date | | -73,061.24 | -73,061.24 | -73,061.24 | -73,061.24 | -73,061.24 | -73,061.24 |
| TOTAL OWNER'S EQUITY (NET WORTH) | 0.00 | -5,678,745.65 | -5,678,745.65 | -5,678,745.65 | -5,678,745.65 | -5,678,745.65 | -5,678,745.65 |
| **TOTAL LIABILITIES & OWNERS EQUITY** | $0.00 | $477,759.82 | $477,759.82 | $477,759.82 | $477,759.82 | $477,759.82 | $477,759.82 |

* Per Schedules and Statement of Affairs

**MOR-3**          *Revised 07/01/98*

20-50805-rbk  Doc#132  Filed 07/22/21  Entered 07/22/21 09:28:03  Main Document   Pg 4 of 17

**CASE NAME:**  KrisJenn Ranch, LLC
**CASE NUMBER:**  20-50805-RBK

## SCHEDULE OF POST-PETITION LIABILITIES

|  | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | | | | | | |
| TAX PAYABLE | | | | | | |
| Federal Payroll Taxes | | | | | | |
| State Payroll Taxes | | | | | | |
| Ad Valorem Taxes | | | | | | |
| Other Taxes | | | | | | |
| TOTAL TAXES PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | |
| OTHER  ACCRUED LIABILITIES | | | | | | |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**\*Payment requires Court Approval**
**MOR-4**

*Revised 07/01/98*

**Exhibit D - 5 of 17**

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

### AGING OF POST-PETITION LIABILITIES
**MONTH** _____

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | OTHER |
|------|-------|----------------|---------------|-------------|-------------------------|-------|
| 0-30 | 0.00 | | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

### AGING OF ACCOUNTS RECEIVABLE

| MONTH | | | | | | |
|-------|---|---|---|---|---|---|
| 0-30 DAYS | | | | | | |
| 31-60 DAYS | | | | | | |
| 61-90 DAYS | | | | | | |
| 91+ DAYS | | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-5**

*Revised 07/01/98*

20-50805-rbk  Doc#132  Filed 07/22/21  Entered 07/22/21 09:28:03  Main Document   Pg 6 of 17

**CASE NAME:**  KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

| | MONTH 1/1-1/31/2021 | MONTH 2/1-2/28/2021 | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| REVENUES   (MOR-1) | 0.00 | 0.00 | 5,933.38 | 2,000.00 | 50,000.00 | 0.00 | 115,315.28 |
| TOTAL COST OF REVENUES | | | | | | | 6,218.96 |
| GROSS PROFIT | 0.00 | 0.00 | 5,933.38 | 2,000.00 | 50,000.00 | 0.00 | 109,096.32 |
| **OPERATING EXPENSES:** | | | | | | | |
| Selling & Marketing | | | | | | | 0.00 |
| General & Administrative | 3.00 | 15.00 | 15.00 | 15.00 | 27.00 | 15.00 | 2,001.00 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | 30,000.00 | | 2,464.00 | 0.00 | 44,200.00 | 0.00 | 146,926.07 |
| Other | 1,075.54 | 978.20 | 1,204.19 | 1,056.13 | 1,300.00 | 1,400.00 | 13,216.60 |
| Other | 1,260.67 | 2,941.10 | 1,014.90 | 1,545.64 | 2,813.35 | 802.91 | 15,882.47 |
| TOTAL OPERATING EXPENSES | 32,339.21 | 3,934.30 | 4,698.09 | 2,616.77 | 48,340.35 | 2,217.91 | 178,026.14 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | -32,339.21 | -3,934.30 | 1,235.29 | -616.77 | 1,659.65 | -2,217.91 | -68,929.82 |
| INTEREST EXPENSE | | | | | | | 0.00 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | 0.00 |
| OTHER ITEMS** | | | | | | | 0.00 |
| TOTAL INT, DEPR & OTHER ITEMS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| NET INCOME BEFORE TAXES | -32,339.21 | -3,934.30 | 1,235.29 | -616.77 | 1,659.65 | -2,217.91 | -68,929.82 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| NET INCOME (LOSS) (MOR-1) | ($32,339.21) | ($3,934.30) | $1,235.29 | ($616.77) | $1,659.65 | ($2,217.91) | ($68,929.82) |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

\* *Footnote Mandatory.*

\* \* *Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.*

**MOR-6**

*Revised 07/01/98*

CASE NAME:   KrisJenn Ranch, LLC
CASE NUMBER:   20-50805-RBK

| CASH RECEIPTS AND DISBURSEMENTS | MONTH | MONTH 1/1-1/31/2021 | MONTH 2/1-2/28/2021 | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $38,381.54 | $6,042.33 | $2,108.03 | $3,343.32 | $2,726.55 | $4,386.20 | $0.00 |
| **RECEIPTS:** | | | | | | | | |
| 2. CASH SALES | | 0.00 | 0.00 | 5,933.38 | 0.00 | 0.00 | 0.00 | 13,315.28 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | 73,330.95 |
| 5. SALE OF ASSETS | | | | | | | | 0.00 |
| 6. OTHER (attach list) | | 0.00 | 0.00 | 0.00 | 2,000.00 | 50,000.00 | | 102,000.00 |
| TOTAL RECEIPTS** | 0.00 | 0.00 | 0.00 | 5,933.38 | 2,000.00 | 50,000.00 | 0.00 | 188,646.23 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | 1,844.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | 1,260.67 | | 1,014.90 | 1,671.77 | 0.00 | 408.12 | 3,947.34 |
| 12. INSURANCE | | | | | | | | 0.00 |
| 13. INVENTORY PURCHASES | | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | 1,075.54 | 2,941.10 | 1,204.19 | 930.00 | 2,813.35 | 1,794.79 | 26,490.27 |
| 17. ADMINISTRATIVE & SELLING | | 3.00 | 15.00 | 15.00 | 15.00 | 27.00 | 15.00 | 171.61 |
| 18. OTHER (attach list) | | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0.00 | 2,339.21 | 2,956.10 | 2,234.09 | 2,616.77 | 2,840.35 | 2,217.91 | 32,453.22 |
| 19. PROFESSIONAL FEES | | 30,000.00 | | 2,464.00 | | 44,200.00 | 0.00 | 70,262.07 |
| 20. U.S. TRUSTEE FEES | | 0.00 | 978.20 | 0.00 | 0.00 | 1,300.00 | 0.00 | 4,880.74 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS** | 0.00 | 32,339.21 | 3,934.30 | 4,698.09 | 2,616.77 | 48,340.35 | 2,217.91 | 107,596.03 |
| 22. NET CASH FLOW | 0.00 | -32,339.21 | -3,934.30 | 1,235.29 | -616.77 | 1,659.65 | -2,217.91 | 81,050.20 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $6,042.33 | $2,108.03 | $3,343.32 | $2,726.55 | $4,386.20 | $2,168.29 | |

**MOR-7**

\* Applies to Individual debtors only
**Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

*Revised 07/01/98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

# CASH ACCOUNT RECONCILIATION
## MONTH OF 6/1-6/30/2021

| BANK NAME | Broadway | | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | 8640 # | | # | | |
| *ACCOUNT TYPE* | *OPERATING* | *PAYROLL* | *TAX* | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | 2,168.29 | | | | $2,168.29 |
| DEPOSITS IN TRANSIT | 0.00 | | | | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | | $0.00 |
| ADJUSTED BANK BALANCE | $2,168.29 | $0.00 | $0.00 | $0.00 | $2,168.29 |
| BEGINNING CASH - PER BOOKS | 4,386.20 | | | | $4,386.20 |
| RECEIPTS* | 0.00 | | | | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR  CONTRIBUTION BY INDIVIDUAL          DEBTOR   MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 2,217.91 | | | | $2,217.91 |
| ENDING CASH - PER BOOKS | $2,168.29 | $0.00 | $0.00 | $0.00 | $2,168.29 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

CASE NAME:   KrisJenn Ranch Series Pipeline LLC
CASE NUMBER: 20-50805-RBK

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 1/1-1/31/2021 | MONTH 2/1-2/28/2021 | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **RECEIPTS:** | | | | | | | |
| 2. CASH SALES | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | 0.00 |
| 6. OTHER (attach list) | | | | | | | 0.00 |
| TOTAL RECEIPTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | |
| 7. NET PAYROLL | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | | | | | | 0.00 |
| 12. INSURANCE | | | | | | | 0.00 |
| 13. INVENTORY PURCHASES | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | 0.00 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | 0.00 |
| 18. OTHER (attach list) | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 19. PROFESSIONAL FEES | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | | | | | | 0.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 22. NET CASH FLOW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-7**

\* Applies to Individual debtors only
\*\*Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

*Revised 07/01/98*

**Exhibit D - 10 of 17**

**CASE NAME:** KrisJenn Ranch Series Pipeline LLC
**CASE NUMBER:** 20-50805-RBK

## CASH ACCOUNT RECONCILIATION
### MONTH OF _____ 6/30/2021

| BANK NAME | Broadway | | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | 8640 # | | # | | |
| *ACCOUNT TYPE* | *OPERATING* | *PAYROLL* | *TAX* | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | 0.00 | | | | $0.00 |
| DEPOSITS IN TRANSIT | 0.00 | | | | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | | $0.00 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BEGINNING CASH - PER BOOKS | 0.00 | | | | $0.00 |
| RECEIPTS* | 0.00 | | | | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR  CONTRIBUTION BY INDIVIDUAL  DEBTOR  MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 0.00 | | | | $0.00 |
| ENDING CASH - PER BOOKS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

CASE NAME:   KrisJenn Ranch Series Uvalde Ranch LLC
CASE NUMBER: 20-50805-RBK

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 1/1-1/31/2021 | MONTH 2/1-2/28/2021 | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **RECEIPTS:** | | | | | | | |
| 2. CASH SALES | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | 0.00 |
| 6. OTHER (attach list) | | | | | | | 0.00 |
| TOTAL RECEIPTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | |
| 7. NET PAYROLL | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | | | | | | 0.00 |
| 12. INSURANCE | | | | | | | 0.00 |
| 13. INVENTORY PURCHASES | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | 0.00 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | 0.00 |
| 18. OTHER (attach list) | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 19. PROFESSIONAL FEES | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | | | | | | 0.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | 0.00 |
| TOTAL DISBURSEMENTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 22. NET CASH FLOW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-7**

\* Applies to Individual debtors only
\*\*Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

*Revised 07/01/98*

**Exhibit D - 12 of 17**

**CASE NAME:**   KrisJenn Ranch Series Uvalde Ranch LLC
**CASE NUMBER:** 20-50805-RBK

## CASH ACCOUNT RECONCILIATION
### MONTH OF _____ 6/30/2021

| BANK NAME | Broadway | | | | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | ▮▮▮3640 # | | # | | |
| *ACCOUNT TYPE* | *OPERATING* | *PAYROLL* | *TAX* | *OTHER FUNDS* | *TOTAL* |
| BANK BALANCE | 0.00 | | | | $0.00 |
| DEPOSITS IN TRANSIT | 0.00 | | | | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | | $0.00 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BEGINNING CASH - PER BOOKS | 0.00 | | | | $0.00 |
| RECEIPTS* | 0.00 | | | | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR   CONTRIBUTION BY INDIVIDUAL        DEBTOR   MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 0.00 | | | | $0.00 |
| ENDING CASH - PER BOOKS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

**Exhibit D - 13 of 17**

**CASE NAME:**   KrisJenn Ranch, LLC
**CASE NUMBER:**   20-50805-RBK

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals. Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.)  (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL INSIDERS  (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH 1/1-1/31/2021 | MONTH 2/1-2/28/2021 | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 |
|---|---|---|---|---|---|---|
| 1.  Jerry G Miers, CPA | | | | | | |
| 2.  Mueller-Smeburg, PLLC | 30,000.00 | | | | 44,200.00 | 0.00 |
| 3.  Granstaff, Gaedke and Edgmon | | | | | | |
| 4.  Douglas Deffenbaugh CPA | | | 2,464.00 | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL PROFESSIONALS   (MOR-1) | $30,000.00 | $0.00 | $2,464.00 | $0.00 | $44,200.00 | $0.00 |

**MOR-9**                              *Revised 07/01/98*

**KrisJenn Ranch, LLC**
**Working Trial Balance**
**6/30/2021**

| Account | Beginning Balances 4/30/2021 | Balances | Transactions Dr | (Cr) | Balance 5/31/2021 | Adjustments Dr | # | (CR) | Balance DR/(CR) |
|---|---|---|---|---|---|---|---|---|---|
| Cash - Broadway Bank | 4,386.20 | | | 2,217.91 | 2,168.29 | | | | 2,168.29 |
| Transfers | 0.00 | | | | 0.00 | | | | 0.00 |
| | | | | | | | | | |
| Note Rec - Cope-N-Hagan | 0.00 | | | | 0.00 | | | | 0.00 |
| Note Rec - SWD - Big Foot Energy | 241,019.11 | | | | 241,019.11 | | | | 241,019.11 |
| Invest - Thunder Road Ptrshp | | 10,895.00 | | | -10,895.00 | | | | -10,895.00 |
| Invest - VEC Partnership | 247,366.00 | | | | 247,366.00 | | | | 247,366.00 |
| | | | | | | | | | |
| Automotive Equipment | 0.00 | | | | 0.00 | | | | 0.00 |
| Accum Deprec | 0.00 | 0.00 | | | 0.00 | | | | 0.00 |
| | | | | | | | | | |
| Deferred Gain - SWD Instal Sale | | 183,174.52 | | | -183,174.52 | | | | -183,174.52 |
| | | | | | | | | | |
| Note Payable - Pipeline | | 5,900,000.00 | | | -5,900,000.00 | | | | -5,900,000.00 |
| Note Payable - Larry Wright | | 125,330.95 | | | -125,330.95 | | | | -125,330.95 |
| | | | | | | | | | |
| Capital - Larry Wright | 5,605,684.41 | 0.00 | | | 5,605,684.41 | | | | 5,605,684.41 | -123,162.66 |
| | | | | | | | | | |
| Trailer Lease | | 3,600.00 | | | -3,600.00 | | | | -3,600.00 |
| Cattle Auction | 0.00 | 9,715.28 | | 0.00 | -9,715.28 | | | | -9,715.28 |
| Interest income | 0.00 | | | | 0.00 | | | | 0.00 |
| Gain on Sale of SWD | 0.00 | | | | 0.00 | | | | 0.00 |
| ST Cap Gain VECPtrshp | 0.00 | | | | 0.00 | | | | 0.00 |
| Loss on Bad Debt | 0.00 | | | | 0.00 | | | | 0.00 |
| (inc)/Loss Thunder Rd Partnership | 0.00 | | | | 0.00 | | | | 0.00 |
| (Inc)/Loss VEX Partnership | 0.00 | | | | 0.00 | | | | 0.00 |
| Revenue Option Fee- McLeod | -50,000.00 | | | | -50,000.00 | | | | -50,000.00 |
| Auto & Truck | 0.00 | | | | 0.00 | | | | 0.00 |
| Bank Service Charge | 168.00 | | 15.00 | | 183.00 | | | | 183.00 |
| Business Gifts | 0.00 | | | | 0.00 | | | | 0.00 |
| Contract Labor | 1,305.00 | | 0.00 | | 1,305.00 | | | | 1,305.00 |
| Contributions | 0.00 | | | | 0.00 | | | | 0.00 |
| Depreciation | 0.00 | | | | 0.00 | | | | 0.00 |
| Feed | 12,697.35 | | 394.79 | | 13,092.14 | | | | 13,092.14 |
| Fuel | 1,089.34 | | 0.00 | | 1,089.34 | | | | 1,089.34 |
| Ranch electricity | 2,698.44 | | 408.12 | | 3,106.56 | | | | 3,106.56 |
| Interest expense | 0.00 | | | | 0.00 | | | | 0.00 |
| Legal & Professional | 146,926.07 | | 0.00 | | 146,926.07 | | | | 146,926.07 |
| Management Fees | 0.00 | | | | 0.00 | | | | 0.00 |
| Meals & Entertainment | 0.00 | | | | 0.00 | | | | 0.00 |
| Miscellaneous | 0.00 | | | | 0.00 | | | | 0.00 |
| Office | 3.61 | | | | 3.61 | | | | 3.61 |
| Other Deductions - Royalty Income | 0.00 | | | | 0.00 | | | | 0.00 |
| Quarterly Fees- US Trustee | 4,880.74 | | | | 4,880.74 | | | | 4,880.74 |
| Repairs &  Maintenance | 10,975.96 | | 1,400.00 | | 12,375.96 | | | | 12,375.96 |
| Supplies | 1,671.52 | | 0.00 | | 1,671.52 | | | | 1,671.52 |
| Taxes - Property | 0.00 | | | | 0.00 | | | | 0.00 |
| Taxes - Franchise | 1,844.00 | | | | 1,844.00 | | | | 1,844.00 |
| Travel | 0.00 | | | | 0.00 | | | | 0.00 | 123,162.66 |
| | | | | | | | | | |
| | 6,232,715.75 | 6,232,715.75 | 2,217.91 | 2,217.91 | 0.00 | 0.00 | | 0.00 | 0.00 |

Kristenn Ranch, LLC
Expenses
6/01/2021 - 6/30/2021

| Date | Check # | Payee | Cash Dr/(Cr) | Bank Charges | Supplies | Office Exp | Legal & Professional | Note Pay - Larry Wright | Electric | Feed | Mgmt Fee | Repairs & Maintenance | US Trustee Quarterly | Fuel | Taxes - Franchise |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/2021 | N/A | Broadway Bank | | 12.00 | | | | | | | | | | | |
| 6/30/2021 | n/a | Broadway Bank | | 3.00 | | | | | | | | | | | |
| 6/7/2021 | 147 | Cory Malloy | | | | | | | | | | 1,400.00 | | | |
| 6/8/2021 | 149 | MEC | | | | | | | 408.12 | | | | | | |
| 6/8/2021 | 148 | Texas Farm Store | | | | | | | | 394.79 | | | | | |
| | | | 0.00 | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 408.12 | 394.79 | 0.00 | 1,400.00 | 0.00 | 0.00 | 0.00 |

Exhibit D - 16 of 17



**Exhibit D - 17 of 17**

