IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| KRISJENN RANCH, LLC, et.al, | § | CASE NO. 20-50805-rbk |
| | § | |
| | § | |
| DEBTOR | § | (Jointly Administered) |

**DEBTORS' JOINT OBJECTION TO CLAIMS 2, 3, 4, AND 5 IN CASE 20-51084, CLAIM 6 IN CASE 20-50805, AND CLAIM 2 IN CASE 20-51083 FILED BY MCLEOD OIL, LLC AND MOTION FOR DETERMINATION OF POST-PETITION FEES AND COSTS UNDER 11 USC § 506(B)**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**AN ORDER WILL BE ENTERED GRANTING THE RELIEF REQUESTED HEREIN WITHOUT FURTHER HEARING UNLESS A WRITTEN OBJECTION AND REQUEST FOR HEARING IS FILED WITH THE CLERK WITHIN (30) DAYS OF THE DATE OF ISSUANCE OF THIS NOTICE. ANY SUCH OBJECTION MUST ALSO BE SERVED UPON THE MOVING PARTY AND UPON ALL PERSONS INDICATED ON THE CERTIFICATE OF SERVICE ATTACHED TO THIS PLEADING.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE RONALD B. KING, CHIEF UNITED STATES BANKRUPTCY JUDGE:

COME NOW KrisJenn Ranch, LLC ("KrisJenn"), KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") and file this Motion relating to Claims 2, 3, 4 and 5 in Case 20-51084, Claim 6 in Case 20-50805, and Claim 2 in Case 20-51083 (collectively the "Claim"). The Claim was originally filed by Mcleod Oil, LLC's ("McLeod") in the amount of $6,260,196.08 and references additional rights to post-petition fees and costs. McLeod has not yet moved for such fees and costs but it has notified Debtors of its intent to include at least $1.1 million in post-petition default interest, late fees, and attorney's fees in the Claim. Debtors file this Motion objecting to the Claim and seeking a determination of all pre- and post-petition amounts owed to McLeod under 11 U.S.C. 506(b) so it can prosecute its plan of reorganization.

## OBJECTION

1. Debtors object to the pre-petition interest, attorney fees, and late fees requested in the Claim.

## BACKGROUND

2. On February 8, 2019, KrisJenn Ranch entered into a Term Note and Loan Agreement with McLeod (the "Loan Agreement"). Exhibit A (Term Note); Exhibit B (Loan Agreement). Pursuant to the Loan Agreement, KrisJenn borrowed, $3.4 million from McLeod and promised to repay the principal amount on February 8, 2020. Exhibit A; Exhibit B p.5; § 2.1(b).

3. On November 13, 2019, KrisJenn and McLeod entered into a Loan Modification Agreement whereby the principal on the loan was increased to $3.5 million ("First Loan Modification"). Exhibit C.

4. On December 20, 2019, KrisJenn and McLeod entered into a Second Loan Modification Agreement ("Second Loan Modification"). Exhibit D. The Second Loan Modification increased the principal amount owed on the loan to $5,900,000 and extended the Maturity Date to August 8, 2021. Exhibit D ¶ 2 (increased principal); ¶ 4. The Second Loan Modification clearly states: "**All** unpaid amounts are due by the Maturity Date, as modified herein." Exhibit D ¶ 6 (emphasis added).

5. On the same day, KrisJenn and McLeod entered into an Option Agreement to purchase the ROW. The Option Period ended on February 8, 2021.

6. On April 23, 2020, McLeod sent a letter to KrisJenn providing notice of an Event of Default ("Default Letter"). Exhibit E. The Default Letter stated that KrisJenn was in default because "[u]nder the Loan Agreement, interest on the Note is due and payable semi-annually, and an interest payment was due and payable on February 8, 2020."

*Debtors' Objection to McLeod Oil, LLC's Proof of Claim*

7. On April 27, 2020, KrisJenn filed for bankruptcy in this case.

8. On November 30, 2020, KrisJenn and McLeod entered into a Third Loan Modification Agreement ("Third Loan Modification"). Exhibit F. The Third Loan Modification extended the Maturity Date from August 8, 2021 to the later of (i) November 8, 2021; or six months following expiration of the Option Period. The Third Loan Modification reaffirms and, again, clearly states: "**All** unpaid amounts are due by the Maturity Date, as modified herein." Exhibit F ¶ 2 (emphasis added).

9. On the same date as the Third Loan Modification, the parties also executed a First Amendment to Option Agreement ("Option Amendment"). Exhibit G. This Amendment extended the Option Period to November 8, 2021. Six months from November 8, 2021 is May 8, 2022.

10. On December 9, 2020, the Court entered an Order, permitting the parties to enter into the Third Loan Modification and Option Amendment. (Docket No. 99)[1]. It the Order, the Court found:

> The Debtors have agreed to extending the Existing Option Exercise Date, provided the estate is compensated for the additional time, the Existing Loan Maturity Date is likewise extended, and the Debtors' rights to the use of Cash Collateral continue. . . . Additionally, pursuant to the proposed Third Loan Modification Agreement, attached as Exhibit B, the Existing Loan Maturity Date is extended to the later of November 8, 2021, or six months following expiration of the option period under the Option Agreement.

(Docket No. 99).

11. McLeod subsequently exercised all of its option rights and Option Period was extended to November 8, 2021. As a result, the Maturity Date for the Loan Agreement was extended to six months following the expiration of the option period—May 8, 2021 and all

---

[1] Case No. 5:2020-BK-50805-RBK.

payments—including payments of principal, interest, or otherwise—are presently due to McLeod on May 8, 2022.

12. On August 26, 2021, with permission of this Court, KrisJenn sold property. $6.43M of the sales proceeds were distributed to McLeod the following day.

## ARGUMENT AND AUTHORITIES

13. Debtors and McLeod currently disagree on three issues: (1) whether interest is calculated at the Contract Rate of 4.5% or the Default Interest Rate of 10.5%; (2) whether KrisJenn is liable for Late Charge equal to 5%; and (3) the calculation of expenses for attorney's fees and costs owed under the Loan Agreement.

A.  Default Interest is not owed.

14. Default interest is not due to McLeod because semi-annual interest payments were not due to McLeod as stated in the Default Letter. Although the original Loan Agreement called for semi-annual interest payment, the Second Loan Modification extended the Maturity Date for the loan to August 8, 2021 and stated: "All unpaid amounts are due by the Maturity Date, as modified herein." Exhibit D ¶ 4. The Third Loan Modification further extended the Maturity Date to May 8, 2022 and reaffirmed: "All unpaid amounts are due by the Maturity Date, as modified herein." Exhibit F ¶ 2. All of these extensions occurred before any payments became due under the Loan Agreement. These extensions were negotiated for the express purpose of avoiding any default under the Loan Agreement.

15. When interpreting a contract, "[t]he Court's task is to 'ascertain the true intentions of the parties as expressed in the writing itself,'" *Burlington Resources Oil & Gas Co. LP v. Texas Crude Energy*, LLC, 573 S.W.3d 198, 202-03 (Tex. 2019) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). Courts "give terms their plain,

ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018).

16. The Second and Third Loan Modifications unequivocally state: "All unpaid amounts are due by the Maturity Date, as modified herein." Exhibit D ¶ 4; Exhibit F ¶ 2. According to their plain and ordinary meaning, these clauses expressly modified the Loan Agreement so that all amounts owed under the Loan Agreement—as principal, interest, or otherwise—were due and payable on August 8, 2021 and then May 8, 2022. Each of these modifications were made before any amount became due and payable and, as a result, there has never been any default under the Loan Agreement.

B.     Late Fees are not owed.

17. For the same reasons, McLeod is not entitled to collect late charges under the loan. The Loan Agreement states: "To the extent permitted by law, each Borrower agrees to pay a delinquency charge of five percent (5%) of any payment that is more than ten (10) days late." Exhibit B § 3.7. However, late charges were never owed because the loan modifications extended the Maturity Date for all payments owed on the Loan Agreement to May 8, 2022.

18. Debtors have never defaulted on the loan, but even if it they had, McLeod would not be entitled to collect a 5% late fee on a balloon payment. The rationale for this law is best summarized in *In re Mkt. Ctr. E. Retail Prop., Inc.*, 433 B.R. 335, 364–67 (Bankr. D.N.M. 2010) (citations omitted):

> [T]he Court finds that it is unreasonable to interpret a [5%] late fee provision as applying to a balloon payment. Many courts agree: . . . . There is no reason to believe that processing and accounting expenses caused by failure to make an installment payment would vary appreciably depending on the amount of the overdue payment. . . . If the late charge provision was intended to apply to both interim installments and the final payment, it could not possibly be considered a reasonable estimate of the damages contemplated by a breach. Rather, it would be an unenforceable penalty provision. . . .

> The Court also finds the stipulated damages are disproportionate to the injury anticipated at the time the contract was made from a failure to make the balloon payment when due. The late fee is 5% no matter whether a payment is one day late, one year late, or never paid at all. . . .
>
> The provision for a late fee therefore appears to have no purpose other than ensuring the Debtor made the payments on time. The late fee provision is not a reasonable attempt to estimate the damages to be incurred upon breach. The late fee functions as a penalty to spur compliance rather than as a proportionate charge based on estimated damages. It is not a valid liquidated damages clause. It is an unenforceable penalty.

The late fee requested in this case is clearly a penalty because it would result in late fees exceeding $300,000 even though there has been no default on the loan.

C.     McLeod's claim for attorney's fees is excessive.

19.     Section 11.1(a) of the Loan Agreement obligates KrisJenn to pay "all costs and expenses of Lender in connection with the preparation, negotiation, execution, and delivery of this Agreement and the other Loan Documents and any and all amendments, modifications, renewals, extensions, and supplements thereof and thereto, including without limitation the reasonable fees and expenses of legal counsel, advisors, consultants, and auditors for Lender." All loan modification work done for McLeod was performed by attorney William D. Khulmann, Jr. Exhibit H. A review of his fee bills shows that he billed $7,537.50 for his loan modification work.

20.     Section 11.1(b) of the Loan Agreement obligates KrisJenn to pay "all costs and expenses of Lender in connection with any Default and the enforcement of this Agreement or any other Loan Documents, including without limitation, the fees and expenses of legal counsel, advisors, consultants, and auditors for Lender." As stated above, the loan was not in default for any reason at the time this case was filed. As such, McLeod is not entitled to recover any fees under this provision of the Loan Agreement.

21.     Section 11.1(c) of the Loan Agreement obligates KrisJenn to pay "all costs, expenses, assessments, and other charges incurred in connection with the filing, registration,

recording, or perfection of any Lien contemplated by this Agreement or any other Loan Document." A review of Kuhlmann's fee bills shows that $52.50 was billed for such work. *Id*.

22. Section 11.1(e) of the Loan Agreement obligates KrisJenn to pay "all other costs and expenses incurred by Lender in connection with this Agreement or any other Loan Document, the enforcement of its rights and remedies, the protection of its interests in bankruptcy, insolvency or other proceedings, including, without limitation, all costs, expenses, and other charges (including Lender's internal charges) incurred in connection with evaluation, observing, collecting, examining, auditing, appraising, selling, liquidating, or otherwise disposing or the Mortgaged Property or other assets of Borrowers." As such, McLeod is entitled to recover its attorney's fees in this bankruptcy if they were incurred for the "protection of its interests." All work done on behalf of McLeod in this bankruptcy case was performed by attorney Laura Worsham. Exhibit I. A review of her fee bills shows that she billed $19,712.00 for her work related to filing McLeod's proof of claim and other bankruptcy related filings.

23. The fees incurred by McLeod for monitoring the adversary proceeding tried in this case do not relate to "the protection of its interests." At worst, the adversary proceeding could have resulted in the ROW remaining encumbered by exactly the same profits interest claimed by Borders and Moore at the time McLeod's option was granted. McLeod received copies of the pleadings and were fully aware of these claims at the time they received the option. The value of the ROW or McLeod's prospective interest in it could not have been diminished by any outcome of the adversary proceeding. As such, the fees incurred by McLeod to monitor the adversary proceeding did nothing to protect their interests.

24. Further, the fees incurred by McLeod during negotiations with Borders and Moore do not relate the "evaluation, observing, collecting, examining, auditing, appraising, selling,

liquidating, or otherwise disposing or the Mortgaged Property or other assets." There has been no foreclosure or other attempt to liquidate the assets of Debtors in this case. McLeod has remained grossly over-secured throughout the duration of these proceedings.

25. Most of McLeod's claimed legal fees relate directly to the development of its Option Agreement. As recognized in the Court's prior orders, McLeod's concern has been "that it will not have sufficient time to evaluate the Pipeline ROW assets." (Docket No. 99). In its negotiations with KrisJenn, McLeod has repeatedly recognized and admitted that it engaged in protracted, expensive, and ultimately fruitless negotiations with Borders and Moore because it wanted to find buyers and/or investors for the ROW before its option period expired. The legal fees associated with these efforts were incurred so McLeod could execute its option in a lucrative manner——without taking on any risk associated with Border and Moore's appeal of this Court's prior judgment. As such, the fees were incurred to improve the value of McLeod's option and were not necessary in any way to sell or otherwise liquidate the ROW as collateral for the Loan Agreement.

26. Moreover, McLeod's efforts to negotiate with Borders and Moore have been kept a secret from KrisJenn. McLeod has claimed that its efforts were for the benefit of KrisJenn; however, it will not provide any detail about those efforts. McLeod will not share any of the numerous correspondence and proposed agreements that were exchanged between McLeod, Borders, and Moore. Nevertheless, Debtors have been asked to pay for such efforts under the pretense they were for the mutual benefit of the parties. Upon information and belief, such negotiations were not intended to benefit Debtors in any way.

## DEBTORS' CALCULATION OF THE MCLEOD CLAIM

27. Debtors contend that the terms of the Loan Agreement are unambiguous and pursuant to the Second Loan Modification, the Claim should consist of the following:

    a.    $ 5,900,000.00 for principal; and
    b.    $   507,887.50 for contractual interest through August 27, 2021;
    c.    $    27,122.00 for attorney's fees and costs;
          $ 6,435,009.50

28. From this amount, Debtor is entitled to a credit for amounts paid on August 27, 2021 in the amount of $6.43 million. The result is that KrisJenn presently owes an additional $5,009.50 to McCleod.

WHEREFORE, PREMISES CONSIDERED, Debtors pray this Court sustain their objection to the Claim, determine the amounts owed to McLeod under Rule 506(b) to include only $507,887.50 in interest and $27,122.00 in attorney's fees and costs, and grant all further relief in law or equity to which they may be justly entitled.

Dated: October 12, 2021.

Respectfully submitted,

THE SMEBERG LAW FIRM, PLLC

By:/s/ Ronald J. Smeberg
    Ronald J. Smeberg
    State Bar No. 24033967
    ron@smeberg.com
    4 Imperial Oaks
    San Antonio, Texas 78248
    Tel: (210) 695-6684
    Fax: (210) 598-7357


CJ MULLER & ASSOCIATES, PLLC

By: /s/ *John Muller*
    C. John Muller IV
    State Bar No. 24070306
    john.muller@cjma.law
    Ezekiel J. Perez
    State Bar No. 24096782
    zeke.perez@cjma.law
    111 W. Sunset Rd.
    San Antonio, TX 78209
    Telephone: 210-664-5000
    Facsimile: 210-899-1933

ATTORNEYS FOR DEBTORS

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2021, true and correct copies of the foregoing motion will be forwarded electronically via the Court's ECF System, or by U.S. first class mail, postage prepaid, on, all parties listed on the attached Service List.

                                                    */s/ John Muller*
                                                    C. John Muller IV

## SERVICE LIST

**DEBTOR**
KrissJenn Ranch, LLC
410 Spyglass Rd
McQueeney, TX 78123-3418

**GOVERNMENT ENTITIES**

United States Trustee
Shane P. Tobin
903 San Jacinto Blvd., Room 230
Austin, Texas 78701

**CREDITOR**

Laura L. Worsham
JONES, ALLEN & FUQUAY, LLP
8828 Greenville Ave.
Dallas, Texas 75243