IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KRISJENN RANCH, LLC, KRISJENN | § | CASE NO. 20-50805-rbk |
| RANCH, LLC, SERIES UVALDE | § | |
| RANCH, KRISJENN RANCH, LLC, | § | |
| SERIES PIPELINE ROW | § | |
| | § | CHAPTER 11 |
| | § | |
| DEBTOR | § | (Jointly Administered) |

**McLEOD OIL, LLC'S RESPONSE TO DEBTORS' AMENDED JOINT
OBJECTION TO CLAIMS 2, 3, 4 AND 5 IN CASE NO. 20-51084, CLAIM 6 IN CASE
NO. 20-50805, AND CLAIM 2 IN CASE NO. 20-51083 WITH NOTICE THEREOF AND
MOTION FOR DETERMINATION OF POST-PETITION FEES AND COSTS UNDER
11 U.S.C. § 506(B)**

NOW COMES McLeod Oil, LLC ("McLeod") and files this its Response to Debtors'

Amended Joint Objection to Claims 2, 3, 4 and 5 in Case No. 20-51084, Claim 6 in Case No. 20-

50805, and Claim 2 in Case No. 20-51083 with Notice Thereof and Motion for Determination of

Post-Petition Fees and Costs Under 11 U.S.C. § 506(B) (the "Objection") filed on October 13,

2021 [Doc. No. 163], and in support of such would show the Court as follows:

    1.      Paragraph 1 of the Objection does not require a response.

    2.      Paragraph 2 of the Objection is admitted; however, such Exhibits further require

the payment of interest at various dates.

    3.      Paragraph 3 of the Objection is admitted.

    4.      Paragraph 4 of the Objection is admitted; however, such Exhibits provide additional

obligations and specifically incorporate all of the terms of Exhibits "A" and "B" attached hereto.

    5.      Paragraph 5 of the Objection is admitted.

6.      Paragraph 6 of the Objection is admitted.

7.      Paragraph 7 of the Objection is admitted.

8.      Paragraph 8 of the Objection is admitted; however, such Exhibit "F" expressly states that all existing defaults are not waived.

9.      Paragraph 9 of the Objection is admitted.

10.     Paragraph 10 of the Objection is admitted.

11.     Paragraph 11 of the Objection is denied, except McLeod admits the first sentence of Paragraph 11.

12.     Paragraph 12 of the Objection is admitted.

13.     Paragraph 13 of the Objection does not require a response.

14.     Paragraph 14 of the Objection is denied.

15.     Paragraph 15 of the Objection does not require a response.

16.     Paragraph 16 of the Objection is denied.

17.     Paragraph 17 of the Objection is denied.

18.     Paragraph 18 of the Objection is denied.   McLeod is not seeking a 5% late fee on a balloon payment as alleged, but is seeking late fees on the missed interest payments as provided in the Loan Documents.

19.     Paragraph 19 of the Objection is admitted as to the first sentence but is denied as to the remainder of the paragraph.

20.     Paragraph 20 of the Objection is admitted as to the first sentence but is denied as to the remainder of the paragraph.

21.     Paragraph 21 of the Objection is admitted as to the first sentence but is denied as to

the last sentence.

22.     Paragraph 22 of the Objection is admitted as to the first two sentences but denied as to the remainder of the paragraph.

23.     Paragraph 23 of the Objection is denied.

24.     Paragraph 24 of the Objection is denied.

25.     Paragraph 25 of the Objection is denied.

26.     Paragraph 26 of the Objection is denied in its entirety.

27.     Paragraph 27 of the Objection is denied.

28.     Paragraph 28 of the Objection is admitted as to the credit but is denied as to the remainder of the paragraph. McLeod asserts the accrued but unpaid interest and late fees owing as of August 27, 2021, was $1,136,099.68.   Additionally, as of that date McLeod had expenses and costs of $151,000.00.[1]  McLeod is entitled to receive its ongoing expenses in connection with this Objection, under Section 11.1 of the Loan Agreement (Exhibit "B").   The terms of the loan documents allowed the sales proceeds from the ranch to be applied first to reimburse the expenses and then to interest obligations.   After the application of the sales proceeds, in accordance with Section 3.1 of the Loan Agreement (Exhibit "B", Page 7), the approximate amount of at least $762,567.85 is still due and owing, on which amount default interest continues to accrue from the date of deposit into the DIP Account on or about August 27, 2021.

---

1 McLeod incurred a total of $182,714.53 in attorneys' fees at the time the sale of the ranch closed on August 27, 2021.   Such amount did not include August 2021 legal fees, or any amounts incurred thereafter. Over $31,000.00 of attorneys' fees incurred by McLeod are not being sought in this claim as it does not believe such fees are recoverable under Section 11.1.

# ARGUMENTS

## A.    Introduction

Debtors argue there was no default under the Loan Documents, therefore the Default Interest Rate does not apply.   In their arguments, the Debtors conveniently omit the provisions of the Loan Documents that provided for the semi-annual payments of interest during the term of the Note.  Prior to the bankruptcy, Debtors were sent a Notice of Default for failure to make an interest payment due in February, 2020.   Further, Debtors expressly admitted and acknowledged they were in default of their obligations owing to McLeod, as of February 2020, in at least six separate pleadings before this Court.   Additionally, in each of its Proofs of Claim, McLeod expressly asserted the interest rate at the time the case was filed was the default rate of 10.5% (Exhibit "E", without attachments).

## B.    Default Interest is Owed.

The Note provided that the principal and interest on this Note shall be due and payable as provided in the Loan Agreement (Exhibit "A").

**(i)     The Loan Agreement**.  Section 2.2(a) of the Loan Agreement (Exhibit "B") provides: that:

> **(a)     Default Interest Rate**.  Any outstanding principal of any advance and (to the fullest extent permitted by law) any other amount payable by either Borrower under this Agreement or any other Loan Document that is not paid in full when due (whether at stated maturity, by acceleration, or otherwise) shall bear interest at the Default Interest Rate for the period from and including the due date thereof to but excluding the date the same is paid in full.  **Additionally, at any time that an Event of Default exists, all outstanding and unpaid principal amounts of all of the Obligations shall, to the extent permitted by law, bear interest at the Default Interest Rate. Interest payable at the Default Interest Rate shall be payable from time to time on demand.**
>
> - Section 2.1(d) of the Loan Agreement provided that Debtors "shall make semi-annual interest payments on the outstanding amount of the Loan on each of August 8, 2019

and the Termination Date" (Loan Agreement, Exhibit "B", Page 7).

- The "Termination Date" was defined as February 8, 2020 (Loan Agreement, Exhibit "B", Page 5).

- The term "Event of Default" is defined and set forth in Section 10.1 and includes the Borrower's failure to pay the "Obligations" (as defined in the Loan Agreement) when due (Loan Agreement, Exhibit "B", Page 16).

**(ii)** **The Second Modification**.   The Second Modification executed on December 20, 2019, increased the principal loan amount from $3.5 million to $5.9 million, extended the Maturity Date, and added additional borrowers and guarantors. Under Paragraph 8 of the Second Modification, Debtors agreed to "ratify, adopt, and confirm the Loan Documents, stipulate that same are in full force and effect, and agreed to be bound thereby, as modified herein" (Exhibit "C", Paragraph 8).

**Further Paragraph 6 of the Second Modification provides in pertinent part that**:

Borrowers hereby agree to pay the Note and comply with the obligations expressed in the Loan Documents, as modified herein.  For value received, Borrowers hereby renew and extend the Note and other Loan Documents and **promise to pay to the order of Lender, according to the modified terms set forth herein, the Principal Amount and interest on the Note, as set forth in the Loan Agreement...** (Exhibit "C", Paragraph 6).

In this Paragraph 6, Debtors agreed and promised to pay Lender "**interest on the Note, as set forth in the Loan Agreement**".   As set forth above, Paragraph 2.1 of the Loan Agreement provided interest payments were to be made **semi-annually** and that, at the time of the Loan Agreement, those **semi-annual** interest payments were due on August 8, 2019 and on the Termination Date, which was then defined as February 8, 2020 (a date that, following the Second Modification's extension of the Maturity Date, was to be the next date for the payment of semi-annual interest).

Debtors failed to make the semi-annual interest payment due on February 8, 2020, and such

was an Event of Default under Section 10.1 of the Loan Agreement. Under the express terms of Section 2.2(a) as set forth above, at any time an Event of Default exists, all outstanding and unpaid principal amounts of all of the obligations shall bear interest at the Default Interest Rate.

Therefore, from this Event of Default, interest accrued at the default rate of 10.5% and continued (and still continues) to accrue at such rate.[2] Although the Maturity Date was extended, Debtors were never relieved of their obligation to pay semi-annual interest. Debtors received a formal Notice of Default letter on April 23, 2020, despite expressly waiving notice of default (Section 10.2, Exhibit "B").

**(iii)    The Debtors repeatedly acknowledged they were in default.**

These cases were filed on April 27, 2020. In at least six (6) pleadings before this Court, Debtors acknowledge they defaulted on their payments due to McLeod in February 2020. Such admissions by Debtors include:

Docket No. 2, Paragraph 8            Docket No. 6, Paragraph 9
Docket No. 3, Paragraph 7            Docket No. 67, Paragraph 7
Docket No. 4, Paragraph 7            Docket No. 68, Paragraph 6

**(iv)    The Third Modification.** The Third Modification was signed on November 30, 2020, and approved by this Court on December 9, 2020 (Exhibit "D"). In this Modification, McLeod agreed to pay Debtors the total sum of $150,000.00 to extend its Option Period on the ROW pipeline in exchange for extending the expiration date of the Option. Debtors were out of cash and needed funds to pay their attorneys for the adversary trial scheduled in February 2021. The Maturity Date on the loan was also further extended but once again, Debtors were never relieved of their obligation

---

2 Additionally, Debtors were in default as of August 8 2019, when they only made a partial payment (Section 3.6); however, McLeod is not seeking default interest from that date.

to pay semi-annual interest.

**Paragraph 4 of the Third Modification provides**:

The provisions of this Agreement are incorporated into the Loan Documents. In every other respect, Borrowers and Lender ratify, adopt, and confirm the Loan Documents, stipulate that same are in full force and effect, and agree to be bound thereby, as modified herein; provided, **however, that by entering into this Agreement, Lender does not waive and Borrowers acknowledge, stipulate, and agree that by entering into this Agreement Lender does not waive any defaults that may exist under the Loan Documents** (Exhibit "D", Paragraph 4).

As shown above, the Debtors were in default at the time of the Third Modification and remained in default with interest accruing at the default rate as provided in the Loan Documents.

**C.    McLeod is not seeking a late payment on the balloon payment**.

Despite Debtors' allegations, McLeod is seeking a 5% late fee of $52,543.04 only on the missed interest payments due under the Loan Documents on each of due dates missed, as provided by Section 3.7 of the Loan Agreement (Exhibit "B", Page 9), not on the balloon payment.

**D.    All of McLeod's attorneys' fees are reasonable and recoverable under Section 11.1 of the Loan Agreement and 11 U.S.C. 506(b)**.

**Section 11.1 of the Loan Agreement provides:**

**Expenses.**   Borrowers hereby agree to pay on demand: (a) all costs and expenses of Lender in connection with the preparation, negotiation, execution, and delivery of this Agreement and the other Loan documents and any and all amendments, modifications, renewals, extensions, and supplements thereof and thereto, including, without limitation, the reasonable fees and expenses of legal counsel, advisors, consultants, and auditors for Lender; (b) all costs and expenses of Lender in connection with any Default and the enforcement of this Agreement or any other Loan Documents, including, without limitation, the fees and expenses of legal counsel, advisors, consultants, and auditors for Lender; (c) all transfer, stamp, documentary, or other similar taxes, assessments, or charges levied by any Governmental Authority in respect of this Agreement or any of the other Loan Documents; (d) all costs, expenses, assessments, and other charges incurred in connection with any filing, registration, recording, or perfection of any Lien contemplated by this Agreement or any other Loan Document; and (e) all other costs and expenses incurred by Lender in connection with this Agreement or any other Loan Document, any litigation, dispute, suit, proceeding or action pertaining to this Agreement or any other Loan Documents; the enforcement of its rights and

remedies, and the protection of its interests in bankruptcy, insolvency or other legal proceedings, including, without limitation, all costs, expenses, and other charges (including Lender's internal charges) incurred in connection with evaluating, observing, collecting, examining, auditing, appraising, selling, liquidating, or otherwise disposing of the Mortgaged Property or other assets of Borrowers (Exhibit "B", Page 18).

Under Section 11.1(a), McLeod is entitled to recover all of its reasonable attorneys' fees in connection with the negotiation and preparation of the Modifications. Under Section 11.1(b), because Debtors were in default as shown above, all of McLeod's reasonable fees in connection with the default are recoverable, in addition to the fees incurred and continuing to incur defending this Objection.

Further, McLeod is entitled to recover all of its reasonable fees in connection with the adversary proceeding under Section 11.1(e). Such adversary proceeding specifically concerned a portion of McLeod's collateral. Although Section 11.1(e) allows for McLeod's fees to be paid in participation of all aspects of the adversary, McLeod only participated when its principals were deposed and when it responded to multiple subpoenas. Additionally, McLeod's counsel charged a reduced fee for monitoring the trial on the adversary. Such fees were both reasonable and necessary.

Debtors' claim that McLeod's efforts to negotiate with Borders and Moore were kept secret is disingenuous. Both Mr. Wright, on behalf of the Debtors, and Debtors' counsel implored the McLeods, at various times through the adversary (both before and after this Court's judgment on same), to attempt to negotiate a comprehensive settlement that would benefit all parties. Mr. Wright, as Debtors' principal, was kept apprised of the negotiations throughout and its fees sought are reasonable. Debtors' claim that McLeod was fully aware of the adversary claims at the time they received the option is incorrect. Not only did Debtors fail to disclose many of the claims against the ROW and in the adversary, Debtors failed to disclose they were claiming a 16%

ownership interest in the ROW. Notably, such claimed, 16% encumbrance never appears on Debtors' Schedules.

**E.**    **Default interest and attorneys' fees are recoverable under 11 U.S.C. § 506.**

The Fifth Circuit has held that when an over-secured creditor's claim arises from a contract, the default rate of interest should be applied, although the equities must be examined. *Bradford v. Crozier (In re Laymon),* 958 F.2d at 72, 75 (5th Cir. 1992). McLeod should receive interest at the default rate unless application of a lower rate is found proper upon a balancing of the equities. *Southland Corporation v. Toronto-Dominion (in the Matter of Southland Corp.),* 160 F.3d 1054, 1060 (5th Cir. 1998).

The Court provided several factors to consider when weighing the equities, including:

(a)    The charge will not harm other creditors;
(b)    The difference between the default and regular rate is not punitively great; and
(c)    The over-secured creditor has not obstructed the bankruptcy process.

*Id.* at 1060, *In re Trinity Meadows,* 252 B.R. 660, 669-70 (Bankr. N.D. Texas 2000).

As stated by the Courts, the most important issue in deciding whether default interest is appropriate is the impact on other creditors. There are very few unsecured creditors in this case and Debtors have acknowledged multiple times that all creditors will be paid in full. In addition to the DIP funds, Debtors have assets valued in excess of $7 million (including the Series Pipeline ROW and mineral interests) with which to pay all of its creditors in full, including administrative claims and the insider debt. The non-insider unsecured claims in this case are less than $100,000.00. Because the creditors' claims can be satisfied in full, allowing interest at the default rate is appropriate and equitable.

Unlike many Loan Documents, the default rate in the Loan Documents is 10.5%, not 18%.

The "spread" between the default rate and the contract rate is 6% and such is equitable. While a spread of ten (10%) has been determined to be "relatively large" and not approved, under the equities in this case a 6% spread should be found to be acceptable.

McLeod has not obstructed the reorganization process and in fact agreed to the continued use of cash collateral, multiple Motions to Extend Exclusivity Period, the ranch sale Motion, and has negotiated in good faith on the terms of a Plan before the Debtors decided to sell the ranch.

Additionally, the attorneys' billing statements show the attorneys' fees sought were both reasonable and necessary under Section 506(b) and allowed under the terms of the Loan Documents. Such fees are continuing to accrue in defense of this Objection and the determination of the McLeod claim.

## SUMMARY

The equities in this case, when balanced, support application of the contracted for default interest rate. Such rate is not punitively great in comparison to the regular rate. Not only will all creditors will be paid in full and not impacted by the payment of default interest, but the Debtors will likely walk away from the bankruptcy with the Pipeline ROW asset valued at $6.5 million on their Schedules. The attorneys' fees sought are both reasonable and necessary and recoverable under Section 11.1 of the Loan Agreement sand 11 U.S.C. 506(b).

WHEREFORE, PREMISES CONSIDERED, McLeod Oil, LLC respectfully requests that the Court enter an Order allowing McLeod Oil's Claims 2, 3, 4 and 5 in Case No. 20-51084, Claim 6 in Case No. 20-50805, and Claim 2 in Case No. 20-51083 in full, granting relief under Section 506(b), and determine McLeod Oil's claim in the amount of at least $762,567.85, plus accrued but unpaid interest from August 27, 2021 through date of trial, plus its additional reasonable and

necessary attorneys' fees, and for such other relief as is just and proper.

Respectfully submitted,

**JONES, ALLEN & FUQUAY, L.L.P.**
8828 Greenville Avenue
Dallas, Texas 75243
Telephone: (214) 343-7400
Facsimile: (214) 343-7455

By: _/s/ Laura L. Worsham_
    Laura L. Worsham
    State Bar No. 22008050

ATTORNEYS FOR MCLEOD OIL, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of November, 2021, a true and correct copy of the foregoing was forwarded electronically via the Court's ECF System, or by U.S. First Class mail, postage prepaid, on the parties set forth below and to all parties listed on the attached Service List.

**SERVICE LIST**:

KrisJenn Ranch, LLC
410 Spyglass Road
McQueeney, Texas 78123
**By First Class Mail**

Ronald J. Smeberg
Attorney for Debtor
THE SMEBERG LAW FIRM, PLLC
4 Imperial Oaks
San Antonio, Texas 78248
ron@smeberg.com
**By Notice of Electronic Filing**

U.S. Trustee
615 E. Houston, Room 533
P.O. Box 1539
San Antonio, Texas 78295-1539
**By Notice of Electronic Filing**

C. John Muller IV
CJ MULLER & ASSOCIATES, PLLC
111 W. Sunset Road
San Antonio, Texas 78209
john.muller@cjma.law
**By Notice of Electronic Filing**

    _/s/ Laura L. Worsham_
    Laura L. Worsham

## TERM NOTE

**$3,400,000.00**                                            **As of February 8, 2019**

FOR VALUE RECEIVED, KRISJENN RANCH, L.L.C., a Texas limited liability company, and LARRY M WRIGHT, an individual ("*Borrowers*"), jointly and severally, promise to pay to the order of MCLEOD OIL, LLC, a Texas limited liability company ("*Lender*"), the principal sum of Three Million Four Hundred Thousand and 00/100 Dollars ($3,400,000.00) or, if less, all such sums as may have been advanced and be outstanding hereunder, together with interest on the unpaid principal balance as set forth below.  All sums hereunder are payable to Lender at its office designated in the Agreement (as defined below).

Unless the context hereof otherwise requires or provides, the terms used herein defined in that certain Loan Agreement between Borrowers and Lender of even date herewith, as the same has been or may be amended, restated, supplemented or otherwise modified from time to time (the "*Agreement*"), have the same meanings.

This Note evidences a term facility, and no amounts paid hereunder may be reborrowed. The unpaid principal balance from time to time outstanding from the date hereof until maturity (whether by acceleration or otherwise) shall bear interest as provided in the Agreement.  The principal of and interest on this Note shall be due and payable as provided in the Agreement. The principal and interest due hereunder shall be evidenced by Lender's records which, absent manifest error, shall be conclusive evidence of the computation of principal and interest balances owed by Borrowers to Lender hereunder.

IN WITNESS WHEREOF, Borrowers have executed this Note as of the date and year first above written.

[Signature Page Follows.]



**BORROWERS:**

KRISJENN RANCH, L.L.C.,
a Texas limited liability company

By: _____
     Larry M. Wright
     Manager

_____
LARRY M. WRIGHT

## LOAN AGREEMENT

THIS LOAN AGREEMENT (the "*Agreement*"), dated as of February 8, 2019, is between Krisjenn Ranch, L.L.C., a Texas limited liability company ("*Krisjenn*"), and Larry M. Wright, a Texas resident ("*Wright*" and together with Krisjenn, "*Borrowers*" and each individually, a "*Borrower*"), and McLeod Oil, L.L.C., a Texas limited liability company ("*Lender*").

## RECITALS

Borrowers have requested that Lender extend credit to Borrowers as described in this Agreement. Lender is willing to make such credit available to Borrowers upon and subject to the provisions, terms and conditions hereinafter set forth.

NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto agree as follows:

## SECTION 1

## DEFINITIONS

**Section 1.1      Definitions**. As used in this Agreement, all exhibits, appendices and schedules hereto and in any note, certificate, report or other Loan Documents made or delivered pursuant to this Agreement, the following terms will have the meanings given such terms in this *Section 1* or in the provision, section or recital referred to below:

"*Affiliate*" means, as to any Person, any other Person (a) that directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, such Person; (b) that directly or indirectly beneficially owns or holds five percent (5%) or more of any class of voting stock of such Person; or (c) five percent (5%) or more of the voting stock of which is directly or indirectly beneficially owned or held by such Person. The term "control" means the possession, directly or indirectly, of the power to direct or cause direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise; *provided, however*, in no event shall Lender be deemed an Affiliate of a Borrower or any of their Affiliates.

"*Agreement*" has the meaning set forth in the introductory paragraph hereto, and includes all schedules, exhibits and appendices attached or otherwise identified therewith.

"*Borrowers*" means the Persons identified as such in the introductory paragraph hereto.

"*Business Day*" means a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in Dallas, Texas are authorized or required by law to be closed. Unless otherwise provided, the term "days" when used herein means calendar days.

"*Capitalized Lease Obligation*" means, with respect to any Person, the amount of Indebtedness under a lease of Property by such Person that would be shown as a liability on a



balance sheet of such Person prepared for financial reporting purposes in accordance with GAAP.

"*Charges*" means all fees, charges and/or any other things of value, if any, contracted for, charged, taken, received or reserved by Lender in connection with the transactions relating to this Agreement and the other Loan Documents, which are treated as interest under applicable law.

"*Compensation Agreement*" means that certain compensation agreement between Lender and Wright pertaining to the sale of the Minerals described in the Webb County Deed of Trust.

"*Constituent Documents*" means (a) in the case of a corporation, its articles or certificate of incorporation and bylaws; (b) in the case of a general partnership, its partnership agreement; (c) in the case of a limited partnership, its certificate of limited partnership and partnership agreement; (d) in the case of a trust, its trust agreement; (e) in the case of a joint venture, its joint venture agreement; (f) in the case of a limited liability company, its articles of organization, operating agreement, regulations and/or other organizational and governance documents and agreements; and (g) in the case of any other entity, its organizational and governance documents and agreements.

"*Contract Rate*" means four and one-half of one percent (4.50%) per annum; provided that in no event shall the Contract Rate ever exceed the Maximum Rate, and provided further, that after the occurrence of an Event of Default, the Contract Rate shall at Lender's option be the Default Rate with respect to all past due payments of principal and interest.

"*Debtor Relief Laws*" means Title 11 of the United States Code, as now or hereafter in effect, or any other applicable law, domestic or foreign, as now or hereafter in effect, relating to bankruptcy, insolvency, liquidation, receivership, reorganization, arrangement or composition, extension or adjustment of debts, or similar laws affecting the rights of creditors.

"*Default*" means an Event of Default or the occurrence of an event or condition which with notice or lapse of time or both would become an Event of Default.

"*Default Interest Rate*" means a rate per annum equal to the Contract Rate plus six percent (6%), but in no event in excess of the Maximum Rate.

"*Event of Default*" has the meaning set forth in *Section 10.1*.

"*GAAP*" means generally accepted accounting principles, applied on a consistent basis, as set forth in opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants and/or in statements of the Financial Accounting Standards Board and/or their respective successors and which are applicable in the circumstances as of the date in question. Accounting principles are applied on a "consistent basis" when the accounting principles applied in a current period are comparable in all material respects to those accounting principles applied in a preceding period.

"*Governmental Authority*" means any nation or government, any state or political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to government.

"*Indebtedness*" means, of any Person as of any date of determination (without duplication): (a) all obligations of such Person for borrowed money; (b) all obligations of such Person evidenced by bonds, notes, debentures, or other similar instruments; (c) all obligations of such Person to pay the deferred purchase price of Property or services, except trade accounts payable of such Person arising in the ordinary course of business that are not past due by more than ninety (90) days; (d) all Capitalized Lease Obligations of such Person; (e) all obligations secured by a Lien existing on Property owned by such Person, whether or not the obligations secured thereby have been assumed by such Person or are non-recourse to the credit of such Person; (f) any other obligation for borrowed money or other financial accommodations which in accordance with GAAP would be shown as a liability on the balance sheet of such Person; (g) any repurchase obligation or liability of a Person with respect to accounts, chattel paper or notes receivable sold by such Person; (h) any liability under a sale and leaseback transaction that is not a Capitalized Lease Obligation; (i) any obligation under any so-called "synthetic leases;" (j) any obligation arising with respect to any other transaction that is the functional equivalent of borrowing but which does not constitute a liability on the balance sheets of a Person; (k) all payment and reimbursement obligations of such Person (whether contingent or otherwise) in respect of letters of credit, bankers' acceptances, surety or other bonds and similar instruments; and (l) all liabilities of such Person in respect of unfunded vested benefits under any Plan.

"*Interest Expense*" means, for any Person for any period, total interest expense in respect of all outstanding Indebtedness actually paid or that is payable by such Person during such period, but excluding interest expense not payable in cash, all as determined in accordance with GAAP.

"*Investment*" means any direct or indirect investment in any Person, including capital contributions to any Person, investments in or the acquisition of debt or equity securities of any Person, or any loans, advances, guaranties or other extensions of credit to any Person.

"*Lender*" means the Person identified as such in the introductory paragraph hereto, and includes its successors and assigns.

"*Lien*" means any lien, mortgage, security interest, tax lien, pledge, charge, hypothecation, assignment, preference, priority, or other encumbrance of any kind or nature whatsoever (including, without limitation, any conditional sale or title retention agreement), whether arising by contract, operation of law, or otherwise.

"*Loan*" means the aggregate unpaid advances outstanding from time to time on the Note.

"*Loan Documents*" means this Agreement, the Security Documents, the Note, and all other promissory notes, security agreements, deeds of trust, assignments, letters of credit, guaranties, and other instruments, documents, or agreements executed and delivered pursuant to or in connection with this Agreement or the Security Documents.

"*Material Adverse Event*" means any act, event, condition, or circumstance which could materially and adversely affect: (a) the operations, business, properties, liabilities (actual or contingent), condition (financial or otherwise) or prospects of Borrowers taken as a whole; (b) the ability of any Obligated Party to perform its obligations under any Loan Document to which

it is a party; or (c) the legality, validity, binding effect or enforceability against any Obligated Party of any Loan Document to which it is a party.

"*Maximum Rate*" means, at all times, the maximum rate of interest which may be charged, contracted for, taken, received or reserved by Lender in accordance with applicable Texas law (or applicable United States federal law to the extent that such law permits Lender to charge, contract for, receive or reserve a greater amount of interest than under Texas law). The Maximum Rate shall be calculated in a manner that takes into account any and all fees, payments, and other charges in respect of the Loan Documents that constitute interest under applicable law. Each change in any interest rate provided for herein based upon the Maximum Rate resulting from a change in the Maximum Rate shall take effect without notice to Borrowers at the time of such change in the Maximum Rate.

"*Note*" means that certain promissory note made by Borrowers payable to the order of Lender in the original principal sum of $3,400,000.00 dated as of even date herewith, and all renewals, extensions, modifications and amendments thereto, and substitutions therefor.

"*Obligated Party*" means each Borrower or any other Person who is or becomes party to any agreement that obligates such Person to pay or perform, or that Guarantees or secures payment or performance of, the Obligations or any part thereof.

"*Obligations*" means all obligations, indebtedness, and liabilities of each Borrower and any other Obligated Party to Lender or any Affiliate of Lender, or both, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including, without limitation, (a) the obligations, indebtedness, and liabilities under this Agreement and, the other Loan Documents, (b) all Bank Product Obligations, and (c) all attorneys' fees and other expenses incurred in the enforcement or collection of the foregoing.

"*Patriot Act*" means the Uniting and Strengthening America by Providing Appropriate Tools to Intercept and Obstruct Terrorism Act of 2001 (Title III of Pub. L. 107-56, signed into law October 26, 2001).

"*Permitted Tax Distribution*" means a distribution to a partner of a Borrower (such partner and such partner's taxable successors being an "*Eligible Partner*") with respect to the Eligible Partner's interest in Borrower to enable such Eligible Partner to pay federal income taxes with respect to Borrower's net income or any segment or division thereof allocable to such Eligible Partner.

"*Person*" means any individual, corporation, limited liability company, business trust, association, company, partnership, joint venture, Governmental Authority, or other entity, and shall include such Person's heirs, administrators, personal representatives, executors, successors and assigns.

"*Pipeline Option Contract*" means that certain option agreement between Lender and Krisjenn granting Lender an option to purchase twenty-five percent (25%) of the interests assigned to Black Duck Properties, LLC (for purposes of clarity, such 25% percent interest shall be equal to four percent (4%) of the total pipeline project) under that certain Limited Assignment

of Interest in Water Pipeline between TCRG East Texas Pipeline I, LLC, as assignor, and Black Duck Properties, LLC, as assignee, dated effective as of April 3, 2018, as assigned to Krisjenn and Krisjenn Ranch, LLC – Series Uvalde Ranch under that certain Assignment from Black Duck to Krisjenn dated October 8, 2018 (the *"Pipeline Rights"*).

*"Principal Office"* means the office of Lender located at 700 N. Wildwood, Irving, TX 75061 or any other office of Lender designated by Lender pursuant to this Agreement.

*"Property"* of a Person means any and all property, whether real, personal, tangible, intangible or mixed, of such Person, or any other assets owned, operated or leased by such Person.

*"Related Indebtedness"* has the meaning set forth in *Section 11.20*.

*"Responsible Officer"* means the manager, president, chief financial officer, or treasurer of each Borrower or any Person designated by a Responsible Officer to act on behalf of a Responsible Officer; *provided that* such designated Person may not designate any other Person to be a Responsible Officer. Any document delivered hereunder that is signed by a Responsible Officer of a Borrower shall be conclusively presumed to have been authorized by all necessary corporate, limited liability company, partnership and/or other action on the part of such Borrower and such Responsible Officer shall be conclusively presumed to have acted on behalf of such Borrower.

*"Security Documents"* means the Uvalde County Deed of Trust, the Webb County Deed of Trust and any other collateral security agreement required by or delivered to Lender from time to time that purport to create a Lien in favor of any of Lender to secure payment or performance of the Obligations or any portion thereof.

*"Subsidiary"* of a Person means a corporation, partnership, joint venture, limited liability company or other business entity of which a majority of the shares or other interests having ordinary voting power for the election of directors or other governing body (other than shares or interests having such power only by reason of the happening of a contingency) are at the time beneficially owned, or the management of which is otherwise controlled, directly, or indirectly through one or more intermediaries, or both, by such Person.

*"Termination Date"* means February 8, 2020.

*"Title Insurer"* means Chicago Title Insurance or another title insurance company acceptable to Lender in its reasonable discretion.

*"UCC"* means Chapters 1 through 11 of the Texas Business and Commerce Code.

*"Uvalde County Deed of Trust"* means that certain Deed of Trust (with Security Agreement, Assignment of Rents and Leases and Financing Statement) made by Krisjenn to Adam McLeod as trustee for the use and benefit of Lender dated of even date herewith, and all subsequent modifications and amendments thereto, covering certain property located in Uvalde County, Texas.

"*Webb County Deed of Trust*" means that certain Deed of Trust (with Security Agreement, Assignment of Rents and Leases and Financing Statement) made by Krisjenn to Adam McLeod as trustee for the use and benefit of Lender dated of even date herewith, and all subsequent modifications and amendments thereto, covering certain property located in Webb County, Texas.

**Section 1.2      Accounting Matters.**  Any accounting term used in this Agreement or any other Loan Document shall have, unless otherwise specifically provided therein, the meaning customarily given such term in accordance with GAAP, and all financial computations thereunder shall be computed, unless otherwise specifically provided therein, with respect to each Borrower and its Subsidiaries on a consolidated basis in accordance with GAAP consistently applied; *provided, however,* that all financial covenants and calculations in the Loan Documents shall be made in accordance with GAAP as in effect on the date of this Agreement unless Borrowers and Lender shall otherwise specifically agree in writing.  That certain items or computations are explicitly modified by the phrase "in accordance with GAAP" shall in no way be construed to limit the foregoing.

**Section 1.3      Other Definitional Provisions.**  All definitions contained in this Agreement are equally applicable to the singular and plural forms of the terms defined.  The words "hereof", "herein", and "hereunder" and words of similar import referring to this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement.  Unless otherwise specified, all references in a Loan Document to Articles, Sections, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Exhibits and Schedules to, the Loan Document in which such references appear.  Terms used herein that are defined in the UCC, unless otherwise defined herein, shall have the meanings specified in the UCC.  Any definition of or reference to any agreement, instrument or other document shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein or in any other Loan Document).  Any reference to any law shall include all statutory and regulatory provisions consolidating, amending, replacing or interpreting such law and any reference to any law or regulation shall, unless otherwise specified, refer to such law or regulation as amended, modified or supplemented from time to time

### SECTION 2

### THE LOAN

**Section 2.1      The Term Loan.**

(a)      Lender agrees, subject to the terms and conditions hereof, to lend Borrowers the sum of $3,400,000.00 in the form of a term loan (the "*Loan*").

(b)      The obligation of Borrowers to repay the Loan shall be evidenced by the Note which (i) shall be payable on or before the Termination Date for the amount of $3,400,000.00 and (ii) be entitled to the benefits of this Agreement and the security provided for herein.

(c)     The proceeds of the Loan may be used solely to refinance existing indebtedness and to pay fees and expenses in connection therewith.

(d)     Borrower shall make semi-annual interest payments on the outstanding amount of the Loan on each of August 8, 2019 and the Termination Date. The remaining unpaid principal balance of the Term Note, together with accrued unpaid interest, shall be due and payable in full on the Termination Date.

**Section 2.2        General Provisions Regarding Interest; Etc.**

(a)     **Default Interest Rate.** Any outstanding principal of any advance and (to the fullest extent permitted by law) any other amount payable by either Borrower under this Agreement or any other Loan Document that is not paid in full when due (whether at stated maturity, by acceleration, or otherwise) shall bear interest at the Default Interest Rate for the period from and including the due date thereof to but excluding the date the same is paid in full. Additionally, at any time that an Event of Default exists, all outstanding and unpaid principal amounts of all of the Obligations shall, to the extent permitted by law, bear interest at the Default Interest Rate. Interest payable at the Default Interest Rate shall be payable from time to time on demand.

(b)     **Computation of Interest.** Interest on the advance and all other amounts payable by Borrowers hereunder shall be computed on the basis of a year of 360 days and the actual number of days elapsed (including the first day but excluding the last day) unless such calculation would result in a usurious rate, in which case interest shall be calculated on the basis of a year of 365 or 366 days, as the case may be.

## SECTION 3

## PAYMENTS

**Section 3.1        Application.** Except as expressly provided herein to the contrary, all payments under this Agreement shall be applied in the following order of priority: (a) the payment or reimbursement of any expenses, costs or obligations (other than the outstanding principal balance hereof and interest hereon) for which Borrowers shall be obligated or Lender shall be entitled pursuant to the provisions of this Agreement or the other Loan Documents; (b) the payment of accrued but unpaid interest on the Loan; and (c) the payment of all or any portion of the principal balance of the Loan then outstanding hereunder, in the direct order of maturity. If an Event of Default exists under this Agreement or under any of the other Loan Documents, then Lender may, at the sole option of Lender, apply any such payments, at any time and from time to time, to any of the items specified in *clauses (a), (b) or (c)* above without regard to the order of priority otherwise specified in this *Section 3.2* and any application to the outstanding principal balance hereof may be made in either direct or inverse order of maturity.

**Section 3.2        Payments.** All payments under this Agreement made to Lender shall be made in immediately available funds at Lender's Principal Office (or at such other place as Lender, in Lender's sole discretion, may have established by delivery of written notice thereof to Borrowers from time to time), without offset, in lawful money of the United States of America,

which shall at the time of payment be legal tender in payment of all debts and dues, public and private. Payments by check or draft shall not constitute payment in immediately available funds until the required amount is actually received by Lender in full. Payments in immediately available funds received by Lender in the place designated for payment on a Business Day prior to 4:00 p.m. (Dallas, Texas time) at such place of payment shall be credited prior to the close of business on the Business Day received, while payments received by Lender on a day other than a Business Day or after 4:00 p.m. (Dallas, Texas time) on a Business Day shall not be credited until the next succeeding Business Day. If any payment of principal or interest on the Loan shall become due and payable on a day other than a Business Day, then such payment shall be made on the next succeeding Business Day. Any such extension of time for payment shall be included in computing interest which has accrued and shall be payable in connection with such payment.

Section 3.3 **Optional Prepayment.** Borrowers shall have the right to prepay, at any time and from time to time upon at least three (3) Business Days prior written notice to Lender, without fee, premium or penalty, all or any portion of the outstanding principal balance of any Loan; *provided, however*, that such prepayment shall also include any and all accrued but unpaid interest on the amount of principal being so prepaid through and including the date of prepayment, plus any other sums which have become due to Lender under the other Loan Documents on or before the date of prepayment, but which have not been fully paid. Prepayments of principal shall be applied in inverse order of maturity.

Section 3.4 **Mandatory Prepayment.** Upon the sale of Minerals pursuant to the Brokerage Agreement, eighty-five percent (85%) of the net proceeds of such sale shall be immediately applied to the then outstanding principal balance of the Loan.

Section 3.5 **Unconditional Payment.** Each Borrower is and shall be obligated to pay all principal, interest and any and all other amounts which become payable under this Agreement or under any of the other Loan Documents absolutely and unconditionally and without any abatement, postponement, diminution or deduction whatsoever and without any reduction for counterclaim or setoff whatsoever. If at any time any payment received by Lender hereunder shall be deemed by a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance under any Debtor Relief Law, then the obligation to make such payment shall survive any cancellation or satisfaction of this Agreement or return thereof to a Borrower and shall not be discharged or satisfied with any prior payment thereof or cancellation of this Agreement, but shall remain a valid and binding obligation enforceable in accordance with the terms and provisions hereof, and such payment shall be immediately due and payable upon demand.

Section 3.6 **Partial or Incomplete Payments.** Remittances in payment of any part of the Loans other than in the required amount in immediately available funds at the place where the Loans are payable shall not, regardless of any receipt or credit issued therefor, constitute payment until the required amount is actually received by Lender in full in accordance herewith and shall be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the full amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

**Section 3.7      Late Charge.** To the extent permitted by law, each Borrower agrees to pay a delinquency charge of five percent (5%) of any payment that is more than ten (10) days late.

## SECTION 4

## COLLATERAL

**Section 4.1      Lien Against Project.** The payment and performance of all of the Obligations of Borrowers shall be secured by a first and superior lien against the following described Land, Improvements and Personalty (collectively, the "*Project*"):

        **(a)      Land.** The fee simple title to those certain tracts of real property (the "*Land*") situated in Uvalde County, Texas, being more particularly described on Exhibit A to the Uvalde County Deed of Trust.

        **(b)      Minerals.** The fee simple title to the minerals (the "*Minerals*") situated in Webb County, Texas, being more particularly described on Exhibit A to the Webb County Deed of Trust.

        **(c)      Improvements.** All of the structures, fixtures and improvements now or hereafter constructed on the Land (the "*Improvements*").

        **(d)      Personalty.** All of Borrowers' interest in all personal property, rents, fixtures and equipment (the "*Personalty*") which are now or hereafter used in connection with the operation and enjoyment of, or which are now or hereafter affixed to, the Land and the Improvements.

The liens against the Project shall be created pursuant to the Uvalde County Deed of Trust. The lien against the Minerals shall be created pursuant to the Webb County Deed of Trust.

## SECTION 5

## CONDITIONS PRECEDENT

**Section 5.1      Extension of Credit.** The obligation of Lender to make the advance of the Loan is subject to the condition precedent that Lender shall have received on or before the day of such advance all of the following, each dated (unless otherwise indicated) the date hereof (the "*Closing Date*"), in form and substance satisfactory to Lender:

        **(a)      Resolutions.** Resolutions of the governing body of Krisjenn certified by the custodian of records of such Person which authorize the execution, delivery, and performance by such Person of this Agreement and the other Loan Documents to which such Person is or is to be a party;

        **(b)      Officer's Certificate.** A certificate of incumbency of Krisjenn certified by a Responsible Officer certifying the names of the individuals or other Persons authorized to sign this Agreement and each of the other Loan Documents to which Krisjenn is or is to be a

party (including the certificates contemplated herein) on behalf of such Person together with specimen signatures of such individual Persons;

(c)  **Constituent Documents.**  The Constituent Documents for Krisjenn certified as of a date acceptable to Lender by the appropriate government officials of the state of incorporation or organization of Krisjenn;

(d)  **Governmental Certificates.**  Certificates of the appropriate government officials of the state of incorporation or organization of Krisjenn as to the existence and good standing of Krisjenn, each dated within thirty (30) days prior to the date of the advance;

(e)  **Note.**  The Note executed by Borrowers, as applicable;

(f)  **Security Document.**  The Security Documents executed by Borrowers;

(g)  **Financing Statements.**  UCC financing statements reflecting Borrowers, as debtors, and Lender, as secured party, which are required to grant a Lien which secures the Obligations;

(h)  **Insurance Matters.**  Copies of insurance certificates describing all insurance policies required by Section 7.4, together with loss payable and lender endorsements in favor of Lender;

(i)  **Lien Searches.**  The results of UCC, tax lien and judgment lien searches showing all financing statements and other documents or instruments on file against Borrowers in the appropriate filing offices, such search to be as of a date no more than thirty (30) days prior to the date of the advance;

(j)  **Title Insurance.**  A commitment for the issuance of a mortgagee policy of title insurance (the *"Uvalde County Title Policy"*) issued by the Title Insurer in the maximum amount of the Loan insuring that the Deed of Trust covering the Project constitutes a valid lien against the Land and all Improvements thereon, and having the priority required by Lender and subject only to those exceptions and encumbrances (regardless of rank or priority) as Lender approves, in form acceptable to Lender, with the standard printed exceptions endorsed to Lender's satisfaction and the "survey exception" shall be deleted;

(k)  **Survey.**  Two (2) copies of a survey of the Land acceptable to Lender that will meet the requirements of the Title Insurer to remove the "survey exception" from the Title Policy;

(l)  **Mineral Conveyance.**  A copy of the executed Mineral Deed conveying mineral interests in Zavala County, TX from Krisjenn to Lender.

(m)  **Compensation Agreement.**  A copy of the executed Compensation Agreement between Wright and Lender.

(n)  **Pipeline Option Contract.**  A copy of the executed Pipeline Option Contract between Krisjenn and Lender.

(o)     **Payoff Letter.**  A payoff letter from Asilo Investments, Ltd. in form and substance reasonable to Lender in its sole discretion.

(p)     **Attorneys' Fees and Expenses.**  Evidence that the costs and expenses (including reasonable attorneys' fees) referred to in <u>Section 10.1</u>, to the extent incurred, shall have been paid in full by Borrowers; and

(q)     **Closing Fees.**  Evidence that the Commitment Fee and any other fees due at closing have been paid.

## SECTION 6

## REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into this Agreement, each Borrower represents and warrants to Lender that:

**Section 6.1**     **Entity Existence.**  Krisjenn (a) is duly incorporated or organized, as the case may be, validly existing, and in good standing under the laws of the jurisdiction of its incorporation or organization; (b) has all requisite power and authority to own its assets and carry on its business as now being or as proposed to be conducted; and (c) is qualified to do business in all jurisdictions in which the nature of its business makes such qualification necessary and where failure to so qualify could result in a Material Adverse Event.  Krisjenn has the power and authority to execute, deliver, and perform its obligations under this Agreement and the other Loan Documents to which it is or may become a party.

**Section 6.2**     **[Reserved.]**

**Section 6.3**     **Action; No Breach.**  The execution, delivery, and performance by each Borrower and each other Obligated Party of this Agreement and the other Loan Documents to which such Person is or may become a party and compliance with the terms and provisions hereof and thereof have been duly authorized by all requisite action on the part of such Person and do not and will not (a) violate or conflict with, or result in a breach of, or require any consent under (i) the Constituent Documents of such Person, (ii) any applicable law, rule, or regulation or any order, writ, injunction, or decree of any Governmental Authority or arbitrator, or (iii) any agreement or instrument to which such Person is a party or by which it or any of its Properties is bound or subject, or (b) constitute a default under any such agreement or instrument, or result in the creation or imposition of any Lien upon any of the revenues or assets of such Person.

**Section 6.4**     **Litigation and Judgments.**  As of the date hereof, there is no action, suit, investigation, or proceeding before or, by any Governmental Authority or arbitrator pending, or to the knowledge of Borrowers, threatened against or affecting any Borrower or any other Obligated Party that could, if adversely determined, result in a Material Adverse Event. There are no outstanding judgments against any Borrower or any other Obligated Party.

**Section 6.5**     **Enforceability.**  This Agreement constitutes, and the other Loan Documents to which Borrowers or any other Obligated Party is a party, when delivered, shall constitute legal, valid, and binding obligations of such Person, enforceable against such Person in

accordance with their respective terms, except as limited by bankruptcy, insolvency, or other laws of general application relating to the enforcement of creditors' rights.

**Section 6.6     Approvals.** No authorization, approval, or consent of, and no filing or registration with, any Governmental Authority or third party is or will be necessary for the execution, delivery, or performance by Borrowers or any other Obligated Party of this Agreement and the other Loan Documents to which such Person is or may become a party or the validity or enforceability thereof.

**Section 6.7     Taxes.** Borrowers have filed all tax returns (federal, state, and local) required to be filed, including all income, franchise, employment, property, and sales tax returns, and has paid all of their respective liabilities for taxes, assessments, governmental charges, and other levies that are due and payable. Borrowers know of no pending investigation of Borrowers by any taxing authority or of any pending but unassessed tax liability of Borrowers.

**Section 6.8     Use of Proceeds; Margin Securities.** No Borrower is engaged principally, or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying margin stock (within the meaning of Regulations T, U, or X of the Board of Governors of the Federal Reserve System), and no part of the proceeds of the Loans will be used to purchase or carry any margin stock or to extend credit to others for the purpose of purchasing or carrying margin stock.

**Section 6.9     Disclosure.** No statement, information, report, representation, or warranty made by any Borrower or any other Obligated Party in this Agreement or in any other Loan Document or furnished to Lender in connection with this Agreement or any of the transactions contemplated hereby contains any untrue statement of a material fact or omits to state any material fact necessary to make the statements herein or therein not misleading. There is no fact known to Borrowers which is a Material Adverse Event, or which might in the future be a Material Adverse Event that has not been disclosed in writing to Lender.

**Section 6.10     Subsidiaries.** No Borrower has any Subsidiaries.

**Section 6.11     Agreements.** No Borrower is a party to any indenture, loan, or credit agreement, or to any lease or other agreement or instrument, or subject to any charter or corporate or other organizational restriction, in each case which could result in a Material Adverse Event. Krisjenn is not in default in any respect in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions contained in any agreement related to the Pipeline Rights.

**Section 6.12     Compliance with Laws.** No Borrower is in violation in any material respect of any law, rule, regulation, order, or decree of any Governmental Authority or arbitrator.

**Section 6.13     Regulated Entities.** No Borrower is (a) an "investment company" or a company "controlled" by an "investment company" within the meaning of the Investment Company Act of 1940 or (b) subject to regulation under the Federal Power Act, the Interstate Commerce Act, any state public utilities code, or any other federal or state statute, rule or regulation limiting its ability to incur Indebtedness, pledge its assets or perform its obligations under the Loan Documents.

## SECTION 7

## AFFIRMATIVE COVENANTS

Each Borrower covenants and agrees that, as long as the Obligations or any part thereof are outstanding or Lender has any Commitment hereunder:

**Section 7.1      Reporting Requirements.** Borrowers will furnish to Lender:

(a)      **[Reserved.]**

(b)      **Notice of Litigation.** Promptly after the commencement thereof, notice of all actions, suits, and proceedings before any Governmental Authority or arbitrator affecting Borrowers which, if determined adversely to Borrowers, could be a Material Adverse Event;

(c)      **Notice of Default.** As soon as possible and in any event within five (5) Business Days after Borrowers' having actual knowledge of the occurrence of any Default, a written notice setting forth the details of such Default and the action that Borrowers have taken and proposes to take with respect thereto;

(d)      **Notice of Material Adverse Event.** As soon as possible and in any event within five (5) Business Days after Borrowers' having actual knowledge of the occurrence thereof, written notice of any event or circumstance that could result in a Material Adverse Event; and

(e)      **General Information.** Promptly, such other information concerning Borrowers, any of their Subsidiaries, or any other Obligated Party as Lender may from time to time request.

All representations and warranties set forth in the Loan Documents with respect to any financial information concerning any Borrower or any Guarantor shall apply to all financial information delivered to Lender by such Borrower, such Guarantor, or any Person purporting to be an Responsible Officer or other representative of such Borrower or such Guarantor regardless of the method of transmission to Lender or whether or not signed by Borrower, such Guarantor, or such Responsible Officer or other representative, as applicable.

**Section 7.2      Maintenance of Existence; Conduct of Business.** Each Borrower shall preserve and maintain its existence and all of its leases, privileges, licenses, permits, franchises, qualifications, and rights that are necessary or desirable in the ordinary conduct of its business. Each Borrower shall conduct its business in an orderly and efficient manner in accordance with good business practices.

**Section 7.3      Taxes and Claims.** Each Borrower shall pay or discharge at or before maturity or before becoming delinquent (a) all taxes, levies, assessments, and governmental charges imposed on it or its income or profits or any of its property, and (b) all lawful claims for labor, material, and supplies, which, if unpaid, might become a Lien upon any of its property; provided, however, that neither Borrower shall be required to pay or discharge any tax, levy, assessment, or governmental charge which is being contested in good faith by appropriate

proceedings diligently pursued, and for which adequate reserves in accordance with GAAP have been established.

Section 7.4    **Insurance.**  Each Borrower shall maintain insurance with financially sound and reputable insurance companies in such amounts and covering such risks as is usually carried by corporations engaged in similar businesses as such Borrower.  Each insurance policy covering the Mortgaged Property shall name Lender as loss payee and each insurance policy covering liabilities shall name Lender as additional insured, and, if obtainable, each such insurance policy shall provide that such policy will not be cancelled or reduced without thirty (30) days prior written notice to Lender.

Section 7.5    **Inspection Rights.**  At any reasonable time and from time to time, each Borrower shall (a) permit representatives of Lender to examine, copy, and make extracts from its books and records, and (b) to discuss its business, operations, and financial condition with its officers, employees, and independent certified public accountants, in each instance, at the Borrowers' expense.

Section 7.6    **Keeping Books and Records.**  Borrowers shall maintain proper books of record and account in which full, true, and correct entries in conformity with GAAP shall be made of all dealings and transactions in relation to their business and activities.

Section 7.7    **Compliance with Laws.**  Borrowers shall comply in all material respects with all applicable laws, rules, regulations, orders, and decrees of any Governmental Authority or arbitrator.

Section 7.8    **Compliance with Agreements.**  Borrowers shall comply in all material respects with all agreements, contracts, and instruments binding on it or affecting their business.

Section 7.9    **Further Assurances.**  Borrowers shall, and shall cause each other Obligated Party to, execute and deliver such further agreements and instruments and take such further action as may be requested by Lender to carry out the provisions and purposes of this Agreement and the other Loan Documents and to create, preserve, and perfect the Liens of Lender in the Mortgaged Property.

## SECTION 8

## NEGATIVE COVENANTS

Each Borrower covenants and agrees that, as long as the Obligations or any part thereof are outstanding or Lender has any Commitment hereunder:

Section 8.1    **Indebtedness.**  No Borrower shall directly or indirectly, incur, create, assume, or permit to exist any undisclosed Indebtedness without Lender's prior written approval, except:

(a)    Indebtedness to Lender; and

**Loan Agreement**
4851-4854-6690.5/D1305/342891/020819

14

**(b)** Normal trade debt incurred in the ordinary course of such Borrower's business.

**Section 8.2** **Mergers, Etc.** No Borrower shall become a party to a merger or consolidation, or purchase or otherwise acquire all or any part of the assets of any Person or any shares or other evidence of beneficial ownership of any Person, or wind-up, dissolve, or liquidate.

**Section 8.3** **Loans and Investments.** No Borrower shall make any Investment in any Person if (a) an Event of Default exists at the time of making such Investment, or (b) an Event of Default would arise as a result of making such Investment.

**Section 8.4** **Transactions With Affiliates.** No Borrower shall enter into any transaction, including, without limitation, the purchase, sale, or exchange of property, the rendering of any service or the payment of any management, advisory or similar fees, with any Affiliate of Borrowers, except in the ordinary course of and pursuant to the reasonable requirements of such Borrower's business, pursuant to a transaction which is otherwise expressly permitted under this Agreement, and upon fair and reasonable terms no less favorable to such Borrower than would be obtained in a comparable arm's-length transaction with a Person not an Affiliate of Borrowers.

**Section 8.5** **Disposition of Assets.** No Borrower shall sell, lease, assign, transfer, or otherwise dispose of any of its assets, except (a) dispositions of inventory in the ordinary course of business, (b) dispositions, for fair value, of worn-out and obsolete equipment not necessary or useful to the conduct of business, or (c) the disposition of the Minerals pursuant to the terms of the Brokerage Agreement.

**Section 8.6** **Prepayment of Indebtedness.** No Borrower shall make any optional or voluntary payment, prepayment, repurchase or redemption of any Indebtedness, except the Obligations.

**Section 8.7** **Nature of Business.** No Borrower shall engage in any business other than the businesses in which they are engaged as of the date hereof.

**Section 8.8** **Dividends and Distributions.** No Borrower shall declare or pay any dividends or distributions; provided that so long as no Event of Default has occurred and is continuing or will result therefrom, Borrower may make Permitted Tax Distributions to its Eligible Partners.

**SECTION 9**

**[RESERVED.]**

## SECTION 10

## DEFAULT

**Section 10.1      Events of Default.**  Each of the following shall be deemed an *"Event of Default"*:

(a)      Borrowers shall fail to pay the Obligations or any part thereof shall not be paid when due or declared due;

(b)      Borrowers shall fail to provide to Lender timely any notice of Default as required by Section 7.1(b) of this Agreement or Borrowers shall breach any provision of Section 8 or Section 9 of this Agreement;

(c)      Any representation or warranty made or deemed made by any Borrower or any other Obligated Party (or any of their respective officers) in any Loan Document or in any certificate, report, notice, or financial statement furnished at any time in connection with this Agreement shall be false, misleading, or erroneous in any material respect (without duplication of any materiality qualifier contained therein) when made or deemed to have been made;

(d)      Any Borrower or any other Obligated Party shall fail to perform, observe, or comply with any covenant, agreement, or term contained in this Agreement or any other Loan Document (other than as covered by *Sections 10.1(a) and (b)*), and such failure continues for more than thirty (30) days following the date such failure first began;

(e)      Any Borrower or any other Obligated Party shall commence a voluntary proceeding seeking liquidation, reorganization, or other relief with respect to itself or its debts under any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or a substantial part of its Property or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it or shall make a general assignment for the benefit of creditors or shall generally fail to pay its debts as they become due or shall take any corporate action to authorize any of the foregoing;

(f)      An involuntary proceeding shall be commenced against any Borrower or any other Obligated Party seeking liquidation, reorganization, or other relief with respect to it or its debts under any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official for it or a substantial part of its Property, and such involuntary proceeding shall remain undismissed and unstayed for a period of thirty (30) days;

(g)      Any Borrower or any other Obligated Party shall fail to pay when due any principal of or interest on any Indebtedness (other than the Obligations), or the maturity of any such Indebtedness shall have been accelerated, or any such Indebtedness shall have been required to be prepaid prior to the stated maturity thereof, or any event shall have occurred that permits (or, with the giving of notice or lapse of time or both, would permit) any holder or

holders of such Indebtedness or any Person acting on behalf of such holder or holders to accelerate the maturity thereof or require any such prepayment;

(h)     This Agreement or any other Loan Document shall cease to be in full force and effect or shall be declared null and void or the validity or enforceability thereof shall be contested or challenged by any Borrower any other Obligated Party or any of their respective equity holders, or any Borrower or any other Obligated Party shall deny that it has any further liability or obligation under any of the Loan Documents, or any Lien created by the Loan Documents shall for any reason cease to be a valid, first priority perfected Lien upon the Mortgaged Property purported to be covered thereby;

(i)     A final judgment or judgments for the payment of money in excess of $25,000 in the aggregate shall be rendered by a court or courts against any Borrower or any other Obligated Party and the same shall not be discharged (or provision shall not be made for such discharge), or a stay of execution thereof shall not be procured, within thirty (30) days from the date of entry thereof and such Borrower or such Obligated Party shall not, within such period of thirty (30) days, or such longer period during which execution of the same shall have been stayed, appeal therefrom and cause the execution thereof to be stayed during such appeal; or

(j)     Lender determines that a Material Adverse Event has occurred.

**Section 10.2     Remedies Upon Default.** If any Event of Default shall occur and be continuing, then Lender may without notice terminate the Commitment or declare the Obligations or any part thereof to be immediately due and payable, or both, and the same shall thereupon become immediately due and payable, without notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, protest, or other formalities of any kind, all of which are hereby expressly waived by Borrowers; *provided, however*, that upon the occurrence of an Event of Default under <u>Section 10.1(e)</u> or <u>(f)</u>, the Commitment shall automatically terminate, and the Obligations shall become immediately due and payable, in each case without notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, protest, or other formalities of any kind, all of which are hereby expressly waived by Borrowers. In addition to the foregoing, if any Event of Default shall occur and be continuing, Lender may exercise all rights and remedies available to it in law or in equity, under the Loan Documents, or otherwise.

**Section 10.3     Application of Funds.** After the exercise of remedies provided for in <u>Section 10.2</u> (or after the Loans have automatically become immediately due and payable, any amounts received on account of the Obligations shall be applied by Lender in such order as it elects in its sole discretion.

**Section 10.4     Performance by Lender.** If a Borrower shall fail to perform any covenant or agreement contained in any of the Loan Documents, then Lender may perform or attempt to perform such covenant or agreement on behalf of such Borrower. In such event, Borrowers shall, at the request of Lender, promptly pay to Lender any amount expended by Lender in connection with such performance or attempted performance, together with interest thereon at the Default Interest Rate from and including the date of such expenditure to but excluding the date such expenditure is paid in full. Notwithstanding the foregoing, it is expressly

agreed that Lender shall not have any liability or responsibility for the performance of any covenant, agreement, or other obligation of Borrowers under this Agreement or any other Loan Document.

## SECTION 11

## MISCELLANEOUS

**Section 11.1      Expenses.**  Borrowers hereby agree to pay on demand: (a) all costs and expenses of Lender in connection with the preparation, negotiation, execution, and delivery of this Agreement and the other Loan Documents and any and all amendments, modifications, renewals, extensions, and supplements thereof and thereto, including, without limitation, the reasonable fees and expenses of legal counsel, advisors, consultants, and auditors for Lender; (b) all costs and expenses of Lender in connection with any Default and the enforcement of this Agreement or any other Loan Document, including, without limitation, the fees and expenses of legal counsel, advisors, consultants, and auditors for Lender; (c) all transfer, stamp, documentary, or other similar taxes, assessments, or charges levied by any Governmental Authority in respect of this Agreement or any of the other Loan Documents; (d) all costs, expenses, assessments, and other charges incurred in connection with any filing, registration, recording, or perfection of any Lien contemplated by this Agreement or any other Loan Document; and (e) all other costs and expenses incurred by Lender in connection with this Agreement or any other Loan Document, any litigation, dispute, suit, proceeding or action pertaining to this Agreement or any other Loan Documents; the enforcement of its rights and remedies, and the protection of its interests in bankruptcy, insolvency or other legal proceedings, including, without limitation, all costs, expenses, and other charges (including Lender's internal charges) incurred in connection with evaluating, observing, collecting, examining, auditing, appraising, selling, liquidating, or otherwise disposing of the Mortgaged Property or other assets of Borrowers.

**Section 11.2      INDEMNIFICATION.**  BORROWERS SHALL INDEMNIFY LENDER AND EACH AFFILIATE THEREOF AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, AND AGENTS FROM, AND HOLD EACH OF THEM HARMLESS AGAINST, ANY AND ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING ATTORNEYS' FEES) TO WHICH ANY OF THEM MAY BECOME SUBJECT WHICH DIRECTLY OR INDIRECTLY ARISE FROM OR RELATE TO (A) THE NEGOTIATION, EXECUTION, DELIVERY, PERFORMANCE, ADMINISTRATION, OR ENFORCEMENT OF ANY OF THE LOAN DOCUMENTS, (B) ANY OF THE TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS, (C) ANY BREACH BY A BORROWER OF ANY REPRESENTATION, WARRANTY, COVENANT, OR OTHER AGREEMENT CONTAINED IN ANY OF THE LOAN DOCUMENTS, (D) THE PRESENCE, RELEASE, THREATENED RELEASE, DISPOSAL, REMOVAL, OR CLEANUP OF ANY HAZARDOUS MATERIAL LOCATED ON, ABOUT, WITHIN, OR AFFECTING ANY OF THE PROPERTIES OR ASSETS OF A BORROWER OR ANY OF ITS SUBSIDIARIES OR ANY OTHER OBLIGATED PARTY, OR (E) ANY INVESTIGATION, LITIGATION, OR OTHER PROCEEDING, INCLUDING, WITHOUT LIMITATION, ANY THREATENED INVESTIGATION, LITIGATION, OR OTHER PROCEEDING, RELATING TO ANY OF

THE FOREGOING. WITHOUT LIMITING ANY PROVISION OF THIS AGREEMENT OR OF ANY OTHER LOAN DOCUMENT, IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT EACH PERSON TO BE INDEMNIFIED UNDER THIS SECTION SHALL BE INDEMNIFIED FROM AND HELD HARMLESS AGAINST ANY AND ALL LOSSES, LIABILITIES, CLAIMS, DAMAGES, PENALTIES, JUDGMENTS, DISBURSEMENTS, COSTS, AND EXPENSES (INCLUDING ATTORNEYS' FEES) ARISING OUT OF OR RESULTING FROM THE SOLE CONTRIBUTORY OR ORDINARY NEGLIGENCE OF SUCH PERSON.

**Section 11.3     Limitation of Liability.** Neither Lender nor any Affiliate, officer, director, employee, attorney, or agent of Lender shall have any liability with respect to, and each Borrower hereby waives, releases, and agrees not to sue any of them upon, any claim for any special, indirect, incidental, or consequential damages suffered or incurred by any Borrower or any other Obligated Party in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents. Each Borrower hereby waives, releases, and agrees not to sue Lender or any of Lender's Affiliates, officers, directors, employees, attorneys, or agents for punitive damages in respect of any claim in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents.

**Section 11.4     No Duty.** All attorneys, accountants, appraisers, and other professional Persons and consultants retained by Lender shall have the right to act exclusively in the interest of Lender and shall have no duty of disclosure, duty of loyalty, duty of care, or other duty or obligation of any type or nature whatsoever to any Borrower or any of Borrowers' equity holders, Affiliates, officers, employees, attorneys, agents, or any other Person.

**Section 11.5     Lender Not Fiduciary.** The relationship between Borrowers and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrowers, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between Borrowers and Lender to be other than that of debtor and creditor.

**Section 11.6     Equitable Relief.** Borrowers recognize that in the event Borrowers fail to pay, perform, observe, or discharge any or all of the Obligations, any remedy at law may prove to be inadequate relief to Lender. Borrowers therefore agree that Lender, if Lender so requests, shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

**Section 11.7     No Waiver; Cumulative Remedies.** No failure on the part of Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, remedy, power, or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. The rights and remedies provided for in this Agreement and the other Loan Documents are cumulative and not exclusive of any rights and remedies provided by law.

**Section 11.8** **Successors and Assigns.** This Agreement is binding upon and shall inure to the benefit of Lender and Borrowers and their respective successors and assigns, except that Borrowers may not assign or transfer any of their rights, duties, or obligations under this Agreement or the other Loan Documents without the prior written consent of Lender.

**Section 11.9** **Survival.** All representations and warranties made in this Agreement or any other Loan Document or in any document, statement, or certificate furnished in connection with this Agreement shall survive the execution and delivery of this Agreement and the other Loan Documents, and no investigation by Lender or any closing shall affect the representations and warranties or the right of Lender to rely upon them. Without prejudice to the survival of any other obligation of Borrowers hereunder, the obligations of Borrowers under Sections 11.1 and 11.2 shall survive repayment of the Obligations.

**Section 11.10** **Amendment.** The provisions of this Agreement and the other Loan Documents to which Borrowers are a party may be amended or waived only by an instrument in writing signed by the parties hereto.

**Section 11.11** **Notices.** Unless otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including by facsimile transmission) and mailed, faxed or delivered, to the address, facsimile number or subject to the last sentence hereof electronic mail address specified for notices below the signatures hereon or to such other address as shall be designated by such party in a notice to the other parties. All such other notices and other communications shall be deemed to have been given or made upon the earliest to occur of (a) actual receipt by the intended recipient or (b)(i) if delivered by hand or courier, when signed for by the designated recipient; (ii) if delivered by mail, upon deposit in the mail, postage prepaid certified mail, return receipt requested; (iii) if delivered by facsimile, when sent; and (iv) if delivered by electronic mail (which form of delivery is subject to the provisions of the last sentence below), when delivered. Electronic mail and intranet websites may be used only to distribute routine communications, such as financial statements and other information, and to distribute Loan Documents for execution by the parties thereto, and may not be used for any other purpose.

**Section 11.12** **GOVERNING LAW; VENUE; SERVICE OF PROCESS.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS; *PROVIDED THAT* LENDER SHALL RETAIN ALL RIGHTS UNDER FEDERAL LAW. THIS AGREEMENT HAS BEEN ENTERED INTO IN DALLAS COUNTY, TEXAS, AND IS PERFORMABLE FOR ALL PURPOSES IN DALLAS COUNTY, TEXAS. THE PARTIES HEREBY AGREE THAT ANY LAWSUIT, ACTION, OR PROCEEDING THAT IS BROUGHT (WHETHER IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS, THE TRANSACTIONS CONTEMPLATED THEREBY, OR THE ACTIONS OF THE LENDER IN THE NEGOTIATION, ADMINISTRATION OR ENFORCEMENT OF ANY OF THE LOAN DOCUMENTS SHALL BE BROUGHT IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN DALLAS COUNTY, TEXAS. EACH BORROWER HEREBY IRREVOCABLY AND UNCONDITIONALLY (A) SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS, (B) WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH LAWSUIT,

ACTION, OR PROCEEDING BROUGHT IN ANY SUCH COURT, AND (C) FURTHER WAIVES ANY CLAIM THAT IT MAY NOW OR HEREAFTER HAVE THAT ANY SUCH COURT IS AN INCONVENIENT FORUM.

**Section 11.13    Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**Section 11.14    Severability.**  Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement and the effect thereof shall be confined to the provision held to be invalid or illegal.

**Section 11.15    Headings.**  The headings, captions, and arrangements used in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

**Section 11.16    Construction.**  Borrowers and Lender acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement and the other Loan Documents with its legal counsel and that this Agreement and the other Loan Documents shall be construed as if jointly drafted by Borrowers and Lender.

**Section 11.17    Independence of Covenants.**  All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or be otherwise within the limitations of, another covenant shall not avoid the occurrence of a Default if such action is taken or such condition exists.

**Section 11.18    WAIVER OF JURY TRIAL.**  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH BORROWER HEREBY IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE ACTIONS OF LENDER IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT THEREOF.  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS *SECTION 11.19*.

**Section 11.19    Additional Interest Provision.**  It is expressly stipulated and agreed to be the intent of Borrowers and Lender at all times to comply strictly with the applicable law governing the maximum rate or amount of interest payable on the indebtedness evidenced by any

Note, any Loan Document, and the Related Indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under applicable law). If the applicable law is ever judicially interpreted so as to render usurious any amount (a) contracted for, charged, taken, reserved or received pursuant to any Note, any of the other Loan Documents or any other communication or writing by or between Borrowers and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, (b) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of any Note and/or any and all indebtedness paid or payable by Borrowers to Lender pursuant to any Loan Document other than any Note (such other indebtedness being referred to in this Section as the *"Related Indebtedness"*), or (c) Borrowers will have paid or Lender will have received by reason of any voluntary prepayment by Borrowers of any Note and/or the Related Indebtedness, then it is Borrowers' and Lender's express intent that all amounts charged in excess of the Maximum Rate shall be automatically canceled, *ab initio*, and all amounts in excess of the Maximum Rate theretofore collected by Lender shall be credited on the principal balance of any Note and/or the Related Indebtedness (or, if any Note and all Related Indebtedness have been or would thereby be paid in full, refunded to Borrowers), and the provisions of any Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if any Note or Related Indebtedness has been paid in full before the end of the stated term thereof, then Borrowers and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrowers that interest was received in an amount in excess of the Maximum Rate, either refund such excess interest to Borrowers and/or credit such excess interest against such Note and/or any Related Indebtedness then owing by Borrowers to Lender. Borrowers hereby agree that as a condition precedent to any claim seeking usury penalties against Lender, Borrowers will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrowers or crediting such excess interest against the Note to which the alleged violation relates and/or the Related Indebtedness then owing by Borrowers to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of any debt evidenced by any Note and/or the Related Indebtedness shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of such Note and/or the Related Indebtedness (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of any Note and/or the Related Indebtedness does not exceed the Maximum Rate from time to time in effect and applicable to such Note and/or the Related Indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to any Note and/or any of the Related Indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

**Section 11.20    Ceiling Election.**  To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Rate payable on any such Note and/or any other portion of the Indebtedness, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303.  To the extent United States federal law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Rate.  Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Borrowers as provided by applicable law now or hereafter in effect.

**Section 11.21    USA Patriot Act Notice.**  Lender hereby notifies Borrowers that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies Borrowers and each other Obligated Party, which information includes the name and address of Borrowers and each other Obligated Party and other information that will allow Lender to identify Borrowers and each other Obligated Party in accordance with the Patriot Act.  In addition, Borrowers agree to (a) ensure that no Person who owns a controlling interest in or otherwise controls any Borrower or any Subsidiary of a Borrower is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the OFAC, the Department of the Treasury or included in any Executive Order, (b) not to use or permit the use of proceeds of the Obligations to violate any of the foreign asset control regulations of the OFAC or any enabling statute or Executive Order relating thereto, and (c) comply, or cause its Subsidiaries to comply, with the applicable laws.

**Section 11.22    NOTICE OF FINAL AGREEMENT.**  THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

EXECUTED to be effective as of the date first written above.

BORROWERS:

KRISJENN RANCH, L.L.C.,
a Texas limited liability company

By: _____
Name:  Larry M. Wright
Title:   Manager


_____
LARRY M. WRIGHT

Address for Notices:

410 Spyglass Road
McQueeney, TX 78123
Telephone No.:  210-288-2806
Attention:  Mr. Larry M. Wright
E-mail:  larrymwright54@yahoo.co

LENDER:

MCLEOD OIL, LLC

By: _[signature]_
Name:  Adam McLeod
Title:  _Manager_

Address for Notices:

700 N. Wildwood
Irving, TX 75061
Telephone:  972-579-1551
Attention:  Adam McLeod
E-Mail:  mcleod.adam@gmail.com

4851-4854-6690/4/D1305/342891/020719
LOAN AGREE

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## SECOND LOAN MODIFICATION AGREEMENT

This Second Loan Modification Agreement (this "Agreement") is made and entered into this 20th day of December, 2019 (the "Effective Date"), by and between (i) KrisJenn Ranch, L.L.C., a Texas Limited Liability Company ("KrisJenn Ranch"); KrisJenn Ranch, L.L.C. - Series Uvalde Ranch, a series of KrisJenn Ranch, L.L.C., a Texas Limited Liability Company ("KrisJenn Uvalde"); KrisJenn Ranch, L.L.C. - Series Pipeline ROW, a series of KrisJenn Ranch, L.L.C., a Texas Limited Liability Company ("KrisJenn Pipeline"); and Larry M. Wright, an individual ("Wright"; and KrisJenn Ranch, KrisJenn Uvalde, KrisJenn Pipeline, and Wright, collectively, "Borrowers"), and (ii) McLeod Oil, LLC, a Texas Limited Liability Company ("Lender"; and together with Borrowers, the "Parties").

WHEREAS, reference is made to (i) that certain Loan Agreement dated February 8, 2019, by and between KrisJenn Ranch and Wright, as borrowers, and Lender, as lender, as modified by that certain Loan Modification Agreement dated November 13, 2019 (the "First Modification"), by and between KrisJenn Ranch and Wright, as borrowers, and Lender, as lender (as modified by the First Modification, the "Loan Agreement"), (ii) that certain Term Note dated February 8, 2019, by and between KrisJenn Ranch and Wright, as borrowers, and Lender, as lender, in the original principal amount of $3,400,000.00 (which amount was subsequently increased to $3,500,000.00 [such amount, the "Principal Loan Amount"] pursuant to the First Modification), with a "Maturity Date" (herein so called) of February 8, 2020 (as modified by the First Modification, the "Note"), (iii) that certain Deed of Trust dated February 8, 2019, from KrisJenn Ranch to Adam McLeod, as Trustee, for the benefit of Lender, covering certain property situated in Uvalde County, Texas, recorded as Doc 2019000476, Official Public Records, Uvalde County, Texas (the "Uvalde County Deed of Trust"), and (iv) that certain Deed of Trust dated February 8, 2019, from Wright to Adam McLeod, as Trustee, for the benefit of Lender, covering certain mineral interests in Webb County, Texas, recorded as Doc 352098, OPR 4549, 0061-0086, Official Public Records, Webb County, Texas (the "Webb County Deed of Trust"; and the Loan Agreement, Note, Uvalde County Deed of Trust, and Webb County Deed of Trust, collectively, the "Loan Documents"); and

WHEREAS, reference is made to that certain Deed, Conveyance, Assignment and Bill of Sale dated effective April 3, 2018 (the "Black Duck Conveyance"), by and between Black Duck Properties, LLC ("Black Duck"), as assignor, and TCRG East Texas Pipeline 1, LLC ("TCRG"), as assignee (recorded under [a] Instrument 2018-4273, Official Public Records, Nacogdoches County, Texas; [b] Instrument No. 2018-00370530, Real Property Records, Angelina County, Texas; [c] Instrument No. 2018-002769, Real Property Records, Shelby

EXHIBIT C

County, Texas; and [d] Instrument No. 0019469, Real Property Records, Rusk County, Texas), wherein Black Duck conveyed to TCRG all of its right, title and interest in and to a pipeline system and related facilities situated in Angelina, Nacogdoches, Shelby, and Rusk Counties, Texas, including without limitation all associated rights-of-way, easements, permits, leases, and other rights and properties appurtenant thereto (*all* real and personal property described therein, collectively, the "P-21 Pipeline System"); and

WHEREAS, pursuant to that certain Compromise Settlement Agreement by and between TCRG and Borrowers, KrisJenn Pipeline intends to acquire the P-21 Pipeline System from TCRG contemporaneously herewith, pursuant to that certain Deed, Conveyance, Assignment, and Bill of Sale (the "TCRG Reconveyance"), a true and correct copy of the unexecuted version of which being attached as Exhibit "A" hereto and made a part by reference (a copy of the Black Duck Conveyance being attached as Exhibit A to the TCRG Reconveyance); and

WHEREAS, Borrowers and Lender now desire to modify, renew, and extend the Loan Documents to increase the Principal Loan Amount to provide funds to KrisJenn Pipeline to acquire the P-21 Pipeline System, to extend the Maturity Date, to add the P-21 Pipeline System as additional collateral thereunder, and to clarify certain facts;

NOW, THEREFORE, in consideration of the mutual promises and agreements exchanged, the Parties agree as follows, notwithstanding anything to the contrary contained in the previous Loan Documents, to wit:

1. The Parties hereby modify the Loan Documents by adding KrisJenn Pipeline and KrisJenn Uvalde as additional borrowers under the Loan Agreement and Note, and as additional grantors under the Uvalde County Deed of Trust.

2. The Parties hereby modify the Loan Documents by increasing the Principal Loan Amount borrowed by Borrowers from Lender from the previous Three Million Five Hundred Thousand dollars and no cents ($3,500,000.00) to Five Million Nine Hundred Thousand dollars and no cents ($5,900,000.00).

3. Upon execution and delivery of this Agreement to Lender, Lender shall wire transfer the additional Two Million Four Hundred Thousand dollars and no cents ($2,400,000.00) as follows: (i) $2,300,000.00 shall be wired to TCRG, and (ii) $100,000.00 shall be wired to Borrowers; and Borrowers shall repay this additional Two Million Four Hundred Thousand dollars and no cents ($2,400,000.00) in accordance with the terms of the Loan Agreement and the Term Note (as same are modified herein); provided, however, that $2,300,000.00 of this additional amount may be used only to acquire the P-21 Pipeline System from TCRG.

---

4. The Parties hereby modify the Loan Documents by extending the Maturity Date to August 8, 2021.

5. The Parties hereby modify the Loan Documents by adding the P-21 Pipeline System as additional collateral under the Loan Agreement and as additional "Mortgaged Property" under, and as defined in, the Uvalde County Deed of Trust.

6. Borrowers hereby agree to pay the Note and comply with the obligations expressed in the Loan Documents, as modified herein. For value received, Borrowers hereby renew and extend the Note and other Loan Documents and promise to pay to the order of Lender, according to the modified terms set forth herein, the Principal Amount and interest on the Note, as set forth in the Loan Agreement. All unpaid amounts are due by the Maturity Date, as modified herein.

7. Following the Effective Date, Borrowers will do, execute, acknowledge, and deliver all and every further acts, deeds, conveyances, assignments, notices of assignments, transfers, instruments, letters, and assurances as Lender shall, from time to time, reasonably require, for the better assuring, securing, conveying, assigning, transferring, and confirming unto Lender of its rights under the Loan Documents (as modified herein), or for otherwise carrying out the intention or facilitating the performance of the terms of this Agreement.

8. The provisions of this Agreement are incorporated into the Loan Documents. In every other respect, Borrowers and Lender ratify, adopt, and confirm the Loan Documents, stipulate that same are in full force and effect, and agree to be bound thereby, as modified herein.

9. This Agreement may be executed in two or more counterparts, and each counterpart shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument. A facsimile or email version of any signature hereto shall be deemed an original for all purposes. To facilitate recording in several counties, multiple original versions of this Agreement are being prepared and executed.

[The Remainder Of This Page is Intentionally Blank]

Signature Pages to Follow

---

SECOND LOAN MODIFICATION AGREEMENT                                    PAGE 3

EXECUTED to be effective as of the date set forth above.

**BORROWERS:**

KRISJENN RANCH, L.L.C., a Texas Limited Liability Company

By: _____
    Larry M. Wright, Manager

KRISJENN RANCH, L.L.C.- SERIES PIPELINE ROW,
a series of KRISJENN RANCH, L.L.C., a Texas Limited Liability Company

By: _____
    Larry M. Wright, Manager

KRISJENN RANCH, L.L.C.- SERIES UVALDE RANCH,
a series of KRISJENN RANCH, L.L.C., a Texas Limited Liability Company

By: _____
    Larry M. Wright, Manager

_____
Larry M. Wright, Individually

[Acknowledgement Page to Follow]

## <u>ACKNOWLEDGMENTS</u>

STATE OF TEXAS     §
                     §
COUNTY OF *Bexar*    §

This instrument was acknowledged before me on this 20th day of December 2019, by Larry M. Wright, Manager of KrisJenn Ranch, L.L.C., a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for the State of Texas

STATE OF TEXAS     §
                     §
COUNTY OF *Bexar*    §

Tracy L. George
Notary Public - State of Texas
Notary ID#: 12896431-6
My Comm. Expires: April 20, 2020

This instrument was acknowledged before me on this 20th day of December 2019, by Larry M. Wright, Manager of KrisJenn Ranch, L.L.C.- Series Pipeline ROW, a series of KrisJenn Ranch, L.L.C., a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for the State of Texas

STATE OF TEXAS     §
                     §
COUNTY OF *Bexar*    §

Tracy L. George
Notary Public - State of Texas
Notary ID#: 12896431-6
My Comm. Expires: April 20, 2020

This instrument was acknowledged before me on this 20th day of December 2019, by Larry M. Wright, Manager of KrisJenn Ranch, L.L.C.- Series Uvalde Ranch, a series of KrisJenn Ranch, L.L.C., a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for the State of Texas

STATE OF TEXAS     §
                     §
COUNTY OF *Bexar*    §

Tracy L. George
Notary Public - State of Texas
Notary ID#: 12896431-6
My Comm. Expires: April 20, 2020

This instrument was acknowledged before me on this 20th day of December, 2019, by Larry M. Wright.

Notary Public in and for the State of Texas

[Additional Signature and Acknowledgment to Follow]

Tracy L. George
Notary Public - State of Texas
Notary ID#: 12896431-6
My Comm. Expires: April 20, 2020

SECOND LOAN MODIFICATION AGREEMENT        5

**LENDER:**

MCLEOD OIL, LLC,
a Texas Limited Liability Company

By: _____
     John W. McLeod, Jr., Manager


## ACKNOWLEDGMENT


STATE OF TEXAS        §
                      §
COUNTY OF Dallas      §

    This instrument was acknowledged before me on this 20th day of December, 2019, by John W. McLeod, Jr., Manager of McLeod Oil, LLC, a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for the State of Texas

REGINA ANN TRICE
Notary ID # 129145780
My Commission Expires
October 1, 2020

---

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## THIRD LOAN MODIFICATION AGREEMENT

This Third Loan Modification Agreement (this "Agreement") is made and entered into this 30th day of November, 2020 (the "Effective Date"), by and between (i) KrisJenn Ranch, L.L.C., a Texas Limited Liability Company ("KrisJenn Ranch"); KrisJenn Ranch, L.L.C. - Series Uvalde Ranch, a series of KrisJenn Ranch, L.L.C., a Texas Limited Liability Company ("KrisJenn Uvalde"); KrisJenn Ranch, L.L.C. - Series Pipeline ROW, a series of KrisJenn Ranch, L.L.C., a Texas Limited Liability Company ("KrisJenn Pipeline"); and Larry M. Wright, an individual ("Wright"; and KrisJenn Ranch, KrisJenn Uvalde, KrisJenn Pipeline, and Wright, collectively, "Borrowers"), and (ii) McLeod Oil, LLC, a Texas Limited Liability Company ("Lender"; and together with Borrowers, the "Parties").

WHEREAS, reference is made to (i) that certain Loan Agreement dated February 8, 2019 (the "Original Loan Agreement"), by and between KrisJenn Ranch and Wright, as borrowers, and Lender, as lender, as modified by (a) that certain Loan Modification Agreement dated November 13, 2019 (the "First Modification"), by and between KrisJenn Ranch and Wright, as borrowers, and Lender, as lender, and (b) that certain Second Loan Modification Agreement dated December 20, 2019 (the "Second Modification"), by and between Borrowers, as borrowers, and Lender, as lender (the Original Loan Agreement, as modified by the First Modification and Second Modification, the "Loan Agreement"), (ii) that certain Term Note dated February 8, 2019 (the "Original Note"), by and between KrisJenn Ranch and Wright, as borrowers, and Lender, as lender, in the original principal amount of $3,400,000.00 (which amount was subsequently increased to $5,900,000.00 [such amount, the "Principal Loan Amount"] pursuant to the Second Modification), with a maturity date of February 8, 2020 (which date was subsequently extended to August 8, 2021 [such date, the "Maturity Date"] pursuant to the Second Modification) (the Original Note, as modified by the First Modification and Second Modification, the "Note"), (iii) that certain Deed of Trust dated February 8, 2019, from KrisJenn Ranch to Adam McLeod, as Trustee, for the benefit of Lender, covering certain property situated in Uvalde County, Texas, recorded as Doc 2019000476, Official Public Records, Uvalde County, Texas (such Deed of Trust, as modified by the Second Modification, the "Uvalde County Deed of Trust"), and (iv) that certain Deed of Trust dated February 8, 2019, from Wright to Adam McLeod, as Trustee, for the benefit of Lender, covering certain mineral interests in Webb County, Texas, recorded as Doc 352098, OPR 4549, 0061-0086, Official Public Records, Webb County, Texas (the "Webb County Deed of Trust"; and the Loan Agreement, Note, Uvalde County Deed of Trust, and Webb County Deed of Trust, collectively, the "Loan Documents"); and

WHEREAS, reference is made to that certain Option Agreement dated effective December 20, 2019, by and between KrisJenn Ranch, KrisJenn Pipeline, and Wright (referred to therein, collectively, as "Optionor Group"; and KrisJenn Pipeline additionally referred to therein as "Optionor"), and Lender (referred to therein as "Optionee"), a Memorandum of which being



recorded (i) as Instrument No. 2020-00390109, Official Public Records, Angelina County, Texas, (ii) as Instrument No. 2020-193, Official Records, Nacogdoches County, Texas, (iii) in Volume 3681, Page 300, Official Public Records, Rusk County, Texas, and (iv) as Instrument No. 2020000082, Official Public Records, Shelby County, Texas (as amended by that certain First Amendment to Option Agreement of even date herewith [the "Amended Option Agreement"], and as same may be further amended from time to time, collectively, the "Option Agreement"); and

**WHEREAS**, the Parties desire to modify, renew, and extend the Loan Documents to extend the Maturity Date and to clarify certain facts;

**NOW, THEREFORE**, in consideration of the mutual promises and agreements exchanged, the Parties agree as follows, notwithstanding anything to the contrary contained in the previous Loan Documents, to wit:

1. The Parties hereby modify the Loan Documents by extending the Maturity Date to the later to occur of (i) November 8, 2021, or (ii) the date that is six (6) months following expiration of the "Option Period" (under, and as defined in, the Option Agreement).

2. Borrowers hereby agree to pay the Note and comply with the obligations expressed in the Loan Documents, as modified herein. For value received, Borrowers hereby renew and extend the Note and other Loan Documents and promise to pay to the order of Lender, according to the modified terms set forth herein, the Principal Loan Amount and interest on the Note, as set forth in the Loan Agreement. All unpaid amounts are due by the Maturity Date, as modified herein.

3. Following the Effective Date, Borrowers will do, execute, acknowledge, and deliver all and every further acts, deeds, conveyances, assignments, notices of assignments, transfers, instruments, letters, and assurances as Lender shall, from time to time, reasonably require, for the better assuring, securing, conveying, assigning, transferring, and confirming unto Lender of its rights under the Loan Documents (as modified herein), or for otherwise carrying out the intention or facilitating the performance of the terms of this Agreement.

4. The provisions of this Agreement are incorporated into the Loan Documents. In every other respect, Borrowers and Lender ratify, adopt, and confirm the Loan Documents, stipulate that same are in full force and effect, and agree to be bound thereby, as modified herein; provided, however, that by entering into this Agreement, Lender does not waive, and Borrowers acknowledge, stipulate, and agree that by entering into this Agreement Lender does not waive, any defaults that may exist under the Loan Documents.

5. This Agreement may be executed in two or more counterparts, and each counterpart shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument. A facsimile or email version of any signature hereto shall be deemed an original for all purposes. To facilitate recording in several counties, multiple original versions of this Agreement are being prepared and executed.

24

6.  The Parties acknowledge their understanding that both this Agreement and the Amended Option Agreement are subject to and contingent upon either (i) entry of an Order entered in the Bankruptcy Case (the "Approval Order") that approves this Agreement and the transactions contemplated hereby, or (ii) entry of an Order by, or issuance of some other form of communication from, the Bankruptcy Court to the effect that no approval is needed (as applicable, the "No Approval Needed Order"). The Parties shall cooperate in attempting to obtain the Approval Order or No Approval Needed Order as expeditiously as is practical; provided, however, that if the Bankruptcy Court enters an Order rejecting or otherwise disapproving either this Agreement or the Amended Option Agreement, this Agreement shall terminate and be of no force and effect, and the Parties shall not file for record this Agreement.

[Signature Pages to Follow]

EXECUTED to be effective as of the date set forth above.

**BORROWERS:**

KrisJenn Ranch, L.L.C.- Series Pipeline ROW,
a series of KrisJenn Ranch, L.L.C.,
a Texas limited liability company

By: _____
    Larry M. Wright, Manager

KrisJenn Ranch, L.L.C.,
a Texas limited liability company

By: _____
    Larry M. Wright, Manager

_____
Larry M. Wright, Individually

[Acknowledgement Page to Follow]

## ACKNOWLEDGMENTS

STATE OF TEXAS                    §
                                 §
COUNTY OF Bexar                  §

    This instrument was acknowledged before me on this 30th day of November 2020, by Larry M. Wright, Manager of KrisJenn Ranch, L.L.C.- Series Pipeline ROW, a series of KrisJenn Ranch, L.L.C., a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for the State of Texas

STATE OF TEXAS                    §
                                 §
COUNTY OF Bexar                  §

    This instrument was acknowledged before me on this 30th day of November 2020, by Larry M. Wright, Manager of KrisJenn Ranch, L.L.C., a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for the State of Texas

STATE OF TEXAS                    §
                                 §
COUNTY OF Bexar                  §

    This instrument was acknowledged before me on this 30th day of November 2020, by Larry M. Wright.

Notary Public in and for the State of Texas

[Additional Signature and Acknowledgment to Follow]



LENDER:

McLeod Oil, LLC,
a Texas limited liability company

By: _____
    John W. McLeod, Jr., Manager


## ACKNOWLEDGMENT

STATE OF TEXAS          §
                        §
COUNTY OF Dallas        §

    This instrument was acknowledged before me on this 30th day of November 2020, by John W. McLeod, Jr., Manager of McLeod Oil, LLC, a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for the State of Texas

BRENDA J MORALES
Notary ID #8011689
My Commission Expires
October 1, 2024

**Fill in this information to identify the case:**

Debtor 1    KrisJenn Ranch, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Western District of Texas

Case number   20-50805-rbk

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:  Identify the Claim**

**1. Who is the current creditor?**

McLeod Oil, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor  _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Laura L. Worsham, Jones Allen & Fuquay, LLP
Name

8828 Greenville Avenue
Number     Street

Dallas          TX        75243
City            State      ZIP Code

Contact phone 214-343-7400

Contact email lworsham@jonesallen.com

Where should payments to the creditor be sent? (if different)

John McLeod
Name

700 N. Wildwood Drive
Number     Street

Irving          TX        75061
City            State      ZIP Code

Contact phone 972-579-1551

Contact email jmcleod@LoneStarBox.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

EXHIBIT
E
tabbies

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**
☐ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ___  ___  ___  ___

**7. How much is the claim?**   $ __6,260,196.08__ . Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

McLeod Oil, LLC reserves its rights under 11 U.S.C. 506(b).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

Nature of property:
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe:

Duly recorded Deed of Trust and Second Loan Modification Agreement, Memorandum of Option Agreement with Deed, Conveyance, Assignment and Bill of Sale attached thereto.

Basis for perfection:
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $ Unknown at this time.
Amount of the claim that is secured:   $_____
Amount of the claim that is unsecured:   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $_____

Annual Interest Rate (when case was filed) _10.50_ %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

*The Memorandum of Option Agreement is duly recorded in Angelina, Nacogdoches, Rusk and Shelby counties.  Only the Rusk County one is attached.

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check one: | | Amount entitled to priority | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ | |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ | |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ | |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ | |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ | |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $ | |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | | | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/31/2020
                   MM / DD / YYYY

Signature: *Laura L. Worsham*

Print the name of the person who is completing and signing this claim:

| Name | Laura | L. | Worsham |
| | First name | Middle name | Last name |

Title    Attorney at Law

Company    Jones Allen & Fuquay, LLP
           Identify the corporate servicer as the company if the authorized agent is a servicer.

Address    8828 Greenville Avenue
           Number        Street

           Dallas                    TX        75243
           City                      State     ZIP Code

Contact phone    214-343-7400          Email  lworsham@jonesallen.com

| Fill in this information to identify the case: |
|---|

Debtor 1     **KrisJenn Ranch, LLC, Series Uvalde Ranch**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Western District of Texas

Case number   **20-51083-rbk**

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

McLeod Oil, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Laura L. Worsham, Jones Allen & Fuquay, LLP
Name

8828 Greenville Avenue
Number   Street

Dallas     TX     75243
City     State     ZIP Code

Contact phone 214-343-7400

Contact email lworsham@jonesallen.com

**Where should payments to the creditor be sent? (if different)**

John McLeod
Name

700 N. Wildwood Drive
Number   Street

Irving     TX     75061
City     State     ZIP Code

Contact phone 972-579-1551

Contact email jmcleod@LoneStarBox.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
        MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|---------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☐ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $ **6,260,196.08** . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

McLeod Oil, LLC reserves its rights under 11 U.S.C. 506(b).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: Duly recorded Deed of Trust and Second Loan Modification Agreement, Memorandum of Option Agreement with Deed, Conveyance, Assignment and

**Basis for perfection:**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for Bill of example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has Sale been filed or recorded.) attached thereto.*

Value of property: $ Unknown at this time.

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) 10.50 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

*The Memorandum of Option Agreement is duly recorded in Angelina, Nacogdoches, Rusk and Shelby counties. Only the Rusk County one is attached.

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

**If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.**

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/31/2020
                  MM / DD / YYYY

Signature  *Laura L. Worsham*

Print the name of the person who is completing and signing this claim:

| Name | Laura | L. | Worsham |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney at Law | | |
| Company | Jones Allen & Fuquay, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 8828 Greenville Avenue | | |
| | Number          Street | | |
| | Dallas | TX | 75243 |
| | City | State | ZIP Code |
| Contact phone | 214-343-7400 | Email | lworsham@jonesallen.com |

Fill in this information to identify the case:

Debtor 1    KrisJenn Ranch, LLC, Series Pipeline Row

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Western District of Texas

Case number  20-51084-rbk

## Official Form 410

# **Proof of Claim**                                                                04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| 1. **Who is the current creditor?** | McLeod Oil, LLC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?**<br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>Laura L. Worsham, Jones Allen & Fuquay, LLP<br>Name<br>8828 Greenville Avenue<br>Number     Street<br>Dallas              TX          75243<br>City              State           ZIP Code<br>Contact phone 214-343-7400<br>Contact email lworsham@jonesallen.com | **Where should payments to the creditor be sent? (if different)**<br>John McLeod<br>Name<br>700 N. Wildwood Drive<br>Number     Street<br>Irving              TX          75061<br>City              State           ZIP Code<br>Contact phone 972-579-1551<br>Contact email jmcleod@LoneStarBox.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>— — — — — — — — — — — — — — — — — — — — — — — — | |
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____     Filed on _____<br>                                                              MM  / DD  / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

Official Form 410                                        **Proof of Claim**                                        page 1

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☐ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $   6,260,196.08 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

McLeod Oil, LLC reserves its rights under 11 U.S.C. 506(b).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe:

Duly recorded Deed of Trust and Second Loan Modification Agreement, Memorandum of Option Agreement with Deed, Conveyance, Assignment and

Basis for perfection:

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Bill of Sale attached thereto.

Value of property: $ Unknown at this time.

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) 10.50 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

*The Memorandum of Option Agreement is duly recorded in Angelina, Nacogdoches, Rusk and Shelby counties. Only the Rusk County one is attached.

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/31/2020
 MM / DD / YYYY

Signature _Laura L. Worsham_

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Laura | L. | Worsham |
| | First name | Middle name | Last name |
| Title | Attorney at Law | | |
| Company | Jones Allen & Fuquay, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 8828 Greenville Avenue | | |
| | Number Street | | |
| | Dallas | TX | 75243 |
| | City | State | ZIP Code |
| Contact phone | 214-343-7400 | Email lworsham@jonesallen.com | |

---