**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| KRISJENN RANCH, LLC, et al | § | CASE NO. 20-50805-rbk |
| | § | |
| DEBTOR | § | (Jointly Administered) |

**WILLIAM D. KUHLMANN, JR'S AND ALBERT, NEELY & KUHLMANN, L.L.P.'S REPLY TO DEBTOR'S RESPONSE TO MOTION TO QUASH SUBPOENAS AND MOTION FOR ENTRY OF PROTECTIVE ORDER**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

**NOW COME** William D. Kuhlmann, Jr. ("Mr. Kuhlmann") and Albert, Neely & Kuhlmann, L.L.P. ("ANK" and collectively with Mr. Kuhlmann, "Movants") and file this Reply to Debtors'[1] "Response" (herein so called) to Movant's Motion to Quash Subpoenas and Motion for Entry of Protective Order (the "Motion"), and in support thereof would respectfully show the Court the following:[2]

**I.
INTRODUCTION**

Debtors admittedly seek "unfettered access" to privileged communications between McLeod and its lawyer, Mr. Kuhlmann, and are relentlessly seeking to depose Mr. Kuhlmann. In light of (1) the new admissions in Debtors' Response; (2) a letter dated January 4, 2022, from John Muller (the "January 4th Letter") stating he will "proceed with taking Mr.

---

[1] "Debtors" collectively include KrisJenn Ranch, LLC, KrisJenn Ranch, LLC-Series Uvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline Row.
[2] Unless otherwise defined herein, all capitalized terms used herein shall have the same meaning given to such term in the Motion.

**WILLIAM D. KUHLMANN, JR'S AND ALBERT, NEELY & KUHLMANN, L.L.P.'S REPLY**  1

Kuhlmann's deposition immediately following the conclusion of the hearing"; and (3) a second January 4, 2022 letter ("Second January 4th Letter") and 2004 examination subpoena emailed to Mr. Kuhlmann on January 4, 2022, commanding the deposition of Mr. Kuhlmann to take place on January 5, 2021 at 10:00 a.m. (the "January 4th Subpoena), *it is imperative more than ever that the Court quash the Subpoenas and enter a protective order preventing the deposition of Mr. Kuhlmann*. The January 4th Letter is attached hereto as **Exhibit "F,"** the Second January 4th Letter is attached as **Exhibit "G"** and the January 4th Subpoena is attached hereto as **Exhibit "H."**

The primary purpose of this Reply is to (1) provide the Court with additional authority regarding the impropriety of attorney depositions; (2) address Debtors' failure to establish an exception to the attorney-client and work product privileges that would give them access to the privileged information they seek; (3) address Debtors' allegations of waiver; and (4) provide the Court with additional authority regarding strict compliance with the subpoena requirements imposed by Federal Rule of Civil Procedure 45.

## II.
## BACKGROUND

Movants incorporate by reference the facts set forth in the Motion. Further, in ¶ 21 of the Response, Debtors claim they "seek to discover all of Kuhlmann's correspondence with McLeod so that it can show the Court that Kuhlmann engaged in secret communications and negotiations with counsel for DMA and Longbranch; falsely claimed that Kuhlmann's work in negotiating a 'Confidential Settlement Agreement' was for the benefit of KrisJenn; and that McLeod is now attempting to make KrisJenn pay for its diligence and development fees relating to the option agreement under the false pretense that such efforts were necessary to

'protect their collateral.'" Debtors, however, fail to say what they mean by "secret" negotiations.

First, McLeod had no duty to include Debtors in its negotiations with counsel for DMA and Longbranch. Second, Ron Smeberg, bankruptcy counsel for Debtors, specifically authorized McLeod to negotiate with DMA and Longbranch. Third, all proposed confidential settlement agreements drafted by Mr. Kuhlmann that were circulated among third parties contained provisions requiring approval by the Bankruptcy Court. Debtors have all such drafts, and the provisions requiring approval by the Court refute Debtors' claims of secrecy. Fourth, during the initial round of negotiations between McLeod, KrisJenn and Longbranch, KrisJenn had no issue leaving DMA out of those negotiations. Were those also "secret?" Each of the foregoing points can be established exclusively *via* depositions of John McLeod and Adam McLeod and copies of the various drafts of confidential settlement agreements and prior letters of intent, all of which Debtors are in possession.

With respect to the January 4th Subpoena, Debtors emailed it to Mr. Kuhlmann less than twenty-four (24) hours prior to the date and time of the deposition stated in the January 4th Subpoena, failed to personally serve the January 4th Subpoena on Mr. Kuhlmann, and have not tendered the $40 witness fee despite the statement in the Second January 4th Letter that "this firm has sent the statutory witness fee via certified mail CRRR 7020 1810 0000 0653 5345." Attached here as **Exhibit "I"** is proof that the statutory witness fee has not been mailed, and Debtors failed to show a copy of any putative check for the witness fee.

## III.
## ARGUMENT AND AUTHORITY

### A. Mr. Kuhlmann's Deposition Would Be Improper and Unduly Burdensome

Debtors improperly seek to depose Mr. Kuhlmann, McLeod's lawyer, and the Court should enter a protective order preventing that deposition. The Fifth Circuit has stated that "[b]ecause depositions of opposing counsel are disfavored generally and should be permitted in only limited circumstances, **one would suspect that a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order**." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999) (emphasis added).

The seminal case governing the depositions of opposing counsel is *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Because "[t]aking the deposition of opposing counsel ... disrupts the adversarial system ... lowers the standards of the profession [and] adds to the already burdensome time and costs of litigation," the Eighth Circuit developed the "Shelton Rule," which allows attorney depositions only in the limited circumstances where the movant clearly demonstrates that: **(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.** *Id.* The Fifth Circuit has relied on and cited to *Shelton* with approval. *See Nguyen*, 197 F.3d at 208-209 (affirming the district court opinion allowing the deposition of defense counsel based on the Shelton factors*); Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) (citing *Shelton* for the position that "the practice of taking the deposition of a party's attorney ... should be employed only in limited circumstances."). Fifth Circuit district courts, including the Western District of Texas, apply the Shelton Rule to determine whether the deposition of a

party's attorney is appropriate. The following cases exemplify the courts' application of the Shelton Rule and their reluctance and unwillingness to allow attorney depositions:

- *Steward by next friend Minor v. Smith*, CV SA-10-CA-1025-OG, 2018 WL 11361747 (W.D. Tex. July 11, 2018) (quashing deposition subpoena issued to opposing counsel and granting protective order because taking the attorney's deposition was "unwarranted and improper.")

- *In re Matter of Subpoenas Served on Collins*, A-14-CV-934 LY, 2014 WL 12586370 (W.D. Tex. Nov. 7, 2014) (quashing subpoena seeking opposing counsel's deposition because defendant failed to satisfy the Shelton Rule)

- *Strategic Forecasting Inc. v. Scottsdale Indem. Co.*, A-13-CV-829 LY, 2013 WL 12183361 (W.D. Tex. Nov. 14, 2013) (quashing deposition subpoena to non-party's attorney because Shelton Rule was not satisfied)

- *Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, A-09-CA-711 LY, 2010 WL 5174366 (W.D. Tex. Dec. 13, 2010) (quashing deposition subpoena issued to opposing counsel in light of Shelton Rule)

- *Flynn v. State Farm Fire & Cas. Ins. Co. (Tex.)*, EP08CV305PRMRPM, 2009 WL 10669395 (W.D. Tex. May 12, 2009) (holding that plaintiffs failed to carry their burden as required by *Shelton* and therefore quashing opposing counsel's deposition and entering protective order to block deposition)

- *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 3:14-CV-2498-B, 2016 WL 3033544 (N.D. Tex. May 26, 2016) (granting motion to quash subpoenas and issuing order protecting opposing counsel from plaintiff's requested deposition because plaintiff could not satisfy the Shelton Rule)

- *Ring Plus, Inc. v. Cingular Wireless*, LLC, 2:06-CV-159-DF, 2008 WL 11348478 (E.D. Tex. Feb. 13, 2008) (granting plaintiffs' motion for entry of protective order blocking the deposition of its attorney because defendant could not satisfy the Shelton Rule)

Debtors have failed to carry their burden as required by *Shelton*. First, other means exist to obtain the *non-privileged* information Debtors seek, and Debtors fail to contend that no other means exist to obtain the information they seek. Debtors admittedly sought and received documents from McLeod, Adam McLeod and John McLeod (collectively, the "McLeod Parties") and deposed Adam McLeod. (Response ¶¶ 25, 28, 29, 32). Debtors have also received

ANK's billing statements. (*See* Response ¶ 33). Furthermore, Debtors could seek documents directly from DMA and Longbranch and could likewise depose the corporate representatives of those entities. Debtors likewise have not taken the depositions of John McLeod or McLeod's corporate representative via a 2004 examination in this Bankruptcy.

With respect to the second *Shelton* factor, Debtors unequivocally and improperly seek information protected by the attorney client and work product privileges. (Response ¶¶ 21, 22, 27, 29 c, 32, and 40). The information Debtors seek is protected by the attorney-client privilege because McLeod communicated with Movants for the primary purpose of securing legal opinions and legal services with respect to the right-of-way ("ROW") and matters related to the loan to Debtors. *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695–96 (5th Cir. 2017). Specifically, Debtors seek communications exclusively between McLeod and its counsel and refused to agree to any limitations on Mr. Kuhlmann's deposition. Moreover, Debtors seek to depose Mr. Kuhlmann about irrelevant information because they intend to inquire about topics beyond the reasonableness and necessity of the attorney's fees incurred by McLeod. Privileged information is likewise irrelevant information. *In re Matter of Subpoenas Served on Collins*, A-14-CV-934 LY, 2014 WL 12586370, at *2–4 (W.D. Tex. Nov. 7, 2014) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'") (quoting FED. R. CIV. P. 26(b)(1)).

Regarding the third *Shelton* factor, the information sought is not crucial to the case. The documents already produced in this case, including ANK's billing statements, communications between McLeod, DMA and Longbranch and drafts of the confidential settlement agreements, speak for themselves. Communications between McLeod, DMA and Longbranch admittedly

are not privileged communications, and KrisJenn has already received such communications. Further, McLeod wanted to protect its collateral by ensuring that the ROW was free and clear of all claims, including DMA's and Longbranch's net profits claims. Such concept is no different than a lender who requires certain exceptions to title coverage to be cleared prior to the closing and funding of real estate. It is undisputed that McLeod *unsuccessfully* attempted to negotiate a settlement with DMA and Longbranch to resolve DMA's and Longbranch's net-profits claims to the ROW. Debtors were aware of those negotiations, and communications between McLeod, DMA and Longbranch have been produced to KrisJenn. None of those documents reveal the "secret negotiations" of which KrisJenn complains. Nevertheless, nothing precludes KrisJenn from arguing at the January 12th hearing that negotiations between McLeod, DMA and Longbranch were not for KrisJenn's benefit, and that such negotiations were not necessary to "protect the collateral." Therefore, the information KrisJenn seeks from Mr. Kuhlmann is not crucial to defend McLeod's claim for attorney's fees and interest.

Debtors make the argument in ¶ 49 of the Response that it can take the deposition of Mr. Kuhlmann because he is not McLeod's "attorney of record." Not only does KrisJenn fail to cite any legal authority for that argument, but such argument has been rejected by federal courts, including the Western District of Texas. *Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, A-09-CA-711 LY, 2010 WL 5174366, at *2–4 (W.D. Tex. Dec. 13, 2010) ("Although Mr. Davis is not NWL's trial counsel of record in this case, the Court nevertheless finds that the Shelton test is applicable to the instant case. First, the Court notes that Shelton was not limited to apply only in cases where a party seeks to depose the opposing trial counsel.") (granting motion to quash attorney's deposition and motion for protective order).

It would also be unduly burdensome for Mr. Kuhlmann to sit for an all-day deposition in this case as Debtors seek to depose Mr. Kuhlmann for a maximum of 7 hours without limitation and without regard to privileged matters. (Response ¶ 50). As set forth above, Debtors have failed to demonstrate the relevance of Mr. Kuhlmann's potential testimony and a genuine need for his deposition. Moreover, it would be extremely difficult, if not impossible, for Mr. Kuhlmann—an attorney who has represented McLeod in various legal matters since at least 2014—to differentiate non-privileged matters from privileged matters in this case while giving his deposition. *See Nat'l W. Life Ins.*, 2010 WL 5174366, at *2–4 (holding that it would be unduly burdensome for party's outside, non-counsel of record to be deposed in light of relevancy and privilege issues among other factors") (finding that "it would be extremely difficult, if not impossible," for an attorney who represented his client for almost 50 years to differentiate non-privileged matters from privileged matters.).

Further, although the scope of a 2004 examination is broad, "it is not limitless." *In re Buccaneer Res., LLC,* 14-60041, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. Dec. 10, 2015). For the same foregoing reasons, the cost and disruption to Mr. Kuhlmann as a result of Debtors' demand to take his deposition outweighs any benefits to the Debtors and should therefore be denied. *Id.* ("If the cost and disruption to the person being examined outweigh the benefits to the examiner, the examination should be denied."). Because Debtors cannot satisfy the Shelton Rule and because of the unduly burdensome nature of Mr. Kuhlmann's deposition, the Court should quash the Subpoenas and request for 2004 Examination and enter a protective order.

B. **Debtors Failed to Establish an Exception to the Attorney-Client Privilege**

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," and the Debtors have neither alleged nor

established an exception (notably the crime-fraud exception) to the attorney-client and work product privileges that would entitle them to the privileged information they seek from Movants. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). As stated by the Fifth Circuit:

> 'In order to invoke [the crime-fraud] exception, the party seeking to breach the walls of privilege must make out a prima facie case.' *Int'l Sys.,* 693 F.2d at 1242. To make the necessary *prima facie* showing for the application of the crime-fraud exception here, the government must produce evidence 'such as will suffice until contradicted and overcome by other evidence ... a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.' *Id.* (applying *prima facie* definition to work product privilege and quoting *In re Grand Jury Proceedings in the Matter of Fine,* 641 F.2d 199, 203 (5th Cir.1981) (applying *prima facie* definition to attorney-client privilege)). Allegations in pleadings are not evidence and are not sufficient to make a *prima facie* showing that the crime-fraud exception applies.

*In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005).

Debtors claim they are entitled to privileged information because they are entitled to all "evidence that will reveal the truth regarding the scope and nature of Kuhlmann's legal services." (Response ¶ 22). But, that is not the law, and Debtors are not entitled to the privileged information they seek absent a prima facia showing that an exception applies. Debtors' allegations of "secret negotiations" in their Response are unsupported by any evidence (because none exists), much less prima facia evidence. The Court should therefore quash the Subpoenas and enter a protective order in favor of Movants.

C. **McLeod Has Not Waived the Attorney-Client Privilege**

Debtors claim McLeod (not Movants) waived the attorney-client privilege by failing to produce a privilege log with the McLeod Parties' production (not Movants' production) and by allowing Adam McLeod to respond to a certain question at his deposition. McLeod, however, has not waived its attorney-client privilege and Debtors fail to cite to any substantive authority supporting their waiver argument. For purposes of clarification, Debtors do not allege

that Movants waived any privileges by failing to assert objections or produce a privilege log; Movants objected to and inserted withholding statements in their response to the Subpoenas and likewise filed the Motion.

In order to find that McLeod waived the attorney-client privilege, the Court must find that: (1) privileged or confidential communications were actually disclosed by McLeod; (2) McLeod intended to waive the privilege; and (3) that it would be unfair and inconsistent with the privilege for McLeod to invoke the privilege. *United States v. Seale*, 600 F.3d 473, 492 (5th Cir.). Moreover, contrary to Debtors' argument, **the attorney-client privilege "can be claimed by the client, or by the attorney on the client's behalf."** *Klein v. Fed. Ins. Co.*, 7:03-CV-102-D, 2014 WL 3408355 (N.D. Tex. July 14, 2014) (emphasis added).

First, there has not been a disclosure of privileged communications between McLeod and Mr. Kuhlmann, including in Adam McCleod's deposition, and Debtors fail to point to any such information. *See Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, A-09-CA-711 LY, 2010 WL 5174366, at *5–8 (W.D. Tex. Dec. 13, 2010) (holding that email and letter to third party did not contain any privileged or confidential communications between the defendants and their lawyers, including any confidential advice or opinions of their legal counsel, and therefore defendants did not waive the privilege). Moreover, McLeod did not *intend* to waive any privileges as evidenced by the fact that (1) McLeod has not produced or disclosed the content of any privileged communications between McLeod and its lawyers; and (2) McLeod's bankruptcy lawyer, Laura Worsham, asserted privilege claims in Adam McLeod's deposition. Because no disclosure of privileged information by McLeod occurred, it is <u>not</u> inconsistent for Movants, on behalf of McLeod, to invoke the privilege.

The McLeod Parties' (not Movants) failure to assert objections or to produce a privilege log likewise does not constitute a waiver of assertion of any privilege. The Bankruptcy Court for the Northern District of Texas has explained:

> While the "timing and specificity of an objection are of the essence when it comes to asserting a privilege during discovery," *Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at Lloyd's,* No. 02–3588 C/W, 2004 WL 2360159 at *1 (E .D.La. Oct. 19, 2004) (unpublished decision), the Court concludes that **a party's failure to properly or timely object "does not result in an automatic waiver. Rather, a waiver is a serious sanction to be imposed in cases of 'unjustified delay, inexcusable conduct, bad faith or other flagrant violations.'** *Id.* at *2 (citing *Applied Sys., Inc. v. Northern Ins. Co. of New York,* No. 97 C 1565,1997 WL 639235 (N.D.Ill. Oct. 7, 1997)).

*In re TIC United Corp.*, 00-37234-BJH-7, 2007 WL 4234254, at *4–5 (Bankr. N.D. Tex. Nov. 29, 2007) (emphasis added) (declining to hold that parties waived any applicable privileges by their failure to produce privilege logs contemporaneously with their responses to the trustee's discovery requests). The Fifth Circuit likewise reiterated that in the context of privilege logs, "continual failure to adhere to Rule 26's prescription [privilege log] may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith." *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017).

Debtors did not complain about the McLeod Parties' (not Movants) failure to produce a privilege log until it filed the Response, and therefore there has not been a "continual failure" to comply with the Federal Rules' privilege log requirement. Further, Debtors have not shown that the McLeod Parties' failure to produce a privilege log resulted from unjustified delay, inexcusable conduct, bad faith or other flagrant violations. A finding of waiver would be an unwarranted and serious sanction to McLeod, and the Court should reject Debtors' argument to the contrary.

Alternatively, and only if the Court finds waiver and orders the deposition of Mr. Kuhlmann, the Court should ensure that appropriate restrictions are placed on the deposition and that inquiry is limited to objective facts. Specifically, the Court should preclude Debtors from inquiring about Mr. Kuhlmann's understanding of McLeod's perceptions or his opinions and mental impressions because such inquiries are impermissible. *Nguyen v. Excel Corp.*, 197 F.3d 200, 209-10 (5th Cir. 1999). "An attorney's thoughts [are] inviolate...." *Id.* at 210. "Even though an attorney's mental impressions and opinions fall outside of the attorney-client privilege, they also 'fall[ ] outside the arena of discovery [as their disclosure would] contravene[ ] the public policy underlying the orderly prosecution and defense of legal claims.'" *Id.* (holding that the magistrate judge's order exceeded "allowable bounds" in permitting deposition of a party's attorney) (brackets original).

D.      **Debtors Failed to Strictly Comply with the Subpoena Rules**

As explained in the Motion, Debtors failed to personally serve Movants with the Subpoenas and Movants did not agree to accept service. Rather, Movants were initially willing to comply with the requests for production in the spirit of cooperation and compromise. **Further, Debtors have not personally served Mr. Kuhlmann with a 2004 examination subpoena for his deposition nor have they tendered the $40 witness fee. Consequently, the January 4th Letter and January 4th Subpoena are unenforceable and insufficient to compel Mr. Kuhlmann's deposition.** The January 4th Letter and the January 4th Subpoena are another improper litigation tactic to put pressure on McLeod, and the Court should take this into consideration when determining whether to impose sanctions on Debtor and their lawyer as requested in the Motion.

"Strict compliance with the rules for the service of subpoenas must be proved in the manner provided by law" in order for them to be enforceable. *United States v. Davenport*, 312 F.2d 303, 307 (7th Cir. 1963); *see also In re Dennis*, 330 F.3d 696 (5th Cir. 2003) (stating "[t]he conjunctive form of [Rule 45] indicates that proper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance," and holding that subpoena was not properly served and unenforceable); *Future World Elecs., LLC v. Over Drive Mktg., LLC*, 3:12-CV-2124-B, 2014 WL 1794835 (N.D. Tex. May 5, 2014) (refusing to order third party to appear for his deposition or to hold him in contempt because subpoena was served on third party's attorney—not personally on the third party—and because witness and mileage fees were not tendered); *Morawski v. Farmers Tex. County Mut. Ins. Co.*, 3:14-MC-21-D-BN, 2014 WL 717170, at *1–2 (N.D. Tex. Feb. 25, 2014) (holding that subpoenas were invalid because "there is no evidence that Plaintiff personally served Pruitt or Martin with a subpoena or tendered the required witness fees and mileage allowance"). Debtors fail to cite to any authority to support their argument that Debtors are absolved from complying with the strict requirements of Federal Rule 45. Therefore, the Court should grant the Motion, quash the Subpoenas and enter a protective order blocking Mr. Kuhlmann's deposition.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Movants pray that the Court grant their Motion, and for all such other and further relief to which Movants may show themselves justly entitled.

Respectfully submitted,

*/s/ Lynne B. Frank*

Lynne B. Frank (admitted *pro hac vice*)
lfrank@bjplaw.com
State Bar No. 24087215
BRUNER & BRUNER, P.C.
3700 West 7th Street
Fort Worth, Texas 76107-2536
Telephone: (817) 332-6633
Facsimile:   (817) 332-6619

***Counsel for Movants***

.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2022, a true and correct copy of the foregoing document was served upon all parties listed below electronically via the Court's ECF System.

C John Muller IV (john.muller@cjma.law)
CJ MULLER & ASSOCIATES, PLLC
111 W. Sunset Road
San Antonio, Texas 78209
*Attorney for Debtor*

Ronald J. Smeberg (ron@smeberg.com)
SMEBERG LAW FIRM, PLLC
4 Imperial Oaks
San Antonio, Texas 78248
*Attorney for Debtor*

Laura L. Worsham (lworsham@jonesallen.com)
Jones, Allen & Fuquay, LLP
8828 Greenville Avenue
Dallas, TX 75243
*Attorney for Creditor McLeod Oil, LLC*

*/s/ Lynne B. Frank*
Lynne B. Frank