**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE No. 20-50805-rbk |
| KRISJENN RANCH, LLC | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | (Jointly Administered) |

---

**LARRY WRIGHT'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD
NOT BE CONVERTED TO CHAPTER 7**

---

COMES NOW Larry Wright as the former manager and member of KrisJenn Ranch, LLC (the "Wright") and respectfully submits this Response to the Court's *Order to Show Cause Why Case Should Not Be Converted to Chapter 7* (the "Order to Show Cause") entered on May 22, 2026. As discussed in more detail herein, the Court should deny the Order to Show Cause and decline to convert this case for several reasons. First, the Fourth Amended Plan was confirmed over four years ago on February 28, 2022, and was substantially consummated shortly thereafter. The bankruptcy estate terminated upon confirmation, property revested in the Wright, and creditors' rights were fixed by the Plan and subsequent judicial orders. The transfer of the pipeline right-of-way ("ROW") to Express H2O, LLC ("Express H2O") has been known for more than two years. In fact, on March 26, 2024, this Court issued its Opinion After Remand expressly acknowledging that Express H2O held the ROW and noting that "Wright's new entity, Express H2O, LLC, intends to comply with all obligations of the Fourth Amended Chapter 11 Plan." Thus, the Order to Show Cause was issued years after the ROW transfer was known and more than four years after plan confirmation. The Order seeks to unwind a substantially consummated plan based on a supposed plan violation that was already litigated, remedied by constructive trust, and affirmed on appeal by the United States District Court for the Western District of Texas. Second,

conversion is not warranted. No cause for conversion exists under 11 U.S.C. § 1112(b). To the extent additional plan performance is required, Express H2O has unequivocally committed to comply with all plan obligations. The constructive trust imposed by this Court and affirmed by the District Court protects DMA Properties, Inc. ("DMA") and Longbranch Energy, LP's ("Longbranch") interests in the ROW. Third, conversion would not benefit creditors. Rather, it would merely inject uncertainty into ongoing litigation that is poised for favorable resolution. In support thereof, the Respondent would respectfully show as follows:

## I. PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A. Petition Date and Plan Confirmation

1. On April 27, 2020, KrisJenn Ranch, LLC filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The case proceeded through multiple plan amendments, culminating in the confirmation of the Fourth Amended Substantively Consolidated Plan of Reorganization on February 28, 2022.

2. The Confirmed Plan provided for substantive consolidation of KrisJenn Ranch, LLC and its two series (Series Uvalde Ranch and Series Pipeline Row) into a single reorganized entity, KrisJenn Ranch, LLC. The Plan proposed to pay creditors from the sale of real property (the Uvalde Ranch) and/or the monetization of the pipeline ROW.

### B. Payment of Creditor Claims on the Effective Date

3. As represented in the Debtor's Motion for Entry of Final Decree filed on April 1, 2022, the Plan has been substantially consummated.

### C. The ROW Transfer and Constructive Trust Remedy

4. The ROW was transferred to Express H2O after confirmation but before the Court's March 26, 2024 *Opinion After Remand*, wherein the Court addressed DMA's and Longbranch's rights in the ROW. The Court expressly noted that the ROW had been "transferred by KrisJenn to another Larry Wright-controlled entity, [Express H2O], in violation of the terms of the confirmed

chapter 11 plan of reorganization." *In re KrisJenn Ranch, LLC*, Adv. Proc. No. 20-05027, Docket No. 330 (Opinion After Remand) at 4 (Bankr. W.D. Tex. March 26, 2024).

5.      Importantly, however, the Court also noted that "Wright's new entity, [Express H2O], intends to comply with all obligations of the Fourth Amended Chapter 11 Plan." *Id.* at 4, fn.2.

6.      To protect DMA and Longbranch's interests, the Court imposed a "constructive trust . . . on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn.". *Id.* at 5. The Final Judgment After Remand, entered the same day, rendered judgment that ". . . DMA and Moore recover a constructive trust on the ROW in the hands of [Express H2O], because of the unauthorized transfer by KrisJenn of the ROW to [Express H2O]." *In re KrisJenn Ranch, LLC*, Adv. Proc. No. 20-05027, Docket No. 329 (Judgment) at 2 (Bankr. W.D. Tex. March 26, 2024).

7.      On August 11, 2025, United States District Court Judge Xavier Rodriguez affirmed this Court's judgment in all respects. The District Court explicitly approved Express H2O retaining title subject to the constructive trust, holding that "[b]ecause the Bankruptcy Court reviewed the evidence in the record, carefully considered the circumstances presented and because 'the scope and application of a constructive trust is generally left to the discretion of the court imposing it' this Court finds no reason to disturb the Bankruptcy Court's judgment." *In re* KrisJenn Ranch, LLC, Case No. SA-24-CV-00365-XR, Order on Bankruptcy Appeal at 16 (W.D. Tex. Aug. 11, 2025).

8.      DMA and Longbranch did not seek further review of the District Court's affirmance. Therefore, the constructive trust remedy is now the law of the case.

**D. The ROW Transfer and Constructive Trust Remedy**

9.      Express H2O is actively litigating title to the ROW in Texas state court against Westlake Pipelines LLC ("Westlake"). As explained previously, State District Judge Kassaw has entered summary judgment confirming superior title in Express H2O and quieting title against Westlake.

10. Resolution of this litigation will dramatically increase the ROW's value and marketability, benefiting all stakeholders including DMA and Longbranch, whose net-profits interests depend on successful monetization.

### E. KrisJenn Dissolves

11. On May 9, 2023, KrisJenn filed its Certificate of Termination of a Domestic Entity, which was accepted by the Texas Secretary of State. Exhibit A.

12. KrisJenn has not reformed or undone the certificate of termination.

## II. LEGAL STANDARD

### A. THE PLAN WAS SUBSTANTIALLY CONSUMMATED, CREDITORS WERE PAID, AND NO CAUSE FOR CONVERSION EXISTS

13. Section 1112(b)(1) provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). The statute makes conversion or dismissal mandatory "for cause" only if it serves "the best interests of creditors and the estate."

14. However, even where cause exists, the court may not convert if it ". . . finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). "A determination of whether or not cause under § 1112(b) exists rests in the sound discretion of the Bankruptcy Court." *In re Sullivan Central Plaza I, LTD.*, 935 F.2d 723 (5th Cir. 1991).

15. The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor. In re Timbers of Inwood Forest Assoc.,808 F.2d 363 (5th Cir. 1987). "The charge to the bankruptcy judge under § 1112" is ". . . to evaluate each debtor's viability and rate of progress in light of 'the best interest of creditors and the estate.'" *Id.*

### III.    ARGUMENT

**A. THE PLAN WAS SUBSTANTIALLY CONSUMMATED, CREDITORS HAVE BEEN PAID OR PROTECTED, AND NO CAUSE FOR CONVERSION EXISTS UNDER § 1112(b)**

#### a.  Substantial Consummation Occurred and Creates Finality

16.    Substantial consummation is a statutory measure for determining whether a reorganization plan may be amended or modified by the bankruptcy court. *Manges v. Seattle-First Nat'l Bank* (*In re Manges*), 29 F.3d 1034, 1036 (5th Cir. 1994) (internal quotations omitted). The Fifth Circuit has explained that it ". . . borrowed the 'substantial consummation' yardstick because it informs our judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *Id.*

17.    The Plan in the instant bankruptcy case was substantially consummated and payments commenced under the Plan no later than April 1, 2022 (*see* Docket Nos. 243 and 246).

#### b.  No Creditor Has Complained Other than DMA and Longbranch and Their Treatment is Consistent with the Plan or Has Been Remedied by Subsequent Order of the Court

18.    No creditor has requested conversion and no creditor other than DMA and Longbranch has complained about the Wright's performance. DMA's and Longbranch's treatment is dictated by the Plan and the Plan provides in pertinent part (emphasis added):

> DMA, Longbranch, and the Wright will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Wrights, *including their successors and assigns. . . .*
>
> If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Wright sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Wright from the sale or operation of the Express Pipeline. The

> interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.
>
> . . .
>
> In the event the Wright receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Wright shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

19.     DMA and Longbranch are already receiving the primary component of what they are entitled to under the Plan-namely, treatment consistent with the results of the adversary proceeding. The primary complaint raised by DMA and Longbranch (beyond their incorrect assertion that constructive trust requires a turnover of the property) is that KrisJenn transferred the ROW to Express H2O. The assertion is that such transfer was in violation of the Plan provisions giving DMA and Longbranch the right to object (notably, not right of first refusal). However, not only has any concerns with the transfer been remedied by Express H2O unequivocally indicating its intention to comply with the Plan, but the concern regarding the transfer was already raised with the Court and dealt with by this Court in the form of the Court permitting the ROW to stay in Express H2O's hands. *In re KrisJenn Ranch, LLC*, Adv. Proc. No. 20-05027, Docket No. 329 (Judgment) at 2 (Bankr. W.D. Tex. March 26, 2024). As expressed on numerous occasions, that was the remedy for the asserted improper transfer to Express H2O, DMA and Longbranch challenged that remedy, and that remedy was affirmed by the District Court and has been enshrined in a final judgment. *Id.*

20. To convert a case on the basis of an asserted Plan violation that has already been remedied by a final judgment provides a double remedy and undermines finality.

### c. Unusual Circumstances Preclude Conversion Under § 1112(b)(2)

21. Even if the Court were to find "cause" for conversion, § 1112(b)(2) prohibits conversion or dismissal if the Court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." Unusual circumstances are present here.

22. First, the Plan was confirmed over four years ago and substantially consummated shortly thereafter. Creditors have been paid. Property has been transferred. Finality interests have vested.

23. Second, this Court imposed a constructive trust on the ROW after finding that Express H2O intends to comply with all plan obligations. *See Opinion after Remand and Judgment* cited above.

24. Third, Express H2O has unequivocally committed to perform all plan obligations. The Plan provides that DMA and Longbranch are entitled to the treatment that is afforded to them under the final judgment. That final judgment, now affirmed on appeal, provides that DMA and Longbranch's net-profits interests are covenants running with the land and are protected by a constructive trust.

25. Fourth, the ROW title litigation is poised for favorable resolution within three to six months. Conversion would inject uncertainty that could derail settlement negotiations or cloud title, harming all stakeholders.

26. Conversion serves no creditor interest and violates § 1112(b)'s best interests standard.

**B. EXPRESS H2O'S RETENTION OF TITLE SUBJECT TO THE CONSTRUCTIVE TRUST IS THE AFFIRMED LAW OF THE CASE AND PRECLUDES CONVERSION**

### a. The Constructive Trust Remedy Was Fully Litigated and Affirmed

27. The law-of-the-case doctrine bars relitigation of issues decided in earlier proceedings in the same case.

28. DMA and Longbranch appealed this Court's decision to leave the ROW in Express H2O's hands subject to a constructive trust. The District Court affirmed, holding that "[b]ecause the Bankruptcy Court reviewed the evidence in the record, carefully considered the circumstances presented and because 'the scope and application of a constructive trust is generally left to the discretion of the court imposing it' this Court finds no reason to disturb the Bankruptcy Court's judgment." *In re* KrisJenn Ranch, LLC, Case No. SA-24-CV-00365-XR, Order on Bankruptcy Appeal at 16 (W.D. Tex. Aug. 11, 2025).

29. The District Court's affirmance is a final judgment on the adequacy of the constructive trust remedy. DMA and Longbranch did not seek further review. The issue is now settled.

### b. The District Court Explicitly Approved Express H2O Retaining Title

30. The Order to Show Cause appears to rest on the premise that the transfer to Express H2O violated the Plan and harms creditors. But that precise issue (whether DMA and Longbranch's interests are adequately protected with the ROW in Express H2O's hands) was litigated, decided, and affirmed on appeal.

31. The District Court did not order the ROW to be returned to KrisJenn. Instead, it affirmed this Court's decision to leave the property in Express H2O's possession subject to the constructive trust. Conversion would effectively reverse the constructive-trust remedy without any change in circumstances or showing of inadequacy.

### c. Express H2O's Commitment to Perform Plan Obligations Eliminates Any Basis for Conversion

32. Express H2O has explicitly stated that it intends to comply with all obligations of the Fourth Amended Chapter 11 Plan. The Plan provides that DMA and Longbranch receive the treatment that is afforded to them under the final judgment. The final judgment grants them a constructive trust on the ROW and 20% net-profits interests each.

33. This commitment, combined with the constructive trust, provides greater protection to creditors than conversion. A Chapter 7 trustee would have no greater ability to monetize the ROW and would inherit the same constructive trust obligations to DMA and Longbranch. Conversion would merely inject uncertainty and delay.

### C. CONVERSION WOULD HARM CREDITORS AND UNDERMINE THE ESTATE'S ABILITY TO MAXIMIZE VALUE

#### a. The Westlake Litigation Is Poised for Favorable Resolution

34. State District Judge Kassaw entered summary judgment confirming superior title in Express H2O and quieting title against Westlake. Resolution of this litigation will increase the ROW's value and marketability, benefiting all stakeholders.

35. Conversion would undermine this litigation in several ways.

36. First, a Chapter 7 trustee may assert competing claims to the ROW, creating a cloud on title that derails the state court litigation. Westlake could use the trustee's involvement to argue Express H2O lacks authority to settle or litigate.

37. Second, the trustee would need time to review the case, assess the ROW's value, and determine a litigation strategy. This delay could cause Express H2O to miss critical deadlines or settlement opportunities.

38. Third, DMA and Longbranch's net-profits interests depend on successful monetization. If the Westlake litigation is undermined, the ROW's value will be diminished, harming DMA, Longbranch, and any other parties with an interest in maximizing asset value.

#### b. A Chapter 7 Trustee Would Inject Uncertainty and Delay

39. A Chapter 7 trustee would have no greater ability to monetize the ROW than Express H2O. The trustee would: (a) face the same title disputes with Westlake; (b) Inherit the

constructive trust obligation to DMA and Longbranch; (c) Incur administrative fees (trustee compensation, professional fees) that would reduce any distribution to creditors; and (d) Lack the institutional knowledge and relationships that Express H2O has developed in the ROW litigation.

40.     When the estate has no assets with equity that a trustee could liquidate to pay unsecured creditors, dismissal is appropriate. Conversion is preferable when there are estate assets with equity. Here, conversion yields neither benefit to creditors nor assets for administration.

### c. Conversion Serves No Creditor Interest and Violates § 1112(b)'s "Best Interests" Standard

41.     All allowed creditor claims have been paid or are being performed. No creditor has demonstrated that conversion would provide any benefit. To the contrary, conversion would undermine the Westlake litigation, generate administrative expenses that reduce distributions, inject uncertainty regarding who controls the ROW, delay any potential monetization, and jeopardize the constructive trust remedy that protects DMA and Longbranch.

42.     These circumstances establish that conversion is not in the best interests of creditors or the estate.

### D. EVEN IF CONVERSION WERE OTHERWISE APPROPRIATE, THE DEBTOR'S DISSOLUTION AND THE ABSENCE OF ESTATE ASSETS RENDER CONVERSION UNAVAILABLE AND FUTILE

#### a. KrisJenn is Not Eligible as a Chapter 7 Debtor

43.     Several courts have explained that eligibility to convert to a particular chapter under the Code is determined at the time of conversion. For example, the Bankruptcy Court for the Northern District of Ohio was faced with a situation where the chapter 13 debtor passed away. *In re Moore*, No. 15-62639, 2017 Bankr. LEXIS 3385 (Bankr. N.D. Ohio 2017). In considering whether to convert the case to Chapter 7, the court stated: "[s]ince a decedent's estate is not a 'person' for § 109(b) purposes, a probate estate cannot be a chapter 7 debtor." *Id.* at *3.

44.     Further:

> It is simply illogical to use the filing date as the benchmark. Conversion results from a change in circumstance warranting

> alteration in the original tack of the case yet, facts which should not be ignored.
>
> Section 706(d) can be used comparatively. It is the complementary section for conversion from chapter 7 cases to other chapters. If the situation was reversed, and the chapter 7 debtor died after filing, and moved to convert to chapter 13, would these courts continue to ignore the death, relying instead on the debtor's eligibility at filing? The court finds it highly unlikely. While a seemingly absurd example, it does drive home the point that there must be a consistent reading and understanding in an effort to make the sections cohesive. The court concludes that the debtor must meet the eligibility requirements at the time of the conversion.

*Id. at *4.*

45.     Other cases similarly demonstrate the eligibility must be determined on the date of conversion. *See, e.g. In re Spiser*, 232 B.R. 669, 673 (Bankr. N.D. Tex. 1999); and *In re Jarrett*, 19 B.R. 413, 414 (Bankr. M.D.N.C. 1982).

46.     Further, an entity that does not exist cannot be a debtor under Chapter 7. It is well-settled that state law governs a corporate entity's existence and, further, that an entity must exist under state law to file a bankruptcy. *See In re Estate of Medcare HMO*, 998 F.2d 436, 29 C.B.C.2d 255 (7th Cir. 1993) (if the law of the state in which an entity is incorporated classifies such entity as one which is excluded from relief under section 109(b)(2) or if it is substantially similar to one excluded under this section, that entity may not be a debtor); *In re Cedar Tide Corp.*, 859 F.2d 1127 (2d Cir. 1988) (chapter 11 permitted if state permitted corporation in dissolution to continue to sue or be sued and to obtain automatic reinstatement); *see also Midpoint Dev. L.L.C. v. Holliman* (*In re Midpoint Dev. L.L.C.*), 466 F.3d 1201 (10th Cir. 2006) (under Oklahoma law, LLC ceased to exist upon the effective date of its articles of dissolution and was therefore ineligible to be a debtor).

47.     Further, cases have held that when a corporation whose charter has been forfeited under state law continues its corporate existence for the purpose of winding up and liquidating, the corporation may liquidate through the provisions of the Bankruptcy Code. *In re ABZ Ins. Servs.,*

*Inc.*, 245 B.R. 255 (Bankr. N.D. Tex. 2000); *In re Tri-Angle Distributors, Inc.*, 21 C.B.C.2d 583, 102 B.R. 151 (Bankr. N.D. Ind. 1989); *In re Anderson,* 94 B.R. 153 (Bankr. W.D. Mo. 1988).

48.     Finally, Section 11.356(a) of the Texas Business Organizations Code provides:

(a) Notwithstanding the termination of a domestic filing entity under this code or the Tax Code, the terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination only for purposes of:

(1) prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity;
(2) permitting the survival of an existing claim by or against the terminated filing entity;
(3) holding title to and liquidating property that remained with the terminated filing entity at the time of termination or property that is collected by the terminated filing entity after termination;
(4) applying or distributing property, or its proceeds, as provided by Section 11.053; and
(5) settling affairs not completed before termination.

TEX. BUS. ORGS. CODE § 11.356.

49.     In the instant case, KrisJenn Ranch was dissolved on May 9, 2023 (Exhibit A), more than three years ago, and therefore lacks capacity to serve as a Chapter 7 debtor and conversion to Chapter 7 is impermissible under 1112(f).

50.     Even if KrisJenn retains nominal existence, KrisJenn's dissolution and the passage of time present practical problems. Namely, no corporate officer exists to sign conversion schedules, attend a creditor's meeting, or exercise corporate authority.

### b. No Assets Remain in the Estate for a Trustee to Administer

51.     Upon confirmation of the Plan, all property typically revests in the debtor. 11 U.S.C. § 1141(b). Once the plan was confirmed and the estate property was revested in the debtor, the property was no longer property of the estate subject to the restrictions of the Bankruptcy Code.

52.     After confirmation, the ROW vested in the Wright free of the bankruptcy estate. The transfer to Express H2O, even if unauthorized, involved post-confirmation property, not estate property. A Chapter 7 trustee's authority is limited to property of the estate at conversion. If the

estate terminated at confirmation and property revested, the trustee may have nothing to administer.

### c. Dismissal, Not Conversion, Is the Appropriate Remedy if the Court Declines to Continue the Case

53.     If the Court determines that some action is necessary, dismissal is preferable to conversion.

54.     Dismissal would Avoid the administrative expenses of a Chapter 7 case and allow parties to pursue their remedies under state law and existing judgments. Dismissal would also preserve Plan finality.

## V. CONCLUSION

55.     For the reasons stated above, no cause for conversion exists. The Plan was substantially consummated over four years ago. All allowed creditor claims have been paid or are being performed under court-approved terms. Express H2O has committed to comply with all plan obligations, and DMA and Longbranch's interests are protected by the constructive trust imposed by this Court and affirmed by the District Court.

56.     The ROW transfer has been known for more than two years. Conversion at this juncture would not serve the best interests of creditors or the estate, it would merely undermine ongoing litigation, inject uncertainty, generate administrative expenses, and reverse a final, affirmed judgment.

57.     Unusual circumstances preclude conversion under § 1112(b)(2).

WHEREFORE, the Respondent respectfully requests that this Court enter an order: 1) vacating the Order to Show Cause; and/or 2) decline to convert this case to Chapter 7; and 3) granting such other relief as the Court deems just and proper.

DATED: July 21, 2026

Respectfully submitted,

**HAYWARD PLLC**

By: */s/ Charlie Shelton*
Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/Fax)
cshelton@haywardfirm.com

***Counsel for Larry Wright***

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on July 21, 2026, a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system upon the parties receiving electronic notice. Additionally, on July 21, 2026, or within one business day thereof, the foregoing was served via U.S. First Class Mail to all parties on the attached creditor matrix.

          */s/ Charlie Shelton*   
          Charlie Shelton

Label Matrix for local noticing
0542-5
Case 20-50805-rbk
Western District of Texas
San Antonio
Tue Jul 21 18:46:59 CDT 2026

KrisJenn Ranch, LLC
410 Spyglass Rd
McQueeney, TX 78123-3418

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
San Antonio, TX 78295-1601

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

Albert, Neely & Kuhlmann, LLP
1600 Oil & Gas Building
309 W 7th St
Fort Worth, TX 76102-6900

Angelina County
c/o John P. Dillman
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx 77253-3064

Angelina County Tax Assessor
606 E Lufkin Ave
Lufkin, TX 75901-0434

Bigfoot Energy Services, LLC
312 W Sabine St
Carthage, TX 75633-2519

C&W Fuels, Inc.
Po Box 40
Hondo, TX 78861-0040

CLEVELAND
TERRAZAS PLLC
Timothy Cleveland
4611 Bee Cave Road, Suite 306 B
Austin, TX 78746-5284

DMA Properties, Inc.
c/o Michael J. Black
BURNS & BLACK, PLLC
750 Rittiman Road
San Antonio, TX 78209-5500

DMA Properties, Inc.
c/o NATALIE F. WILSON
745 East Mulberry, Suite 700
San Antonio, Texas 78212-3172

DMA Properties, Inc. and Frank Daniel Moore
c/o NATALIE F. WILSON
745 East Mulberry, Suite 700
San Antonio, Texas 78212-3172

DUKE, BANISTER, RICHMOND, PLLC
Jeffrey Duke
P.O. Box 175
Fulshear, TX 77441-0175

Davis, Cedillo & Mendoza, Inc.
755 E Mulberry Ave Ste 500
San Antonio, TX 78212-3135

Frank Daniel Moore
c/o NATALIE F. WILSON
745 East Mulberry, Suite 700
San Antonio, Texas 78212-3172

Granstaff Gaedke & Edgmon PC
5535 Fredericksburg Rd Ste 110
San Antonio, TX 78229-3553

Guadalupe County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680-1269

Hopper's Soft Water Service
120 W Frio St
Uvalde, TX 78801-3699

Internal Revenue Service
Po Box 7346
Philadelphia, PA 19101-7346

JOHNS &COUNSEL PLLC
Christopher S. Johns
14101 Highway 290 West, Suite 400A
Austin, TX 78737-9376

KRISJENN RANCH, LLC, KRISJENN RANCH, LLC, Se
410 Spyglass Rd
Mc Queeney, TX 78123-3418

Larry Wright
410 Spyglass Rd
Mc Queeney, TX 78123-3418

Longbranch Energy
c/o DUKE BANISTER RICHMOND
Po Box 175
Fulshear, TX 77441-0175

Longbranch Energy, LP
DMA Properties, Inc.
c/o Mr. Michael J. Black
Burns & Black, PLLC
750 Rittiman Road
San Antonio, Texas 78209-5500

METTAUER LAW FIRM, PLLC
c/o April Prince
403 Nacogdoches St Ste 1
Center, TX 75935-3810

McLeod Oil, LLC
c/o John W. McLeod, Jr.
700 N Wildwood Dr
Irving, TX 75061-8832

McLeod Oil, LLC
c/o Laura L. Worsham
Jones Allen & Fuquay, LLP
8828 Greenville Avenue
Dallas, Texas 75243-7143

Medina Electric
2308 18th St.
Po Box 370
Hondo, TX 78861-0370

Medina's Pest Control
1490 S Homestead Rd
Uvalde, TX 78801-7625

Nacogdoches County Tax Assessor
101 W Main St Ste 100
Nacogdoches, TX 75961-4820

Nacogdoches County, et al.
c/o Tab Beall
Perdue Brandon Fielder Collins & Mott
PO Box 2007
Tyler, TX 75710-2007

Rusk County Appraisal District
107 N Van Buren St
Henderson, TX 75652-3113

Shelby County
c/o John P. Dillman
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx 77253-3064

Shelby County Tax Collector
200 St. Augustine St.
Center, TX 75935-3959

Tenaha ISD Tax Assessor-Collector
138 College St
Tenaha, TX 75974-5612

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

Texas Farm Store
236 E Nopal St
Uvalde, TX 78801-5391

Uvalco Supply
2521 E Main St
Uvalde, TX 78801-4940

Uvalde County Tax Assessor
Courthouse Plaza, Box 8
Uvalde, TX 78801-5239

Uvalde County Tax Office
209 N High St.
Uvalde, TX 78801-5207

Uvalde County Tax Office
c/o Carlos M. Arce
Perdue, Brandon, Fielder, Collins & Mott
613 NW Loop 410, Ste. 550
San Antonio, TX 78216-5593


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Texas Comptroller of Public Accounts
Capitol Station
Po Box 13528
Austin, TX 78711-3528

End of Label Matrix
Mailable recipients    41
Bypassed recipients     0
Total                  41