**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| *In re:* | § | |
| | § | CASE NO. 20-50805-rbk |
| KrisJenn Ranch, LLC, et al. | § | |
| | § | CHAPTER 11 |
| *Debtor*. | § | |

**BRIEF IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND IN SUPPORT OF CONVERSION FROM CHAPTER 11 TO CHAPTER 7**

Longbranch Energy LP ("Longbranch"), DMA Properties Inc. ("DMA"), and Frank Daniel Moore (collectively, "Creditors") file this brief related to the Court's May 22 order to show cause and respectfully ask the Court to convert this case from Chapter 11 to Chapter 7.

## INTRODUCTION

The policy undergirding Chapter 11 bankruptcy is to provide a fresh start for honest but unfortunate debtors. Larry Wright and the KrisJenn Ranch, LLC parties (the "Debtor parties") are neither honest nor unfortunate debtors. They are parties that have manipulated the bankruptcy process and, against this Court's final judgment, seek to deprive Creditors of their interests in the right of way ("ROW")—both their profits interests that run with the land and the constructive trust ordered to remedy the fraudulent transfer Wright engaged in. Among other bad-faith conduct, the Debtor parties:

- breached fiduciary duties to gain control of the ROW in the first place;
- violated the bankruptcy plan through an undisclosed and fraudulent transfer of the ROW—supported by no consideration—to Express H2O Pipeline & ROW, LLC ("Express H2O"), an entity controlled by Wright and his family;
- structured that fraudulent transfer so that Larry Wright would not personally own anything, in an attempt to thwart enforcement of any judgment against him;

- continue to deny that Creditors' ROW interests attach and run with the land, despite multiple court orders conclusively holding that the interests are real property interests that attach and run;
- have attempted to sell the ROW without disclosing Creditors' interests in it, both before and after plan confirmation; and
- have failed to pay a single dollar of the final judgment's $750,000 fee award.

These facts—which are indisputable—show why conversion to Chapter 7 is appropriate and necessary to protect Creditors' interests.

## BACKGROUND

After Larry Wright sought to steal DMA's net profits interests in a pipeline right-of-way ("ROW") in East Texas, DMA and Longbranch fought through over six years of litigation to protect their interests in the ROW. Along the way, the Debtor parties have used every tool at their disposal to avoid honoring the parties' agreements and dodge compliance with this Court's judgment and orders. The Court should not tolerate these efforts any longer.

A professional poker player, Wright convinced Daniel Moore and Darin Borders—the two men who had found and spent countless hours developing the ROW opportunity and securing the right to purchase it—to let Wright join the deal if he put up the money to buy the ROW. As part of that deal, Borders (through his entity Longbranch) assigned the right to purchase the ROW to Black Duck, the company that Moore and Wright owned 50/50. In exchange, Borders received a written assignment of 20% of the ROW's net profits; as the district court later held, that net-profits interest runs with the land.

Later, Wright grew hostile towards Moore and pushed for his resignation from Black Duck. Eventually, Moore agreed to give up his 50% interest in Black Duck in exchange for the same deal Borders had received. Since then, Wright and his entities—the KrisJenn entities and Express H2O—have repeatedly tried to dispose of the ROW while disregarding DMA and Longbranch's net-profits interests.

After years of litigation to enforce the net-profits interests, the District Court held on appeal that DMA and Longbranch's net-profits interests are real covenants that attach and run with the land. *In re KrisJenn Ranch*, *LLC*, 661 F. Supp. 3d 654, 679 (W.D. Tex. 2023). Subsequently, and consistent with the District Court's findings, this Court entered an opinion and final judgment in favor of DMA and Longbranch, upholding their interests in the ROW as real property interests that run with the land and bind successors and assigns, finding Wright liable for breach of fiduciary duty, imposing a constructive trust on the ROW for the benefit of DMA, and finding that DMA, Moore, and Longbranch were entitled to recover attorneys' fees—which the Debtor parties still haven't paid. Final Judgment on Remand (ECF No. 329); Opinion on Remand (ECF No. 330). The Court entered this final judgment in March 2024, over two years ago. There is no pending appeal of the final judgment, which is now both final and conclusive.

In the two years since the Court entered its final judgment, the Debtor parties have filed a spate of baseless and unsuccessful motions in this Court and in the District Court seeking to avoid the final judgment. For example, Wright has filed a motion to set aside ruling on constructive trust, *KrisJenn Ranch, LLC et al. v. DMA Properties, Inc., et al.*, 5:20-ap-05027 (ECF No. 382); a motion for relief from final judgment, *id.* (ECF No. 418); a motion for stay, *id.* (ECF No. 436); a motion to abate, *id.* (ECF No. 456); a motion to dismiss for lack of subject matter jurisdiction and alternatively to stay, *id.* (ECF No. 542); a motion for reconsideration and/or clarification of an order entered by Judge Rodriguez regarding the constructive trust entered in favor of DMA, *Wright v. King*, No. 5:52-CV-01452-XR (ECF No. 14); and motions for "clarification" of the opinion and final judgment entered by this Court and by Judge Pulliam in the appeal to the District Court. *id.* (ECF No. 48); *KrisJenn Ranch, LLC et al. v. DMA Properties, Inc., et al.*, 5:20-ap-05027 (ECF No. 616). Those motions uniformly lacked merit and have all been denied.

Given the Debtor parties' misconduct and evasion of the judgment, the Court has entered an order to show cause why the bankruptcy case should not be converted to

Chapter 7 in light of "substantial questions" regarding the debtor's non-compliance with the plan of reorganization. ECF No. 257. Because there is ample cause for conversion, Creditors respectfully request the Court convert this case to Chapter 7.

## ARGUMENT

Section 1112(b)(1) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). "Cause" includes "gross mismanagement of the estate" and "failure to comply with an order of the court." *Id.* § 1112(b)(4)(B), (E). "Cause" also includes (1) diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and (2) a material default with respect to the confirmed plan. *See id.* § 1112(b)(4)(A), (N). Courts also hold that a lack of good faith constitutes "cause" for purposes of § 1112(b)(4). *See, e.g.*, *In re SGL Carbon Corp.*, 200 F.3d 154, 159–62 (3d Cir. 1999); *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986).

All of these factors exist here. Chapter 7 would be appropriate for *any* of the following reasons: (1) the Debtor parties violated the bankruptcy plan through a fraudulent and undisclosed transfer of the ROW to Express for no consideration; (2) the Debtor parties refused to transfer the ROW from Express back into the hands of the Debtor despite making on-the-record promises to this Court and Creditors; (3) the Debtor parties have repeatedly attempted to sell the ROW without disclosing the Creditors' interests; (4) the Debtor parties continue to characterize Creditors' interest in the ROW as personal covenants that do not run with the land, defying the District Court's appellate ruling and this Court's final judgment; (5) the Debtor parties only obtained the ROW in the first place by breaching fiduciary duties owed to Creditors; and (6) the Debtor parties have refused to pay any of the $750,000 fee award entered by this Court over a year ago.

Yet the Court need not rely on just one of these bad-faith acts. The Debtor parties have done all of these things. Neither honest nor simply unfortunate, the Debtor parties cannot be trusted to honor this Court's orders, its final judgment, or the Creditors' interests. Accordingly, conversion to a Chapter 7 proceeding is appropriate.

## I. Chapter 11 is for honest but unfortunate debtors.

The purpose of bankruptcy is to provide honest but unfortunate debtors a clean start. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). Section 1112(b) contains an implied "good faith" requirement for Chapter 11 bankruptcy, grounded in the "equitable nature of bankruptcy" and "purposes underlying Chapter 11." *See In re LTL Mgmt., LLC*, 65 F.4th 84, 100 (3d Cir. 2023); *SGL Carbon Corp.*, 200 F.3d at 161–62; *see also Little Creek*, 779 F.2d at 1071 ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."). "The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws." *Elmwood Dev. Co. v. Gen. Elec. Pension Tr. (In re Elmwood Dev. Co.)*, 964 F.2d 508, 510 (5th Cir. 1992); *Little Creek*, 779 F.2d at 1072.

When a debtor fails to act in good faith, a court may dismiss a Chapter 11 case or convert a case under Chapter 11 to a case under Chapter 7 for cause if in the best interest of the creditors and the estate. *SGL Carbon Corp.*, 200 F.3d at 161–62; 11 U.S.C. § 1112. "[C]ause is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process." *Little Creek*, 779 F.2d at 1072. Cause exists here because of the bad-faith, post-petition actions of the Debtor parties. *See In re M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 857 (Bankr. S.D. Tex. 2023) ("Analysis under

§ 1112(b)(4)(B) focuses solely on the post-petition management of the estate and does not include mismanagement of the pre-petition debtor.").

## II. The Debtor parties have proven time after time that they cannot be trusted to follow the Court's rulings or to protect the Creditors' interests.

The Debtor parties have repeatedly abused these bankruptcy proceedings in attempts to gut Creditors' ROW interests. As both this Court and the District Court have recognized, Larry Wright and his entities obtained the money to purchase the ROW—and then obtained the ROW itself—only by breaching fiduciary duties owed to the Creditors. *See In re KrisJenn Ranch, LLC*, 661 F. Supp. 3d 654, 683 (W.D. Tex. 2023). Wright then sold the ROW to TCRG East Texas Pipeline 1 LLC and sold a purchase option to McLeod Oil LLC, both times without disclosing Creditors' interests. *Id.* at 665. After initiating the bankruptcy proceedings, the Debtor parties committed several more bad-faith acts, including:

- violating the Court's bankruptcy plan and order by transferring the ROW to Express;[1]
- engaging in that fraudulent transfer (between insiders for no valuable consideration) and structuring it so that Larry Wright would not personally own any interest in Express, thereby thwarting attempts to collect against him on the final judgment;[2]
- failing to transfer the ROW back from Express despite their on-the-record promise to do so in the initial post-remand hearings following the first District Court appeal;[3]
- improperly withholding critical post-judgment discovery responses until the middle of the second appeal to the District Court and preventing the deposition of Larry Wright; [4]

---

[1] Final Judgment on Remand (EFC No. 329) at 4.
[2] Ex. 1 (Deed to Express H2O).
[3] Ex. 2 (June 4, 2026 Hrg. Tr.) at 42:23–43:15; Ex. 3 (Feb. 5, 2025 Hrg. Tr.) at 22:1–22:6, 36:12–36:20.
[4] Mot. Quash Depo. Notices (ECF No. 437); Mot. Compel Wright to Attend Deposition (ECF No. 540).

- misrepresenting to the Court that the ROW could not be transferred to a KrisJenn entity and that Debtor could not be revived because the name "KrisJenn" was no longer available from the Texas Secretary of State;[5]
- arguing at the May 12, 2026 hearing that the constructive trust granted to DMA is meaningless and that the Court had no jurisdiction to enforce its final judgment;
- arguing in the May 12 and June 4, 2026 hearings (and related filings) that Creditors' interests do not actually attach and run with the land and are not binding on successors and assigns, in blatant disregard for the Court's final judgment;[6]
- attempting in recent weeks to market the ROW to third parties without disclosing Creditors' interests in the ROW; and
- failing to pay a single dollar of the $750,000 fee award.

Such actions show why conversion to Chapter 7 is needed: the Debtor parties simply cannot be trusted to honor the Court's judgment and protect Creditors' interests.

**III. Conversion to Chapter 7 is appropriate.**

Conversion to Chapter 7 is appropriate and necessary in this case. "While one purpose of bankruptcy law is to provide a fresh start for the honest but unfortunate debtor, another primary purpose is to provide for equitable treatment of creditors in recovery of their claims." *Studensky v. Buttery Co., LLP (In re Argubright)*, 532 B.R. 888, 893 (Bankr. W.D. Tex. 2015) (internal citations omitted). With Larry Wright in control of the Debtor parties, this case is serving neither of those purposes.

The conduct of the Debtor parties, both before and throughout this case, has amply demonstrated their unclean hands. They have thereby frustrated the second purpose of a bankruptcy proceeding: providing creditors with equitable treatment in

---

[5] Ex. 2 (June 4, 2026 Hrg. Tr.) at 42:16–43:3; Ex. 3 (Feb. 5, 2025 Hrg. Tr.) at 22:10–22:12, 36:6–36:20.

[6] *See, e.g.*, Mot. Clarification, *KrisJenn Ranch, LLC et al. v. DMA Properties, Inc., et al.*, 5:20-ap-05027 (ECF No. 616).

recovery of their claims. At every turn, the Debtor parties have used this process to deny Creditors any recovery, despite the final judgment in the adversary proceeding.

There is ample cause to convert this case to one under Chapter 7. At a minimum, cause exists under § 1112(b)(4) for gross mismanagement of the estate and failure to comply with a court order. 11 U.S.C. § 1112(b)(4)(B), (E); *M.A.R. Designs*, 653 B.R. at 862 ("Cause to convert pursuant to § 1112(b)(4)(E) exists if a debtor fails to comply with a single order; a pattern of non-compliance is not required by the statute.").

Cause also exists because the Debtor parties have engaged in a post-confirmation fraudulent transfer that constitutes (1) a diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and (2) a material default with respect to the confirmed plan. *See* 11 U.S.C. § 1112(b)(4)(A), (N). Larry Wright and his immediate family effected the transfer of the sole asset of the reorganized debtor—the ROW—to insiders (themselves) for no value.[7] This was an attempt to strip Creditors of their rights under the terms of the confirmed plan and to avoid satisfying the Debtor parties' obligations under what became the final judgment in the adversary proceeding. The Debtor parties' failure to conduct their business honestly and in the best interest of their creditors is sufficient cause to convert this case so that it can be administered by a neutral Chapter 7 Trustee.

It is also obvious that the Debtor parties cannot be "rehabilitated." Rehabilitation does not mean reorganization, which could involve liquidation. Instead, rehabilitation signifies more, being described as "to put back in good condition; re-establish on a firm, sound basis." "The issue of rehabilitation for purposes of § 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re TMT Procurement Corp.*, 534 B.R. 912, 920–21 (Bankr. S.D. Tex. 2015). Where the debtor exists solely to liquidate assets and has no business prospects, conversion is appropriate. *See id.*

[7] *See* Ex. 1 (Deed to Express H2O) at 2; Ex. 2 (June 4, 2026 Hrg. Tr.) at 42:23–43:15; Ex. 3 (Feb. 5, 2025 Hrg. Tr.) at 22:1–22:6, 36:12–36:20.

The Debtor parties' efforts to transfer the estate's only valuable asset for insufficient consideration, for the sole benefit of insiders, show that they cannot be "rehabilitated" as defined in the Bankruptcy Code.

Finally, converting this case to Chapter 7 would be in the best interests of Creditors. The Debtor parties have repeatedly demonstrated an unwillingness to abide by their fiduciary duties. As described above, the Debtor parties also engaged in fraudulent transfers. The recipients of those alleged fraudulent transfers are Larry Wright's wife, daughters, and a family trust. The Debtor parties cannot be trusted to adequately investigate or pursue fraudulent transfers against those potential defendants—namely, themselves, as the Wrights were both the transferors (as owners of KrisJenn) and the recipients of the fraudulent transfer (as owners of Express). The Debtor parties have also proven themselves unable to sell the ROW to a willing buyer for fair market value or to cause KrisJenn and Wright to pay the money judgment against them. A neutral Chapter 7 Trustee is required to carry out those functions.

## IV. There are no unusual circumstances preventing conversion.

In his response to the Court's order to show cause, Wright argues that even if there is cause for conversion, the Court is precluded from converting to a Chapter 7 proceeding because "unusual circumstances establish[] that converting or dismissing the case is not in the best interest of creditors and the estate." Wright's Resp. Show Cause Order (ECF No. 293) at 7 (citing 11 U.S.C. § 1112(b)(2)). However, as noted above, converting the case would be in the best interest of the creditors because, at a minimum, the Debtor parties have grossly mismanaged the bankruptcy estate and repeatedly failed to follow this Court's orders, and no other unusual circumstances preclude conversion.

Relying on *In re Manges*, Wright first argues that conversion is not in the interest of the creditors and unusual circumstances apply because the bankruptcy reorganization plan has been substantially consummated. *Id.* at 5 (citing *Manges v. Seattle-First Nat'l Bank*

(*In re Manges*), 29 F.3d 1034, 1036 (5th Cir. 1994)). As an initial matter, Wright's reliance on *Manges* is inapposite: the court in *Manges* addressed whether the debtors' appeal of the bankruptcy plan was moot given that the estate's assets had already been irreversibly liquidated and sold to bona fide third-party purchasers. 29 F.3d at 1042–43. Here, in contrast, the Court is evaluating not an appeal but a conversion to address the Debtor parties' pattern of wrongdoing. Thus, *Manges* is inapplicable. Furthermore, as the Fifth Circuit stated in *Manges*, substantial consummation "does not necessarily make it impossible or inequitable for a[] . . . court to grant effective relief." *Id.* The Court can and should proceed with conversion because there is cause for it, and the fact that the plan may have been substantially consummated is not a sufficiently unusual circumstance to warrant otherwise. *See In re Seaview Estates, Inc.*, 213 B.R. 427, 430–32 (Bankr. E.D.N.Y. 1997) (allowing Chapter 7 conversion after plan consummation due to debtor's failure to perform under the plan and compiling cases).

Wright also argues that unusual circumstances apply and conversion is not in the interest of the creditors because Express H2O has agreed to comply with all plan obligations, including any set by this Court's final judgment. Wright's Resp. Show Cause Order (ECF No. 293) at 8–9. Wright has repeatedly claimed he does not speak on behalf of Express H2O and thus lacks authority or standing to argue that Express H2O will comply with the plan. But in any case, Express H2O and the Debtor parties have already failed to comply with the plan. The Debtor parties transferred the ROW to Express H2O in violation of the plan and of this Court's orders. And for two years the Debtor parties have failed to transfer the ROW back from Express despite their on-the-record promise to do so in the initial post-remand hearings following the first District Court appeal.[8] The Court should reject Express H2O and the Debtor parties' empty reassurances given their continued refusals to comply with the Court's orders.

---

[8] Ex. 2 (June 4, 2026 Hrg. Tr.) at 42:23–43:15; Ex. 3 (Feb. 5, 2025 Hrg. Tr.) at 22:1–22:6, 36:12–36:20.

Wright also claims that unusual circumstances apply because the bankruptcy plan and the final judgment already provide the Creditors with any relief to which they may be entitled. *Id.* at 9. However, Wright's argument glosses over the fact that, in the two years since the Court entered its final judgment, the Debtor parties have sought to undermine the final judgment multiple times. *See supra* Background at 3. Wright and his entities' evasion of the judgment and misconduct demonstrate the need for conversion.

Finally, Wright argues that unusual circumstances apply because Express H2O is currently in litigation over the ROW's title, and that litigation is likely to be favorably resolved in the near future. But Wright fails to show how the conversion's potential effect on Express H2O's litigation would be detrimental or not in the "best interest" of Creditors. Wright incorrectly assumes that it is in Creditor's best interest for Express H2O to remain in control of the ROW because it has "institutional knowledge." But as explained above, Express H2O and the Debtor parties have repeatedly failed to follow this Court's orders and sought to undermine Creditors' rights. Even if converting the case and adding a trustee could result in increased costs for the estate and delays for the ongoing litigation over the ROW's title (which is not guaranteed), it is in Creditors' best interest to have a neutral Chapter 7 trustee overseeing the estate. That Express H2O has chosen to pursue litigation over the ROW instead of transferring the ROW back to the Debtor parties does not change this analysis.

The Debtor parties have shown the Court who they are. The Court should believe them. After years of gamesmanship and bad-faith actions, the Debtor parties can be trusted to engage in more of the same, for as long as it takes, to vitiate the final judgment and Creditors' rights. The Court should not tolerate the Debtor parties' efforts to avoid its judgment and should instead convert this case from Chapter 11 to Chapter 7 and allow the U.S. Trustee to handle the Debtor parties' assets.

## CONCLUSION

This dispute has already lasted nearly a decade. For all of the reasons described above, Chapter 7 conversion is not only proper: it is the only process with any reasonable chance of (1) sparing the parties and the courts years more of litigation and (2) protecting Creditors' interests. Creditors thus respectfully ask the Court to convert this case from Chapter 11 to Chapter 7 and to instruct the U.S. Trustee to liquidate the ROW and take other appropriate measures to protect Creditors' interests.

Respectfully submitted,

*/s/ Austin H. Krist*

Christopher S. Johns
Texas Bar No. 24044849
JOHNS & COUNSEL PLLC
13341 W. US-290, Building 2
Austin, Texas 78737
512-399-3150
512-572-8005 fax
chris@johnsandcounsel.com

Timothy Cleveland
Texas Bar No. 24055318
Austin H. Krist
Texas Bar No. 24106170
CLEVELAND | KRIST PLLC
4611 Bee Cave Road, Suite 306B
Austin, Texas 78746
512-689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com

Natalie F. Wilson
Texas Bar No. 24076779
LANGLEY & BANACK
745 East Mulberry Avenue, Suite 700
San Antonio, Texas 78212
210-736-6600
210-735-6889 fax
nwilson@langleybanack.com

*Counsel for Longbranch Energy, DMA Properties, and Frank Daniel Moore*

## CERTIFICATE OF SERVICE

I certify that on September 22, 2026, this filing was served on counsel of record via the CM/ECF system and/or by email.

*/s/ Austin H. Krist*
Austin H. Krist