Exhibit

M-9

**The relief described hereinbelow is SO ORDERED.**

**Signed March 26, 2024.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL,** | § | **CASE NO. 20-50805-RBK** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |
| | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | **ADVERSARY NO. 20-5027-RBK** |
| **V.** | § | |
| | § | |
| **DMA PROPERTIES, INC., ET AL,** | § | |
| | § | |
| **DEFENDANTS** | § | |

## OPINION AFTER REMAND

After a six-day trial, this Court rendered judgment that the assignments of the right of way ("**ROW**") owned by KrisJenn Ranch, LLC and its affiliated entities (collectively, "**KrisJenn**"),

contained net profits interests that were personal covenants rather than covenants that run with the land. The judgment also determined the rights of the parties with respect to the Harris Saltwater Disposal ("**SWD**") well agreement and denied relief on other claims and counterclaims between the parties.

On appeal, the United States District Court reviewed the factual issues under a clear error standard and the legal issues on a *de novo* basis. The purpose of this Opinion After Remand is to make additional findings and conclusions pursuant to FED. R. BANKR. P. 7052 and to conform the findings, conclusions, and the judgment to that directed by the District Court. This Court reaffirms the findings and conclusions in its original Opinion to the extent that they are not inconsistent with the District Court Opinion. The District Court stated that there were three issues on appeal, two of which should be addressed by this Court on remand.

**I.**

On the first issue, the District Court disagreed with this Court's determination regarding covenants running with the land. The District Court found that the net profits interests of DMA Properties, Inc. ("**DMA**") and Longbranch Energy, LP ("**Longbranch**") are covenants that run with the land and it remanded to this Court to render judgment accordingly.[1]

Because the net profits interests have been determined on appeal to be covenants that run with the land, DMA and Longbranch are entitled to a judgment to that effect. This Court will

[1] As stated by Judge Edith Jones in a dissenting opinion on a different bankruptcy issue: "I would hope to stand with Galileo, who, rebuffed by a higher temporal authority, muttered under his breath, 'Eppur si muove.' ('And yet it moves.')." ***In re Greystone III Joint Venture***, 995 F.2d 1274, 1285 (5th Cir. 1992) (Jones, J., dissenting).

render judgment that the net profits interests of DMA and Longbranch are valid covenants that run with the land.

**II.**

The second issue considered on appeal by the District Court was this Court's determination of the proper measure of damages for breach of fiduciary duty by Larry Wright, the principal of KrisJenn. After reviewing the transcripts of the six-day trial, this Court is unable to find any evidence of quantification of damages suffered by DMA and Moore other than their claim to recover the original purchase price of approximately $4,700,000 prior to the breaches of fiduciary duty. All of the parties to the ROW transaction were well aware that it was a speculative venture that could make a profit or could generate economic loss. Larry Wright, Daniel Moore, and Darin Borders all attempted to sell or develop the ROW, without success for various reasons. One reason was that, in the early stages, Black Duck Properties, LLC ("**Black Duck**"), did not own the ROW and buyers were hesitant to deal with people who had only a contract to *acquire* the ROW but did not actually *own* it. When Black Duck later acquired title to the ROW, the individuals who owned Black Duck or the net profits interests often disagreed about whether they should "flip" the ROW or attempt to develop it on a long-term basis in which they stayed involved and which could potentially be much more lucrative. The TCRG sale that occurred and was ultimately rescinded was a painful episode in the attempt by the parties to make a profit by selling the ROW and retaining net profits interests. Because of the dispute over whether the two 20% net profits interests were enforceable against future buyers, the parties could not agree on the proper split of sales proceeds or future income. Not one of the entities or individual parties—KrisJenn, Larry Wright, DMA, Longbranch, Daniel Moore, or Darin Borders—has made money on the purchase of the

ROW. Larry Wright and KrisJenn have paid millions of dollars and have little to show for it. Daniel Moore, Darin Borders, DMA, and Longbranch spent many hours working on the deal but have paid little.

The ROW was revested in KrisJenn at confirmation of the chapter 11 plan. It was subsequently transferred by KrisJenn to another Larry Wright-controlled entity, Express H2O Pipeline & ROW, LLC. ("**Express H2O**"), in violation of the terms of the confirmed chapter 11 plan of reorganization.[2] The Court will impose a constructive trust on the ROW in the event that Larry Wright and Express H2O fail to transfer the ROW back to KrisJenn, the reorganized debtor.

It is impossible to quantify damages as a result of Larry Wright's breach of fiduciary duty. In addition, the speculative value of the ROW and the net profits interests owned by DMA and Longbranch make the amount of damages uncertain. The Court could use offers to purchase the ROW from years ago, but values may have changed and none of the offers resulted in an actual sale. The better remedy for DMA and Moore, and the one they have elected in their proposed judgment, would be an equitable remedy: Larry Wright would restore ownership of the ROW to KrisJenn, or this Court would impose a constructive trust on the ROW in the hands of Express H2O, and allow Larry Wright to recover his investment for the $4,700,000 purchase price, prior to the breaches of fiduciary duty, from a sale or development of the ROW. After Wright is able to recover $4,700,000, the two 20% net profits interests would begin receiving income from a sale or development of the ROW. The Court is not optimistic that the parties will be able to work together for their common good and suggests that the parties agree to go to arbitration or mediation.

[2] "Wright's new entity, Express H2O, LLC, intends to comply with all obligations of the Fourth Amended Chapter 11 Plan." ECF No. 322, p. 5 (KrisJenn response to briefing on remedies).

20-05027-rbk Doc#298 Filed 03/29/24 Entered 03/29/24 13:18:01 Exhibit M-9 Pg 5 of 5

Nonetheless, the Court will impose this equitable remedy against Larry Wright for breach of fiduciary duty.

The Texas Declaratory Judgment Act provides for attorney's fees if such fees are equitable and just. TEX. CIV. PRAC. & REM. CODE § 37.009. DMA, Moore, and Longbranch were forced to seek legal remedies and equitable relief to defend their net profits interests in the ROW and they are entitled to recover reasonable and necessary attorney's fees for their efforts. DMA, Moore, and Longbranch may file a post-judgment motion for attorney's fees.

**III.**

The third issue considered by the District Court related to the Harris SWD well. The District Court was satisfied that this Court's disposition of the SWD well issues were appropriate and found no issue to revisit on remand.

**IV.**

In conclusion, as directed by the District Court, the Court will render judgment that the net profits interests of DMA and Longbranch are valid covenants running with the land. The Court will render judgment that a constructive trust be imposed on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn. Larry Wright may recover the $4,700,000 purchase price that he paid for the ROW, prior to the breaches of fiduciary duty, out of income from the ROW or the sales proceeds. After that, DMA and Longbranch will each receive 20% out of the net profits from a sale or future development income of the ROW. The Court will separately enter a Final Judgment consistent with this Opinion.

# # #