Exhibit
M-13

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ***In re:*** | § | |
| | § | **Chapter 11** |
| **KrisJenn Ranch LLC,** | § | **Case No. 20-50805-rbk** |
| | § | |
| **Debtor.** | § | |
| | § | |

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC, ET AL** | § | **Adversary No. 20-05027-RBK** |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **DMA PROPERTIES, INC, ET AL,** | § | |
| **Defendants.** | § | |

**WRIGHT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND AUTHORITY OR, ALTERNATIVELY, MOTION TO STAY**

Larry Wright ("Wright") files this *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Authority or, in the alternative, Motion to Stay* (the "Motion") the Court's consideration of the *Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims* filed by DMA Properties, Inc., Frank Daniel Moore, and Longbranch Energy, LP (collectively, "DMA") (Doc. 498) ("DMA Motion"). Wright reserves and adopts all arguments presented in his previously filed Objection to the DMA Motion (Doc. 513) ( "Objection").

## I. INTRODUCTION

This Court lacks subject-matter jurisdiction and authority to consider DMA's Motion. DMA's Motion attempts to reopen a final, affirmed judgment and to insert new state-law fraudulent-transfer claims that lie far beyond this Court's limited post-confirmation authority. The

relief DMA requests—compelling transfer of title to the Express Pipeline right-of-way ("ROW") based on alleged fiduciary breaches by Wright—would require this Court to assume jurisdiction over new, non-debtor disputes and to rewrite a judgment already upheld on appeal. The law forbids both. Each of these exceeds this Court's authority.

First, the Court's jurisdiction to modify the Final Judgment has ended, and *res judicata* prohibits any modification of it.

Second, the DMA Motion raises independent causes of action under the Texas Uniform Fraudulent Transfer Act (TUFTA)-claims that sound exclusively in state law and lie outside this Court's jurisdiction.

Because the Court lacks jurisdiction or authority to modify its final judgment or entertain new TUFTA-based claims, the DMA Motion should be dismissed or denied in its entirety.

In the alternative**,** if the Court determines that it retains any jurisdiction to act, Wright respectfully requests that the Court stay all proceedings on the DMA Motion pending resolution of the related state-court action. Issues DMA seeks to litigate are currently being adjudicated in *Express H2O Pipeline & ROW, LLC v. Westlake Chemical OpCo, L.P.*, pending in the 159th District Court of Angelina County, Texas, where the same property rights and title to the ROW are the subject of ongoing proceedings. That case—filed in reliance on this Court's prior judgment—has already produced partial summary-judgment rulings in favor of Express (Ex. A-C), with final trial set for December 1, 2025 and judgment expected by year-end. Proceeding on the DMA Motion now would risk inconsistent outcomes and interfere with the state court's authority to determine title and injunctive relief.

For these reasons, the DMA Motion should be dismissed for lack of subject-matter jurisdiction and authority, or, in the alternative, stayed pending the final judgment in Angelina County.

## II. RELEVANT BACKGROUND

1. On March 26, 2024, this Court found that Wright committed a breach of fiduciary duty to Moore only. The Court found that a loan from KrisJenn to Black Duck, using the ROW as collateral, was not disclosed or authorized by Moore. DMA could not prove damages for this breach, so it asked the Court to impose a constructive trust over the ROW in the final judgment. Doc. 330 at 4.

2. On March 26, 2024, this Court entered its Final Judgment, which: 1) found that the net-profits interest in the right of way (the "ROW") were valid and subsisting covenants running with the land; 2) imposed a constructive trust on the ROW "in the hands of Express H2O, LLC" (if the ROW was not transferred to KrisJenn); 3) ordered that Wright could recover the $4,700,000 purchase price "out of income from the ROW or the sales proceeds" and DMA and Longbranch could receive their 20% net profits from "a sale or future development income of the ROW"; 4) awarded the Defendants reasonable and necessary attorney's fees; 5) rendered judgment in favor of DMA that DMA had an ownership interest in 50% of the Bigfoot Note payments and awarded DMA $175,143.60 from funds in the Panola County court registry plus $100,000 in attorney's fees; 6) taxed court costs to KrisJenn Ranch, LLC; and 7) denied "[a]ll relief not specifically granted herein."

3. On April 9, 2024, Defendants filed their Notice of Appeal of the Final Judgment and the Opinion after Remand. Docket No. 344. The Defendants' appeal challenged, in part, this

Court leaving the property in Express H2O's hands. Appellants' Br., p. 4–13, Case No. 5:24-cv-00365 [ECF No. 6].

4. On appeal, the United States District Court for the Western District of Texas affirmed this Court's ruling, expressly rejecting DMA's argument that a constructive trust required conveyance of title. The District Court held that "the scope and application of a constructive trust is generally left to the discretion of the court imposing it," and found no reason to disturb this Court's judgment. The District Court's judgment is final. The same issues are thus precluded by *res judicata* and the law of the case.

5. DMA's present Motion seeks to compel exactly the same relief that was denied both here and on appeal — namely, forfeiture or disgorgement of Express H2O's ownership of the ROW.

6. Separately, Express H2O is presently litigating the title and ownership of the ROW in Angelina County, Texas, against trespasser Westlake Chemical OPCO, L.P. On July 21, 2025, Judge Todd Kassaw signed an Order on Motions for Summary Judgment declaring that: ". . . the Gulf Easements were first filed and are superior to the Westlake Easements; the Westlake Easements irreconcilably conflict with the Gulf Easements; the Westlake Easements must yield to the Gulf Easements; and therefore, the Westlake Easements are invalid and ineffective." The court further identified the chain of title to the Gulf Easements, tracing back through multiple conveyances from Gulf Pipe Line Company (1907–1925) to Express H2O Pipeline & ROW, LLC, thereby confirming Express H2O's ownership interest. Subsequently, on October 22, 2025, the same court entered another order clearing Express's title, including the transfer from KrisJenn to Express.

7. The trial in the 159th Judicial District Court of Angelina County, Angelina County, Texas, in the matter of Express H2O Pipeline & ROW, LLC v. Westlake Chemical OPCO, L.P. is scheduled to begin on December 1, 2025. A final judgment is expected to issue later in December 2025. Because that case will definitively determine ownership and priority of the Gulf Easements and the right-of-way at issue here, any order issued by this Court prior to that judgment risks conflict or inconsistency with the state-court determination.

## III. NO JURISDICTION OR AUTHORITY TO MODIFY THE JUDGMENT AFTER 18 MONTHS

8. The Final Judgment recognized that Express had title and did not order transfer of title from Express to Defendants. Ordering the transfer of title from Express to Defendant is a remedy of disgorgement of property interests of Express and also its 60% net profit interests, which was not mentioned or granted in the Judgment or Opinion After Remand**.** The Defendants were not awarded 100% of the net profits interest in the Final Judgment. Any effort to modify the Judgment—almost a year and a half after its entry—is too late and contrary to the law on jurisdiction and authority for at least the following reasons.

9. First, the Defendants are approximately eighteen months too late to seek any modification or amendment of the Final Judgment. Under Federal Rule of Bankruptcy Procedure 9023, any motion to alter or amend a judgment must be filed within fourteen (14) days of its entry. Defendants' Motion was filed well outside that deadline and cites no other authority permitting modification of a final judgment after that period has expired. It is therefore time-barred as a matter of law.

10. The Rules provide limited time to seek modification for good cause—precisely because parties are entitled to rely on the finality of judgments and, when an appeal is taken, to know the exact issues on review. Allowing parties to revisit the judgment after appeal and

affirmance would defeat that finality and invite endless relitigation. Additional time to modify a judgment—particularly here, nearly a year and a half later—would improperly allow Defendants to raise arguments they abandoned at trial and to reopen a record that has been closed since 2021. The law does not permit that result.

11. Second, DMA's Motion asks the Court to alter and modify the Final Judgment. The Final Judgment never ordered transfer of the title back to DMA as part of the constructive trust. The Final Judgment expressly states that Express keeps the ROW and Defendants receive proceeds from the development or sale of the ROW. Doc. 329 at 2 (20-5027). Nothing in the judgment contemplates, authorizes, or implies a reversion of title.

12. Third, the Final Judgment's constructive trust requires Express to pay Defendants their net profits interests after the ROW is developed or sold by Express. The Final Judgment does not contemplate development of the ROW by Defendants. The Court's bench ruling gives the ROW to DMA to develop or sell. There is no other way to read the Judgment's express terms to award this relief.

13. Fourth, ordering the transfer of the ROW to DMA divests Express's property rights that were secured in the Final Judgment. The Final Judgment guaranteed the owner of the ROW 60% interest in net profits for sale and development of the easement and/or pipeline. Defendants admit in their Reply Brief on appeal that they are seeking to reverse the Final Judgment to the extent that Express keeps 60% of the profits. Reply Brief, Doc. 12 at 8. There is no basis or findings of fact in the Final Judgment that Defendants should recover 100% of net profits.

14. Fifth, awarding DMA the ROW for development and sale allows it to profit far beyond any damages the Court found in the trial record. The Final Judgments does not allow the award of the value of the development and sale of the ROW to DMA.

15. Lastly, disgorgement is an entirely different remedy from the constructive trust imposed in the Final Judgment.

16. The Final Judgment is unambiguous, and it must be enforced as written, regardless of any party's subjective belief about its meaning. *Highland Hills Ltd. v. United States Dep't of Hous. and Urban Dev.*, 232 B.R. 868, 870 (N.D. Tex. 1999); *In re Munn*, 643 B.R. 141, 149 (N.D. Tex. 2022). The Court's Opinion After Remand echoed the Final Judgment ruling that the ROW stays with Express:

> The better remedy for DMA and Moore, and the one they have elected in their proposed judgment, would be an equitable remedy: Larry Wright would restore ownership of the ROW to KrisJenn, or this Court would impose a constructive trust on the ROW in the hands of Express H2O, and allow Larry Wright to recover his investment for the $4,700,000 purchase price, prior to the breaches of fiduciary duty, from a sale or development of the ROW. After Wright is able to recover $4,700,000, the two 20% net profits interests would begin receiving income from a sale or development of the ROW.

Docket No. 330 at 4. The Court concluded:

> The Court will render judgment that a constructive trust be imposed on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn. Larry Wright may recover the $4,700,000 purchase price that he paid for the ROW, prior to the breaches of fiduciary duty, out of income from the ROW or the sales proceeds. After that, DMA and Longbranch will each receive 20% out of the net profits from a sale or future development income of the ROW.

Docket No. 330 at 5.

17. There is no language in either the Final Judgment or Opinion After Remand that requires disgorgement or forfeiture of title or net profits interest from Express to Defendants. Instead, both recognize that Defendants' net profit interests would be paid while the ROW is in the hands of Express, if not transferred back to KrisJenn.

18. Notably, Defendants asked for two remedies prior to the entry of the Final Judgment: (1) disgorgement of Wright's interest—whether held directly or indirectly by one of his entities—in the ROW; and (2) a constructive trust over proceeds equal to Defendants' net profits interests. Docket No. 321 at 12, 18. The Court ultimately rejected Defendants' first request and awarded the second. Docket No. 329.

## IV. NO JURISDICTION OR AUTHORITY TO MODIFY FINAL JUDGMENT BECAUSE OF LAW OF THE CASE AND *RES JUDICATA*

19. DMA's Motion asks this Court to revisit—and effectively overturn—issues that were fully litigated and conclusively resolved by the United States District Court. That court expressly affirmed this Court's Final Judgment, which left ownership of the ROW "in the hands of Express H2O." Having been affirmed on appeal, that judgment is final, and this Court lacks jurisdiction to alter or expand it. *See Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948) (trial court must execute, not modify, appellate mandate). In short, DMA already litigated—and lost—the issue it now seeks to reopen. The Final Judgment was affirmed, the appeal concluded, and this Court's jurisdiction or authority to revisit its terms is foreclosed by both res judicata and the law of the case.

20. A mandate from the appellate court is "completely controlling as to all matters within its compass." *Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers*, 460 F.2d 105, 107 (5th Cir. 1972).

21. Likewise, under *res judicata*, a final judgment on the merits bars relitigation of the same claims or issues between the same parties. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

22. DMA's current Motion seeks precisely the relief it requested—and lost—on appeal: transfer of the ROW to DMA and Moore based on alleged fiduciary breaches. The record of that appeal leaves no doubt. In their April 9, 2024 Notice of Appeal (Dkt. 344 in Adv. No. 20-5027)

and their Appellate Brief filed in October 2024, DMA repeatedly argued that this Court erred by leaving the ROW with Wright. They urged the District Court to "reverse and render judgment … ordering that legal title to the ROW be transferred to Moore and DMA." Appellate Br. at 34. Their brief described the existing judgment as a "constructive trust in name only" that "left the property in the hands of the wrongdoer." *Id.* at 4, 13, 16, 17, 20, 22, 24).

23. Indeed, the District Court squarely addressed DMA's contentions and held that this Court's remedy—leaving the ROW with Express while imposing a profit-sharing obligation—was within its equitable discretion and consistent with Texas law. The affirmance resolved every issue DMA now repackages as "enforcement." Once the appellate court affirmed the Final Judgment, this Court's jurisdiction was exhausted as to the merits; its only remaining role is ministerial—to enforce, not to alter. *See Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 (1976); *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002).

24. The District Court explained that Texas courts do not require automatic forfeiture or conveyance of property to impose a constructive trust. Rather, "the equity of the transaction will shape the measure of relief granted." *Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 874 (Tex. 2010); *see also See In re Estate of Preston*, 346 S.W.3d 137, 165 (Tex. App.—Fort Worth 2011, no pet.). The District Court specifically concluded that this Court had "broad latitude to shape the form of equitable relief" and that leaving the ROW in Express's hands was within that discretion. Docket No. 485 at 14; *see also Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 850 (Tex. App.—Fort Worth 1982, no writ).

25. Accordingly, both doctrines—*res judicata* and law of the case—bar any attempt by DMA to re-litigate or modify that ruling. The District Court affirmed the Final Judgment in its

entirety, and DMA did not seek further review. The judgment is now final, and this Court lacks jurisdiction to disturb it.

## V. NO JURISDICTION OVER POST-CONFIRMATION AND STATE-LAW CLAIMS

### A. The Confirmed Plan Fully Vested Property in the Reorganized Debtor.

26. Under 11 U.S.C. § 1141(b), "confirmation of a plan vests all of the property of the estate in the debtor." Section 1141(c) further provides that, after confirmation, property "dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and general partners in the debtor." In this case, both the confirmed Plan and the Court's Confirmation Order explicitly revested all estate property in the reorganized debtor. *See* Plan, Art. X, § 10.02 (Docket No. 234-1 at 26).

27. Accordingly, the Express ROW became property of the reorganized debtor upon confirmation, and this Court's jurisdiction over that property terminated at that point. Any order compelling transfer of the ROW to DMA would therefore contradict the Plan's express vesting provisions and improperly alter the treatment of property and creditor rights already fixed by the confirmation process.

28. The Plan itself delineates the scope of DMA and Longbranch's rights:

> DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the Plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns.

Docket No. 211.

29. Thus, the Plan expressly limited DMA and Longbranch to the outcome of the

appellate process. Their recovery was tied to the Final Judgment, not to any subsequent or expanded ownership remedy. Seeking now to seize the ROW directly would not enforce the Plan—it would rewrite it, enriching the Defendants beyond what confirmation or appeal ever authorized.

**B. <u>The Bankruptcy Case Is Closed, and No Post-Confirmation Jurisdiction Exists.</u>**

30. The Defendants' proposed TUFTA action cannot invoke bankruptcy jurisdiction because it neither arises under Title 11 nor relates to any pending bankruptcy case.

31. As explained in pertinent part by Judge Houser in *Faulkner v. Eagle View Capital Mmgt.* (*In re Heritage Org., L.L.C.*), 454 B.R. 353 (Bankr. N.D. Tex. 2011):

> Here, the TUFTA claim is merely "related to" a case under title 11, as it would have an existence outside of bankruptcy; it is not a core proceeding, and it is related to the bankruptcy in only the most general sense — really, only by the fact that the Trustee got his judgment against the non-debtors in the bankruptcy court. The TUFTA claim will involve new and different proof, beyond that already proffered during the First Adversary Proceeding — for example, the Trustee will have to prove the elements of a claim under TUFTA as to each of the Judgment Debtors — although in the First Adversary Proceeding, the Trustee proved the elements of his TUFTA claim only as to Heritage. The Court also notes that several of the transfers challenged in the Complaint were allegedly made by an entity called "The Oak Group" — which is a stranger to the First Adversary Proceeding and thus not a Judgment Debtor by virtue of the Judgment. In *Berry v. McLemore*, 795 F.2d 452 (5th Cir. 1986), the Fifth Circuit held that a garnishment action seeking enforcement against third parties who were strangers to the underlying judgment instituted new proceedings, and the obligations of the new defendants were completely independent of the primary judgment.
>
> For these reasons, the Court concludes that it lacks post-confirmation subject matter jurisdiction over the Trustee's TUFTA claim under section 1334.

*Id.* at 366-67.

32. Similarly in the instant case, the underlying bankruptcy was confirmed and closed years ago and all assets—including any interest in the Express right-of-way—revested in the

reorganized debtor at confirmation. Once confirmation occurred, the bankruptcy estate ceased to exist, and the Court's jurisdiction narrowed to matters necessary to implement or interpret the confirmed plan.

33. A TUFTA claim asserted years later concerning property transferred after confirmation bears no connection to the administration of a bankruptcy estate. Section 541(a)(7) extends the definition of estate property only to assets "acquired by the estate" after commencement—not to property later acquired or transferred by the debtor itself. Because there is no longer an estate and no plan provision reserving jurisdiction over new post-confirmation transactions, any alleged fraudulent transfer falls entirely outside the Court's limited jurisdiction. The closing of the case formally ended that jurisdictional reach.

34. Most critically, this Court lacks jurisdiction even to grant "leave" for DMA to pursue TUFTA claims. TUFTA—the Texas Uniform Fraudulent Transfer Act—is a state-law cause of action governed by the Texas Business & Commerce Code, not by Title 11. It creates independent state-court remedies among private parties and does not arise under or depend upon the Bankruptcy Code. Bankruptcy jurisdiction does not extend to authorizing or supervising new state-law litigation between non-debtors once the estate has been fully administered. *Bank of La. v. Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388, 390 (5th Cir. 2001).

35. Nor does § 157(b)(2)(H) salvage DMA's position. That provision simply identifies "proceedings to determine, avoid, or recover fraudulent conveyances" as core matters when properly before the bankruptcy court; it does not create jurisdiction where none exists. Courts uniformly hold that post-confirmation disputes among non-debtors based solely on state-law rights are not "core" proceedings and must be pursued, if at all, in state court. The judgment between Wright and DMA already defines their respective rights, and the Plan and Confirmation Order did

not reserve jurisdiction for this Court to open new adversary proceedings against third parties or to authorize state-law suits.

36. DMA's effort to recast a TUFTA lawsuit as a continuation of the bankruptcy case is a jurisdictional fiction. The Court's authority ended with confirmation and closure of the case; it cannot now revive jurisdiction to supervise or approve new litigation arising solely under Texas law.

## VI. ALTERNATIVELY, THE COURT SHOULD STAY PROCEEDINGS PENDING THE ANGELINA COUNTY LITIGATION

### A. A Stay Is Necessary to Prevent Conflicting Outcomes between Proceedings.

37. The Court has inherent authority under *Landis v. North American Co*., 299 U.S. 248, 254 (1936), to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." That authority should be used here to stay consideration of the DMA Motion.

38. The 159th Judicial District Court of Angelina County, Texas, has now entered multiple dispositive orders in Express H2O Pipeline & ROW, LLC v. Westlake Chemical OPCO, L.P., Cause No. CV-00461-24-08, conclusively establishing Express H2O's ownership and priority in the ROW. That case—filed in reliance on this Court's Final Judgment—directly concerns title and ownership of the same ROW. Partial summary-judgment rulings have already been entered in Express's favor, and trial is scheduled for December 1, 2025, with a final judgment expected by year-end. The state court orders established that Express is the title owner of the Gulf Easements and associated ROW, and that any competing claim to ownership or title is contrary to the state court's rulings.

39. The Bankruptcy Court and the state court now have parallel proceedings involving identical property interests. If this Court proceeds to rule on DMA's Motion, including

disgorgement of the Gulf Easements, while the state court litigation is pending, two courts could reach inconsistent determinations regarding the same right-of-way. Staying this proceeding ensures comity, consistency, and judicial efficiency. Proceeding on DMA's Motion now would risk inconsistent rulings, confuse title, and interfere with the state court's adjudication of the very property rights this Court previously confirmed. To avoid duplication, inconsistency, and further procedural error, the Court should stay all proceedings on DMA's Motion until the state court issues its final judgment.

40. For these reasons, judicial economy and respect for coordinate jurisdiction strongly favor a stay of this Court's consideration of DMA's Motion until the state court's orders are final and unassailable on appeal.

**B. <u>A Stay is Necessary to Avoid Severe Prejudice to Express and Disruption of the Angelina County Litigation.</u>**

41. Ordering disgorgement of the Express ROW at this stage would not only be improper and risk inconsistent rulings, it would directly prejudice Express, a non-party, in the pending state-court action where its ownership rights are being adjudicated. The litigation has progressed substantially, with partial summary-judgment rulings already entered confirming Express's ownership and trial set for December 1, 2025. If this Court were to order disgorgement of the ROW to DMA or Longbranch, it would effectively strip the very asset at issue in the state case from the entity asserting title there, undermining the Angelina County court's jurisdiction and destroying the evidentiary and equitable foundation of that proceeding. Express would lose standing to pursue its claims, and the state court would be deprived of the ability to issue final judgment on ownership—producing inconsistent and conflicting results between the two courts.

42. This prejudice extends beyond Express. The Angelina County litigation serves the shared interests of Express, DMA, and Longbranch by seeking to clear title to the ROW and

remove the trespasser that has obstructed its development. A final judgment in that case will benefit all stakeholders by confirming title, stabilizing ownership, and allowing the asset to be monetized or sold without encumbrance. Prematurely transferring the ROW now would frustrate that outcome, perpetuate uncertainty, and reduce the value of the asset for every interested party.

43. By contrast, staying this proceeding until the state court's final judgment will ensure that ownership is resolved on a complete record and that the ROW's title is quieted once and for all. It would also prevent duplication of effort and the potential for conflicting rulings. Accordingly, to preserve comity, efficiency, and fairness to all parties—including those not before this Court—any consideration of DMA's disgorgement request should be deferred until the Angelina County case reaches final resolution.

### C. A Stay is Needed to Determine if Express Can Be Joined Before Any Order Affecting Its Property Rights.

44. The Motion seeks to divest Express of its property interest even though Express is not a party to this proceeding, has not been served, and is not identified in the Motion as an entity against whom relief is sought. It is axiomatic that a court cannot adjudicate or extinguish the property rights of a non-party through motion practice. A stay would allow the parties to further brief the Court on whether Express must and can be joined to a proceeding regarding disgorgement.

45. Indeed, it is not Wright's responsibility, nor the Court's, to devise a lawful mechanism for DMA's requested remedy. What is clear is that the current Motion—one that neither serves nor joins the party whose property DMA seeks—violates the most basic tenets of due process. Express is a necessary and indispensable party to any dispute seeking to affect its ownership rights under Federal Rule of Civil Procedure 19.

46. Divesting Express of its ownership interest without notice or opportunity to be heard would violate the Fifth Amendment's Due Process Clause, which prohibits deprivation of

property without fair notice and an opportunity to be heard. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484–85 (1988); *Bank of Marin v. England,* 385 U.S. 99, 102 (1966). As the Supreme Court made clear, "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party…." *Tulsa Professional,* 485 U.S. at 485. Express is a distinct legal entity whose property rights have been recognized in the Final Judgment and confirmed under the Fourth Amended Reorganization Plan. Any attempt to compel transfer of its assets without joinder, service, or process would be unconstitutional and void.

Such action would be unconstitutional in at least the following ways:

- The Court does not have personal jurisdiction over Express, yet disgorgement must direct *Express,* the legal titleholder, to transfer away its property.

- There has been no finding or evidence of wrongdoing by Express that would support penalizing Express. Despite the lack of a Court finding, disgorgement would divest it off its property interests and rights without a trial allowing it to be penalized.

- The ROW has monetary value, as admitted by Defendants at the prior hearing. Ex. A, 15:10-11. Any order divesting Express of that value is a deprivation of property without notice.

- Express has expended considerable time and money searching for a ROW buyer and attempting to clear title from the trespasser who removed part of the Express Pipeline. Taking away its property interest is a deprivation of property without due process or compensation.

- Defendants are also attempting to void the Fourth Amended Reorganization Plan, with which the Court approved and Express agreed to comply (Doc. 322 at 5). The Plan, which was approved by the Court, secured Express's property interests in the ROW, including its 60% net profit interest after payment to Defendants of their 40% interest.[1] The Plan also voids any liens or lis pendens filed on the Easement by Longbranch or DMA.[2] This is because the only remedy available to Defendants contemplated was a net profits interest and not ownership. A modification of the Final Judgment would void this language.

[1] Doc. 211 p 7 (20-50805).
[2] *Id.*

A stay would allow these issues to be resolved.

**D. A Stay Is Necessary Because Any Disgorgement Would Require a New Trial.**

47. Disgorgement is a distinct equitable remedy that must be specifically awarded in a final judgment after a full evidentiary hearing or trial. Even setting jurisdiction aside, DMA's request for disgorgement cannot lawfully be resolved by motion practice in a closed bankruptcy case. The requested relief would not merely "enforce" the existing Final Judgment—it would fundamentally alter it by reallocating ownership interests, disturbing vested property rights, and depriving a non-party of property without trial or evidence.

48. Due process requires notice, pleadings, and proof before such a deprivation can occur. *See* U.S. Const. amend. V; *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988); *In re Argonaut Fin. Servs., Inc.*, 164 B.R. 107, 111 (N.D. Cal. 1994). The Express ROW is a valuable commercial asset—DMA's own filings place its value at more than $10 million—and Express has invested substantial resources to market the property, prosecute trespass claims, and clear title. Any order divesting Express of that property without a trial would not only violate due process but would also create an irreconcilable conflict for Wright, who, as Express's manager, owes fiduciary duties to the company.

49. Ownership, title, and the scope of Express's rights are already being litigated in the state court proceeding. Because the requested relief of disgorgement would require a trial, and would necessarily reopen factual disputes and alter the terms of a final, affirmed judgment, this Court should exercise its inherent authority to stay further proceedings on the DMA Motion pending resolution of the Angelina County case. A stay will protect the integrity of both proceedings, avoid duplication of judicial effort, and ensure that any future adjudication occurs on a complete factual record with all necessary parties before the court.

50. On the other hand, DMA and Longbranch will suffer no prejudice from a stay. Their 20% each net-profits interest runs with the land, as recognized in the Final Judgment. Express had agreed to abide by the Plan and the orders from both courts.

## IV. CONCLUSION

For the foregoing reasons, Larry Wright respectfully requests that the Court enter an Order to:

51. Dismiss the DMA Motion for Lack of Subject-Matter Jurisdiction;

52. Hold that the doctrines of Res Judicata and Law of the Case preclude any modification or reinterpretation of the Final Judgment;

53. Reject DMA's request for disgorgement or transfer of the ROW as beyond this Court's power and inconsistent with the confirmed Plan, the Final Judgment, and the District Court's binding decision;

54. Alternatively, if the Court determines that it retains limited jurisdiction, exercise its inherent authority to stay all proceedings on DMA's Motion pending final resolution of Express H2O Pipeline & ROW, LLC v. Westlake Chemical OpCo, L.P., now pending in the 159th District Court of Angelina County, Texas, to avoid conflicting rulings, protect the interests of non-parties, and preserve judicial economy; and

55. Award Wright such other and further relief, at law or in equity, to which he may be justly entitled.

Dated: November 4, 2025

Respectfully Submitted,

**HAYWARD PLLC**

*/s/ Charlie Shelton*
Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, Texas 78757
(737) 881-7100 (Phone/Fax)
cshelton@haywardfirm.com

***Counsel for Larry Wright***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically via the court's CM/ECF system on November 4, 2025 thus effecting service on any parties requesting service thereby. The foregoing was also served via United States First Class Mail on November 4, 2025 on all persons listed below.

| | |
|---|---|
| Cobb & Johns PLLC<br>Attn: Christopher S. Johns, Michael C. Cotton<br>13341 West U.S. Highway 290, Building 2<br>Austin, TX 78737<br>Telephone: (512) 399-3150<br>Facsimile: (512 572-8005<br>chris@cobbjohns.com<br>michael@cobbjohns.com | Cleveland Krist PLLC<br>Attn: Timothy Cleveland & Austin H. Krist<br>303 Camp Croft Road, Suite 325<br>Austin, Texas 78746<br>Telephone: (512) 689-8698<br>tcleveland@clevelandkrist.com<br>akrist@clevelandkrist.com |
| Akerman LLP<br>Attn: Randall Adam Swick<br>500 W. 5th Street, Suite 1210<br>Austin TX 78701<br>Adam.swick@akerman.com | Langley & Banack<br>Attn: Natalie Wilson<br>745 East Mulberry Avenue, Suite 700<br>San Antonio, TX 78212<br>nwilson@langleybanack.com |
| JF DUKE AND ASSOCIATES<br>Attn: Jeffery Duke<br>11819 Great Oaks Drive<br>College Station, Texas 77494<br>jeff@jfduke.com<br><br>***Attorneys for Longbranch Energy, LP*** | BURNS & BLACK PLLC<br>Attn: Michael Black<br>750 Rittiman Road<br>San Antonio, Texas 78209<br>mblack@burnsandblack.com<br><br>***Attorneys for Longbranch Energy, LP*** |
| THE SMEBERG LAW FIRM, PLLC<br>Attn: Ronald J. Smeberg<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>***Counsel for Black Duck Properties, LLC*** | KrisJenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row<br>410 Spyglass Road<br>McQueeney, TX 78123 |
| Larry Wright<br>410 Spyglass Road<br>McQueeney, TX 78123 | United States Trustee<br>P.O. Box 1539<br>San Antonio, TX 78295-1539 |

*/s/ Charlie Shelton*
Charlie Shelton

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ***In re:*** | § | |
| | § | **Chapter 11** |
| **KrisJenn Ranch LLC,** | § | **Case No. 20-50805-rbk** |
| | § | |
| **Debtor.** | § | |
| | § | |

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC, ET AL** | § | **Adversary No. 20-05027-RBK** |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **DMA PROPERTIES, INC, ET AL,** | § | |
| **Defendants.** | § | |

**ORDER GRANTING WRIGHT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND AUTHORITY OR, ALTERNATIVELY, MOTION TO STAY**

CAME ON FOR CONSIDERATION the *Motion to Dismiss for Lack of Jurisdiction and Authority or, Alternatively, Motion to Stay* (the "Motion") filed by Larry Wright. The Court finding

the Motion should be granted. It is then therefore ORDERED that the Motion is GRANTED. It is further ORDERED that:

1. DMA's Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims (Docket No. 498) is dismissed for lack of subject-matter jurisdiction.

**# # # END OF ORDER # # #**

***Order Prepared By:***

**HAYWARD PLLC**

Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, Texas 78757
(737) 881-7100 (Phone/Fax)
cshelton@haywardfirm.com

Field Code Changed

***Counsel for Larry Wright***