Exhibit
M-17
exhibitsticker.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KRISJENN RANCH, LLC, ET AL, | ) | CASE NO: 20-05027-rbk |
| | ) | ADVERSARY |
| Plaintiffs, | ) | |
| | ) | San Antonio, Texas |
| vs. | ) | |
| | ) | Wednesday, February 5, 2025 |
| DMA PROPERTIES, INC, ET AL, | ) | |
| | ) | 9:59 a.m. to 10:53 a.m. |
| Defendants. | ) | |

LEAD CASE: 20-50805-rbk
KrisJenn Ranch, LLC

HEARING RE:
MOTION TO ENFORCE CONSTRUCTIVE TRUST [DKT.NO.368]

BEFORE THE HONORABLE RONALD B. KING,
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES: SEE PAGE 2

Court Reporter: Recorded

Transcribed by: Exceptional Reporting Services, Inc.
P.O. Box 8365
Corpus Christi, TX 78468
361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES:**

| | |
|---|---|
| For Plaintiffs: | CHARLES JOHN MULLER, IV, ESQ.<br>C.J. Muller & Associates<br>111 W. Sunset Rd.<br>San Antonio, TX 78209 |
| For Defendants: | WILLIAM P. GERMANY, ESQ.<br>Germany Law<br>1250 N.E. Loop 410<br>Suite 725<br>San Antonio, TX 78209 |
| | AUSTIN H. KRIST, ESQ.<br>LOURDES ORTIZ, ESQ.<br>Cleveland Krist<br>303 Camp Craft Road<br>Suite 325<br>Austin, TX 78746<br>737-900-7107 |
| | CHRISTOPHER S. JOHNS, ESQ.<br>Johns & Counsel, PLLC<br>14101 Hwy. 290 West<br>Suite 400A<br>Austin, TX 78737 |

**San Antonio, Texas; Wednesday, February 5, 2025; 9:59 a.m.**

**(Call to order)**

**THE COURT:** Good morning. This is Judge King in San Antonio. Our 10:00 o'clock case is *Krisjenn Ranch, LLC versus DMA Properties*.

Could I get announcements from those of you who intend to speak this morning?

**MR. GERMANY:** Yes, Your Honor. Good --

**MR. SPEAKER:** Your Honor, --

**MR. GERMANY:** -- morning. This is William Germany for Larry Wright.

**THE COURT:** All right.

**MR. MULLER:** Your Honor, --

**MR. KRIST:** And, Your Honor, Austin --

**MR. SPEAKER:** Try again.

**MR. MULLER:** Apologies, Your Honor. John Muller. I'm here for the Krisjenn entities. I don't intend to make argument today.

**THE COURT:** Okay.

**MR. KRIST:** And, Your Honor, Austin Krist on behalf of DMA Properties, Frank Daniel Moore, and Longbranch Energy. I'll be making argument for our side today.

We also have several other attorneys on our side here, including Chris Johns, (Inaudible) Ortiz, and (inaudible).

**THE COURT:** Okay. Anyone else?

(No audible response.)

Okay. Go ahead, Mr. Krist.

**MR. KRIST:** So, Your Honor, if I may, I -- we have a short handout that we prepared in the vane of a PowerPoint, except for it's in a Word document that I'll share if the Court will allow me to.

**THE COURT:** Okay.

**MR. GERMANY:** And, Your Honor, this is William Germany. I apologize but Mr. Muller and I are actually here at the courthouse and so we cannot see that. But I'm sure it won't -- we're not going to object to it.

**THE COURT:** Okay. We'll describe it if you want us to as it goes.

**MR. GERMANY:** I'll just listen to Mr. Krist's argument. Thank you, Your Honor.

**THE COURT:** Okay.

**MR. GERMANY:** And we are way overdressed for this phone conference.

**THE COURT:** Okay.

**MR. KRIST:** And, Mr. Germany, I can assure you the things that are in the handout are really just a summary of what I'll be presenting here today, so there shouldn't be anything that you're not already hearing.

So, Your Honor, to start, in the final judgment in

this case, the Court awarded the following relief to my clients, DMA Properties, Frank Daniel Moore, and Longbranch Energy.

First, the Court entered a declaratory judgment that DMA and Longbranch have 20 percent net profits interest that are valid covenants running with the right-of-way. That's not in dispute. It's not really an issue that we're here to raise today.

Second, the Court found that Larry Wright breached fiduciary duties owed to Mr. Moore in connection with Mr. Wright's schemes to gain control of the right-of-way in the first place.

On that basis the Court awarded DMA and Moore a constructive trust over the right-of-way as an equitable remedy for breach of fiduciary duty. That's relevant here -- well, actually let me back up.

So, Your Honor, that's relevant for multiple reasons, including that Mr. Wright previously transferred the right-of-way to another entity that he controlled, Express H2O, while this proceeding was pending.

And as you might recall, in its final judgment the Court ordered that it was imposing a constructive trust on the right-of-way in the hands of Express H2O if Mr. Wright did not transfer the right-of-way back to Krisjenn.

And then, third, Your Honor, the Court awarded DMA,

Moore, and Longbranch their attorneys' fees. I understand that Mr. Germany had an objection to us raising that issue today because we added it in an amended motion.

And so we're not going to be pressing that here today if Mr. Germany is continuing to object.

But the motion for constructive trust is fully briefed, and that's the primary issue that we have here. And so, Your Honor, --

**MR. GERMANY:** Sorry. I am continuing with my objection. They filed an amended motion on Monday evening, Your Honor.

**MR. KRIST:** And so, --

**THE COURT:** Okay.

**MR. KRIST:** -- Your Honor, because Mr. Germany's objecting to the request for substitute service and I guess is not prepared to address it, we've agreed that we won't proceed on that issue and we'll just be moving forward on the constructive trust issues that are fully briefed in the response.

**THE COURT:** The substituted service, was that the only thing you added to the amended motion?

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** Okay. Go ahead.

**MR. KRIST:** And so, Your Honor, we're centered on the constructive trust here today.

And at bottom, the basic reason that we are here before the Court is because Mr. Wright has made no attempt to comply with this Court's final judgment in any way, including with respect to the constructive trust.

So moving on to the meat of our argument here, under the final judgment, as I mentioned, the Court ordered that DMA and Moore shall recover a constructive trust on the right-of-way as a remedy for Wright's breaches of fiduciary duty. That's on page two of the judgment, Your Honor.

And the Court then further explained in its opinion accompanying the final judgment that unless Mr. Wright transferred the right-of-way back from Express H2O to Krisjenn, the Court would impose a constructive trust on the right-of-way which would allow Larry Wright to recover his investment for the $4.7 million purchase price prior to the breaches of fiduciary duty.

And the Court didn't award anything else to Mr. Wright.

Now, Your Honor might remember that at the last hearing before entry of the final judgment Defendants' counsel Mr. Muller represented to this Court that Defendants would in fact transfer the right-of-way back to Krisjenn.

Well, that never happened, and we know that for two reasons. First, Defendants served post-judgment discovery requests which revealed that the right-of-way was not

transferred back to any of the Krisjenn entities.

Second, we learned a couple weeks ago that not only did Mr. Wright refuse to transfer the right-of-way back to Krisjenn, in violation of this Court's order and in violation of the Chapter 11 plan, but on top of that Express H2O, which continues to hold the right-of-way, is now out there filing lawsuits against third parties and claiming that Express H2O is the rightful owner of the right-of-way.

And that's problematic for a whole host of reasons. Number one, because Express H2O is not the lawful owner of the right-of-way in light of this Court's order imposing a constructive trust.

And, number two, because Express H2O is not -- excuse me. Number two, because Express H2O is out there engaging in litigation and taking positions as to the scope and rights under the right-of-way, that could seriously prejudice my clients.

I'm going to scroll ahead in our handout here, Your Honor, because I realize I skipped a page.

Now, Your Honor, with that context in mind, the reason we are here before the Court today is because we are asking this Court to enforce the constructive trust that it imposed under the final judgment for Mr. Wright's fiduciary breaches by ordering Mr. Wright to transfer the right-of-way to DMA and Mr. Moore.

Now, in his response, Mr. Wright argues that this Court can't require him to transfer title to DMA and Mr. Moore because, according to Mr. Wright, we weren't granted that relief in the final judgment.

And to be blunt, Your Honor, that's wrong. And it misunderstands what a constructive trust is under Texas law.

Under Texas law, a constructive trust is an equitable remedy that subjects the person holding title to property to an equitable duty to convey it to another.

That language is from In Re Gouge (phonetic), which is a Southern District of Texas bankruptcy case from 2008 that we cited in our briefing.

And the Texas Supreme Court has likewise reiterated the same principle and affirmed that when a court imposes a constructive trust on real property, the effect of the constructive trust is to create an equitable duty on the party holding the property to convey it.

That's from *Tally v. Howsley*, which is another Texas Supreme Court case that we've cited in our briefing.

And, Your Honor, the reason that a constructive trust requires transfer of title is because under Texas law, fiduciaries who have breached their duties, like Mr. Wright, are not allowed to keep the fruits of their malfeasance.

That's from *ERI Consulting*, a Texas Supreme Court case from 2010 which again we've cited in our briefing.

And concomitantly, when a fiduciary acquires legal title to property in violation of a fiduciary relationship, the imposition of a constructive trust subjects the breaching fiduciary to an equitable duty to convey the property.

And that's exactly the situation that we are in here. In this case, the Court expressly found that Mr. Wright obtained control of the right-of-way through breaches of fiduciary duties that he owed to Mr. Moore.

And in its final judgment, the Court explicitly imposed a constructive trust on the right-of-way as a remedy for those breaches of fiduciary duty.

Under that constructive trust, Mr. Wright gets to recover a first monies obligation of 4.7 million from any sale or monetization of the right-of-way. And we're not disputing that.

But what he can't recover are profits or amounts in excess of that contribution because, as I mentioned, Texas law does not allow fiduciaries to profit from breaches of their fiduciary duties.

And here, Mr. Wright obtained control of the right-of-way in the first place by breaching fiduciary duties that he owed to Mr. Moore.

And, Your Honor, that's what this Court's final judgment ordered. It ordered that it was imposing a constructive trust that would allow Larry Wright to recover his

investment for the $4.7 million purchase price and nothing more.

And, finally, Your Honor --

**THE COURT:** Doesn't he get 60 percent after the 40 percent held by Moore and Borders?

**MR. KRIST:** Well, Your Honor, I believe that the answer to that question is no because under Texas law, Mr. Wright cannot profit from his breaches of fiduciary duty.

And we don't dispute that Mr. Wright would get back the money that he paid in, the 4.9 million or, excuse me, 4.7 million. And so he would be made whole under the constructive trust. And it was within Your Honor's discretion to craft equitable relief in that way.

But under Texas law and under the Texas Supreme Court's case *ERI Consulting*, what Mr. Wright cannot do is he cannot then recover additional 60 percent profits on top of getting paid back because he only obtained that interest in the right-of-way through his breaches of fiduciary duty in the first place.

**THE COURT:** What does the judgment provide?

**MR. KRIST:** Your Honor, the judgment provides -- it says: as to DMA and Moore's claim for breach of fiduciary duty against Wright regarding the unauthorized Black Duck loan, the Court renders judgment that DMA and Moore recover a constructive trust on the right-of-way in the hands of Express

$H_2O$.

And, Your Honor, we believe that that constructive trust was the correct remedy here because Mr. Wright obtained the right-of-way through his breaches of fiduciary duty. And it is the remedy that this Court ordered for breach of fiduciary duty.

And under Texas law, the effect of that constructive trust, which has already been awarded in the Court's final judgment, is to subject Mr. Wright to an equitable duty to convey the property to DMA and Mr. Moore, subject to the first monies obligation that Your Honor ordered, because that's what a constructive trust is under Texas law.

And we think that issue is clear, Your Honor. The reason that we're here today is because Mr. Wright has made no effort to comply with the Court's judgment. He has not effectuated a transfer pursuant to the constructive trust.

And he didn't even transfer the right-of-way back to Krisjenn as this Court originally requested in light of his breaches of the Chapter 11 plan.

And, Your Honor, finally just to wrap up, in terms of equities here, fundamentally Mr. Wright has not been -- excuse me, has not proven that he can be trusted with the right-of-way or that he is the appropriate steward to monetize that.

As I mentioned, he originally got control through his breaches of fiduciary duty. And he subsequently attempted to

transfer the right-of-way to this other entity, Express H2O, in violation of the Chapter 11 plan in an attempt to evade this Court's judgment.

He didn't honor his lawyer's representations that it would be transferred back to Krisjenn. And now he's litigating with third parties claiming that Express H2O is the owner of the right-of-way, in spite of the constructive trust, which risks seriously prejudicing my clients' rights.

And, in sum, we're respectfully asking the Court to enforce the constructive trust it awarded by ordering Mr. Wright to transfer the right-of-way to DMA and Mr. Moore, subject to that $4.7 million first monies obligation because that is what Texas law requires under the judgment entered by this Court.

Your Honor, at this point, if you have further questions I'm happy to answer them. Otherwise I'm happy to cede the --

**THE COURT:** Yeah.

**MR. KRIST:** -- floor to Mr. Germany.

**THE COURT:** I have three questions. What's the status of the appeal? I saw that an appeal was filed and some appeals were consolidated by Judge Xavier Rodriguez.

**MR. KRIST:** Yes, Your Honor. So the appeal is still pending. We have filed our affirmative briefing. The Defendants have filed their responsive briefing. They, to the

best of my knowledge, have not filed any affirmative brief laying out their own arguments (inaudible) --

**THE COURT:** Well, is the appeal filed by your side, by DMA and Moore and so forth?

**MR. KRIST:** Your Honor, both sides filed a notice of appeal but only my side filed a substantive brief urging arguments for reversal --

**THE COURT:** Okay.

**MR. KRIST:** -- or action by the appellate court.

**THE COURT:** Okay. And you don't know anything about when that might come out, the -- Judge Rodriguez hasn't scheduled an oral argument or anything like that.

**MR. KRIST:** I don't believe so, Your Honor. I believe that the reply brief is due in the next week or two here.

**THE COURT:** Okay. And they --

**MR. KRIST:** Although --

**THE COURT:** -- he may just do it on the papers obviously. He may not schedule argument.

**MR. KRIST:** That's correct, Your Honor.

And one other issue I'll note in connection with the appeal is that the fact that the appeal's pending does not affect this Court's ancillary and continuing jurisdiction to enforce its judgment.

There's plenty of Fifth Circuit law that says that

the district court retains jurisdiction to enforce its judgment.

And what we're asking for here is for the Court to enforce the constructive trust that it has already awarded. And that should not interfere with the appellate court's jurisdiction or this Court's jurisdiction in any way.

**THE COURT:** Okay. This is kind of outside the record and so I'm not going to base any decision on this. But does the right-of-way still have value?

**MR. KRIST:** Your Honor, absolutely we believe that the right-of-way has value.

And in the Express H2O Pipeline petition that I mentioned we recently became aware of where Mr. Wright is filing lawsuits claiming to own the right-of-way through Express H2O, he even mentions that in 2023 he was engaged in discussions attempting to sell it with John Terrill, who you might remember from the trial.

So, yes, within the last two years Mr. Wright has been out there trying to monetize the right-of-way.

And on top of that he's filing lawsuits claiming to own the right-of-way, seeking money from third parties for allegedly violating Express H2O's rights with respect to the right-of-way which, as I mentioned, is problematic and we believe improper.

**THE COURT:** Do you know if in -- as a part of those

negotiations he's disclosing the interest of DMA, Borders, and Moore?

**MR. KRIST:** Your Honor, my impression is that he is not. It is not mentioned in the petition.

The Defendants in that case learned of this case filing I believe through the public record and reached out to us about it. And the best of my knowledge, at that point they were not aware of any interest.

I'm not -- candidly, I'm not sure that that would be an issue affecting them because in that litigation that the net profits interest wouldn't strictly speaking be germane to the claims that were brought.

So I have no reason to believe that Mr. Wright is disclosing my clients' net profits interests in any of his conversations with third parties about this right-of-way.

**THE COURT:** So you're concerned that it's a repeat of what happened in the prior sale that was rescinded, that he's not disclosing the 20 and 20 percent net profits interests?

**MR. KRIST:** Well, Your Honor, I'd say that we have really three concerns.

Number one, yes, we're concerned that Mr. Wright is not disclosing my clients' net profits interests.

Number two, we believe that Mr. Wright shouldn't be in a position to go out there and use Express H2O to try and monetize this right-of-way and then get amounts over the first

monies obligation imposed by this Court because of the constructive trust.

And we believe that the constructive trust requires transfer of title to our clients under Texas law because, again, that's what a constructive trust is.

The third issue that I would say that we have is that because my clients have these net profits interests and because of Mr. Wright's continued and documented malfeasance and in my view wrongful actions, he's just not an appropriate steward for this right-of-way.

He's not going to be able to monetize it. He shouldn't be allowed to monetize it for his own profit in light of his fiduciary breaches.

And we believe that the judgment imposed by this Court requires transfer of title to the right-of-way to our clients, subject to that first monies obligation.

**THE COURT:** And who's your client? Is it DMA and Mr. Borders individually or Mr. Moore or who is it?

**MR. KRIST:** Your Honor, I represent Frank Daniel Moore individually, DMA Properties, and then Longbranch Energy. I don't represent Mr. Borders in his individual capacity.

But the request for the constructive trust specifically concerns really Mr. Moore and DMA Properties, to the extent that he's the full owner of that entity, because the breaches of fiduciary duty were breaches of fiduciary duty that

Mr. Wright owed to Mr. Moore, not to Mr. Borders.

**THE COURT:** Well, which person or entity owns the 20 percent; either Mr. Moore or DMA?

**MR. KRIST:** Your Honor, my understanding, and Mr. Johns can correct me if I'm wrong because I'm a little rusty on this issue, but my understanding is that the net profits interest was transferred and owned by DMA Properties.

It originally belonged to Mr. Moore but was subsequently transferred.

**THE COURT:** And then Borders is not represented today, but his 20 percent was owned by Longbranch.

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** Is he active in the appeal or is he just sort of in the background?

**MR. KRIST:** He is active in the appeal to the extent that Longbranch Energy is one of the appealing parties and he is represented by our side and by Mr. Johns.

**THE COURT:** Now, does Mr. Johns also represent Moore and DMA or just Longbranch?

**MR. KRIST:** All three, Your Honor.

**THE COURT:** All three. And you represent all three, Mr. Krist?

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** Oh, okay. And then the Express lawsuits, I mean, you're saying that Mr. Wright is negotiating with

people and that is about a purchase of the right-of-way. And you're saying that that's resulted in some lawsuits; what, for specific performance or damages or what?

**MR. KRIST:** My understanding, Your Honor, is that Mr. Wright's filed a petition against somebody else claiming that their actions or asserted property interest infringe on the right-of-way. And so he's now engaged in litigation as to the scope and validity of the right-of-way.

And obviously, to the extent that those issues are determined adverse to Mr. Wright with respect to the right-of-way, that would prejudice my clients.

**THE COURT:** Is it one --

**MR. KRIST:** The --

**THE COURT:** -- lawsuit or more than one lawsuit?

**MR. KRIST:** I am only aware of one lawsuit at --

**THE COURT:** Okay.

**MR. KRIST:** -- this time.

**THE COURT:** Where is that pending, what county?

**MR. KRIST:** Your Honor, --

**THE COURT:** Do you know?

**MR. KRIST:** -- Mr. Germany or Mr. Muller might be able to better speak to that. I believe it's pending in the eastern -- excuse me, it's pending in eastern Texas where the right-of-way is located.

**THE COURT:** Okay.

**MR. KRIST:** Off the top of my head I don't remember the specific county. But I'm sure that I could pull up the petition (inaudible) --

**THE COURT:** Like Nacogdoches or Angelina or something like that?

**MR. KRIST:** Yes, that's correct, Your Honor.

**THE COURT:** Okay. So what you're asking for today is to compel Krisjenn and/or Mr. Wright to transfer the right-of-way from Express H2O to DMA and Longbranch; is that right?

**MR. KRIST:** Really it would be DMA and Mr. Moore, Your Honor. They're -- Mr. Moore is a hundred percent owner of DMA.

We would be seeking to have this Court order Mr. Wright to transfer title pursuant to the constructive trust because this Court's final judgment imposed a constructive trust on the right-of-way as a remedy for breach of fiduciary duty in the hands of Express H2O.

**THE COURT:** Okay. And wasn't it DMA and Longbranch?

**MR. KRIST:** Your Honor, the breaches of fiduciary duty were specifically respect to -- Longbranch has a 20 percent interest pursuant to --

**THE COURT:** Right.

**MR. KRIST:** -- a different contract that it entered. But that does not implicate the constructive trust or breaches of fiduciary duty.

Your Honor, at this point, unless Your Honor has further questions, I'm happy to cede the floor to Mr. Germany and respond to the -- whatever arguments he has.

**THE COURT:** Okay. Mr. Germany.

**MR. GERMANY:** Yes, Your Honor. Actually Mr. Muller is well-versed on some of these issues that need to be addressed and he will address the Court on some of the factual background and the pending lawsuit.

**THE COURT:** Okay.

**MR. MULLER:** Yes, Your Honor. Yes, I don't want to interfere with Mr. Germany's argument which he's well-prepared for.

I just would like to correct the record on four discreet issues which came up during the trial and I think the Court is well aware of.

But a representation made was made that there was no evidence that Mr. Wright has attempted to comply with the Court's constructive trust issue. And I don't believe that to be true.

If you will recall, there is -- there's a bankruptcy plan in place which is, you know, a contract between the parties allowing the row to be sold free and clear.

One of the issues there was, of course, that the Krisjenn name had been shown in a poor light during the trial, and there were very few prospective buyers.

So Mr. Wright had transferred the row into a new entity in the hopes of cleaning up and marketing the property, which is exactly he was supposed to do.

When it was reported to the Court in the sanctions motion that that was inappropriate, I told the Court that we would be glad to move it back.

I don't -- I didn't handle those transfers and I'm not handling those transfers. But we did tell the attorneys who had made that transfer, just put it right back in Krisjenn.

Too much time had passed and the Krisjenn name was no longer available. And so pretrial we once again reported that we could not put it into the Krisjenn name.

However, H2O stood ready to stand in the shoes of Krisjenn and would comply with not only the Court's orders but the bankruptcy plan to its full extent.

And that issue was heard and litigated at trial on remand; keeping in mind that that's not a proper remand issue. Those were not facts and issues that happened at trial. They were not part of the record and they were not remanded.

It was almost like a sanctions motion that was a kind of an issue addressed on the side.

I think the Court appropriate and wisely ruled that the -- although we could not return the title to Krisjenn, that an -- the constructive trust would be imposed on H2O in the hands of Larry Wright as manager to make sure that when the row

was sold and monetized, that the proceeds of sale would be distributed as the Court ordered in its constructive trust, the first I believe 4.7 to Mr. Wright, the remaining at a 60, 20, 20 rate.

Mr. Wright is aware of that order; again, by and through me confirms his intent to comply with that order. There has been no sale. And if there is a sale, I can assure the Court that that will be exactly how we proceed.

I will say that to the extent we've now come back on an order to readdress that issue, I would say that we are *res judicata* in trying the case.

I also want to address the issue of fruits of his malfeasance and that the Court had somehow ruled that Larry's breach of fiduciary duty was in -- accomplished by wrongfully transferring the row.

And that's not true. And I think everyone knows that that's not true. And that is not in the record.

Privity was a very expensive issue argued in this case. It is undeniably true and, in fact, part of closing argument that privity of the row went from (inaudible) originally named Express into Krisjenn, and then to TCRG, which was an entity owned by Bobby Wright, and then into Krisjenn.

There was no proof and no allegation that Krisjenn had wrongfully foreclosed upon the row and taken it by that way, the fruits of their malfeasance as it were said.

20-05027-rbk Doc#380 Filed 02/08/25 Entered 02/08/25 07:33:11 Main Document Pg 24 of 48



That issue had to do with the Bigfoot note. It was addressed on summary judgment. That was what was foreclosed upon. It was the note and the note only.

And the Court ordered that, you know, that those funds be released from I believe the Shelby County court, and attorneys' fees be paid. And all of that happened.

But as to the breach of fiduciary duty, the only findings and holding there was that Mr. Wright had breached his fiduciary duty in not properly presenting in a proposing alone agreement, which was collateralized by the row.

But that collateral was never foreclosed, there was no transfer. And so to be clear, not only did Mr. Moore and Mr. Wright never own -- I'm sorry, Mr. Moore and Mr. Borders never own the row, but their deals insisted that they not. They wanted only silent net profits interest.

They wanted only upside. They did not want the expense and trouble of holding and owning these rows. And so, again, there was no -- absolutely no finding that the row was transferred wrongfully as a breach of fiduciary duty.

My third point I would like to make is there's this -- you know, in prior proceedings it has been alleged that Mr. Wright is a bad owner of the row. He is the owner of the row.

There was no claim -- there was 33 counterclaims; none for trespass to try title, none for quiet title. They --

these gentlemen never wanted to own the row. They wanted -- they want the fruits of owning it but they don't want the expense and trouble of it.

And so the -- I'm sorry, can I look at my notes here?

I'm -- the issue about -- that came up previously was that Mr. Wright was a poor owner of the row because he didn't do things to take care of it, to be a good steward. Like, for instance, filing lawsuits for infringement and encroachment up on the row and trying to recover for damage to the row.

Now Mr. Wright has gone out and done that. Again, I'm not -- that's being handled by Houston lawyers. There's a bunch of them, there's like 30 of them. It's pending in Atascosa. It's a big lawsuit.

**THE COURT:** A bunch of --

**MR. MULLER:** It's not (inaudible) --

**THE COURT:** -- lawyers or a bunch of parties?

**MR. MULLER:** I'm sorry, there's two, three parties. I believe it is -- again, I'm not on pleadings there, Your Honor, but I have spoken to these lawyers. There's many of them. It is Express H2O as a party plaintiff against an entity named Westlake.

Westlake is a pipeline company that moves Olefins through east Texas. Their pipeline crosses over the row, encroaches up on the row, and it is damaging to the row.

And so as a good owner and steward of the property,

when Mr. Wright figured that out, he filed this lawsuit. And, you know, it's very expensive and very time consuming.

In the past, we have been accused of being poor stewards of the row for not filing these lawsuits. Now we -- the lawsuit's been filed and we're a poor steward of the row for filing these lawsuits.

And I want to say -- point something out. And this is really important and dangerous. You saw this in the TCRG case where Larry did go out and he made a productive deal that would have made everyone a lot of money. I think $10,000 a day would have gone to Borders and Moore.

And they came in and said, no, he's a fraudster, he's a bad guy, coming back with this fraud thing. And the deal's unwound and it's lost.

Contemporaneously with the filing of this very motion before this Court, magically and miraculously the attorneys for Westlake have filed a similar motion on their side.

Their motion says that the case must be dismissed for want of jurisdiction because H2O doesn't really own the low -- row; because the row was transferred with this constructive trust imposed upon its proceeds, that therefore means that there is no title and standing for the plaintiff to assert the claim.

That would result not only in the lawsuit being dismissed but forever lost because limitations would have

already passed.

So if -- what the movants are trying to prove today would once again cost millions of dollars of damages to the row and, therefore, and they're shooting themselves in the foot on their own interest to collect on the row.

But in closing -- and, again, I don't want to get into argument, but those are the factual statements I know for the Court. I don't believe the constructive trust has -- implicates title.

I think when Mr. Wright says to the court in Atascosa I, H2O, owns the row, he's telling the truth. And I think he would be sanctioned and troubled if he said otherwise.

I don't know if they have disclosed the constructive trust or not. It's not a secret. I mean, I think if they were required to, they absolutely would. But I don't know if they have. I don't know if anyone's asked.

And factually that's all I have. I'm sorry if I went too long. I'll pass to Germany.

**MR. GERMANY:** Your Honor, --

**THE COURT:** Go ahead.

**MR. GERMANY:** Sorry. Yeah, he covered a lot of my points, Your Honor. I was just going to get to the meat of the issue here on the constructive trust.

Legally the constructive trust is just a creature of this judgment, and that is all it is, as I briefed the Court

on, Your Honor.

They are trying to alter the final judgment. As Mr. Muller mentioned, this is *res judicata* at this point. They're trying to alter and have terms put into the trust that just do not exist.

And the factual basis and background that Mr. Muller refreshed the Court's memory of go to exactly what we are trying to prevent from happening, and Mr. Wright is trying to prevent from happening, and that is hurting the row and its future value.

And at this point, even that aside, Your Honor, the issues -- they've not done anything, and that is DMA has not shown anything to this Court to show that he has violated any of the terms of the constructive trust and paragraphs two and three of the final judgment.

It simply says he has to hold it in trust, which he is doing. He is also pursuing those claims in east Texas to hopefully increase the value of the row and protect it and preserve it.

All he has to do at a given point in time is if it is sold or monetized, he gets the first $4.7 million. It's simple. That's the first part of the trust.

And then after that there's a split of the net profits interest. It is clearly and explicitly spelled out in the judgment.

None of those events have happened. The post-judgment discovery has not even touched upon that or even asked about that to my knowledge.

Maybe they have asked Krisjenn, but Krisjenn is a defunct company. It is not there. There is nothing there to receive profits. That would be through Larry Wright, Your Honor, and Express H2O.

He just cannot offload this whole row and then get away with it. It's sitting there out in east Texas. And he -- all he has to do on that is account for any net profits or any income to it. And he gets the first 4.7 million, and then after that they split 60, 20, 20.

**THE COURT:** Well, I don't think --

**MR. SPEAKER:** And that --

**THE COURT:** -- the judgment mentions the 60. I mean, I agree with the 20, 20, but where does it say the 60?

**MR. GERMANY:** It does not, Your Honor. But it's implied. And it says, after that, DMA and Longbranch will each receive 20 out of the net profits from the sale of future development of the row.

And so there would have to be somebody else there that would receive the 60 percent. And I would say that would be the then current owner, whether it's H2O or if it's been sold, wherever that 60 percent interest went.

**MR. MULLER:** If I may add, Your Honor, --

**THE COURT:** Why is it --

**MR. MULLER:** -- just one more --

**THE COURT:** -- pending in Atascosa County, just out of curiosity, the lawsuit?

**MR. GERMANY:** I think the encroachment of the row, if you'll remember, Your Honor, crosses four counties. And I think that Westlake's portion -- Westlake's Pipeline crosses the portion of the row that is in Atascosa. And so I think that the (inaudible) --

**THE COURT:** Well, I mean, the row is in east Texas. Atascosa's probably --

**MR. MULLER:** (Inaudible) --

**THE COURT:** -- hundred and fifty miles away.

**MR. GERMANY:** I'm misspeaking then. I am misspeaking. It is the southernmost county that begins with an "A." I cannot remember what it is but --

**THE COURT:** Oh.

**MR. GERMANY:** -- they filed it (inaudible) --

**THE COURT:** Angelina maybe.

**MR. GERMANY:** Angelina, yeah. I think it's mandatory jurisdiction in that county because that's where the --

**THE COURT:** Okay.

**MR. GERMANY:** -- (inaudible) is. I would --

**THE COURT:** Okay.

**MR. GERMANY:** -- like to add one jurisdictional point

I think hasn't been brought up yet, is we did not -- yes, we got reversed by the district court. It was heard on remand and entered. We didn't -- we filed a notice of appeal. We did not pursue that appeal.

The appeal -- the only appeal that's pending is on breach of fiduciary duty. And the argument being made there -- and correct me if I'm wrong, Mr. Krist -- but is that your constructive trust is inappropriate because you didn't award, among other things, title, that you should have given a more relief, equitable relief than what you did.

You should have also given them title, even though it wasn't pled for or any evidence was presented.

And now that same issue's being raised at the trial court again. I would think jurisdictionally that issue is now before the district court or the Fifth Circuit, wherever that's at. Sam Houston and Greta McFarland are handling that part of the case.

But I don't think we can try that issue in two different courts at the same time.

**THE COURT:** Well, the appeal's pending in U.S. District Court in San Antonio. I don't know of anything in the Fifth Circuit.

**MR. GERMANY:** Well, I think that's right. It hasn't made its way to the Fifth Circuit yet. But I think the appellate briefing says the constructive trust is erroneous and

that title is not granted.

**MR. KRIST:** Your Honor, if I may.

**THE COURT:** Yeah, go ahead.

**MR. KRIST:** So I'll start with the last point raised by I think that was Mr. Muller. You know, he just suggested that the appeal concerns this constructive trust issue and that, therefore, this Court doesn't have jurisdiction. I don't believe that's accurate, Your Honor.

The -- number one, this Court has jurisdiction to enforce its final judgment, notwithstanding the appeal. And we've cited to ample law on that in our brief and previously in our argument.

The issue with the appeal is, candidly, we believe that the constructive trust shouldn't have even provided Mr. Wright with an option to transfer the right-of-way back to Krisjenn because we believe the constructive trust should apply regardless of whether he transferred it back to Krisjenn because he cannot profit from his fiduciary breaches.

At this point that's really beside the point because there's no dispute that Mr. Wright failed to transfer it back.

And on top of that, the Court's final judgment did award the constructive trust on the right-of-way in the hands of Express H2O.

There's no dispute that the right-of-way still remains in the hands of Express H2O. And there's nothing

barring this Court from enforcing the constructive trust.

Number two, I believe it was suggested that the constructive trust is just for proceeds of any sale to be distributed. And, Your Honor, the Defendants haven't put forward any law to that effect.

The law in Texas is to the contrary very clear that a constructive trust is an equitable device that requires transfer of title. That's what it is. And they can't claim it's something else in contravention of this Court's order, and try and insert additional terms that just aren't there.

But the Court did order a constructive trust. And under Texas law, that does require a transfer of title.

Number three, Your Honor, I believe Mr. Muller suggested that Mr. Wright has complied with this Court's order. I'm not aware of any way in which Mr. Wright has complied with this Court's order.

Defendants have done nothing to satisfy the judgment on attorneys' fees for $750,000.

We believe that Mr. Wright is evading service of the writ of execution that we've been attempting to serve on that point.

And then on top of that, as Your Honor already knows, he's made no attempt to transfer the right-of-way back to Krisjenn. He didn't timely do so. And the right-of-way still remains in the hands of Express H2O.

Fourth, Your Honor, it was suggested a minute ago that there's no evidence that Krisjenn wrongfully foreclosed and that the foreclosure related to -- just to the Bigfoot note. That's simply not true, Your Honor.

The way that Mr. Wright got control of the right-of-way in the first place is he entered a conflicted loan transaction with Krisjenn, his own entity, without disclosing it.

And this Court found that that unauthorized loan transaction allowed Mr. Wright to obtain control of the right-of-way by foreclosing on it. And that leads us to where we are today. There's -- there is simply no basis for saying that there's no evidence of wrongful foreclosure.

And I believe that that's a misstatement of the facts of the case and this Court's findings where the Court did explicitly find that there were breaches of fiduciary duty and that Mr. Wright had entered this conflicted loan transaction in breach of those fiduciary duties.

Finally, Your Honor, we're not trying to alter the final judgment or add additional terms.

We're just asking the Court to enforce the constructive trust that it has already awarded because under Texas law, constructive trust means one thing. It means an equitable duty to convey title. And that's what we're asking for here.

Mr. Wright could have complied with the Court's order by transferring title, or he could have complied, as the Court allowed, by transferring it to Krisjenn. He did neither.

And as a result, this Court's final judgment requires transfer of the right-of-way pursuant to that equitable duty under the constructive trust.

I have one final point to rise, Your Honor. It was also suggested that my clients don't want to own the right-of-way and that imposition of a constructive trust would cost millions of dollars in damages. That's -- none of those things are true.

My clients are seeking title to the right-of-way pursuant to the constructive trust. That's why we're here today. The whole reason for this case is because Mr. Wright engaged in breaches of fiduciary duty to gain sole control of the right-of-way from my clients.

And there is no evidence or basis for saying that imposition of a constructive trust would cost millions of dollars in damages. To the contrary, it would put the right-of-way in the hands of the people to whom it rightfully belongs, in light of Mr. Wright's fiduciary breaches.

And it would actually increase the ability of the parties to actually monetize this thing, and for Mr. Wright to get his money back on his first monies obligation.

**THE COURT:** Okay (inaudible) --

**MR. KRIST:** And so --

**THE COURT:** I was just looking at the docket sheet for the appeal in U.S. District Court. And I see that Krisjenn has filed their appellees brief. So are they still a active -- an active corporation or LLC?

**MR. GERMANY:** It's an appellant to the briefing. I don't know if they're still active or not. I think that that name has already been lost and has been taken by someone else. That's my understanding.

**THE COURT:** I mean, seriously, somebody else took the name Krisjenn and so you couldn't get it.

**MR. GERMANY:** I don't know, Your Honor. You know, after I spoke to you, I said, put it back. He wanted to. He spoke with the lawyers who transferred it. And they were unable to accomplish that, and that's why we returned to you.

There was a motion for sanctions before trial. I -- you know, I objected to it being tried as -- at the same time as the remand on trial, but nevertheless reported to you and reported to -- or reported to the Court -- because I had previously told you we would transfer it back.

And that was absolutely my, you know, legal advice and my intent. But he was unable to do so.

And for whatever reason, the corporate attorneys who handled that could not put the -- reform the Krisjenn entity. And so it stayed in the hands of this new entity.

But as I stated at trial and will reaffirm now, I have -- my client assures me that it will -- that he will comply with the Court's order and follow the constructive trust.

I don't think this idea that Mr. Wright got control of the row by breaching a fiduciary true is not truthful.

He got sole control when they said, we don't want control, we want net profits interest only, we want (inaudible) and interest, and we don't want to share in the downside, so if you lose then million, we don't want to pay five.

We only want upside on a silent net profits interest. And so by contract they didn't want to have ownership and control. The fiduciary issues have nothing to do with that.

But, yes, Your Honor, I think you make a good point. I think the appellate is in the name of Krisjenn. My understanding is that he could not reform it to take title and possession to the row.

And if you need further evidence and affirmation of that, I will gladly present it and provide it to the Court.

**THE COURT:** Okay. So, Mr. Krist, what about the argument that the lawsuit, if there's a transfer of the right-of-way back to either Krisjenn or let's say DMA, that the lawsuit would end up being dismissed and limitations would bar relief in that instance; do you know anything about that?

**MR. KRIST:** Your Honor, I would be speaking to some

degree out of turn. But I believe that --

**THE COURT:** Yeah.

**MR. KRIST:** -- to the extent the right-of-way is transferred back pursuant to the constructive trust, my clients would have standing to intervene in that lawsuit and they would be able to steward it on that basis.

I don't believe that, and I'm not aware of, a statute of limitations argument that would result in millions of dollars in damages. And at the end of --

**THE COURT:** So basically try to slip into the shoes of Krisjenn or Express H2O as plaintiff.

**MR. KRIST:** That's correct, Your Honor. We would seek to substitute as the proper party that actually owns the right-of-way. And I believe that would be sufficient to get around any statute of limitations arguments, to the extent there are any. And I don't know that there are.

**THE COURT:** Okay. So -- and I realize you said you're withdrawing the request to have substituted service. But, I mean, shouldn't that be fairly noncontroversial?

I mean, if somebody's evading service, you can tack it onto their front door under State rules. And, you know, we can sort of adopt State rules. I mean, does he still live --

**MR. KRIST:** Well, --

**THE COURT:** -- in the same place or do you know, out at McQueeney?

**MR. KRIST:** Your Honor, to the best of my knowledge Mr. Wright and/or Krisjenn have two houses around the corner from each other still out there.

**THE COURT:** At Lake McQueeney?

**MR. KRIST:** I believe so, yes, Your Honor. And one of those addresses is actually -- the 410 Spyglass address is actually registered street address with the Texas Secretary of State for Express H2O.

**THE COURT:** Okay.

**MR. KRIST:** And so -- and as far --

**THE COURT:** Well let me ask --

**MR. KRIST:** -- as we can tell from the --

**THE COURT:** -- Mr. Germany. Mr. Germany, I mean, isn't substituted service contemplated when you can't find somebody to serve?

**MR. GERMANY:** I'll answer, Your Honor, only because I had this pending -- same issue pending before you in the State (phonetic) versus Amarillo National Corp. case which is -- has -- it's with an action on debt.

Yes, there is a Rule 106 under State law. But he could easily come back and ask for substitute service. Those rules and proceedings relate to service of process, not service of a writ of execution; a writ of execution of course being an order from the Court to the Marshals service to go seize upon assets.

The way that is accomplished and served is that the DMA and Longbranch would file an application with your Court. I believe Your Honor's clerk would then send notice to the Marshal's service, and then the Marshal's service would then execute on the writ of execution.

In other words, you don't serve a writ of execution on Larry, you serve it on the Marshal.

And so I really -- again, this is part of the amended briefing that was filed late last night. But I don't understand -- first of all, I don't understand there's no -- why there's a need for substitute (inaudible).

But, also, why are they trying to execute on Larry Wright? They did not take a monetary judgment against Larry Wright. The only relief as stated at the beginning of this case against Larry Wright individually was a constructive trust on the row in his hands as by and through H2O.

**MR. KRIST:** Your Honor, just briefly, that's not correct.

The Court awarded attorneys' fees to DMA, Mr. Moore, and Longbranch, and then subsequently entered an order determining those attorneys' fees and awarding them specifically against Mr. Wright in connection with his breaches of contract, the declaratory claims, and --

**THE COURT:** Yeah.

**MR. KRIST:** -- the breach of fiduciary duty claims

which were premised on the contract.

**THE COURT:** Yeah.

**MR. KRIST:** Number two, Your Honor, the reason that we amended our motion to add these service issues is because we did think that it was fairly uncontroversial. You're correct that this Court has latitude to authorize --

**THE COURT:** Well, --

**MR. KRIST:** -- substitute service under Texas law.

**THE COURT:** -- yeah. And so I'm not going to rule on the substituted service today. But let me just tell a little story.

Back when I had the El Paso docket in the late eighties, one of the bankruptcy attorneys had a judgment against a guy that lived in a gated subdivision in El Paso area.

And they sent out the Marshals to serve a writ of execution on a judgment. And the people at the gate would say, oh, no, well he's not there, and so they were basically rebuffed.

And so they went back out in response to another order and actually went to the house, and the man's wife answered the door. And they said, you mind if we search the house. And she said, no.

Well, they found him in a closet and so they arrested him. And it was late on a Friday so he got to spend the

weekend in jail until Monday morning when his lawyer could ask for basically a writ of habeas corpus to get him out.

So the only reason I'm telling you that is we're not going to tolerate people playing games. So if the writ of execution needs to be served, it will be served. And we'll do whatever it takes.

And if it takes taking Mr. Wright in by force and in chains, we can do that. And, you know, we're happy to do that if he needs a ride down to the courthouse.

And we'll have a hearing. We'll give him a hearing on it. But we're not going to have people playing games with us on serving writs of execution, okay?

And I don't know if he has any assets or not. He may not. He may be judgment-proof, and if he is, he is. But we're not going to have people evading service of process when they -- we know where they live and they're just playing games with us.

So if he wants to spend a little time in the pokey, you know, so be it. So that's just --

**MR. SPEAKER:** (Inaudible)

**THE COURT:** -- a warning for the future.

**MR. SPEAKER:** Yes. And, Your Honor, I will admonish my client on that. But he is not playing games. The -- he has moved into a new home. And, you know, they haven't even reached out to us and asked us for that new --

**THE COURT:** On Spyglass?

**MR. GERMANY:** -- address. But it's public record.

**THE COURT:** On Spyglass or somewhere else?

**MR. SPEAKER:** No.

**MR. SPEAKER:** To be --

**MR. SPEAKER:** It's a different home, Your Honor.

**MR. SPEAKER:** To be clear, as a product of this lawsuit, he's lost everything. And so I think the representation that he has two homes on McQueeney is false. He had --

**THE COURT:** Well, you know, I don't know.

**MR. SPEAKER:** -- to sell his (inaudible) --

**THE COURT:** I just remember his address being on --

**MR. SPEAKER:** Yeah.

**THE COURT:** -- Spyglass, and that's at Lake Queeney.

**MR. SPEAKER:** (Inaudible)

**THE COURT:** That's all I know.

**MR. SPEAKER:** Yeah. He had to sell his home --

**THE COURT:** That's all I know.

**MR. SPEAKER:** -- and he had to sell his ranch. He sold everything and now he lives in a smaller house in the same neighborhood.

**THE COURT:** Okay.

**MR. SPEAKER:** And, Your Honor, --

**THE COURT:** (Inaudible) is a homestead and it's

exempt, etcetera. I understand.

**MR. GERMANY:** And, Your Honor, one other aspect about the final judgment I think that's being misrepresented to the Court, the final judgment in paragraph four is the only one that awards attorneys' fees, other than the ones that were in correspondence with the note for (inaudible) --

**THE COURT:** Well there's a supplemental order on attorneys' fees.

**MR. KRIST:** That's correct, Your Honor.

**MR. GERMANY:** (Inaudible) supplemental order, Your Honor, under 7054, which is, you know, a non-jurisdictional aspect of it. And they raised that issue for the first time on the Monday briefing or amended motion.

And, Your Honor, in that one they don't conform with what the final judgment says and just the order on attorneys' fees because the order is quite clear, Your Honor.

And we're going to file a motion with the Court to correct this, but it's under -- paragraph four is the only new attorneys' fees awarded, and that's for Krisjenn on the dec. action. That's it.

So it's the declaratory judgment action. And they are -- the Court awards attorneys' fees to DMA against Krisjenn.

**MR. KRIST:** Your Honor, --

**MR. SPEAKER:** (Inaudible)

**THE COURT:** (Inaudible) it says against Wright. On the third paragraph on page two of that order, that order is document number 353 in this adversary proceeding.

And if you look at the second full paragraph, it says $750,000 against Wright, Krisjenn Ranch, LLC, and the other two Krisjenn entities.

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** So take a look at that after we get off. You know, take a look at that. The -- so we're not going to decide that today because it hasn't been raised enough in advance.

But, okay, so what else? Anything else, Mr. Krist?

**MR. KRIST:** Your Honor, you have further questions about the constructive trust arguments, I don't believe so.

**THE COURT:** Okay. Mr. Germany or Mr. Muller.

**MR. GERMANY:** Nothing further, Your Honor.

**THE COURT:** Okay.

**MR. MULLER:** Not from me, Your Honor.

**THE COURT:** All right. I think we need the property transferred to DMA. So there is a constructive trust on it.

I'm not sure that Mr. Wright is doing everything that's in the best interests of DMA, Moore, Longbranch, and Borders because DMA owns a 20 percent profits interest that the district court has told us runs with the land.

I'm not sure that Mr. Wright is protecting that. He

might be. But he's been ordered to transfer the property back to Krisjenn.

And we've heard this morning from the attorneys that they were unable to do that for whatever reason. I find it a little hard to believe that somebody else came in and grabbed the Krisjenn Ranch, LLC name and that it's not available. But, I mean, that could be true.

But in any event, it needs to come to DMA. So I'm going to direct Mr. Wright, Express H2O, Krisjenn Ranch, LLC, all the entities to take steps to transfer the right-of-way to DMA.

And then DMA takes it subject to the obligation to pay Mr. Wright the first $4.7 million in the event of sale or other monetization.

And after that obviously the 20 percent of DMA and Longbranch or Mr. Borders, whichever is appropriate, will continue as a charge against the land, a covenant running with the land.

So, Mr. Krist, will you prepare an order to that effect?

**MR. KRIST:** Yes, we will, Your Honor.

**THE COURT:** Okay. And let Mr. Germany and Mr. Muller see it before you submit it. And if there's any disagreement about the form of the order, they can email Deanna Castleberry.

And, you know, if you want to prepare your own form,

you can send it to Ms. Castleberry and I'll look at all of them. But I hope that it won't be controversial, the form of the order. Okay. So --

**MR. KRIST:** Understood, Your Honor.

**THE COURT:** -- order to come from Mr. Krist. The motion's granted.

**MR. SPEAKER:** Thank you, Your Honor.

**MR. KRIST:** Thank you, Your Honor.

**MR. GERMANY:** Thank you, Your Honor.

**THE COURT:** All right, gentlemen, --

**MR. GERMANY:** Are we excused?

**THE COURT:** Yes, sir. Feel free to drop off. We'll be in recess.

**(This proceeding was adjourned at 10:53 a.m.)**

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Toni Hudson (signature)

**February 7, 2025**

**Signed** **Dated**

***TONI HUDSON, TRANSCRIBER***