**SPLIT, LEAD−JTADMIN, REOPEN, APPEAL, CONVERTED**

# U.S. Bankruptcy Court
# Western District of Texas (San Antonio)
# Bankruptcy Petition #: 20−50805−rbk

*Assigned to:* Bankruptcy Judge Ronald B King
Chapter 7
Previous chapter 11
Original chapter 11
Voluntary
Asset

*Date filed:* 04/27/2020
*Date converted:* 09/29/2026
*Date reopened:* 05/22/2026
*341 meeting:* 11/18/2026
*Deadline for filing claims:* 01/21/2027
*Deadline for objecting to discharge:* 01/04/2027

*Debtor disposition:* Discharge Not Applicable

***Debtor***
**KrisJenn Ranch, LLC**
410 Spyglass Rd
McQueeney, TX 78123−3418
GUADALUPE−TX
Tax ID / EIN: 74−2840947
***dba* KrisJenn Ranch, LLC, Series Uvalde Ranch, KrisJenn Ranch, LLC, Series Pipeline Row**

represented by **KrisJenn Ranch, LLC**
PRO SE

**Charles John Muller, IV**
Chamberlain Hrdlicka White Williams & Au
111 W Sunset Rd
San Antonio, TX 78209
210−664−5000
Email: john.muller@cjma.law
*TERMINATED: 06/04/2026*

**Ronald J Smeberg**
(See above for address)
*TERMINATED: 06/04/2026*

**Ronald J. Smeberg**
(See above for address)
*TERMINATED: 06/04/2026*

***Trustee***
**Christy L Heimer**
PO Box 140193
Austin, TX 78714
512−291−7105

represented by **Jay Ong**
Munsch Hardt Kopf & Harr, P.C.
1717 West 6th St #250
Austin, TX 78703
(512) 391−6100
Fax : (512) 391−6149
Email: jong@munsch.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 02/03/2022 | | 211 | Fourth Amended Substantively Consolidated Plan of Reorganization filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC. (Smeberg, Ronald) (related document(s): 206 KrisJenn Ranch, LLC KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row's Third Amended Substantively Consolidated Plan of Reorganization filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC. (Smeberg, Ronald) (related document(s): 154 Second Amended Chapter 11 Plan filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC.) Modified on 1/18/2022.) |

| | | | |
|---|---|---|---|
| 02/03/2022 | | 212 | Fourth Amended Joint Disclosure Statement filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC. (Smeberg, Ronald) (related document(s): 211 Fourth Amended Chapter 11 Plan filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC. (Smeberg, Ronald) (related document(s): 206 KrisJenn Ranch, LLC KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row's Third Amended Substantively Consolidated Plan of Reorganization filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC. (Smeberg, Ronald) (related document(s): 154 Second Amended Chapter 11 Plan filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC.) Modified on 1/18/2022.)) |
| 02/28/2022 | | 234 | Order Confirming Fourth Amended Substantively Consolidated Plan of Reorganization (related document(s): 211 Fourth Amended Substantively Consolidated Plan of Reorganization filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC). **Application for Final Decree due by 8/29/2022.** (Order entered on 2/28/2022) (Luna, Emilio) |
| 04/01/2022 | | 243 | Motion for Entry of Final Decree Closing Cases *(21−Day Objection Language)* filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC (Attachments: # 1 Proposed Order)(Smeberg, Ronald) |
| 04/20/2022 | | 244 | Chapter 11 Monthly Operating Report for the Month Ending: 03/31/2022 filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC. (Smeberg, Ronald) |
| 05/22/2026 | | 257 | Order to Charles John Muller, IV, Ronald J. Smeberg and Krisjenn Ranch, LLC. to Appear and Show Cause why this case should not be converted from chapter 11 to chapter 7 for cause, including, but not limited to, 11 U.S.C. § 1112(b). **Show Cause Hearing set for 6/11/2026 at 10:00 AM at https://www.zoomgov.com/my/king.txwb via Zoom or Call 669−254−5252 Meeting ID: 161 6636 6756** (Order entered on 5/22/2026) (Castleberry, Deanna) |
| 05/22/2026 | | 258 | Order Reopening Case (Order entered on 5/22/2026) (Hardage, Bridget) |
| 07/21/2026 | | 293 | Response Filed by Herbert C Shelton II for Interested Party Larry Wright (Attachments: # 1 Exhibit A) (Shelton, Herbert) (related document(s): 257 Order to Charles John Muller, IV, Ronald J. Smeberg and Krisjenn Ranch, LLC. to Appear and Show Cause why this case should not be converted from chapter 11 to chapter 7 for cause, including, but not limited to, 11 U.S.C. § 1112(b). **Show Cause Hearing set for 6/11/2026 at 10:00 AM at https://www.zoomgov.com/my/king.txwb via Zoom or Call 669−254−5252 Meeting ID: 161 6636 6756** (Order entered on 5/22/2026)) |
| 09/29/2026 | | 301 | Order Converting Case to Chapter 7. (related document(s): 257 Order to Charles John Muller, IV, Ronald J. Smeberg and Krisjenn Ranch, LLC. to Appear and Show Cause why this case should not be converted from chapter 11 to chapter 7 for cause, including, but not limited to, 11 U.S.C. § 1112(b). **Show Cause Hearing set for 6/11/2026 at 10:00 AM at https://www.zoomgov.com/my/king.txwb via Zoom or Call 669−254−5252 Meeting ID: 161 6636 6756** (Order entered on 5/22/2026)) (Order entered on 9/29/2026) (Jamjoo, Holly) |
| 10/05/2026 | | 307 | 341 Meeting of Creditors **Set For 11/4/2026 at 01:00 PM via Zoom − Heimer: Meeting ID 2712506827, Passcode 1208385126, OR call 915−245−4499; Objections to Dischargeability due by 1/4/2027** (Jamjoo, Holly) |

| | | | |
|---|---|---|---|
| 10/05/2026 | | 308 | Transcript regarding Hearing Held 9/29/26 THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 01/4/2027. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Transcriber Access Transcripts, Telephone number (855) 873−2223. − NAME OF PURCHASER: Mark S. Finkelstein. Notice of Intent to Request Redaction Deadline Due By 10/13/2026. Redaction Request Due By10/26/2026. Redacted Transcript Submission Due By 11/5/2026. Transcript access will be restricted through 01/4/2027. (Watson, Ilene) |
| 10/12/2026 | | 314 | Notice of Appeal and Statement of Election filed by Herbert C Shelton IIfor Interested Party Larry Wright. (Attachments: # 1 Exhibit A)(Shelton, Herbert) (Related Document(s): 301 Order Converting Case to Chapter 7. (related document(s): 257 Order to Charles John Muller, IV, Ronald J. Smeberg and Krisjenn Ranch, LLC. to Appear and Show Cause why this case should not be converted from chapter 11 to chapter 7 for cause, including, but not limited to, 11 U.S.C. § 1112(b). **Show Cause Hearing set for 6/11/2026 at 10:00 AM at https://www.zoomgov.com/my/king.txwb via Zoom or Call 669−254−5252 Meeting ID: 161 6636 6756** (Order entered on 5/22/2026)) (Order entered on 9/29/2026)) |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S FOURTH AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION**

## ARTICLE I
## SUMMARY AND SUBSTANTIVE CONSOLIDATION

1.01 Summary

This Fourth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to substantively consolidate all three Debtors into KrisJenn Ranch, LLC to pay creditors of KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") from the sale of real property and/or pipeline rights.

This Plan generally differs from the Third Amended Plan in that it further clarifies the affect of the appeal pending in the adversary regarding rights in the Express Pipeline, which is defined in the Disclosure Statement. See the redlined plan attached to the Fourth Amended Disclosure Statement for additional Changes.

This Plan provides for paying real estate taxes, administrative claims, one secured class for the Mcleod Oil debt, and 100% of the unsecured debt.

All creditors and equity security holders should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Generally, the plan provides as follows.

Debtors shall pay their secured creditor, Mcleod Oil, from the sales proceeds of the Uvalde Ranch.

Except as otherwise stated, Debtors shall pay select governmental claims in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date. The Debtors may prepay these

claims in full in the Debtors' business judgment. Debtors shall pay remaining governmental claims upon confirmation.

DMA and Frank Daniel Moore debts related to the "Bigfoot Note" will be paid in full on the effective date.

Debtors shall pay allowed general unsecured claims in full on the effective date.

The remaining DMA, Frank Daniel Moore, and Longbranch Energy claims are all generally disallowed pursuant to the adversary case order in 20-05027 subject to the pending appeal as provided for below.

Equity holders shall all retain their interests as they existed prior to the bankruptcy case filing.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

1.02 Substantive Consolidation

The Plan substantially consolidates the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC. The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC. As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect. Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

20-50805-rbk Doc#319 Filed 01/13/22 Entered 01/13/22 15:12:31 20-50805 Pg 3 of 20

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC. KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01. Class 1. | Secured Claim of McLeod Oil, LLC | Y | Yes |
| 2.02. Class 2. | Claims Of DMA and Frank Daniel Moore | N | No |
| 2.03. Class 3. | DMA and Longbranch Energy, LP Joint Claims | N | No |
| 2.04. Class 4. | Longbranch Energy, LP Claims | N | No |
| 2.07. Class 5. | General Unsecured Claims | Y | Yes |
| 2.09. Class 6. | General Unsecured Administrative Convenience Claims | N | No |
| 2.10. Class 7. | General Unsecured Larry Wright Insider Claim | N | No |
| 2.11. Class 8. | Equity Holders | N | No |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, AND PRIORITY TAX CLAIMS

3.01. Professional Fees and U.S. Trustee Fees.

Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment. These claims do not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may

not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $32,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $230,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

Reorganized Debtors shall pay all accrued U.S. Trustee fees on the Effective Date and continue paying all U.S. Trustee fees as required by 1129(a)(12) until an order is entered closing the case.

3.02. Government Claims.

3.02.1. Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service: The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims. If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

3.02.2. Secured Taxing Authority Claims

a. Uvalde County Tax Office. The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805. However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch. The claim was previously paid in conjunction with sale of the Ranch. To the extent any amount remains, it will be paid on the Effective Date. Uvalde County Tax Office shall retain all its liens until paid.

c. Nacogdoches County filed a claim for $354.60 in case number 20-51083. The claim shall be paid in full at confirmation. Nacogdoches County shall

retain all its liens until paid. This claim shall be paid in full on the Effective Date.

d. Angelina County filed a claim for $2536.82 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. Angelina County shall retain all its liens until paid. This claim shall be paid in full on the Effective Date.

e. Shelby County filed a claim for $357.88 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. The claim shall be paid in full on the Effective Date. Shelby County shall retain all its liens until paid.

f. Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtors. Each separate payment which will be applied pro rata to the various tax accounts indicated above. In the event Debtors sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtors shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. Debtors may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time. The Debtors shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan. The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtors' counsel advising of that default, and providing the Debtors with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay

post-petition and/or post-confirmation taxes while the Debtors are still paying any pre-petition debt, shall be considered an event of default. A Debtors shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

**Class 1 Claims**:

Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases. Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103. The majority of this claim was satisfied upon sale of the Ranch. Debtor has agreed to settle this claim for $385,000[1]. The Claim shall be paid on the Effective Date in accordance with the Parties' settlement agreement to be filed with the Court.

Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein.

Mcleod will vote on the plans as an impaired creditor.

**Class 2 Claims:**

Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA"). Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027 claims related to Bigfoot Energy. The Court awarded damages and attorney's fees with a remaining balance of $54,471.85. The DMA claim in class 2 shall be paid on the Effective Date. DMA and Frank Daniel Moore are unimpaired and will not vote on the plan.

**Class 3 Claims:**

Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"). Claim 7 in 20-50805.

DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these

[1] Larry Wright and Gwen Wright are also parties to the settlement transferring 165 acres of their personal mineral rights as consideration.

claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.

To the extent Longbranch or DMA have filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 3 is unimpaired and does not vote on the plans.

**Class 4 Claims:**

Class 4 are the claims of Longbranch Energy, LP ("Longbranch"). Claim 4 in 20-51083 and Claim 8 in 20-51084.

Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

Longbranch is currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. This appeal will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, Longbranch is ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by Longbranch.

To the extent Longbranch has filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 4 is unimpaired and does not vote on the plans.

**Class 5 Claims:**

Class 5 is the impaired general unsecured creditor claims. This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945. The Class 5 claims shall be paid their allowed claim within 120 days of the effective date without interest. Cedillo shall vote on the plan.

**Class 6 Claims:**

Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less. These claims were all scheduled in Case 20-50805, but none of the creditors filed claims in any of the Debtors' cases. The claimants are as follows:

1. C & W Fuels - $1.00
2. Granstaff Gaedke & Edgmon PC - $1.00
3. Hopper's Soft Water Service - $100.00
4. Medina Electric - $1.00
5. Texas Farm Store - $1.00
6. Uvalco Supply - $1.00

The Class 6 claims shall be paid in full on the Effective Date. They are unimpaired and shall not vote on the plan.

**Class 7 Claims:**

Class 7 claim is the general unsecured claim of insider Larry Wright. This claim was scheduled in Case 20-50805 in the amount of $648,209. Additionally, Larry Wright loaned $129,446 to the Company. Finally, Larry Wright contributed 165 acres of mineral rights valued at $1000.00 per acre to the settlement with Mcleod oil to all allow the Debtor to retain cash needed to pay administrative expenses.

The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims and except in regard to the mineral acres contributed by Larry Wright to the settlement with McCleod. The $165,000 in mineral rights shall be reimbursed to Larry Wright on the Effective Date provided there are sufficient funds to pay all other claims due on the Effective Date, to pay any estimated administrative claims likely to come due until the case is closed, and to pay the Class

5 claims. The remainder of the Class 7 Claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date. The claim is deemed unimpaired and shall not vote on the plan.

**Class 8 Claims:**

Class 8 claims are the claims of Debtors' equity holders. The equity holders shall retain their membership/ownership interest in each respective Debtors as that membership/ownership existed prior to the bankruptcy filing.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated. **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for in the Disclosure Statement or herein.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order or otherwise provided herein.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment. Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed in the Disclosure Statement. The Debtors reserve the right to have the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

Retention of Jurisdiction

Under sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a) determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date

(b) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(c) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

(d) hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(e) hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any Litigation Claims, or otherwise to collect or recover on account of any Litigation Claim

(f) issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(g) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(h) hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(i) enforce all orders, judgments, injunctions, releases, exculpations, and rulings entered in connection with the Chapter 11 Cases;

(j) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; (k) hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

(k) enter a final decree closing the Chapter 11 Case.

Interests Retained by the Debtors

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors. Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or as indicated below. Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.

Unless the time to file a claim for rejections damages is specifically limited herein or by other court order, rejections damages must be filed no later than 30 days after the effective date of the plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 Continued Corporate Existence. The Debtors shall continue to exist after the Effective Date as their respective Texas entities, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02 Advance Payment of Claims. Provided Debtors stay current on all payments to creditors pursuant to the Plan, Debtors may make advance payments on claims in Debtors' business judgment discretion.

7.03 Payments due under the plan shall come from the remaining Uvalde Ranch proceeds, then monetization of the Pipeline ROW, and then sale of the Thunder Rock Holdings.

**ARTICLE VIII**
**GENERAL PROVISIONS**

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1 Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an “administrative expense” within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtors’ estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtors under title 28 of the United States Code

8.01.2 Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3 Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4 Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date

8.01.5 Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtors' Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6 Bankruptcy Estate or Estates shall mean all of the assets owned by the Debtors and their respective estates.

8.01.7 Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8 Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9 Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10 Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

8.01.11 Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12 Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13 Creditor shall mean any entity holding a Claim.

8.01.14 Debtors shall mean **KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row**

8.01.15 Disbursing Agent shall mean KrisJenn Ranch, LLC.

8.01.16 Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

8.01.17 Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.18 Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.19 Effective Date shall mean fifteen (15) days after entry of a Final Order confirming Debtors' plan of reorganization.

8.01.20 Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.21 Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

8.01.22 Filing Date shall mean the date Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.23 Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.24 General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.25 Holder shall mean the owner or Holder of any Claim or Interest.

8.01.26 Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.27 Insider has the definition ascribed to it under the Bankruptcy Code.

8.01.28 Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.29 Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit. The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit. Compromises of Avoidance Actions may include cash or benefits to the Debtors or Reorganized Debtors and are not Net Proceeds.

8.01.30 Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.31 Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.32 Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.33 Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.34 Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.35 Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtors has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.01.39 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.01.40 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE AND EFFECT OF CONFIRMATION

9.01 Legally Binding Effect. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors. **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A. No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B. Affiliate Injunction. A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein. Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default. Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

9.02 Injunction and Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have

held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

9.03 Limited Protection of Certain Parties in Interest. Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

9.04 Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant

against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

## ARTICLE X
## OTHER PROVISIONS

### DEFAULT

10.01. Default. Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to three (3) notices of default for each calendar year. On the fourth (4th) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

10.02. Vesting of Estate Property and Effect of Default. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in KrisJenn Ranch, LLC, Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor comply with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in KrisJenn Ranch, LLC and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

Respectfully submitted,

BY: <u>*/s/ Larry Wright*</u>
Name: Larry Wright, Manager, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC Series Uvalde Ranch, KrisJenn Ranch, LLC Series Pipeline Row.

THE SMEBERG LAW FIRM, PLLC

BY:<u>*/s/ Ronald J. Smeberg*</u>
Ronald J. Smeberg
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | **§** | **CHAPTER 11** |
| | **§** | |
| **KRISJENN RANCH, LLC** | **§** | **CASE NO. 20-50805-rbk** |
| | **§** | |
| | **§** | |
| **DEBTOR** | **§** | **(Jointly Administered)** |

**DEBTORS' FOURTH AMENDED JOINT DISCLOSURE STATEMENT TO FOURTH AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION**

## INTRODUCTION

KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") file this Debtors' Fourth Amended Joint Disclosure Statement to their Fourth Amended Substantively Consolidated Plan of Reorganization.

On April 27, 2020 (the "Petition Date"), Debtors filed a voluntary Petition under Chapter 11 of the U.S. Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate as Debtors in Possession pursuant to the provisions of sections 1107 and 1108 of the Bankruptcy Code.

This Fourth Amended Disclosure Statement to Substantively Consolidated Plan of Reorganization (hereinafter "Disclosure Statement") has been prepared by the Debtors pursuant to Section 1125 of the Bankruptcy Code, which requires that creditors receive a written disclosure statement containing sufficient information about the Debtors to enable creditors to make an informed and intelligent decision regarding the Debtors' Substantively Consolidated Plan of Reorganization (hereinafter "***Plan***" or "***Plans***"). Prior to the solicitation of your vote on the Plan, and as required by the Bankruptcy Code, the Bankruptcy Court has approved this Disclosure Statement as containing adequate information about the Debtors.

In addition to this Disclosure Statement and accompanying Plan, you will also receive an order of the Court setting the hearing on the confirmation of the Plan and establishing deadlines for casting your vote or filing objections to confirmation. Mailing instructions are included in your Ballot. YOUR VOTE IS IMPORTANT. In order for each Plan to be accepted, at least two-thirds (2/3s) in amount and one-half (1/2) in number of the voting creditors in each class must affirmatively vote for each respective Plan. Even if all classes of claims accept the Plan of a particular Debtor, the Bankruptcy Court may refuse to confirm the Plan for that Debtor. Among other things, Section 1129 requires that the Plan be in the best interests of the creditors and other parties in interest, and generally requires that the holders of the claims not receive less than would otherwise be realized if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In appropriate circumstances, the Bankruptcy Court may confirm a Plan even though less than all of the classes of claims accept the Plan. The circumstances warranting confirmation notwithstanding the vote of a dissenting class or classes of creditors are set forth in Section 1129(b) of the Bankruptcy Code. Except as otherwise provided in the Plan, the Order of Confirmation, or Section 1141(d), confirmation of the Plan will discharge the Debtor from all of its debts. Confirmation makes the Plan binding on the Debtor and all of its creditors, regardless of whether or not they have accepted the Plan.

The Plan proposes to substantially consolidate the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC as further discussed below. The plan shall serve as a motion for the substantive consolidation.

<u>The Debtors</u>

1. General

KrisJenn Ranch, LLC is a Texas limited liability company with two series. The first series is KrisJenn Ranch, LLC Series Uvalde Ranch ("Series Uvalde) and the second is KrisJenn Ranch, LLC Series Pipeline Row ("Series Pipeline"). Series Pipeline owns a pipeline and right of way (respectively, the "Pipeline" and "ROW" and collectively the "Express Pipeline"). Additionally, Series Uvalde owns the KrisJenn Ranch (the "Ranch") located at 6048 CR 365, Uvalde, Texas 78801. The Express Pipeline and the Ranch were each encumbered by a $5.9 million loan from Mcleod Oil ("Mcleod") related to an investment in a pipeline and its right of way.

Mcleod claims the Debtors defaulted on the loan in February 2020. Debtors filed a voluntary Petition under Chapter 11 of the U.S. Bankruptcy Code on April 27, 2020.

The ownership and rights in the Express Pipeline were hotly disputed, causing the Debtors to file Adversary Case Number 20-05027 to determine the rights in the Express Pipeline immediately after filing the bankruptcy case. DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch") countersued Debtors in the adversary seeking monetary damages related to the Express Pipeline and a declaration of their rights in the Express Pipeline. DMA also sought a declaration that it had a 50% interest in a promissory note owned by KrisJenn Ranch, LLC (the "Bigfoot Note"). Daniel Moore joined the case as a third-party plaintiff seeking breach of fiduciary duty damages against Larry Wright who was added as a third-party defendant. Subsequent to the adversary filing, DMA and Borders filed an Amended Motion to Sever or Dismiss on April 29, 2020, seeking to split the joint filing into three separate bankruptcy filings. The motion to sever was granted on June 5, 2020—splitting the joint bankruptcy filing into the three separate cases.

After a several-day bench trial, the Court made numerous findings related to the claims. In its final judgment, the Court awarded Debtors declaratory relief regarding the net-profit interests and classifying Longbranch, and DMA's Assignment Agreements in the Express Pipeline as

personal covenants. The Court rendered Moore would take nothing regarding his breach of fiduciary duty claim against Wright. The court granted DMA a declaratory judgment in an ownership interest in 50% of the Bigfoot Note payments, as well as $175,143.60 from the court registry plus attorney's fees if DMA tendered the proper requests. Subsequently the Court awarded $100,000 in attorney fees to DMA. The Court's ruling on these issues are under appeal. There are enough funds in the Court's registry to pay all but approximately $47,000 of the amount owed to DMA.

On or about September 9, 2021, KrisJenn Ranch, LLC Series Uvalde Ranch sold the ranch and all cattle and FF&E in the sale for $7.45 million. After costs of sale, property taxes, and paying Mcleod Oil $6.43 million, the funds remaining in the estate were $893,938. Of this amount, Mcleod Oil contended it was entitled to approximately $750,000. Debtors contended Mcleod Oil was owed at most $100,000. The Parties agreed to settle the dispute for $385,000 paid from Debtors and 165 acres of mineral rights paid from Larry Wright which will be further outlined in a to be filed motion with the Court to approve the agreement.

Debtors' remaining assets are as follows:

Krisjenn Ranch, LLC

1) Thunder Rock Holdings - $699,000

Krisjenn Ranch, LLC Series Uvalde Ranch

1) $893,938

Krisjenn Ranch, LLC Series Pipeline ROW

1) Pipeline ROW $6,000,000

The Plan Proponents

The Debtors are the Plan Proponents in this case.

The Disclosure Statement

Pursuant to Section 1125(b) of the Bankruptcy Code (Title 11 of the United States Code, hereinafter referenced as 11 U.S.C. section number), a precondition to solicitation of acceptances and rejections of a Plan of Reorganization from holders of claims or interests in the bankruptcy estate is that the holders be furnished with a copy of the Plan or a summary of the Plan and a written Disclosure Statement which contains "adequate information".

"Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably

> practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed Plan.

11 U.S.C. 1125(a)(1).

Whether or not a disclosure statement contains adequate information is determined by the Court upon notice and hearing. 11 U.S.C. § 1125(b). All parties in interest may participate in this determination. After the disclosure statement is approved by the Court, a hearing will be set on confirmation of the Plan and a Plan package which includes copies of the Order Approving Disclosure Statement, Plan, this Disclosure Statement and Ballot will be sent to the parties entitled to vote on the Plan.

Chapter 11

Chapter 11 is a portion of the Bankruptcy Code which provides a business with protection from their creditors while it seeks to reorganize their business affairs, including the repayment of their debts. The terms of the proposed reorganization are embodied in a Plan of Reorganization. While the Bankruptcy Code gives the Debtors many aids in the reorganization of their financial affairs, these aids are balanced with rights and protections afforded to creditors. Confirmation of a Plan of Reorganization is the objective of the Debtors in a Chapter 11 Reorganization Case. Performance of the confirmed Plan is the objective of the Debtors. The Plan is the terms by which the claims against and interests of the Debtors are satisfied.

The Process of Confirmation

1. Hearing on Confirmation. Confirmation of a Plan is simply approval by the Court. This approval is sought by the Plan proponent at the hearing on confirmation. In order to obtain approval of the Court, the Plan proponent must show that the Plan meets all requirements for confirmation.

2. Requirements for Confirmation. The requirements for confirmation are listed in 11 U.S.C. § 1129(a). These requirements are part of the balancing of rights and aids between the Debtors and its creditors. Certain of the requirements for confirmation necessitate the solicitation of ballots from the holders of claims against and interests in the Debtors indicating either their acceptance or rejection of the Plan. Section 1129(a) does not require that each and every holder of a claim against or interest in the Debtors vote to accept the Plan in order for it to be confirmed by the Court. First, only those holding claims or interests which are in classes which are impaired are entitled to vote. Impairment is defined in 11 U.S.C. § 1124.

   Impairment basically means an alteration of the legal, equitable or contractual rights of the holder of the claim or interest. The Plan proponents must assert in the Disclosure

Statement whether or not each class is deemed by them to be impaired. The proponents' conclusion may be disputed by a creditor and the dispute resolved by the Court. If a Plan impairs or changes the rights of any creditor, it must be accepted by at least one Class of impaired claims. Second, only those ballots that are properly completed and timely delivered are counted. Third, of those voting in each class, only a majority of the claims in number and at least two-thirds (2/3) in amount are needed for the acceptance of the Plan by that class.

Even if all Classes of claims and interests accept the Plan, its confirmation may be denied by the Bankruptcy Court for the failure to meet some other requirement of Section 1129 of the Bankruptcy Code. Among those requirements is one that the Plan is in the best interest of claim holders and interest holders. That generally requires that the value to be distributed to claimholders and interest holders may not be less than such parties would receive if the Debtors were liquidating under Chapter 7 of the Code.

3. Cramdown: The Court may confirm a Plan even though a class of claims or interest holders rejects the Plan. Confirmation of a Plan over the rejection by one or more classes of claims or interests is generally referred to as "cram down." In order for the Plan to be confirmed in spite of the rejection by a class of claims or interests, the proponent of the Plan must show that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

Section 1129(b)(2) provides that the following standards are among the issues to be considered in determining whether the Plan is "fair and equitable" with respect to a particular class:

<u>Secured Claims</u>. The Plan is fair and equitable with respect to each class of secured claims if it provides that either:

1. The holders are to retain their lien, whether the collateral is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of their secured claim, and are to receive deferred cash payments totaling not less than the allowed amount of their claims and having a present value of not less than the value of the collateral or, in the alternative, secured creditors must receive their collateral in satisfaction of new secured claims.

2. The collateral is to be sold in a sale permitting the holder to "bid in" free and clear of holder's lien, with such lien to attach to the proceeds of such sale, and the treatment of the lien on such proceeds under either clause (1) or (3) hereof; or

3. The holders are to receive the "indubitable equivalent" of their claims.

<u>Unsecured Claims</u>. The fair and equitable requirement in the context of a class of unsecured claims requires that either:

1. The holders are to receive property with a present value equal to the allowed amount of their claims; or

2. No holders in a class junior to the rejecting class are to receive any property.

## I. REPRESENTATIONS

The statements contained in this Disclosure Statement are made as of the date of this Disclosure Statement unless another time is specified. Except as stated herein, no other representations concerning the Debtors, its business operations, the value of its property, or the value of any benefits offered to you in the Plan are authorized. ANY REPRESENTATIONS OR INDUCEMENTS WHICH ARE CONTRARY TO THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, and such representations or inducements and their origin should be immediately reported to Ronald J. Smeberg, The Smeberg Law Firm Counsel for the Debtors, 4 Imperial Oaks, San Antonio, Texas 78248; Telephone: (210) 695-6684.

THE DEBTORS AND THEIR COUNSEL HAVE MADE EVERY EFFORT TO ENSURE THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS ACCURATE. WE CANNOT, HOWEVER, WARRANT THAT ALL OF THE DATA IS COMPLETELY ACCURATE, THOUGH WE FEEL IT IS MATERIALLY ACCURATE TO OUR BEST KNOWLEDGE, INFORMATION AND BELIEF. THE INFORMATION IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO AN INDEPENDENT AUDIT, AND FINANCIAL INFORMATION HAS BEEN BASED UPON OUR INTERNAL RECORDS. IF ANY STATEMENTS OF FINANCIAL MATTERS WERE MADE BY THIRD-PARTY ACCOUNTING PROFESSIONALS ACCOMPANY THIS DISCLOSURE STATEMENT, THEY WILL CONTAIN A DISCLAIMER REQUIRED OF UNAUDITED FINANCIAL INFORMATION. FURTHER, YOU SHOULD NOT CONSTRUE THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT AS AN ENDORSEMENT OF THE PLAN OR A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION PRESENTED HEREIN.

The Debtors have expended considerable time in devising a Plan which they believe to be financially feasible and fair to their creditors. Consequently, the Debtors urge you to vote for acceptance of the Plan.

## II. INFORMATION CONCERNING THE DEBTORS

### A. Results of Operations as Debtors in Possession

The Debtors have continued to successfully operate their business and pay their post-petition plan obligations.

B. Estimated Future Income and Expenses

The Debtors have attached, as Exhibit "B", a proforma they have prepared that shows projections for the sale of assets and repayment of 100% of their debts to creditors.

The Debtors' pro-forma financial statement attached as Exhibit "B" accurately and fairly project the Debtors' future income and expenses.

C. Future Management of the Debtor

The Debtors will continue to manage their financial affairs as they did prior to the bankruptcy filing as a part of their respective Plans of Reorganization. The Debtors will be able to make lump sum or monthly plan payments with money generated by operations and the sale of the Ranch and/or Pipeline.

D. Summary of the Plan

The remaining Ranch proceeds shall be used to pay the Mcleod debt, all unsecured debt and the administrative expenses of the bankruptcy.

E. Future Operation of The Debtors.

Debtors plan to either sell the Express Pipeline or locate a capital partner to jointly develop the Express Pipeline.

## III. ANALYSIS AND VALUATION OF PROPERTY

A. Real and Personal Property

The Debtors have attached Exhibits "C1 – C3" which are each respective Debtor's Schedule A/B – Real and Personal Property filed by the Debtors with the Court.

B. Liquidation Analysis

Debtors' value is in their ability sell assts and to operate and generate cash flow. A liquidation analysis is attached as Exhibit A hereto.

## IV. SUMMARY OF PLAN OF REORGANIZATION

A. Substantive Consolidation

(a) Generally

The Plan proposes to substantially consolidate the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC. The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC. As a result of the

substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of each of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect. Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC. KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

(b) Justification

*(i) Facts Justifying Substantive Consolidation*

KrisJenn Ranch, LLC and its series have never operated as separate entities. By way of example, they have never filed separate tax returns. Additionally, KrisJenn Ranch, LLC is the only entity known to the world save for its primary secured lender Mcleod Oil. In regard to the Ranch that was “owned” by KrisJenn Ranch, LLC series Uvalde Ranch, none of the vendors who supplied the ranch had ever even heard of the series and always thought they were doing business with KrisJenn Ranch, LLC. LongBranch Energy, LP, which initiated suit against KrisJenn Ranch, LLC regarding the pipeline, only sued the KrisJenn Ranch, LLC because it did not know about either series. When DMA Properties, Inc., which was owned by. Frank Daniel Moore, entered the pipeline fray, it sued Larry Wright, KrisJenn Ranch, LLC, and KrisJenn Ranch, LLC series Uvalde Ranch. DMA sued everyone but the “owner” of the pipeline, KrisJenn Ranch, LLC Pipeline Row. In forming the series, all the funds to form, operate, and maintain the series came from KrisJenn Ranch, LLC. The only name ever listed on the sole bank account was KrisJenn Ranch, LLC.

Simply put, KrisJenn and its series never functioned as separate entities. Further, Larry Wright, KrisJenn's manager, never intended for them to function as separate entities. Most importantly, the vast majority of Debt in this case, the Mcleod Debt, is borne by all three entities.

*(ii) Legal Argument Justifying Substantive Consolidation*

Substantive Consolidation is appropriate in this case because: (1) KrisJenn's creditors dealt with the separate legal entities as a single economic unit and did not rely on their separate identity; and (2) the affairs of KrisJenn are so entangled with its series that consolidation will benefit all creditors.

Further, substantive consolidation is appropriate because: (1) there is some difficulty in segregating and ascertaining individual assets and liabilities of the KrisJenn Parties; (2) any financial statements KrisJenn and its series are consolidated; (3) there was commingling of assets and business functions between KrisJenn and its series; (4) there is unity of interests and ownership between the various corporate entities; (5) parent and inter-series guarantees on loans between KrisJenn and its series exists; and (6) KrisJenn and its series have transferred assets without formal observance of corporate formalities.

In addition— should the Court find KrisJenn and its series are separate entities that cannot file jointly—KrisJenn can show that there is identity between the entities to be consolidated, and the consolidation is necessary in order to prevent harm or prejudice, or to effect a benefit generally.

Therefore, substantive consolidation is appropriate under both the Traditional Test and the Balancing Test laid out by this Court in *In re Introgen Therapeutics, Inc.*, 429 B.R. 570 (Bankr. W.D. Tex. 2010).

(c) Order Granting Substantive Consolidation

**The Plan shall serve as a motion seeking entry of an order substantively consolidating the Cases, as described and to the extent set forth herein. Unless an objection to such substantive consolidation is made in writing by any creditor affected by the Plan as herein provided on or before five (5) days prior to the Voting Deadline, or such other date as may be fixed by the Court, an order approving the substantive consolidation described herein (which may be in the Confirmation Order) may be entered by the Court. However, an order shall only be entered if the Bankruptcy Court enters the Confirmation Order. In the event any such objections are timely filed, a hearing with respect thereto shall occur at the Confirmation Hearing.**

B. Administrative Expenses

Administrative Expenses: Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment. These claims do not include other administration priority claims allowed under

11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $32,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $230,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

All claims for administrative expenses shall be filed with the Court within 60 days of the Effective Date.

Reorganized Debtors shall pay all accrued U.S. Trustee fees on the Effective Date and continue paying all U.S. Trustee fees as required by 1129(a)(12) until an order is entered closing the case.

C. Classification and Treatment of Governmental Claims

1. Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service: The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims. If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

2. Secured Taxing Authority Claims:

a. Uvalde County Tax Office. The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805. However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch.

The claim was previously paid in conjunction with sale of the Ranch. To the extent any amount remains, it will be paid on the Effective Date. Uvalde County Tax Office shall retain all its liens until paid.

c. Nacogdoches County filed a claim for $354.60 in case number 20-51083. This claim shall be paid in full on the Effective Date. Nacogdoches County shall retain all its liens until paid.

d. Angelina County filed a claim for $2,536.82 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. Angelina County shall retain all its liens until paid. This claim shall be paid in full on the Effective Date.

e. Shelby County filed a claim for $357.88 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. The claim shall be paid in full at on the Effective Date. Shelby County shall retain all its liens until paid.

f. Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtor. Each separate payment which will be applied pro rata to the various tax accounts indicated above. In the event a Debtor sells, conveys or transfers any property which is collateral of a property tax claim or post confirmation tax debt, the Debtor shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. A Debtor may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time. The Debtor shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan. The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity

20-50805-rbk Doc#332-1 Filed 01/13/22 Entered 01/13/22 16:05:23 Ex. 20-50805 Designated Documents Pg 35 of 253

shall provide written notice of that default by sending written notice by certified mail to Debtor's counsel advising of that default, and providing the Debtor with a period of fifteen (15) days to cure the default. In the event the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Debtor are still paying any pre-petition debt, shall be considered an event of default. A Debtor shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

D. McLeod Class 1 Claim in all Three Debtor Cases

1. Class 1 Claims

i. Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases. Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103. The majority of this claim was satisfied upon sale of the Ranch. Debtor has agreed to settle this claim for $385,000[1]. The Claim shall be paid on the Effective Date in accordance with the Parties' settlement agreement to be filed with the Court.

ii. Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein. Mcleod will vote on the plan as an impaired creditor.

E. DMA and Frank Daniel Moore Claims

1. Class 2 Claims:

i. Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA"). Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

ii. DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027 claims related to Bigfoot Energy. The Court awarded damages and attorney's fees with a remaining balance of $54,471.85. The DMA claim in class 2 shall be paid on the Effective Date. DMA and Frank Daniel Moore are unimpaired and will not vote on the plan.

---

1 Larry Wright and Gwen Wright are also parties to the settlement transferring 165 acres of their personal mineral rights as consideration.

F. Other Claims

1. Class 3 Claims:

i. Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"). Claim 7 in 20-50805.

ii. DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

iii. DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

iv. If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.

v. To the extent Longbranch or DMA have filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

vi. In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer

to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

vii. Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

viii. Class 3 is unimpaired and does not vote on the plans.

2. <u>Class 4 Claims</u>:

i. Class 4 are the claims of Longbranch Energy, LP ("Longbranch"). Claim 4 in 20-51083 and Claim 8 in 20-51084.

ii. Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

iii. Longbranch is currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. This appeal will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

iv. If through the appeals process, Longbranch is ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express

Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by Longbranch.

v. To the extent Longbranch has filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

vi. In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

vii. Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

viii. Class 4 is unimpaired and does not vote on the plans.

3. Class 5 Claims:

i. Class 5 is the impaired general unsecured creditor claims. This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945 (filed as Claim 6 in 20-51084).

ii. The Class 5 claims shall be paid their allowed claim within 120 days of the effective date. Cedillo shall vote on the plan.

4. Class 6 Claims:

i. Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less. These claims were all scheduled in Case 20-50805,

20-50805-rbk Doc#332 Filed 01/31/22 Entered 01/31/22 13:52:31 20-50805 Designated Documents Pg 39 of 253

but none of the creditors filed claims in any of the Debtors' cases. The claimants are as follows:

1. C & W Fuels - $1.00
2. Granstaff Gaedke & Edgmon PC - $1.00
3. Hopper's Soft Water Service - $100.00
4. Medina Electric - $1.00
5. Texas Farm Store - $1.00
6. Uvalco Supply - $1.00

ii. The Class 6 claims shall be paid in full on the Effective Date. They are unimpaired and shall not vote on the plan

5. Class 7 Claims:

i. Class 7 claim is the general unsecured claim of insider Larry Wright. This claim was scheduled in Case 20-50805 in the amount of $648,209. Additionally, Larry Wright loaned $129,446 to the Company. Finally, Larry Wright contributed 165 acres of mineral rights valued at $1,000.00 per acre to the settlement with Mcleod oil to all allow the Debtor to retain cash needed to pay administrative expenses.

ii. The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims and except in regard to the mineral acres contributed by Larry Wright to the settlement with McCleod. The $165,000 in mineral rights shall be reimbursed to Larry Wright on the Effective Date provided there are sufficient funds to pay all other claims due on the Effective Date, to pay any estimated administrative claims likely to come due until the case is closed, and to pay the Class 5 claims. The remainder of the Class 7 Claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with

interest at the judgment rate of interest in effect on the Effective Date. The claim is deemed unimpaired and shall not vote on the plan.

6. Class 8 Claims:

i. Class 8 claims are the claims of Debtors' equity holders. The equity holders shall retain their membership/ownership interest in each respective debtor as that membership/ownership existed prior to the bankruptcy filing.

G. Payment of Administrative Claims

All allowed administrative claims will be paid in full on or after the Plan's Effective Date in accordance with the provisions of 11 U.S.C. '1129(a)(9)(A), as agreed to between a particular administrative claimholder and the Debtors. The Debtors anticipate paying administrative claims from the sale of the Ranch.

H. Feasibility of the Plan

Debtors have sufficient cash on hand and assets to pay all of its creditors pursuant to the plan.

I. Claims Allowance Procedure

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated. **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for herein in regard to particular creditors.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment. Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed herein. The Debtors reserve the right to have

the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

J. <u>Retention of Jurisdiction</u>

The Court will retain jurisdiction as set out in the Plan.

K. <u>Interests Retained by the Debtor</u>

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors. Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

## V. <u>ALTERNATIVES TO THE DEBTORS' PLANS</u>

The alternative to the Debtors' proposed operating plan of reorganization is dismissal of the bankruptcy.

## VI. <u>RISK TO CREDITORS UNDER THE DEBTORS' PLAN</u>

The principal risk that creditors will incur under the Debtors' Plan is that the Mcleod Debt is determined to be greater than the remaining Uvalde Ranch Proceeds. In the even this were to occur, Debtors have sufficient other assets to cover any shortfall.

## VII. <u>TAX CONSEQUENCES</u>

Debtors are on a cash basis accounting system. Debtors direct all parties in interest to consult their own tax advisors regarding their own tax consequences.

a. Litigation

Debtors filed Adversary No. 20-05027 on May 1, 2020, to litigate the issues surrounding the Pipeline ownership. Debtors received a final judgment in their adversary action on March 24, 2021, as previously described. This case is under appeal.

## VIII. RELATIONSHIP OF DEBTOR WITH AFFILIATES

Larry Wright is the controlling member for all three Debtors and will continue to manage and control the Debtors post confirmation.

## IX. PREFERENTIAL OR VOIDABLE TRANSFERS

None.

## X. SUMMARY OF SIGNIFICANT ORDERS ENTERED

Many orders were entered in these cases. A list of the "significant" orders entered include the following; however, parties should consult the court's docket for to review all orders entered:

1) Order to Jointly Administer the Cases under Case 20-50805.
2) Order severing cases entered on June 5, 2020.
3) Final Order in Adversary Action No. 20-05027.

## XI. MISCELLANEOUS DISCLOSURES

A. Modification of the Plan

The Debtors may propose amendments or modifications to their Plan at any time prior to the date of the entry of the Order Confirming Plan, with leave of the Court, and upon proper notice to parties in interest. After the date of the Order Confirming Plan, Debtors may, with approval of the Court so long as it does not materially or adversely affect the interests of creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Order Confirming Plan in such manner as may be necessary to carry out the purpose and effect of this Plan.

B. Effect of Confirmation of the Plan

Legally Binding Effect. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors. **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A. No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B. A temporary injunction is hereby entered and shall be in effect as of the**

**Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein. Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default. Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

Injunction and Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

Limited Protection of Certain Parties in Interest Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating,

implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

Continuation of Anti-Discrimination Provisions of Bankruptcy Code A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

C. Executory Contracts

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or herein. Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements. **Interested parties should consult the plan of reorganization for each debtor to determine whether a lease or executory contract is rejected or assumed. If a lease or contract is rejected, the affected party shall file all claims for rejection damages or an amendment to a previously filed claim no later than the 30th day following the effective date of the plan; otherwise, the claim shall be barred.**

D. Default

Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to three (3) notices of default for each calendar year. On the fourth (4th) notice of

default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

## XII. CONCLUSION

The Debtors submit this Disclosure Statement. The information contained herein has been compiled in good faith and in accordance with the provisions of 11 UCC §§ 101, *et. seq*. This Disclosure Statement is presented for consideration by creditors and other parties in interest and as the sole source of information furnished by the Debtors, or to be furnished by the Debtors, in solicitation of acceptance of Debtors' Plan of Reorganization.

The Debtors recommend that the Plan of Reorganization be approved. An operating plan is in the best interest of all creditors, Debtors, and parties-in-interest; therefore, all Creditors and Interest Holders are urged to vote to accept the Plan.

## XIII. ARTICLE

## ATTACHMENTS AND EXHIBITS

| | |
|---|---|
| Exhibit "A" | Liquidation Analysis |
| Exhibit "B" | Proforma |
| Exhibit "C" | Proposed Plan of Reorganization |
| Exhibit "D" | Last filed Monthly Operating Reports |
| Exhibit "E" | Redline of Third Amended Plan |

DATED: February 3, 2022.

BY: /s/ *Larry Wright*
Name: Larry Wright, Manager

THE SMEBERG LAW FIRM, PLLC

BY:/s/ Ronald J. Smeberg
Ronald J. Smeberg
SBN: 24033967
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

Exhibit A. Liquidation Analysis

| | |
|---|---|
| Remaining Cash From Ranch Sale | $893,938 |
| Ranch Cash and Securities (Thunder Rock Holdings) (70%) | $489,300 |
| ROW2 (liquidation value) | $4,000,000 |
| **Total Assets** | **$5,382,698** |
| | |
| Secured Tax Debt | $9000 |
| Admin Claims | $230,000 |
| Mcleod Debt | $385,000[3] |
| Unsecured Debt | $52000 |
| Insider Debt | $677,000 |
| **Total Debt** | **$1,232,303** |
| | |
| **Chapter 7 Expenses on Conversion** | $180,000 |
| | |
| Net Value After Debt and Liquidation Expenses | $4,300,395 |

2 The actual value of the ROW could be substantially higher now that the DMA and Longbranch issues have been resolved but are still pending appeal.
3 $385,000 from debtor and $165,000 in mineral rights from Larry Wright.

| | Exhibit B | |
|---|---|---|
| **Post Ranch Sale** | Debtor Perspective | |
| | **Debit** | **Credit** |
| Net Sale of Krisjenn Ranch (Includes $6.43 Million Payment to Mcleod) | | $893,938 |
| **Bankruptcy Costs** | | |
| Amount Owed Mcleod | $385,000 | |
| Admi Claims | $230,000 | |
| County Taxes | $9,800 | |
| Non Insider Unsecured Claims | $53,050 | |
| Total | $677,850 | $893,938 |
| | Debtor Perspective | |
| Net to Estate After 100% of Non insider Debt Paid | **$216,088** | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S FOURTH AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION**

## ARTICLE I
## SUMMARY AND SUBSTANTIVE CONSOLIDATION

1.01 Summary

This Fourth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to substantively consolidate all three Debtors into KrisJenn Ranch, LLC to pay creditors of KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") from the sale of real property and/or pipeline right**s.**

This Plan generally differs from the Third Amended Plan in that it further clarifies the affect of the appeal pending in the adversary regarding rights in the Express Pipeline, which is defined in the Disclosure Statement. See the redlined plan attached to the Fourth Amended Disclosure Statement for additional Changes.

This Plan provides for paying real estate taxes, administrative claims, one secured class for the Mcleod Oil debt, and 100% of the unsecured debt.

All creditors and equity security holders should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Generally, the plan provides as follows.

Debtors shall pay their secured creditor, Mcleod Oil, from the sales proceeds of the Uvalde Ranch.

Except as otherwise stated, Debtors shall pay select governmental claims in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date. The Debtors may prepay these

20-50805-rbk Doc#219-1 Filed 01/13/21 Entered 01/13/21 16:05:23 20-50805 Designated Documents of 85

claims in full in the Debtors' business judgment. Debtors shall pay remaining governmental claims upon confirmation.

DMA and Frank Daniel Moore debts related to the "Bigfoot Note" will be paid in full on the effective date.

Debtors shall pay allowed general unsecured claims in full on the effective date.

The remaining DMA, Frank Daniel Moore, and Longbranch Energy claims are all generally disallowed pursuant to the adversary case order in 20-05027 subject to the pending appeal as provided for below.

Equity holders shall all retain their interests as they existed prior to the bankruptcy case filing.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

1.02 Substantive Consolidation

The Plan substantially consolidates the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC. The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC. As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect. Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC. KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01. Class 1. | Secured Claim of McLeod Oil, LLC | Y | Yes |
| 2.02. Class 2. | Claims Of DMA and Frank Daniel Moore | N | No |
| 2.03. Class 3. | DMA and Longbranch Energy, LP Joint Claims | N | No |
| 2.04. Class 4. | Longbranch Energy, LP Claims | N | No |
| 2.07. Class 5. | General Unsecured Claims | Y | Yes |
| 2.09. Class 6. | General Unsecured Administrative Convenience Claims | N | No |
| 2.10. Class 7. | General Unsecured Larry Wright Insider Claim | N | No |
| 2.11. Class 8. | Equity Holders | N | No |

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**AND PRIORITY TAX CLAIMS**

3.01. Professional Fees and U.S. Trustee Fees.

Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment. These claims do not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may

not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $32,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $230,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

Reorganized Debtors shall pay all accrued U.S. Trustee fees on the Effective Date and continue paying all U.S. Trustee fees as required by 1129(a)(12) until an order is entered closing the case.

3.02. Government Claims.

3.02.1. Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service: The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims. If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

3.02.2. Secured Taxing Authority Claims

a. Uvalde County Tax Office. The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805. However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch. The claim was previously paid in conjunction with sale of the Ranch. To the extent any amount remains, it will be paid on the Effective Date. Uvalde County Tax Office shall retain all its liens until paid.

c. Nacogdoches County filed a claim for $354.60 in case number 20-51083. The claim shall be paid in full at confirmation. Nacogdoches County shall

retain all its liens until paid. This claim shall be paid in full on the Effective Date.

d. Angelina County filed a claim for $2536.82 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. Angelina County shall retain all its liens until paid. This claim shall be paid in full on the Effective Date.

e. Shelby County filed a claim for $357.88 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. The claim shall be paid in full on the Effective Date. Shelby County shall retain all its liens until paid.

f. Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtors. Each separate payment which will be applied pro rata to the various tax accounts indicated above. In the event Debtors sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtors shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. Debtors may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time. The Debtors shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan. The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtors' counsel advising of that default, and providing the Debtors with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay

post-petition and/or post-confirmation taxes while the Debtors are still paying any pre-petition debt, shall be considered an event of default. A Debtors shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

**Class 1 Claims**:

Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases. Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103. The majority of this claim was satisfied upon sale of the Ranch. Debtor has agreed to settle this claim for $385,000[1]. The Claim shall be paid on the Effective Date in accordance with the Parties' settlement agreement to be filed with the Court.

Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein.

Mcleod will vote on the plans as an impaired creditor.

**Class 2 Claims:**

Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA"). Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027 claims related to Bigfoot Energy. The Court awarded damages and attorney's fees with a remaining balance of $54,471.85. The DMA claim in class 2 shall be paid on the Effective Date. DMA and Frank Daniel Moore are unimpaired and will not vote on the plan.

**Class 3 Claims:**

Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"). Claim 7 in 20-50805.

DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these

[1] Larry Wright and Gwen Wright are also parties to the settlement transferring 165 acres of their personal mineral rights as consideration.

claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.

To the extent Longbranch or DMA have filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 3 is unimpaired and does not vote on the plans.

**<u>Class 4 Claims:</u>**

Class 4 are the claims of Longbranch Energy, LP ("Longbranch"). Claim 4 in 20-51083 and Claim 8 in 20-51084.

Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

Longbranch is currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. This appeal will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, Longbranch is ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by Longbranch.

To the extent Longbranch has filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 4 is unimpaired and does not vote on the plans.

**Class 5 Claims:**

Class 5 is the impaired general unsecured creditor claims. This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945. The Class 5 claims shall be paid their allowed claim within 120 days of the effective date without interest. Cedillo shall vote on the plan.

**Class 6 Claims:**

Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less. These claims were all scheduled in Case 20-50805, but none of the creditors filed claims in any of the Debtors' cases. The claimants are as follows:

1. C & W Fuels - $1.00
2. Granstaff Gaedke & Edgmon PC - $1.00
3. Hopper's Soft Water Service - $100.00
4. Medina Electric - $1.00
5. Texas Farm Store - $1.00
6. Uvalco Supply - $1.00

The Class 6 claims shall be paid in full on the Effective Date. They are unimpaired and shall not vote on the plan.

**Class 7 Claims:**

Class 7 claim is the general unsecured claim of insider Larry Wright. This claim was scheduled in Case 20-50805 in the amount of $648,209. Additionally, Larry Wright loaned $129,446 to the Company. Finally, Larry Wright contributed 165 acres of mineral rights valued at $1000.00 per acre to the settlement with Mcleod oil to all allow the Debtor to retain cash needed to pay administrative expenses.

The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims and except in regard to the mineral acres contributed by Larry Wright to the settlement with McCleod. The $165,000 in mineral rights shall be reimbursed to Larry Wright on the Effective Date provided there are sufficient funds to pay all other claims due on the Effective Date, to pay any estimated administrative claims likely to come due until the case is closed, and to pay the Class

5 claims. The remainder of the Class 7 Claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date. The claim is deemed unimpaired and shall not vote on the plan.

**Class 8 Claims:**

Class 8 claims are the claims of Debtors' equity holders. The equity holders shall retain their membership/ownership interest in each respective Debtors as that membership/ownership existed prior to the bankruptcy filing.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated. **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for in the Disclosure Statement or herein.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order or otherwise provided herein.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment. Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed in the Disclosure Statement. The Debtors reserve the right to have the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

Retention of Jurisdiction

Under sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a) determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date

(b) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(c) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

(d) hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(e) hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any Litigation Claims, or otherwise to collect or recover on account of any Litigation Claim

(f) issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(g) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(h) hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(i) enforce all orders, judgments, injunctions, releases, exculpations, and rulings entered in connection with the Chapter 11 Cases;

(j) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; (k) hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

(k) enter a final decree closing the Chapter 11 Case.

Interests Retained by the Debtors

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors. Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or as indicated below. Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.

Unless the time to file a claim for rejections damages is specifically limited herein or by other court order, rejections damages must be filed no later than 30 days after the effective date of the plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 Continued Corporate Existence. The Debtors shall continue to exist after the Effective Date as their respective Texas entities, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02 Advance Payment of Claims. Provided Debtors stay current on all payments to creditors pursuant to the Plan, Debtors may make advance payments on claims in Debtors' business judgment discretion.

7.03 Payments due under the plan shall come from the remaining Uvalde Ranch proceeds, then monetization of the Pipeline ROW, and then sale of the Thunder Rock Holdings.

**ARTICLE VIII**
**<u>GENERAL PROVISIONS</u>**

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1 Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtors' estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtors under title 28 of the United States Code

8.01.2 Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3 Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4 Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date

8.01.5 Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtors' Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6 Bankruptcy Estate or Estates shall mean all of the assets owned by the Debtors and their respective estates.

8.01.7 Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8 Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9 Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10 Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

8.01.11 Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12 Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13 Creditor shall mean any entity holding a Claim.

8.01.14 Debtors shall mean **KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row**

8.01.15 Disbursing Agent shall mean KrisJenn Ranch, LLC.

8.01.16 Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

8.01.17 Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.18 Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.19 Effective Date shall mean fifteen (15) days after entry of a Final Order confirming Debtors' plan of reorganization.

8.01.20 Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.21 Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

8.01.22 Filing Date shall mean the date Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.23 Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.24 General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.25 Holder shall mean the owner or Holder of any Claim or Interest.

8.01.26 Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.27 Insider has the definition ascribed to it under the Bankruptcy Code.

8.01.28 Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.29 Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit. The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit. Compromises of Avoidance Actions may include cash or benefits to the Debtors or Reorganized Debtors and are not Net Proceeds.

8.01.30 Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.31 Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.32 Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.33 Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.34 Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.35 Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtors has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.01.39 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.01.40 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE AND EFFECT OF CONFIRMATION

9.01 Legally Binding Effect. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors. **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A. No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B. Affiliate Injunction. A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein. Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default. Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

9.02 Injunction and Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have

held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

9.03 Limited Protection of Certain Parties in Interest. Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

9.04 Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant

against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

## ARTICLE X
## OTHER PROVISIONS

### DEFAULT

10.01. Default. Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to three (3) notices of default for each calendar year. On the fourth (4th) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

10.02. Vesting of Estate Property and Effect of Default. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in KrisJenn Ranch, LLC, Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor comply with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in KrisJenn Ranch, LLC and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

Respectfully submitted,

BY: /s/ *Larry Wright*
Name: Larry Wright, Manager, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC Series Uvalde Ranch, KrisJenn Ranch, LLC Series Pipeline Row.

THE SMEBERG LAW FIRM, PLLC

BY: /s/ *Ronald J. Smeberg*
Ronald J. Smeberg
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

MOR-1

# UNITED STATES BANKRUPTCY COURT

CASE NAME: KrisJenn Ranch, LLC
CASE NUMBER: 20-50805-RBK
PROPOSED PLAN DATE: ______

PETITION DATE: ______
DISTRICT OF TX: Western
DIVISION: San Antonio

## MONTHLY OPERATING REPORT SUMMARY FOR MONTH October 2021

| MONTH | 1/1-1/31/2021 | 2/1-2/28/2021 | 3/1-3/31/2021 | 4/1-4/30/2021 | 5/1-5/31/2021 | 6/1-6/30/2021 | 7/1-7/31/2021 | 8/1-8/31/2021 | 9/1-9/30/2021 | 10/1-10/31/2021 |
|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 0.00 | 0.00 | 5,933.38 | 2,000.00 | 50,000.00 | 0.00 | 150.00 | 50,000.00 | 7,143,789.41 | 3.00 |
| INCOME BEFORE INT. DEPREC./TAX (MOR-6) | -32,339.21 | -3,934.30 | 1,235.29 | -616.77 | 1,659.65 | -2,217.91 | -766.79 | 47,813.51 | 7,057,737.95 | 0.00 |
| NET INCOME (LOSS) (MOR-6) | -32,339.21 | -3,934.30 | 1,235.29 | -616.77 | 1,659.65 | -2,217.91 | -766.79 | 47,813.51 | 6,401,675.98 | 0.00 |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 30,000.00 | 0.00 | 2,464.00 | 0.00 | 44,200.00 | 0.00 | 0.00 | 0.00 | 31,240.00 | 0.00 |
| TOTAL DISBURSEMENTS (MOR-7) | 32,339.21 | 3,934.30 | 4,698.09 | 2,616.77 | 48,340.35 | 2,217.91 | 916.79 | 2,186.49 | 6,605,260.89 | 3.00 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE | | EXP. DATE |
|---|---|---|
| CASUALTY | YES (x) NO ( ) | __-__-__ |
| LIABILITY | YES (x) NO ( ) | __-__-__ |
| VEHICLE | YES ( ) NO ( ) | __-__-__ |
| WORKER'S | YES ( ) NO ( ) | __-__-__ |
| OTHER | YES ( ) NO ( ) | __-__-__ |

CIRCLE ONE

Are all accounts receivable being collected within terms? **Yes** No
Are all post-petition liabilities, including taxes, being paid within terms? **Yes** No
Have any pre-petition liabilities been paid? Yes **No**
If so, describe ______
Are all funds received being deposited into DIP bank accounts? **Yes** No
Were any assets disposed of outside the normal course of business? Yes **No**
If so, describe ______
Are all U.S. Trustee Quarterly Fee Payments current? Yes No
What is the status of your Plan of Reorganization? ______

ATTORNEY NAME: Ronald Smeberg
FIRM NAME: The Smeberg Law Firm
ADDRESS: 4 Imperial Oaks
CITY, STATE, ZIP: San Antonio TX 78248
TELEPHONE/FAX: 210-695-6684

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED X [signature] Mgr.
(ORIGINAL SIGNATURE)

(PRINT NAME OF SIGNATORY) DATE

Revised 07/01/98

MOR-1

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | MONTH 7/1-7/31/2021 | MONTH 8/1-8/31/2021 | MONTH 9/1-9/30/2021 | MONTH 10/1-10/31/2021 |
|---|---|---|---|---|---|---|---|---|
| CURRENT ASSETS | | | | | | | | |
| Cash | | 2,726.55 | 4,386.20 | 2,168.29 | 1,401.50 | 49,215.01 | 893,954.12 | 893,954.12 |
| Accounts Receivable, Net | | | | | | | | |
| Inventory: Lower of Cost or Market | | | | | | | | |
| Prepaid Expenses | | | | | | | | |
| Investments | | 477,490.11 | 477,490.11 | 477,490.11 | 477,490.11 | 477,490.11 | -10,895.00 | -10,895.00 |
| Other | | | | | | | | |
| TOTAL CURRENT ASSETS | 0.00 | 480,216.66 | 481,876.31 | 479,658.40 | 478,891.61 | 526,705.12 | 883,059.12 | 883,059.12 |
| PROPERTY, PLANT & EQUIP. @ COST | | | | | | | | |
| Less Accumulated Depreciation | | | | | | | | |
| NET BOOK VALUE OF PP & E | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| OTHER ASSETS | | | | | | | | |
| 1. Tax Deposits | | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | | |
| 3. Electric Deposit | | | | | | | | |
| 4. | | | | | | | | |
| TOTAL ASSETS | $0.00 | $480,216.66 | $481,876.31 | $479,658.40 | $478,891.61 | $526,705.12 | $883,059.12 | $883,059.12 |

* Per Schedules and Statement of Affairs

**MOR-2**

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

| LIABILITIES & OWNER'S EQUITY | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | MONTH 7/1-7/31/2021 | MONTH 8/1-8/31/2021 | MONTH 9/1-9/30/2021 | MONTH 10/1-10/31/2021 |
|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | | |
| PRE-PETITION LIABILITIES | | | | | | |
| Notes Payable - Secured | 5,900,000.00 | 5,900,000.00 | 5,900,000.00 | 5,900,000.00 | 0.00 | 0.00 |
| Priority Debt | | | | | | |
| Federal Income Tax | | | | | | |
| FICA/Withholding | | | | | | |
| Unsecured Debt | 73,330.95 | 73,330.95 | 73,330.95 | 73,330.95 | 111,168.58 | 111,168.58 |
| Other | 183,174.52 | 183,174.52 | 183,174.52 | 183,174.52 | 0.00 | 0.00 |
| TOTAL PRE-PETITION LIABILITIES | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 111,168.58 | 111,168.58 |
| **TOTAL LIABILITIES** | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 6,156,505.47 | 111,168.58 | 111,168.58 |
| **OWNER'S EQUITY (DEFICIT)** | | | | | | |
| PREFERRED STOCK | | | | | | |
| COMMON STOCK | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 |
| RETAINED EARNINGS: Filing Date | | | | | | |
| RETAINED EARNINGS: Post Filing Date | -73,061.24 | -73,061.24 | -73,061.24 | -73,061.24 | 6,377,574.95 | 6,377,574.95 |
| TOTAL OWNER'S EQUITY (NET WORTH) | -5,678,745.65 | -5,678,745.65 | -5,678,745.65 | -5,678,745.65 | 771,890.54 | 771,890.54 |
| **TOTAL LIABILITIES & OWNERS EQUITY** | $477,759.82 | $477,759.82 | $477,759.82 | $477,759.82 | $883,059.12 | $883,059.12 |

**MOR-3**

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

# SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| ***TRADE ACCOUNTS PAYABLE*** | | | | | | |
| TAX PAYABLE | | | | | | |
| Federal Payroll Taxes | | | | | | |
| State Payroll Taxes | | | | | | |
| Ad Valorem Taxes | | | | | | |
| Other Taxes | | | | | | |
| TOTAL TAXES PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | |
| 1. Paid PostPetition | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| **TOTAL POST-PETITION LIABILITIES (MOR-3)** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

***Payment requires Court Approval**

**MOR-4**

*Revised 07/01/98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

**AGING OF POST-PETITION LIABILITIES**
**MONTH** ____________

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | OTHER |
|---|---|---|---|---|---|---|
| 0-30 | 0.00 | | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**AGING OF ACCOUNTS RECEIVABLE**

| MONTH | | | | | | |
|---|---|---|---|---|---|---|
| 0-30 DAYS | | | | | | |
| 31-60 DAYS | | | | | | |
| 61-90 DAYS | | | | | | |
| 91+ DAYS | | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-5**

*Revised 07 01 98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

| | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | MONTH 7/1-7/31/2021 | MONTH 8/1-8/31/2021 | MONTH 9/1-9/30/2021 | MONTH 10/1-10/31/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | 2,000.00 | 50,000.00 | 0.00 | 150.00 | 50,000.00 | 7,142,789.41 | 3.00 | 7,308,254.69 |
| TOTAL COST OF REVENUES | | | | | | | | 6,218.96 |
| GROSS PROFIT | 2,000.00 | 50,000.00 | 0.00 | 150.00 | 50,000.00 | 7,142,789.41 | 3.00 | 7,302,035.73 |
| **OPERATING EXPENSES:** | | | | | | | | |
| Selling & Marketing | | | | | | | | 0.00 |
| General & Administrative | 15.00 | 27.00 | 15.00 | 15.00 | 27.00 | 29.93 | 3.00 | 2,087.93 |
| Insiders Compensation | | | | | | | | 0.00 |
| Professional Fees | 0.00 | 44,200.00 | 0.00 | 0.00 | 0.00 | 52,757.00 | 0.00 | 199,683.07 |
| Other | 1,056.13 | 1,300.00 | 1,400.00 | 398.79 | 750.00 | 23,578.28 | 0.00 | 39,343.67 |
| Other | 1,545.64 | 2,813.35 | 802.91 | 503.00 | 1,409.49 | 8,686.25 | 0.00 | 27,284.12 |
| **TOTAL OPERATING EXPENSES** | 2,616.77 | 48,340.35 | 2,217.91 | 916.79 | 2,186.49 | 85,051.46 | 3.00 | 268,398.79 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | -616.77 | 1,659.65 | -2,217.91 | -766.79 | 47,813.51 | 7,057,737.95 | 0.00 | 7,033,636.94 |
| INTEREST EXPENSE | | | | | | 530,000.00 | 0.00 | 530,000.00 |
| DEPRECIATION | | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | | 0.00 |
| OTHER ITEMS** | | | | | | 126,061.99 | 0.00 | 126,061.99 |
| TOTAL INT, DEPR & OTHER ITEMS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 656,061.99 | 0.00 | 656,061.99 |
| NET INCOME BEFORE TAXES | -616.77 | 1,659.65 | -2,217.91 | -766.79 | 47,813.51 | 6,401,675.96 | 0.00 | 6,377,574.95 |
| FEDERAL INCOME TAXES | | | | | | | | 0.00 |
| **NET INCOME (LOSS) (MOR-1)** | ($616.77) | $1,659.65 | ($2,217.91) | ($766.79) | $47,813.51 | $6,401,675.96 | $0.00 | $6,377,574.95 |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

* *Footnote Mandatory.*

** *Unusual and or infrequent item(s) outside the ordinary course of business requires footnote.*

**MOR-6**

*Revised 07 01 98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

| CASH RECEIPTS AND DISBURSEMENTS | MONTH | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | MONTH 7/1-7/31/2021 | MONTH 8/1-8/31/2021 | MONTH 9/1-9/30/2021 | MONTH 10/1-10/31/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $3,343.32 | $2,726.55 | $4,386.20 | $2,168.29 | $1,401.50 | $49,215.01 | $893,954.12 | |
| **RECEIPTS:** | | | | | | | | | |
| 2. CASH SALES | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,315.28 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | 73,330.95 |
| 5. SALE OF ASSETS | | | | | | | 7,450,000.00 | 0.00 | 7,450,000.00 |
| 6. OTHER (attach list) | | 2,000.00 | 50,000.00 | | 150.00 | 50,000.00 | 0.00 | 3.00 | 152,150.00 |
| TOTAL RECEIPTS** | 0.00 | 2,000.00 | 50,000.00 | 0.00 | 150.00 | 50,000.00 | 7,450,000.00 | 3.00 | 238,796.23 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | | 1,844.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | 1,671.77 | 0.00 | 408.12 | 398.79 | 0.00 | 3,668.76 | 0.00 | 8,423.01 |
| 12. INSURANCE | | | | | | | 5,017.49 | 0.00 | 5,017.49 |
| 13. INVENTORY PURCHASES | | | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | 930.00 | 2,813.35 | 1,794.79 | 503.00 | 1,409.49 | 9,257.65 | 0.00 | 39,455.20 |
| 17. ADMINISTRATIVE & SELLING | | 15.00 | 27.00 | 15.00 | 15.00 | 27.00 | 15.00 | 3.00 | 243.61 |
| 18. OTHER (attach list) | | | | | | | 6,556,061.99 | 0.00 | 6,556,061.99 |
| **TOTAL DISBURSEMENTS FROM OPERATIONS** | 0.00 | 2,616.77 | 2,840.35 | 2,217.91 | 916.79 | 1,436.49 | 6,574,020.89 | 3.00 | 6,611,045.30 |
| 19. PROFESSIONAL FEES | | | 44,200.00 | 0.00 | 0.00 | 0.00 | 31,240.00 | 0.00 | 178,166.07 |
| 20. U.S. TRUSTEE FEES | | 0.00 | 1,300.00 | 0.00 | 0.00 | 750.00 | 0.00 | 0.00 | 5,630.74 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | | 0.00 |
| **TOTAL DISBURSEMENTS**** | 0.00 | 2,616.77 | 48,340.35 | 2,217.91 | 916.79 | 2,186.49 | 6,605,260.89 | 3.00 | 6,794,842.11 |
| 22. NET CASH FLOW | 0.00 | -616.77 | 1,659.65 | -2,217.91 | -766.79 | 47,813.51 | 844,739.11 | 0.00 | -6,556,045.88 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $2,726.55 | $4,386.20 | $2,168.29 | $1,401.50 | $49,215.01 | $893,954.12 | $893,954.12 | |

* Applies to Individual debtors only

**Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

**MOR-7**

*Revised 07 01 98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

## CASH ACCOUNT RECONCILIATION

**MONTH OF** 10/1-10/31/2021

| | | | | | |
|---|---|---|---|---|---|
| BANK NAME | Broadway | | | Broadway | |
| ACCOUNT NUMBER | [redacted]8640 | # | # | [redacted]3032 | |
| ***ACCOUNT TYPE*** | ***OPERATING*** | ***PAYROLL*** | ***TAX*** | ***OTHER FUNDS*** | ***TOTAL*** |
| BANK BALANCE | -3.00 | | | 893,957.12 | $893,954.12 |
| DEPOSITS IN TRANSIT | 0.00 | | | | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | | $0.00 |
| ADJUSTED BANK BALANCE | ($3.00) | $0.00 | $0.00 | $893,957.12 | $893,954.12 |
| BEGINNING CASH - PER BOOKS | -3.00 | | | 893,957.12 | $893,954.12 |
| RECEIPTS* | 3.00 | | | 0.00 | $3.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 3.00 | | | 0.00 | $3.00 |
| ENDING CASH - PER BOOKS | ($3.00) | $0.00 | $0.00 | $893,957.12 | $893,954.12 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals. Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|---|
| 1. | | | | | | | |
| 2. | | | | | | | |
| 3. | | | | | | | |
| 4. | | | | | | | |
| 5. | | | | | | | |
| 6. | | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | MONTH 7/1-7/31/2021 | MONTH 8/1-8/31/2021 | MONTH 9/1-9/30/2021 | MONTH 10/1-10/31/2021 |
|---|---|---|---|---|---|---|---|
| 1. Jerry G Miers, CPA | | | | | | | |
| 2. Mueller-Smeburg, PLLC | | 44,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3. Granstaff, Gaedke and Edgmon | | | | | | | |
| 4. Douglas Deffenbaugh CPA | | | | | | 4,740.00 | 0.00 |
| 5. CJ Mueller & Assoc | | | | | | 26,500.00 | 0.00 |
| 6. | | | | | | | |
| TOTAL PROFESSIONALS (MO | $0.00 | $44,200.00 | $0.00 | $0.00 | $0.00 | $31,240.00 | $0.00 |

**MOR-9**

**CASE NAME:** KrisJenn Ranch Series Pipeline LLC
**CASE NUMBER:** 20-50805-RBK

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | MONTH 7/1-7/31/2021 | MONTH 8/1-8/31/2021 | MONTH 9/1-9/30/2021 | MONTH 10/1-10/31/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **RECEIPTS:** | | | | | | | | | |
| 2. CASH SALES | | | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | | | 0.00 |
| 6. OTHER (attach list) | | | | | | | | | 0.00 |
| TOTAL RECEIPTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | | | | | | | | 0.00 |
| 12. INSURANCE | | | | | | | | | 0.00 |
| 13. INVENTORY PURCHASES | | | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | | | 0.00 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | | | 0.00 |
| 18. OTHER (attach list) | | | | | | | | | 0.00 |
| **TOTAL DISBURSEMENTS FROM OPERATIONS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 19. PROFESSIONAL FEES | | | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | | | | | | | | 0.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | | 0.00 |
| **TOTAL DISBURSEMENTS**** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 22. NET CASH FLOW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

* Applies to Individual debtors only
**Numbers for the current month should balance (match) RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

20-50805-rbk Doc#332 Filed 01/13/26 Entered 01/13/26 13:05:23 20-50805 Exhibit Pg 85 of 85

**CASE NAME:** KrisJenn Ranch Series Pipeline LLC
**CASE NUMBER:** 20-50805-RBK

## CASH ACCOUNT RECONCILIATION
## MONTH OF 10/31/2021

| | | | | | |
|---|---|---|---|---|---|
| BANK NAME | Broadway | | | | |
| ACCOUNT NUMBER | [redacted]8640 | # | # | | |
| ***ACCOUNT TYPE*** | ***OPERATING*** | ***PAYROLL*** | ***TAX*** | ***OTHER FUNDS*** | ***TOTAL*** |
| BANK BALANCE | 0.00 | | | | $0.00 |
| DEPOSITS IN TRANSIT | 0.00 | | | | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | | $0.00 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BEGINNING CASH - PER BOOKS | 0.00 | | | | $0.00 |
| RECEIPTS* | 0.00 | | | | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 0.00 | | | | $0.00 |
| ENDING CASH - PER BOOKS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

**CASE NAME:** KrisJenn Ranch Series Uvalde Ranch LLC
**CASE NUMBER:** 20-50805-RBK

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 3/1-3/31/2021 | MONTH 4/1-4/30/2021 | MONTH 5/1-5/31/2021 | MONTH 6/1-6/30/2021 | MONTH 7/1-7/31/2021 | MONTH 8/1-8/31/2021 | MONTH 9/1-9/30/2021 | MONTH 10/1-10/31/2021 | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **RECEIPTS:** | | | | | | | | | |
| 2. CASH SALES | | | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | | | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | | 0.00 |
| 5. SALE OF ASSETS | | | | | | | | | 0.00 |
| 6. OTHER (attach list) | | | | | | | | | 0.00 |
| TOTAL RECEIPTS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | | | | | | | | 0.00 |
| 12. INSURANCE | | | | | | | | | 0.00 |
| 13. INVENTORY PURCHASES | | | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | | | | | | 0.00 |
| 17. ADMINISTRATIVE & SELLING | | | | | | | | | 0.00 |
| 18. OTHER (attach list) | | | | | | | | | 0.00 |
| **TOTAL DISBURSEMENTS FROM OPERATIONS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 19. PROFESSIONAL FEES | | | | | | | | | 0.00 |
| 20. U.S. TRUSTEE FEES | | | | | | | | | 0.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | | 0.00 |
| **TOTAL DISBURSEMENTS**** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 22. NET CASH FLOW | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

* Applies to Individual debtors only
**Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

**MOR-7**

*Revised 07 01 98*

**CASE NAME:** KrisJenn Ranch Series Uvalde Ranch LLC
**CASE NUMBER:** 20-50805-RBK

## CASH ACCOUNT RECONCILIATION
## MONTH OF 10/31/2021

| | | | | | |
|---|---|---|---|---|---|
| BANK NAME | Broadway | | | | |
| ACCOUNT NUMBER | [redacted]8640 | # | # | | |
| ***ACCOUNT TYPE*** | ***OPERATING*** | ***PAYROLL*** | ***TAX*** | ***OTHER FUNDS*** | ***TOTAL*** |
| BANK BALANCE | 0.00 | | | | $0.00 |
| DEPOSITS IN TRANSIT | 0.00 | | | | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | | $0.00 |
| ADJUSTED BANK BALANCE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| BEGINNING CASH - PER BOOKS | 0.00 | | | | $0.00 |
| RECEIPTS* | 0.00 | | | | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 0.00 | | | | $0.00 |
| ENDING CASH - PER BOOKS | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

| KrisJenn Ranch, LLC<br>Working Trial Balance<br>10/31/2021 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Beginning | Balances | Transactions | | Balance | | Adjustments | | Balance | |
| Account | 8/31/2021 | | Dr | (Cr) | 9/30/2021 | Dr | # | (CR) | DR/(CR) | |
| Cash - Broadway Bank | -3.00 | | 3.00 | 3.00 | -3.00 | | | | -3.00 | |
| Transfers | 0.00 | | | | 0.00 | | | | 0.00 | |
| Cash - DIP #2 Broadway Bank | 893,957.12 | | 0.00 | 0.00 | 893,957.12 | | | | 893,957.12 | |
| Note Rec - Cope-N-Hagan | 0.00 | | | | 0.00 | | | | 0.00 | |
| Note Rec - SWD - Big Foot Energy | 0.00 | | | 0.00 | 0.00 | | | | 0.00 | |
| Invest - Thunder Rock Ptrshp | | 10,895.00 | | | -10,895.00 | | | | -10,895.00 | |
| Invest - VEC Partnership | 0.00 | | | 0.00 | 0.00 | | | | 0.00 | |
| | | | | | | | | | 0.00 | |
| Automotive Equipment | 0.00 | | | | 0.00 | | | | 0.00 | |
| Accum Deprec | 0.00 | 0.00 | | | 0.00 | | | | 0.00 | |
| | | | | | | | | | | |
| Deferred Gain - SWD Instal Sale | 0.00 | 0.00 | 0.00 | | 0.00 | | | | 0.00 | |
| Payable Post Pet Exp Pd by Larry Wright | | 35,837.63 | | 0.00 | -35,837.63 | | | | -35,837.63 | |
| Note Payable - Pipeline | 0.00 | 0.00 | 0.00 | | 0.00 | | | | 0.00 | |
| Note Payable - Larry Wright | | 75,330.95 | 0.00 | | -75,330.95 | | | | -75,330.95 | |
| | | | | | 0.00 | | | | 0.00 | |
| Capital - Larry Wright | 5,605,684.41 | 0.00 | | | 5,605,684.41 | | | | 5,605,684.41 | 6,377,574.95 |
| Net Proceeds from Sale | | 7,450,000.00 | | 0.00 | -7,450,000.00 | | | | -7,450,000.00 | |
| Trailer Lease | | 3,600.00 | | | -3,600.00 | | | | -3,600.00 | |
| Cattle Auction | 0.00 | 9,715.28 | | 0.00 | -9,715.28 | | | | -9,715.28 | |
| Interest income | 0.00 | | | | 0.00 | | | | 0.00 | |
| Loss on Sale of SWD | 57,844.59 | | 0.00 | | 57,844.59 | | | | 57,844.59 | |
| ST Cap Gain VECPtrshp | 247,366.00 | | 0.00 | | 247,366.00 | | | | 247,366.00 | |
| Loss on Bad Debt | 0.00 | | | | 0.00 | | | | 0.00 | |
| (inc)/Loss Thunder Rd Partnership | 0.00 | | | | 0.00 | | | | 0.00 | |
| (Inc)/Loss VEX Partnership | 0.00 | | | | 0.00 | | | | 0.00 | |
| Revenue/Option Fee- McLeod/Chicago | -150,150.00 | | | 0.00 | -150,150.00 | | | | -150,150.00 | |
| Auto & Truck | 0.00 | | | | 0.00 | | | | 0.00 | |
| Bank Service Charge | 240.00 | | 3.00 | 3.00 | 240.00 | | | | 240.00 | |
| Closing Costs on Ranch Sale | 126,061.99 | | 0.00 | | 126,061.99 | | | | 126,061.99 | |
| Contract Labor | 1,305.00 | | 0.00 | | 1,305.00 | | | | 1,305.00 | |
| Contributions | 0.00 | | | 0.00 | 0.00 | | | | 0.00 | |
| Depreciation | 0.00 | | | | 0.00 | | | | 0.00 | |
| Feed | 19,708.24 | | 0.00 | | 19,708.24 | | | | 19,708.24 | |
| Fuel | 1,089.34 | | 0.00 | | 1,089.34 | | | | 1,089.34 | |
| Ranch electricity | 7,174.11 | | 0.00 | | 7,174.11 | | | | 7,174.11 | |
| Interest expense | 530,000.00 | | 0.00 | | 530,000.00 | | | | 530,000.00 | |
| Legal & Professional | 199,683.07 | | 0.00 | | 199,683.07 | | | | 199,683.07 | |
| Management Fees | 0.00 | | | | 0.00 | | | | 0.00 | |
| Meals & Entertainment | 0.00 | | | | 0.00 | | | | 0.00 | |
| Miscellaneous | 150.00 | | 0.00 | | 150.00 | | | | 150.00 | |
| Office/insurance | 5,021.10 | | 0.00 | | 5,021.10 | | | | 5,021.10 | |
| Other Deductions - Royalty Income | 0.00 | | | | 0.00 | | | | 0.00 | |
| Quarterly Fees- US Trustee | 5,630.74 | | 0.00 | | 5,630.74 | | | | 5,630.74 | |
| Repairs & Maintenance | 25,264.46 | | 0.00 | | 25,264.46 | | | | 25,264.46 | |
| Supplies | 1,671.52 | | 0.00 | | 1,671.52 | | | | 1,671.52 | |
| Taxes - Property | 5,836.17 | | 0.00 | | 5,836.17 | | | | 5,836.17 | |
| Taxes - Franchise | 1,844.00 | | | | 1,844.00 | | | | 1,844.00 | |
| Travel | 0.00 | | | | 0.00 | | | | 0.00 | -6,377,574.95 |
| | 7,585,378.86 | 7,585,378.86 | 6.00 | 6.00 | 0.00 | 0.00 | | 0.00 | 0.00 | |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | KrisJenn Ranch, LLC<br>Expenses<br>10/01/2021 - 10/31/2021 | | | | | | | | | |
| Date | Check # | Payee | Cash Dr/(Cr) | Bank Charges | Supplies | Office Exp/Insurance | Legal & Professional | Note Pay - Larry Wright | Electric | Feed | Mgmt Fee | Repairs & Maintenance | US Trustee Quarterly | Fuel | Taxes - Franchise |
| 10/29/2021 | N/A | Broadway Bank | | 3.00 | | | | | | | | | | | |
| | | | 0.00 | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

# BROADWAY BANK

1177 N.E. Loop 410
San Antonio, TX 78209

Account Number
[redacted]3032
Page 1 of 2 0

broadway.bank
800.531.7650

KRISJENN RANCH LLC
DEBTOR IN POSSESSION #2
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY TX 78123-3418

**Buying a gift card to pay someone? Stop! It's a scam.**

Gift cards are for gifts NOT payments.

Gift cards continue to be the most common form of payment requested by scammers. Gift cards are easily purchased and provide instant funds without setting off any alerts. This method also provides anonymity for the scammer as the gift cards are not tied to an account or person. If someone calls you and demands that you pay them with gift cards, it is a scam. If you paid a scammer with a gift card, contact the company that issued the card immediately. To report scams and to read more about gift card scams please visit FTC.gov/giftcards

## Bank Statement

SUMMARY OF ACCOUNTS

| Account Type | Account # | Balance as of Sep 30, 2021 | YTD Interest |
|---|---|---|---|
| ADVANTAGE BUSINESS CHECKING | [redacted]3032 | $893,957.12 | $0.00 |

This statement reports your balances and activity from Sep 09, 2021 thru Sep 30, 2021 on the following accounts.

ADVANTAGE BUSINESS CHECKING Account #[redacted]3032 Balance: $893,957.12

| | | |
|---|---|---|
| Balance Last Statement | | 0.00 |
| Deposits/Credits | | 893,969.12 |
| Sep 09 | APX XFER FR DDA[redacted]8640 APX TFR RF#131009006308 CARD# | 25.00 |
| Sep 15 | WIRE IN 1041 CHICAGO TITLE OF TEXAS LLC INTERNATIONAL BANK 50 | 893,938.01 |
| Sep 30 | APX XFER FR DDA[redacted]8640 APX TFR RF#114718007161 CARD# | 6.11 |
| Total Debits | | 12.00 |
| Other Withdrawals | | |
| Sep 15 | INCOMING WIRE | 12.00 |

20-50805-rbk Doc#332-1 Filed 01/13/22 Entered 01/13/22 21:05:23 Main Document Designated Documents Pg 84 of 253

# BROADWAY BANK

1177 N.E. Loop 410
San Antonio, TX 78209

Account Number
[redacted]3032
Page 2 of 2 0

broadway.bank
800.531.7650

**Balance This Statement** 893,957.12

Running Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 09-09 | $25.00 | 09-15 | $893,951.01 | 09-30 | $893,957.12 |

END OF STATEMENT

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT, PLEASE CONTACT DEPOSIT OPERATIONS**
**By Phone: 210.283.6500/800.531-7650 * By Mail: P.O. Box 17001, San Antonio, TX 78217**

**In Case of Errors or Questions About Your Electronic Transfers** (e.g. ATM or debit card transactions, direct deposits or withdrawals) Telephone us at 210.283.6500 or 800.531.7650 or write us at Card Operations, P.O. Box 17001, San Antonio, TX 78217 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 30 days after we sent you the FIRST statement on which the error or problem appeared. (1)Include your name and account number; (2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information; and (3) Tell us the dollar amount of the suspected error. (If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.)
We will investigate and if we find we have made an error, we will credit your account when the investigation has been completed.
**Reporting Other Problems** (e.g. Unauthorized Signature or Alteration) You must examine your statement promptly and notify us in writing, within 30 days after the date your statement was mailed or otherwise made available to you, of the facts relevant to any errors, problems or unauthorized transactions on your account. If you fail to report any unauthorized signatures, alterations, or forgeries within 30 days of when your statement was sent or made available, you cannot assert a claim against us and the loss will be entirely yours.
**Deposit Agreement** Your account is governed by the terms of your Deposit Agreement, the Fee Schedule, and other disclosures provided at account opening and amended from time to time. Copies of the current versions of these documents are available at any Banking Center or by calling 210.283.6500 or 800.531.7650.

0:4148

# BROADWAY BANK

1177 N.E. Loop 410
San Antonio, TX 78209

Account Number
[redacted]8640
Page 1 of 2

6

Return Service Requested

broadway.bank
800.531.7650

014148 0.6500 AB 0.461 TR00107

NO INS

BDWY

KRISJENN RANCH LLC
DEBTOR IN POSSESSION
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY TX 78123-3418

**Buying a gift card to pay someone? Stop! It's a scam.**
**Gift cards are for gifts NOT payments.**
Gift cards continue to be the most common form of payment requested by scammers. Gift cards are easily purchased and provide instant funds without setting off any alerts. This method also provides anonymity for the scammer as the gift cards are not tied to an account or person. If someone calls you and demands that you pay them with gift cards, it is a scam. If you paid a scammer with a gift card, contact the company that issued the card immediately. To report scams and to read more about gift card scams please visit FTC.gov/giftcards

## Bank Statement

SUMMARY OF ACCOUNTS

| Account Type | Account # | Balance as of Sep 30, 2021 | YTD Interest |
|---|---|---|---|
| ADVANTAGE BUSINESS CHECKING | [redacted]8640 | -$3.00 | $0.00 |

This statement reports your balances and activity from Aug 31, 2021 thru Sep 30, 2021 on the following accounts.

ADVANTAGE BUSINESS CHECKING Account #[redacted]8640

Balance Last Statement Balance: -$3.00

49,215.01

Total Debits

49,218.01

Checks Written

49,183.90

| Check # | Date Paid | Amount | Check # | Date Paid | Amount |
|---|---|---|---|---|---|
| 157 | 09-08 | 827.57 | 160 | 09-27 | 1,640.00 |
| 158 | 09-03 | 26,500.00 | 161 | 09-30 | 4,650.00 |
| 159 | 09-16 | 3,100.00 | 162 | 09-30 | 12,466.33 |

Other Withdrawals

| | | |
|---|---|---|
| Sep 09 | APX XFER TO DDA [redacted]3032 APX TFR RF#131009006308 CARD# | 25.00 |
| Sep 30 | DEP-Paper Statement Fee | 3.00 |
| Sep 30 | APX XFER TO DDA [redacted]3032 APX TFR RF#114718007161 CARD# | 6.11 |

BDWY-002-014148-002-000-211002 014148 S07
78123341810

20-50805-rbk Doc#310 Filed 01/03/22 Entered 01/03/22 13:05:31 Main Document Pg 63 of 86

BROADWAY BANK

1177 N.E. Loop 410
San Antonio, TX 78209

Account Number
[redacted]8640


6

broadway.bank
800.531.7650

**Balance This Statement** -3.00

Running Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 08-31 | $49,215.01 | 09-09 | $21,862.44 | 09-30 | -$3.00 |
| 09-03 | $22,715.01 | 09-16 | $18,762.44 | | |
| 09-08 | $21,887.44 | 09-27 | $17,122.44 | | |

END OF STATEMENT

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR STATEMENT, PLEASE CONTACT DEPOSIT OPERATIONS**
**By Phone: 210.283.6500/800.531-7650 * By Mail: P.O. Box 17001, San Antonio, TX 78217**

**In Case of Errors or Questions About Your Electronic Transfers** (e.g. ATM or debit card transactions, direct deposits or withdrawals) Telephone us at 210.283.6500 or 800.531.7650 or write us at Card Operations, P.O. Box 17001, San Antonio, TX 78217 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 30 days after we sent you the FIRST statement on which the error or problem appeared. (1)Include your name and account number; (2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information; and (3) Tell us the dollar amount of the suspected error. (If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.)
We will investigate and if we find we have made an error, we will credit your account when the investigation has been completed.
**Reporting Other Problems** (e.g. Unauthorized Signature or Alteration) You must examine your statement promptly and notify us in writing, within 30 days after the date your statement was mailed or otherwise made available to you, of the facts relevant to any errors, problems or unauthorized transactions on your account. If you fail to report any unauthorized signatures, alterations, or forgeries within 30 days of when your statement was sent or made available, you cannot assert a claim against us and the loss will be entirely yours.
**Deposit Agreement** Your account is governed by the terms of your Deposit Agreement, the Fee Schedule, and other disclosures provided at account opening and amended from time to time. Copies of the current versions of these documents are available at any Banking Center or by calling 210.283.6500 or 800.531.7650.

KRISJENN RANCH, LLC
DEBTOR IN POSSESSION
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY, TX 78123

157

Date: 9·1·21

PAY TO THE ORDER OF: MEC

$ 827 57/xx

eight hundred twenty-seven & 57/xx DOLLARS

BROADWAY BANK
(800) 531-7650 • broadway.bank

FOR: FINAL Bill - [redacted] 1003

Larry Wright

⑆114021933⑆ [redacted] 8640⑈ 0157

Ck# 157 Amt $827.57 9-8-2021

electric

KRISJENN RANCH, LLC
DEBTOR IN POSSESSION
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY, TX 78123

162

Date: 9·30·21

PAY TO THE ORDER OF: Larry Wright

$ 12,466 33/xx

twelve thousand four hundred sixty-six & 33/xx DOLLARS

MEC 7·1·20 - 1·21·21 $2841.19
State Farm $18542
3/23 3069 Corey Molloy $1510 3095 982.36
3088 $3000 3104 1227.81
3147 - $700 3164 389.55

BROADWAY BANK
(800) 531-7650 • broadway.bank

Larry Wright

⑆114021933⑆ [redacted] 8640⑈ 0162

Ck# 162 Amt $12,466.33 9-30-2021

$700 ✓3147 - Attached
$1854.2 ? Broadway State Farm
$982.36 ✓ 3095 - Attached - Tx. Farm Store
$1227.81 ✓ 3104 - " " Tx Farm Store
$389.55 ✓ 3109 - Tx. Farm Store
$3,000 ✓ 3088 - attached - pd. Corey Molloy
$1510 ✓ 3069 " " "
2841.19 MEC

KRISJENN RANCH, LLC
DEBTOR IN POSSESSION
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY, TX 78123

158

Date: 9·3·21

PAY TO THE ORDER OF: CJ Muller & Assoc

$ 26,500 00/xx

twenty-six thousand & five hundred & 00/xx DOLLARS

BROADWAY BANK
(800) 531-7650 • broadway.bank

FOR: $1500 Appeal

Larry Wright

⑆114021933⑆ [redacted] 8640⑈ 0158

Ck# 158 Amt $26,500.00 9-3-2021

attorney

KRISJENN RANCH, LLC
DEBTOR IN POSSESSION
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY, TX 78123

159

Date: 9·9·21

PAY TO THE ORDER OF: Douglas F DeffebachCPA

$ 3,100 xx/xx

three thousand one hundred & xx DOLLARS

BROADWAY BANK
(800) 531-7650 • broadway.bank

FOR: DIP Accounting Fees

Larry Wright

⑆114021933⑆ [redacted] 8640⑈ 0159

Ck# 159 Amt $3,100.00 9-16-2021

Acct

KRISJENN RANCH, LLC
DEBTOR IN POSSESSION
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY, TX 78123

160

Date: 9·15·21

PAY TO THE ORDER OF: Deffenbaugh & Lawse, PLLC.

$ 1,640 00/xx

one thousand six hundred forty & 00/xx DOLLARS

BROADWAY BANK
(800) 531-7650 • broadway.bank #5918

FOR: 2020 Tax Preparation

Larry Wright

⑆114021933⑆ [redacted] 8640⑈ 0160

Ck# 160 Amt $1,640.00 9-27-2021

Acct

KRISJENN RANCH, LLC
DEBTOR IN POSSESSION
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY, TX 78123

161

Date: 9·30·21

PAY TO THE ORDER OF: Larry Wright

$ 4650 00/xx

four thousand six hundred fifty & 00/xx DOLLARS

BROADWAY BANK Reimburse Final payments
(800) 531-7650 • broadway.bank

FOR: #3135 Corey Molloy #3138 Rodriguez Ranch Exp. Juan

Larry Wright

⑆114021933⑆ [redacted] 8640⑈ 0161

Ck# 161 Amt $4,650.00 9-30-2021

– Attached # 3135
# 3138

ranch expenses reimbursement

2800 - Corey - Ranch mgr
1850 - Juan - Ranch plumber

BDMY-002-U14148-002-000-211002 014148 S07

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S THIRD AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION**

## ARTICLE I
## SUMMARY AND SUBSTANTIVE CONSOLIDATION

1.01 Summary

This ~~Third~~ Fourth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to substantively consolidate all three Debtors into KrisJenn Ranch, LLC to pay creditors of KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") from the sale of real property and/or pipeline rights.

This Plan generally differs from the Third Amended Plan in that it further clarifies the affect of the appeal pending in the adversary regarding rights in the Express Pipeline, which is defined in the Disclosure Statement. See the redlined plan attached to the Fourth Amended Disclosure Statement for additional Changes.

~~This Plan differs from the Second Amended Plan in that it provides for payment of US Trustee fees, provides for payment of the Mcleod Debt pursuant to a settlement agreement, provides for payment of all creditor debts on or soon after the effective date, and clarifies the affect of the appeal pending in the adversary regarding rights in the Express Pipeline, which is defined in the Disclosure Statement.~~

This Plan provides for paying real estate taxes, administrative claims, one secured class for the Mcleod Oil debt, and 100% of the unsecured debt.

All creditors and equity security holders should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Generally, the plan provides as follows.

Debtors shall pay their secured creditor, Mcleod Oil, from the sales proceeds of the Uvalde Ranch~~ after an unappealable order is entered stating the amount owed McCleod~~.

Except as otherwise stated, Debtors shall pay select governmental claims in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date. The Debtors may prepay these claims in full in the Debtors' business judgment. Debtors shall pay remaining governmental claims upon confirmation.

DMA and Frank Daniel Moore debts related to the "Bigfoot Note" will be paid in full on the effective date.

Debtors shall pay allowed ~~l~~general unsecured claims in full on the effective date.

The remaining DMA, Frank Daniel Moore, and Longbranch Energy claims are all generally disallowed pursuant to the adversary case order in 20-05027 subject to the pending appeal as provided for below.

Equity holders shall all retain their interests as they existed prior to the bankruptcy case filing.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

1.02 Substantive Consolidation

The Plan substantially consolidates the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC. The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC. As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect. Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC. KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01. Class 1. | Secured Claim of McLeod Oil, LLC | Y | Yes |
| 2.02. Class 2. | Claims Of DMA and Frank Daniel Moore | N | No |
| 2.03. Class 3. | DMA and Longbranch Energy, LP Joint Claims | N | No |
| 2.04. Class 4. | Longbranch Energy, LP Claims | N | No |
| 2.07. Class 5. | General Unsecured Claims | Y | Yes |
| 2.09. Class 6. | General Unsecured Administrative Convenience Claims | N | No |
| 2.10. Class 7. | General Unsecured Larry Wright Insider Claim | N | No |
| 2.11. Class 8. | Equity Holders | N | No |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, AND PRIORITY TAX CLAIMS

20-50805-rbk Doc#319 Filed 01/13/26 Entered 01/13/26 13:05:31 Main Document Pg 5 of 85

3.01. Professional Fees and U.S. Trustee Fees.

Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment. These claims do not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $32,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $230,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

Reorganized Debtors shall pay all accrued U.S. Trustee fees on the Effective Date and continue paying all U.S. Trustee fees as required by 1129(a)(12) until an order is entered closing the case.

3.02. Government Claims.

3.02.1. Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service: The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims. If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

3.02.2. Secured Taxing Authority Claims

a. Uvalde County Tax Office. The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805. However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch. The claim was previously paid in conjunction with sale of the Ranch. To the

extent any amount remains, it will be paid on the Effective Date. Uvalde County Tax Office shall retain all its liens until paid.

c. Nacogdoches County filed a claim for $354.60 in case number 20-51083. The claim shall be paid in full at confirmation. Nacogdoches County shall retain all its liens until paid. This claim shall be paid in full on the Effective Date.

d. Angelina County filed a claim for $2536.82 ~~$2,198.21~~ in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. Angelina County shall retain all its liens until paid. This claim shall be paid in full on the Effective Date.

e. Shelby County filed a claim for $357.88~~496.67~~ in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. The claim shall be paid in full on the Effective Date. Shelby County shall retain all its liens until paid.

f. Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtors. Each separate payment which will be applied pro rata to the various tax accounts indicated above. In the event Debtors sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtors shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. Debtors may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time. The Debtors shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan. The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtors' counsel advising of that default, and providing the Debtors

with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Debtors are still paying any pre-petition debt, shall be considered an event of default. A Debtors shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

**Class 1 Claims**:

Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases. Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103. The majority of this claim was satisfied upon sale of the Ranch. Debtor has agreed to settle this claim for $385,000[1]. The Claim shall be paid on the Effective Date in accordance with the Parties' settlement agreement to be filed with the Court.

Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein.

Mcleod will vote on the plans as an impaired creditor.

**Class 2 Claims:**

Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA"). Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027 claims related to Bigfoot Energy. The Court awarded damages and attorney's fees with a remaining balance of $54,471.85~~approximately $47,000~~. The DMA claim in class 2 shall be paid on the Effective Date. ~~Within 10 days of the effective date, DMA shall file an accounting of what it believes it is still owed pursuant to the Court's judgment. If DMA fails to file the accounting, its claim shall be deemed $47,000, and it shall be paid this amount within 30 days of the Effective date. If the accounting is timely filed, Reorganized Debtor shall have 10 days to file an objection with the Court, otherwise the accounting filed by DMA shall be the allowed claim, which shall then be paid within 30 days of the Effective date. If the Reorganized Debtor files an objection to~~

[1] Larry Wright and Gwen Wright are also parties to the settlement transferring 165 acres of their personal mineral rights as consideration.

the accounting, the Claim shall be paid within 30 days of entry of a final, unappealable order on the objection. DMA and Frank Daniel Moore are unimpaired and will not vote on the plan.

**Class 3 Claims:**

Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"). Claim 7 in 20-50805.

DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.

To the extent Longbranch or DMA have filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the

closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 3 is unimpaired and does not vote on the plans.~~Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"). Claim 7 in 20-50805.~~

~~DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.~~ However, ~~if through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold or otherwise disposed of the Express Pipeline during the pendency of the appeal, the value of that interest shall attached solely to the net profits obtained by the Reorganized Debtor from the sale or operation of the Express Pipe line after deducting all expenses incurred by the Debtor in any way related to the Express Pipe Line, including but not limited to, the cost of 1) purchasing the Express Pipeline, 2) maintaining the Express Pipeline, 3) insurance, 4) professional fees, 5) interest, 6) and developing the Express Pipeline.~~

~~To the extent Longbranch or DMA have filed or claimed liens encumbering any of Debtors' property, including but not limited to the Express Pipeline, those liens are void and Debtors may file a copy of the confirmed Plan and Confirmation order with federal, state or local government evidencing the liens have been voided.~~

~~Class 3 is unimpaired and does not vote on the plans.~~

**Class 4 Claims:**

Class 4 are the claims of Longbranch Energy, LP ("Longbranch"). Claim 4 in 20-51083 and Claim 8 in 20-51084.

Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

Longbranch is currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. This appeal will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. Longbranch, and the Reorganized Debtor

will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, Longbranch is ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by Longbranch.

To the extent Longbranch has filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 4 is unimpaired and does not vote on the plans. ~~Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan. However, if through the appeals process, Longbranch is ultimately determined to have an interest in the~~

~~Express Pipeline, and in the event the Reorganized Debtor sold or otherwise disposed of the Express Pipeline during the pendency of the appeal, the value of that interest shall attached solely to the net profits obtained by the Reorganized Debtor from the sale or operation of the Express Pipe line after deducting all expenses incurred by the Debtor in any way related to the Express Pipe Line, including but not limited to, the cost of 1) purchasing the Express Pipeline, 2) maintaining the Express Pipeline, 3) insurance, 4) professional fees, 5) interest, 6) and developing the Express Pipeline.~~

~~To the extent Longbranch has filed or claimed liens encumbering any of Debtors' property, including but not limited to the Express Pipeline, those liens are void and Debtors may file a copy of the confirmed Plan and Confirmation order with federal, state or local government evidencing the liens have been voided.~~

~~Class 4 is unimpaired and does not vote on the plans.~~

~~Class 4 is unimpaired and does not vote on the plans.~~

**Class 5 Claims:**

Class 5 is the impaired general unsecured creditor claims. This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945. The Class 5 claims shall be paid their allowed claim within 120 days of the effective date without interest. Cedillo shall vote on the plan.

**Class 6 Claims:**

Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less. These claims were all scheduled in Case 20-50805, but none of the creditors filed claims in any of the Debtors' cases. The claimants are as follows:

1. C & W Fuels - $1.00
2. Granstaff Gaedke & Edgmon PC - $1.00
3. Hopper's Soft Water Service - $100.00
4. Medina Electric - $1.00
5. Texas Farm Store - $1.00
6. Uvalco Supply - $1.00

The Class 6 claims shall be paid in full on the Effective Date. They are unimpaired and shall not vote on the plan.

**Class 7 Claims:**

Class 7 claim is the general unsecured claim of insider Larry Wright. This claim was scheduled in Case 20-50805 in the amount of $648,209. Additionally, Larry Wright loaned $129,446 to the Company. Finally, Larry Wright contributed 165 acres of mineral rights valued at $1000.00 per acre to the settlement with Mcleod oil to all allow the Debtor to retain cash needed to pay administrative expenses.

The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims and except in regard to the mineral acres contributed by Larry Wright to the settlement with McCleod. The $165,000 in mineral rights shall be reimbursed to Larry Wright on the Effective Date provided there are sufficient funds to pay all other claims due on the Effective Date, to pay any estimated administrative claims likely to come due until the case is closed, and to pay the Class 5 claims. The remainder of the Class 7 Claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date. The claim is deemed unimpaired and shall not vote on the plan.~~Class 7 claim is the general unsecured claim of insider Larry Wright. This claim was scheduled in Case 20-50805 in the amount of $648,209. Additionally, Larry Wright loaned $129,446 to the Company~~

~~The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims. The claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date. The claim is deemed unimpaired and shall not vote on the plan.~~

**Class 8 Claims:**

Class 8 claims are the claims of Debtors' equity holders. The equity holders shall retain their membership/ownership interest in each respective Debtors as that membership/ownership existed prior to the bankruptcy filing.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated. **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for in the Disclosure Statement or herein.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order or otherwise provided herein.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment. Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed in the Disclosure Statement. The Debtors reserve the right to have the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

Retention of Jurisdiction

Under sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a) determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date

(b) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(c) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

(d) hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(e) hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any Litigation Claims, or otherwise to collect or recover on account of any Litigation Claim

(f) issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(g) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(h) hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(i) enforce all orders, judgments, injunctions, releases, exculpations, and rulings entered in connection with the Chapter 11 Cases;

(j) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; (k) hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

(k) enter a final decree closing the Chapter 11 Case.~~The Court will retain jurisdiction as set out in the Plan.~~

Interests Retained by the Debtors

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors. Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors

accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or as indicated below. Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.

Unless the time to file a claim for rejections damages is specifically limited herein or by other court order, rejections damages must be filed no later than 30 days after the effective date of the plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 Continued Corporate Existence. The Debtors shall continue to exist after the Effective Date as their respective Texas entities, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02 Advance Payment of Claims. Provided Debtors stay current on all payments to creditors pursuant to the Plan, Debtors may make advance payments on claims in Debtors' business judgment discretion.

7.03 Payments due under the plan shall come from the remaining Uvalde Ranch proceeds, then monetization of the Pipeline ROW, and then sale of the Thunder Rock Holdings.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1 Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtors' estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtors under title 28 of the United States Code

8.01.2 Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3 Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4 Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as it existed on the Filing Date

8.01.5 Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtors' Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6 Bankruptcy Estate or Estates shall mean all of the assets owned by the Debtors and their respective estates.

8.01.7 Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8 Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of

performance if such breach gives rise to a right to payment, against the Debtors in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9 Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10 Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

8.01.11 Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12 Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13 Creditor shall mean any entity holding a Claim.

8.01.14 Debtors shall mean **KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row**

8.01.15 Disbursing Agent shall mean Krisjenn Ranch, LLC.

8.01.16 Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

8.01.17 Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.18 Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.19 Effective Date shall mean fifteen (15) days after entry of a Final Order confirming Debtors' plan of reorganization.

8.01.20 Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.21 Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

8.01.22 Filing Date shall mean the date Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.23 Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.24 General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.25 Holder shall mean the owner or Holder of any Claim or Interest.

8.01.26 Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.27 Insider has the definition ascribed to it under the Bankruptcy Code.

8.01.28 Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.29 Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit. The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit. Compromises of Avoidance Actions may include cash or benefits to the Debtors or Reorganized Debtors and are not Net Proceeds.

8.01.30 Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.31 Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.32 Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.33 Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.34 Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.35 Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtors has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.01.39 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.01.40 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE IX**
**DISCHARGE AND EFFECT OF CONFIRMATION**

9.01 Legally Binding Effect. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors. **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A. No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B. Affiliate Injunction. A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein. Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default. Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

9.02 Injunction and Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their

property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

9.03 Limited Protection of Certain Parties in Interest Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

9.04 Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

## ARTICLE X
## OTHER PROVISIONS

### DEFAULT

10.01. Default. Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to three (3) notices of default for each calendar year. On the fourth (4th) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

10.02. Vesting of Estate Property and Effect of Default. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in KrisJenn Ranch, LLC, Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor comply with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in KrisJenn Ranch, LLC and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

Respectfully submitted,

BY: /s/ *Larry Wright*
Name: Larry Wright, Manager, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC Series Uvalde Ranch, KrisJenn Ranch, LLC Series Pipeline Row.

THE SMEBERG LAW FIRM, PLLC

BY:/s/ Ronald J. Smeberg
Ronald J. Smeberg
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

**The relief described hereinbelow is SO ORDERED.**

**Signed February 28, 2022.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**ORDER CONFIRMING KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S FOURTH AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION**

On February 3, 2022, KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") filed their Fourth Amended Substantially Consolidated Plan of Reorganization (the "Plan"), and on February 3, 2022, Debtors filed their Fourth Amended Disclosure Statement ("Debtors' Disclosure Statement" or "the Disclosure Statement"). On February 15, 2022, in Docket Number 222, Debtors filed an amendment to the Fourth Amended Substantially Consolidated Plan of Reorganization; however,

20-50805-rbk Doc#234 Filed 02/18/22 Entered 02/18/22 16:48:03 Main Document Pg 2 of 27

the amendment was deemed untimely and the terms thereof are not incorporated into the confirmed Plan.

(1) On February 17, 2022, came on to be heard confirmation of the Plan and final approval of the Disclosure Statement. The Court, having found that the Plan and Disclosure Statement, had been properly transmitted to creditors, equity security holders and parties in interest whose acceptance is required by law, and notice of this hearing, having been given to all interested parties, and the Court, having heard and considered evidence and testimony at such hearing, finds that the Plan proposed herein, have been accepted in writing by the creditors and equity security holders whose acceptance is required by law with the changes announced in open Court on February 17, 2022 as follows:

a) The following shall be added to the treatment of the Nacogdoches and Central Independent School District claims:

Notwithstanding anything in the Plan, this Order, or any related documents, the secured claims for Nacogdoches County and Central Independent School District, as filed in the claim for Angelina County, (the "Tax Claims") will be paid on the later of (1) the effective date or (2) the date the claim becomes an allowed claim. The Tax Claims will be paid in full in the amount of the amended claims, with interest accruing as of the petition date at 12% per annum. All post-petition taxes beginning with the tax year 2021 and subsequent years shall be paid in the ordinary course of business. All other provision contained in Paragraph 3.02.2 of the Plan, not modified herein, apply to the Tax Claims.

(2) The Plan, and the proponents of the Plan, have complied with the provisions of 11 U.S.C. § 1129(a); the Plan has been proposed in good faith and not by any means forbidden;

(3) With respect to each impaired class of claims or interests-

a. Each holder of a claim or interest of such class –

i. has accepted the plan; or

ii. will receive or retain under the plan an account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the

20-50805-rbk Doc#234-1 Filed 12/13/21 Entered 12/13/21 16:48:03 Main Document Designated Documents Pg 3 of 27

Debtors-in-Possession were liquidated under chapter 7 of Title 11 on such date; All payments made or promised by the Debtors, or by any other person or services or for costs and expenses, or in connection with the Plan and incident to the case, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court;

(4) With respect to each class of claims or interests –

a. such class has accepted the plan; or

b. such class is not impaired under the plan;

(5) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider;

(6) The identity, qualifications and affiliations of the persons who are to be directors or officers, or voting trustees, if any, of the Debtors, after confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable and consistent with the interests of the creditors and equity security holders and with public policy;

(7) The identity of any insiders that will be employed or retained by the Debtors, and their compensation, have been fully disclosed;

(8) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

a. with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim

will receive on account of such claim cash equal to the allowed amount of such claim;

b. with respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such claim will receive on account of such claim regular installment payments in cash--(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b));

c. with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) but for the secured status of that claim, the Plan provides that the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed for section 507(a)(8) claimants.

(9) With respect to a class of secured claims that has not accepted the plan, the plan provides-- (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of such claims; and (ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(10) Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan.

It is therefore ORDERED, ADJUDGED and DECREED:

(11) The Plan proposed herein, with the changes announced in open Court on February 17, 2022, has been accepted in writing by the creditors whose acceptance is required by law.

(12) The following is added to the Plan:

a. Notwithstanding anything in the Plan, this Order, or any related documents, the secured claims for Nacogdoches County and Central Independent School

District, as filed in the claim for Angelina County, (the "Tax Claims") will be paid on the later of (1) the effective date or (2) the date the claim becomes an allowed claim. The Tax Claims will be paid in full in the amount of the amended claims, with interest accruing as of the petition date at 12% per annum. All post-petition taxes beginning with the tax year 2021 and subsequent years shall be paid in the ordinary course of business. All other provision contained in Paragraph 3.02.2 of the Plan, not modified herein, apply to the Tax Claims. Texas Governmental Units.

(13) Governmental Units

a) No Effect on Texas Governmental Regulatory Authority. Notwithstanding anything in the Plan or this Order to the contrary, nothing in the Plan or this Order or related documents discharges, releases, precludes, or enjoins: (i) any liability to any Texas governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in the Plan or this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

b) Further, nothing in the Plan or this Order or related documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in the Plan or this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in the Plan or this Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in the Plan or this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan or this Order or to adjudicate any defense asserted under the Plan or this Order.

(14) The Disclosure Statement is Approved.

(15) The Plan proposed herein, with the changes announced in open Court on February 17, 2022, is hereby Confirmed.

(16) The Debtors may conduct all actions necessary to wind up Series Uvalde Ranch and Pipeline Row.

(17) Unfiled claim of Preciliano Jose Flores ("Jose Flores") Jose Flores filed suit against KrisJenn Ranch and Larry Wright in case Number 20-1459 in Guadalupe County. Jose Flores received notice of the bankruptcy but did not timely file a claim. Therefore, the claim is being disallowed. However, this order shall not prejudice Jose Flores from seeking either relief from the automatic stay or relief from the discharge injunction solely to pursue insurance proceeds pursuant to state or bankruptcy law to the extent the Court finds that insurance proceeds are not assets of the estate.

(18) The Court shall retain jurisdiction until this Plan is fully consummated and/or a final decree is entered, whichever event occurs earlier, specially including, but not limited to, the jurisdiction to determine all objections that may be filed to claims of creditors herein; to fix and award all compensation to parties who may be entitled; to herein determine all questions concerning assets or property of the Debtors, including any questions relating to any sums of money, services or property due to the Debtors; and determine all matters of any nature or type necessary and appropriate to carry out the provisions of this Plan.

(19) In the event there are any disputes regarding sale, transfer, or encumbrance of the Pipeline ROW, any party in interest may reopen the bankruptcy case to have the bankruptcy court adjudicate the dispute. The Bankruptcy Court shall be the primary venue for any such dispute; however, by written agreement, or if the Bankruptcy Court is found to not have jurisdiction over the dispute, the parties may have the dispute adjudicated by another competent Court.

(20) In the event of a conflict between the terms of this Order and those of the Plan, the terms of this Order shall control. The Debtors shall continue to file post confirmation reports on the forms required by the United States Trustee and shall continue paying the United States Trustee quarterly fees required by 28 USC Section 1930(a)(6) until the case is closed, dismissed or

20-50805-rbk Doc#334-1 Filed 12/13/23 Entered 12/13/23 16:51:20 Exhibit 20-50805 Designated Documents Pg 115 of 253

converted. The Reorganized Debtor shall file a final post-confirmation quarterly report within 14 days of the case being closed. Debtor shall pay all outstanding quarterly fees in the amount of $1,836.71 and estimated first quarter of 2022 fees in the amount of $3,508.24 on the Effective Date.

(21) A copy of the confirmed Plan is attached as Exhibit A.

# # #

Approved as to Form:

/s/ Ronald J. Smeberg
RONALD J. SMEBERG

THE SMEBERG LAW FIRM, PLLC
4 Imperial Oaks
San Antonio, Texas 78248
210-695-6684 (Tel)
210-598-7357 (Fax)
ron@smeberg.com
ATTORNEY FOR DEBTORS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S FOURTH AMENDED SUBSTANTIVELY CONSOLIDATED PLAN OF REORGANIZATION**

## ARTICLE I
## SUMMARY AND SUBSTANTIVE CONSOLIDATION

1.01 Summary

This Fourth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to substantively consolidate all three Debtors into KrisJenn Ranch, LLC to pay creditors of KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row (the "Debtors") from the sale of real property and/or pipeline rights.

This Plan generally differs from the Third Amended Plan in that it further clarifies the affect of the appeal pending in the adversary regarding rights in the Express Pipeline, which is defined in the Disclosure Statement. See the redlined plan attached to the Fourth Amended Disclosure Statement for additional Changes.

This Plan provides for paying real estate taxes, administrative claims, one secured class for the Mcleod Oil debt, and 100% of the unsecured debt.

All creditors and equity security holders should refer to Articles IV through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Generally, the plan provides as follows.

Debtors shall pay their secured creditor, Mcleod Oil, from the sales proceeds of the Uvalde Ranch.

Except as otherwise stated, Debtors shall pay select governmental claims in equal monthly installments at the statutory rate of interest beginning the first day to occur 30 days after the effective date within 60 months of the bankruptcy filing date. The Debtors may prepay these

claims in full in the Debtors' business judgment. Debtors shall pay remaining governmental claims upon confirmation.

DMA and Frank Daniel Moore debts related to the "Bigfoot Note" will be paid in full on the effective date.

Debtors shall pay allowed general unsecured claims in full on the effective date.

The remaining DMA, Frank Daniel Moore, and Longbranch Energy claims are all generally disallowed pursuant to the adversary case order in 20-05027 subject to the pending appeal as provided for below.

Equity holders shall all retain their interests as they existed prior to the bankruptcy case filing.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

1.02 Substantive Consolidation

The Plan substantially consolidates the assets and liabilities of all three Debtors into KrisJenn Ranch, LLC. The Debtors and their respective Estates shall be substantively consolidated for all purposes under the Plan into KrisJenn Ranch, LLC. As a result of the substantive consolidation, (a) all Intercompany Claims by and among the Debtors (including such Claims arising from rejection of an executory contract), will be eliminated; (b) any obligation of any of the Debtors and all guarantees thereof executed by any of the Debtors will be deemed to be an obligation of KrisJenn Ranch, LLC; (c) any Claim filed or asserted against any of the Debtors will be deemed a Claim against KrisJenn Ranch, LLC; (d) any Interest in any of the Debtors will be deemed an Interest in KrisJenn Ranch, LLC; and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors will be treated as one entity, KrisJenn Ranch, LLC, so that (subject to the other provisions of section 553 of the Bankruptcy Code) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. The substantive consolidation contemplated by this section shall not affect or impair any valid, perfected and unavoidable Lien to which the assets of any Debtor is subject in the absence of substantive consolidation under the Plan, provided, however, it shall not cause any such Lien to secure any Claim which such Lien would not otherwise secure absent such substantive consolidation.

On the Effective Date, except as otherwise provided in the Plan, all Claims based on guarantees of collection, payment, or performance made by any Debtor concerning the obligations of another Debtor shall be discharged, released, and without any further force or effect. Additionally, holders of Allowed Claims or Allowed Interests who assert identical Claims against or Interests in multiple Debtors shall be entitled to a single satisfaction of such Claims or Interests from KrisJenn Ranch, LLC.

Further, on the Effective Date, the Reorganized Debtor, KrisJenn Ranch, LLC is authorized to execute all documents necessary to title all assets previously held by Series Uvalde Ranch or Series Pipeline Row into KrisJenn Ranch, LLC. KrisJenn Ranch, LLC is further authorized to wind up the affairs and file all necessary documents with the Texas Secretary of State and other governmental organizations to dissolve both series.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01. Class 1. | Secured Claim of McLeod Oil, LLC | Y | Yes |
| 2.02. Class 2. | Claims Of DMA and Frank Daniel Moore | N | No |
| 2.03. Class 3. | DMA and Longbranch Energy, LP Joint Claims | N | No |
| 2.04. Class 4. | Longbranch Energy, LP Claims | N | No |
| 2.07. Class 5. | General Unsecured Claims | Y | Yes |
| 2.09. Class 6. | General Unsecured Administrative Convenience Claims | N | No |
| 2.10. Class 7. | General Unsecured Larry Wright Insider Claim | N | No |
| 2.11. Class 8. | Equity Holders | N | No |

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, AND PRIORITY TAX CLAIMS

3.01. Professional Fees and U.S. Trustee Fees.

Although not classified, the professionals who have provided services to the Debtors during the pendency of this Chapter 11 case are entitled to administrative claim treatment. These claims do not include other administration priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a) but to the extent they may

not be paid in the ordinary course of business they are listed here. The estimated amount of such claims is as follows:

| | |
|---|---|
| Smeberg Law Firm, PLLC (Attorneys) | $32,000 |
| CJ Muller & Associates | $190,000 |
| US Trustee | $3,000 |
| Douglas Deffenbaugh CPA | $5,000 |
| Total Estimated Admin Claims | $230,000 |

[This estimate is subject to revision; no claim for administrative claims can be paid absent Court approval.]

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtors' Chapter 11 bankruptcy cases will also be entitled to administrative treatment. These will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtors are moderate for a case of this size.

Reorganized Debtors shall pay all accrued U.S. Trustee fees on the Effective Date and continue paying all U.S. Trustee fees as required by 1129(a)(12) until an order is entered closing the case.

3.02. Government Claims.

3.02.1. Unsecured Priority Claims of the Comptroller of Public Accounts and Internal Revenue Service: The Texas Comptroller of Public Accounts and IRS were provided notice of the bankruptcy filings but did not file claims. If the Comptroller or IRS were to file allowed claims, those claims would be paid in accordance with the Bankruptcy Code.

3.02.2. Secured Taxing Authority Claims

a. Uvalde County Tax Office. The Uvalde County Tax Office filed a claim for $6,451.48 in case number 20-50805. However, the claim should have been filed in case number 20-51083, KrisJenn Ranch, LLC Series Uvalde Ranch. The claim was previously paid in conjunction with sale of the Ranch. To the extent any amount remains, it will be paid on the Effective Date. Uvalde County Tax Office shall retain all its liens until paid.

c. Nacogdoches County filed a claim for $354.60 in case number 20-51083. The claim shall be paid in full at confirmation. Nacogdoches County shall

20-50805-rbk Doc#324 Filed 02/18/22 Entered 02/18/22 15:52:31 Main Document Pg 27 of 27



retain all its liens until paid. This claim shall be paid in full on the Effective Date.

d. Angelina County filed a claim for $2536.82 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. Angelina County shall retain all its liens until paid. This claim shall be paid in full on the Effective Date.

e. Shelby County filed a claim for $357.88 in case number 20-50805. However, the claim should have been filed in case number 20-51084, KrisJenn Ranch, LLC Series Pipeline Row. The claim shall be paid in full on the Effective Date. Shelby County shall retain all its liens until paid.

f. Except as otherwise stated, all Ad Valorem taxes will be paid in full in equal monthly instalments at the statutory rate of interest within 60 months of the petition filing date, with the first payment being made on the first day of the first month following 30 days after the Plan's Effective Date. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. Debtors shall make separate payments on each account consistent with separate amortization schedules provided to the Debtors. Each separate payment which will be applied pro rata to the various tax accounts indicated above. In the event Debtors sell, convey or transfer any property which is collateral of a property tax claim or post confirmation tax debt, the Debtors shall remit such sales proceeds first to the applicable property taxing entity to be applied to the respective tax debt incident to any such property/tax account sold, conveyed or transferred. Debtors may pre-pay the pre-petition tax debt to any of the ad valorem taxing entities at any time. The Debtors shall have thirty (30) days from the Effective Date to object to the any property tax claim; otherwise, such claim is deemed as an allowed secured claim in the amount of its Proof of Claim consistent with the treatment of each tax account under this Plan. The taxing entity shall retain its statutory lien securing their pre-petition and post-petition tax debts until such time as the tax debts are paid in full. Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2019 and subsequent tax years) owing to the taxing entity in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent without need of any ad valorem taxing entity filing an administrative claim and request for payment. Should Debtors fail to make any payments as required in its respective Plan, the taxing entity shall provide written notice of that default by sending written notice by certified mail to Debtors' counsel advising of that default, and providing the Debtors with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, the taxing entity may, without further order of this Court or notice to the Debtors, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay

post-petition and/or post-confirmation taxes while the Debtors are still paying any pre-petition debt, shall be considered an event of default. A Debtors shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, the taxing entity may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtors.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

**Class 1 Claims**:

Class 1 is the impaired secured claim of Mcleod Oil filed in the amount of $6,260,196.08 filed in all three Debtors cases. Duplicate Claims 2,3,4 and 5 in 20-51084, Claim 6 in 20-50805, and Claims 2 in 20-5103. The majority of this claim was satisfied upon sale of the Ranch. Debtor has agreed to settle this claim for $385,000[1]. The Claim shall be paid on the Effective Date in accordance with the Parties' settlement agreement to be filed with the Court.

Mcleod shall maintain all of its liens until it is paid its allowed claim except as provided herein.

Mcleod will vote on the plans as an impaired creditor.

**Class 2 Claims:**

Class 2 are the claims of DMA Properties, Inc. and Frank Daniel Moore ("DMA"). Claim 5 in 20-50805, Claims 1 and 3 in 20-51083, and Claims 1 and 6 in 20-51084.

DMA filed in all three cases and also filed as counterclaims in the adversary case 20-05027 claims related to Bigfoot Energy. The Court awarded damages and attorney's fees with a remaining balance of $54,471.85. The DMA claim in class 2 shall be paid on the Effective Date. DMA and Frank Daniel Moore are unimpaired and will not vote on the plan.

**Class 3 Claims:**

Class 3 is the joint claim of DMA Properties, Inc. ("DMA") and Longbranch Energy, LP ("Longbranch"). Claim 7 in 20-50805.

DMA and Longbranch filed one joint claim related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these

[1] Larry Wright and Gwen Wright are also parties to the settlement transferring 165 acres of their personal mineral rights as consideration.

claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.

To the extent Longbranch or DMA have filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 3 is unimpaired and does not vote on the plans.

**Class 4 Claims:**

Class 4 are the claims of Longbranch Energy, LP ("Longbranch"). Claim 4 in 20-51083 and Claim 8 in 20-51084.

Longbranch filed claims related to the adversary action claiming an interest in the Express Pipeline (as defined in the Disclosure Statement) and other miscellaneous relief, these claims were all denied through the trial and are subject to an appeal. As a result, these claims are being disallowed in their entirety pursuant to the Court's judgment in case 20-05027 and will not receive any distribution under the Plan.

Longbranch is currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. This appeal will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the plan. Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on Longbranch, and the Reorganized Debtors, including their successors and assigns. For purposes of clarity, the term "successor and assigns" does not include any person or entity that is not a successor or assign to an ownership interest in DMA, Longbranch, and/or the Reorganized Debtors.

If through the appeals process, Longbranch is ultimately determined to have an interest in the Express Pipeline, and in the event the Reorganized Debtor sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Reorganized Debtor from the sale or operation of the Express Pipeline. The interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by Longbranch.

To the extent Longbranch has filed or claimed liens, lis pendens, or other documents (collectively "Encumbrances") encumbering any of Debtors' property, including but not limited to the Express Pipeline, those Encumbrances are void and Debtors may file a copy of the confirmed Plan and/or Confirmation order with any federal, state or local government evidencing the liens have been voided.

In the event the Reorganized Debtor receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Reorganized Debtor shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

Nothing herein shall be construed to enlarge DMA or Longbranch's procedural or substantive rights in the Express Pipeline as determined in the Adversary.

Class 4 is unimpaired and does not vote on the plans.

**Class 5 Claims:**

Class 5 is the impaired general unsecured creditor claims. This Class contains the Claim of Davis, Cedillo & Mendoza, Inc. ("Cedillo") in the amount of $2,945. The Class 5 claims shall be paid their allowed claim within 120 days of the effective date without interest. Cedillo shall vote on the plan.

**Class 6 Claims:**

Class 6 are the impaired, general unsecured administrative convenience claims scheduled at $1,000 or less. These claims were all scheduled in Case 20-50805, but none of the creditors filed claims in any of the Debtors' cases. The claimants are as follows:

1. C & W Fuels - $1.00
2. Granstaff Gaedke & Edgmon PC - $1.00
3. Hopper's Soft Water Service - $100.00
4. Medina Electric - $1.00
5. Texas Farm Store - $1.00
6. Uvalco Supply - $1.00

The Class 6 claims shall be paid in full on the Effective Date. They are unimpaired and shall not vote on the plan.

**Class 7 Claims:**

Class 7 claim is the general unsecured claim of insider Larry Wright. This claim was scheduled in Case 20-50805 in the amount of $648,209. Additionally, Larry Wright loaned $129,446 to the Company. Finally, Larry Wright contributed 165 acres of mineral rights valued at $1000.00 per acre to the settlement with Mcleod oil to all allow the Debtor to retain cash needed to pay administrative expenses.

The Class 7 claim shall be subordinated to all other claims in the bankruptcy except equity claims and except in regard to the mineral acres contributed by Larry Wright to the settlement with McCleod. The $165,000 in mineral rights shall be reimbursed to Larry Wright on the Effective Date provided there are sufficient funds to pay all other claims due on the Effective Date, to pay any estimated administrative claims likely to come due until the case is closed, and to pay the Class

5 claims. The remainder of the Class 7 Claim shall be paid in 120 equal monthly installments beginning the 5th year anniversary of the Effective Date with interest at the judgment rate of interest in effect on the Effective Date. The claim is deemed unimpaired and shall not vote on the plan.

**Class 8 Claims:**

Class 8 claims are the claims of Debtors' equity holders. The equity holders shall retain their membership/ownership interest in each respective Debtors as that membership/ownership existed prior to the bankruptcy filing.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated. **Debtors shall file all objections to claims within 60 days of the Confirmation Date except as provided for in the Disclosure Statement or herein.**

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order or otherwise provided herein.

Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

Disputed claims are not permitted to vote on Debtors' plan absent approval of the Court to vote after hearing but disputed claimants may file objections to the disclosure statement and plan.

**The Debtors' adversary filing in case 20-05027 is deemed to be an objection to the claims of** DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore, which was decided by Court Judgment. Debtors contend that the Court's judgment in the 20-05027 adversary resolves all issues regarding the claims of DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore and have found that none of these parties have a secured interest in any of Debtors' assets except the Bigfoot note as discussed in the Disclosure Statement. The Debtors reserve the right to have the Bankruptcy Court clarify these issues both in the Confirmation Order and in future proceedings if needed.

Retention of Jurisdiction

Under sections 105 and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

(a) determine all applications, Claims, adversary proceedings and contested matters pending on the Effective Date

(b) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(c) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

(d) hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

(e) hear and determine motions, application, adversary proceedings, contested matters and other litigation matters filed or commenced after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property under the applicable provisions of Chapter 5 of the Bankruptcy Code or to bring any Litigation Claims, or otherwise to collect or recover on account of any Litigation Claim

(f) issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order,

(g) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(h) hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, this Disclosure Statement, or the Confirmation Order;

(i) enforce all orders, judgments, injunctions, releases, exculpations, and rulings entered in connection with the Chapter 11 Cases;

(j) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; (k) hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims against the Debtor and to enter or enforce any order requiring the filing of any such Claim before a particular date; and

(k) enter a final decree closing the Chapter 11 Case.

Interests Retained by the Debtors

The Debtors are retaining their current ownership interests in their real and personal property, subject to the secured and unsecured claims of its creditors. Debtors retains any and all claims or causes of action against any person or entity: (i) to avoid, set aside, or recover any payment or other transfer made to any person or entity under Section 547, 548, 549, and/or 550 of the Bankruptcy Code, (ii) to avoid, set aside, or recover any payment or other transfer made to any person or entity under any applicable State law(s), (iii) to avoid or set aside any Interest of a person or entity in property under Section 544 of the Bankruptcy Code; (iv) to recover damages against an officer, director, manager, shareholder, member, or insider for breach of their duties to the Debtor or their creditors accruing pre or post-bankruptcy filing; (v) to recover damages for any and all legal or equitable claims against their owners, managers, officers, employees, lawyers, employees or any other person, including but not limited to claims for breach of contract, promissory estoppel, conversion, fraud, breach of fiduciary duty, tortious interference, conversion, defamation, or any other cause of action, regardless of whether the action accrued prior to or after the bankruptcy filing date.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors are rejecting all prepetition executory contracts not specifically assumed by court order or as indicated below. Debtors believe all the organizational agreements within their business entities are not executory; however, to the extent they are found executory, Debtors assume those agreements.

Unless the time to file a claim for rejections damages is specifically limited herein or by other court order, rejections damages must be filed no later than 30 days after the effective date of the plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 Continued Corporate Existence. The Debtors shall continue to exist after the Effective Date as their respective Texas entities, with all the powers of a corporation, partnership, or limited liability company, as applicable, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

7.02 Advance Payment of Claims. Provided Debtors stay current on all payments to creditors pursuant to the Plan, Debtors may make advance payments on claims in Debtors' business judgment discretion.

7.03 Payments due under the plan shall come from the remaining Uvalde Ranch proceeds, then monetization of the Pipeline ROW, and then sale of the Thunder Rock Holdings.

**ARTICLE VIII**
**GENERAL PROVISIONS**

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.01.1 Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtors' estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Allowed or awarded under Bankruptcy Code Sections 33(a) or 331, and all fees and charges assessed against the estate of the Debtors under title 28 of the United States Code

8.01.2 Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

8.01.3 Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

8.01.4 Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date

8.01.5 Bankruptcy Court shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtors' Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

8.01.6 Bankruptcy Estate or Estates shall mean all of the assets owned by the Debtors and their respective estates.

8.01.7 Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

8.01.8 Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

8.01.9 Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

8.01.10 Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

8.01.11 Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

8.01.12 Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

8.01.13 Creditor shall mean any entity holding a Claim.

8.01.14 Debtors shall mean **KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row**

8.01.15 Disbursing Agent shall mean KrisJenn Ranch, LLC.

8.01.16 Disclosure Statement shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

8.01.17 Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

8.01.18 Disputed Claim shall mean that portion (including, where appropriate, the whole) or any Claim (other than an Allowed Claim) that (a) is listed in Debtors' schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtors' schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

8.01.19 Effective Date shall mean fifteen (15) days after entry of a Final Order confirming Debtors' plan of reorganization.

8.01.20 Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

8.01.21 Executory Contracts shall mean any Pre-petition Unexpired Lease(s) or executor contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

8.01.22 Filing Date shall mean the date Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

8.01.23 Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

8.01.24 General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

8.01.25 Holder shall mean the owner or Holder of any Claim or Interest.

8.01.26 Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

8.01.27 Insider has the definition ascribed to it under the Bankruptcy Code.

8.01.28 Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

8.01.29 Net Proceeds shall mean, any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit. The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit. Compromises of Avoidance Actions may include cash or benefits to the Debtors or Reorganized Debtors and are not Net Proceeds.

8.01.30 Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

8.01.31 Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

8.01.32 Priority Tax Claims shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

8.01.33 Professionals shall mean all professional employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

8.01.34 Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

8.01.35 Secured Claim shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtors has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.01.37 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.01.38 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.01.39 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.01.40 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE AND EFFECT OF CONFIRMATION

9.01 Legally Binding Effect. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtors based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtors. **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

**A. No Creditor of the Debtors shall be permitted to collect upon any Claims in any manner other than as provided for in the Plan.**

**B. Affiliate Injunction. A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, officer or director of the Debtors that otherwise would be liable to such holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtors are not in default of the payment terms of such Claim as provided herein. Further, the statute of limitations against any guarantor is suspended during the period the Plan payments are not in default. Notwithstanding the foregoing, these provisions shall not affect the "responsible person" liability as defined by the internal revenue code and applicable to the allowed claim of the Internal Revenue Service.**

9.02 Injunction and Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending Legal Proceedings, if any, against the Debtors and their assets and properties and any proceedings not yet instituted against the Debtors or their assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have

held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or their property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or their property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or their property, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtors or the property of the Debtors or the Estates with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtors or the Estates except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

9.03 Limited Protection of Certain Parties in Interest. Neither (a) the Debtors, or any of their respective employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtors, nor (b) each Professional for the Debtors or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them, (the persons identified in (a) and (b), are collectively referred to as "Protected Persons"), shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of counsel. In any action, suit or Legal Proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct, gross negligence, or *ultra vires* activity or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or Legal Proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

9.04 Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant

20-50805-rbk Doc#234-1 Filed 01/18/22 Entered 01/18/22 14:52:21 Main Document Pg 20 of 27



against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

**ARTICLE X**
**OTHER PROVISIONS**

**DEFAULT**

10.01. Default. Upon default by the Debtors, creditors are required to provide written notice of such Default to the Debtors and their counsel, The Smeberg Law Firm, PLLC by certified mail, return receipt requested, and by regular first-class mail, and the Debtors shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Debtors and Ronald Smeberg. If the Debtors fail to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court. The Debtors shall be entitled to three (3) notices of default for each calendar year. On the fourth (4th) notice of default for a calendar year, creditors shall be allowed to foreclose their liens without further notice of hearing before the Court, or move to have the case converted to a case under Chapter 7.

10.02. Vesting of Estate Property and Effect of Default. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in KrisJenn Ranch, LLC, Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor comply with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in KrisJenn Ranch, LLC and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

Respectfully submitted,

BY: /s/ *Larry Wright*
Name: Larry Wright, Manager, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC Series Uvalde Ranch, KrisJenn Ranch, LLC Series Pipeline Row.

THE SMEBERG LAW FIRM, PLLC

BY:/s/ *Ronald J. Smeberg*
Ronald J. Smeberg
4 Imperial Oaks
San Antonio, Texas 78248
Tel: (210) 695-6684
Fax: (210) 598-7357
ATTORNEY FOR DEBTORS

# UNITED STATES BANKRUPTCY COURT
## Western District of Texas

| | |
|---|---|
| Bankruptcy Case No.: | 20−50805−rbk |
| Chapter No.: | 11 |
| Judge: | Ronald B King |

IN RE: **KrisJenn Ranch, LLC** , Debtor(s)

## NOTICE OF ORDER CONFIRMING PLAN

Notice is hereby given of entry of the following order of this Court on 2/28/22

| | |
|---|---|
| 234 − 211 | Order Confirming Fourth Amended Substantively Consolidated Plan of Reorganization (related document(s): 211 Fourth Amended Substantively Consolidated Plan of Reorganization filed by Ronald J Smeberg for Debtor KrisJenn Ranch, LLC). Application for Final Decree due by 8/29/2022. (Order entered on 2/28/2022) (Luna, Emilio) |

Dated: 2/28/22

Barry D. Knight
Clerk, U. S. Bankruptcy Court

**[Order Confirming Plan Notice]** [Ntcocp11apac]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S**
**MOTION FOR ENTRY OF FINAL DECREE CLOSING CASES**

**THIS MOTION SEEKS AN ORDER THAT MAY AVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY, AND YOU MUST FILE AND SERVE YOUR RESPNSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND DECIDE THE MOTION AT THE HEARING.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row, LLC (the "Debtors"), the reorganized debtors in the above-referenced Chapter 11 proceeding, hereby moves this Court, pursuant to Fed. R. Bankr. P. 3022 and 11 U.S.C. §350(a), for entry of a final decree closing these Chapter 11 cases. The grounds for this motion are as follows:

**SUMMARY**

1. On April, 27, 2020, KrisJenn Ranch, LLC filed a voluntary petition under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101–1330 et sq. (the "Bankruptcy Code") and the case has been fully administered. On February 28, 2022, this Court entered an

Order Confirming Debtor's Fourth Amended Substantially Consolidated Plan of Reorganization (the "Confirmed Plan") proposed by the Debtors in this proceeding.

2. There remain no outstanding motions, adversary proceedings, or contested matters. Likewise, the confirmation order is final and payments under the confirmed Chapter 11 plan have commenced. The Debtors request that a final decree closing this case be entered.

**JURISDICTION AND AUTHORITY**

3. This is a core proceeding. The Court has jurisdiction over both the subject matter and the parties under 28 U.S.C. §1334 and the standing order of reference.

4. The Court may grant the relief sought under 11 U.S.C. §350 and Fed. R. Bankr. P. 3022, which permit the Court to enter a final decree closing the case upon its own motion or on motion of a party in interest.

5. The Plan provides for the retention of jurisdiction by the Bankruptcy Court to enter a Final Decree under Bankruptcy Rule 3022 terminating the Chapter 11 case. Rule 3022 of the Federal Rules of Bankruptcy Procedure further provides that "after an estate is fully administered in a Chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."

6. Under Section 1101(2) of the Bankruptcy Code, this case has been substantially consummated as distributions under the Confirmed Plan have commenced and continue to be distributed.

**RELIEF REQUESTED**

7. The Movant, by this Motion, asks the Court to take judicial notice of the Docket and note the existence of the confirmation order and absence of any pending activity.

8. Accordingly, it is appropriate that the Court enter a final order and decree declaring that this case is fully administered and close the case.

9. Equity suggests that the Court should enter its final decree promptly so that the former Debtors are not required to monitor the cases, pay fees, and the cases may otherwise be closed.

**PRAYER**

WHEREFORE PREMISES CONSIDERED, KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row, requests this Court to enter a final decree closing Cases Numbers **20-50805, 20-51083,** and **20-51084**, respectively, and grant any related relief justified in law or equity.

Dated: April 1, 2022

Respectfully submitted,

*/s/ Ronald J. Smeberg*
THE SMEBERG LAW FIRM, PLLC
RONALD J. SMEBERG
Texas State Bar No. 24033967
4 Imperial Oaks
San Antonio, Texas 78248
(210) 695-6684, Telephone
(210) 598-7357, Facsimile
ATTORNEY FOR DEBTORS

20-50805-rbk Doc#233 Filed 04/01/22 Entered 04/01/22 16:12:31 Main Document Pg 4 of 5

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of April, 2022, true and correct copies of the foregoing motion were forwarded by U.S. first class mail, postage prepaid, on all parties listed on the attached Service List.

*/s/ Ronald J. Smeberg*
RONALD J. SMEBERG

**SERVICE LIST**

**DEBTOR**

KrisJenn Ranch, LLC
410 Spyglass Rd
Mc Queeney, TX 78123-3418

**GOVERNMENT ENTITIES**

Office of the UST
615 E Houston, Room 533
PO Box 1539
San Antonio, TX 78295-1539

U.S. Attorney
Attn: Bkcy Division
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

Internal Revenue Services
Special Procedures Branch
300 E. 8th St. STOP 5026 AUS
Austin, TX 78701

Texas Comptroller of Public Account
Attn: Bankruptcy
P.O. Box 149359
Austin, TX 78714-9359

Angelina County Tax Assessor
606 E Lufkin Ave,
Lufkin, Texas 75901

Nacogdoches County Tax Assessor Collector
101 West Main Street
Nacogdoches, Texas 75961

Rusk County
202 N Main St,
Henderson, Texas 75652

Shelby County, Tax Collector
200 St. Augustine St.
Center, Texas 75935

Tenaha ISD Tax Assessor-Collector
138 College St
Tenaha, TX 75974-5612

Uvalde Tax Assessor
Courthouse Plaza, Box 8
Uvalde, Texas 78801

**NOTICE PARTIES**

METTAUER LAW FIRM
c/o April Prince
403 Nacogdoches St Ste 1
Center, TX 75935-3810

Albert, Neely & Kuhlmann
1600 Oil & Gas Building
309 W 7th St
Fort Worth, TX 76102-6900

Laura L. Worsham
JONES, ALLEN & FUQUAY, LLP
8828 Greenville Ave.
Dallas, Texas 75243

Craig Crockett
CRAIG M. CROCKETT, PC
5201 Camp Bowie Blvd. #200
Fort Worth, Texas 76107

Christopher S. Johns
JOHNS &COUNSEL PLLC
14101 Highway 290 West, ste 400A
Austin, Texas 78737

Timothy Cleveland

20-50805-rbk Doc#249 Filed 01/13/21 Entered 01/13/21 16:25:43 20-50805 Designated

CLEVELAND|TERRAZA
S PLLC
4611 Bee Cave Road, ste
306B
Austin, Texas 78746

**SECURED CREIDITORS**

McLeod Oil, LLC
c/o John W. McLeod, Jr.
700 N Wildwood Dr
Irving, TX 75061-8832

**UNSECURED CREIDITORS**

Bigfoot Energy Services
312 W Sabine St
Carthage, TX 75633-2519

C&W Fuels, Inc.
Po Box 40
Hondo, TX 78861-0040

Davis, Cedillo & Mendoza
755 E Mulberry Ave Ste
500
San Antonio, TX 78212-
3135

Granstaff Gaedke &
Edgmon
5535 Fredericksburg Rd
Ste 110
San Antonio, TX 78229-
3553

Hopper's Soft Water
Service
120 W Frio St
Uvalde, TX 78801-3602

Larry Wright
410 Spyglass Rd
Mc Queeney, TX 78123-
3418

Medina Electric
2308 18th St.
Po Box 370
Hondo, TX 78861-0370

Medina's Pest Control
1490 S Homestead Rd
Uvalde, TX 78801-7625

Texas Farm Store
236 E Nopal St
Uvalde, TX 78801-5317

Uvalco Supply
2521 E Main St
Uvalde, TX 78801-4940

Longbranch Energy
c/o DUKE BANISTER
RICHMOND
Po Box 175
Fulshear, TX 77441-0175

DMA Properties, Inc.
896 Walnut Street at US
123 BYP
Seneca, SC 29678

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **KRISJENN RANCH, LLC** | § | **CASE NO. 20-50805-rbk** |
| | § | |
| | § | |
| **DEBTOR** | § | **(Jointly Administered)** |

**ORDER ON KRISJENN RANCH, LLC, KRISJENN RANCH LLC, SERIES UVALDE RANCH, AND KRISJENN RANCH, LLC, SERIES PIPELINE ROW'S MOTION FOR ENTRY OF FINAL DECREE CLOSING CASE**

Came on this date before the Court to be considered KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row, LLC's Motion for Entry of Final Decree Closing Cases Numbers **20-50805**, **20-51083**, and **20-51084**, respectively (the "Motion"), filed by KrisJenn Ranch, LLC, KrisJenn Ranch LLC, Series Uvalde Ranch, and KrisJenn Ranch LLC, Series Pipeline Row, LLC (hereinafter the "Debtors"), Reorganized Debtor in this Chapter 11 proceeding. After consideration of the pleadings and arguments of counsel, as well as the Court finding notice was proper to the necessary parties and objections to such closing having been resolved, this Court is of the opinion that the relief

Requested in the Motion is

GRANTED; and it is

Further **ORDERED** that, within ten (10) days of entry of this order, Reorganized Debtors shall file a post confirmation quarterly report for the second quarter of 2022 up through the entry date of this order; and it is

Further **ORDERED** that, Reorganized Debtor shall pay all fees pursuant to 11 U.S.C. §1930(a)6 when they are due, with payment to be made to the order of the United States Trustee at the U.S. Trustee Payment Center, P.O. Box 6200-19, Portland, OR 97228-6200. The payment must reflect the Reorganized Debtors' Account Number and be transmitted with a Chapter 11 Disbursement and Fee Report and it is

Further **ORDERED** that, this entry of final decree is without prejudice to the rights of the Reorganized Debtors or any other party in interest to seek to reopen these cases for good cause shown and it is

Further **ORDERED** that, his Court shall retain jurisdiction to enforce or interpret its own orders pertaining to the Chapter 11 Cases and over the Reorganized Debtors to the extent and for the purposes set forth in the plan. Furthermore, the Court shall retain jurisdiction over any pending matter in the Chapter 11 Cases as of the date hereof and it is

Further, **ORDERED, ADJUDGED, AND DECREED** that these proceedings are hereby CLOSED.

###

SUBMITTED AND ENTRY
REQUESTED BY

SMEBERG LAW FIRM, PLLC
RONALD J. SMEBERG
Texas State Bar No. 24033967
4 Imperial Oaks
San Antonio, Texas 78248
(210) 695-6684, Telephone
(210) 598-7357, Facsimile
ron@smeberg.com
ATTORNEY FOR DEBTORS

20-50805-rbk Doc#234 Filed 04/10/22 Entered 04/10/22 15:15:31 Main Document Pg 1

MOR-1

UNITED STATES BANKRUPTCY COURT

CASE NAME: KrisJenn Ranch, LLC
CASE NUMBER: 20-50805-RBK
PROPOSED PLAN DATE:

PETITION DATE:
DISTRICT OF TEXAS: Western
DIVISION: San Antonio

## MONTHLY OPERATING REPORT SUMMARY FOR MONTH March 2022

| MONTH | October | November | December | January | February | March |
|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| INCOME BEFORE INT; DEPREC./TAX (MOR-6) | 3.00 | 0.00 | -6,000.00 | -32,641.36 | -842,385.05 | -14,194.35 |
| NET INCOME (LOSS) (MOR-6) | 3.00 | 0.00 | -6,000.00 | -32,641.36 | -842,385.05 | -14,194.35 |
| PAYMENTS TO INSIDERS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 0.00 | 246,982.05 | 2,945.00 |
| TOTAL DISBURSEMENTS (MOR-7) | 3.00 | 0.00 | 6,000.00 | 32,641.36 | 842,385.05 | 14,194.35 |

***The original of this document must be filed with the United States Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE | | EXP. DATE |
|---|---|---|
| CASUALTY | YES (x) NO ( ) | __-__-__ |
| LIABILITY | YES (x) NO ( ) | __-__-__ |
| VEHICLE | YES ( ) NO ( ) | __-__-__ |
| WORKER'S | YES ( ) NO ( ) | __-__-__ |
| OTHER | YES ( ) NO ( ) | __-__-__ |

CIRCLE ONE

Are all accounts receivable being collected within terms? **(Yes)** No
Are all post-petition liabilities, including taxes, being paid within terms? **(Yes)** No
Have any pre-petition liabilities been paid? **(Yes)** No
If so, describe: paid per Plain
Are all funds received being deposited into DIP bank accounts? **(Yes)** No
Were any assets disposed of outside the normal course of business? Yes **(No)**
If so, describe
Are all U.S. Trustee Quarterly Fee Payments current? **(Yes)** No
What is the status of your Plan of Reorganization? Confirmed

ATTORNEY NAME: Ronald Smeberg
FIRM NAME: The Smeberg Law Firm, PLLC
ADDRESS: 4 Imperial Oaks

CITY, STATE, ZIP: San Antonio Texas 78248
TELEPHONE/FAX: 210-695-6684

I certify under penalty of perjury that the following complete Monthly Operating Report (MOR), consisting of MOR-1 through MOR-9 plus attachments, is true and correct.

SIGNED X [signature] (ORIGINAL SIGNATURE) TITLE: Manager

(PRINT NAME OF SIGNATORY) DATE

Revised 07/01/98

MOR-1

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

# COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* | MONTH | MONTH | MONTH | MONTH | MONTH | 2022 |
|---|---|---|---|---|---|---|---|
| | | October | November | December | January | February | March |
| **CURRENT ASSETS** | | | | | | | |
| Cash | | 893,954.12 | 887,954.12 | 855,312.76 | 855,312.76 | 12,927.71 | -1,266.64 |
| Accounts Receivable, Net | | | | | | | |
| Inventory: Lower of Cost or Market | | | | | | | |
| Prepaid Expenses | | | | | | | |
| Investments | | -10,895.00 | -10,895.00 | -10,895.00 | -10,895.00 | -10,895.00 | -10,895.00 |
| Other | | | | | | | |
| TOTAL CURRENT ASSETS | 0.00 | 883,059.12 | 877,059.12 | 844,417.76 | 844,417.76 | 2,032.71 | -12,161.64 |
| PROPERTY, PLANT & EQUIP. @ COST | | | | | | | |
| Less Accumulated Depreciation | | | | | | | |
| NET BOOK VALUE OF PP & E | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| OTHER ASSETS | | | | | | | |
| 1. Tax Deposits | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | |
| 3. Electric Deposit | | | | | | | |
| 4. | | | | | | | |
| **TOTAL ASSETS** | $0.00 | $883,059.12 | $877,059.12 | $844,417.76 | $844,417.76 | $2,032.71 | ($12,161.64) |

* Per Schedules and Statement of Affairs

**MOR-2**

*Revised 07/01/98* *Revised 07/01/98* *Revised 07/01/98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

# COMPARATIVE BALANCE SHEETS

| LIABILITIES OWNER S E UITY | FILING DATE* | MONTH October | MONTH November | MONTH December | MONTH January | MONTH February | 2022 March |
|---|---|---|---|---|---|---|---|
| **LIABILITIES** | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | | | | | | |
| PRE-PETITION LIABILITIES | | | | | | | |
| Notes Payable - Secured | | | | | | | |
| Priority Debt | | | | | | | |
| Federal Income Tax | | | | | | | |
| FICA/Withholding | | | | | | | |
| Unsecured Debt | | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 |
| Other | | | | | | | |
| TOTAL PRE-PETITION LIABILITIES | 0.00 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 |
| **TOTAL LIABILITIES** | 0.00 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 | 111,168.58 |
| **OWNER S E UITY (DEFICIT)** | | | | | | | |
| PREFERRED STOCK | | | | | | | |
| COMMON STOCK | | | | | | | |
| ADDITIONAL PAID-IN CAPITAL | | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 | -5,605,684.41 |
| RETAINED EARNINGS: Filing Date | | | | | | | |
| RETAINED EARNINGS: Post Filing Date | | 6,377,574.95 | 6,377,574.95 | 6,371,574.95 | 6,338,933.59 | 5,496,548.54 | 5,482,354.19 |
| TOTAL OWNER'S EQUITY (NET WORTH) | 0.00 | 771,890.54 | 771,890.54 | 765,890.54 | 733,249.18 | -109,135.87 | -123,330.22 |
| **TOTAL LIABILITIES OWNERS E UITY** | $0.00 | $883,059.12 | $883,059.12 | $877,059.12 | $844,417.76 | $2,032.71 | ($12,161.64) |

* Per Schedules and Statement of Affairs

**MOR-3**

*Revised 07/01/98* *Revised 07/01/98* *Revised 07/01/98*

CASE NAME: KrisJenn Ranch, LLC
CASE NUMBER: 20-50805-RBK

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| | October | November | December | January | February | March |
| ***TRADE ACCOUNTS PAYABLE*** | | | | | | |
| TAX PAYABLE | | | | | | |
| Federal Payroll Taxes | | | | | | |
| State Payroll Taxes | | | | | | |
| Ad Valorem Taxes | | | | | | |
| Other Taxes | | | | | | |
| TOTAL TAXES PAYABLE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SECURED DEBT POST-PETITION | | | | | | |
| ACCRUED INTEREST PAYABLE | | | | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | |
| OTHER ACCRUED LIABILITIES | | | | | | |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| **TOTAL POST-PETITION LIABILITIES (MOR-3)** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**Payment re uires Court Approval**

**MOR-4**

*Revised 07/01/98*

20-50805-rbk Doc#334 Filed 04/12/22 Entered 04/12/22 16:15:53 Main Document Pg 5 of 11

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

**AGING OF POST-PETITION LIABILITIES**
**MONTH** Mar-22

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | STATE TAXES | AD VALOREM, OTHER TAXES | OTHER |
|---|---|---|---|---|---|---|
| 0-30 | 0.00 | | | | | |
| 31-60 | 0.00 | | | | | |
| 61-90 | 0.00 | | | | | |
| 91+ | 0.00 | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**AGING OF ACCOUNTS RECEIVABLE**

| MONTH | August | September | October | November | December | January |
|---|---|---|---|---|---|---|
| 0-30 DAYS | | | | | | |
| 31-60 DAYS | | | | | | |
| 61-90 DAYS | | | | | | |
| 91+ DAYS | | | | | | |
| TOTAL | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**MOR-5** *Revised 07/01/98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

| | MONTH October | MONTH November | MONTH December | MONTH January | MONTH February | MONTH March | FILING TO DATE |
|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | 3.00 | | | | | | 7,308,254.69 |
| TOTAL COST OF REVENUES | | | | | | | 6,218.96 |
| GROSS PROFIT | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,302,035.73 |
| **OPERATING EXPENSES:** | | | | | | | |
| Selling & Marketing | | | | | | | 0.00 |
| General & Administrative | 0.00 | | | | 3.00 | 2,091.04 | 4,166.97 |
| Insiders Compensation | | | | | | | 0.00 |
| Professional Fees | 0.00 | | | | 246,982.05 | 2,945.00 | 449,610.12 |
| Other | | | | | | | 37,943.67 |
| Other | | | 6,000.00 | 32,641.36 | 595,400.00 | 9,158.31 | 671,898.79 |
| **TOTAL OPERATING EXPENSES** | 0.00 | 0.00 | 6,000.00 | 32,641.36 | 842,385.05 | 14,194.35 | 1,163,619.55 |
| INCOME BEFORE INT, DEPR/TAX (MOR-1) | 3.00 | 0.00 | -6,000.00 | -32,641.36 | -842,385.05 | -14,194.35 | 6,138,416.18 |
| INTEREST EXPENSE | | | | | | | 530,000.00 |
| DEPRECIATION | | | | | | | 0.00 |
| OTHER (INCOME) EXPENSE* | | | | | | | 0.00 |
| OTHER ITEMS** | | | | | | | 126,061.99 |
| TOTAL INT, DEPR & OTHER ITEMS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 656,061.99 |
| NET INCOME BEFORE TAXES | 3.00 | 0.00 | -6,000.00 | -32,641.36 | -842,385.05 | -14,194.35 | 5,482,354.19 |
| FEDERAL INCOME TAXES | | | | | | | 0.00 |
| **NET INCOME (LOSS) (MOR-1)** | $3.00 | $0.00 | ($6,000.00) | ($32,641.36) | ($842,385.05) | ($14,194.35) | $5,482,354.19 |

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

* *Footnote Mandatory.*

* * *Unusual and/or infrequent item(s) outside the ordinary course of business requires footnote.*

**MOR-6** *Revised 07/01/98*

Other - Other payments in March consist of three payments as follows;to Larry Wright as reimbursements for closing costs on the sale of the asset.

1) Nacadoches County $41.42
2)Rusk County Tax Office $63.42
3) Larry Wright Reimbursement for expenses $8800
4) Shelby County Tax Office $253.47

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

| CASH RECEIPTS AND DISBURSEMENTS | MONTH | MONTH October | MONTH November | MONTH December | MONTH January | MONTH February | MONTH March | FILING TO DATE |
|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $0.00 | $893,954.12 | $893,954.12 | $893,954.12 | $887,954.12 | $855,312.76 | $12,927.71 | $0.00 |
| **RECEIPTS:** | | | | | | | | |
| 2. CASH SALES | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,315.28 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | | | | | | 0.00 | 0.00 |
| 4. LOANS & ADVANCES (attach list) | | | | | | | | 73,330.95 |
| 5. SALE OF ASSETS | | | | | | | | 7,450,000.00 |
| 6. OTHER (attach list) | | 3.00 | | | | | | 152,150.00 |
| TOTAL RECEIPTS** | 0.00 | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,688,796.23 |
| (Withdrawal) Contribution by Individual Debtor MFR-2* | | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | | |
| 7. NET PAYROLL | | | | | | | | 0.00 |
| 8. PAYROLL TAXES PAID | | | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | | | | | | | | 1,844.00 |
| 10. SECURED/RENTAL/LEASES | | | | | | | | 0.00 |
| 11. UTILITIES & TELEPHONE | | | | 0.00 | 0.00 | 0.00 | 0.00 | 8,014.89 |
| 12. INSURANCE | | | | | 0.00 | 0.00 | 0.00 | 5,017.49 |
| 13. INVENTORY PURCHASES | | | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | | | | | | | | 0.00 |
| 15. TRAVEL & ENTERTAINMENT | | | | | | | | 0.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | | | | 0.00 | 0.00 | 0.00 | 0.00 | 37,660.41 |
| 17. ADMINISTRATIVE & SELLING | | 3.00 | | | 0.00 | 3.00 | | 231.61 |
| 18. OTHER (attach list) | | | | 6,000.00 | 32,641.36 | 595,400.00 | 9,158.31 | 66,257,818.67 |
| **TOTAL DISBURSEMENTS FROM OPERATIONS** | 0.00 | 3.00 | 0.00 | 6,000.00 | 32,641.36 | 595,403.00 | 9,158.31 | 7,255,030.06 |
| 19. PROFESSIONAL FEES | | | | | | 246,982.05 | 2,945.00 | 428,093.15 |
| 20. U.S. TRUSTEE FEES | | | | | | | 2,091.04 | 7,721.75 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | | | | | 0.00 |
| **TOTAL DISBURSEMENTS** | 0.00 | 3.00 | 0.00 | 6,000.00 | 32,641.36 | 842,385.05 | 14,194.35 | 7,690,062.87 |
| 22. NET CASH FLOW | 0.00 | 0.00 | 0.00 | -6,000.00 | -32,641.36 | -842,385.05 | -14,194.35 | -1,266.64 |
| 23. CASH - END OF MONTH (MOR-2) | $0.00 | $893,954.12 | $893,954.12 | $887,954.12 | $855,312.76 | $12,927.71 | ($1,266.64) | ($1,266.64) |

* Applies to Individual debtors only

**MOR-7** **Numbers for the current month should balance (match) RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8 *Revised 07/01/98*

Other - Other payments in March consist of three payments as follows;to Larry Wright as reimbursements for closing costs on the sale of the asset.

1) Nacadoches County $41.42
2)Rusk County Tax Office $63.42
3) Larry Wright Reimbursement for expenses $8800
4) Shelby County Tax Office $253.47

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

# CASH ACCOUNT RECONCILIATION

## MONTH OF 03/1-03/31/2022

| BANK NAME | Broadway | | | Broadway | |
|---|---|---|---|---|---|
| ACCOUNT NUMBER | [redacted]8640 | # | # | [redacted]3032 | |
| ***ACCOUNT TYPE*** | ***OPERATING*** | ***PAYROLL*** | ***TAX*** | ***OTHER FUNDS*** | ***TOTAL*** |
| BANK BALANCE | -3.00 | | | 4,410.82 | $4,407.82 |
| DEPOSITS IN TRANSIT | 0.00 | | | | $0.00 |
| OUTSTANDING CHECKS | 0.00 | | | 5,677.46 | $5,677.46 |
| ADJUSTED BANK BALANCE | ($3.00) | $0.00 | $0.00 | ($1,266.64) | ($1,269.64) |
| BEGINNING CASH - PER BOOKS | -3.00 | | | 12,927.71 | $12,924.71 |
| RECEIPTS* | | | | | $0.00 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | $0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR MFR-2 | 0.00 | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | | | | 14,194.35 | $14,194.35 |
| ENDING CASH - PER BOOKS | ($3.00) | $0.00 | $0.00 | ($1,266.64) | ($1,269.64) |

**MOR-8**

*Numbers should balance (match) TOTAL RECEIPTS and TOTAL DISBURSEMENTS lines on MOR-7

*Revised 07/01/98*

**CASE NAME:** KrisJenn Ranch, LLC
**CASE NUMBER:** 20-50805-RBK

# PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals. 2022
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) (Attach additional pages as necessary).

| INSIDERS: NAME/COMP TYPE | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| | October | November | December | January | February | March |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| TOTAL INSIDERS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| PROFESSIONALS | MONTH | MONTH | MONTH | MONTH | MONTH | MONTH |
|---|---|---|---|---|---|---|
| | October | November | December | January | February | March |
| 1. Douglas Deffenbaugh CPA | | | | | | |
| 2. CJ Mueller & Assoc | | | | | 214,382.05 | |
| 3. Smeberg Law Firm | | | | | 32,000.00 | |
| 4. Paul Randles, CPA | | | | | 600.00 | |
| 5. Cedillo Law Firm | | | | | | 2,945.00 |
| 6. | | | | | | |
| TOTAL PROFESSIONALS (MOR-1) | $0.00 | $0.00 | $0.00 | $0.00 | $246,982.05 | $2,945.00 |

**MOR-**

*Revised 07/01/98* *Revised 07/01/98* *Revised 07/01/98*

**BROADWAY BANK**

1177 N.E. Loop 410
San Antonio, TX 78209

Account Number

broadway.bank
800.531.7650

Return Service Requested

013917 0.6500 AB 0.461 TR00048

KRISJENN RANCH LLC
DEBTOR IN POSSESSION #2
CASE# 20-50805
410 SPYGLASS RD
MCQUEENEY TX 78123-3418

# Bank Statement

SUMMARY OF ACCOUNTS

| Account Type | Account # | Balance as of Mar 31, 2022 | YTD Interest |
|---|---|---|---|
| ADVANTAGE BUSINESS CHECKING | [redacted]3032 | $4,410.82 | $0.00 |

This statement reports your balances and activity from Feb 28, 2022 thru Mar 31, 2022 on the following accounts.

ADVANTAGE BUSINESS CHECKING Account # [redacted]3032 Balance: $4,410.82

| | |
|---|---|
| Balance Last Statement | 13,530.71 |
| Total Debits | 9,119.89 |
| Checks Written | 316.89 |

| Check # | Date Paid | Amount | Check # | Date Paid | Amount |
|---|---|---|---|---|---|
| 108 | 03-31 | 63.42 | 109 | 03-31 | 253.47 |

Other Withdrawals

| | | |
|---|---|---|
| Mar 31 | DEP-Paper Statement Fee | 3.00 |
| Mar 31 | WITHDRAWAL | 8,800.00 |

Balance This Statement 4,410.82

Running Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 02-28 | $13,530.71 | 03-31 | $4,410.82 | | |

END OF STATEMENT

BNY-002-013917-002-000-220401 013917 107
78123M1810

BROADWAY BANK [redacted] 5052

3-31-22

$8,800.00

Larry Wright

Amt $8,800.00 3-31-2022

KRIS-JENN RANCH LLC 108

3-22-22

Pay to the order of Rusk County Tax Office $ 63 42/xx

Sixty three and 42/xx

BROADWAY BANK

Memo Acct 1217543-0 Larry W. Wright

[redacted]

Ck# 108 Amt $63.42 3-31-2022

KRIS-JENN RANCH LLC 109

3-22-22

Pay to the order of Shelby County Tax Office $ 253 47/xx

Two hundred fifty three & 47/xx

BROADWAY BANK

Memo #619718 Larry Wright

[redacted]

Ck# 109 Amt $253.47 3-31-2022

| | | | |
|---|---|---|---|
| 110 ~ | 3/22 | Nacogdoches County | $41.42 |
| 111 | 3/22 | Cedillo Law Firm | $2,945 |
| 112 | 3/22 | U.S. Trustee | $2,091.04 |
| 113 | 3/27 | Paul Randles | $600 |

**The relief described hereinbelow is SO ORDERED.**

**Signed May 22, 2026.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-50805-RBK |
| | § | |
| KRISJENN RANCH, LLC | § | |
| | § | |
| Debtor. | § | CHAPTER 11 |

**ORDER TO SHOW CAUSE**

This matter comes before the Court in connection with Adversary No. 20-5027, and specifically Defendant DMA Properties, Inc.'s Motion to Enforce Judgment and Sanctions and Seeking Leave to File Fraudulent Transfer Claims, responses and reply thereto, and Third-Party Defendant Larry Wright's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Authority. (Adv. No. 20-5027, ECF Nos. 498, 542).

After reviewing the parties' motions, the record in the adversary proceeding and the underlying bankruptcy case, and the arguments presented at the hearing on May 12, 2026, the Court finds that the record raises substantial questions regarding KrisJenn Ranch, LLC's (the

"Reorganized Debtor") compliance with the confirmed Plan of Reorganization sufficient to warrant inquiry under 11 U.S.C. § 1112(b)(4).[1]

IT IS THEREFORE ORDERED that the Reorganized Debtor shall appear by **Zoom** at a hearing **on June 11, 2026, at 10:00 a.m.** at **https://www.zoomgov.com/my/king.txwb via Zoom Meeting ID: 161 66366756**, and show cause why this case should not be converted from chapter 11 to chapter 7 for cause, including, but not limited to, 11 U.S.C. § 1112(b).

IT IS FURTHER ORDERED that any party in interest may appear and be heard at the hearing on this Order to Show Cause.

IT IS FURTHER ORDERED that the Clerk of the Court shall immediately cause a copy of this Order to be served on the Reorganized Debtor and the United States trustee; and notice of entry of this Order shall be served on all other parties in interest in this case.

# # #

[1] Any consideration of this Order to Show Cause is independent of the Court's rulings on DMA's Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims and Wright's Motion to Dismiss for Lack of Jurisdiction and Authority (Adv. No. 20-5027, ECF Nos. 498, 542).

**The relief described hereinbelow is SO ORDERED.**

**Signed May 22, 2026.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-50805-RBK |
| | § | |
| KRISJENN RANCH, LLC | § | |
| | § | |
| Debtor. | § | CHAPTER 11 |

**ORDER REOPENING BANKRUPTCY CASE**

On October 2, 2025, Defendant, DMA Properties, Inc., filed its Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims in Adversary No. 20-5027. (Adv. No. 20-5027, ECF No. 498). On November 4, 2025, Third-Party Defendant Larry Wright filed his Motion to Dismiss for Lack of Jurisdiction and Authority or, Alternatively, Motion to Stay in the same adversary proceeding. (Adv. No. 20-5027, ECF No. 542).

At the time the motions were filed, the above-captioned bankruptcy case was closed. After reviewing the record, the motions, responses, and replies thereto, the Court finds that cause exists for reopening the bankruptcy case, including but not limited to addressing matters that have a significant connection with the administration of the case. 11 U.S.C. § 350(b).

IT IS, THEREFORE ORDERED that Case No. 20-50805 shall be reopened.

IT IS FURTHER ORDERED that the Clerk of the Court shall immediately cause a copy of this Order and notice of entry of this Order to be served on all parties in interest in this case.

# # #

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE No. 20-50805-rbk** |
| **KRISJENN RANCH, LLC** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR.** | § | **(Jointly Administered)** |

---

**LARRY WRIGHT'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE CONVERTED TO CHAPTER 7**

---

COMES NOW Larry Wright as the former manager and member of KrisJenn Ranch, LLC (the "Wright") and respectfully submits this Response to the Court's *Order to Show Cause Why Case Should Not Be Converted to Chapter 7* (the "Order to Show Cause") entered on May 22, 2026. As discussed in more detail herein, the Court should deny the Order to Show Cause and decline to convert this case for several reasons. First, the Fourth Amended Plan was confirmed over four years ago on February 28, 2022, and was substantially consummated shortly thereafter. The bankruptcy estate terminated upon confirmation, property revested in the Wright, and creditors' rights were fixed by the Plan and subsequent judicial orders. The transfer of the pipeline right-of-way ("ROW") to Express H2O, LLC ("Express H2O") has been known for more than two years. In fact, on March 26, 2024, this Court issued its Opinion After Remand expressly acknowledging that Express H2O held the ROW and noting that "Wright's new entity, Express H2O, LLC, intends to comply with all obligations of the Fourth Amended Chapter 11 Plan." Thus, the Order to Show Cause was issued years after the ROW transfer was known and more than four years after plan confirmation. The Order seeks to unwind a substantially consummated plan based on a supposed plan violation that was already litigated, remedied by constructive trust, and affirmed on appeal by the United States District Court for the Western District of Texas. Second,

conversion is not warranted. No cause for conversion exists under 11 U.S.C. § 1112(b). To the extent additional plan performance is required, Express H2O has unequivocally committed to comply with all plan obligations. The constructive trust imposed by this Court and affirmed by the District Court protects DMA Properties, Inc. ("DMA") and Longbranch Energy, LP's ("Longbranch") interests in the ROW. Third, conversion would not benefit creditors. Rather, it would merely inject uncertainty into ongoing litigation that is poised for favorable resolution. In support thereof, the Respondent would respectfully show as follows:

## I. PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A. Petition Date and Plan Confirmation

1. On April 27, 2020, KrisJenn Ranch, LLC filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The case proceeded through multiple plan amendments, culminating in the confirmation of the Fourth Amended Substantively Consolidated Plan of Reorganization on February 28, 2022.

2. The Confirmed Plan provided for substantive consolidation of KrisJenn Ranch, LLC and its two series (Series Uvalde Ranch and Series Pipeline Row) into a single reorganized entity, KrisJenn Ranch, LLC. The Plan proposed to pay creditors from the sale of real property (the Uvalde Ranch) and/or the monetization of the pipeline ROW.

### B. Payment of Creditor Claims on the Effective Date

3. As represented in the Debtor's Motion for Entry of Final Decree filed on April 1, 2022, the Plan has been substantially consummated.

### C. The ROW Transfer and Constructive Trust Remedy

4. The ROW was transferred to Express H2O after confirmation but before the Court's March 26, 2024 *Opinion After Remand*, wherein the Court addressed DMA's and Longbranch's rights in the ROW. The Court expressly noted that the ROW had been "transferred by KrisJenn to another Larry Wright-controlled entity, [Express H2O], in violation of the terms of the confirmed

chapter 11 plan of reorganization." *In re KrisJenn Ranch, LLC*, Adv. Proc. No. 20-05027, Docket No. 330 (Opinion After Remand) at 4 (Bankr. W.D. Tex. March 26, 2024).

5. Importantly, however, the Court also noted that "Wright's new entity, [Express H2O], intends to comply with all obligations of the Fourth Amended Chapter 11 Plan." *Id.* at 4, fn.2.

6. To protect DMA and Longbranch's interests, the Court imposed a "constructive trust . . . on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn.". *Id.* at 5. The Final Judgment After Remand, entered the same day, rendered judgment that ". . . DMA and Moore recover a constructive trust on the ROW in the hands of [Express H2O], because of the unauthorized transfer by KrisJenn of the ROW to [Express H2O]." *In re KrisJenn Ranch, LLC*, Adv. Proc. No. 20-05027, Docket No. 329 (Judgment) at 2 (Bankr. W.D. Tex. March 26, 2024).

7. On August 11, 2025, United States District Court Judge Xavier Rodriguez affirmed this Court's judgment in all respects. The District Court explicitly approved Express H2O retaining title subject to the constructive trust, holding that "[b]ecause the Bankruptcy Court reviewed the evidence in the record, carefully considered the circumstances presented and because 'the scope and application of a constructive trust is generally left to the discretion of the court imposing it' this Court finds no reason to disturb the Bankruptcy Court's judgment." *In re* KrisJenn Ranch, LLC, Case No. SA-24-CV-00365-XR, Order on Bankruptcy Appeal at 16 (W.D. Tex. Aug. 11, 2025).

8. DMA and Longbranch did not seek further review of the District Court's affirmance. Therefore, the constructive trust remedy is now the law of the case.

**D. The ROW Transfer and Constructive Trust Remedy**

9. Express H2O is actively litigating title to the ROW in Texas state court against Westlake Pipelines LLC ("Westlake"). As explained previously, State District Judge Kassaw has entered summary judgment confirming superior title in Express H2O and quieting title against Westlake.

10. Resolution of this litigation will dramatically increase the ROW's value and marketability, benefiting all stakeholders including DMA and Longbranch, whose net-profits interests depend on successful monetization.

**E. KrisJenn Dissolves**

11. On May 9, 2023, KrisJenn filed its Certificate of Termination of a Domestic Entity, which was accepted by the Texas Secretary of State. Exhibit A.

12. KrisJenn has not reformed or undone the certificate of termination.

## II. LEGAL STANDARD

### A. THE PLAN WAS SUBSTANTIALLY CONSUMMATED, CREDITORS WERE PAID, AND NO CAUSE FOR CONVERSION EXISTS

13. Section 1112(b)(1) provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). The statute makes conversion or dismissal mandatory "for cause" only if it serves "the best interests of creditors and the estate."

14. However, even where cause exists, the court may not convert if it ". . . finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). "A determination of whether or not cause under § 1112(b) exists rests in the sound discretion of the Bankruptcy Court." *In re Sullivan Central Plaza I, LTD.*, 935 F.2d 723 (5th Cir. 1991).

15. The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor. In re Timbers of Inwood Forest Assoc.,808 F.2d 363 (5th Cir. 1987). "The charge to the bankruptcy judge under § 1112" is ". . . to evaluate each debtor's viability and rate of progress in light of 'the best interest of creditors and the estate.'" *Id.*

## III. ARGUMENT

### A. THE PLAN WAS SUBSTANTIALLY CONSUMMATED, CREDITORS HAVE BEEN PAID OR PROTECTED, AND NO CAUSE FOR CONVERSION EXISTS UNDER § 1112(b)

#### a. Substantial Consummation Occurred and Creates Finality

16. Substantial consummation is a statutory measure for determining whether a reorganization plan may be amended or modified by the bankruptcy court. *Manges v. Seattle-First Nat'l Bank* (*In re Manges*), 29 F.3d 1034, 1036 (5th Cir. 1994) (internal quotations omitted). The Fifth Circuit has explained that it ". . . borrowed the 'substantial consummation' yardstick because it informs our judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *Id.*

17. The Plan in the instant bankruptcy case was substantially consummated and payments commenced under the Plan no later than April 1, 2022 (*see* Docket Nos. 243 and 246).

#### b. No Creditor Has Complained Other than DMA and Longbranch and Their Treatment is Consistent with the Plan or Has Been Remedied by Subsequent Order of the Court

18. No creditor has requested conversion and no creditor other than DMA and Longbranch has complained about the Wright's performance. DMA's and Longbranch's treatment is dictated by the Plan and the Plan provides in pertinent part (emphasis added):

> DMA, Longbranch, and the Wright will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Wrights, *including their successors and assigns*. . . .
>
> If through the appeals process, DMA and Longbranch are ultimately determined to have an interest in the Express Pipeline, and in the event the Wright sold, transferred, or otherwise disposed of all or part of the Express Pipeline during the pendency of the appeal, the value of the DMA and Longbranch interest in the Express Pipeline, as determined by the Appellate Court or Bankruptcy Court as applicable, shall attached solely to the proceeds or interests obtained or retained by the Wright from the sale or operation of the Express Pipeline. The

> interest sold, transferred or otherwise disposed of to a third party shall be free and clear of any claims by DMA or Longbranch.
> . . .
> In the event the Wright receives or initiates an offer that purports to transfer or dispose of any interest in the Express Pipeline, Debtor shall tender a copy of the offer to DMA and Longbranch no less than 30 days before closing the offer to allow DMA and/or Longbranch 30 days to reopen the bankruptcy case to raise any concerns they have regarding the transfer with the Bankruptcy Court. Provided DMA and/or Longbranch timely file any concerns they have regarding the transfer with the Bankruptcy Court and request expedited consideration prior to the closing, Wright shall postpone the closing of the offer to a date after the first hearing on DMA and/or Longbranch's filed objection unless the Bankruptcy Court orders otherwise.

19. DMA and Longbranch are already receiving the primary component of what they are entitled to under the Plan-namely, treatment consistent with the results of the adversary proceeding. The primary complaint raised by DMA and Longbranch (beyond their incorrect assertion that constructive trust requires a turnover of the property) is that KrisJenn transferred the ROW to Express H2O. The assertion is that such transfer was in violation of the Plan provisions giving DMA and Longbranch the right to object (notably, not right of first refusal). However, not only has any concerns with the transfer been remedied by Express H2O unequivocally indicating its intention to comply with the Plan, but the concern regarding the transfer was already raised with the Court and dealt with by this Court in the form of the Court permitting the ROW to stay in Express H2O's hands. *In re KrisJenn Ranch, LLC*, Adv. Proc. No. 20-05027, Docket No. 329 (Judgment) at 2 (Bankr. W.D. Tex. March 26, 2024). As expressed on numerous occasions, that was the remedy for the asserted improper transfer to Express H2O, DMA and Longbranch challenged that remedy, and that remedy was affirmed by the District Court and has been enshrined in a final judgment. *Id.*

20. To convert a case on the basis of an asserted Plan violation that has already been remedied by a final judgment provides a double remedy and undermines finality.

**c. Unusual Circumstances Preclude Conversion Under § 1112(b)(2)**

21. Even if the Court were to find "cause" for conversion, § 1112(b)(2) prohibits conversion or dismissal if the Court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." Unusual circumstances are present here.

22. First, the Plan was confirmed over four years ago and substantially consummated shortly thereafter. Creditors have been paid. Property has been transferred. Finality interests have vested.

23. Second, this Court imposed a constructive trust on the ROW after finding that Express H2O intends to comply with all plan obligations. *See Opinion after Remand and Judgment* cited above.

24. Third, Express H2O has unequivocally committed to perform all plan obligations. The Plan provides that DMA and Longbranch are entitled to the treatment that is afforded to them under the final judgment. That final judgment, now affirmed on appeal, provides that DMA and Longbranch's net-profits interests are covenants running with the land and are protected by a constructive trust.

25. Fourth, the ROW title litigation is poised for favorable resolution within three to six months. Conversion would inject uncertainty that could derail settlement negotiations or cloud title, harming all stakeholders.

26. Conversion serves no creditor interest and violates § 1112(b)'s best interests standard.

## B. EXPRESS H2O'S RETENTION OF TITLE SUBJECT TO THE CONSTRUCTIVE TRUST IS THE AFFIRMED LAW OF THE CASE AND PRECLUDES CONVERSION

### a. The Constructive Trust Remedy Was Fully Litigated and Affirmed

27. The law-of-the-case doctrine bars relitigation of issues decided in earlier proceedings in the same case.

28. DMA and Longbranch appealed this Court's decision to leave the ROW in Express H2O's hands subject to a constructive trust. The District Court affirmed, holding that "[b]ecause the Bankruptcy Court reviewed the evidence in the record, carefully considered the circumstances presented and because 'the scope and application of a constructive trust is generally left to the discretion of the court imposing it' this Court finds no reason to disturb the Bankruptcy Court's judgment." *In re* KrisJenn Ranch, LLC, Case No. SA-24-CV-00365-XR, Order on Bankruptcy Appeal at 16 (W.D. Tex. Aug. 11, 2025).

29. The District Court's affirmance is a final judgment on the adequacy of the constructive trust remedy. DMA and Longbranch did not seek further review. The issue is now settled.

### b. The District Court Explicitly Approved Express H2O Retaining Title

30. The Order to Show Cause appears to rest on the premise that the transfer to Express H2O violated the Plan and harms creditors. But that precise issue (whether DMA and Longbranch's interests are adequately protected with the ROW in Express H2O's hands) was litigated, decided, and affirmed on appeal.

31. The District Court did not order the ROW to be returned to KrisJenn. Instead, it affirmed this Court's decision to leave the property in Express H2O's possession subject to the constructive trust. Conversion would effectively reverse the constructive-trust remedy without any change in circumstances or showing of inadequacy.

### c. Express H2O's Commitment to Perform Plan Obligations Eliminates Any Basis for Conversion

32. Express H2O has explicitly stated that it intends to comply with all obligations of the Fourth Amended Chapter 11 Plan. The Plan provides that DMA and Longbranch receive the treatment that is afforded to them under the final judgment. The final judgment grants them a constructive trust on the ROW and 20% net-profits interests each.

33. This commitment, combined with the constructive trust, provides greater protection to creditors than conversion. A Chapter 7 trustee would have no greater ability to monetize the ROW and would inherit the same constructive trust obligations to DMA and Longbranch. Conversion would merely inject uncertainty and delay.

### C. CONVERSION WOULD HARM CREDITORS AND UNDERMINE THE ESTATE'S ABILITY TO MAXIMIZE VALUE

#### a. The Westlake Litigation Is Poised for Favorable Resolution

34. State District Judge Kassaw entered summary judgment confirming superior title in Express H2O and quieting title against Westlake. Resolution of this litigation will increase the ROW's value and marketability, benefiting all stakeholders.

35. Conversion would undermine this litigation in several ways.

36. First, a Chapter 7 trustee may assert competing claims to the ROW, creating a cloud on title that derails the state court litigation. Westlake could use the trustee's involvement to argue Express H2O lacks authority to settle or litigate.

37. Second, the trustee would need time to review the case, assess the ROW's value, and determine a litigation strategy. This delay could cause Express H2O to miss critical deadlines or settlement opportunities.

38. Third, DMA and Longbranch's net-profits interests depend on successful monetization. If the Westlake litigation is undermined, the ROW's value will be diminished, harming DMA, Longbranch, and any other parties with an interest in maximizing asset value.

#### b. A Chapter 7 Trustee Would Inject Uncertainty and Delay

39. A Chapter 7 trustee would have no greater ability to monetize the ROW than Express H2O. The trustee would: (a) face the same title disputes with Westlake; (b) Inherit the

constructive trust obligation to DMA and Longbranch; (c) Incur administrative fees (trustee compensation, professional fees) that would reduce any distribution to creditors; and (d) Lack the institutional knowledge and relationships that Express H2O has developed in the ROW litigation.

40. When the estate has no assets with equity that a trustee could liquidate to pay unsecured creditors, dismissal is appropriate. Conversion is preferable when there are estate assets with equity. Here, conversion yields neither benefit to creditors nor assets for administration.

**c. Conversion Serves No Creditor Interest and Violates § 1112(b)'s "Best Interests" Standard**

41. All allowed creditor claims have been paid or are being performed. No creditor has demonstrated that conversion would provide any benefit. To the contrary, conversion would undermine the Westlake litigation, generate administrative expenses that reduce distributions, inject uncertainty regarding who controls the ROW, delay any potential monetization, and jeopardize the constructive trust remedy that protects DMA and Longbranch.

42. These circumstances establish that conversion is not in the best interests of creditors or the estate.

**D. EVEN IF CONVERSION WERE OTHERWISE APPROPRIATE, THE DEBTOR'S DISSOLUTION AND THE ABSENCE OF ESTATE ASSETS RENDER CONVERSION UNAVAILABLE AND FUTILE**

**a. KrisJenn is Not Eligible as a Chapter 7 Debtor**

43. Several courts have explained that eligibility to convert to a particular chapter under the Code is determined at the time of conversion. For example, the Bankruptcy Court for the Northern District of Ohio was faced with a situation where the chapter 13 debtor passed away. *In re Moore*, No. 15-62639, 2017 Bankr. LEXIS 3385 (Bankr. N.D. Ohio 2017). In considering whether to convert the case to Chapter 7, the court stated: "[s]ince a decedent's estate is not a 'person' for § 109(b) purposes, a probate estate cannot be a chapter 7 debtor." *Id.* at *3.

44. Further:

> It is simply illogical to use the filing date as the benchmark. Conversion results from a change in circumstance warranting

> alteration in the original tack of the case yet, facts which should not be ignored.
>
> Section 706(d) can be used comparatively. It is the complementary section for conversion from chapter 7 cases to other chapters. If the situation was reversed, and the chapter 7 debtor died after filing, and moved to convert to chapter 13, would these courts continue to ignore the death, relying instead on the debtor's eligibility at filing? The court finds it highly unlikely. While a seemingly absurd example, it does drive home the point that there must be a consistent reading and understanding in an effort to make the sections cohesive. The court concludes that the debtor must meet the eligibility requirements at the time of the conversion.

*Id. at* *4.

45. Other cases similarly demonstrate the eligibility must be determined on the date of conversion. *See, e.g. In re Spiser*, 232 B.R. 669, 673 (Bankr. N.D. Tex. 1999); and *In re Jarrett*, 19 B.R. 413, 414 (Bankr. M.D.N.C. 1982).

46. Further, an entity that does not exist cannot be a debtor under Chapter 7. It is well-settled that state law governs a corporate entity's existence and, further, that an entity must exist under state law to file a bankruptcy. *See In re Estate of Medcare HMO*, 998 F.2d 436, 29 C.B.C.2d 255 (7th Cir. 1993) (if the law of the state in which an entity is incorporated classifies such entity as one which is excluded from relief under section 109(b)(2) or if it is substantially similar to one excluded under this section, that entity may not be a debtor); *In re Cedar Tide Corp.*, 859 F.2d 1127 (2d Cir. 1988) (chapter 11 permitted if state permitted corporation in dissolution to continue to sue or be sued and to obtain automatic reinstatement); *see also Midpoint Dev. L.L.C. v. Holliman* (*In re Midpoint Dev. L.L.C.*), 466 F.3d 1201 (10th Cir. 2006) (under Oklahoma law, LLC ceased to exist upon the effective date of its articles of dissolution and was therefore ineligible to be a debtor).

47. Further, cases have held that when a corporation whose charter has been forfeited under state law continues its corporate existence for the purpose of winding up and liquidating, the corporation may liquidate through the provisions of the Bankruptcy Code. *In re ABZ Ins. Servs.,*

*Inc.*, 245 B.R. 255 (Bankr. N.D. Tex. 2000); *In re Tri-Angle Distributors, Inc.*, 21 C.B.C.2d 583, 102 B.R. 151 (Bankr. N.D. Ind. 1989); *In re Anderson,* 94 B.R. 153 (Bankr. W.D. Mo. 1988).

48. Finally, Section 11.356(a) of the Texas Business Organizations Code provides:

> (a) Notwithstanding the termination of a domestic filing entity under this code or the Tax Code, the terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination only for purposes of:
>
> (1) prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity;
> (2) permitting the survival of an existing claim by or against the terminated filing entity;
> (3) holding title to and liquidating property that remained with the terminated filing entity at the time of termination or property that is collected by the terminated filing entity after termination;
> (4) applying or distributing property, or its proceeds, as provided by Section 11.053; and
> (5) settling affairs not completed before termination.

TEX. BUS. ORGS. CODE § 11.356.

49. In the instant case, KrisJenn Ranch was dissolved on May 9, 2023 (Exhibit A), more than three years ago, and therefore lacks capacity to serve as a Chapter 7 debtor and conversion to Chapter 7 is impermissible under 1112(f).

50. Even if KrisJenn retains nominal existence, KrisJenn's dissolution and the passage of time present practical problems. Namely, no corporate officer exists to sign conversion schedules, attend a creditor's meeting, or exercise corporate authority.

**b. No Assets Remain in the Estate for a Trustee to Administer**

51. Upon confirmation of the Plan, all property typically revests in the debtor. 11 U.S.C. § 1141(b). Once the plan was confirmed and the estate property was revested in the debtor, the property was no longer property of the estate subject to the restrictions of the Bankruptcy Code.

52. After confirmation, the ROW vested in the Wright free of the bankruptcy estate. The transfer to Express H2O, even if unauthorized, involved post-confirmation property, not estate property. A Chapter 7 trustee's authority is limited to property of the estate at conversion. If the

estate terminated at confirmation and property revested, the trustee may have nothing to administer.

**c. Dismissal, Not Conversion, Is the Appropriate Remedy if the Court Declines to Continue the Case**

53. If the Court determines that some action is necessary, dismissal is preferable to conversion.

54. Dismissal would Avoid the administrative expenses of a Chapter 7 case and allow parties to pursue their remedies under state law and existing judgments. Dismissal would also preserve Plan finality.

## V. CONCLUSION

55. For the reasons stated above, no cause for conversion exists. The Plan was substantially consummated over four years ago. All allowed creditor claims have been paid or are being performed under court-approved terms. Express H2O has committed to comply with all plan obligations, and DMA and Longbranch's interests are protected by the constructive trust imposed by this Court and affirmed by the District Court.

56. The ROW transfer has been known for more than two years. Conversion at this juncture would not serve the best interests of creditors or the estate, it would merely undermine ongoing litigation, inject uncertainty, generate administrative expenses, and reverse a final, affirmed judgment.

57. Unusual circumstances preclude conversion under § 1112(b)(2).

WHEREFORE, the Respondent respectfully requests that this Court enter an order: 1) vacating the Order to Show Cause; and/or 2) decline to convert this case to Chapter 7; and 3) granting such other relief as the Court deems just and proper.

DATED: July 21, 2026

Respectfully submitted,

**HAYWARD PLLC**

By: /s/ Charlie Shelton
Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/Fax)
cshelton@haywardfirm.com

***Counsel for Larry Wright***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2026, a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system upon the parties receiving electronic notice. Additionally, on July 21, 2026, or within one business day thereof, the foregoing was served via U.S. First Class Mail to all parties on the attached creditor matrix.

*/s/ Charlie Shelton*
Charlie Shelton

Label Matrix for local noticing
0542-5
Case 20-50805-rbk
Western District of Texas
San Antonio
Tue Jul 21 18:46:59 CDT 2026

KrisJenn Ranch, LLC
410 Spyglass Rd
McQueeney, TX 78123-3418

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
San Antonio, TX 78295-1601

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

Albert, Neely & Kuhlmann, LLP
1600 Oil & Gas Building
309 W 7th St
Fort Worth, TX 76102-6900

Angelina County
c/o John P. Dillman
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx 77253-3064

Angelina County Tax Assessor
606 E Lufkin Ave
Lufkin, TX 75901-0434

Bigfoot Energy Services, LLC
312 W Sabine St
Carthage, TX 75633-2519

C&W Fuels, Inc.
Po Box 40
Hondo, TX 78861-0040

CLEVELAND
TERRAZAS PLLC
Timothy Cleveland
4611 Bee Cave Road, Suite 306 B
Austin, TX 78746-5284

DMA Properties, Inc.
c/o Michael J. Black
BURNS & BLACK, PLLC
750 Rittiman Road
San Antonio, TX 78209-5500

DMA Properties, Inc.
c/o NATALIE F. WILSON
745 East Mulberry, Suite 700
San Antonio, Texas 78212-3172

DMA Properties, Inc. and Frank Daniel Moore
c/o NATALIE F. WILSON
745 East Mulberry, Suite 700
San Antonio, Texas 78212-3172

DUKE, BANISTER, RICHMOND, PLLC
Jeffrey Duke
P.O. Box 175
Fulshear, TX 77441-0175

Davis, Cedillo & Mendoza, Inc.
755 E Mulberry Ave Ste 500
San Antonio, TX 78212-3135

Frank Daniel Moore
c/o NATALIE F. WILSON
745 East Mulberry, Suite 700
San Antonio, Texas 78212-3172

Granstaff Gaedke & Edgmon PC
5535 Fredericksburg Rd Ste 110
San Antonio, TX 78229-3553

Guadalupe County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680-1269

Hopper's Soft Water Service
120 W Frio St
Uvalde, TX 78801-3699

Internal Revenue Service
Po Box 7346
Philadelphia, PA 19101-7346

JOHNS &COUNSEL PLLC
Christopher S. Johns
14101 Highway 290 West, Suite 400A
Austin, TX 78737-9376

KRISJENN RANCH, LLC, KRISJENN RANCH, LLC, Se
410 Spyglass Rd
Mc Queeney, TX 78123-3418

Larry Wright
410 Spyglass Rd
Mc Queeney, TX 78123-3418

Longbranch Energy
c/o DUKE BANISTER RICHMOND
Po Box 175
Fulshear, TX 77441-0175

Longbranch Energy, LP
DMA Properties, Inc.
c/o Mr. Michael J. Black
Burns & Black, PLLC
750 Rittiman Road
San Antonio, Texas 78209-5500

METTAUER LAW FIRM, PLLC
c/o April Prince
403 Nacogdoches St Ste 1
Center, TX 75935-3810

McLeod Oil, LLC
c/o John W. McLeod, Jr.
700 N Wildwood Dr
Irving, TX 75061-8832

McLeod Oil, LLC
c/o Laura L. Worsham
Jones Allen & Fuquay, LLP
8828 Greenville Avenue
Dallas, Texas 75243-7143

Medina Electric
2308 18th St.
Po Box 370
Hondo, TX 78861-0370

Medina's Pest Control
1490 S Homestead Rd
Uvalde, TX 78801-7625

Nacogdoches County Tax Assessor
101 W Main St Ste 100
Nacogdoches, TX 75961-4820

Nacogdoches County, et al
c/o Tab Beall
Perdue Brandon Fielder Collins & Mott
PO Box 2007
Tyler, TX 75710-2007

Rusk County Appraisal District
107 N Van Buren St
Henderson, TX 75652-3113

Shelby County
c/o John P. Dillman
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, Tx 77253-3064

Shelby County Tax Collector
200 St. Augustine St.
Center, TX 75935-3959

Tenaha ISD Tax Assessor-Collector
138 College St
Tenaha, TX 75974-5612

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

Texas Farm Store
236 E Nopal St
Uvalde, TX 78801-5391

Uvalco Supply
2521 E Main St
Uvalde, TX 78801-4940

Uvalde County Tax Assessor
Courthouse Plaza, Box 8
Uvalde, TX 78801-5239

Uvalde County Tax Office
209 N High St.
Uvalde, TX 78801-5207

Uvalde County Tax Office
c/o Carlos M. Arce
Perdue, Brandon, Fielder, Collins & Mott
613 NW Loop 410, Ste. 550
San Antonio, TX 78216-5593

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Texas Comptroller of Public Accounts
Capitol Station
Po Box 13528
Austin, TX 78711-3528

End of Label Matrix

| | |
|---|---|
| Mailable recipients | 41 |
| Bypassed recipients | 0 |
| Total | 41 |

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Jane Nelson
Deputy Secretary of State

Exhibit A

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

KRISJENN RANCH, L.L.C.
Filing Number: 702627622

Certificate of Termination May 09, 2023

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on July 01, 2026.

Jane Nelson
Secretary of State

| **Form 651** | | |
|---|---|---|
| Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>FAX: 512/463-5709<br><br>**Filing Fee: $40** | **Certificate of Termination of a Domestic Entity** | **Filed in the Office of the Secretary of State of Texas<br>Filing #: 702627622 05/09/2023<br>Document #: 1244985960002<br>Image Generated Electronically for Web Filing** |

### Entity Information

The name of the domestic entity is:

**KRISJENN RANCH, L.L.C.**

The entity is organized as a : **Domestic Limited Liability Company (LLC)** under the laws of Texas.

The date of formation of the entity is: **May 7, 1997**

The file number issued to the entity by the secretary of state is: **702627622**

### Governing Persons

The names and addresses of each of the filing entity's governing person are:

NAME OF GOVERNING PERSON :
IF INDIVIDUAL
**Larry Wright**
OR
IF ORGANIZATION

ADDRESS OF GOVERNING PERSON :
**410 Spyglass McQueeney TX, USA 78123**

### Event Requiring Winding Up

The nature of the event requiring winding up is:

**A voluntary decision to wind up the entity has been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.**

### Completion of Winding Up

The filing entity has complied with the provisions of the Texas Business Organizations Code governing its winding up.

### Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

### Tax Certificate

A. ☑ Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid.

Certificate of Account Status_Krisjenn Ranch LLC.pdf

B. ☐ The entity is a domestic non profit corporation and is not required to provide a certificate of account status under the provisions of the Texas Business Organizations Code.

**Execution**

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: **May 9, 2023**

**Larry Wright Managing Member**

Signature and title of authorized person(s)

**FILING OFFICE COPY**

**TEXAS COMPTROLLER OF PUBLIC ACCOUNTS**

**Comptroller.Texas.Gov**

May 9, 2023

KRISJENN RANCH, L.L.C.
410 SPYGLASS RD
MC QUEENEY TX 78123-3418

## Certificate of Account Status

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Glenn Hegar, Comptroller of Public Accounts of the State of Texas, DO HEREBY CERTIFY that according to the records of this office

KRISJENN RANCH, L.L.C.

has filed all required reports for taxes administered by the Comptroller under Title 2, Tax Code, and taxes reported due on those reports have been paid. This certificate must be filed with the Texas Secretary of State to legally end the entity's existence in Texas. This certificate is valid through December 31, 2023.

GIVEN UNDER MY HAND AND SEAL
OF OFFICE in the City of
Austin, this 9th day of
May, 2023 A.D.

Glenn Hegar
Texas Comptroller

Taxpayer number: 30119798541
File number: 0702627622

NOTE: Failure by registered Texas entities to legally end existence with the Texas Secretary of State on or before the expiration of this certificate will result in additional franchise tax responsibilities. Texas entities not registered with the Texas Secretary of State and all out-of-state entities are responsible for franchise tax through the last date of business in this state.

Form 05-305 (Rev.1-15/17)

**The relief described hereinbelow is SO ORDERED.**

**Signed September 29, 2026.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL.,** | § | **CASE NO. 20-50805-RBK** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |

**ORDER CONVERTING CASE TO CHAPTER 7**

On September 29, 2026, came on to be heard the Court's *Order to Show Cause* (ECF No. 257). Larry Wright, DMA Properties, Inc. ("DMA"), Frank Daniel Moore ("Moore"), and Longbranch Energy, LP ("Longbranch") appeared by and through counsel of record and announced ready. After hearing the evidence and argument of counsel, the Court is of the opinion that, pursuant to 11 U.S.C. §1112(b)(4), this case should be converted for cause to a case under chapter 7 for the reasons given in the findings of fact and conclusions of law stated on the record following the close of the evidence pursuant to Fed. R. Bankr. P. 7052 and 9014.

It is **ORDERED** that this case is hereby converted to a case under chapter 7 of the Bankruptcy Code.

It is further **ORDERED** that the United States trustee appoint a chapter 7 trustee to administer this case in chapter 7 and set a date and time for the § 341 meeting of creditors.

It is further **ORDERED** that Larry Wright amend the schedules and statement of financial affairs and attend the first meeting of creditors on the date and at the time scheduled by the United States trustee.

# # #

**Information to identify the case:**

Debtor: KrisJenn Ranch, LLC (Name) — EIN: 74−2840947

United States Bankruptcy Court: Western District of Texas — Date case filed in chapter: 11 4/27/20

Case number: 20−50805−rbk — Date case converted to chapter: 7 9/29/26

Official Form 309C (For Corporations or Partnerships)

# Notice of Chapter 7 Bankruptcy Case −− No Proof of Claim Deadline

10/20

**For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at https://pacer.uscourts.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| **1. Debtor's full name** | KrisJenn Ranch, LLC | |
| **2. All other names used in the last 8 years** | dba KrisJenn Ranch, LLC, Series Uvalde Ranch, KrisJenn Ranch, LLC, Series Pipeline Row | |
| **3. Address** | 410 Spyglass Rd<br>McQueeney, TX 78123−3418 | |
| **4. Debtor's attorney**<br>Name and address | KrisJenn Ranch, LLC<br>410 Spyglass Rd<br>McQueeney, TX 78123−3418 | Contact phone _____________<br>Email: None |
| **5. Bankruptcy trustee**<br>Name and address | Christy L Heimer<br>PO Box 140193<br>Austin, TX 78714 | Contact phone 512−291−7105<br>Email: clheimer@trusteeheimer.com |
| **6. Bankruptcy clerk's office**<br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at https://pacer.uscourts.gov. See Court website for electronic filing information: www.txwb.uscourts.gov. | 615 E. HOUSTON STREET, ROOM 597<br>SAN ANTONIO, TX 78205 | Hours open Monday − Friday 8:00 AM − 4:00 PM<br>Contact phone (210) 472−6720<br>Date: 10/5/26 |
| **7. Meeting of creditors**<br>The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | **November 4, 2026 at 01:00 PM**<br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location:<br>**Zoom video meeting: Go to Zoom.us/join, Enter Meeting ID 271 250 6827, Passcode, 1208385126 OR call (915) 245−4499**<br>For additional meeting information go to www.justice.gov/ust/moc |
| **8. Proof of claim**<br>Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now.<br>If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| **9. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS (SAN ANTONIO)

| | | |
|---|---|---|
| IN RE: | . | Case No. 20-50805-rbk |
| | . | Chapter 11 |
| KRISJENN RANCH, LLC, | . | |
| Debtor. | . | |
| . . . . . . . . . . . . . . . | . | |
| | . | Adv. No. 20-05027-rbk |
| KRISJENN RANCH, LLC, | . | |
| Plaintiff, | . | |
| | . | 615 East Houston Street |
| v. | . | San Antonio, TX 78205 |
| DMA PROPERTIES, INC., et al., | . | Tuesday, September 29, 2026 |
| Defendants. | . | 10:00 a.m. |
| . . . . . . . . . . . . . . . | . | |

TRANSCRIPT OF 20-50805 #257 ORDER TO CHARLES JOHN MULLER, IV, RONALD J. SMEBERG AND KRISJENN RANCH, LLC TO APPEAR AND SHOW CAUSE WHY THIS CASE SHOULD NOT BE CONVERTED FROM CHAPTER 11 TO CHAPTER 7 FOR CAUSE, INCLUDING, BUT NOT LIMITED TO, 11 U.S.C. 1112(b);
20-50805 #271 MOTION FOR CLARIFICATION OF ORDER TO SHOW CAUSE;
20-05027 #616 MOTION FOR CLARIFICATION OF JUDGMENT AFTER REMAND;
20-05027 #498 MOTION TO ENFORCE JUDGMENT AND FOR SANCTIONS AND SEEKING LEAVE TO FILE FRAUDULENT CLAIMS;
20-05027 #542 MOTION TO DISMISS FOR LACK OF JURISDICTION AND AUTHORITY OR, ALTERNATIVELY, MOTION TO STAY
BEFORE THE HONORABLE RONALD B. KING
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Operator: Maxine Ortega, ERO

Transcription Company: Access Transcripts, LLC
10110 Youngwood Lane
Fishers, IN 46048
(855) 873-2223
www.accesstranscripts.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For Larry Wright: | Hayward PLLC<br>By: HERBERT C. SHELTON II, ESQ.<br>7600 Burnet Road, Suite 530<br>Austin, TX 78757<br>(737) 881-7100 |
| | Skelton Slusher Barnhill Watkins Wells PLLC<br>By: HOLLI PRYOR-BAZE, ESQ.<br>1616 S. Chestnut St.<br>Lufkin, TX 75901<br>(936) 632-2300 |
| For DMA Properties, Inc., Longbranch Energy, LP, and Frank Daniel Moore: | Cleveland Krist PLLC<br>By: AUSTIN HAMMER KRIST, ESQ.<br>MARIA DE LOURDES ORTIZ, ESQ.<br>303 Camp Craft Road<br>Suite 325<br>Austin, TX 78746<br>(737) 900-7107 |
| | Johns & Counsel PLLC<br>By: CHRISTOPHER S. JOHNS, ESQ.<br>14101 W. U.S. Hwy 290, Suite 400A<br>Austin, TX 78737<br>(512) 399-3150 |
| | Langley & Banack, Inc.<br>By: NATALIE F. WILSON, ESQ.<br>Trinity Plaza II, Suite 700<br>745 East Mulberry<br>San Antonio, TX 78212-3166<br>(21) 736-6600 |
| For the United States Trustee: | DOJ-UST<br>By: JAMES W. ROSE, JR., ESQ.<br>615 East Houston Street, Suite 533<br>San Antonio, TX 78205<br>(210) 472-4640 |

(Proceedings commence at 10:00 a.m.)

THE CLERK: This is the United States Bankruptcy Court of the Western District of Texas. Today is the 29th of September, 2026, where the Honorable Ronald B. King will be presiding in San Antonio, Texas, to hear a San Antonio matter.

THE COURT: Good morning. This is Judge King in San Antonio. Our ten o'clock matters are KrisJenn Ranch, LLC, Number 20-50805, and the adversary proceeding KrisJenn Ranch, LLC v. DMA Properties, 20-5027.

So let's get announcements from those of you that intend to speak this morning, please. Let's go with the plaintiff first, I guess, KrisJenn.

MR. SHELTON: Good morning, Your Honor. This is Charlie Shelton with Hayward PLLC appearing on behalf of Larry Wright.

MS. PRYOR-BAZE: And Holli Pryor-Baze, Your Honor. Hopefully, you can hear me because I can hear you this time. Excellent. I'm also appearing for Mr. Wright.

THE COURT: Okay. And for the other side?

MR. JOHNS: Christopher Johns appearing for DMA Properties, Frank Daniel Moore, and Longbranch Energy.

THE COURT: And, Mr. Rose --

MR. KRIST: And, Your Honor --

THE COURT: -- U.S. Trustee, Mr. Rose.

MR. ROSE: Yes. Good morning, Your Honor. Jim Rose

here for the U.S. Trustee.

THE COURT: Okay. And, Mr. Krist, were you going to speak?

MR. KRIST: Your Honor, I was just going to note in passing that myself and Ms. Ortiz are here, as well. Chris Johns is going to be leading the argument for our side today. It is possible that we might speak up, but we expect him to take the lion's share.

THE COURT: Okay. If they're really messing up bad, you're going to jump in?

MR. KRIST: Just if we can help in some way.

THE COURT: Mm-hmm. Okay.

MR. JOHNS: And, Your Honor, if they don't jump in quick enough, we also have Natalie Wilson on our side, who may address some of the bankruptcy specific questions.

THE COURT: Okay. So if somebody objects and says, only one counsel, what do we do then?

MR. JOHNS: Well, we'll deal with that. We'll -- I'll -- if you --

THE COURT: All right.

MR. JOHNS: -- sustain the objection, I'll keep speaking, Your Honor.

MS. WILSON: We did our best to prepare him, Your Honor.

THE COURT: All right. Well, we've got a number of

matters set this morning, and I don't know that we can do one at a time. I think they're all kind of related. And let me just go through the list real quick.

Number 498, this is in the adversary, motion to enforce the judgment, sanctions, and fraudulent transfer claims; 542, motion to dismiss for lack of jurisdiction; 616, motion for clarification of the judgment. The last two were filed by KrisJenn, or Mr. Wright. And then in the case, the show cause order, ECF 257; the motion to continue filed by Mr. Wright, 270; and 271, the motion for clarification of the show cause, again, filed by Mr. Wright.

So, I guess, let's go back to the -- the oldest one is probably the motion to enforce the judgment. And so, Mr. Johns, would that be you handling that?

MR. JOHNS: Yes, Your Honor.

THE COURT: Okay. Go ahead.

MR. JOHNS: Yes, Your Honor. We come to the Court asking for one of two things to happen, either that the Court enforce the constructive trust, as Judge Rodriguez said you have discretion to do, and order the transfer of the bankruptcy asset, the right-of-way, to DMA Properties, or to convert this case to -- from Chapter 11 to Chapter 7. We've talked before about the reasons why it would be appropriate to either force the construct -- enforce the constructive trust and order the transfer, or order the liquidation of the right-of-way.

And I won't go into big detail, we've -- Your Honor knows the facts. You know, Mr. Wright obtained his interest in the right-of-way through his breach of fiduciary duty. That's been established. He had borrowed money and then -- from an entity called Asilo, then turned around and loaned the purchase money to Black Duck in the undisclosed loan. And the courts -- this Court and the district court have held that that was a breach of his fiduciary duty.

He had also pledged the assets of the right-of-way to the -- to KrisJenn, his entity, and then soon after, pressured Mr. Moore to resign from Black Duck and gave Mr. Moore the same -- his entity the same 20 percent net profits interest that Longbranch received. And two days after Mr. Moore resigned, he closed on a deal that he'd been working on for months with an entity called TCRG, had not disclosed that -- those negotiations to his partner, and he did not disclose DMA and Longbranch's interest to TCRG.

So that was forced to be rescinded. Mr. Wright, who was both a borrower and lender on the illicit Black Duck loan, claimed to foreclose on the loan and took -- claimed 100 percent ownership of the right-of-way.

After that happened, after the TCRG deal was forced to be rescinded, Mr. Wright and KrisJenn then entered a separate deal with McLeod Oil and, again, failed to disclose DMA and Longbranch's net profits interests. That's when the

lawsuits began, when things were going poorly for Mr. Wright's entities in state court. He threw his entity, KrisJenn, into bankruptcy here. The Court had -- this Court had initially held that those interests were merely personal covenants. We appealed. We won the appeal. The district court ultimately recognized that my client's interests were real covenants that attach and run with the land and are binding on successors or assigns.

But as Your Honor knows, three weeks before that ruling, Mr. Wright and his family transferred the right-of-way to Express, in violation of the Court's order, a clear -- clear violation. The Court has addressed that. And we also know, based on some of the documents we've seen, based on Mr. Wright's own testimony at the October 2025 hearing, that there was no consideration given by Express for those interests. And even worse, Mr. Wright had set up things so that if things did go against him in court, he would not own anything personally. He -- and so it made the execution of the $750,000 fee award -- it's made that virtually impossible. We know it was -- that it was a fraudulent transfer from insiders to insiders, for no consideration, structured in a way to make enforcement of the judgment more difficult, or even impossible, at least for portions of it.

We came to the Court when we found out that the right-of-way was still in the hands of Express because we had

believed that it had been transferred based on previous counsels' -- multiple representations to this Court. We believed that it had been transferred back to KrisJenn. But we then found out that Mr. Wright and the people around him chose to dissolve KrisJenn. They filed papers with the Texas Secretary of State to dissolve it during the pendency of this bankruptcy. That alone, under case law, is cause -- and under the statutes, is cause for liquidation, just the fact that he shut down the bankruptcy debtor's entity; he shut it down.

So we came to this Court seeking enforcement of the constructive trust. You know, that -- here, we are. We're talking about this now. And I guess what -- it was -- Mr. Wright still hasn't paid a single dollar of the award. He's evaded service by the U.S. Marshals. He claimed he couldn't transfer the right-of-way to Express. He told the Court that it was impossible because it wasn't available with the Texas Secretary of State. Also, not true.

So, you know, we're -- it's appropriate, based on everything that's happened, the violation of the Court's order, the fact that he got this through breaches of fiduciary duty in the first place, the -- both the pledge of -- got it to KrisJenn, got the money in the first place for Black Duck, all through breaches of fiduciary duty, then violates this court order, then during the pendency of the appeal, shuts down the entity that was the proper holder of this right-of-way so that

it wouldn't be in front of the Court, thinking that somehow, by violating the Court's order, they could somehow make it impossible for there to be any adequate remedy.

And so, you know -- and it's not just, Your Honor, what has happened in the past; this is also about what's happening right now and what is likely to happen in the future. We know that our friends on the other side have argued that our interest -- my client's interest, the 20 percent that attach and run with the land, don't run -- don't really attach and run with the land. I think Ms. Holli Pryor-Baze said it's not that kind of attach and run. They want to redo -- re-litigate this whole thing and have the theory that, from one sale, they can dispose of my client's interests. That's not what "attach and runs with the land" means. It's not what Judge Pulliam said; it's not what your final judgment says. It says, "attach and run with the land, binding on successors or assigns." You cannot get rid of that kind of interest simply by selling it and washing it clean.

So, Your Honor, we are very concerned, given the current counsels' litigation positions, that we do not even have our 20 percent. They say two things, really. One, that that constructive trust means nothing. The constructive trust doesn't mean anything. It means the protection of the 20 percent.

I'd invite Your Honor to look back at the -- your own

final judgment here. It's a separate line. It means something different. It was for the -- as Judge Pulliam had explained, it was to go back and look at whether it was appropriate to order some kind of remedy that was -- that addressed the gain-based problem of Mr. Wright breaching his fiduciary duties and therefore -- thereby making a profit off of that, or getting something because he breached his fiduciary duties. That's what that remedy was for.

And yet, they come -- the new counsel has come in and said that our 20 percent does not really attach and run with the land. It's not really binding on successors or assigns. We sell it one time, and it's over. That's the position that they've articulated to this Court, and I'm shocked that they would do that because that, to everybody, signals that we've got years and years more of litigation, unless Your Honor brings a close to it by ordering a liquidation or a transfer.

And I'd just like to address a couple of little technical points. Cause for conversion is listed in Section 112(b). It's a non-exhaustive list. The --

THE COURT: 1112?

MR. JOHNS: 112 -- 1112(b). My apologies, Your Honor.

It's a non-exhaustive list. The debtors have an obligation to remain in good standing under state law, paying franchise taxes, et cetera. And if they forfeit their charter,

that constitute cause -- that constitutes cause for conversion.

And in any event, even if that weren't enough, based on the failure to provide -- to abide by the plan and the conservation -- confirmation order and the fraudulent transfer of estate assets, that provides additional grounds for cause. And so once cause is established, the only course of action that this Court takes is conversion or dismissal, unless they're in unusual circumstances. And when deciding between conversion and dismissal, the Court must be guided by what is in the best interest of the creditors and the estate.

We are the creditors here, and we're asking for conversion. Bankruptcy court is also a court of equity under 11 U.S.C. Section 105(a), and the bankruptcy can import -- can impose appropriate sanctions and remedies if a debtor or -- a reorganized debtor fails to comply with the bankruptcy court's order, so long as the Bankruptcy Code doesn't prohibit the precise relief requested.

Here, the reorganized debtor failed to comply with the confirmation order, has failed in its fiduciary duties to its creditors, and in some circumstances, conversion to Chapter 7, where the debtor is removed from possession, is an appropriate remedy.

We'd also point out there's an argument that, hey, we got rid of KrisJenn, and therefore, we're not a person under anymore, and -- we're not a person anymore, under the

Bankruptcy Code, but there is no state -- there's no case law, no statute, no rule that says that a case cannot be converted to Chapter 7 post-confirmation, that we were able to find. It's true that the beginning of the process, that entity needs to be in existence. But it's not true that it needs to remain in existence throughout. And, in fact, dissolving it, as the debtor did here, is itself cause for conversion. And, you know, Mr. Wright has argued that KrisJenn is not eligible as a debtor under the Texas statute, because it filed its certificate of termination on May 9, 2023, which is more than nine years ago. But under the Texas Business Organizations Code --

THE COURT: Well, it wasn't nine years ago, was it?

MR. JOHNS: No. It was not. It was -- that was just a little over three years ago --

THE COURT: Oh, okay.

MR. JOHNS: -- that he filed a certificate of termination --

THE COURT: Okay.

MR. JOHNS: -- unknown -- without providing anybody any notice of it.

THE COURT: Okay.

MR. JOHNS: Under Texas Business Organizations Code Section 11.356(c), KrisJenn survives indefinitely if an action against it was filed within the statutory survival period, as

happened here, until all judgments, orders, and decrees have been fully executed.

So we ask Your Honor to enforce the bankruptcy plan. We ask Your Honor to enforce the final judgment, with two -- you know, one of two paths, either order the transfer of the right-of-way to DMA, or we -- you convert to Chapter 7 and we liquidate. That gives the parties the best chance of being able to finally end this and get going on things. We've been in litigation with each other for over eight years. And we ask Your Honor, respectfully, for this -- to bring an end to this.

THE COURT: Okay. Now, I said we're going to do everything together, but let's talk about just the adversary for now. So the other two items in the adversary are the motion to dismiss, filed by Mr. Wright, for lack of jurisdiction, and the motion for clarification of the judgment. So what's your position on those two motions before we let them present them?

MR. JOHNS: Yes, Your Honor. Judge Rodriguez had -- has told Your Honor that you have discretion on how you are going to enforce the constructive trust. That's the big takeaway. He did not say that you lacked jurisdiction. He did not say that it was allowed to stay in the hands of Express. He said that you have discretion in deciding what to do. And your discretion, properly exercised, is either to enforce the final judgment through the constructive trust and order the

transfer of the asset to DMA, or --

THE COURT: Mm-hmm.

MR. JOHNS: -- or to convert to Chapter 7.

THE COURT: Is there a lack of jurisdiction or does the judgment need to be clarified, in your opinion?

MR. JOHNS: No, Your Honor. There have been -- the other side has filed more motions for clarification to more judges than I have ever seen in a single case in my life. They asked Judge Pulliam for clarification. They asked Judge Rodriguez for clarification, at least once. They've asked you for clarification.

Your final order -- your final judgment is clear. There's a $750,000 fee award. There's a constructive trust on the right-of-way. There's a 20 percent net profits interest that attaches and runs with the land. These things have all been briefed. This is an attempt to try to reopen everything.

The Court maintains its jurisdiction, and that's as -- to enforce its judgment, that's what Judge Rodriguez specifically said in his orders. But not just the order on the appeal, but also, when he denied the other side's motion -- or petition for writ of mandamus -- said that you have discretion to enforce -- on how you were going to enforce your final judgment. There was no --

THE COURT: What was that about, the mandamus?

MR. JOHNS: They were trying to prevent us from being

able to speak with Mr. Wright, depose him.

THE COURT: And have you done it since then, since it was denied in June?

MR. JOHNS: No, Your Honor.

THE COURT: Okay. All right. Mr. Shelton, you're going to be leading it off here, or Ms. Pryor-Baze?

MR. SHELTON: Ms. Pryor- --

MS. PRYOR-BAZE: Your Honor, I'm going to --

MR. SHELTON: -- no. Go ahead.

MS. PRYOR-BAZE: I'm sorry, Judge.

MR. SHELTON: Ms. Pryor-Baze is going to take the lead on this one.

THE COURT: We're just talking about the adversary at this point, the three motions in the adversary: motion to enforce, the motion to dismiss for lack of jurisdiction, and the motion for clarification of the judgment. So go ahead.

MS. PRYOR-BAZE: Yes, Your Honor. I'm going to start, and then Mr. Shelton will jump in and correct me if I'm wrong --

THE COURT: Okay.

MS. PRYOR-BAZE: -- or add to it, if that pleases the Court.

THE COURT: Okay.

MS. PRYOR-BAZE: We've argued the motion to enforce the judgment -- DMA's motion, and we've also argued our motion

for lack of subject matter jurisdiction. And in all of those pleadings, we have been consistent. We have not shifted our theories, and that is that the construct -- the trust -- the judgment ordered a constructive trust over the property if KrisJenn and Express didn't transfer the property back. That was the remedy.

Constructive trust is not the same as property disgorgement. DMA appealed this to Judge Rodriguez, and Judge Rodriguez said that this Court was not in error in leaving the property in the hands of Express. They are separate remedies, disgorgement versus a constructive trust.

The constructive trust is not meaningless. We don't believe it's meaningless, and we're not arguing it's meaningless. What it does is protect the 20 percent that KrisJenn owed to DMA and Longbranch, under the agreements, to the new purchaser, Express. And that was the purpose of it, under the judgment.

Contrary to DMA and Longbranch's representations to the Court, there have been no continuing breaches of obligations, and the Court remedied the allegation that KrisJenn transferred the property against the plan to Express in the judgment. That was taken care of there in that language of ordering the constructive trust.

If the Court recalls, at the time, prior to judgment, DMA actually asked for disgorgement. They said, Judge, because

of this breach of fiduciary duty -- which the Court found no damages -- please give us the property. And the Court rejected that idea and gave the constructive trust, if the property wasn't transferred back to KrisJenn, if it's being held by Express.

Mr. Sachitano, the manager from Express, has appeared in front of this Court, I think in the last year, probably three times to say that --

THE COURT: Right.

MS. PRYOR-BAZE: -- Express will comply with the constructive trust and with the plan.

The plan, which was confirmed in 2022, says that the only thing DMA and Longbranch get is their 20 percent on the proceeds. They don't have any sort of property interest. They don't get to own the right-of-way under any theory of the law. And the Court made that clear in the judgment and in rejecting the property disgorgement, which is what they asked for.

We have -- the last time we argued this, the Court said, I don't believe I can give it to DMA/Longbranch, but I might be able to send it back to KrisJenn, which is why we've moved to the show cause, if the Court recalls making that statement.

We also have filed our motion to dismiss, the -- their motion to enforce based on subject matter jurisdiction because it is an effort to change the judgment, and the Court

is, without subject matter jurisdiction, to order disgorgement of the right-of-way from Express who's not a party to DMA and Longbranch. That's an entirely new remedy that is not contemplated by the judgment. It's not within the Court's enforcement power, respectfully, because it's a brand new remedy.

So we do argue, Your Honor, and have presented good case law in our motion for lack of subject matter jurisdiction to dismiss, that this Court does not have the authority to do what DMA/Longbranch have asked the Court to do.

The 20 percent did not transfer any ownership right. The constructive trust didn't transfer an ownership right. If the Court wanted to transfer ownership of the right-of-way from Express to DMA and Longbranch, it would have said so in the judgment or the opinion to the judgment, and neither said so. It's a brand new remedy. So we do ask the Court to dismiss that motion, to deny it or dismiss it, for lack of subject matter jurisdiction.

On the motion for clarification, Your Honor, we filed that, and we asked -- it is true, we asked Judge Pulliam for clarification, because he uses the -- a covenant that runs with the land. He told us to come back and ask you because it would be a motion for clarification. So that's what we did. We did not ask Judge Rodriguez for clarification of Judge Pulliam's order or of your judgment. This is the -- this is our chance

now to get clarification on what that judgment means.

And specifically, Paragraph 3 of the judgment says that after Mr. Wright recovers his $4.7 million, DMA and Longbranch will each receive 20 percent out of the net profits, which is defined by the original agreements, from a sale or future development income of the right-of-way. And in none of the court opinions, Rodriguez, Judge Pulliam, yourself twice, or the judgment, does it say -- or the original agreements between the parties or testimony at trial -- does it say anywhere that that's a right in perpetuity. Not every covenant that a -- not every promise or covenant that attaches to land is a covenant in perpetuity. That's language that DMA and Longbranch have added.

And even at a hearing recently, I think it was Mr. Krist, but it might have Mr. Johns, who said we can pay that down, because it doesn't last forever. There is not one indication in any of the documents that the -- that Black Duck or KrisJenn gave DMA and Longbranch 20 percent each, forever, into eternity. That is not an --

THE COURT: When does it terminate?

MS. PRYOR-BAZE: After a sale, which is the language in your order and the language in the agreements. After a sale, if there is development or future development income. So after a sale, it is over.

And the plan confirms that, Your Honor. The language

that the plan uses -- if I -- let me get to it. It treats DMA's interest as value that attaches, quote, "solely to the proceeds." That's the interest that they have. It attaches solely to the proceeds, which is why, under the plan, DMA has a right to be notified about a sale -- or an offer -- or at the -- excuse me -- an offer. That's why they have that right, because it attaches to a sale, which is the exact words in the judgment and in the opinion.

And so we would ask for clarification that it is a sale because what KrisJenn -- what Mr. Johns, through DMA and Longbranch, the attorneys and the parties are doing, is they're effectively putting a Tar-Baby on the right-of-way. It will never be sold if it is true that DMA and Longbranch, from now until eternity, get a 20 percent income. That's not -- a right -- a 20 percent right to income or future development. It's not what the original agreement said, it's not the evidence at trial, and it's not what this judgment said. It's words that they have just created as an inference to covenant that runs with the land.

Judge Pulliam didn't say it in his opinion. It's not in the judgment. They've created it. They're ignoring the specific use of "from a sale or future development income of the ROW." But there is no trial testimony that indicated this was going to go on through eternity. It's not supported by the record or the judgment.

THE COURT: If there's future development, does it terminate?

MS. PRYOR-BAZE: The words are "future development income." So if a development project were done, and payments were being made, then there could be an argument by DMA/Longbranch that that would mean that they get 20 percent of the development income.

But once there is a sale, it's over. The wording is "a sale," which is consistent with the plan. They get 20 percent of the value of proceeds.

On the motion for clarification, Your Honor, one of the arguments that DMA makes is that we're out of time, and all of those cases that it cites to ask for this relief, all the cases it cites, are those cases where someone misses a deadline. We actually cited a case in our motion where a court went back -- a bankruptcy court went back 20 years later -- I think it was an asbestos case, I believe -- in order to clarify a judgment that the parties were having a debate over. And that's the situation here. We're not asking for a modification of what it means. We're asking for a clarification so the parties can be on the same footing.

The ROW is being marketed. There's been interest in the market. We're finalizing our efforts to clear the trespasser off of our -- off of the ROW right now. We've been reporting to the Court that that -- how the Angelina Cape

court -- Angelina County course -- case is going. We have pretrial today. And October 13 and 14, we have our evidentiary hearing for the permanent injunction, and then we'll move into a final judgment.

And that is -- that process, once Westlake is evicted from the right-of-way, the ROW will be 100 percent marketable, except for this idea that DMA and Longbranch are floating, that, forever, they have a 20 percent income from every sale from now on. And that just isn't supported by the language in the judgment, or your opinion, Your Honor. And it will stop the ROW from never being sold, more than likely. That -- it's just not marketable that way, as well as not being a correct interpretation of the Court's order.

Let's see -- make sure I got everything on my motion for clarification, Your Honor.

We do provide language in our order on the clarification of what we'd like for the order to say, and it is that, upon payment of the 20 percent net profit shares out of those net profits on a sale, that the net profits interests are satisfied, which would be consistent with the parties' interpretation during performance of the agreement, originally, and consistent with the judgment saying "a sale or future development income."

And let me make sure that I have -- I've covered all my points on the motion to enforce judgment. We've briefed it

significantly, and I'd like to go to the show cause, Your Honor, if that's okay. I believe that I have covered those points and will rely, certainly, on our pleadings for any points I've missed.

THE COURT: Okay. Well ---

MS. PRYOR-BAZE: On the show cause --

THE COURT: -- well, I'd rather do the show cause after we finish with the adversary. I'm not going to rule on any of the motions in the adversary, but we'll come back to you on the show cause.

MS. PRYOR-BAZE: Okay. Well, Mr. Johns --

THE COURT: Mr. Shelton --

MS. PRYOR-BAZE: -- made his argument, Your Honor --

THE COURT: -- Mr. Shelton, were you --

MS. PRYOR-BAZE: -- I just want to make sure that we have time --

THE COURT: -- going to talk about the adversary motions or the show cause or all of the above?

Mr. Shelton, can you hear us?

MR. SHELTON: Sorry. I'm -- I think I missed the question, Your Honor. I was -- I could hear you, but --

THE COURT: Were you going to talk about the adversary motions or the show cause or everything?

MR. SHELTON: Me, personally, I -- well, most of --

THE COURT: Right now, I mean.

MR. SHELTON: Oh, no, right -- well, right now, it's Ms. Pryor-Baze. I'm just in -- I'm just in support mode for her. That's all I --

THE COURT: Okay. All right. Well, Ms. Pryor-Baze, go ahead. Say what you were going to say. Let's just go ahead and do it now.

MS. PRYOR-BAZE: On the show cause, Your Honor --

THE COURT: Yes, ma'am.

MS. PRYOR-BAZE: -- it would be responding to Mr. John's argument. Thank you.

THE COURT: Yes, ma'am.

MS. PRYOR-BAZE: The -- we have Mr. Sachitano here to testify, Your Honor, for Express, as manager, and he will say what he has said before to the Court as a licensed lawyer in the state of Texas, but also as the manager of Express. And that is that Express will comply -- and we've said this numerous times with the judgment -- with the constructive trust and in the payment of the 20 percent net proceeds for -- to DMA and Longbranch. It will comply with the plan. And we've made those representations to give the Court comfort that it's not Mr. Wright. We -- that is directing Express.

We certainly disagree with all of the hyperbole and the argument in DMA/Longbranch's brief. None of it was supported by evidence. It's as if we're just supposed to agree that Mr. Wright has acted poorly.

To take a couple of those, Your Honor, the transfer from KrisJenn to Express, as Mr. Wright told the Court, his lawyer told him he could do it, and that was given -- the parties all knew about it at the time of the judgment, which is why the judgment recognizes that fact, that the property was transferred to Express.

This Court dealt with that alleged violation of the plan, which the Court believed. The Court dealt with that in the constructive trust. The constructive trust is imposed on the right-of-way. Pretty much, no matter who owns it, if Express were to give it to somebody else, that constructive trust would stay. But it certainly stays in the hands of Express, and Express has told this Court numerous times it will abide by that.

It is incorrect that there were other violations of the plan or of these court orders. DMA lists it as bullet points in their motion, but without any evidence. They argue that Mr. Wright's transfer of his interest in Express is a violation of a court order. It is not. He transferred it, with other estate planning he did, to a family trust. And he was no longer manager of Express because of health issues and concerns about his health. And that was given to a lawyer, barred under the State Bar of Texas.

Neither of those things violated any order of the Court. There was not an order that Express had to open up any

of its corporate books to DMA and Longbranch continuously. That was not actually an order of the Court. And he didn't -- he did none of that to evade a judgment for attorneys' fees. He is liable, personally, for those attorneys' fees, and he didn't appeal that.

And so he's offered mineral interests in exchange for that, which DMA/Longbranch did not want. And he's still trying to market -- and he's still marketing and trying to sell those mineral interests. He cannot evade that attorneys' fees judgment, and he understands that.

And if you recall, Your Honor, we filed a motion to offset the attorneys' fees judgment from his $4.7 million, and the Court agreed that would be proper. When the right-of-way is sold, those attorneys' fees are paid, and then Mr. Wright gets paid, and then DMA/Longbranch are paid out of net proceeds.

And we still believe that's how it should go, and we argued that in front of the Court about a year ago, but nothing he did in transferring his membership to a family trust in Express, when he was a quarter member, violated a court order. Making Mr. Sachitano the manager and Mr. Wright not the manager, if anything, should have given the Court and DMA/Longbranch comfort, and it was not a violation of any order here. So the only potential violation was that transfer from KrisJenn to Express, and it was taken care of in the judgment

in this court, by the imposition of the constructive trust.

Another thing that DMA/Longbranch likes to say is that there was no consideration between KrisJenn and Express, and they want to make a fraudulent transfer claim. That would be a state court claim. It's not proper here in the bankruptcy court at all. And it's certainly not true.

Express, when it accepted the ownership of the property, it took on all the obligations of ownership, and all the liabilities of ownership. And one of those huge obligations of ownership is to clear the title, and Express has incurred at least a million, probably more, dollars of attorneys' fees attempting to clear that title where we are, right now, at the door. We have, in two weeks, our permanent injunction hearing against Westlake. Pretrial today. And any action converting KrisJenn to a -- with -- to a Chapter 7 would certainly get in the way with that and stifle that, and we're very concerned about that.

The other thing is -- the other allegation is that there is good cause to convert. Our first stumbling block, which DMA/Longbranch don't address in their brief, is that KrisJenn cannot be a debtor. The plan was confirmed. The bankruptcy was closed. KrisJenn is no longer a person. And we cited a few cases, Your Honor, including In Re American Heartland Sagebrush and In Re Spiser that said the testing of personhood would be at conversion.

And since KrisJenn is expired, over three years, the entity ceases to be a person within the meaning of Section 109, and even the Northern District of Texas Bankruptcy Court said that they searched long and hard for contrary authority, and they found none, because a non-person cannot -- a person who's not -- an entity who's not an entity any longer cannot be a person and therefore cannot be a debtor. So KrisJenn cannot be converted. And additionally, the -- to a Chapter 7.

Additionally, the purpose of such conversion would be for protection of the estate property. There is no longer bankruptcy estate property. Instead, that property is in Express's hands, with the constructive trust over it. And so certainly, if Kris- -- if there is no property to, right now, protect in the estate.

The -- DMA has cited a number of reasons why, under the -- under Section 1112, and one of the thing is -- that they cite to is gross mismanagement of the estate. There hasn't been property of the estate since 2023. There has been no gross management. This -- you cannot conflate Mr. Wright with KrisJenn at this point. It is KrisJenn as the debtor. Mr. Wright is not a debtor.

And the other thing, as I said, failure to comply with the order. There -- that order that they point to, the only order, is transferring of the property. That's already been remedied in the judgment with imposition of the

constructive trust.

The -- also, they say there's no reasonable likelihood of rehabilitation. And rehabilitation is only when there's -- reorganization is continuing. And here, there is -- that -- KrisJenn no longer has property. The bankruptcy is closed, and what's left in the plan is the satisfaction of DMA and Longbranch as creditors. All the other creditors have been satisfied, and DMA/Longbranch is the only creditor here complaining about that.

There is no evidence as to any of these factors that DMA and Longbranch has brought to the Court. There is no evidence of a violation of any breach of fiduciary duty, if KrisJenn owed one to begin with, which we don't believe they do. There is no evidence of a fraudulent transfer. That would be a state court claim anyway. And there's no evidence that Express or Mr. Wright or KrisJenn -- and it doesn't exist anymore -- attempted to sell the ROW without disclosing predecessor-in-interest in it since the judgment. And the judgment took care of that breach of fiduciary duty, as well as any other claims that DMA and Longbranch have.

In sum, Your Honor, while DMA and Longbranch may not appreciate this, their remedy is in the judgment and in the plan. The plan says that their proceeds -- that their interests attached to proceeds of a sale. Your judgment says that their interest is protected by a constructive trust

because Express is not the debtor. And Express has said that they will comply with that constructive trust and the plan. And then, their remedy is 20 percent net profits interest from a sale or income from development.

And so while there's a lot of hubbub from DMA/Longbranch about how horrible Mr. Wright is, all of those -- alleged horribleness were satisfied in that judgment -- addressed in that judgment after remand. They were addressed in 2024. There is no new conduct after, then, of Mr. Wright, that would cause the Court concern that if, in fact, him no longer being the manager of Express should give the Court comfort, and that he's not a member anymore, should give the Court comfort. It's his daughter and his children who are now -- who are the members of Express.

THE COURT: You said his daughter and his children.

MS. PRYOR-BAZE: Oh, I'm sorry. His two daughters and his wife. I apologize.

THE COURT: Okay.

MS. PRYOR-BAZE: And so we have not met the elements to show cause, Your Honor. Converting to 7, KrisJenn can't be converted, number one. Number two, we haven't met the elements under the standard to convert. There would not be rehabilitation. There would -- there has not been a gross mismanagement of the estate, and we have not -- KrisJenn has not failed to comply with an order that was not already

addressed in the judgment. And there certainly is no bad faith that -- evidence of bad faith. That standard is very high under the case law, and we haven't seen any evidence of that.

Mr. Sachitano is here, Your Honor, in order to testify again -- he has before -- that Express will comply with the constructive trust. It understands its obligations and -- with the plan, if the Court finds that necessary. He's done so before. I think the last time was either on June 4th or the hearing just before that, where he's given that testimony.

But at this point, we don't see a statutory basis for conversion. We see an inability, actually, for KrisJenn to be a Chapter 7 debtor.

Charlie, please let me know if I missed anything, bankruptcy.

MR. SHELTON: No, Ms. Pryor-Baze. I think you've got it.

MS. PRYOR-BAZE: Okay. Thank you.

THE COURT: All right. So, Mr. Rose, did you have any position on this?

MR. ROSE: Thank you, Your Honor. Jim Rose for the U.S. Trustee. We don't have a position on this.

THE COURT: Okay.

MR. JOHNS: Your Honor, could I just make a couple of rebuttal points?

I'll be less than a minute.

THE COURT: Of course. Yeah. Mr. Johns, go ahead.

MR. JOHNS: Yes. The first is that there was some discussion about constructive trust. The -- Judge Rodriguez -- it's not that -- disgorgement can be what's done as part of a constructive trust. Constructive trust, as Judge Rodriguez has held here, it's flexible. You can do what you want. You have discretion to do it. It could be disgorgement. It could be something else. So I just point that out.

Second thing I'd point out, there was a lot of discussion by Ms. Pryor-Baze about language from the plan, but what she left out was that the plan was expressly subject to the appeal, and that my client's rights, as articulated in the appeal, were to be protected. And so if the appeal changed something in a material way, which it did, then the plan was made expressly subject to the appeal.

The other thing I'd point out is that this idea -- this is a -- that "attach and runs with the land" doesn't mean perpetual, that is not the position that these parties took previously. They are judicially estopped. The whole argument to you, and a big argument to Judge Pulliam, is that if you give the 20 percent that attaches and runs with the land, it will make this right-of-way unsellable, uneconomical. They've taken that position repeatedly, and they are not allowed to come in here, after we've litigated that whole issue, which was the issue of this case, and say that we're somehow coming up

with a revisionist history of saying that it was perpetual. That is what we've always argued. It's what Mr. Muller always was concerned about and argued in front of the -- in the first appeal. And so there is nothing in Judge Pulliam's order that suggests that this was something that could be washed.

And I'd just point out, you know, I love Paul Harvey, who talks about the rest of the story. Well, I'd encourage Your Honor -- Ms. Pryor-Baze read from Paragraph 3 of your final judgment -- I would invite you to also read Paragraph 1 of your final judgment, which is separate. It says, "Declaratory judgment is rendered for Defendants DMA and Longbranch. The net profits interest, owned by Longbranch Energy, LP, and DMA Properties, Inc., are valid in subsisting covenants running with the land in the right-of-way, which is called the Express Pipeline."

What she quoted -- what Ms. Pryor-Baze quoted from is that when we're talking about the damages for breach -- claims for damages for breach of fiduciary duty, then it says Mr. Wright can -- which is a separate cause of action, not our declaratory judgment, which is in Paragraph 1. Paragraph 3 addresses remedies for breach of fiduciary duty, not what DMA and Longbranch's interests were.

They were valid in subsisting covenants running with the land. And they haven't pointed to a single case that says that -- something like this, these covenants running with the

land just go away at the first sale, haven't pointed you to it.

So it's Paragraph 3 where they say, hey, if there is a sale, then DMA and Longbranch will each receive 20 percent out of the net profits from a sale or future development income of the right-of-way. That's entirely accurate. But they also get what's in Paragraph 1. And it's -- I would just submit that it's the other side that's trying to rewrite your final judgment. Your final judgment does not need clarification. It just needs to be read completely. You just need to read the rest of the story. And so that -- you know, I just point that out.

Last point, quickly -- well, I think that's pretty much it, unless Your Honor has any other questions.

THE COURT: Well, I have one question --

MS. PRYOR-BAZE: Your Honor, I have -- oh --

THE COURT: What?

MS. PRYOR-BAZE: I have one point really quickly, Your Honor.

On our motion, Page 8, we set out great -- to great length, case law that says any covenant should not be -- all doubt should be given that a covenant is not a permanent burden on an estate. That is well-established Texas case law. If there's any ambiguity whatsoever in a covenant, you default to, it is not a permanent burden.

So you -- so there are covenants that run with the

land and cease, which is what this one is. Not every covenant that runs with the land goes on for the next 1,000 years of Texas property history. But on Page 8, we do set forward that case law. And we believe that would certainly apply here.

Sorry, Your Honor.

MR. JOHNS: Your Honor, if that were true, every mineral interest in the state of Texas is a burden on the mineral estate, and people's royalty interests, under Holli Pryor -- Ms. Pryor-Baze's theory, would just go away. This is -- it was clear that the interest-creating agreement said it was -- it ran with the right-of-way and was binding on not one successor, not one assigned, not one sale, it's binding on successors and assigns. And they want to write that out and relitigate this point that we spent all of 2022 and 2023 litigating.

THE COURT: Okay. Well, my memory of this case is fairly good. It seems like I remember early, early in the case, Mr. Moore, and perhaps Mr. Borders, testified that they realized that this 40 percent interest, 20 and 20, was quite an obstacle to selling the property, and so they put it on there, more or less, to give themselves more negotiating power on either a sale or development. I mean, do you recall any of that? And I'm not saying that that has a legal effect necessarily, but, I mean, if it comes down to a development or a sale that's a multi-million-dollar deal, they might be

willing to negotiate, right?

MR. JOHNS: Yes, Your Honor. That's -- we don't run away from that. And I'd also -- Your Honor will probably remember this, too, that Mr. Moore owned 50 percent of Black Duck. He owned 50 percent of Black Duck. The idea that he would give up his 50 percent --

THE COURT: Mm-hmm.

MS. JOHNS: -- in order to get a 20 percent that would be paid one time and then it's over --

THE COURT: Yeah.

MR. JOHNS: -- that makes no sense. And that's why it was one that attached and ran with the land. It's not consistent with this other theory.

And it is true, the whole point is that they thought that Mr. Wright would come to them and say, hey, we need to adjust everybody's percentages. They would have been very willing to do that. Except what happened, Your Honor? Mr. Wright did not disclose their interest to TCRG. Then he didn't disclose it to the McLeod Oil company. And then Mr. Sachitano, post-judgment, did not disclose their interests to Land Acquisitions, Inc. And so I'm happy to talk to Mr. Sachitano about that --

THE COURT: Who is Land Acquisitions, Inc.?

MR. JOHNS: It's -- there's a guy named --

THE COURT: A prospective purchaser?

MR. JOHNS: -- a prospective broker --

THE COURT: Okay.

MR. JOHNS: -- to sell this land. And Mr. Sachitano spoke with Mr. Kenny Cobb, who is the president of Land Acquisitions, Inc. It's also called "Louisiana Acquisitions."

THE COURT: Mm-hmm.

MR. JOHNS: And he -- again, post-judgment, did not -- again, the same pattern, TCRG, McLeod, a bunch of other people, and even post-judgment, did not disclose to Mr. Cobb my client's interest. And so it goes on. And that's why we're asking for there to be a close to this, Your Honor.

MR. SHELTON: Your Honor, I'm going to --

MS. PRYOR-BAZE: Your Honor --

MR. SHELTON: -- I'm going to assert --

MS. PRYOR-BAZE: -- go ahead.

MR. SHELTON: -- an objection to that. I'm not entirely sure if Mr. Johns was testifying himself or offering evidence. There's no witness, no exhibit --

THE COURT: Well, we haven't gotten to any evidence. He made the statement that -- obviously, it's hearsay and it wasn't under oath, so we don't have any evidence at this point. Other than --

MR. SHELTON: I appreciate that, Your Honor.

THE COURT: -- I'm taking judicial notice of the prior orders, the plan of reorganization, all the motions,

et cetera. I'll take judicial notice of things like that, that are not really in dispute as to their authenticity, et cetera. I'm not saying that every pleading is true, but I'm taking judicial notice of when they were filed and by whom they were filed.

Okay. Ms. Pryor-Baze, you wanted to jump in?

MS. PRYOR-BAZE: Your Honor, I was going to say if that was true, it is not a violation of the plan or of any duty to disclose to a person who might market a right-of-way that somebody else might make money off of the proceeds of a sale. That is not a violation of anything.

THE COURT: Okay.

MS. PRYOR-BAZE: And so that alone means absolutely nothing here.

THE COURT: Okay.

MS. PYROR-BAZE: The duties to DMA and Longbranch are to disclose an offer so that it can have the chance to object to that offer. It is not to micromanage efforts to market and sell the right-of-way, which is in everyone's best interest.

It will never be done if DMA and Longbranch have a 20 percent right, from now into eternity, to get money from a sale, from every single owner, from now until forever. It'll never get done if they continue to litigate what the interests are, which are pretty clear in the judgment.

We are so close, Your Honor, in the Angelina County

case in getting the trespasser off and being able to market this right-of-way fully, and it's not a violation not to tell a broker about who might make money off of the sale of it.

THE COURT: Okay. Now, I heard in 2025 that there was a partial summary judgment granted in Angelina County and that a trial was coming up, and so the trial obviously hasn't occurred, right?

MS. PRYOR-BAZE: Well, if you recall, Your Honor, the trial was to be a jury trial in December of 2025. But you are correct. We've received five declaratory judgments and a dismissal of all of the trespassers' affirmative defenses and the claims for declaratory judgment. Express has the superior title. Its easements are valid and superior to anything that the current trespasser claims it has. Those -- we had those --

THE COURT: Interlocutory judgment, though, correct?

MS. PRYOR-BAZE: Oh, that's right, Your Honor. Uh-huh. And they asked to reconsider. We had some interveners come in. They asked to reconsider. And the judge denied all those reconsideration efforts.

So where we are now -- so we had a jury trial set up, and then we got bumped by a criminal trial, which happens in Angelina County quite often. And there was no triable issues of fact. There's only issues for the permanent injunction that are issues of equity for the state court judge.

So we have waited until -- I think it's been reset

maybe seven times to get to this stage. Everyone agrees, it's October 13th and 14th. We have pretrial today on that, Your Honor, and it's a two-day evidentiary hearing while the -- Judge Kassaw in Angelina County will consider our permanent injunction application, in which we will --

THE COURT: I thought you said the facts were not in dispute.

MS. PRYOR-BAZE: The facts are not in dispute, Your Honor. It is not --

THE COURT: So why is it an evidentiary hearing?

MS. PRYOR-BAZE: To balance the equities under -- for the permanent injunction. But there is no -- there's no facts -- there's no triable fact for a jury. It's all up to the Court. And so the evidence will be heard by Judge Kassaw, and he will rule on our request for a permanent injunction, to kick Westlake off of the easements.

At that point, they're -- and again, Your Honor, I said this probably a year ago, that the appetite and the market for pipelines in East Texas right now is great. We're fighting with DFW and Houston to take our water, and everybody wants a water pipeline. We're developing oil and gas in Eastern -- in Western Louisiana, East Texas, and everybody needs another oil and gas pipeline.

These easements are very special, that we can have any fluid we want go through those pipes. And also, they're

blanket easements. You can put as many pipelines as you want to across these easements. So we need to get these where we can market them and sell them to benefit everyone, to pay off the debts to DMA/Longbranch for attorneys' fees, to pay the 20 percent net proceeds interest to DMA and Longbranch. And the buyer then can have their pipelines and make a whole lot of money moving product across East Texas.

That's why we've come to the Court and asked for the motion for clarification and why we're asking for no conversion.

THE COURT: Okay.

MR. SHELTON: Your Honor --

MR. JOHNS: Your Honor --

MR. SHELTON: -- just real quick question, just a point of order. I've noticed we've got folks on this hearing that are not parties to this case. I'm curious if the Court is permitting them to appear.

I'm particularly referring to Mr. Finkelstein for Westlake.

THE COURT: Well, he's been on a lot of hearings.

MR. SHELTON: I believe that's true, but I'm particularly asking if the Court's allowing him to be on this one. I know there's been some conversation --

THE COURT: Well, they didn't ask for permission, but I don't really require people to ask for permission. You know,

if it was in the open courtroom, they could -- he could just walk in there. So how do I keep him out? I mean, I don't want people up to skullduggery, so to speak, but I think he's certainly interested in the outcome of this.

MR. SHELTON: That's fine, Your Honor. I just -- again, just wanted to ask the question, but you've answered it. Thank you.

THE COURT: Mr. Finkelstein, you got any skullduggery in mind? Can you turn on your microphone?

MR. FINKELSTEIN: Is my microphone working now, Your Honor?

THE COURT: Okay. Yes, sir.

MR. FINKELSTEIN: Okay. Thank you, sir.

I have no skullduggery. I have immense curiosity. I've been following these proceedings for nearly two years, I guess, at this point, just to find out --

THE COURT: Are you representing a party in the Angelina County litigation?

MR. FINKELSTEIN: Personally, I'm -- I'm counsel to Westlake, but I'm -- I have not appeared in the Angelina County litigation --

THE COURT: Okay.

MR. FINKELSTEIN: -- for a variety of reasons. So I'm monitoring this hearing and hoping for a good outcome on behalf of the parties that I think should prevail, but I have

no other --

THE COURT: All right.

MR. FINKELSTEIN: -- speaking --

THE COURT: I understand.

MR. FINKELSTEIN: -- role in this. Thank you, sir.

THE COURT: I think, Mr. Shelton -- you know, I understand why you're asking, but I think his interest is legitimate. I don't think he's out there trying to stir up trouble or anything like that. You'd probably do the same thing if you represented Westlake or if you were a firm that -- with a firm that represented Westlake. So I don't see any harm.

MR. SHELTON: That's fine, Your Honor. Thank you.

THE COURT: Okay. So the plaintiff in this adversary proceeding is actually KrisJenn, which has been dissolved. So who's the plaintiff now? Is it Larry Wright or -- I mean, this is an adversary proceeding filed by the debtor-in-possession, originally. Now, KrisJenn has been dissolved. So who's the plaintiff in this?

MR. SHELTON: Your Honor, if I --

MR. JOHNS: Your Honor, we're the --

MR. SHELTON: -- if I may --

THE COURT: Larry Wright?

MR. SHELTON: My apologies. I think this is actually where Texas Business Organizations Code 11.053, that Mr. Johns

referred to, Subsection (c) applies --

THE COURT: Mm-hmm.

MR. SHELTON: -- which is that there's a -- I may have miscited the code, but this is where it applies. There was -- there's an existing adversary proceeding of which KrisJenn is a party. Therefore, KrisJenn exists solely for the purposes of finishing out that adversary proceeding, which is, of course, distinct from the bankruptcy case, which is the --

THE COURT: I just heard it argued that that doesn't exist for the last three years, so -- can't do anything.

MR. SHELTON: I understand that, Your Honor. But, also, Mr. Johns pointed out -- and I'll pull it up in just one moment -- he pointed out -- I think I cited the wrong one. One moment. It's 11.356(c) --

THE COURT: Okay.

MR. SHELTON: -- in the Texas Business Organizations Code, which provides that if an action on an existing claim by or against a terminated entity -- sorry -- terminated filing entity has been brought before the expiration of the three-year period after the date of the entity's termination, and the claim was not extinguished under 11.359, which doesn't apply here. The terminated filing entity continues to survive for purposes of the action until all judgments, orders, and decrees have been fully executed.

So that's what Mr. Johns was referring to earlier.

THE COURT: Mm-hmm.

ME. SHELTON: And I agree that that law is there. And that applies for the adversary proceeding, Your Honor. The adversary proceeding is a separate action, as this Court knows, from the bankruptcy case, which was closed. In fact, the Court had to reopen it in order to issue the order to show cause.

THE COURT: Right.

MR. SHELTON: So the adversary proceeding, KrisJenn does exist for the purposes of completing that. That's Texas law, and that's consistent with all the briefing that we put in our response.

THE COURT: Okay. So who do you represent? You represent Larry Wright or some other entity or person?

MR. SHELTON: Your Honor, I represent Larry Wright. And I've tried --

THE COURT: Okay.

MR. SHELTON: -- I think at the very beginning --

THE COURT: What standing does he have? He transferred his ownership of KrisJenn, didn't he?

MR. SHELTON: He --

THE COURT: I mean, it's been terminated and he transferred the pipeline -- the pipeline was transferred to Express H2O, right? And he doesn't -- he's not an owner of Express H2O anymore --

MR. SHELTON: That's --

THE COURT: -- which is also a non-party.

MR. SHELTON: -- that is true, Your Honor. With respect -- if you're asking with respect to the order to show cause, I believe he has standing for the reasons that I said. KrisJenn has been terminated --

THE COURT: Okay.

MR. SHELTON: -- and there's an order to show cause regarding KrisJenn, and so the -- I don't have anything in front of me to argue this point, but --

THE COURT: Well, he signed a petition for the original case being filed in 2020.

MR. SHELTON: That's right. That's --

THE COURT: Mr. Wright signed it as the manager of KrisJenn, LLC, but --

MR. SHELTON: -- that's correct. And again, the entity has been terminated for the purposes of the bankruptcy --

THE COURT: Right.

MR. SHELTON: -- and that was -- has been three years ago. And so there's an order to show cause regarding that entity. So it stands to reason, at least, that the next -- I'm going to just use the phrase, perhaps imprecisely, and reserve all rights to correct it -- next responsible party with respect to that entity's --

THE COURT: Well, I --

MR. SHELTON: -- (indiscernible).

THE COURT: -- guess he was also a counter-defendant or cross --

MS. PRYOR-BAZE: He was.

THE COURT: -- yeah. Cross --

MR. SHELTON: With respect to the laws -- with respect to the adversary proceeding, yes --

THE COURT: -- third-party defendant. Right.

MR. SHELTON: -- with respect to the adversary proceeding -- yes, Your Honor. He has a great interest in the outcome of that. As Your Honor knows, the $750,000 judgment, as we stated earlier in this hearing --

THE COURT: Right. Right.

MR. SHELTON: -- is against him. So he has a -- he has standing on both sides of the transaction, Your Honor.

MS. PRYOR-BAZE: And he is also -- he's also entitled to $4.7 million from the sale of the right-of-way.

THE COURT: Okay.

MS. PRYOR-BAZE: And so he would be a creditor to the sale of the right-of-way.

THE COURT: Okay. Now, obviously Express H2O Pipeline has an interest in this case, but they filed the motion for clarification, for example, of the order to show cause. Is Express H2O Pipeline a creditor in this case or a party-in-interest? I mean, they own the pipeline -- the

right-of-way -- excuse me. They own the right-of-way now. But I mean, they're a transferee from KrisJenn, LLC, right?

MS. PRYOR-BAZE: They are, Your Honor. And they have they have agreed that they are bound by the judgment as --

THE COURT: Right.

MS. PRYOR-BAZE: -- and they are named in the judgment, and they are -- have agreed with this Court that they're bound by the plan and bound by the judgment, in terms of the right-of-way.

MR. SHELTON: Your Honor, I do have one procedural comment. On the motion for clarification, if Your Honor is referring to Docket Number 616 in the adversary proceeding --

THE COURT: Well, there's also one in the case, Number 271. But go ahead.

MR. SHELTON: I'll pull up --

THE COURT: You have two motions --

MR. SHELTON: -- I'll pull up 271, but Docket Number 616 --

THE COURT: Right.

MR. SHELTON: -- is from -- it's very clearly from Larry Wright, and it's signed by Ms. Pryor-Baze and myself as counsel for Larry Wright. And the reason I sort of suspected that was the case is I've tried to make it very clear -- and it is true at the very, very beginning of the case, I did sign a pleading that said "Express H2O" on it. Since that time, and

this has been over a year and a half now -- or approximately, a year and a half -- I have made it very clear that the representation is just of Larry Wright. Larry Wright's the only party that pays me, and he's now the only one that I have an engagement agreement with. So that's -- I'll look at the motion that Your Honor referred to in the bankruptcy case, but Docket Number 616 is just from Larry Wright.

THE COURT: Okay.

MR. JOHNS: Your Honor, if I may, just real quickly.

THE COURT: Go ahead.

MR. JOHNS: One thing I noted on the motion -- or motions for clarification, we've argued there are multiple, independent reasons why those are untimely and cannot be considered. And part of why it's important to us that they filed these motions for, quote/unquote, "clarification," it's because they're trying to change the final judgment, and it's inappropriate to do so. They didn't appeal the final judgment.

I just move on to another point. This is an involuntary conversion for cause. The conversion should be considered a continuation of that proceeding, and KrisJenn continues to exist until its, quote, "all judgments, orders, and decrees are executed." This conversion is for the purpose of facilitating the execution of the judgment. And -- you know, and the cite there is Texas Business Organizations Code 11.356(c)(1).

And it just goes to a bigger point about, who is this? Yes. We have claims against Larry Wright. We have claims against all the KrisJenn -- counterclaims against all the KrisJenn entities. You know, the -- Mr. Shelton, Ms. Holli Pryor-Baze, I'm not sure whether all of them have worn all of the hats for all of these entities, but it's Mr. Wright, it's KrisJenn, it's Express -- it's part of what this is so -- what is so troubling about this whole case is they've used a shell gain to try to get out of the final judgment, to try to take the -- my client's interest in the first place.

And again, we just ask it -- ask the Court to bring an end to it, either through conversion or through an order of the bankruptcy assets, that they be in the hands of DMA.

THE COURT: Okay. Now --

MS. PRYOR-BAZE: I can respond, Your Honor. I don't see --

THE COURT: -- it may be a little late for this, but do you have any witnesses, either Mr. Shelter or Ms. Pryor-Baze or Mr. Johns?

MS. PRYOR-BAZE: Your Honor, we do have Mr. Sachitano here to testify that Express is bound by the Court's judgment and the plan, and it has taken on those obligations. He has done that previously, so we can either adopt his prior testimony as testimony responsive to this record today, or he can testify today.

THE COURT: Can we -- Mr. Johns, can we take that as a proffer of his direct testimony?

MR. JOHNS: Well, I --

THE COURT: Do you want to cross-examine Mr. Sachitano?

MR. JOHNS: I'd be happy to cross-examine Mr. Sachitano. Because it goes to the point that the parties on the other side are unwilling and are forever going to remain unwilling to recognize this Court's final judgment and the opinion and the order that Judge Pulliam issued. And so there's always going to be -- unless there's conversion or an order of transfer, we are going to be dealing with litigation for the next seven or eight years.

THE COURT: Okay.

MR. JOHNS: And so we just -- we're asking for it to close. And it's troubling to us that Mr. Sachitano has gone out to third parties and not -- again, not disclosed our interests. And I take Ms. Pryor-Baze --

THE COURT: Well, I'm really just asking, is there a witness, and do we need to cross-examine?

MR. JOHNS: Yeah. And the -- I don't need -- you know, I don't think I need to -- well, I'd be happy to cross-examine him, if Ms. Pryor-Baze --

THE COURT: Well, I'm not asking you to do it. I'm just asking you if you want to.

MR. JOHNS: Sure. I'd love to cross-examine him.

THE COURT: Okay. So Ms. Pryor-Baze, do you want to do a brief proffer of what he would testify to on direct, just to save time? And then if Mr. Johns has cross, he can ask questions.

MS. PRYOR-BAZE: Is the cross going to be limited to the direct, Your Honor?

THE COURT: Mr. Johns?

MR. JOHNS: That's how redirect works. It's not -- I should be able to ask Mr. Sachitano any question related to this proceeding.

THE COURT: So you want to call him as your witness?

MR. JOHNS: I'll call him as my witness, then.

THE COURT: Well -- wait. Sorry. Your Honor, they didn't file a witness list. I'm just concerned about a proffer of his testimony and then Mr. Johns getting into so many areas that are completely unrelated --

THE COURT: Yeah.

MS. PRYOR-BAZE: -- to the issues with the Court. When all of this hyperbole about how, forever into the future, Express is not going to comply, is just hyperbole. That's all it is. Mr. Sachitano has affirmed to this Court that he will -- that Express will comply with the Court's judgment and comply with the plan. And that has been what -- since the beginning of the year, when he became manager, and he's

appeared in front of this Court at least three or four times. That's what he said. So I'm happy to do a direct, or we could adopt his prior testimony to the testimony today.

It -- the purpose of DMA here, Your Honor -- and this is clear -- is to interfere with ever selling this right-of-way. They've helped out Westlake in the Westlake case by giving affidavits about the bankruptcy and letting them know everything that happens. Then, they come to this court and they file endless -- they file endless motions as well, in order to get the right-of-way back. And their whole point is to interfere, for some unknown reason, in the marketing and sell of the right-of-way. If they were actually interested in the marketing and sale of the right-of-way, they'd take Express's confirmation that they were going to conform -- did -- follow the judgment and the plan, and they'd stay out of the Westlake issue, they'd let us market the ROW, and they'd let us get offers so that, hopefully, we can sell it because that belongs to everyone on the call.

But if Mr. John's intention is to go into what any marketing efforts have been and -- so that they can then go interfere, like they did before, then I would object to all of that kind of testimony.

If the Court would like to hear from Mr. Sachitano, he is here to do that --

THE COURT: No. That's okay. I'm sorry I asked.

No. We can dispense with that. We're going to get off on a tangent there and do a lot of arguments that really are not going to have anything to do with what we've got set today.

So did you have any witnesses, Mr. Johns --

MR. JOHNS: No, Your Honor.

THE COURT: -- other than Mr. Sachitano?

MR. JOHNS: No, Your Honor. We're happy with the final judgment as it's written, not the attempt to reinterpret it.

THE COURT: Okay. Anything else, Ms. Pryor-Baze?

MS. PRYOR-BAZE: I would just say that that's rich, Your Honor. They're the ones that started this with a motion to enforce the judgment by disgorgement. And now, to say that our clarification of one sentence that doesn't change the remedies and the rights of the parties at all is a modification in the judgment, it just doesn't -- it doesn't make much sense. They're talking out of both sides of their mouth. And so we would ask the Court to grant our motion for clarification because it is not a modification of the judgment.

THE COURT: Mr. Shelton, are you done?

MR. SHELTON: I am, Your Honor.

THE COURT: Okay. Mr. Johns, what else?

MR. JOHNS: Co-counsel, Mr. Krist, Ms. Ortiz, Ms. Wilson, anything else to add?

THE COURT: Cast of thousands, cost of millions.
MR. KRIST: Nothing from me, Your Honor.
THE COURT: All right. Thank you.
MS. WILSON: Your Honor, the only thing that I --
THE COURT: Go ahead.
MS. WILSON: -- for the record, Natalie Wilson, on behalf of DMA Properties. The only thing I would add is that, on the order to show cause, it's the debtor's burden to show that the case should not be converted, not ours to show that it should be, because the Court -- because we didn't move to show cause, the Court issued its own order.
THE COURT: Okay. I don't think that really affects the outcome, but I understand what you're saying.
All right. So this case is six and a half years old. It had a years-long history before it was filed in March of 2020, during the -- or right before the pandemic began. We actually had the trial of this adversary proceeding during the pandemic in, I think, January of '21, and most of the lawyers had COVID at some point during the six-day trial.
I found that it was not a covenant running with the land. It was appealed to Judge Pulliam. Judge Pulliam disagreed, and he reversed in 2023, two years after the trial.
And so I issued a judgment after remand. I distinctly remember the attorney for KrisJenn admitting that the pipe -- the ROW, the right-of-way, had been transferred in

violation of the terms of the plan of reorganization, but that the debtor intended to retransfer it back to KrisJenn, or it would honor the plan of reorganization and not try to avoid the effect of the plan of reorganization. And so that led to a lot of what I would call shenanigans and a lot of probably unnecessary litigation on what was the effect of that. And so I did a judgment after remand that didn't order return of the property because it had already been transferred, and Express H2O was not a party. So I felt like I didn't have jurisdiction over Express H2O to order a return of the right-of-way to the reorganized debtor.

The plan was confirmed, by the way, in February of 2022, which stated that the right-of-way was revested in the debtor post-confirmation and that it would not be transferred by the debtor without permission of the Court or without DMA and Longbranch's consent. And it was admitted by the attorney for KrisJenn that there was no consent by either the Court or by DMA or Longbranch. So it was an unauthorized transfer. There's no doubt about that. It's admitted. And if it's not admitted, it's clear from the record that it was unauthorized.

And so ever since then, we've been having little motions and orders on, what's the effect of that. And so the judgment after remand, I felt like I couldn't order Express H2O to transfer it back to the reorganized debtor. And so that's why the constructive trust language was put into that judgment

after remand that I did, and the opinion was written, which said that it's a covenant running with the land, DMA has a 20 percent interest, Longbranch has a 20 percent interest that continues until development or sale.

And I'm not interpreting the issue on the sale that Ms. Pryor-Baze raises today. I'm not touching that issue today, because it's not something that's teed up for litigation today. So I'm not expressing an opinion one way or the other on that.

I will say that, as far as enforcing the judgment, which is one of the motions that brings us here, I don't feel like I have jurisdiction to order Express H2O to retransfer the right-of-way to the reorganized debtor, because Express H2O is not a party. It hasn't been sued, hasn't been served with process. And so I don't think I have jurisdiction to enforce the judgment in that way.

I will, in response to the motion, reaffirm that the constructive trust continues on the right-of-way and that Express H2O has notice of that and is bound by it, and they have admitted that they're bound by it. Mr. Sachitano has said that on the record, as have the attorneys for Larry Wright. And so it's binding on them. There may be a question down the line on the interpretation of it, but I'm not prepared to interpret it today, other than to say, it doesn't mean we transfer the right-of-way to DMA. That argument has been made

for several years, and I don't think that, because there was a breach of fiduciary duty and the constructive trust was placed on the right-of-way, that if DMA wants it, they just get to take the whole right-of-way.

So that part of the motion to enforce the judgment is denied. But I will reaffirm in this order that Express H2O is subject to the constructive trust, and they have notice of it. So they are bound by it. And if there's ever a development or sale that they propose, that it needs to be approved by DMA and Longbranch, or there has to be some sort of court determination on that.

As far as the motion to dismiss for lack of jurisdiction, that's denied. That is in the adversary proceeding, and I'm not trying to modify the judgment in that adversary proceeding. And I'm not willing to interpret it today, other than what I've said already. So that motion to dismiss for lack of jurisdiction is denied, and the motion for clarification of the judgment is also denied.

As far as the show cause order on whether or not the case should be converted to Chapter 7, I am going to convert it to Chapter 7 under Section 1112(b)(4). And 1112(b)(4) says that -- I'll pull up the language -- in particular, Subsection (N), capital N, "material default by the debtor with respect to a confirmed plan."

Well, I think there was definitely a default under

the confirmed plan when Mr. Wright decided to transfer the right-of-way to Express H2O. It's all in the records, all over the place.

So that's admitted, and that was cause for conversion at the time, but I had assurances and promises by Mr. Muller, among others, that it would either be retransferred to KrisJenn, LLC, or the transferee, Express H2O, would honor the plan of reorganization. And so since there was title work being done and then a lawsuit filed, I tried to be patient and allow the process to go forward and get resolved. And so I've been extremely frustrated that we're still six and a half years into this case and we don't have anything resolved. So I think it's time to put an end to all that playground of litigation, and I'm just going to convert it to Chapter 7.

And I understand the argument that KrisJenn was terminated at some point two or three years ago, but I think that there is case law that says that if a Chapter 11 case has a confirmed plan and the debtor subsequently becomes defunct for whatever reason, that if the case is converted to 7, there still is a bankruptcy estate. It doesn't mean that we've resurrected KrisJenn, LLC. It just means there's a bankruptcy estate. And so the Chapter 7 trustee can look into this, and if there's fraudulent transfers in the opinion of the trustee, the trustee can file those adversary proceedings, either under state law or bankruptcy law, and the trustee can also negotiate

with other parties, such as Express H2O or Mr. Wright, or other entities that are involved in this case, to try to reach some kind of a resolution. And of course, I suggested mediation years ago, and as recently as this summer, and I even got Mr. Wright to file a motion to compel mediation, and then he tried to cancel it. So just another of the many frustrating issues in this case. He refused to do a full-day mediation, and so we did a half-day mediation, so -- and they tried to get a continuance of it. I don't know. I read the motion, and it was just ridiculous, so I denied it -- just denied it immediately.

So in response to my show cause order, I am converting the case to Chapter 7. A trustee can be appointed to investigate the transfer of the right-of-way to express H2O. Any other items that the trustee wishes to investigate, any litigation that the trustee wishes to file or not file, the trustee has business judgment to look into all of these matters.

The motion to continue, Number 270 in the case, is moot, in my opinion, and it's dismissed. And the motion for clarification of the show cause is denied. I don't think it needs to be clarified. It's specifically listed in the show cause order of Section 1112 , and I think everybody that's involved in this case can read Section 1112 to see which subsection might be applicable to this situation.

So I realize that this is not going to solve all the problems in the case, but it's just dragged on for so many years. We've got to get to some kind of conclusion in the case at some point. I don't think this prevents Express H2O from going forward in Angelina County with their lawsuit because they haven't been dispossessed in any way of the right-of-way at this point. If they want to go forward, they can go forward. But they have to realize that the Chapter 7 trustee is going to be looking into this and overseeing it and investigating it and trying to protect the creditors and the bankruptcy estate. So that's what we're going to do.

So we'll take care of all the orders. I'm frustrated by this case. There's really not a single, good solution to this case. This is what needs to be done, in my opinion, because the transfer was clearly unauthorized by Mr. Wright. Mr. Wright has been found guilty of breach of fiduciary duty, in several ways, in prior orders and judgments of this Court. And there's no reason to continue with what we've been doing, just flopping around, getting nothing done.

So we'll take care of the orders. The motion to enforce the judgment is granted only in the sense that the constructive trust will continue, but denied without prejudice in other ways. We're not going to go forward with fraudulent transfer claims by DMA or Longbranch because they don't have standing; the trustee does.

Now, in the case -- in the Chapter 7 case, if somebody wants to request permission to pursue fraudulent transfers, they could, but it's really the trustee's ownership of those causes of action.

So we'll take care of the orders. It'll take a while to get those done. But for the record, those are my findings and conclusions under Rule 7052 and 9014 in the adversary. And so if anybody wants to appeal, the findings and conclusions are on the record.

MR. JOHNS: Thank you, Your Honor.

THE COURT: All right. Any questions?

MS. PRYOR-BAZE: The motion -- for clarification, Your Honor -- that we filed, I think it was 661 or so, you did not -- you said you weren't going to rule on it, and then you said --

THE COURT: In the adversary?

MS. PRYOR-BAZE: -- it was denied.

Yes, Your Honor.

THE COURT: In the adversary?

MS. PRYOR-BAZE: Yes.

THE COURT: I'm not --

MS. PRYOR-BAZE: You said --

THE COURT: -- clarifying the judgment. The judgment says what it says, and I don't think it needs to be clarified.

MS. PRYOR-BAZE: Okay. You said, though, you weren't

going to interpret today, and then you denied that motion, but that's not denied with prejudice for us to ask in the future?

THE COURT: Denied without prejudice.

MS. PRYOR-BAZE: Okay. Thank you, Your Honor. I just wanted that clarification.

THE COURT: Okay. All right. I think we spent enough time on this today. We'll be in recess.

(Proceedings concluded at 11:25 a.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

________________________________

ALICIA JARRETT, AAERT NO. 428     DATE: October 5, 2026

ACCESS TRANSCRIPTS, LLC

# UNITED STATES BANKRUPTCY COURT
# Western District of Texas

---

Bankruptcy Case No.: 20−50805−rbk
Chapter No.: 7
Judge: Ronald B King

IN RE: **KrisJenn Ranch, LLC** , Debtor(s)

---

## NOTICE OF FILING OF TRANSCRIPT
## AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

A transcript of the proceeding held on **9/29/26** was filed on **10/5/26**. The following deadlines apply:

The parties have until **October 13, 2026** to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *request for redaction* is **October 26, 2026**.

If a request for redaction is filed, the redacted transcript is due **November 5, 2026**.

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is **January 4, 2027** unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber **ACCESS TRANSCRIPTS 855 873 2223**, or you may view the document at the clerk's office public terminal.

Dated: 10/6/26

Robert Joseph Lawson
Clerk, U. S. Bankruptcy Court
BY: Laurie Boyd

**[Notice of Filing of Transcript and of Deadlines Related to Restriction and Redaction (BK)]** [NtcftddlrrBKap] ]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE No. 20-50805-rbk** |
| **KRISJENN RANCH, LLC, ET AL.** | § | |
| | § | **CHAPTER 7** |
| **Debtor.** | § | **(Converted)** |

---

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s): Larry Wright

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
- ❑ Plaintiff
- ❑ Defendant
- ❑ Other (describe) ____________________

For appeals in a bankruptcy case and not in an adversary proceeding.
- ☐ Debtor
- ☐ Creditor
- ☐ Trustee
- ☒Other (describe) Debtor principal and interested party

### Part 2: Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is taken: Order Converting Case to Chapter 7 (Docket No. 301)

2. State the date on which the judgment—or the appealable order or decree—was entered: September 29, 2026 ________

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

See additional sheet

### Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

- ❑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

*Charlie Shelton* ______________________ Date: 10/12/2026

Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):

Charlie Shelton
Hayward PLLC
7600 Burnet Road, Suite 530, Austin TX, 78757
737-881-7101; cshelton@haywardfirm.com

## PARTIES TO THE APPEAL

**Appellant — Larry Wright**

Represented by:

- Charlie Shelton (TX Bar No. 24079317), Hayward PLLC, 7600 Burnet Road, Suite 530, Austin, TX 78757; phone/fax (737) 881-7100; cshelton@haywardfirm.com

**Appellees — Longbranch Energy, LP; DMA Properties, Inc.; and Frank Daniel Moore**

Represented by:

- Christopher S. Johns (TX Bar No. 24044849), Johns & Counsel PLLC, 13341 W. US-290, Building 2, Austin, TX 78737; 512-399-3150; fax 512-572-8005; chris@johnsandcounsel.com

- Timothy Cleveland (TX Bar No. 24055318) and Austin H. Krist (TX Bar No. 24106170), Cleveland | Krist PLLC, 4611 Bee Cave Road, Suite 306B, Austin, TX 78746; 512-689-8698; tcleveland@clevelandkrist.com; akrist@clevelandkrist.com

- Natalie F. Wilson (TX Bar No. 24076779), Langley & Banack, 745 East Mulberry Avenue, Suite 700, San Antonio, TX 78212; 210-736-6600; fax 210-735-6889; nwilson@langleybanack.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically via the court's CM/ECF system on October 12, 2026, thus effecting service on any parties requesting service. Additionally, on October 12, 2026 or within one business day thereof, the foregoing was served via U.S. First Class Mail to all parties listed below.

| | |
|---|---|
| KrisJenn Ranch, LLC, et al.<br>410 Spyglass Rd.<br>McQueeney, TX 78123-3418<br><br>***Debtors*** | Munsch Hardt Kopf & Harr, P.C.<br>Attn: Jay H. Ong<br>1717 West 6th Street, Suite 250<br>Austin, TX 78703<br><br>***Counsel for the Chapter 7 Trustee*** |
| Christy L. Heimer<br>P.O. Box 140193<br>Austin, TX 78714<br><br>***Chapter 7 Trustee*** | |

*/s/ Charlie Shelton*
Charlie Shelton

**The relief described hereinbelow is SO ORDERED.**

**Signed September 29, 2026.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL.,** | § | **CASE NO. 20-50805-RBK** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |

**ORDER CONVERTING CASE TO CHAPTER 7**

On September 29, 2026, came on to be heard the Court's *Order to Show Cause* (ECF No. 257). Larry Wright, DMA Properties, Inc. ("DMA"), Frank Daniel Moore ("Moore"), and Longbranch Energy, LP ("Longbranch") appeared by and through counsel of record and announced ready. After hearing the evidence and argument of counsel, the Court is of the opinion that, pursuant to 11 U.S.C. §1112(b)(4), this case should be converted for cause to a case under chapter 7 for the reasons given in the findings of fact and conclusions of law stated on the record following the close of the evidence pursuant to Fed. R. Bankr. P. 7052 and 9014.

It is **ORDERED** that this case is hereby converted to a case under chapter 7 of the Bankruptcy Code.

It is further **ORDERED** that the United States trustee appoint a chapter 7 trustee to administer this case in chapter 7 and set a date and time for the § 341 meeting of creditors.

It is further **ORDERED** that Larry Wright amend the schedules and statement of financial affairs and attend the first meeting of creditors on the date and at the time scheduled by the United States trustee.

# # #