# U.S. Bankruptcy Court
# Western District of Texas (San Antonio)
# Adversary Proceeding #: 20−05027−rbk

*Assigned to:* Bankruptcy Judge Ronald B King
*Date Filed:* 05/01/20
*Lead BK Case:* 20−50805
*Lead BK Title:* KrisJenn Ranch, LLC
*Lead BK Chapter:* 7
*Demand:*
*Nature[s] of Suit:* 91 Declaratory judgment
21 Validity, priority or extent of lien or other interest in property

***Respondent***

**Express H2O Pipeline & Row, LLC**

represented by **Herbert C Shelton, II**
Hayward PLLC
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881−7100
Fax : (737) 881−7100
Email: cshelton@haywardfirm.com

***Plaintiff***

**Krisjenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row**
410 Spyglass Rd
McQueeney, TX 78123−3418
Tax ID / EIN: 74−2840947

represented by **Charles John Muller, IV**
CJ Muller & Associates
111 W Sunset Rd
78209
San Antonio, TX 78201
210−664−5000
Email: john.muller@cjma.law
*TERMINATED: 06/10/2025*

**Herbert C Shelton, II**
(See above for address)

**Ronald J. Smeberg**
The Smeberg Law Firm, PLLC
2010 W Kings Hwy
San Antonio, TX 78201−4926
(210) 695−6684
Fax : (210) 598−7357
Email: ron@smeberg.com

V.

***Defendant***

**DMA Properties, Inc.**
c/o Burns & Black, PLLC
Burns & Black, PLLC
750 Rittiman Road
San Antonio, TX 78209−5500

represented by **Timothy Cleveland**
CLEVELAND TERRAZAS PLLC
4611 Bee Cave Road
Suite 306B
Austin, TX 78746
512−689−8698
Email: tcleveland@clevelandterrazas.com

**Alexa L. Gervasi**
Cobb & Gervasi, PLLC
1250 S Capital of Texas Hwy
Building 3, Suite 400
78746
Austin, TX 78737
512−955−5209
Email: alexa@cobbgervasi.com
*TERMINATED: 04/30/2026*

**Christen Mason Hebert**
Johns & Counsel PLLC
14101 Hwy 290 West, Suite 400A
Austin, TX 78737
(512) 399−3150
Fax : (512) 572−8005
Email: chebert@johnsandcounsel.com

**Christopher S. Johns**
JOHNS & COUNSEL PLLC
14101 Highway 290 West
Suite 400A
Austin, TX 78737
512−399−3150
Fax : 512−572−8005
Email: cjohns@johnsandcounsel.com

**Austin Hammer Krist**
303 Camp Craft Road
Suite 325
Austin, TX 78746
737−900−7107
Email: akrist@clevelandkrist.com

**Maria De Lourdes Ortiz**
Cleveland Krist PLLC
303 Camp Craft Rd, Suite 325
West Lake Hills, TX 78746
737−802−6925
Email: lortiz@clevelandkrist.com

**Randall Adam Swick**
Akerman LLP
500 W. 5th Street
Suite 1210
Austin, TX 78701
737−999−7103
Email: adam.swick@akerman.com
*SELF− TERMINATED: 05/29/2026*

**Natalie F. Wilson**
Langley & Banack, Inc
Trinity Plaza II, Suite 700
745 East Mulberry
San Antonio, TX 78212−3166
(210) 736−6600
Fax : (210) 735−6889
Email: nwilson@langleybanack.com

***Defendant***

−−−−−−−−−−−−−−−−−−−−−−−−

**Longbranch Energy, LP**
c/o Burns & Black, PLLC
Burns & Black, PLLC
750 Rittiman Road
San Antonio, TX 78209−5500

represented by **Michael Black**
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, TX 78209
210−829−2022
Fax : 210−829−2021
Email: mblack@burnsandblack.com

**Michael J. Black**
Burns & Black PLLC
750 Rittiman Road
San Antonio, TX 78209
210 829 2022
Fax : 210 829 2021
Email: mblack@burnsandblack.com

**Jeffery Duke**
DUKE BANISTER MILLER & MILLER
22310 Grand Corner Drive
Suite 110
Katy, TX 77494
281−394−9778
Fax : 832−201−0649
Email: jduke@dbmmlaw.com

**Alexa L. Gervasi**
(See above for address)
*TERMINATED: 04/30/2026*

**Austin Hammer Krist**
(See above for address)

**Maria De Lourdes Ortiz**
(See above for address)

**Randall Adam Swick**
(See above for address)
*SELF− TERMINATED: 05/29/2026*

**Natalie F. Wilson**
(See above for address)

***Defendant***
−−−−−−−−−−−−−−−−−−−−−−−−

**TRCG East TX Pipeline LLC**

represented by **Katrina Angelyn Kershner**
K. Kershner Law
14228 Midway
214
Dallas, TX 75244
214−535−5226
Email: katrina_kershner@yahoo.com

V.

***3rd Pty Defendant***
−−−−−−−−−−−−−−−−−−−−−−−−

**John Terrill**
12712 Arrowhead Lane
Oklahoma City, OK 73120

***3rd Pty Defendant***

**Black Duck Properties, LLC**
410 Spyglass Road
McQueeney, TX 78123

represented by **Ronald J. Smeberg**
(See above for address)

***3rd Pty Defendant***

**Larry Wright**
410 Spyglass Road
McQueeney, TX 78123

represented by **William P Germany**
Germany Law, PLLC
1250 NE LOOP 410, STE 725
San Antonio, TX 78209
210−824−3278
Fax : 210−824−3278
Email: raymond@germanylaw.com
*TERMINATED: 06/10/2025*

**Holly Pryor−Baze**
1616 S. Chestnut St.
Lufkin, TX 75901

**Christopher Julian Sachitano**
5760 Walden Rd., Ste. 230
Beaumont, TX 77707

**Herbert C Shelton, II**
(See above for address)

***3rd Pty Defendant***

**John Terrill**
12712 Arrowhead Lane
Oklahoma City, OK 73120

***3rd Pty Defendant***

**Larry Wright**
410 Spyglass Road
McQueeney, TX 78123

represented by **William P Germany**
(See above for address)
*TERMINATED: 06/10/2025*

**Herbert C Shelton, II**
(See above for address)

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/26/2024 | | 329 | Final Judgment After Remand (related document(s): 3 Amended Complaint filed by Plaintiff Krisjenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row (related document(s): 1 Original Complaint Requesting Declaratory Judgment filed by Krisjenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row against DMA Properties, Inc., Longbranch Energy, LP (Order entered on 3/26/2024) (Hardage, Bridget) |
| 03/26/2024 | | 330 | |

| | | | |
|---|---|---|---|
| | | | Opinion After Remand (related document(s): 3 Amended Complaint filed by Plaintiff Krisjenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row (related document(s): 1 Original Complaint Requesting Declaratory Judgment filed by Krisjenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row against DMA Properties, Inc., Longbranch Energy, LP (Order entered on 3/26/2024) (Hardage, Bridget) |
| 02/08/2025 | | 380 | Transcript regarding Hearing Held 2/5/25 THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 05/9/2025. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Transcriber EXCEPTIONAL REPORTING, Telephone number 361 949−2988. − NAME OF PURCHASER: AUSTIN H. KRIST. Notice of Intent to Request Redaction Deadline Due By 02/18/2025. Redaction Request Due By03/3/2025. Redacted Transcript Submission Due By 03/11/2025. Transcript access will be restricted through 05/9/2025. (Hudson, Toni) |
| 10/02/2025 | | 498 | Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims Filed by Austin Hammer Krist for Third Pty Plaintiffs DMA Properties, Inc., Frank Daniel Moore, Defendant Longbranch Energy, LP. (Attachments: # 1 Proposed Order) (Krist, Austin) |
| 11/04/2025 | | 542 | Motion to Dismiss for Lack of Jurisdiction and Authority or, Alternatively, Motion to Stay filed by Herbert C. Shelton II for Defendant Larry Wright. (Attachments: #(1) Proposed Order) (Shelton, Herbert) Modified on 11/5/2025 (Castleberry, Deanna). |

**The relief described hereinbelow is SO ORDERED.**

**Signed March 26, 2024.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL,** | § | **CASE NO. 20-50805-RBK** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |
| | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | **ADVERSARY NO. NO. 20-5027-RBK** |
| **V.** | § | |
| | § | |
| **DMA PROPERTIES, INC., ET AL,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**FINAL JUDGMENT AFTER REMAND**

On January 11, 2021, came on to be heard this adversary proceeding for trial on the merits. Plaintiffs, KrisJenn Ranch, LLC, KrisJenn Ranch, LLC-Series Uvalde Ranch, and KrisJenn Ranch, LLC-Series Pipeline ROW, as successors in interest to Black Duck Properties, LLC (“**KrisJenn**”),

appeared by and through counsel of record and announced ready for trial. Defendants, DMA Properties, Inc. ("**DMA**") and Longbranch Energy, LP ("**Longbranch**"), appeared by and through counsel of record and announced ready for trial. Third-party plaintiff, Frank Daniel Moore ("**Moore**"), and Third-party defendant, Larry Wright ("**Wright**"), appeared in person and by and through counsel of record and announced ready for trial. After a six-day trial and an appeal to United States District Court, this Court renders judgment for the reasons stated by the District Court and in this Court's Opinion After Remand, pursuant to FED. R. BANKR. P. 7052.

It is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. Declaratory Judgment is rendered for Defendants, DMA and Longbranch, that the net-profits interests owned by Longbranch Energy, LP and DMA Properties, Inc. are valid and subsisting covenants running with the land in the right of way ("**ROW**") which is called the Express Pipeline.
2. As to DMA's and Moore's claim for breach of fiduciary duty against Wright regarding the unauthorized Black Duck loan, the Court renders judgment that DMA and Moore recover a constructive trust on the ROW in the hands of Express H2O, LLC, because of the unauthorized transfer by KrisJenn of the ROW to Express H2O, LLC.
3. As to the claims of DMA and Moore for damages for breach of fiduciary duty, Larry Wright may recover the $4,700,000 purchase price that he paid for the ROW, prior to the breaches of fiduciary duty, out of income from the ROW or the sales proceeds. After that, DMA and Longbranch will each receive 20% out of the net profits from a sale or future development income of the ROW. Other requested damages are denied.
4. DMA, Moore, and Longbranch are entitled to recover reasonable and necessary attorney's fees under the Texas Declaratory Judgment Act for the issues relating to the

covenant running with the land. The parties may submit a request for attorney's fees within 14 days after the judgment is entered pursuant to FED. R. BANKR. P. 7054 and Bankruptcy Local Rule 7054.

5. Declaratory judgment is rendered in favor of DMA that, under the terms of the Email Agreement and Harris SWD Agreement, DMA has an ownership interest in 50% of the Bigfoot Note payments. Further, the Court awards DMA $175,143.60 from the funds held in the Panola County court registry plus $100,000 in attorney's fees, if not previously paid.
6. All costs of court are taxed to Plaintiff, KrisJenn Ranch, LLC.
7. All relief not specially granted herein is hereby **DENIED**.

# # #

**The relief described hereinbelow is SO ORDERED.**

**Signed March 26, 2024.**

**Ronald B. King**
**United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL,** | § | **CASE NO. 20-50805-RBK** |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |
| | § | |
| | § | |
| **KRISJENN RANCH, LLC, ET AL,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | **ADVERSARY NO. 20-5027-RBK** |
| **V.** | § | |
| | § | |
| **DMA PROPERTIES, INC., ET AL,** | § | |
| | § | |
| **DEFENDANTS** | § | |

**OPINION AFTER REMAND**

After a six-day trial, this Court rendered judgment that the assignments of the right of way ("**ROW**") owned by KrisJenn Ranch, LLC and its affiliated entities (collectively, "**KrisJenn**"),

contained net profits interests that were personal covenants rather than covenants that run with the land. The judgment also determined the rights of the parties with respect to the Harris Saltwater Disposal ("**SWD**") well agreement and denied relief on other claims and counterclaims between the parties.

On appeal, the United States District Court reviewed the factual issues under a clear error standard and the legal issues on a *de novo* basis. The purpose of this Opinion After Remand is to make additional findings and conclusions pursuant to FED. R. BANKR. P. 7052 and to conform the findings, conclusions, and the judgment to that directed by the District Court. This Court reaffirms the findings and conclusions in its original Opinion to the extent that they are not inconsistent with the District Court Opinion. The District Court stated that there were three issues on appeal, two of which should be addressed by this Court on remand.

**I.**

On the first issue, the District Court disagreed with this Court's determination regarding covenants running with the land. The District Court found that the net profits interests of DMA Properties, Inc. ("**DMA**") and Longbranch Energy, LP ("**Longbranch**") are covenants that run with the land and it remanded to this Court to render judgment accordingly.[1]

Because the net profits interests have been determined on appeal to be covenants that run with the land, DMA and Longbranch are entitled to a judgment to that effect. This Court will

[1] As stated by Judge Edith Jones in a dissenting opinion on a different bankruptcy issue: "I would hope to stand with Galileo, who, rebuffed by a higher temporal authority, muttered under his breath, 'Eppur si muove.' ('And yet it moves.')." ***In re Greystone III Joint Venture***, 995 F.2d 1274, 1285 (5th Cir. 1992) (Jones, J., dissenting).

render judgment that the net profits interests of DMA and Longbranch are valid covenants that run with the land.

## II.

The second issue considered on appeal by the District Court was this Court's determination of the proper measure of damages for breach of fiduciary duty by Larry Wright, the principal of KrisJenn. After reviewing the transcripts of the six-day trial, this Court is unable to find any evidence of quantification of damages suffered by DMA and Moore other than their claim to recover the original purchase price of approximately $4,700,000 prior to the breaches of fiduciary duty. All of the parties to the ROW transaction were well aware that it was a speculative venture that could make a profit or could generate economic loss. Larry Wright, Daniel Moore, and Darin Borders all attempted to sell or develop the ROW, without success for various reasons. One reason was that, in the early stages, Black Duck Properties, LLC ("**Black Duck**"), did not own the ROW and buyers were hesitant to deal with people who had only a contract to *acquire* the ROW but did not actually *own* it. When Black Duck later acquired title to the ROW, the individuals who owned Black Duck or the net profits interests often disagreed about whether they should "flip" the ROW or attempt to develop it on a long-term basis in which they stayed involved and which could potentially be much more lucrative. The TCRG sale that occurred and was ultimately rescinded was a painful episode in the attempt by the parties to make a profit by selling the ROW and retaining net profits interests. Because of the dispute over whether the two 20% net profits interests were enforceable against future buyers, the parties could not agree on the proper split of sales proceeds or future income. Not one of the entities or individual parties—KrisJenn, Larry Wright, DMA, Longbranch, Daniel Moore, or Darin Borders—has made money on the purchase of the

ROW. Larry Wright and KrisJenn have paid millions of dollars and have little to show for it. Daniel Moore, Darin Borders, DMA, and Longbranch spent many hours working on the deal but have paid little.

The ROW was revested in KrisJenn at confirmation of the chapter 11 plan. It was subsequently transferred by KrisJenn to another Larry Wright-controlled entity, Express H2O Pipeline & ROW, LLC. ("**Express H2O**"), in violation of the terms of the confirmed chapter 11 plan of reorganization.[2] The Court will impose a constructive trust on the ROW in the event that Larry Wright and Express H2O fail to transfer the ROW back to KrisJenn, the reorganized debtor.

It is impossible to quantify damages as a result of Larry Wright's breach of fiduciary duty. In addition, the speculative value of the ROW and the net profits interests owned by DMA and Longbranch make the amount of damages uncertain. The Court could use offers to purchase the ROW from years ago, but values may have changed and none of the offers resulted in an actual sale. The better remedy for DMA and Moore, and the one they have elected in their proposed judgment, would be an equitable remedy: Larry Wright would restore ownership of the ROW to KrisJenn, or this Court would impose a constructive trust on the ROW in the hands of Express H2O, and allow Larry Wright to recover his investment for the $4,700,000 purchase price, prior to the breaches of fiduciary duty, from a sale or development of the ROW. After Wright is able to recover $4,700,000, the two 20% net profits interests would begin receiving income from a sale or development of the ROW. The Court is not optimistic that the parties will be able to work together for their common good and suggests that the parties agree to go to arbitration or mediation.

[2] "Wright's new entity, Express H2O, LLC, intends to comply with all obligations of the Fourth Amended Chapter 11 Plan." ECF No. 322, p. 5 (KrisJenn response to briefing on remedies).

Nonetheless, the Court will impose this equitable remedy against Larry Wright for breach of fiduciary duty.

The Texas Declaratory Judgment Act provides for attorney's fees if such fees are equitable and just. TEX. CIV. PRAC. & REM. CODE § 37.009. DMA, Moore, and Longbranch were forced to seek legal remedies and equitable relief to defend their net profits interests in the ROW and they are entitled to recover reasonable and necessary attorney's fees for their efforts. DMA, Moore, and Longbranch may file a post-judgment motion for attorney's fees.

**III.**

The third issue considered by the District Court related to the Harris SWD well. The District Court was satisfied that this Court's disposition of the SWD well issues were appropriate and found no issue to revisit on remand.

**IV.**

In conclusion, as directed by the District Court, the Court will render judgment that the net profits interests of DMA and Longbranch are valid covenants running with the land. The Court will render judgment that a constructive trust be imposed on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn. Larry Wright may recover the $4,700,000 purchase price that he paid for the ROW, prior to the breaches of fiduciary duty, out of income from the ROW or the sales proceeds. After that, DMA and Longbranch will each receive 20% out of the net profits from a sale or future development income of the ROW. The Court will separately enter a Final Judgment consistent with this Opinion.

# # #

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KRISJENN RANCH, LLC, ET AL, | ) | CASE NO: 20-05027-rbk |
| | ) | ADVERSARY |
| Plaintiffs, | ) | |
| | ) | San Antonio, Texas |
| vs. | ) | |
| | ) | Wednesday, February 5, 2025 |
| DMA PROPERTIES, INC, ET AL, | ) | |
| | ) | 9:59 a.m. to 10:53 a.m. |
| Defendants. | ) | |

LEAD CASE: 20-50805-rbk
KrisJenn Ranch, LLC

HEARING RE:
MOTION TO ENFORCE CONSTRUCTIVE TRUST [DKT.NO.368]

BEFORE THE HONORABLE RONALD B. KING,
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES: SEE PAGE 2

Court Reporter: Recorded

Transcribed by: Exceptional Reporting Services, Inc.
P.O. Box 8365
Corpus Christi, TX 78468
361 949-2988

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**APPEARANCES:**

| | |
|---|---|
| For Plaintiffs: | CHARLES JOHN MULLER, IV, ESQ.<br>C.J. Muller & Associates<br>111 W. Sunset Rd.<br>San Antonio, TX 78209 |
| For Defendants: | WILLIAM P. GERMANY, ESQ.<br>Germany Law<br>1250 N.E. Loop 410<br>Suite 725<br>San Antonio, TX 78209 |
| | AUSTIN H. KRIST, ESQ.<br>LOURDES ORTIZ, ESQ.<br>Cleveland Krist<br>303 Camp Craft Road<br>Suite 325<br>Austin, TX 78746<br>737-900-7107 |
| | CHRISTOPHER S. JOHNS, ESQ.<br>Johns & Counsel, PLLC<br>14101 Hwy. 290 West<br>Suite 400A<br>Austin, TX 78737 |

**San Antonio, Texas; Wednesday, February 5, 2025; 9:59 a.m.**

**(Call to order)**

**THE COURT:** Good morning. This is Judge King in San Antonio. Our 10:00 o'clock case is *Krisjenn Ranch, LLC versus DMA Properties*.

Could I get announcements from those of you who intend to speak this morning?

**MR. GERMANY:** Yes, Your Honor. Good --

**MR. SPEAKER:** Your Honor, --

**MR. GERMANY:** -- morning. This is William Germany for Larry Wright.

**THE COURT:** All right.

**MR. MULLER:** Your Honor, --

**MR. KRIST:** And, Your Honor, Austin --

**MR. SPEAKER:** Try again.

**MR. MULLER:** Apologies, Your Honor. John Muller. I'm here for the Krisjenn entities. I don't intend to make argument today.

**THE COURT:** Okay.

**MR. KRIST:** And, Your Honor, Austin Krist on behalf of DMA Properties, Frank Daniel Moore, and Longbranch Energy. I'll be making argument for our side today.

We also have several other attorneys on our side here, including Chris Johns, (Inaudible) Ortiz, and (inaudible).

**THE COURT:** Okay. Anyone else?

(No audible response.)

Okay. Go ahead, Mr. Krist.

**MR. KRIST:** So, Your Honor, if I may, I -- we have a short handout that we prepared in the vane of a PowerPoint, except for it's in a Word document that I'll share if the Court will allow me to.

**THE COURT:** Okay.

**MR. GERMANY:** And, Your Honor, this is William Germany. I apologize but Mr. Muller and I are actually here at the courthouse and so we cannot see that. But I'm sure it won't -- we're not going to object to it.

**THE COURT:** Okay. We'll describe it if you want us to as it goes.

**MR. GERMANY:** I'll just listen to Mr. Krist's argument. Thank you, Your Honor.

**THE COURT:** Okay.

**MR. GERMANY:** And we are way overdressed for this phone conference.

**THE COURT:** Okay.

**MR. KRIST:** And, Mr. Germany, I can assure you the things that are in the handout are really just a summary of what I'll be presenting here today, so there shouldn't be anything that you're not already hearing.

So, Your Honor, to start, in the final judgment in

this case, the Court awarded the following relief to my clients, DMA Properties, Frank Daniel Moore, and Longbranch Energy.

First, the Court entered a declaratory judgment that DMA and Longbranch have 20 percent net profits interest that are valid covenants running with the right-of-way. That's not in dispute. It's not really an issue that we're here to raise today.

Second, the Court found that Larry Wright breached fiduciary duties owed to Mr. Moore in connection with Mr. Wright's schemes to gain control of the right-of-way in the first place.

On that basis the Court awarded DMA and Moore a constructive trust over the right-of-way as an equitable remedy for breach of fiduciary duty. That's relevant here -- well, actually let me back up.

So, Your Honor, that's relevant for multiple reasons, including that Mr. Wright previously transferred the right-of-way to another entity that he controlled, Express H2O, while this proceeding was pending.

And as you might recall, in its final judgment the Court ordered that it was imposing a constructive trust on the right-of-way in the hands of Express H2O if Mr. Wright did not transfer the right-of-way back to Krisjenn.

And then, third, Your Honor, the Court awarded DMA,

Moore, and Longbranch their attorneys' fees. I understand that Mr. Germany had an objection to us raising that issue today because we added it in an amended motion.

And so we're not going to be pressing that here today if Mr. Germany is continuing to object.

But the motion for constructive trust is fully briefed, and that's the primary issue that we have here. And so, Your Honor, --

**MR. GERMANY:** Sorry. I am continuing with my objection. They filed an amended motion on Monday evening, Your Honor.

**MR. KRIST:** And so, --

**THE COURT:** Okay.

**MR. KRIST:** -- Your Honor, because Mr. Germany's objecting to the request for substitute service and I guess is not prepared to address it, we've agreed that we won't proceed on that issue and we'll just be moving forward on the constructive trust issues that are fully briefed in the response.

**THE COURT:** The substituted service, was that the only thing you added to the amended motion?

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** Okay. Go ahead.

**MR. KRIST:** And so, Your Honor, we're centered on the constructive trust here today.

And at bottom, the basic reason that we are here before the Court is because Mr. Wright has made no attempt to comply with this Court's final judgment in any way, including with respect to the constructive trust.

So moving on to the meat of our argument here, under the final judgment, as I mentioned, the Court ordered that DMA and Moore shall recover a constructive trust on the right-of-way as a remedy for Wright's breaches of fiduciary duty. That's on page two of the judgment, Your Honor.

And the Court then further explained in its opinion accompanying the final judgment that unless Mr. Wright transferred the right-of-way back from Express H2O to Krisjenn, the Court would impose a constructive trust on the right-of-way which would allow Larry Wright to recover his investment for the $4.7 million purchase price prior to the breaches of fiduciary duty.

And the Court didn't award anything else to Mr. Wright.

Now, Your Honor might remember that at the last hearing before entry of the final judgment Defendants' counsel Mr. Muller represented to this Court that Defendants would in fact transfer the right-of-way back to Krisjenn.

Well, that never happened, and we know that for two reasons. First, Defendants served post-judgment discovery requests which revealed that the right-of-way was not

transferred back to any of the Krisjenn entities.

Second, we learned a couple weeks ago that not only did Mr. Wright refuse to transfer the right-of-way back to Krisjenn, in violation of this Court's order and in violation of the Chapter 11 plan, but on top of that Express H2O, which continues to hold the right-of-way, is now out there filing lawsuits against third parties and claiming that Express H2O is the rightful owner of the right-of-way.

And that's problematic for a whole host of reasons. Number one, because Express H2O is not the lawful owner of the right-of-way in light of this Court's order imposing a constructive trust.

And, number two, because Express H2O is not -- excuse me. Number two, because Express H2O is out there engaging in litigation and taking positions as to the scope and rights under the right-of-way, that could seriously prejudice my clients.

I'm going to scroll ahead in our handout here, Your Honor, because I realize I skipped a page.

Now, Your Honor, with that context in mind, the reason we are here before the Court today is because we are asking this Court to enforce the constructive trust that it imposed under the final judgment for Mr. Wright's fiduciary breaches by ordering Mr. Wright to transfer the right-of-way to DMA and Mr. Moore.

Now, in his response, Mr. Wright argues that this Court can't require him to transfer title to DMA and Mr. Moore because, according to Mr. Wright, we weren't granted that relief in the final judgment.

And to be blunt, Your Honor, that's wrong. And it misunderstands what a constructive trust is under Texas law.

Under Texas law, a constructive trust is an equitable remedy that subjects the person holding title to property to an equitable duty to convey it to another.

That language is from In Re Gouge (phonetic), which is a Southern District of Texas bankruptcy case from 2008 that we cited in our briefing.

And the Texas Supreme Court has likewise reiterated the same principle and affirmed that when a court imposes a constructive trust on real property, the effect of the constructive trust is to create an equitable duty on the party holding the property to convey it.

That's from *Tally v. Howsley*, which is another Texas Supreme Court case that we've cited in our briefing.

And, Your Honor, the reason that a constructive trust requires transfer of title is because under Texas law, fiduciaries who have breached their duties, like Mr. Wright, are not allowed to keep the fruits of their malfeasance.

That's from *ERI Consulting*, a Texas Supreme Court case from 2010 which again we've cited in our briefing.

And concomitantly, when a fiduciary acquires legal title to property in violation of a fiduciary relationship, the imposition of a constructive trust subjects the breaching fiduciary to an equitable duty to convey the property.

And that's exactly the situation that we are in here. In this case, the Court expressly found that Mr. Wright obtained control of the right-of-way through breaches of fiduciary duties that he owed to Mr. Moore.

And in its final judgment, the Court explicitly imposed a constructive trust on the right-of-way as a remedy for those breaches of fiduciary duty.

Under that constructive trust, Mr. Wright gets to recover a first monies obligation of 4.7 million from any sale or monetization of the right-of-way.  And we're not disputing that.

But what he can't recover are profits or amounts in excess of that contribution because, as I mentioned, Texas law does not allow fiduciaries to profit from breaches of their fiduciary duties.

And here, Mr. Wright obtained control of the right-of-way in the first place by breaching fiduciary duties that he owed to Mr. Moore.

And, Your Honor, that's what this Court's final judgment ordered.  It ordered that it was imposing a constructive trust that would allow Larry Wright to recover his

20-50805-rbk Doc#339-1 Filed 02/18/25 Entered 02/18/25 17:33:11 20-5027 Designated Documents



investment for the $4.7 million purchase price and nothing more.

And, finally, Your Honor --

**THE COURT:** Doesn't he get 60 percent after the 40 percent held by Moore and Borders?

**MR. KRIST:** Well, Your Honor, I believe that the answer to that question is no because under Texas law, Mr. Wright cannot profit from his breaches of fiduciary duty.

And we don't dispute that Mr. Wright would get back the money that he paid in, the 4.9 million or, excuse me, 4.7 million. And so he would be made whole under the constructive trust. And it was within Your Honor's discretion to craft equitable relief in that way.

But under Texas law and under the Texas Supreme Court's case *ERI Consulting*, what Mr. Wright cannot do is he cannot then recover additional 60 percent profits on top of getting paid back because he only obtained that interest in the right-of-way through his breaches of fiduciary duty in the first place.

**THE COURT:** What does the judgment provide?

**MR. KRIST:** Your Honor, the judgment provides -- it says: as to DMA and Moore's claim for breach of fiduciary duty against Wright regarding the unauthorized Black Duck loan, the Court renders judgment that DMA and Moore recover a constructive trust on the right-of-way in the hands of Express

H2O.

And, Your Honor, we believe that that constructive trust was the correct remedy here because Mr. Wright obtained the right-of-way through his breaches of fiduciary duty. And it is the remedy that this Court ordered for breach of fiduciary duty.

And under Texas law, the effect of that constructive trust, which has already been awarded in the Court's final judgment, is to subject Mr. Wright to an equitable duty to convey the property to DMA and Mr. Moore, subject to the first monies obligation that Your Honor ordered, because that's what a constructive trust is under Texas law.

And we think that issue is clear, Your Honor. The reason that we're here today is because Mr. Wright has made no effort to comply with the Court's judgment. He has not effectuated a transfer pursuant to the constructive trust.

And he didn't even transfer the right-of-way back to Krisjenn as this Court originally requested in light of his breaches of the Chapter 11 plan.

And, Your Honor, finally just to wrap up, in terms of equities here, fundamentally Mr. Wright has not been -- excuse me, has not proven that he can be trusted with the right-of-way or that he is the appropriate steward to monetize that.

As I mentioned, he originally got control through his breaches of fiduciary duty. And he subsequently attempted to

transfer the right-of-way to this other entity, Express H2O, in violation of the Chapter 11 plan in an attempt to evade this Court's judgment.

He didn't honor his lawyer's representations that it would be transferred back to Krisjenn. And now he's litigating with third parties claiming that Express H2O is the owner of the right-of-way, in spite of the constructive trust, which risks seriously prejudicing my clients' rights.

And, in sum, we're respectfully asking the Court to enforce the constructive trust it awarded by ordering Mr. Wright to transfer the right-of-way to DMA and Mr. Moore, subject to that $4.7 million first monies obligation because that is what Texas law requires under the judgment entered by this Court.

Your Honor, at this point, if you have further questions I'm happy to answer them. Otherwise I'm happy to cede the --

**THE COURT:** Yeah.

**MR. KRIST:** -- floor to Mr. Germany.

**THE COURT:** I have three questions. What's the status of the appeal? I saw that an appeal was filed and some appeals were consolidated by Judge Xavier Rodriguez.

**MR. KRIST:** Yes, Your Honor. So the appeal is still pending. We have filed our affirmative briefing. The Defendants have filed their responsive briefing. They, to the

best of my knowledge, have not filed any affirmative brief laying out their own arguments (inaudible) --

**THE COURT:** Well, is the appeal filed by your side, by DMA and Moore and so forth?

**MR. KRIST:** Your Honor, both sides filed a notice of appeal but only my side filed a substantive brief urging arguments for reversal --

**THE COURT:** Okay.

**MR. KRIST:** -- or action by the appellate court.

**THE COURT:** Okay. And you don't know anything about when that might come out, the -- Judge Rodriguez hasn't scheduled an oral argument or anything like that.

**MR. KRIST:** I don't believe so, Your Honor. I believe that the reply brief is due in the next week or two here.

**THE COURT:** Okay. And they --

**MR. KRIST:** Although --

**THE COURT:** -- he may just do it on the papers obviously. He may not schedule argument.

**MR. KRIST:** That's correct, Your Honor.

And one other issue I'll note in connection with the appeal is that the fact that the appeal's pending does not affect this Court's ancillary and continuing jurisdiction to enforce its judgment.

There's plenty of Fifth Circuit law that says that

the district court retains jurisdiction to enforce its judgment.

And what we're asking for here is for the Court to enforce the constructive trust that it has already awarded. And that should not interfere with the appellate court's jurisdiction or this Court's jurisdiction in any way.

**THE COURT:** Okay. This is kind of outside the record and so I'm not going to base any decision on this. But does the right-of-way still have value?

**MR. KRIST:** Your Honor, absolutely we believe that the right-of-way has value.

And in the Express H2O Pipeline petition that I mentioned we recently became aware of where Mr. Wright is filing lawsuits claiming to own the right-of-way through Express H2O, he even mentions that in 2023 he was engaged in discussions attempting to sell it with John Terrill, who you might remember from the trial.

So, yes, within the last two years Mr. Wright has been out there trying to monetize the right-of-way.

And on top of that he's filing lawsuits claiming to own the right-of-way, seeking money from third parties for allegedly violating Express H2O's rights with respect to the right-of-way which, as I mentioned, is problematic and we believe improper.

**THE COURT:** Do you know if in -- as a part of those

negotiations he's disclosing the interest of DMA, Borders, and Moore?

**MR. KRIST:** Your Honor, my impression is that he is not. It is not mentioned in the petition.

The Defendants in that case learned of this case filing I believe through the public record and reached out to us about it. And the best of my knowledge, at that point they were not aware of any interest.

I'm not -- candidly, I'm not sure that that would be an issue affecting them because in that litigation that the net profits interest wouldn't strictly speaking be germane to the claims that were brought.

So I have no reason to believe that Mr. Wright is disclosing my clients' net profits interests in any of his conversations with third parties about this right-of-way.

**THE COURT:** So you're concerned that it's a repeat of what happened in the prior sale that was rescinded, that he's not disclosing the 20 and 20 percent net profits interests?

**MR. KRIST:** Well, Your Honor, I'd say that we have really three concerns.

Number one, yes, we're concerned that Mr. Wright is not disclosing my clients' net profits interests.

Number two, we believe that Mr. Wright shouldn't be in a position to go out there and use Express H2O to try and monetize this right-of-way and then get amounts over the first

monies obligation imposed by this Court because of the constructive trust.

And we believe that the constructive trust requires transfer of title to our clients under Texas law because, again, that's what a constructive trust is.

The third issue that I would say that we have is that because my clients have these net profits interests and because of Mr. Wright's continued and documented malfeasance and in my view wrongful actions, he's just not an appropriate steward for this right-of-way.

He's not going to be able to monetize it. He shouldn't be allowed to monetize it for his own profit in light of his fiduciary breaches.

And we believe that the judgment imposed by this Court requires transfer of title to the right-of-way to our clients, subject to that first monies obligation.

**THE COURT:** And who's your client? Is it DMA and Mr. Borders individually or Mr. Moore or who is it?

**MR. KRIST:** Your Honor, I represent Frank Daniel Moore individually, DMA Properties, and then Longbranch Energy. I don't represent Mr. Borders in his individual capacity.

But the request for the constructive trust specifically concerns really Mr. Moore and DMA Properties, to the extent that he's the full owner of that entity, because the breaches of fiduciary duty were breaches of fiduciary duty that

Mr. Wright owed to Mr. Moore, not to Mr. Borders.

**THE COURT:** Well, which person or entity owns the 20 percent; either Mr. Moore or DMA?

**MR. KRIST:** Your Honor, my understanding, and Mr. Johns can correct me if I'm wrong because I'm a little rusty on this issue, but my understanding is that the net profits interest was transferred and owned by DMA Properties.

It originally belonged to Mr. Moore but was subsequently transferred.

**THE COURT:** And then Borders is not represented today, but his 20 percent was owned by Longbranch.

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** Is he active in the appeal or is he just sort of in the background?

**MR. KRIST:** He is active in the appeal to the extent that Longbranch Energy is one of the appealing parties and he is represented by our side and by Mr. Johns.

**THE COURT:** Now, does Mr. Johns also represent Moore and DMA or just Longbranch?

**MR. KRIST:** All three, Your Honor.

**THE COURT:** All three. And you represent all three, Mr. Krist?

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** Oh, okay. And then the Express lawsuits, I mean, you're saying that Mr. Wright is negotiating with

people and that is about a purchase of the right-of-way. And you're saying that that's resulted in some lawsuits; what, for specific performance or damages or what?

**MR. KRIST:** My understanding, Your Honor, is that Mr. Wright's filed a petition against somebody else claiming that their actions or asserted property interest infringe on the right-of-way. And so he's now engaged in litigation as to the scope and validity of the right-of-way.

And obviously, to the extent that those issues are determined adverse to Mr. Wright with respect to the right-of-way, that would prejudice my clients.

**THE COURT:** Is it one --

**MR. KRIST:** The --

**THE COURT:** -- lawsuit or more than one lawsuit?

**MR. KRIST:** I am only aware of one lawsuit at --

**THE COURT:** Okay.

**MR. KRIST:** -- this time.

**THE COURT:** Where is that pending, what county?

**MR. KRIST:** Your Honor, --

**THE COURT:** Do you know?

**MR. KRIST:** -- Mr. Germany or Mr. Muller might be able to better speak to that. I believe it's pending in the eastern -- excuse me, it's pending in eastern Texas where the right-of-way is located.

**THE COURT:** Okay.

**MR. KRIST:** Off the top of my head I don't remember the specific county. But I'm sure that I could pull up the petition (inaudible) --

**THE COURT:** Like Nacogdoches or Angelina or something like that?

**MR. KRIST:** Yes, that's correct, Your Honor.

**THE COURT:** Okay. So what you're asking for today is to compel Krisjenn and/or Mr. Wright to transfer the right-of-way from Express H2O to DMA and Longbranch; is that right?

**MR. KRIST:** Really it would be DMA and Mr. Moore, Your Honor. They're -- Mr. Moore is a hundred percent owner of DMA.

We would be seeking to have this Court order Mr. Wright to transfer title pursuant to the constructive trust because this Court's final judgment imposed a constructive trust on the right-of-way as a remedy for breach of fiduciary duty in the hands of Express H2O.

**THE COURT:** Okay. And wasn't it DMA and Longbranch?

**MR. KRIST:** Your Honor, the breaches of fiduciary duty were specifically respect to -- Longbranch has a 20 percent interest pursuant to --

**THE COURT:** Right.

**MR. KRIST:** -- a different contract that it entered. But that does not implicate the constructive trust or breaches of fiduciary duty.

Your Honor, at this point, unless Your Honor has further questions, I'm happy to cede the floor to Mr. Germany and respond to the -- whatever arguments he has.

**THE COURT:** Okay. Mr. Germany.

**MR. GERMANY:** Yes, Your Honor. Actually Mr. Muller is well-versed on some of these issues that need to be addressed and he will address the Court on some of the factual background and the pending lawsuit.

**THE COURT:** Okay.

**MR. MULLER:** Yes, Your Honor. Yes, I don't want to interfere with Mr. Germany's argument which he's well-prepared for.

I just would like to correct the record on four discreet issues which came up during the trial and I think the Court is well aware of.

But a representation made was made that there was no evidence that Mr. Wright has attempted to comply with the Court's constructive trust issue. And I don't believe that to be true.

If you will recall, there is -- there's a bankruptcy plan in place which is, you know, a contract between the parties allowing the row to be sold free and clear.

One of the issues there was, of course, that the Krisjenn name had been shown in a poor light during the trial, and there were very few prospective buyers.

So Mr. Wright had transferred the row into a new entity in the hopes of cleaning up and marketing the property, which is exactly he was supposed to do.

When it was reported to the Court in the sanctions motion that that was inappropriate, I told the Court that we would be glad to move it back.

I don't -- I didn't handle those transfers and I'm not handling those transfers. But we did tell the attorneys who had made that transfer, just put it right back in Krisjenn.

Too much time had passed and the Krisjenn name was no longer available. And so pretrial we once again reported that we could not put it into the Krisjenn name.

However, H2O stood ready to stand in the shoes of Krisjenn and would comply with not only the Court's orders but the bankruptcy plan to its full extent.

And that issue was heard and litigated at trial on remand; keeping in mind that that's not a proper remand issue. Those were not facts and issues that happened at trial. They were not part of the record and they were not remanded.

It was almost like a sanctions motion that was a kind of an issue addressed on the side.

I think the Court appropriate and wisely ruled that the -- although we could not return the title to Krisjenn, that an -- the constructive trust would be imposed on H2O in the hands of Larry Wright as manager to make sure that when the row

was sold and monetized, that the proceeds of sale would be distributed as the Court ordered in its constructive trust, the first I believe 4.7 to Mr. Wright, the remaining at a 60, 20, 20 rate.

Mr. Wright is aware of that order; again, by and through me confirms his intent to comply with that order. There has been no sale. And if there is a sale, I can assure the Court that that will be exactly how we proceed.

I will say that to the extent we've now come back on an order to readdress that issue, I would say that we are *res judicata* in trying the case.

I also want to address the issue of fruits of his malfeasance and that the Court had somehow ruled that Larry's breach of fiduciary duty was in -- accomplished by wrongfully transferring the row.

And that's not true. And I think everyone knows that that's not true. And that is not in the record.

Privity was a very expensive issue argued in this case. It is undeniably true and, in fact, part of closing argument that privity of the row went from (inaudible) originally named Express into Krisjenn, and then to TCRG, which was an entity owned by Bobby Wright, and then into Krisjenn.

There was no proof and no allegation that Krisjenn had wrongfully foreclosed upon the row and taken it by that way, the fruits of their malfeasance as it were said.

20-50805-rbk Doc#39-1 Filed 10/12/21 Entered 10/12/21 16:51:31 20-5027 Designated Documents 37 of 100


That issue had to do with the Bigfoot note. It was addressed on summary judgment. That was what was foreclosed upon. It was the note and the note only.

And the Court ordered that, you know, that those funds be released from I believe the Shelby County court, and attorneys' fees be paid. And all of that happened.

But as to the breach of fiduciary duty, the only findings and holding there was that Mr. Wright had breached his fiduciary duty in not properly presenting in a proposing alone agreement, which was collateralized by the row.

But that collateral was never foreclosed, there was no transfer. And so to be clear, not only did Mr. Moore and Mr. Wright never own -- I'm sorry, Mr. Moore and Mr. Borders never own the row, but their deals insisted that they not. They wanted only silent net profits interest.

They wanted only upside. They did not want the expense and trouble of holding and owning these rows. And so, again, there was no -- absolutely no finding that the row was transferred wrongfully as a breach of fiduciary duty.

My third point I would like to make is there's this -- you know, in prior proceedings it has been alleged that Mr. Wright is a bad owner of the row. He is the owner of the row.

There was no claim -- there was 33 counterclaims; none for trespass to try title, none for quiet title. They --

these gentlemen never wanted to own the row. They wanted -- they want the fruits of owning it but they don't want the expense and trouble of it.

And so the -- I'm sorry, can I look at my notes here?

I'm -- the issue about -- that came up previously was that Mr. Wright was a poor owner of the row because he didn't do things to take care of it, to be a good steward. Like, for instance, filing lawsuits for infringement and encroachment up on the row and trying to recover for damage to the row.

Now Mr. Wright has gone out and done that. Again, I'm not -- that's being handled by Houston lawyers. There's a bunch of them, there's like 30 of them. It's pending in Atascosa. It's a big lawsuit.

**THE COURT:** A bunch of --

**MR. MULLER:** It's not (inaudible) --

**THE COURT:** -- lawyers or a bunch of parties?

**MR. MULLER:** I'm sorry, there's two, three parties. I believe it is -- again, I'm not on pleadings there, Your Honor, but I have spoken to these lawyers. There's many of them. It is Express H2O as a party plaintiff against an entity named Westlake.

Westlake is a pipeline company that moves Olefins through east Texas. Their pipeline crosses over the row, encroaches up on the row, and it is damaging to the row.

And so as a good owner and steward of the property,

when Mr. Wright figured that out, he filed this lawsuit. And, you know, it's very expensive and very time consuming.

In the past, we have been accused of being poor stewards of the row for not filing these lawsuits. Now we -- the lawsuit's been filed and we're a poor steward of the row for filing these lawsuits.

And I want to say -- point something out. And this is really important and dangerous. You saw this in the TCRG case where Larry did go out and he made a productive deal that would have made everyone a lot of money. I think $10,000 a day would have gone to Borders and Moore.

And they came in and said, no, he's a fraudster, he's a bad guy, coming back with this fraud thing. And the deal's unwound and it's lost.

Contemporaneously with the filing of this very motion before this Court, magically and miraculously the attorneys for Westlake have filed a similar motion on their side.

Their motion says that the case must be dismissed for want of jurisdiction because H2O doesn't really own the low -- row; because the row was transferred with this constructive trust imposed upon its proceeds, that therefore means that there is no title and standing for the plaintiff to assert the claim.

That would result not only in the lawsuit being dismissed but forever lost because limitations would have

already passed.

So if -- what the movants are trying to prove today would once again cost millions of dollars of damages to the row and, therefore, and they're shooting themselves in the foot on their own interest to collect on the row.

But in closing -- and, again, I don't want to get into argument, but those are the factual statements I know for the Court. I don't believe the constructive trust has -- implicates title.

I think when Mr. Wright says to the court in Atascosa I, H2O, owns the row, he's telling the truth. And I think he would be sanctioned and troubled if he said otherwise.

I don't know if they have disclosed the constructive trust or not. It's not a secret. I mean, I think if they were required to, they absolutely would. But I don't know if they have. I don't know if anyone's asked.

And factually that's all I have. I'm sorry if I went too long. I'll pass to Germany.

**MR. GERMANY:** Your Honor, --

**THE COURT:** Go ahead.

**MR. GERMANY:** Sorry. Yeah, he covered a lot of my points, Your Honor. I was just going to get to the meat of the issue here on the constructive trust.

Legally the constructive trust is just a creature of this judgment, and that is all it is, as I briefed the Court

on, Your Honor.

They are trying to alter the final judgment. As Mr. Muller mentioned, this is *res judicata* at this point. They're trying to alter and have terms put into the trust that just do not exist.

And the factual basis and background that Mr. Muller refreshed the Court's memory of go to exactly what we are trying to prevent from happening, and Mr. Wright is trying to prevent from happening, and that is hurting the row and its future value.

And at this point, even that aside, Your Honor, the issues -- they've not done anything, and that is DMA has not shown anything to this Court to show that he has violated any of the terms of the constructive trust and paragraphs two and three of the final judgment.

It simply says he has to hold it in trust, which he is doing. He is also pursuing those claims in east Texas to hopefully increase the value of the row and protect it and preserve it.

All he has to do at a given point in time is if it is sold or monetized, he gets the first $4.7 million. It's simple. That's the first part of the trust.

And then after that there's a split of the net profits interest. It is clearly and explicitly spelled out in the judgment.

None of those events have happened. The post-judgment discovery has not even touched upon that or even asked about that to my knowledge.

Maybe they have asked Krisjenn, but Krisjenn is a defunct company. It is not there. There is nothing there to receive profits. That would be through Larry Wright, Your Honor, and Express H2O.

He just cannot offload this whole row and then get away with it. It's sitting there out in east Texas. And he -- all he has to do on that is account for any net profits or any income to it. And he gets the first 4.7 million, and then after that they split 60, 20, 20.

**THE COURT:** Well, I don't think --

**MR. SPEAKER:** And that --

**THE COURT:** -- the judgment mentions the 60. I mean, I agree with the 20, 20, but where does it say the 60?

**MR. GERMANY:** It does not, Your Honor. But it's implied. And it says, after that, DMA and Longbranch will each receive 20 out of the net profits from the sale of future development of the row.

And so there would have to be somebody else there that would receive the 60 percent. And I would say that would be the then current owner, whether it's H2O or if it's been sold, wherever that 60 percent interest went.

**MR. MULLER:** If I may add, Your Honor, --

**THE COURT:** Why is it --

**MR. MULLER:** -- just one more --

**THE COURT:** -- pending in Atascosa County, just out of curiosity, the lawsuit?

**MR. GERMANY:** I think the encroachment of the row, if you'll remember, Your Honor, crosses four counties. And I think that Westlake's portion -- Westlake's Pipeline crosses the portion of the row that is in Atascosa. And so I think that the (inaudible) --

**THE COURT:** Well, I mean, the row is in east Texas. Atascosa's probably --

**MR. MULLER:** (Inaudible) --

**THE COURT:** -- hundred and fifty miles away.

**MR. GERMANY:** I'm misspeaking then. I am misspeaking. It is the southernmost county that begins with an "A." I cannot remember what it is but --

**THE COURT:** Oh.

**MR. GERMANY:** -- they filed it (inaudible) --

**THE COURT:** Angelina maybe.

**MR. GERMANY:** Angelina, yeah. I think it's mandatory jurisdiction in that county because that's where the --

**THE COURT:** Okay.

**MR. GERMANY:** -- (inaudible) is. I would --

**THE COURT:** Okay.

**MR. GERMANY:** -- like to add one jurisdictional point

I think hasn't been brought up yet, is we did not -- yes, we got reversed by the district court. It was heard on remand and entered. We didn't -- we filed a notice of appeal. We did not pursue that appeal.

The appeal -- the only appeal that's pending is on breach of fiduciary duty. And the argument being made there -- and correct me if I'm wrong, Mr. Krist -- but is that your constructive trust is inappropriate because you didn't award, among other things, title, that you should have given a more relief, equitable relief than what you did.

You should have also given them title, even though it wasn't pled for or any evidence was presented.

And now that same issue's being raised at the trial court again. I would think jurisdictionally that issue is now before the district court or the Fifth Circuit, wherever that's at. Sam Houston and Greta McFarland are handling that part of the case.

But I don't think we can try that issue in two different courts at the same time.

**THE COURT:** Well, the appeal's pending in U.S. District Court in San Antonio. I don't know of anything in the Fifth Circuit.

**MR. GERMANY:** Well, I think that's right. It hasn't made its way to the Fifth Circuit yet. But I think the appellate briefing says the constructive trust is erroneous and

that title is not granted.

**MR. KRIST:** Your Honor, if I may.

**THE COURT:** Yeah, go ahead.

**MR. KRIST:** So I'll start with the last point raised by I think that was Mr. Muller. You know, he just suggested that the appeal concerns this constructive trust issue and that, therefore, this Court doesn't have jurisdiction. I don't believe that's accurate, Your Honor.

The -- number one, this Court has jurisdiction to enforce its final judgment, notwithstanding the appeal. And we've cited to ample law on that in our brief and previously in our argument.

The issue with the appeal is, candidly, we believe that the constructive trust shouldn't have even provided Mr. Wright with an option to transfer the right-of-way back to Krisjenn because we believe the constructive trust should apply regardless of whether he transferred it back to Krisjenn because he cannot profit from his fiduciary breaches.

At this point that's really beside the point because there's no dispute that Mr. Wright failed to transfer it back.

And on top of that, the Court's final judgment did award the constructive trust on the right-of-way in the hands of Express H2O.

There's no dispute that the right-of-way still remains in the hands of Express H2O. And there's nothing

20-50805-rbk Doc#330-1 Filed 02/18/25 Entered 02/18/25 07:33:51 Exhibit Page 33 of 48



barring this Court from enforcing the constructive trust.

Number two, I believe it was suggested that the constructive trust is just for proceeds of any sale to be distributed. And, Your Honor, the Defendants haven't put forward any law to that effect.

The law in Texas is to the contrary very clear that a constructive trust is an equitable device that requires transfer of title. That's what it is. And they can't claim it's something else in contravention of this Court's order, and try and insert additional terms that just aren't there.

But the Court did order a constructive trust. And under Texas law, that does require a transfer of title.

Number three, Your Honor, I believe Mr. Muller suggested that Mr. Wright has complied with this Court's order. I'm not aware of any way in which Mr. Wright has complied with this Court's order.

Defendants have done nothing to satisfy the judgment on attorneys' fees for $750,000.

We believe that Mr. Wright is evading service of the writ of execution that we've been attempting to serve on that point.

And then on top of that, as Your Honor already knows, he's made no attempt to transfer the right-of-way back to Krisjenn. He didn't timely do so. And the right-of-way still remains in the hands of Express H2O.

Fourth, Your Honor, it was suggested a minute ago that there's no evidence that Krisjenn wrongfully foreclosed and that the foreclosure related to -- just to the Bigfoot note. That's simply not true, Your Honor.

The way that Mr. Wright got control of the right-of-way in the first place is he entered a conflicted loan transaction with Krisjenn, his own entity, without disclosing it.

And this Court found that that unauthorized loan transaction allowed Mr. Wright to obtain control of the right-of-way by foreclosing on it. And that leads us to where we are today. There's -- there is simply no basis for saying that there's no evidence of wrongful foreclosure.

And I believe that that's a misstatement of the facts of the case and this Court's findings where the Court did explicitly find that there were breaches of fiduciary duty and that Mr. Wright had entered this conflicted loan transaction in breach of those fiduciary duties.

Finally, Your Honor, we're not trying to alter the final judgment or add additional terms.

We're just asking the Court to enforce the constructive trust that it has already awarded because under Texas law, constructive trust means one thing. It means an equitable duty to convey title. And that's what we're asking for here.

Mr. Wright could have complied with the Court's order by transferring title, or he could have complied, as the Court allowed, by transferring it to Krisjenn. He did neither.

And as a result, this Court's final judgment requires transfer of the right-of-way pursuant to that equitable duty under the constructive trust.

I have one final point to rise, Your Honor. It was also suggested that my clients don't want to own the right-of-way and that imposition of a constructive trust would cost millions of dollars in damages. That's -- none of those things are true.

My clients are seeking title to the right-of-way pursuant to the constructive trust. That's why we're here today. The whole reason for this case is because Mr. Wright engaged in breaches of fiduciary duty to gain sole control of the right-of-way from my clients.

And there is no evidence or basis for saying that imposition of a constructive trust would cost millions of dollars in damages. To the contrary, it would put the right-of-way in the hands of the people to whom it rightfully belongs, in light of Mr. Wright's fiduciary breaches.

And it would actually increase the ability of the parties to actually monetize this thing, and for Mr. Wright to get his money back on his first monies obligation.

**THE COURT:** Okay (inaudible) --

**MR. KRIST:** And so --

**THE COURT:** I was just looking at the docket sheet for the appeal in U.S. District Court. And I see that Krisjenn has filed their appellees brief. So are they still a active -- an active corporation or LLC?

**MR. GERMANY:** It's an appellant to the briefing. I don't know if they're still active or not. I think that that name has already been lost and has been taken by someone else. That's my understanding.

**THE COURT:** I mean, seriously, somebody else took the name Krisjenn and so you couldn't get it.

**MR. GERMANY:** I don't know, Your Honor. You know, after I spoke to you, I said, put it back. He wanted to. He spoke with the lawyers who transferred it. And they were unable to accomplish that, and that's why we returned to you.

There was a motion for sanctions before trial. I -- you know, I objected to it being tried as -- at the same time as the remand on trial, but nevertheless reported to you and reported to -- or reported to the Court -- because I had previously told you we would transfer it back.

And that was absolutely my, you know, legal advice and my intent. But he was unable to do so.

And for whatever reason, the corporate attorneys who handled that could not put the -- reform the Krisjenn entity. And so it stayed in the hands of this new entity.

But as I stated at trial and will reaffirm now, I have -- my client assures me that it will -- that he will comply with the Court's order and follow the constructive trust.

I don't think this idea that Mr. Wright got control of the row by breaching a fiduciary true is not truthful.

He got sole control when they said, we don't want control, we want net profits interest only, we want (inaudible) and interest, and we don't want to share in the downside, so if you lose then million, we don't want to pay five.

We only want upside on a silent net profits interest. And so by contract they didn't want to have ownership and control. The fiduciary issues have nothing to do with that.

But, yes, Your Honor, I think you make a good point. I think the appellate is in the name of Krisjenn. My understanding is that he could not reform it to take title and possession to the row.

And if you need further evidence and affirmation of that, I will gladly present it and provide it to the Court.

**THE COURT:** Okay. So, Mr. Krist, what about the argument that the lawsuit, if there's a transfer of the right-of-way back to either Krisjenn or let's say DMA, that the lawsuit would end up being dismissed and limitations would bar relief in that instance; do you know anything about that?

**MR. KRIST:** Your Honor, I would be speaking to some

degree out of turn. But I believe that --

**THE COURT:** Yeah.

**MR. KRIST:** -- to the extent the right-of-way is transferred back pursuant to the constructive trust, my clients would have standing to intervene in that lawsuit and they would be able to steward it on that basis.

I don't believe that, and I'm not aware of, a statute of limitations argument that would result in millions of dollars in damages. And at the end of --

**THE COURT:** So basically try to slip into the shoes of Krisjenn or Express H2O as plaintiff.

**MR. KRIST:** That's correct, Your Honor. We would seek to substitute as the proper party that actually owns the right-of-way. And I believe that would be sufficient to get around any statute of limitations arguments, to the extent there are any. And I don't know that there are.

**THE COURT:** Okay. So -- and I realize you said you're withdrawing the request to have substituted service. But, I mean, shouldn't that be fairly noncontroversial?

I mean, if somebody's evading service, you can tack it onto their front door under State rules. And, you know, we can sort of adopt State rules. I mean, does he still live --

**MR. KRIST:** Well, --

**THE COURT:** -- in the same place or do you know, out at McQueeney?

**MR. KRIST:** Your Honor, to the best of my knowledge Mr. Wright and/or Krisjenn have two houses around the corner from each other still out there.

**THE COURT:** At Lake McQueeney?

**MR. KRIST:** I believe so, yes, Your Honor. And one of those addresses is actually -- the 410 Spyglass address is actually registered street address with the Texas Secretary of State for Express H2O.

**THE COURT:** Okay.

**MR. KRIST:** And so -- and as far --

**THE COURT:** Well let me ask --

**MR. KRIST:** -- as we can tell from the --

**THE COURT:** -- Mr. Germany. Mr. Germany, I mean, isn't substituted service contemplated when you can't find somebody to serve?

**MR. GERMANY:** I'll answer, Your Honor, only because I had this pending -- same issue pending before you in the State (phonetic) versus Amarillo National Corp. case which is -- has -- it's with an action on debt.

Yes, there is a Rule 106 under State law. But he could easily come back and ask for substitute service. Those rules and proceedings relate to service of process, not service of a writ of execution; a writ of execution of course being an order from the Court to the Marshals service to go seize upon assets.

The way that is accomplished and served is that the DMA and Longbranch would file an application with your Court. I believe Your Honor's clerk would then send notice to the Marshal's service, and then the Marshal's service would then execute on the writ of execution.

In other words, you don't serve a writ of execution on Larry, you serve it on the Marshal.

And so I really -- again, this is part of the amended briefing that was filed late last night. But I don't understand -- first of all, I don't understand there's no -- why there's a need for substitute (inaudible).

But, also, why are they trying to execute on Larry Wright? They did not take a monetary judgment against Larry Wright. The only relief as stated at the beginning of this case against Larry Wright individually was a constructive trust on the row in his hands as by and through H2O.

**MR. KRIST:** Your Honor, just briefly, that's not correct.

The Court awarded attorneys' fees to DMA, Mr. Moore, and Longbranch, and then subsequently entered an order determining those attorneys' fees and awarding them specifically against Mr. Wright in connection with his breaches of contract, the declaratory claims, and --

**THE COURT:** Yeah.

**MR. KRIST:** -- the breach of fiduciary duty claims

which were premised on the contract.

**THE COURT:** Yeah.

**MR. KRIST:** Number two, Your Honor, the reason that we amended our motion to add these service issues is because we did think that it was fairly uncontroversial. You're correct that this Court has latitude to authorize --

**THE COURT:** Well, --

**MR. KRIST:** -- substitute service under Texas law.

**THE COURT:** -- yeah. And so I'm not going to rule on the substituted service today. But let me just tell a little story.

Back when I had the El Paso docket in the late eighties, one of the bankruptcy attorneys had a judgment against a guy that lived in a gated subdivision in El Paso area.

And they sent out the Marshals to serve a writ of execution on a judgment. And the people at the gate would say, oh, no, well he's not there, and so they were basically rebuffed.

And so they went back out in response to another order and actually went to the house, and the man's wife answered the door. And they said, you mind if we search the house. And she said, no.

Well, they found him in a closet and so they arrested him. And it was late on a Friday so he got to spend the

weekend in jail until Monday morning when his lawyer could ask for basically a writ of habeas corpus to get him out.

So the only reason I'm telling you that is we're not going to tolerate people playing games. So if the writ of execution needs to be served, it will be served. And we'll do whatever it takes.

And if it takes taking Mr. Wright in by force and in chains, we can do that. And, you know, we're happy to do that if he needs a ride down to the courthouse.

And we'll have a hearing. We'll give him a hearing on it. But we're not going to have people playing games with us on serving writs of execution, okay?

And I don't know if he has any assets or not. He may not. He may be judgment-proof, and if he is, he is. But we're not going to have people evading service of process when they -- we know where they live and they're just playing games with us.

So if he wants to spend a little time in the pokey, you know, so be it. So that's just --

**MR. SPEAKER:** (Inaudible)

**THE COURT:** -- a warning for the future.

**MR. SPEAKER:** Yes. And, Your Honor, I will admonish my client on that. But he is not playing games. The -- he has moved into a new home. And, you know, they haven't even reached out to us and asked us for that new --

**THE COURT:** On Spyglass?

**MR. GERMANY:** -- address. But it's public record.

**THE COURT:** On Spyglass or somewhere else?

**MR. SPEAKER:** No.

**MR. SPEAKER:** To be --

**MR. SPEAKER:** It's a different home, Your Honor.

**MR. SPEAKER:** To be clear, as a product of this lawsuit, he's lost everything. And so I think the representation that he has two homes on McQueeney is false. He had --

**THE COURT:** Well, you know, I don't know.

**MR. SPEAKER:** -- to sell his (inaudible) --

**THE COURT:** I just remember his address being on --

**MR. SPEAKER:** Yeah.

**THE COURT:** -- Spyglass, and that's at Lake Queeney.

**MR. SPEAKER:** (Inaudible)

**THE COURT:** That's all I know.

**MR. SPEAKER:** Yeah. He had to sell his home --

**THE COURT:** That's all I know.

**MR. SPEAKER:** -- and he had to sell his ranch. He sold everything and now he lives in a smaller house in the same neighborhood.

**THE COURT:** Okay.

**MR. SPEAKER:** And, Your Honor, --

**THE COURT:** (Inaudible) is a homestead and it's

exempt, etcetera. I understand.

**MR. GERMANY:** And, Your Honor, one other aspect about the final judgment I think that's being misrepresented to the Court, the final judgment in paragraph four is the only one that awards attorneys' fees, other than the ones that were in correspondence with the note for (inaudible) --

**THE COURT:** Well there's a supplemental order on attorneys' fees.

**MR. KRIST:** That's correct, Your Honor.

**MR. GERMANY:** (Inaudible) supplemental order, Your Honor, under 7054, which is, you know, a non-jurisdictional aspect of it. And they raised that issue for the first time on the Monday briefing or amended motion.

And, Your Honor, in that one they don't conform with what the final judgment says and just the order on attorneys' fees because the order is quite clear, Your Honor.

And we're going to file a motion with the Court to correct this, but it's under -- paragraph four is the only new attorneys' fees awarded, and that's for Krisjenn on the dec. action. That's it.

So it's the declaratory judgment action. And they are -- the Court awards attorneys' fees to DMA against Krisjenn.

**MR. KRIST:** Your Honor, --

**MR. SPEAKER:** (Inaudible)

**THE COURT:** (Inaudible) it says against Wright. On the third paragraph on page two of that order, that order is document number 353 in this adversary proceeding.

And if you look at the second full paragraph, it says $750,000 against Wright, Krisjenn Ranch, LLC, and the other two Krisjenn entities.

**MR. KRIST:** That's correct, Your Honor.

**THE COURT:** So take a look at that after we get off. You know, take a look at that. The -- so we're not going to decide that today because it hasn't been raised enough in advance.

But, okay, so what else? Anything else, Mr. Krist?

**MR. KRIST:** Your Honor, you have further questions about the constructive trust arguments, I don't believe so.

**THE COURT:** Okay. Mr. Germany or Mr. Muller.

**MR. GERMANY:** Nothing further, Your Honor.

**THE COURT:** Okay.

**MR. MULLER:** Not from me, Your Honor.

**THE COURT:** All right. I think we need the property transferred to DMA. So there is a constructive trust on it.

I'm not sure that Mr. Wright is doing everything that's in the best interests of DMA, Moore, Longbranch, and Borders because DMA owns a 20 percent profits interest that the district court has told us runs with the land.

I'm not sure that Mr. Wright is protecting that. He

20-50805-rbk Doc#330-1 Filed 01/12/26 Entered 01/12/26 13:51:31 Main Document Pg 59 of 100


might be. But he's been ordered to transfer the property back to Krisjenn.

And we've heard this morning from the attorneys that they were unable to do that for whatever reason. I find it a little hard to believe that somebody else came in and grabbed the Krisjenn Ranch, LLC name and that it's not available. But, I mean, that could be true.

But in any event, it needs to come to DMA. So I'm going to direct Mr. Wright, Express H2O, Krisjenn Ranch, LLC, all the entities to take steps to transfer the right-of-way to DMA.

And then DMA takes it subject to the obligation to pay Mr. Wright the first $4.7 million in the event of sale or other monetization.

And after that obviously the 20 percent of DMA and Longbranch or Mr. Borders, whichever is appropriate, will continue as a charge against the land, a covenant running with the land.

So, Mr. Krist, will you prepare an order to that effect?

**MR. KRIST:** Yes, we will, Your Honor.

**THE COURT:** Okay. And let Mr. Germany and Mr. Muller see it before you submit it. And if there's any disagreement about the form of the order, they can email Deanna Castleberry.

And, you know, if you want to prepare your own form,

you can send it to Ms. Castleberry and I'll look at all of them. But I hope that it won't be controversial, the form of the order. Okay. So --

**MR. KRIST:** Understood, Your Honor.

**THE COURT:** -- order to come from Mr. Krist. The motion's granted.

**MR. SPEAKER:** Thank you, Your Honor.

**MR. KRIST:** Thank you, Your Honor.

**MR. GERMANY:** Thank you, Your Honor.

**THE COURT:** All right, gentlemen, --

**MR. GERMANY:** Are we excused?

**THE COURT:** Yes, sir. Feel free to drop off. We'll be in recess.

**(This proceeding was adjourned at 10:53 a.m.)**

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

**February 7, 2025**

**Signed** **Dated**

***TONI HUDSON, TRANSCRIBER***

# UNITED STATES BANKRUPTCY COURT
## Western District of Texas
## San Antonio Division

Bankruptcy Case No.: 20−50805−rbk
Chapter No.: 11

IN RE: **KrisJenn Ranch, LLC** , Debtor(s)

Adversary Proceeding No.: 20−05027−rbk
Judge: Ronald B King

**Krisjenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row**
Plaintiff

v.

**DMA Properties, Inc. et al.**
Defendant

## NOTICE OF FILING OF TRANSCRIPT AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION

A transcript of the proceeding held on **02/05/2025** was filed on **02/08/2025**. The following deadlines apply:

The parties have until **February 18, 2025** to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *request for redaction* is **March 3, 2025**.

If a request for redaction is filed, the redacted transcript is due **March 11, 2025**.

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is **May 9, 2025** unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber **EXCEPTIONAL REPORTING, Telephone number 361 949−2988**, or you may view the document at the clerk's office public terminal.

Dated: 2/10/25

Barry D. Knight
Clerk, U. S. Bankruptcy Court
BY: Bridget Hardage

**[Notice of Filing of Transcript (AP)]** [NtcftddlrrAPap]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| *In re*: | § | |
| | § | Chapter 11 |
| KrisJenn Ranch, LLC, et al., | § | |
| | § | |
| *Debtor.* | § | Case No. 20-50805 |

| | | |
|---|---|---|
| KrisJenn Ranch, LLC, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Adversary No. 20-05027 |
| DMA Properties, Inc., et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**DMA'S MOTION TO ENFORCE JUDGMENT AND FOR SANCTIONS AND SEEKING LEAVE TO FILE FRAUDULENT TRANSFER CLAIMS**

DMA Properties, Inc., Frank Daniel Moore, and Longbranch Energy, LP (collectively, "DMA") move to enforce the Court's judgment and for sanctions against Larry Wright.

## PRELIMINARY STATEMENT

Wright has long attempted to evade this Court's judgment and destroy the interests of his creditors, including by transferring a valuable right of way ("ROW") to a new entity formed directly for that purpose and in direct violation of this Court's order. DMA asks the Court to enforce its judgment and to hold Wright and his entities accountable.

On March 26, 2024, after finding that Wright breached his fiduciary duty to his business partner, Moore/DMA, the Count rendered judgment in favor of DMA—

ordering "that DMA and Moore recover a constructive trust on the ROW in the hands of Express H2O, LLC because of the unauthorized transfer by KrisJenn of the ROW." Judgment After Remand [#329] at 2. DMA previously moved this Court to enforce the constructive trust, which—under Texas law—"subject[s] the person by whom the title of the property is held to an equitable duty to convey it to another." *In re Gouge*, No. 07-34839, 2008 WL 304730, at *5 (Bankr. S.D. Tex. Jan. 30, 2008); *see also Talley v. Howlsey*, 176 S.W.2d 158, 160 (Tex. 1943) (same).

This Court initially granted that motion to enforce but later vacated its order because (1) this Court was concerned that enforcing its judgment might impact the appellate jurisdiction of the District Court for the Western District of Texas (the "District Court") and (2) Wright's counsel (falsely) represented that the Court's ruling would affect third innocent parties who held an interest in the transferee—Express H2O, LLC ("Express H2O").

Those issues are no bar to enforcing the judgment now. The District Court has disposed of the appeal, and Wright's counsel recently confessed that Express H2O is actually owned by Wright's wife—not disinterested third parties, as Wright previously represented to the Court. *See* Ex. 1 (Hearing on Mot. for Satisfaction of Attorneys' Fees) at 45:18–21.

DMA asks the Court to enforce the constructive trust and order the transfer of the ROW to DMA. In the alternative, DMA moves for leave to file claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA") against Wright and his entities involved in the fraudulent transfer of the ROW against this Court's explicit orders.

Separately, DMA also moves for sanctions to stop Wright's abuses of the bankruptcy system.

## BACKGROUND

This case concerns the parties' respective interests in a ROW located in East Texas. After a bench trial before this Court, and while this case was on its first appeal to the District Court, Wright transferred the ROW out of the Wright-controlled entity that then held it, Debtor KrisJenn Ranch, LLC-Series Pipeline ROW ("KrisJenn"), and into a new entity—Express H2O—formed for the sole purpose of evading Wright's creditors and this Court's judgment.

In spring 2024, this Court entered judgment in favor of DMA on remand as to several claims, including breach-of-fiduciary-duty claims, and awarded a constructive trust on the ROW to DMA in the event that Wright and his entity, Express H2O, failed to transfer the ROW back to KrisJenn. Judgment After Remand [#329] at 2.[1]

In January 2025, because Wright had refused to transfer the ROW back to KrisJenn or to any other party before the Court, DMA moved to enforce the constructive trust. DMA's Motion to Enforce Constructive Trust [#368]. This Court initially granted that motion, [#387], but later vacated its order, stating that it "does not wish to interfere with the appeal or the Judgment After Remand currently pending in the United States District Court." Order on Wright's Motion to Vacate [#403] at 2.

On August 11, 2025, the District Court issued a final judgment on the appeal, affirming this Court's judgment and fully resolving all appellate issues. The deadline to appeal the District Court's judgment has now passed. Thus, there is no longer any jurisdictional barrier to this Court enforcing its judgment or to ordering Wright to transfer the ROW to DMA pursuant to the constructive trust already in place.

---

[1] The Court also recognized and awarded DMA's and Longbranch's 20% net-profits interests in the ROW. *Id.* On May 14, 2024, the Court further awarded DMA $750,000 in attorneys' fees. Order Granting Fees [#353] at 1–2.

## ARGUMENT

### I. The Court should enforce the constructive trust imposed under the final judgment and order Wright to transfer title to the ROW to DMA.

#### A. There are *no* impediments to enforcing the constructive trust.

After the Court granted DMA's original motion to enforce the constructive trust, this Court granted Wright's motion to vacate that order for two principal reasons.

First, this Court's primary concern was that any ruling regarding the constructive trust might impact the District Court's jurisdiction. That issue is now moot. The District Court has fully resolved the appeal and affirmed this Court's prior ruling imposing the constructive trust. There is thus no jurisdictional obstacle to this Court enforcing the constructive trust. And, of course, "[i]t is axiomatic that federal courts possess inherent power to enforce [their] judgments." *Thomas v. Hughes*, 27 F.4th 363, 368 (5th Cir. 2022) (citation omitted).

Second, Wright's counsel represented to this Court that Express H2O—the holder of the ROW—is owned by third parties and that Wright himself had no ownership interests. But in a recent hearing, Wright's counsel revealed that Express H2O is owned by Wright's family—specifically, Wright's wife. Wright has not disclosed any other owners despite repeated discovery requests.[2] If there are any other family members or others who hold an interest in Express H2O, Wright has not disclosed them in his discovery responses. Mr. Wright is the managing *member* of Express H2O (meaning he *does* have an ownership interest, despite his protestations to the contrary), and his wife likewise has an ownership interest. Mr. Wright kept the ROW within the family, maintaining his access, ownership, and control.

In sum, the only reasons this Court did not previously enforce its judgment have been resolved—the District Court has resolved the appeal, and Wright has confirmed that

[2] Wright has not disclosed any other owners and has done everything in his power to prevent DMA from learning who those owners might be.

he (after these proceedings were underway) transferred ownership of Express H2O *to his wife*—not a disinterested third party. With these issues now resolved, this Court should enforce the constructive trust and order Wright and his entities to transfer the ROW to DMA.

**B. This Court should order Wright to transfer title to the ROW to DMA pursuant to the constructive trust already in place.**

In its final judgment, the Court found that Wright had breached his fiduciary duties and ordered that DMA "recover a constructive trust on the ROW" as a remedy for Wright's breaches and because Wright transferred the ROW out of KrisJenn in violation of this Court's order. Judgment After Remand [#329] at 2. Now, a year and a half after the Court issued its judgment, Wright has failed to effect any transfer of the ROW or otherwise comply with the final judgment.[3] Instead, Wright has repeatedly evaded service, resisted post-judgment discovery, and ignored this Court's repeated instructions. In light of Wright's failure to comply with the final judgment, DMA now respectfully requests that the Court enforce the constructive trust and order Wright to transfer title to the ROW to DMA, subject to the first-monies obligation imposed by the Court.

Texas law does not allow unfaithful fiduciaries like Wright to keep the fruits of their breach. *Omohundro v. Matthews*, 341 S.W.2d 401, 409 (Tex. 1960); *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 874 (Tex. 2010). Here, Wright obtained the money to purchase the ROW—and thereby obtained his ROW interests—by engaging in the undisclosed, conflicted loan transaction that breached his fiduciary obligations to his partner, Moore/DMA. Thus, when a fiduciary "acquires legal title to property in violation of a fiduciary relationship," courts impose a constructive trust on the property,

[3] Ex. D (KrisJenn Ranch LLC's Resp. to Interrogatories) to Ex. 2 (Ortiz Decl.) at Interrogatories 3–5, 17–19, 25–27, 41–43 (claiming that KrisJenn (nor anyone on its behalf) does not own, hold title, possess, or otherwise has an interest in any real property or other assets).

subjecting the wrongdoer "to an equitable duty to convey it to another." *In re Estate of Preston*, 346 S.W.3d 137, 165 (Tex. App.—Fort Worth 2011, no pet.); *Hsing-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 299 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied).

The purpose of the constructive-trust remedy is to put the wrongfully acquired property in the hands of the victim. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 55 (2011). Once a constructive trust is imposed, "the obligation of a constructive trustee is to surrender the constructive trust property to the claimant, on such conditions as the court may direct." *Id.*; *see also In re Gouge*, No. 07-34839, 2008 WL 304730, at *5 (Bankr. S.D. Tex. Jan. 30, 2008) ("A constructive trust is a relationship with respect to property, subjecting the person by whom the title of the property is held to an equitable duty to convey it to another."); *Talley v. Howlsey*, 176 S.W.2d 158, 160 (Tex. 1943) (same). The breaching fiduciary—the constructive "trustee"—does not keep control over the property. His "obligation . . . is simply to turn the property over to the constructive beneficiary; the device does not create a 'trust' in any usual sense of the word." BLACK'S LAW DICTIONARY (10th ed. 2014).

In short, the constructive trust imposed by the Court requires that Wright transfer the property in trust (the ROW) to Moore/DMA—the constructive beneficiaries who were harmed by Wright's breaches of fiduciary duty.

In spite of that duty, and in derogation of the Court's final judgment, Wright has continued to violate this Court's orders by failing to transfer title as required by the judgment. Wright cannot and should not be allowed to continue to benefit from the fruits of his breach. *ERI Consulting*, 318 S.W.3d at 874. DMA thus respectfully requests that the Court order Wright to convey title over the ROW to DMA, subject to a first-monies obligation for Wright to recover the $4.7 million he invested, in accordance with the Court's final judgment imposing a constructive trust over the ROW. Judgment After

20-05027-rbk Doc#438-1 Filed 11/13/26 Entered 11/13/26 09:24:32 Designated Documents Pg 69 of 100

Remand [#329] at 2; *see* 11 U.S.C. § 105(a) (granting bankruptcy courts broad authority to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process"). Here, DMA asks the Court simply to enforce the constructive trust put in place by this Court's final judgment—thereby protecting the bankruptcy process from Wright's abuse and manipulation.

## II. The Court should impose sanctions against Wright for violating the Court's order, his repeated acts of bad faith, and his abuse of the bankruptcy process.

This Court has broad discretion "to preserve the integrity and purpose of its own orders." *Skyport Global Commc'ns, Inc. v. Intelsat Corp.* (*In re Skyport Global Commc'ns, Inc.*), 408 B.R. 687, 694 (Bankr. S.D. Tex. 2009) (citing *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)). Included among this Court's "inherent powers" is the "authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of [its] dockets." *Carroll v. Abide* (*In re Carroll*), 850 F.3d 811, 815 (5th Cir. 2017) (citations omitted); *see also In re Spectee Grp., Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995) ("A Court has inherent authority to supervise and control its own proceedings, and to require the payment of the other party's attorney's fees by one who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986))). This Court likewise has authority under 11 U.S.C. § 105(a) "to impose civil sanctions for abuses of the bankruptcy process." *In re Carroll*, 850 F.3d at 816 (quoting *Walton v. LaBarge, Jr.* (*In re Clark*), 223 F.3 859, 864 (8th Cir. 2000)).

Wright, through his entities, has demonstrated a pattern of fraud and willful disregard of this Court's authority for nearly five years. Wright must be sanctioned for the bad faith he has displayed "toward both his adversar[ies] and the court throughout the course of this litigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991).

When this Court entered a Chapter 11 Reorganization Plan [Docket No. 5:20-50805-rbk] ("Fourth Am. Ch. 11 Plan") related to Wright's entities and assets, including KrisJenn and the ROW, the Court expressly ordered that KrisJenn could not "transfer or dispose of any interest in the Express Pipeline" without first providing DMA with a written copy of the offer for transfer and an opportunity to raise any concerns regarding the transfer with the Court. The Court's order ensured that if DMA had concerns about the transfer, it could file those concerns with the Court for its review, and Wright would be required to postpone the transfer until the Court heard the matter and ruled on the issue. *See* Fourth Am. Ch. 11 Plan at 7, *In re KrisJenn (Bankruptcy)*, No. 20-50805-RBK (Bankr. W.D. Tex. Feb. 3, 2022) [#211].

But on February 23, 2023, just three weeks before the District Court ruled for DMA on appeal, Wright transferred the ROW from KrisJenn to his new entity, Express H2O, in direct violation of this Court's order. *In re KrisJenn (Bankruptcy)*, 2024 WL 1297828, at *2 (Bankr. W.D. Tex. Mar. 26, 2024) (confirming that the transfer of the ROW was "in violation of the terms of the confirmed chapter 11 plan of reorganization").

The District Court then ruled in favor of DMA and Longbranch, concluding that their net-profit interests were valid covenants running with the land and remanding for further consideration of the claims for breach of fiduciary and attorneys' fees. *In re KrisJenn, Ranch, LLC*, 661 F. Supp. 3d 654, 665 (W.D. Tex. 2023), *appeal dismissed sub nom. Matter of KrisJenn Ranch, LLC*, No. 23-50227, 2023 WL 6393903 (5th Cir. May 25, 2023) ("*In re KrisJenn (District Court)*").

After winning on appeal, DMA first learned that Wright had fraudulently transferred the ROW from KrisJenn to Express H2O. When the violative transfer was brought to this Court's attention, Wright, through his counsel, told the Court that he would cause Express H2O to transfer the ROW back to KrisJenn, but he did not do so. *See* Ex. 2 (Hearing on Mot. to Enforce) at 22:4–6. On March 26, 2024, this Court ordered that "a constructive trust be imposed on the ROW in the hands of Express H2O, unless

Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn." *In re KrisJenn (Bankruptcy)*, 2024 WL 1297828, at *2 (Bankr. W.D. Tex. Mar. 26, 2024). But again, Wright never did so.

After this Court initially ordered Wright to have the ROW transferred to DMA pursuant to the constructive trust, KrisJenn moved to vacate this Court's order, arguing in part that "Express [H2O] is a wholly separate legal entity and not a party to this lawsuit." Mot. to Vacate [#382] at 3. During the hearing on this motion, KrisJenn's attorney baldly asserted that Wright—the managing member of Express H2O—does not have an interest in Express H2O. Ex. 3 (Hearing on Mot. to Vacate) at 34:19–35:6. This Court ultimately vacated the portion of its order requiring Express H2O to transfer the ROW to DMA. Order Granting Mot. to Vacate [#403].

And today, the ROW remains in the hands of Express H2O and in the control of Wright and his family. For the entirety of this litigation, Wright has perpetrated fraud on his creditors and shown willful disregard of this Court's authority. There is no justification or reason for Wright's initial transfer of the ROW to Express H2O (against court orders) and continued refusal to transfer the ROW out of Express H2O (despite his in-court representations) other than to evade judgment. Wright has also actively evaded service by the U.S. Marshal Service to prevent DMA from collecting this Court's $750,000 judgment for attorneys' fees.

In sum, it is time for this Court to "vindicate itself" by requiring Wright to pay for "all attorneys' fees." *Chambers*, 501 U.S. at 57. DMA respectfully requests sanctions against Wright in the form of reasonable attorneys' fees to be demonstrated at a subsequent hearing.

**III. In the alternative, DMA requests leave to file a fraudulent transfer action against Wright and his entities.**

Wright has fraudulently transferred the ROW to an entity formed for the very purpose of evading Wright's creditors and this Court's judgment. This entity, Express

H2O, accepted the ROW—for no consideration—knowing that the transfer was fraudulent. If the Court declines to enforce the constructive trust and order transfer title of the ROW to DMA, DMA respectfully requests leave of Court to file the attached TUFTA action (*see* Ex. 4) pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(H), and 157(c).

## CONCLUSION

DMA respectfully asks the Court to order Wright to convey title over the ROW to DMA, subject to the $4.7-million first-monies obligation in accordance with the Court's judgment. DMA separately asks this Court to sanction Wright and his entities for reasonable attorneys' fees to be demonstrated at a subsequent hearing. If the Court declines to enforce the constructive trust and order transfer of the ROW to DMA, DMA respectfully requests (in the alternative) leave to file the TUFTA action attached as Exhibit 4.

Respectfully submitted,

*/s/ Christopher S. Johns*
Christopher S. Johns
State Bar No. 24044849
Michael C. Cotton
State Bar No. 24116229
COBB & JOHNS PLLC
13341 West U.S. Highway 290
Building 2
Austin, TX 78737
512-399-3150
chris@cobbjohns.com
michael@cobbjohns.com

*/s/ Timothy Cleveland*
Timothy Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
512-689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com

*Attorneys for Longbranch Energy, DMA Properties, and Frank Daniel Moore*

Natalie F. Wilson
State Bar No. 24076779
LANGLEY & BANACK
745 East Mulberry Avenue, Suite 700
San Antonio, Texas 78212
210-736-6600
210-735-6889 fax
nwilson@langleybanack.com

*Attorneys for DMA Properties and Frank Daniel Moore*

Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, TX 78209
mblack@burnsandblack.com

Jeffery Duke
JF DUKE AND ASSOCIATES
11819 Great Oaks Drive
College Station, TX 77494
jeff@jfduke.com

*Attorneys for Longbranch Energy*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2025, a true and correct copy of the foregoing document was transmitted to each of the parties via the Court's electronic transmission facilities and/or via electronic mail as noted below. For those parties not registered to receive electronic service, a true and correct copy of the foregoing document was served by United States Mail, first class, postage prepaid, at the address noted below.

| | |
|---|---|
| Charles John Muller, IV<br>CJ MULLER & ASSOCIATES, PLLC<br>111 W. Sunset<br>San Antonio, TX 78209<br>john.muller@cjma.law<br><br>*Counsel for KrisJenn Ranch, LLC, Krisjenn Ranch, LLC—Series Uvalde Ranch, KrisJenn Ranch, LLC—Series Pipeline Row* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>JF DUKE AND ASSOCIATES<br>11819 Great Oaks Drive<br>College Station, TX 77494<br>jeff@jfduke.com<br><br>*Counsel for Longbranch Energy, LP* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Black Duck Properties, LLC* | James Rose<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, TX 78701<br>james.rose@usdoj.gov<br><br>*United States Trustee* |
| William P Germany<br>BAYNE, SNELL & KRAUSE<br>1250 N.E. Loop 410, Suite 725<br>San Antonio, TX 78209<br>wgermany@bsklaw.com<br><br>*Counsel for Larry Wright* | Laura L. Worsham<br>JONES, ALLEN & FUQUAY, L.L.P.<br>8828 Greenville Avenue<br>Dallas, TX 75243<br>lworsham@jonesallen.com<br><br>*Counsel for McLeod Oil, LLC* |

*<u>/s/ Christopher S. Johns</u>*
Christopher S. Johns

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| *In re*: | § | |
| | § | Chapter 11 |
| KrisJenn Ranch, LLC, et al., | § | |
| | § | |
| *Debtor*. | § | Case No. 20-50805 |

| | | |
|---|---|---|
| KrisJenn Ranch, LLC, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Adversary No. 20-05027 |
| DMA Properties, Inc., et al., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**PROPOSED ORDER GRANTING**
**MOTION TO ENFORCE JUDGMENT AND FOR SANCTIONS AND SEEKING LEAVE TO FILE FRAUDULENT TRANSFER CLAIMS**

On this day, the Court considered DMA Properties, Inc. and Frank Daniel Moore's (collectively, "DMA") and Longbranch's Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims. Having reviewed the parties' briefing and the governing law, the Court finds the motion is meritorious and should be granted.

IT IS THEREFORE ORDERED that DMA's and Longbranch's Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims is GRANTED.

IT IS FURTHER ORDERED that, in accordance with this Court's Final Judgment [#329], Larry Wright shall transfer or convey title, or effectuate the transfer or conveyance of title, of the right-of-way called the Express Pipeline, which runs from Angelina County through Nacogdoches and Rusk Counties and across Shelby County in East Texas, to DMA Properties, Inc. within twenty-one (21) days of this order.

IT IS FURTHER ORDERED that the Court awards sanctions against Wright for his willful disregard of this Court's orders in connection with his wrongful transfer of the right-of-way to Express H20 Pipeline and ROW LLC, in the form of attorneys' fees to be awarded to DMA, Moore, and Longbranch in connection with such transfer. The Court shall subsequently determine the amount of such fees upon submission by DMA, Moore, and Longbranch of records reflecting such attorneys' fees and time spent related to Wright's wrongful transfer of the right-of-way. Wright shall file any response to such fees submission within 14 days of DMA, Moore, and Longbranch submitting such fee records.

###

Order Prepared By:

*/s/ Christopher S. Johns*
Christopher S. Johns
State Bar No. 24044849
Michael Cotton
State Bar No. 24116229
COBB & JOHNS PLLC
13341 West U.S. Highway 290
Building 2
Austin, TX 78737
512-399-3150
chris@cobbjohns.com
michael@cobbjohns.com

Natalie F. Wilson
State Bar No. 24076779
LANGLEY & BANACK
745 East Mulberry Avenue, Suite 700
San Antonio, Texas 78212
210-736-6600
210-735-6889 fax
nwilson@langleybanack.com

*Attorneys for DMA Properties and Frank Daniel Moore*

*/s/ Timothy Cleveland*
Timothy Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
Austin, Texas 78746
512-689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com

*Attorneys for Longbranch Energy, DMA Properties, and Frank Daniel Moore*

Michael Black
BURNS & BLACK PLLC
750 Rittiman Road
San Antonio, TX 78209
mblack@burnsandblack.com

Jeffery Duke
JF DUKE AND ASSOCIATES
11819 Great Oaks Drive
College Station, TX 77494
jeff@jfduke.com

*Attorneys for Longbranch Energy*

DMA and Longbranch respectfully request that the following parties (in addition to counsel list above) receive copies of this order if signed:

| | |
|---|---|
| Charles John Muller, IV<br>CJ MULLER & ASSOCIATES, PLLC<br>111 W. Sunset<br>San Antonio, TX 78209<br>john.muller@cjma.law<br><br>*Counsel for KrisJenn Ranch, LLC, Krisjenn Ranch, LLC—Series Uvalde Ranch, KrisJenn Ranch, LLC—Series Pipeline Row* | Michael Black<br>BURNS & BLACK PLLC<br>750 Rittiman Road<br>San Antonio, TX 78209<br>mblack@burnsandblack.com<br><br>Jeffery Duke<br>JF DUKE AND ASSOCIATES<br>11819 Great Oaks Drive<br>College Station, TX 77494<br>jeff@jfduke.com<br><br>*Counsel for Longbranch Energy, LP* |
| Ronald J. Smeberg<br>THE SMEBERG LAW FIRM, PLLC<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>*Counsel for Black Duck Properties, LLC* | James Rose<br>OFFICE OF THE U.S. TRUSTEE<br>903 San Jacinto Blvd, Room 230<br>Austin, TX 78701<br>james.rose@usdoj.gov<br><br>*United States Trustee* |
| William P Germany<br>BAYNE, SNELL & KRAUSE<br>1250 N.E. Loop 410, Suite 725<br>San Antonio, TX 78209<br>wgermany@bsklaw.com<br><br>*Counsel for Larry Wright* | Laura L. Worsham<br>JONES, ALLEN & FUQUAY, L.L.P.<br>8828 Greenville Avenue<br>Dallas, TX 75243<br>lworsham@jonesallen.com<br><br>*Counsel for McLeod Oil, LLC* |

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ***In re:*** | § | |
| | § | **Chapter 11** |
| **KrisJenn Ranch LLC,** | § | **Case No. 20-50805-rbk** |
| | § | |
| **Debtor.** | § | |
| | § | |

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC, ET AL** | § | **Adversary No. 20-05027-RBK** |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **DMA PROPERTIES, INC, ET AL,** | § | |
| **Defendants.** | § | |

**WRIGHT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND AUTHORITY OR, ALTERNATIVELY, MOTION TO STAY**

Larry Wright ("Wright") files this *Motion to Dismiss for Lack of Subject Matter Jurisdiction and Authority or, in the alternative, Motion to Stay* (the "Motion") the Court's consideration of the *Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims* filed by DMA Properties, Inc., Frank Daniel Moore, and Longbranch Energy, LP (collectively, "DMA") (Doc. 498) ("DMA Motion"). Wright reserves and adopts all arguments presented in his previously filed Objection to the DMA Motion (Doc. 513) ( "Objection").

## I. INTRODUCTION

This Court lacks subject-matter jurisdiction and authority to consider DMA's Motion. DMA's Motion attempts to reopen a final, affirmed judgment and to insert new state-law fraudulent-transfer claims that lie far beyond this Court's limited post-confirmation authority. The

relief DMA requests—compelling transfer of title to the Express Pipeline right-of-way ("ROW") based on alleged fiduciary breaches by Wright—would require this Court to assume jurisdiction over new, non-debtor disputes and to rewrite a judgment already upheld on appeal. The law forbids both. Each of these exceeds this Court's authority.

First, the Court's jurisdiction to modify the Final Judgment has ended, and *res judicata* prohibits any modification of it.

Second, the DMA Motion raises independent causes of action under the Texas Uniform Fraudulent Transfer Act (TUFTA)-claims that sound exclusively in state law and lie outside this Court's jurisdiction.

Because the Court lacks jurisdiction or authority to modify its final judgment or entertain new TUFTA-based claims, the DMA Motion should be dismissed or denied in its entirety.

In the alternative**,** if the Court determines that it retains any jurisdiction to act, Wright respectfully requests that the Court stay all proceedings on the DMA Motion pending resolution of the related state-court action. Issues DMA seeks to litigate are currently being adjudicated in *Express H2O Pipeline & ROW, LLC v. Westlake Chemical OpCo, L.P.*, pending in the 159th District Court of Angelina County, Texas, where the same property rights and title to the ROW are the subject of ongoing proceedings. That case—filed in reliance on this Court's prior judgment—has already produced partial summary-judgment rulings in favor of Express (Ex. A-C), with final trial set for December 1, 2025 and judgment expected by year-end. Proceeding on the DMA Motion now would risk inconsistent outcomes and interfere with the state court's authority to determine title and injunctive relief.

For these reasons, the DMA Motion should be dismissed for lack of subject-matter jurisdiction and authority, or, in the alternative, stayed pending the final judgment in Angelina County.

**II. RELEVANT BACKGROUND**

1. On March 26, 2024, this Court found that Wright committed a breach of fiduciary duty to Moore only. The Court found that a loan from KrisJenn to Black Duck, using the ROW as collateral, was not disclosed or authorized by Moore. DMA could not prove damages for this breach, so it asked the Court to impose a constructive trust over the ROW in the final judgment. Doc. 330 at 4.

2. On March 26, 2024, this Court entered its Final Judgment, which: 1) found that the net-profits interest in the right of way (the "ROW") were valid and subsisting covenants running with the land; 2) imposed a constructive trust on the ROW "in the hands of Express H2O, LLC" (if the ROW was not transferred to KrisJenn); 3) ordered that Wright could recover the $4,700,000 purchase price "out of income from the ROW or the sales proceeds" and DMA and Longbranch could receive their 20% net profits from "a sale or future development income of the ROW"; 4) awarded the Defendants reasonable and necessary attorney's fees; 5) rendered judgment in favor of DMA that DMA had an ownership interest in 50% of the Bigfoot Note payments and awarded DMA $175,143.60 from funds in the Panola County court registry plus $100,000 in attorney's fees; 6) taxed court costs to KrisJenn Ranch, LLC; and 7) denied "[a]ll relief not specifically granted herein."

3. On April 9, 2024, Defendants filed their Notice of Appeal of the Final Judgment and the Opinion after Remand. Docket No. 344. The Defendants' appeal challenged, in part, this

Court leaving the property in Express H2O's hands. Appellants' Br., p. 4–13, Case No. 5:24-cv-00365 [ECF No. 6].

4. On appeal, the United States District Court for the Western District of Texas affirmed this Court's ruling, expressly rejecting DMA's argument that a constructive trust required conveyance of title. The District Court held that "the scope and application of a constructive trust is generally left to the discretion of the court imposing it," and found no reason to disturb this Court's judgment. The District Court's judgment is final. The same issues are thus precluded by *res judicata* and the law of the case.

5. DMA's present Motion seeks to compel exactly the same relief that was denied both here and on appeal — namely, forfeiture or disgorgement of Express H2O's ownership of the ROW.

6. Separately, Express H2O is presently litigating the title and ownership of the ROW in Angelina County, Texas, against trespasser Westlake Chemical OPCO, L.P. On July 21, 2025, Judge Todd Kassaw signed an Order on Motions for Summary Judgment declaring that: ". . . the Gulf Easements were first filed and are superior to the Westlake Easements; the Westlake Easements irreconcilably conflict with the Gulf Easements; the Westlake Easements must yield to the Gulf Easements; and therefore, the Westlake Easements are invalid and ineffective." The court further identified the chain of title to the Gulf Easements, tracing back through multiple conveyances from Gulf Pipe Line Company (1907–1925) to Express H2O Pipeline & ROW, LLC, thereby confirming Express H2O's ownership interest. Subsequently, on October 22, 2025, the same court entered another order clearing Express's title, including the transfer from KrisJenn to Express.

7. The trial in the 159th Judicial District Court of Angelina County, Angelina County, Texas, in the matter of Express H2O Pipeline & ROW, LLC v. Westlake Chemical OPCO, L.P. is scheduled to begin on December 1, 2025. A final judgment is expected to issue later in December 2025. Because that case will definitively determine ownership and priority of the Gulf Easements and the right-of-way at issue here, any order issued by this Court prior to that judgment risks conflict or inconsistency with the state-court determination.

**III. NO JURISDICTION OR AUTHORITY TO MODIFY THE JUDGMENT AFTER 18 MONTHS**

8. The Final Judgment recognized that Express had title and did not order transfer of title from Express to Defendants. Ordering the transfer of title from Express to Defendant is a remedy of disgorgement of property interests of Express and also its 60% net profit interests, which was not mentioned or granted in the Judgment or Opinion After Remand**.** The Defendants were not awarded 100% of the net profits interest in the Final Judgment. Any effort to modify the Judgment—almost a year and a half after its entry—is too late and contrary to the law on jurisdiction and authority for at least the following reasons.

9. First, the Defendants are approximately eighteen months too late to seek any modification or amendment of the Final Judgment. Under Federal Rule of Bankruptcy Procedure 9023, any motion to alter or amend a judgment must be filed within fourteen (14) days of its entry. Defendants' Motion was filed well outside that deadline and cites no other authority permitting modification of a final judgment after that period has expired. It is therefore time-barred as a matter of law.

10. The Rules provide limited time to seek modification for good cause—precisely because parties are entitled to rely on the finality of judgments and, when an appeal is taken, to know the exact issues on review. Allowing parties to revisit the judgment after appeal and

affirmance would defeat that finality and invite endless relitigation. Additional time to modify a judgment—particularly here, nearly a year and a half later—would improperly allow Defendants to raise arguments they abandoned at trial and to reopen a record that has been closed since 2021. The law does not permit that result.

11. Second, DMA's Motion asks the Court to alter and modify the Final Judgment. The Final Judgment never ordered transfer of the title back to DMA as part of the constructive trust. The Final Judgment expressly states that Express keeps the ROW and Defendants receive proceeds from the development or sale of the ROW. Doc. 329 at 2 (20-5027). Nothing in the judgment contemplates, authorizes, or implies a reversion of title.

12. Third, the Final Judgment's constructive trust requires Express to pay Defendants their net profits interests after the ROW is developed or sold by Express. The Final Judgment does not contemplate development of the ROW by Defendants. The Court's bench ruling gives the ROW to DMA to develop or sell. There is no other way to read the Judgment's express terms to award this relief.

13. Fourth, ordering the transfer of the ROW to DMA divests Express's property rights that were secured in the Final Judgment. The Final Judgment guaranteed the owner of the ROW 60% interest in net profits for sale and development of the easement and/or pipeline. Defendants admit in their Reply Brief on appeal that they are seeking to reverse the Final Judgment to the extent that Express keeps 60% of the profits. Reply Brief, Doc. 12 at 8. There is no basis or findings of fact in the Final Judgment that Defendants should recover 100% of net profits.

14. Fifth, awarding DMA the ROW for development and sale allows it to profit far beyond any damages the Court found in the trial record. The Final Judgments does not allow the award of the value of the development and sale of the ROW to DMA.

15. Lastly, disgorgement is an entirely different remedy from the constructive trust imposed in the Final Judgment.

16. The Final Judgment is unambiguous, and it must be enforced as written, regardless of any party's subjective belief about its meaning. *Highland Hills Ltd. v. United States Dep't of Hous. and Urban Dev.*, 232 B.R. 868, 870 (N.D. Tex. 1999); *In re Munn*, 643 B.R. 141, 149 (N.D. Tex. 2022). The Court's Opinion After Remand echoed the Final Judgment ruling that the ROW stays with Express:

> The better remedy for DMA and Moore, and the one they have elected in their proposed judgment, would be an equitable remedy: Larry Wright would restore ownership of the ROW to KrisJenn, or this Court would impose a constructive trust on the ROW in the hands of Express H2O, and allow Larry Wright to recover his investment for the $4,700,000 purchase price, prior to the breaches of fiduciary duty, from a sale or development of the ROW. After Wright is able to recover $4,700,000, the two 20% net profits interests would begin receiving income from a sale or development of the ROW.

Docket No. 330 at 4. The Court concluded:

> The Court will render judgment that a constructive trust be imposed on the ROW in the hands of Express H2O, unless Larry Wright and Express H2O transfer ownership of the ROW back to KrisJenn. Larry Wright may recover the $4,700,000 purchase price that he paid for the ROW, prior to the breaches of fiduciary duty, out of income from the ROW or the sales proceeds. After that, DMA and Longbranch will each receive 20% out of the net profits from a sale or future development income of the ROW.

Docket No. 330 at 5.

17. There is no language in either the Final Judgment or Opinion After Remand that requires disgorgement or forfeiture of title or net profits interest from Express to Defendants. Instead, both recognize that Defendants' net profit interests would be paid while the ROW is in the hands of Express, if not transferred back to KrisJenn.

18. Notably, Defendants asked for two remedies prior to the entry of the Final Judgment: (1) disgorgement of Wright's interest—whether held directly or indirectly by one of his entities—in the ROW; and (2) a constructive trust over proceeds equal to Defendants' net profits interests. Docket No. 321 at 12, 18. The Court ultimately rejected Defendants' first request and awarded the second. Docket No. 329.

## IV. NO JURISDICTION OR AUTHORITY TO MODIFY FINAL JUDGMENT BECAUSE OF LAW OF THE CASE AND *RES JUDICATA*

19. DMA's Motion asks this Court to revisit—and effectively overturn—issues that were fully litigated and conclusively resolved by the United States District Court. That court expressly affirmed this Court's Final Judgment, which left ownership of the ROW "in the hands of Express H2O." Having been affirmed on appeal, that judgment is final, and this Court lacks jurisdiction to alter or expand it. *See Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306 (1948) (trial court must execute, not modify, appellate mandate). In short, DMA already litigated—and lost—the issue it now seeks to reopen. The Final Judgment was affirmed, the appeal concluded, and this Court's jurisdiction or authority to revisit its terms is foreclosed by both res judicata and the law of the case.

20. A mandate from the appellate court is "completely controlling as to all matters within its compass." *Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers*, 460 F.2d 105, 107 (5th Cir. 1972).

21. Likewise, under *res judicata*, a final judgment on the merits bars relitigation of the same claims or issues between the same parties. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

22. DMA's current Motion seeks precisely the relief it requested—and lost—on appeal: transfer of the ROW to DMA and Moore based on alleged fiduciary breaches. The record of that appeal leaves no doubt. In their April 9, 2024 Notice of Appeal (Dkt. 344 in Adv. No. 20-5027)

and their Appellate Brief filed in October 2024, DMA repeatedly argued that this Court erred by leaving the ROW with Wright. They urged the District Court to "reverse and render judgment … ordering that legal title to the ROW be transferred to Moore and DMA." Appellate Br. at 34. Their brief described the existing judgment as a "constructive trust in name only" that "left the property in the hands of the wrongdoer." *Id.* at 4, 13, 16, 17, 20, 22, 24).

23. Indeed, the District Court squarely addressed DMA's contentions and held that this Court's remedy—leaving the ROW with Express while imposing a profit-sharing obligation—was within its equitable discretion and consistent with Texas law. The affirmance resolved every issue DMA now repackages as "enforcement." Once the appellate court affirmed the Final Judgment, this Court's jurisdiction was exhausted as to the merits; its only remaining role is ministerial—to enforce, not to alter. *See Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 (1976); *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002).

24. The District Court explained that Texas courts do not require automatic forfeiture or conveyance of property to impose a constructive trust. Rather, "the equity of the transaction will shape the measure of relief granted." *Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 874 (Tex. 2010); *see also See In re Estate of Preston*, 346 S.W.3d 137, 165 (Tex. App.—Fort Worth 2011, no pet.). The District Court specifically concluded that this Court had "broad latitude to shape the form of equitable relief" and that leaving the ROW in Express's hands was within that discretion. Docket No. 485 at 14; *see also Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 850 (Tex. App.—Fort Worth 1982, no writ).

25. Accordingly, both doctrines—*res judicata* and law of the case—bar any attempt by DMA to re-litigate or modify that ruling. The District Court affirmed the Final Judgment in its

entirety, and DMA did not seek further review. The judgment is now final, and this Court lacks jurisdiction to disturb it.

## V. NO JURISDICTION OVER POST-CONFIRMATION AND STATE-LAW CLAIMS

### A. The Confirmed Plan Fully Vested Property in the Reorganized Debtor.

26. Under 11 U.S.C. § 1141(b), "confirmation of a plan vests all of the property of the estate in the debtor." Section 1141(c) further provides that, after confirmation, property "dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and general partners in the debtor." In this case, both the confirmed Plan and the Court's Confirmation Order explicitly revested all estate property in the reorganized debtor. *See* Plan, Art. X, § 10.02 (Docket No. 234-1 at 26).

27. Accordingly, the Express ROW became property of the reorganized debtor upon confirmation, and this Court's jurisdiction over that property terminated at that point. Any order compelling transfer of the ROW to DMA would therefore contradict the Plan's express vesting provisions and improperly alter the treatment of property and creditor rights already fixed by the confirmation process.

28. The Plan itself delineates the scope of DMA and Longbranch's rights:

> DMA and Longbranch are currently appealing the Bankruptcy Court's Judgment in the Adversary Proceeding. Those appeals will continue after confirmation and will not be rendered moot by confirmation or substantial consummation of the Plan. DMA, Longbranch, and the Reorganized Debtor will be bound by the terms of a final, non-appealable order. The ultimate determination of the appeal shall be binding on DMA, Longbranch, and the Reorganized Debtors, including their successors and assigns.

Docket No. 211.

29. Thus, the Plan expressly limited DMA and Longbranch to the outcome of the

appellate process. Their recovery was tied to the Final Judgment, not to any subsequent or expanded ownership remedy. Seeking now to seize the ROW directly would not enforce the Plan—it would rewrite it, enriching the Defendants beyond what confirmation or appeal ever authorized.

**B. <u>The Bankruptcy Case Is Closed, and No Post-Confirmation Jurisdiction Exists.</u>**

30. The Defendants' proposed TUFTA action cannot invoke bankruptcy jurisdiction because it neither arises under Title 11 nor relates to any pending bankruptcy case.

31. As explained in pertinent part by Judge Houser in *Faulkner v. Eagle View Capital Mmgt.* (*In re Heritage Org., L.L.C.*), 454 B.R. 353 (Bankr. N.D. Tex. 2011):

> Here, the TUFTA claim is merely "related to" a case under title 11, as it would have an existence outside of bankruptcy; it is not a core proceeding, and it is related to the bankruptcy in only the most general sense — really, only by the fact that the Trustee got his judgment against the non-debtors in the bankruptcy court. The TUFTA claim will involve new and different proof, beyond that already proffered during the First Adversary Proceeding — for example, the Trustee will have to prove the elements of a claim under TUFTA as to each of the Judgment Debtors — although in the First Adversary Proceeding, the Trustee proved the elements of his TUFTA claim only as to Heritage. The Court also notes that several of the transfers challenged in the Complaint were allegedly made by an entity called "The Oak Group" — which is a stranger to the First Adversary Proceeding and thus not a Judgment Debtor by virtue of the Judgment. In *Berry v. McLemore*, 795 F.2d 452 (5th Cir. 1986), the Fifth Circuit held that a garnishment action seeking enforcement against third parties who were strangers to the underlying judgment instituted new proceedings, and the obligations of the new defendants were completely independent of the primary judgment.
>
> For these reasons, the Court concludes that it lacks post-confirmation subject matter jurisdiction over the Trustee's TUFTA claim under section 1334.

*Id.* at 366-67.

32. Similarly in the instant case, the underlying bankruptcy was confirmed and closed years ago and all assets—including any interest in the Express right-of-way—revested in the

reorganized debtor at confirmation. Once confirmation occurred, the bankruptcy estate ceased to exist, and the Court's jurisdiction narrowed to matters necessary to implement or interpret the confirmed plan.

33. A TUFTA claim asserted years later concerning property transferred after confirmation bears no connection to the administration of a bankruptcy estate. Section 541(a)(7) extends the definition of estate property only to assets "acquired by the estate" after commencement—not to property later acquired or transferred by the debtor itself. Because there is no longer an estate and no plan provision reserving jurisdiction over new post-confirmation transactions, any alleged fraudulent transfer falls entirely outside the Court's limited jurisdiction. The closing of the case formally ended that jurisdictional reach.

34. Most critically, this Court lacks jurisdiction even to grant "leave" for DMA to pursue TUFTA claims. TUFTA—the Texas Uniform Fraudulent Transfer Act—is a state-law cause of action governed by the Texas Business & Commerce Code, not by Title 11. It creates independent state-court remedies among private parties and does not arise under or depend upon the Bankruptcy Code. Bankruptcy jurisdiction does not extend to authorizing or supervising new state-law litigation between non-debtors once the estate has been fully administered. *Bank of La. v. Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388, 390 (5th Cir. 2001).

35. Nor does § 157(b)(2)(H) salvage DMA's position. That provision simply identifies "proceedings to determine, avoid, or recover fraudulent conveyances" as core matters when properly before the bankruptcy court; it does not create jurisdiction where none exists. Courts uniformly hold that post-confirmation disputes among non-debtors based solely on state-law rights are not "core" proceedings and must be pursued, if at all, in state court. The judgment between Wright and DMA already defines their respective rights, and the Plan and Confirmation Order did

not reserve jurisdiction for this Court to open new adversary proceedings against third parties or to authorize state-law suits.

36. DMA's effort to recast a TUFTA lawsuit as a continuation of the bankruptcy case is a jurisdictional fiction. The Court's authority ended with confirmation and closure of the case; it cannot now revive jurisdiction to supervise or approve new litigation arising solely under Texas law.

## VI. ALTERNATIVELY, THE COURT SHOULD STAY PROCEEDINGS PENDING THE ANGELINA COUNTY LITIGATION

### A. A Stay Is Necessary to Prevent Conflicting Outcomes between Proceedings.

37. The Court has inherent authority under *Landis v. North American Co*., 299 U.S. 248, 254 (1936), to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." That authority should be used here to stay consideration of the DMA Motion.

38. The 159th Judicial District Court of Angelina County, Texas, has now entered multiple dispositive orders in Express H2O Pipeline & ROW, LLC v. Westlake Chemical OPCO, L.P., Cause No. CV-00461-24-08, conclusively establishing Express H2O's ownership and priority in the ROW. That case—filed in reliance on this Court's Final Judgment—directly concerns title and ownership of the same ROW. Partial summary-judgment rulings have already been entered in Express's favor, and trial is scheduled for December 1, 2025, with a final judgment expected by year-end. The state court orders established that Express is the title owner of the Gulf Easements and associated ROW, and that any competing claim to ownership or title is contrary to the state court's rulings.

39. The Bankruptcy Court and the state court now have parallel proceedings involving identical property interests. If this Court proceeds to rule on DMA's Motion, including

disgorgement of the Gulf Easements, while the state court litigation is pending, two courts could reach inconsistent determinations regarding the same right-of-way. Staying this proceeding ensures comity, consistency, and judicial efficiency. Proceeding on DMA's Motion now would risk inconsistent rulings, confuse title, and interfere with the state court's adjudication of the very property rights this Court previously confirmed. To avoid duplication, inconsistency, and further procedural error, the Court should stay all proceedings on DMA's Motion until the state court issues its final judgment.

40. For these reasons, judicial economy and respect for coordinate jurisdiction strongly favor a stay of this Court's consideration of DMA's Motion until the state court's orders are final and unassailable on appeal.

**B. <u>A Stay is Necessary to Avoid Severe Prejudice to Express and Disruption of the Angelina County Litigation.</u>**

41. Ordering disgorgement of the Express ROW at this stage would not only be improper and risk inconsistent rulings, it would directly prejudice Express, a non-party, in the pending state-court action where its ownership rights are being adjudicated. The litigation has progressed substantially, with partial summary-judgment rulings already entered confirming Express's ownership and trial set for December 1, 2025. If this Court were to order disgorgement of the ROW to DMA or Longbranch, it would effectively strip the very asset at issue in the state case from the entity asserting title there, undermining the Angelina County court's jurisdiction and destroying the evidentiary and equitable foundation of that proceeding. Express would lose standing to pursue its claims, and the state court would be deprived of the ability to issue final judgment on ownership—producing inconsistent and conflicting results between the two courts.

42. This prejudice extends beyond Express. The Angelina County litigation serves the shared interests of Express, DMA, and Longbranch by seeking to clear title to the ROW and

remove the trespasser that has obstructed its development. A final judgment in that case will benefit all stakeholders by confirming title, stabilizing ownership, and allowing the asset to be monetized or sold without encumbrance. Prematurely transferring the ROW now would frustrate that outcome, perpetuate uncertainty, and reduce the value of the asset for every interested party.

43. By contrast, staying this proceeding until the state court's final judgment will ensure that ownership is resolved on a complete record and that the ROW's title is quieted once and for all. It would also prevent duplication of effort and the potential for conflicting rulings. Accordingly, to preserve comity, efficiency, and fairness to all parties—including those not before this Court—any consideration of DMA's disgorgement request should be deferred until the Angelina County case reaches final resolution.

### C. A Stay is Needed to Determine if Express Can Be Joined Before Any Order Affecting Its Property Rights.

44. The Motion seeks to divest Express of its property interest even though Express is not a party to this proceeding, has not been served, and is not identified in the Motion as an entity against whom relief is sought. It is axiomatic that a court cannot adjudicate or extinguish the property rights of a non-party through motion practice. A stay would allow the parties to further brief the Court on whether Express must and can be joined to a proceeding regarding disgorgement.

45. Indeed, it is not Wright's responsibility, nor the Court's, to devise a lawful mechanism for DMA's requested remedy. What is clear is that the current Motion—one that neither serves nor joins the party whose property DMA seeks—violates the most basic tenets of due process. Express is a necessary and indispensable party to any dispute seeking to affect its ownership rights under Federal Rule of Civil Procedure 19.

46. Divesting Express of its ownership interest without notice or opportunity to be heard would violate the Fifth Amendment's Due Process Clause, which prohibits deprivation of

property without fair notice and an opportunity to be heard. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484–85 (1988); *Bank of Marin v. England*, 385 U.S. 99, 102 (1966). As the Supreme Court made clear, "actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party…." *Tulsa Professional*, 485 U.S. at 485. Express is a distinct legal entity whose property rights have been recognized in the Final Judgment and confirmed under the Fourth Amended Reorganization Plan. Any attempt to compel transfer of its assets without joinder, service, or process would be unconstitutional and void.

Such action would be unconstitutional in at least the following ways:

- The Court does not have personal jurisdiction over Express, yet disgorgement must direct *Express*, the legal titleholder, to transfer away its property.

- There has been no finding or evidence of wrongdoing by Express that would support penalizing Express. Despite the lack of a Court finding, disgorgement would divest it off its property interests and rights without a trial allowing it to be penalized.

- The ROW has monetary value, as admitted by Defendants at the prior hearing. Ex. A, 15:10-11. Any order divesting Express of that value is a deprivation of property without notice.

- Express has expended considerable time and money searching for a ROW buyer and attempting to clear title from the trespasser who removed part of the Express Pipeline. Taking away its property interest is a deprivation of property without due process or compensation.

- Defendants are also attempting to void the Fourth Amended Reorganization Plan, with which the Court approved and Express agreed to comply (Doc. 322 at 5). The Plan, which was approved by the Court, secured Express's property interests in the ROW, including its 60% net profit interest after payment to Defendants of their 40% interest.[1] The Plan also voids any liens or lis pendens filed on the Easement by Longbranch or DMA.[2] This is because the only remedy available to Defendants contemplated was a net profits interest and not ownership. A modification of the Final Judgment would void this language.

[1] Doc. 211 p 7 (20-50805).
[2] *Id.*

A stay would allow these issues to be resolved.

**D. <u>A Stay Is Necessary Because Any Disgorgement Would Require a New Trial.</u>**

47. Disgorgement is a distinct equitable remedy that must be specifically awarded in a final judgment after a full evidentiary hearing or trial. Even setting jurisdiction aside, DMA's request for disgorgement cannot lawfully be resolved by motion practice in a closed bankruptcy case. The requested relief would not merely "enforce" the existing Final Judgment—it would fundamentally alter it by reallocating ownership interests, disturbing vested property rights, and depriving a non-party of property without trial or evidence.

48. Due process requires notice, pleadings, and proof before such a deprivation can occur. *See* U.S. Const. amend. V; *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988); *In re Argonaut Fin. Servs., Inc.*, 164 B.R. 107, 111 (N.D. Cal. 1994). The Express ROW is a valuable commercial asset—DMA's own filings place its value at more than $10 million—and Express has invested substantial resources to market the property, prosecute trespass claims, and clear title. Any order divesting Express of that property without a trial would not only violate due process but would also create an irreconcilable conflict for Wright, who, as Express's manager, owes fiduciary duties to the company.

49. Ownership, title, and the scope of Express's rights are already being litigated in the state court proceeding. Because the requested relief of disgorgement would require a trial, and would necessarily reopen factual disputes and alter the terms of a final, affirmed judgment, this Court should exercise its inherent authority to stay further proceedings on the DMA Motion pending resolution of the Angelina County case. A stay will protect the integrity of both proceedings, avoid duplication of judicial effort, and ensure that any future adjudication occurs on a complete factual record with all necessary parties before the court.

50. On the other hand, DMA and Longbranch will suffer no prejudice from a stay. Their 20% each net-profits interest runs with the land, as recognized in the Final Judgment. Express had agreed to abide by the Plan and the orders from both courts.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Larry Wright respectfully requests that the Court enter an Order to:

51. Dismiss the DMA Motion for Lack of Subject-Matter Jurisdiction;

52. Hold that the doctrines of Res Judicata and Law of the Case preclude any modification or reinterpretation of the Final Judgment;

53. Reject DMA’s request for disgorgement or transfer of the ROW as beyond this Court’s power and inconsistent with the confirmed Plan, the Final Judgment, and the District Court’s binding decision;

54. Alternatively, if the Court determines that it retains limited jurisdiction, exercise its inherent authority to stay all proceedings on DMA’s Motion pending final resolution of Express H2O Pipeline & ROW, LLC v. Westlake Chemical OpCo, L.P., now pending in the 159th District Court of Angelina County, Texas, to avoid conflicting rulings, protect the interests of non-parties, and preserve judicial economy; and

55. Award Wright such other and further relief, at law or in equity, to which he may be justly entitled.

Dated: November 4, 2025

Respectfully Submitted,

**HAYWARD PLLC**

*<u>/s/ Charlie Shelton</u>*
Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, Texas 78757
(737) 881-7100 (Phone/Fax)
cshelton@haywardfirm.com

***Counsel for Larry Wright***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing was filed electronically via the court's CM/ECF system on November 4, 2025 thus effecting service on any parties requesting service thereby. The foregoing was also served via United States First Class Mail on November 4, 2025 on all persons listed below.

| | |
|---|---|
| Cobb & Johns PLLC<br>Attn: Christopher S. Johns, Michael C. Cotton<br>13341 West U.S. Highway 290, Building 2<br>Austin, TX 78737<br>Telephone: (512) 399-3150<br>Facsimile: (512 572-8005<br>chris@cobbjohns.com<br>michael@cobbjohns.com | Cleveland Krist PLLC<br>Attn: Timothy Cleveland & Austin H. Krist<br>303 Camp Croft Road, Suite 325<br>Austin, Texas 78746<br>Telephone: (512) 689-8698<br>tcleveland@clevelandkrist.com<br>akrist@clevelandkrist.com |
| Akerman LLP<br>Attn: Randall Adam Swick<br>500 W. 5th Street, Suite 1210<br>Austin TX 78701<br>Adam.swick@akerman.com | Langley & Banack<br>Attn: Natalie Wilson<br>745 East Mulberry Avenue, Suite 700<br>San Antonio, TX 78212<br>nwilson@langleybanack.com |
| JF DUKE AND ASSOCIATES<br>Attn: Jeffery Duke<br>11819 Great Oaks Drive<br>College Station, Texas 77494<br>jeff@jfduke.com<br><br>***Attorneys for Longbranch Energy, LP*** | BURNS & BLACK PLLC<br>Attn: Michael Black<br>750 Rittiman Road<br>San Antonio, Texas 78209<br>mblack@burnsandblack.com<br><br>***Attorneys for Longbranch Energy, LP*** |
| THE SMEBERG LAW FIRM, PLLC<br>Attn: Ronald J. Smeberg<br>2010 W Kings Hwy<br>San Antonio, TX 78201-4926<br>ron@smeberg.com<br><br>***Counsel for Black Duck Properties, LLC*** | KrisJenn Ranch, LLC, Krisjenn Ranch, LLC, Series Uvalde Ranch, Krisjenn Ranch, LLC, Series Pipeline Row<br>410 Spyglass Road<br>McQueeney, TX 78123 |
| Larry Wright<br>410 Spyglass Road<br>McQueeney, TX 78123 | United States Trustee<br>P.O. Box 1539<br>San Antonio, TX 78295-1539 |

*<u>/s/ Charlie Shelton</u>*
Charlie Shelton

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ***In re:*** | **§** | |
| | **§** | **Chapter 11** |
| **KrisJenn Ranch LLC,** | **§** | **Case No. 20-50805-rbk** |
| | **§** | |
| **Debtor.** | **§** | |
| | **§** | |

| | | |
|---|---|---|
| **KRISJENN RANCH, LLC, ET AL** | **§** | **Adversary No. 20-05027-RBK** |
| **Plaintiffs,** | **§** | |
| | **§** | |
| **vs.** | **§** | |
| | **§** | |
| **DMA PROPERTIES, INC, ET AL,** | **§** | |
| **Defendants.** | **§** | |

**ORDER GRANTING WRIGHT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND AUTHORITY OR, ALTERNATIVELY, MOTION TO STAY**

CAME ON FOR CONSIDERATION the *Motion to Dismiss for Lack of Jurisdiction and Authority or, Alternatively, Motion to Stay* (the "Motion") filed by Larry Wright. The Court finding

the Motion should be granted. It is then therefore ORDERED that the Motion is GRANTED. It is further ORDERED that:

1. DMA's Motion to Enforce Judgment and for Sanctions and Seeking Leave to File Fraudulent Transfer Claims (Docket No. 498) is dismissed for lack of subject-matter jurisdiction.

**# # # END OF ORDER # # #**

***Order Prepared By:***

**HAYWARD PLLC**

Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, Texas 78757
(737) 881-7100 (Phone/Fax)
cshelton@haywardfirm.com

***Counsel for Larry Wright***

Field Code Changed